# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Jedidiah Isaac Murphy
PETITIONER (Full name of Petitioner)

Polunsky Unit
CURRENT PLACE OF CONFINEMENT

v.

999392
PRISONER ID NUMBER

Rick Thaler
RESPONDENT (Name of TDCJ Director, Warden, Jailor, or authorized person having custody of petitioner)

CASE NUMBER (Supplied by the Clerk of the District Court)

## INSTRUCTIONS - READ CAREFULLY

1. The petition must be legibly handwritten or typewritten and signed by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2. Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum.

3. When the Clerk of Court receives the $5.00 filing fee, the Clerk will file your petition if it is in proper order.

4. If you do not have the necessary filing fee, you may ask permission to proceed *in forma pauperis*. To proceed *in forma pauperis*, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-ID, you must send in a certified *In Forma Pauperis* Data Sheet from the institution in which you are confined. If you are in an institution other than TDJC-ID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5. Only judgments entered by one court may be challenged in a single petition. If you want to challenge judgments entered by different courts, either in the same state or in different states, you must file separate petitions as to each court.

6. Include all your grounds for relief and all facts that support each ground for relief in this petition.

7. When you have finished filling out the petition, mail the original and two copies to the Clerk of the United States District Court for the federal district within which the State court was held which convicted and sentenced you, or to the federal district in which you are in custody. A "VENUE LIST," which lists U.S. District Courts in Texas, their divisions, and the addresses for the clerk's office for each division, is posted in your unit law library. You may use this list to decide where to mail you petition.

8. Petitions that do not meet these instructions may be returned to you.

# PETITION

What are you challenging? (Check only one)

☒ A judgment of conviction or sentence, probation or deferred-adjudication probation. (Answer Questions 1-4, 5-12 & 20-23)
☐ A parole revocation proceeding. (Answer Questions 1-4, 13-14 & 20-23)
☐ A disciplinary proceeding. (Answer Questions 1-4, 15-19 & 20-23)

All petitioners must answer questions 1-4:

1. Name and location of the court (district and county) which entered the conviction and sentence that you are presently serving or that is under attack:

   194th District Court of Dallas County

2. Date of judgment of conviction: 6-30-01

3. Length of sentence: death

4. Nature of offence and docket number (if known):

   Capital Murder - No. F-00-02424-NM

Judgment of Conviction or Sentence, probation or Deferred-Adjudication Probation:

5. What was your plea? (check one)    ☒ Not Guilty    ☐ Guilty    ☐ Nolo Contendere
6. Kind of trial: (Check one)          ☒ Jury         ☐ Judge Only
7. Did you testify at the trial?       ☐ Yes          ☒ No
8. Did you appeal the judgment of conviction?  ☒ Yes  ☐ No

9. If you did appeal, in what appellate court did you file your direct appeal? Texas Court of Criminal Appeals

   Case Number (if known) 74,145

   What was the result of your direct appeal (affirmed, modified, or reversed): affirmed

   What was the date of that decision? 6-25-03

   If you filed a petition for discretionary review after the decision of the court of appeals, answer the following:

   Result: _____

   Date of result: _____    Cause Number (if known:) _____

   If you filed a petition for writ of certiorari with the United States Supreme Court, answer the following:

   Result: denied

   Date of result: 3-22-04

10. Other than a direct appeal, have you filed any petitions, applications, or motions from this judgment in any court, state or federal? This includes any state application for writ of habeas corpus that you may have filed.

    ☒ Yes         ☐ No

11. If your answer to 10 is "Yes," give the following information:.

Name of court: 194th District Court of Dallas County

Nature of proceeding: application for a writ of habeas corpus

Cause number (if known): W-00-02424-A

Date (month, day and year) you filed the petition, application, or motion as shown by a file-stamped date from the court. 5-12-03

Grounds raised: same as direct appeal except for two *voir dire* issues

Date of final decision: denied on 3-25-09; rehearing "denied" on 6-17-09

Name of court that issued the final decision: Texas Court of Criminal Appeals

As to any second petition, application, or motion, give the same information:

Name of court:

Nature of proceeding:

Cause number (if known):

Date (month, day, and year) you filed the petition, application or motion as shown by a file-stamped date from the court.

Grounds raised:

Date of final decision:

Name of court that issued the final decision:

*If you have filed more than two petitions, application, or motions, please attach an additional sheet of paper and give the same information about each petition, application, or motion.*

12. Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition:

☐ Yes   ☒ No

(a) If your answer is "yes," give the name and location of the court that imposed the sentence to be served in the future:

(b) Give the date and length of the sentence to be served in the future:

(c) Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?

☐ Yes   ☐ No

**Parole Revocation:**

13. Date and location of your parole revocation: _____

14. Have you filed any petitions, application, or motions in any state or federal court challenging your parole revocation?

    ☐ Yes        ☐ No

    If your answer is "yes," complete Question 11 above regarding your parole revocation.

**Disciplinary Proceedings:**

15. For your original conviction, was there a finding that you used or exhibited a deadly weapon?

    ☐ Yes        ☐ No

16. Are you eligible for mandatory supervised release?

    ☐ Yes        ☐ No

17. Name and location of prison or TDCJ Unit that found you guilty of the disciplinary violation:

    _____

    Disciplinary case number: _____

18. Date you were found guilty of the disciplinary violation: _____

    Did you lose previously earned good-time credits?  ☐ Yes        ☐ No

    Identify all punishment imposed, including the length of any punishment if applicable, any changes in custody status, and the number of earned good-time credits lost:

    _____

19. Did you appeal the finding of guilty through the prison or TDCJ grievance procedure?

    ☐ Yes        ☐ No

    If your answer to Question 19 is "yes," answer the following:

    **Step 1** Result:

    _____

    Date of Result: _____

    **Step 2** Result:

    _____

    Date of Result: _____

**All applicants must answer the remaining questions:**

20. State clearly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting them.

**CAUTION:**
Exhaustion of State Remedies: You must ordinarily present your arguments to the highest state court as to each ground before you can proceed in federal court.
Subsequent Petitions: If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

Following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement is a separate ground for possible relief. You may raise any grounds, even if not listed below, if you have exhausted your state court remedies. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your belief that you are being held unlawfully.

**DO NOT JUST CHECK ONE OR MORE OF THE LISTED GROUNDS.** Instead, you must also STATE the SUPPORTING FACTS for ANY ground you rely upon as the basis for your petition.

(A)   Conviction obtained by a plea of guilty which was unlawfully induced, or not made voluntarily, or made without an understanding of the nature of the charge and the consequences of the plea.

(B)   Conviction obtained by the use of a coerced confession.

(C)   Conviction obtained by the use of evidence gained from an unconstitutional search and seizure.

(D)   Conviction obtained by the use of evidence obtained from an unlawful arrest.

(E)   Conviction obtained by a violation of the privilege against self-incrimination.

(F)   Conviction obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant.

(G)   Conviction obtained by the action of a grand or petit jury which was unconstitutionally selected and impaneled.

(H)   Conviction obtained by a violation of the protection against double jeopardy.

(I)   Denial of effective assistance of counsel.

(J)   Denial of the right to appeal.

(K)   Violation of my right to due process in a disciplinary action taken by prison officials.

**A. GROUND ONE:** THE STATE SUPPRESSED EVIDENCE MATERIAL TO PUNISHMENT REGARDING SHERYLL WILHELM'S UNCERTAINTY THAT PETITIONER WAS THE MAN WHO KIDNAPPED HER FROM A HOSPITAL PARKING LOT AND PRESENTED FALSE TESTIMONY THAT SHE WAS CERTAIN THAT HE WAS HER ASSAILANT.

Supporting FACTS (tell your story briefly without citing cases or law):

Sheryll Wilhelm testified at the punishment stage that a man forced her into her car in a hospital parking lot in Arlington, Texas, on August 26, 1997, and drove away. She escaped by jumping out of the moving car on the highway. The police made a composite sketch of the assailant with her assistance. Over three years later, she saw petitioner on a televised news account of his arrest for kidnapping and killing the deceased. She read a newspaper article about his arrest, researched him on the internet, and spoke to her mother, who told her that he looked like the man in the composite sketch. She called Detective John Stanton of the Arlington Police Department and provided this information. Thereafter, she selected petitioner's photo from a photospread. She testified that she had no doubt that he was her assailant when she identified him in in the photospread and in court. Stanton testified that her identification was one of the better ones he had seen in 16 years as a detective. The State failed to disclose evidence to the defense and to the jury that would have called Wilhelm's identification of petitioner into question. When she viewed the photospread, she told Stanton that petitioner's photo "looks a lot like him" and that she was "pretty sure it's him." In fact, she was only 95 percent sure that he was her assailant; Stanton considered this to be a strong tentative identification rather than a positive identification. Prosecutor Greg Davis and his investigator, Willie Richardson, came to her home in May of 2001 before she testified at the punishment stage. She asked whether she had identified the right man in the photospread, and they said yes. This confirmed in her mind the accuracy of her identification of petitioner. Stanton did not file kidnapping charges on petitioner because he could not determine whether Wilhelm identified the man she saw on television or the man who kidnapped her. In his opinion, the Tarrant County District Attorney's Office would not have accepted kidnapping charges under the circumstances; had charges been accepted, he could have successfully defended petitioner even though he is not a lawyer.

**B. GROUND TWO:** PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PUNISHMENT STAGE.

Supporting FACTS (tell your story briefly without citing cases or law):

The jury knew that petitioner clocked out at work at Aavid Thermalloy Technologies (Aavid) in Terrell on August 26, 1997, at 8:02 a.m.; that Wilhelm was kidnapped in Arlington at 11:30 a.m.; that Marjorie Ellis was robbed in Wichita Falls shortly before 8:30 p.m.; that petitioner clocked in at work at 11:54 p.m.; and that Wilhelm's car, containing property belonging to Ellis, was found abandoned on the side of a highway in Wichita Falls the following morning. Counsel failed to present testimony regarding the distances between and the time it takes to drive to these locations. Wilhelm's car was abandoned in Wichita Falls 173.4 miles from Aavid; it takes approximately three hours and nine minutes to drive that distance at night. If petitioner left work in Terrell, drove to Arlington and robbed Wilhelm, drove to Wichita Falls and robbed Ellis, and abandoned Wilhelm's car in Wichita Falls at 8:30 p.m., he would have had three hours and 24 minutes to drive to Aavid to clock in at work at 11:54 p.m. He could have done so only if someone picked him up on the side of the highway in Wichita Falls immediately after Wilhelm's car broke down and drove him directly to Aavid. Had counsel presented testimony regarding the distances between and the time it takes to drive to these locations, no rational juror would have found beyond a reasonable doubt that petitioner kidnapped Wilhelm and robbed Ellis. There is a reasonable probability that the jury would have returned a negative answer to the future dangerousness special issue or deadlocked, resulting in petitioner being sentenced to life imprisonment.
Dr. Mary Connell, a psychologist, evaluated petitioner with regard to the mitigation special issue. She testified at the punishment stage that she administered the MMPI-II and MCMI-III to him.
The prosecutor elicited on cross-examination that Dr. James Butcher, the leading expert in the country on the interpretation of the MMPI-II, interpreted the test that was administered to petitioner and reached

(continued on next page)

(Ground Two continued)

damaging conclusions; and, that Dr. Theodore Millon, who created the MCMI-III, interpreted the test that was administered to petitioner and also reached damaging conclusions. In fact, neither Dr. Butcher nor Dr. Millon examined petitioner, evaluated his test results, reached conclusions about him, or prepared a report. Counsel performed deficiently in failing to correct on redirect examination the false impression that Drs. Butcher and Millon personally evaluated petitioner and authored reports that reached damaging conclusions about him.

Counsel called Dr. Jaye Crowder, a psychiatrist, to testify to his evaluation of petitioner. Dr. Crowder summarized on direct examination the testimony previously admitted regarding petitioner's troubled childhood, substance abuse problems, and emotional problems. Counsel elicited that petitioner is narcissistic and has a borderline personality disorder with some anti-social traits—such as, that he is manipulative, dishonest, irresponsible, and commits crimes. The prosecutor elicited on cross-examination that Dr. Crowder had previously testified that four persons who committed brutal capital murders—two of whom had killed before—would not be dangerous in the future; that he would have predicted that the Texas Seven would not be dangerous in prison; but that he could not testify that petitioner would not be dangerous in the future and he would be concerned about petitioner outside of prison. Although counsel's decision to call Dr. Crowder to testify was strategic, that strategy was unsound in view of the extremely damaging testimony that he gave and the fact that his "favorable" testimony was cumulative of previously admitted testimony.

Counsel called Garland Police Department Detective Matt Myers to testify that petitioner confessed, was cooperative, and appeared to be remorseful during their interviews. The prosecutor elicited without objection on cross-examination that Myers did not think that petitioner was being "honest and genuine" when he said that he did not remember the location of the abduction. Counsel elicited on redirect examination that Myers thought that petitioner "knows a lot of things he hasn't told us." Counsel performed deficiently in failing to object to police opinion testimony that petitioner was lying about not remembering the location of the abduction.

Petitioner acknowledged in his written statement to the police that he kidnapped the deceased. The prosecutor argued without objection that, with regard to the defense assertion that petitioner was cooperative with the police, "…you have to know…that in this man's mind,…when he signs that statement and he says this was an accident,…if he can get one jury in Dallas County to buy that excuse, he walks smooth out of this courthouse, smooth out, not guilty, accident, forget it, and he is free again, isn't he?" If petitioner accidentally killed the deceased in the course of kidnapping her, he was guilty of felony murder; he would not be acquitted and "walk smooth out of the courthouse." Counsel performed deficiently in failing to object to argument that grossly misstated Texas law.

**C. GROUND THREE:** PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE GUILT-INNOCENCE STAGE.

Supporting FACTS (tell your story briefly without citing cases or law):

The prosecutor elicited without objection that, after petitioner was arrested and advised of his rights, Detective Myers asked him to get out of the car and point out where he threw the gun, but he refused. Counsel then elicited that, one week later, Myers attempted to interview petitioner to determine the locations of the abduction and the murder. The prosecutor elicited without objection on redirect examination that Myers advised petitioner of his rights and sought to interrogate him further, but he said that he did not want to talk. Counsel performed deficiently in failing to object to testimony regarding petitioner's post-arrest silence. Counsel elicited on cross-examination Detective Myers' opinion that petitioner was telling the truth as they drove around looking for locations where he met and killed the deceased. The prosecutor elicited without objection on redirect examination that Myers' opinion of petitioner's truthfulness changed over time, as petitioner did not answer "quite a few" questions and parts of his statement were false. Counsel performed deficiently in opening the door to police opinion testimony that petitioner was not telling the truth. The jury was instructed in the charge on capital murder and the lesser included offenses of murder and manslaughter. The jury was not instructed that it had to acquit petitioner of capital murder before it could consider the lesser included offenses. However, the prosecutor argued during summation without objection that the jury could consider the lesser included offenses only if it did not believe that the State proved capital murder beyond a reasonable doubt. Counsel performed deficiently in failing to object to argument that misstated Texas law.

**D. GROUND FOUR:** THE STATE COURT DECISION THAT EXCUSING VENIREPERSON TREAT FOR CAUSE DID NOT VIOLATE THE FOURTEENTH AMENDMENT WAS CONTRARY TO OR INVOLVED AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT AND WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE *VOIR DIRE* RECORD

Supporting FACTS (tell your story briefly without citing cases or law):

The trial court granted the State's challenge for cause to venireperson Alena Treat on the ground that she would consider only murder and attempted murder to be criminal acts of violence for purposes of answering the future dangerousness special issue in the affirmative. She was not opposed to the death penalty and could consider assaultive conduct less serious than murder and attempted murder to be criminal acts of violence. Excusing her for cause violated the Fourteenth Amendment because her views on the death penalty would not prevent or substantially impair her ability to follow the court's instructions and her oath as a juror.

**E. GROUND FIVE** is on the next page.

21. Have you previously filed a federal habeas petition attacking the same conviction, parole revocation, or disciplinary proceeding that you are attacking in this petition?

    ☐ Yes      ☒ No

    If your answer is "yes," give the date on which each petition was filed, the federal court in which it was filed, and whether the petition was (a) dismissed without prejudice or (b) denied.

22. Are any of the grounds listed in paragraph 20 above presented for the first time in this petition?

    ☒ Yes      ☐ No

    If your answer is "yes," state briefly what grounds are presented for the first time and give your reasons for not presenting them to any other court, either state or federal.

    Grounds 1-3 are presented for the first time in federal court. They were not raised in state court because appointed habeas counsel conducted no independent investigation and raised no claims on which relief could be granted; ultimately, he sought to expedite petitioner's execution by asking the Court of Criminal Appeals to deny petitioner's and the State's joint request for an extension of time to file another application with new counsel and to deny relief on the application that he filed. This court should find good cause for the procedural default, not apply the exhaustion requirement, and consider the merits of the unexhausted claims. Alternatively, petitioner requests that the Director expressly waive the exhaustion requirement and agree to an evidentiary hearing-which would be consistent with the actions taken by the state habeas prosecutors-to enable petitioner to have these serious constitutional claims considered on the merits. Should the Director refuse to waive the exhaustion requirement, petitioner moves that this court stay and abate the federal habeas corpus proceeding to enable him to return to state court to raise the unexhausted claims.

**E. GROUND FIVE-** THE STATE COURT DECISION THAT PETITIONER WAS NOT PROHIBITED FROM ASKING A PROPER QUESTION REGARDING VICTIM IMPACT AND CHARACTER EVIDENCE DURING THE *VOIR DIRE* EXAMINATION WAS CONTRARY TO OR INVOLVED AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT AND WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE *VOIR DIRE* RECORD

Victim impact and character evidence is relevant to the mitigation special issue but not to the future dangerousness special issue unless the defendant was aware of the evidence when he committed the murder. Because petitioner and the deceased were strangers, he could not have been aware of her character and the impact her death would have on others. The trial court refused to allow counsel to ask the veniremen whether they would consider any evidence of the deceased's character and the impact of her death on others only when answering the mitigation special issue and not when answering the future dangerousness special issue. The refusal to allow this inquiry violated the Sixth Amendment because petitioner had a right to ask these proper questions to ensure that the jury was fair and impartial.

23. Do you have any habeas corpus proceedings or appeals now pending in any court, either state or federal, relating to the judgment or proceeding under attack?

☐ Yes    ☒ No

If "yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled to.

_____
Signature of Attorney (if any)

The Schaffer Firm
1301 McKinney, Suite 3100
Houston, Texas 77010

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on:

Executed on: 1/26/10

_____
Signature of Petitioner (required)

Petitioner's current address: