C L E R K ' S     R E C O R D

Volume <u>TWO</u> of <u>FOUR</u>

Trial Court Cause Number <u>F00-02424-NM</u>

In the <u>JUDICIAL</u>  District Court <u>#194</u>

of Dallas County, Texas,

Honorable <u>H. ENTZ</u>, Judge Presiding.

===============================================================

<u>THE STATE OF TEXAS</u>, Plaintiff

vs.

<u>JEDIDIAH ISAAC MURPHY</u>, Defendant

===============================================================

Appealed to the
Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas.

===============================================================

Attorney for Appellant
Name  <u>ADAM SEIDEL</u>
Address    <u>2515 MCKINNEY, STE 1400, DLS, TX 752</u>
Telephone No.  <u>214-237-0835</u>
Fax No.  <u>214-237-0901</u>
SBOT No.  <u>17999290</u>
Attorney for:  <u>JEDIDIAH ISAAC MURPHY</u>

**FILED IN**
**COURT OF CRIMINAL APPEALS**

NOV 0 5 2001

Troy C. Bennett, Jr., Clerk

===============================================================

Delivered to the Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas.
on the ____ day of _____, _____.

signature of clerk    _____

name of clerk    _____

title    _____

===============================================================

Appellate Court Cause No. _____

Filed in the Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas,
this <u>25TH</u> day of <u>OCTOBER</u>, <u>2001</u>.

JIM HAMLIN, DALLAS COUNTY DISTRICT CLERK

By  <u>JANE MILLER</u>, Deputy

FORM 355A

JEDIDIAH ISAAC MURPHY        CAUSE NO. F00-02424-NM

VS:        IN THE 194TH JUDICIAL DISTRICT

THE STATE OF TEXAS        COURT OF DALLAS COUNTY, TEXAS

=======================================================

= INDEX =

VOL. 2 OF 4: PAGES 235 THRO 460:

INDEX TO DEFENDANT'S PRETRIAL MOTIONS (FEB 27 01)    VOL. 2-235

MOTION TO PRECLUDE PROSECUTION FROM SEEKING
THE DEATH PENALTY (FEB 27 01)-ORDER    VOL. 2-239

MOTION TO QUASH BASED ON UNCONSTITUTIONALITY
OF TEX CAPITAL SENTENCING SCHEME-ORDER
(FEB 27 01)    VOL. 2-246

MOTION TO DECLARE JURY SELECTION PROCEDURE
UNCONSTITUTIONAL-ORDER (FEB 27 01)    VOL. 2-257

DEFENDANT'S OBJECTION TO PROPOSED PUNISHMENT
CHARGE (FEB 27 01)    VOL. 2-260

OMNIBUS PRETRIAL MOTION (FEB 27 01)    VOL. 2-272

MOTION FOR DISCOVERY, PRODUCTION AND INSPECTION
OF EVIDENCE (FEB 27 01)    VOL. 2-282

SECOND MOTION FOR DISCOVERY AND INSPECTION OF
EVIDENCE (FEB 27 01)    VOL. 2-297

DEFENDANT'S REQUEST FOR NOTICE OF EXTRANEOUS
ACTS AND CHARACTER EVIDENCE (FEB 27 01)    VOL. 2-313

MOTION FOR DISCOVERY RELATED TO DNA (FEB 27 01)    VOL. 2-314

MOTION REQUESTING NOTICE OF STATE'S INTENT TO
USE PRIOR CONVCITIONS FOR IMPEACHMENT (FEB 27 01)    VOL. 2-317

MOTION FOR INVENTORY OF ITEMS TAKEN AT THE
CRIME SCENES (FEB 27 01)    VOL. 2-319

MOTION FOR DISCOVERY IN DEATH PENALTY CASE
(FEB 27 2001)    VOL. 2-321

DEFENDANT'S MOTION TO PREVENT UNFAIR SURPRISE
DURING TRIAL (FEB 27 01)-ORDER    VOL. 2-330

MOTION IN LIMINE REGARDING DNA EVIDENCE
(FEB 27 01)    VOL. 2-334

MOTION IN LIMINE REGARDING CHARACTER WITNESSES-
ORDER (FEB 27 01)    VOL. 2-337

MOTION IN LIMINE REGARDING PRIOR CONVICTIONS-
ORDER (FEB 27 01)    VOL. 2-339

MOTION IN LIMINE REGARDING STATEMENTS
(FEB 27 01)    VOL. 2-341

FORM 355A

= CONTINUED =                    PAGE 2

1
   MOTION IN LIMINE REGARDING PUNISHMENT ARGUMENT
2  (FEB 27 01)                                      VOL. 2-343

3  MOTION IN LIMINE REGARDING PHOTOGRAPHS
   (FEB 27 01)                                      VOL. 2-345

4  MOTION IN LIMINE-CHARACTER OF THE COMPLAINANT-
5  VICTIM IMPACT (FEB 27 01)                        VOL. 2-348

6  MOTION FOR PSYCHIATRIC EXPERT ASSISTANCE-ORDER
   (FEB 27 01)                                      VOL. 2-353

7  MOTION FOR COURT REPORTER-ORDER (FEB 27 01)       VOL. 2-357

8  MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS
9  (FEB 27 01)                                      VOL. 2-360

10 MOTION FOR ELECTION OF PUNISHMENT-ORDER
   (FEB 27 01)                                      VOL. 2-362

11 MOTION FOR APPOINTMENT OF APPELLATE ATTORNEY
12 PRIOR TO TRIAL (FEB 27 01)                       VOL. 2-364

13 MOTION TO ALLOW INCARCERATED DEFENDANT ACCESS
   TO A HOT MEAL-ORDER (FEB 27 01)                  VOL. 2-367
14
   MOTION TO ALLOW INCARCERATED DEFENDANT ACCESS
15 TO SHAVING-ORDER (FEB 27 01)                      VOL. 2-371

16 MOTION TO ORDER THE STATE TO DECIDE WHETHER TO
   MAKE A CHALLENGE FOR CAUSE OR PEREMPTORY STRIKE
17 BEFORE DEFENDANT MUST DECIDE WHETHER TO MAKE A
   CHALLENGE FOR CAUSE OR PEREMPTORY STRIKE-ORDER
18 (FEB 27 01)                                      VOL. 2-375

19 DEFENDANT'S MOTION REGARDING THE SUBMISSION OF
   INDIVIDUAL JURORS FOR CHALLENGE FOR CAUSE IN
20 VOIR DIRE PROCEEDINGS (FEB 27 01)                VOL. 2-377

21 MOTION TO QUESTION VENIREMEN REGARDING MITIGATING
   EVIDENCE (FEB 27 01)                             VOL. 2-379
22
   MOTION TO QUESTION VENIREMEN REGARDING THE BURDEN
23 OF PROOF ON THE MITIGATION SPECIAL ISSUE
   (FEB 27 01)                                      VOL. 2-382
24
   MOTION TO VOIR DIRE VENIREMAN ON VICTIM
25 CHARACTER/IMPACT TESTIMONY (FEB 27 01)           VOL. 2-385

26 MOTION FOR DISCOVERY OF INFORMATION REGARDING
27 PRIOR JURY SERVICE (FEB 27 01)                   VOL. 2-389

28 DEFENDANT'S MOTION FOR INDIVIDUAL VOIR DIRE
   (FEB 27 01)                                      VOL. 2-418
29
   REQUEST TO UTILIZE PEREMPTORY CHALLENGES
30 FOLLOWING EXAMINATION OF THE ENTIRE VENIRE
   (FEB 27 01)                                      VOL. 2-420
31
   MOTION TO VOIR DIRE ON PAROLE LAW-40 YEAR MINIMUN
32 (FEB 27 01)                                      VOL. 2-423

33

FORM 355A

= CONTINUED =                                      PAGE 3

1   MOTION TO VIDEOTAPE THE INDIVIDUAL VOIR DIRE
    (FEB 27 01)                                    VOL. 2-427
2
3   MOTION FOR PRODUCTION OF WITNESS STATEMENTS
    (FEB 27 01)                                    VOL. 2-431
4   MOTION FOR PRODUCTION OF WITNESS STATEMENTS
    (FEB 27 01)                                    VOL. 2-431
5
6   MOTION TO SUPPRESS PHYSICAL EVIDENCE
    (FEB 27 01)                                    VOL. 2=434
7   MOTION TO SUPPRESS STATEMENTS (FEB 27 01)      VOL. 2-436
8   DEFENDANT'S MOTION FOR DISCOVERY OF BRADY
    MATERIAL REGARDING CONFESSIONS, STATEMENTS
9   AND ORAL DECLARATIONS THAT LED TO PREVIOUSLY
    UNDISCOVERED EVIDENCE (FEB 27 01)              VOL. 2-439
10
11  MOTION TO EXCLUDE EVIDENCE OF UNADJUDICATED
    EXTRANEOUS OFFENSES DURING THE PUNISHMENT PHASE,
12  OR REQUIRE A LIVE-LINE-UP (FEB 27 01)          VOL. 2-443
13  MOTION FOR IDENTIFICATION HEARING AND TO
    EXCLUDE EVIDENCE OF ILLEGAL IDENTIFICATION
14  (FEB 27 01)                                    VOL. 2-448
15  DEFENDANT'S MOTION FOR LIST OF STATE'S WITNESSES
    (FEB 27 01)                                    VOL. 2-451
16  DEFENDANT'S MOTION REGARDING VICTIM CHARACTER/
    IMPACT TESTIMONY AFTER MOSELY VS. STATE
17  (FEB 27 01)                                    VOL. 2-456
18  CLERK'S CERTIFICATE THAT APPELLATE RECORD IS
    TRUE AND CORRECT (25 OCT 01)                   VOL. 2-460
19
20
21
22
...
33

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____
DEPUTY

F00-02424-M AND F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## INDEX TO DEFENDANT'S PRETRIAL MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, by and through undersigned counsel, and presents this his first

Index to Defendant's Pretrial motions, with the motions to be ruled upon by the Court following:

CONSTITUTIONAL MOTIONS
Motion to Preclude Prosecution from Seeking the Death Penalty   *1*

Motion to Quash Indictment based on Unconstitutionality of Texas Capital Sentencing Statute   *8*

Motion to Declare Jury Selection Procedure Unconstitutional   *19*

Defendant's Objection to Proposed Punishment Charge   *22*


MAJOR DISCOVERY MOTIONS
Omnibus Pretrial Motion   *34*

Motion for Discovery, Production and Inspection of Evidence   *44*

Second Motion for Discovery and Inspection of Evidence   *59*


GENERAL DISCOVERY MOTIONS
Defendant's Request for Notice of Extraneous Acts and Character Evidence (R.404(b) and
     Article 37.07)   *75*

Motion for Discovery Related to DNA   *76*

Motion Requesting Notice of State's Intent to use Prior Convictions for Impeachment   *79*

00235

Motion for Inventory of Items taken at the Crime Scene  81

Motion for Discovery in Death Penalty Case  83

Defendant's Motion to Prevent Unfair Surprise  92


MOTIONS IN *LIMINE*
Motion in *limine* regarding DNA Evidence  96

Motion in *limine* regarding Character Witnesses  99

Motion in *limine* regarding Prior Convictions  101

Motion in *limine* regarding Statements  103

Motion in *limine* regarding Punishment Argument  105

Motion in *Limine* Regarding Photographs  107

Motion in *Limine*–Character of Complainant–Victim Impact  110


HOUSEKEEPING MOTIONS
Motion for Psychiatric Expert Assistance  115

Motion for Court Reporter  119

Motion for Leave to File Additional Motions  122

Motion for Election of Punishment  124

Motion for Appointment of Appellate Attorney Prior to Trial  126

Motion to Allow Incarcerated Defendant a Hot Meal  129

Motion to Allow Incarcerated Defendant Access to Shaving  133


*VOIR DIRE* MOTIONS
Motion to Order the State to Decide Whether to make a Challenge for Cause or Peremptory
    Strike before Defendant must Decide Whether to make a Challenge for Cause or
    Peremptory Strike  137

Defendant's Motion Regarding the Submission of Individual Jurors for Challenge for Cause in  139

*Voir Dire* Proceedings   139

Motion to Question Veniremen Regarding Mitigating Evidence   141

Motion to Question Veniremen Regarding the Burden of Proof on the Mitigation Special Issue   144

Motion to Question Veniremen on Victim Character Impact Testimony   147

Motion for Discovery of Information Regarding Prior Jury Service   151

Defendant's Motion for Individual Voir Dire   180

Request to Utilize Peremptory Challenges Following Examination of the Entire Venire   182

Motion to *Voir Dire* on Parole Law–40-year Minimum   185

Motion to Videotape the Individual *Voir Dire*   189


STATEMENTS AND IDENTIFICATION
Motion for Production of Witness Statements   193

Motion to Suppress Physical Evidence   196

Motion to Suppress Statements   198

Defendant's Motion for Discovery of *Brady* Material Regarding Confessions, Statements, and
    Oral Declarations that Lead to Previously Undiscovered Evidence   201

Motion to Exclude Evidence of Unadjudicated Extraneous Offenses During the Punishment
    Phase; Motion for Live Line-Up   205

Motion for Identification Hearings and to Exclude Evidence of Illegal Identification   210

Defendant's Motion for List of State's Witnesses   213


MITIGATION
Defendant's Motion regarding Victim Character Impact Testimony after *Moseley v. State*   218

Respectfully Submitted,

Jane Little
State Bar Number 12424210

Mike Byck
State Bar Number 03549500

Jennifer Balido
State Bar Number 10474880

ATTORNEYS FOR DEFENDANT

Dallas County Public Defender's Office
133 N. Industrial Blvd., LB 2
Dallas, Texas 75207
214-653-3550

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document and copies of the motions listed herein were served upon Greg Davis, Assistant District Attorney for Dallas County on the date of filing herein.

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
SPECIAL _____ DEPUTY

F00-02424-M AND F00-23910-M

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

**MOTION TO PRECLUDE PROSECUTION FROM SEEKING THE DEATH PENALTY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion to Preclude Prosecution from Seeking the Death Penalty and as grounds therefore would show this Court as follows:

I. BACKGROUND

In view of the many different capital sentencing schemes that have been in operation in Texas in the post-Furman era, the Texas death penalty has been arbitrarily imposed and, thus, is unconstitutional under the Eighth and Fourteenth Amendments. In order to understand the basis of this claim, this Court must recognize the large number of discrete capital sentencing schemes that have been in operation in Texas capital cases since the early 1970s, when the modern death penalty statutes were enacted in the wake of the Supreme Court's decision in Furman. At a capital murder trial in 1999, a capital defendant's sentencing jury will be instructed pursuant to Article 37.071 of the Texas Code of Criminal Procedure. As discussed below, this is one of many different capital sentencing schemes in operation in Texas since 1973.

Of the many hundreds of persons sentenced to death in Texas since the "modern" capital sentencing statute was enacted, the vast majority were sentenced under jury instructions that simply tracked the unadorned "special issues" contained in the original version TEX. CODE CRIM. PROC. Article 37.071(b) (Vernon's 1989). See generally P.M. McClung, JURY CHARGES FOR TEXAS CRIMINAL PRACTICE 75-78 (rev. ed. 1981). After the landmark decision in Penry v. Lynaugh, 492 U.S. 302 (1989), however, the consistency in Texas capital

00239

sentencing instructions quickly disappeared, both as a result of legislative action and unsupervised judicial improvising by trial courts. See generally Peggy M. Tobolowsky, *What Hath Penry Wrought?: Mitigating Circumstances and the Texas Death Penalty,* 19 AMER. J. CRIM. L. 345 (1992). In 1991, the Texas Legislature enacted an amended, post-Penry version of Article 37.071, which modified the "special issue" format. That statute applies to all crimes committed on or after September 1, 1991; under the 1991 version of the statute, the old version of Article 37.071 applied to all crimes committed before September 1, 1991. See TEX. CODE CRIM. PRO. Art. 37.071 (Vernon 1992). Again in 1993, the Texas Legislature enacted ye3t another amende3d version of Article 37.071. That statute, which became effective September 1, 1993, amended the "special issue" format applicable to all crimes committed before September 1, 1991. See TEX. CODE CRIM. PRO. Art. 37.071 (Vernon 1993).

Roughly speaking, the various types of Texas capital sentencing instructions in the post-Furman era can be broken down into seven different categories, although at least two categories contain sub-sets:

(1) The unadorned "special issues" in the pre-1991 version of Article 37.071. That statute was in effect for all capital murder trials from January 1, 1974 until the date on which Penry was decided on June 26, 1989. For capital murders committed before September 1, 1991, it also was in effect for many cases tried from June 26, 1989 until August 30, 1993, when Art. 37.071 was amended.

(2) The 1991 amended version of the statute. This version of the sentencing instructions has been applied in all capital murder trials for murders committed on or after September 1, 1991. This version of the statute is applicable to Defendant's case.

(3) The pre-1991 statute with an extra-statutory "Quinones"-type instruction. Quinones v. State, 592 S.W.2d 933, 947 (Tex. Crim. App. 1980) (no error to refuse to submit the following extra-statutory instruction to the capital defendant's sentencing jury: "Evidence presented in mitigation of the penalty may be considered should the jury desire, in determining the answer to any of the special issues.") This version of the sentencing instructions was applied at a number of Texas capital murder trials both before and after Penry was decided.

(4) The pre-1991 statute with an extra-statutory <u>Penry</u>-type "fourth special issue." <u>State v.</u> <u>McPherson</u>, 851 S.W.2d 846 (Tex. Crim. App. 1992). This version of the sentencing instructions has been applied in certain trials after <u>Penry</u> for a capital murder committed before September 1, 1991.

(5) The pre-1991 statue with a "nullification" instruction. <u>Fuller v. State</u>, 829 S.W.2d 209 & n.5 (Tex. Crim. App. 1992) ("When you deliberate about he questions posed in the Special Issues, you are to consider any mitigating circumstances supported by the evidence presented at both phases of the trial. A mitigating circumstance may be any aspect of the defendant's character and record or circumstances of the crime which you believe makes a sentence of death inappropriate in this case. If you find there are any mitigating circumstances, you must decide how much weight they deserve and give them effect when you answer the Special Issues. If you determine, in consideration of this evidence, that a life sentence, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, you are instr4ucted to answer at least one of the Special Issues under consideration "No".) This version of the sentencing instructions has been applied at a large number of trials after <u>Penry</u> for capital murders committed before September 1, 1991.

(6) The pre-1991 statute in which "deliberately" is broadly defined. <u>See</u> <u>e.g.,</u> <u>Martinez v.</u> <u>State</u>, 867 S.W.2d 30 (Tex. Crim. App. 1993). This version of the sentencing instructions has been applied in certain trials since <u>Penry</u> was decided for capital murders committed before September 1, 1991.

(7) The 1993 version of the statute as applied to all crimes committed on or before August 30, 1991. Th8is version of the statute will apply to any6 trial or re-trial that commences after August 29, 1993, for capital murders committed on or before August 30, 1991.

Note that the above categories of cases reveal three significant contradictions in the Court of Criminal Appeals' capital sentencing jurisprudence during the last two decades. First, there is the contradiction between <u>Quinones</u> and its progeny and the may recent cases in which the Court has given its imprimatur to the very instruction rejected in <u>Quinones</u>. <u>See</u> <u>e.g.,</u> <u>Fuller v. State</u>, 827 S.W.2d 919 (Tex. Crim. App. 1992). Second, there is the contradiction between <u>Stewart v.</u>

<u>State</u>, 686 S.W.2d 118, 121-24 (Tex. Crim. App. 1980), and at least one case in which the Court has given its imprimatur an extra-statutory charge specifically permitting jurors to consider specific mitigating evidence. See <u>McPherson v. State</u> 851 S.W.2d 846 (Tex. Crim. App. 1992). Also relevant in this regard are the many recent cases in which the Court of Criminal Appeals has given its stamp of approval to "nullification" instructions. See <u>e.g.</u>, <u>Fuller v. State</u>, 829 S.W.2d 191 (Tex. Crim. App. 1992). Finally, there is the contradiction between the Court's consistent refusal to require trial courts to define "deliberately" as used in the first special issue, see <u>e.g.</u>, <u>Russell v. State</u>, 665 S.W.2d 771, 779-80 (Tex. Crim. App. 1983), and the Court's imprimatur of a trial judge's extra-statutory definition of the term in <u>Martinez v. State</u>, 867 S.W.2d 30 (Tex. Crim. App. 1993).

## II. ARGUMENT

In numerous cases, the United States Court has stated, in keeping with our Nation's federalism, that "we are unwilling to say that here is any one right way for a State to set up its capital sentencing scheme". <u>Spaziano v. Florida</u>, 468 U.S. 447, 464 (1984). The Court has stated, however, that *within* a single state, there must be consistency in th3e treatment of capital defendants who are subject to the death penalty. <u>Spaziano</u> at 460 ("If a State has determined that death should be  available for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not".) Thus, "each distinct [state] system must be examined on an individual basis." See <u>Pulley v. Harris</u>, 465 U.S. 37, 45 (1984) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 195 (1976) (joint opinion of Stewart, Powell & Stevens, JJ.)).

In <u>Furman v. Georgia</u>, 408 U.S. 238 (1972), the chief constitutional infirmity that the controlling members of the Court pointed to in their respective concurring opinions was *arbitrariness*. See <u>Furman</u> at 274 (Brennan, J., concurring)("In determining whether a punishment comports with human dignity, we are aided...by...[a] second principle inherent in [the Eighth Amendment Cruel and Unusual Punishments] Clause—that the State much not arbitrarily inflict punishment."); <u>Furman</u> at 309 (Stewart, J., concurring) ("These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual."); <u>see also</u> <u>Spaziano</u>, 468 U.S. at 460.

The above discussion of the various sentencing schemes concurrently in operation in Texas, "a distinct system", Gregg, 428 U.S. at 195, amply demonstrate that the present Texas death penalty system is being implemented in an "arbitrary" manner. At least seven categories of similarly situated capital de3rfendants have been treated disparately. Put another way, it is certainly conceivable that, *ceteris paribus*, a single hypothetical Texas capital defendant would be given a different sentence depending on which of the seven different sentencing schemes was in operation at his trial. This is quintessential arbitrariness—the very type condemned in Furman.

Defendant recognizes that the Texas Legislature was certainly justified in amending Art. 37.071(b) as it did in 1991; indeed Penry certainly appeared to require such. See Shelley Clarke, Note, *A Reasoned Moral Response: Rethinking Texas' Capital Sentencing Statute After Penry v. Lynaugh,* 69 TEX. L. REV. 407 (1990). If that were the only other scheme concurrently in operation with the pre-1991 version of Art. 37.071, in all likelihood Defendant would never have made this claim. But that is not what happened in the wake of Penry.

Rather, numerous trial courts throughout this state and the Texas Legislature have haphazardously created, in addition to the prevailing pre-1991 capital sentencing scheme, a total of at least six new, distinct capital sentencing schemes that have governed similarly or identically situated Texas capital defendants. Particularly noteworthy is the Court of Criminal Appeals' failure to impose uniformity among the practices adopted by the trial courts. Nor is the Legislature free from its share of the blame. By waiting until August 30, 1993, to amend Art. 37.071 as is applies to trials or retrials of capital defendants who committed their crimes before September 1, 1991, the Legislature has sowed the seeds of arbitrariness and inconsistency. Under both identical and analogous circumstances, other States have not dealt with seemingly sweeping invalidations of their post-Furman death penalty statutes in such a chaotic manner. See OREGON REVISED STATUTES, §163.150 (as amended July 24, 1989); State v. Wagner, 786 P.2d 93, 99-100 (Ore. 1990); cf. OHIO REVISED CODE §§2929.02-06 (as amended 1981); State v. Melchior, 381 N.E.2d 195, 200 (Ohio 1978); David J. Benson, *Constitutionality of Ohio's New Death Penalty Statute,* 14 TOLEDO L. REV. 77 (1982).

Fetterly v. Paskett, 997 F.2d 1295 (9th Cir. 1993), presents an analogous situation to the instant case. In that case, the Ninth Circuit condemned an instance of "Furman arbitrariness"

within a single state's capital sentencing system. In particular, the court in dicta stated that a federal constitutional violation occurred when the Idaho Supreme Court's refusal to apply the clear mandate of state capital sentencing law, which governed the weighing of aggravating factors against mitigating factors, to all similarly situated capital defendants. The court's reasoning is cogent and should be applied to Texas' experience:

> In Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the Supreme Court held that states can impose the death penalty for certain crimes without running afoul of our constitutional prohibition against cruel and unusual punishment, but only if the manner in which the penalty is selected "provide[s] a meaningful basis for distinguishing the few cases in which [the penalty is] imposed from the many cases in which it is not". Godfrey at 427. As pointed out by Justice Stevens, "this Court's decisions have make clear that States may impose this ultimate sentence *only if they follow procedures* that are designed to assure reliability in sentencing determinations. Barclay v. Florida, 463 U.S. 939, 958-59, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring) (emphasis added). Part of the requirement of reliability is "that the [aggravating and mitigating] reasons present in one case will reach a similar result to that reached under similar circumstances in another case." Barclay at 954...(quoting Profitt v. Florida, 428 U.S. 242, 251, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell, and Stevens, JJ.))(internal quotations omitted) . Because Fetterly may not have been sentenced to death as prescribed by Idaho Code § 19-2525(c), this goal of similar sentences in similar cases may not have been met.

Fetterly, 997 F.2d at 1299.

Although Texas' experience is different in that it involves a global violation of all Texas capital defendants' rights to be free from arbitrary, inconsistent capital sentencing procedures, while Idaho apparently only violated one or a few defendant's rights, Fetterly's reasoning applies equally to Texas. The bottom line is that Texas courts and the state Legislature, without any discernible rational basis, have haphazardly turned Texas' capital sentencing scheme into a patch-work quilt. Because similarly situated Texas capital defendants have been unjustifiably sentenced to death under radically different sentencing schemes, this Court must preclude the State from seeking the death penalty in the instant case.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant this motion.

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
State Bar No. 10474880

Public Defenders Office
133 N. Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550

ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

*Jennifer Balido*

ORDER

On the 6-04-0/ the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED / DENIED**.

Judge Presiding

00245

FILED
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

NO. F00-02424-M AND F00-23910-M

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

## MOTION TO QUASH BASED ON UNCONSTITUTIONALITY OF TEXAS CAPITAL SENTENCING SCHEME

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion to Quash Based on Unconstitutionality of Texas Capital Sentencing Scheme, and in support of said motion would show:

I.

A. The Texas death penalty scheme violates the Eighth and Fourteenth Amendments to the United States Constitution because a death sentence imposed under article 37.071 is not subject to meaningful appellate review. A death penalty statute which is not subject to meaningful appellate review is unconstitutional. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909 (1976).

The Texas Court of Criminal Appeals has expressly held that the so-called "mitigation" issue is not legally or logically subject to sufficiency review on appeal. E.g., Colella v. State, 915 S.W.2d 834 (Tex. Crim. App. 1995); Lawton v. State, 913 S.W.2d 542 (Tex. Crim. App. 1995); Broussard v. State, 910 S.W.2d 952 (Tex. Crim. App. 1995). Because the mitigation issue contained in Article 37.071§2(e) is open-ended and unstructured --i.e., not enumerating a list of mitigating and aggravating factors and not requiring jurors to make specific "findings" in this regard--the Court of Criminal Appeals has no way to know which aggravating and mitigating factors that jurors considered. Thus, the appellate court has no way to know how, and indeed whether, the jury considered all of the constitutionally relevant mitigating evidence offered at trial. In this way, meaningful appellate review is impossible.

00246
G

And recent court decisions indicate that even the first special issue under article 37.071§2(b)(1) has become incapable of meaningful review on appeal. See Martinez v. State, 924 S.W.2d 695 (Tex. Crim. App. 1996) (Baird & Maloney, J.J. , dissenting).

The second special issue, the so-called "anti-parties" instruction is legally meaningless in Texas. Every person who has been found guilty of intentionally or knowingly causing the death of an individual in the first phase of the trial will necessarily meet the requirements for an affirmative answer to the second special issue. See Lawton v. State, 913 S.W.2d 542 (Tex. Crim. App. 1995).

B. Meaningful appellate review of a death penalty verdict is also required under Article I, §§ 3, 3a, 10, 13, and 19 of the Texas Constitution and Article 44.251 of the Texas Code of Criminal Procedure.

II.

A. The statutory "mitigation" special issue is unconstitutional because it fails to place the burden of proof on the state regarding aggravating evidence. The Supreme Court has held that the Eighth Amendment requires the State to prove the existence of aggravating factors during the capital punishment phase. See, e.g., Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 3055 (1990) ("State's method of allocating burdens of proof [during capital sentencing phase cannot] lessen the State's burden... to prove the existence of aggravating circumstances"). In order to understand why Walton applies to the statutory "mitigation" special issue, the Court must recognize that this special issue is a conduit for aggravating (as well as mitigating) factors. By asking jurors to determine whether there are "sufficient ... mitigating circumstances," the statutory special issue in effect tells jurors to consider any possible aggravating factors that may outweigh the mitigating factors present in the case. Although the statute does not explicitly use the term "aggravating circumstance," clearly that is how a reasonable juror would interpret the statute. Cf. Johnson v. Texas, 509 U.S. 350, 113 S.Ct. 2658 (1993) (describing jurors' determination of answer to "future dangerousness" special issue to require balancing of aggravating and mitigating circumstances). Because the statute is silent about whether the state or the defense has the burden of proof on aggravating factors, and moreover, because the language of the special issue implies that the burden to disprove aggravating circumstances is on the defense, the statute is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution.

00247

9

B. This failure of the statute to allocate to the state the burden of proof beyond a reasonable doubt concerning mitigation evidence also violates Article I, §§ 3, 3a, 10, 13 and 19 of the Texas Constitution. Under the "due course of law" provision of the Texas Constitution, Article I §10, the citizens of this state are guaranteed that any punishment for an offense will be in accordance with the law. McFarlane v. State, 254 S.W.2d 136, 137 (Tex. Crim. App. 1953). When the burden of proof is shifted to the defendant, the state's burden has essentially been reduced. See e.g., Corbarrubio v. State, 675 S.W.2d 749 (Tex. Crim. App. 1983) overruled in part, Lawrence v. State, 700 S.W.2d 208 (Tex. Crim. App. 1985), and Elliot v. State, 858 S.W.2d 478, 487-488 (Tex. Crim. App. 1993). Such a punishment, based on a reduced burden, is not in accordance with Texas law and is unconstitutional.

III.

The statutory "mitigation" special issue is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution because it permits the very type of open-ended discretion condemned by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726 (1972). In Furman, in which the Supreme Court struck down capital punishment as it then was being administered, the chief constitutional infirmity that the controlling members of the Court pointed to in their respective concurring opinions was arbitrariness. In particular, the Court condemned the open-ended, unstructured discretion that was given to capital sentencing juries. See also, Gregg v. Gerogia, 428 U.S. 153, 96 S.Ct. 2909 ( 1976); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154 (1984).

In the years following the Supreme Court's decision in Penry v. Lynaugh, 109 S.Ct.2934 (1989), the Texas Legislature enacted a new capital sentencing scheme that sought to cure the constitutional defect in the former capital sentencing scheme identified by the Court in Penry. The new statutory "Penry" special issue contained in Article 37.071 of the Texas Code of Criminal Procedure, provides as follows:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Five members of the modern Supreme Court have, directly or indirectly, condemned an open-ended, unstructured capital sentencing instruction--such as Texas' statutory "Penry" special issue--as violative of the Eighth and Fourteenth Amendments to the United States Constitution. See Penry v. Lynaugh, 492 U.S. 302, 360, 109 S.Ct. 2934, 2969 (1989) (Scalia, J. dissenting, joined by Rehnquist, C.J., White, J. & Kennedy, J.) ("In holding that the jury had to be free to deem Penry's mental retardation and sad childhood relevant for whatever propose it wished, the Court has come full circle, not only permitting but requiring what Furman once condemned."); Graham v. Collins, 506 U.S. 461, 496, 113 S.Ct. 892, 903-15 (1993) (Thomas, J. concurring) ("Penry reintroduces the very risks that we had sought to eliminate through the simple directive that States in all events provide rational standards for capital sentencing."). In dicta, Justice Thomas has explicitly suggested that the type of sentencing scheme in operation at defendant's trial violates Furman. See Graham, 506 U.S. at 495 n.9, 113 S.Ct. at 913 n.9 (discussing the present Texas capital sentencing statute).

<div align="center">IV.</div>

A. The Texas capital sentencing statute's definition of "mitigating evidence" is unconstitutional because it limits the Eighth Amendment concept of "mitigation" to factors that render a capital defendant less morally "blameworthy" for commission of the capital murder. The present Texas capital sentencing statute defines "mitigating evidence" as "evidence that a juror might regard as reducing the defendant's moral blameworthiness." Tex. Code Crim. Proc. Ann. arts. 37.071 §2(c)(4) & 37.0711 §3(f)(3) (Vernon 1994). This definition of "mitigating evidence" is unconstitutionally narrow. The Supreme Court has held that constitutionally relevant mitigating evidence is not simply that type of mitigating evidence that relates to a capital defendant's moral culpability or blameworthiness for the crime, but also includes any mitigating evidence relevant to a defendant's character, history, or circumstances of the crime that militates in favor of a life sentence. See e.g., Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669 (1986). Numerous types of constitutionally relevant mitigating evidence thus have nothing to do with a capital defendant's moral culpability or blameworthiness -- such as a history of positive character traits, kindness shown toward children, or artistic talent. Although the statutory "Penry" special issue speaks of "the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant," the statute's separate definition of "mitigating evidence" limits jurors' consideration of such evidence to those mitigating factors that specifically implicate the

<div align="right">00249</div>

defendant's moral blameworthiness. Therefore, the statute's limited definition of "mitigating evidence" violates the Eighth and Fourteenth Amendments to the United States Constitution.

     B. The Texas capital sentencing statute, which limits the jury to consideration of the special issues, does not permit the jury to consider and give effect to all the mitigating circumstances which exist concerning defendant, in violation of Article I, §§ 10, 13 and 19 of the Texas Constitution.

<p style="text-align:center">V.</p>

     The "mitigation" special issue is unconstitutional because it fails to require that mitigation be considered. A juror is required to consider all mitigation. After the juror has considered the mitigation, it is then up to the juror to determine what effect to give the mitigation. Capital murder statutes that have survived constitutional scrutiny all require that the jury be told that it must consider all mitigating evidence. E.g., Johnson v. Texas, 509 U.S. 350, 113 S.Ct. 2658 (1993); Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190 (1990); Blystone v. Pennsylvania, 494 U.S. 299, 110 S.Ct. 1078(1990). Failure to mandate consideration of mitigating evidence makes this statute unconstitutional in violation of the Eighth Amendment.

<p style="text-align:center">VI.</p>

     The Texas capital punishment scheme unconstitutionally chills defendant's ability to present relevant mitigating evidence to the jury, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and Article I §§ 10, 13, and 19 of the Texas Constitution.

<p style="text-align:center">VII.</p>

     The unconstitutional chilling effect described in paragraph VI above denies defendant the effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I §10 of the Texas Constitution.

<p style="text-align:center">VIII.</p>

     The Texas death penalty scheme gives prosecutors unfettered discretion in deciding whether to seek the death penalty in any particular case in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10, 13 and 19 of the Texas Constitution.

## IX.

Article 37.071 of the Texas Code of Criminal Procedure mandates that the "jury should return a special verdict of 'yes' or 'no' on each issue submitted." It further requires the court to instruct the jury that it may not answer "yes" unless it agrees unanimously, and that it may not answer "no" unless 10 or more jurors agree. The article mandates a life sentence if the jury is unable to agree on a special verdict. And the article provides that nobody inform jurors that a failure to agree on a special issue will result in a life sentence. These provisions considered together violate the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution for the following reasons:

1. Informing a juror that he shall answer the questions "yes" or "no" might reasonably cause this juror to shift his position to satisfy the requirements of the "10-12" rule.

2. The statutory prohibition against informing jurors of the impact of his individual vote relieves him of psychological responsibility for the jury's collective decision to impose death as punishment.

3. The statutory prohibition fails to provide the jury with accurate information concerning the sentencing process in Texas. See State v. Williams, 392 So.2d 619, 633 (La. 1980)(on rehearing); State v. Ramseur, 524 A.2d 188, 284 (N.J. 1987); Kubat v. Thieret, 867 F.2d 351, 369-73 (7th Cir.), cert. denied, 493 U.S. 874, 110 S.Ct. 206 (1989). See also Andres v. United States, 333 U.S. 740, 752, 68 S.Ct. 880, 886 (1948) (federal capital case).

4. The statutory 10 vote prerequisite to a "no" response establishes an artificial numerical threshold which bears no relationship to conditions required by Texas law for assessment of a life sentence. See, R. Clary, Voting for Death: Lingering Doubts About the Constitutionality of Texas' Capital Sentencing Procedure, 19 St.M.L.J. 353, 374-75 (1987).

5. The statutory "10-12" provision violates the constitutional principles discussed in Mills v. Maryland, 486 U.S. 376, 108 S.Ct. 1860 (1988); see also McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227 (1990). The "10-12" provision requires that, in order for the jury to return answers to the special issues that would result in a life sentence, (i) at least ten jurors must vote "no" in answering the first special issue, (ii) at least ten jurors must vote "no" in answering the second special issue, or (iii) at least ten jurors must vote "yes" in answering the "mitigation" special issue. Defendant contends that this "10-12" provision violates the Eighth and Fourteenth Amendments because there

is a reasonable possibility that, under the present Texas capital sentencing scheme, all twelve jurors in a capital case could believe that a life sentence would be appropriate under state law, but because at least ten jurors could not collectively agree on their answer to any one of the special issues, the jury could not return a life sentence.

### X.

The Texas capital punishment scheme is unconstitutional in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14 and 19 of the Texas Constitution, because it does not provide for the possibility of a life sentence without parole, which virtually insures that the jury will impose a death sentence.

### XI.

The Texas capital punishment scheme, which permits the admission of unadjudicated extraneous offenses at punishment, does not comport with the heightened reliability required by the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14, and 19 of the Texas Constitution.

### XII.

The Texas death penalty scheme is a mandatory one, in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14, and 19 of the Texas Constitution.

### XIII.

The Texas death penalty scheme is unconstitutional in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14 and 19 of the Texas Constitution, because it does not define the various terms and phrases used in the  special issues in ways that would permit the jury to give full mitigating significance to those terms.

### XIV.

The terms in the first special issue--probability, criminal acts of violence, and continuing threat to society-- are undefined and are vague and imprecise. As such, they do not guide the sentencer's discretion. It violates the Eighth and Fourteenth Amendments of the United States Constitution for the state to use aggravating factors to determine the death sentence which do not guide discretion due to vagueness and imprecision. See Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130 (1992).

XV.

The procedure by which the death penalty is imposed in Texas denies the defendant protection from cruel and unusual punishment. A close analysis of the statute reveals that the system for imposition of the death penalty permits arbitrary and unchecked discrimination amounting to a denial of equal protection under the law. Pursuant to the provisions of the Texas statutes, two persons could commit capital offenses under similar circumstances, yet one could receive the death penalty and the other life imprisonment. The special issue submission pursuant to Article 37.071 provides no real standard for the guidance of juries in death penalty cases. Turning to the issues themselves, one can readily see that they are couched in nebulous terms that defy a realistic answer. There is no properly defined policy for assisting jurors with the life and death question. The only guidance which the court gives the jury under Article 37.071, concerning capital punishment, is simply to submit these rather meaningless issues, affirmative answers to which result in a mandatory death sentence. Consequently, the defendant is not adequately protected from jurors acting arbitrarily and with caprice in arriving at the awesome decision between life and death.

XVI.

The Defendant has a right to be free from punishment imposed arbitrarily and capriciously in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I §§13 and 19 of the Texas Constitution. The special issues procedure set out in Article 37.071 allows total discretion to a jury to make unfavorable findings against a defendant, and such findings may be based on any prejudices the jury may have, individually or as a whole.

XVII.

Article 37.071 is so vague and indefinite as to be incapable of interpretation by reasonable men and is therefore facially void as violating the Defendant's rights to due process and due course of law and fundamental fairness guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I §§ 10, 13 and 14 of the Texas Constitution.

XVIII.

The statutes upon which said prosecution is based are violative of the Eighth Amendment to the United States Constitution and Article I §§ 13 and 19 of the Texas Constitution in that the death penalty is not a deterrent to future homicides.

XIX.

Article 37.071 is violative of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article §§ 10, 13 and 19 of the Texas Constitution in that whether there is a "probability" the defendant would commit violent criminal acts in the future is a "vague" and indefinite inquiry because there is always some mathematical probability that any person might commit a violent act in the future and the statute provides no guidelines or other statutory limitations upon the factors to be considered by the jury in making that determination.

XX.

Death by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13, and 19 of the Texas Constitution.

XXI.

Capital punishment is per se violative of the Eighth Amendment protection against cruel and unusual punishment and the Fourteenth Amendment right to due process of law. The death penalty cannot be justified as furthering any of the accepted purposes of punishment.

XXII.

The Texas death penalty scheme does not provide for meaningful appellate review because it does not require a proportionality review, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution.

XXIII.

Interpreting Article 35.13 of the Texas Code of Criminal Procedure to require peremptory challenges to be made prior to examination of the entire jury panel in capital cases only denies the right to effective assistance of counsel, a fair and impartial jury, due process, due course, and equal protection under the laws as guaranteed by the United States and Texas Constitutions.

XXIV.

The death penalty in Texas is, and for many years has been, administered in a manner that purposefully discriminates against members of minority races in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution.

XXV.

The Texas death penalty scheme does not properly narrow the class of persons eligible for the ultimate punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution.

XXVI.

Under  Texas law, a capital jury may not be informed that the defendant would have to serve at least 40 years in prison before becoming eligible for parole on a life sentence. Without such information , a jury will not have an accurate and proper understanding of the parole system in Texas. That is, the jury will be required to predict the defendant's future danger to society without knowing how long he will have to be incarcerated. Such an uninformed prediction promotes arbitrary, capricious and standardless sentencing, in violation of the Eighth and Fourteenth Amendments and Article I, §§ 10, 13, and 19 of the Texas Constitution, and fails to promote the concept of individualized sentencing and heightened reliability required by those constitutional provisions.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the indictment be quashed and the prosecution dismissed.

Respectfully submitted,

Jennifer Balido
State Bar No. 10474880
Public Defenders Office
133 N.Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion to Quash was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

ORDER

On 6-04-01, the Court having considered the above and foregoing motion, finds the same is hereby GRANTED / DENIED.

Judge Presiding

F00- 02424-M and F00-23910

FILED

'FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

## MOTION TO DECLARE JURY SELECTION PROCEDURE UNCONSTITUTIONAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the Defendant in the above entitled and numbered cause, by and through his attorney of record, and files this Motion to declare the jury selection procedure in capital murder cases unconstitutional for the following reasons.

I.

The procedure for the selection of jurors in a capital murder case violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 19 of the Texas Constitution and is therefore unconstitutional.

II.

Article 35.16(b)(1) of the Texas Code of Criminal Procedure provides that the State may challenge for cause a juror who has conscientious scruples in regard to the infliction of the punishment of death for crime, in a capital case, where the State is seeking the death penalty. This criteria is in direct conflict with Witherspoon v. Illinois, 88 S.Ct. 1770 (1968) and Wainwright v. Witt, 105 S.Ct. 844 (1985). In Witt the criteria was established as to whether a juror's view on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

III.

While the trial judge may well instruct the prospective jurors in the language of Witherspoon and Witt; so long as the language of Article 35.16(b)(1) uses the term

00257

19

"conscientious scruples" the prospective jurors will automatically equate <u>Witt</u>'s criteria with conscientious scruples;  and will claim to be disqualified when in truth and in fact they are not disqualified. Article 35.16(b)(1) violates the Defendant's right of due process and is therefore clearly unconstitutional.

IV.

In addition during the voir dire of the jury panel by the Court, the prospective jurors will be instructed in regards to the punishment procedure in Article . 37.071 of the Texas Code of Criminal Procedure. This article prohibits the prospective jurors from being informed of the effect of a failure of a jury to agree on the issues submitted to them. They are only informed that the jury may not answer the special issue "yes" unless they agree unanimously and may not answer the issue "no" unless 10 or more jurors agree. Such instruction results in a false and misleading inference that the jury must arrive at a verdict and therefore violates due process because of its coercive effect on the jury. Without accurate instruction the jurors will be misled into believing that a "hung jury" at the punishment stage of the trial would result in a re-trial of the entire case which normal jurors would seek to avoid. Such a denial of this aspect of the law violates the Eighth and Fourteenth Amendments to the United States Constitution.

V.

In all criminal prosecutions the accused has a right to a trial by an impartial jury. This Sixth Amendment right has been held to mean a trial by ones peers or ones equals. A "death-qualified" jury is by definition not composed of ones equals but is composed of individuals who are prejudiced against anyone charged with a capital offense. Numerous studies have shown that such juries are prosecution prone and more likely to vote for a conviction than are jurors in non-death qualified panels. Furthermore, death qualification excludes a large portion of certain groups from jury service, i.e.: blacks, Hispanics and females, resulting in stacking the deck against the Defendant.  A "death-qualified" jury violates the defendant's right to due process and equal protection of the laws.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that after notice and hearing this Motion be granted and Articles 36.16(b)(1) and 37.071 of the Texas Code of Criminal Procedure be held unconstitutional.

Respectfully submitted,

Jane Little
State Bar No. 12424210

Mike Byck
State Bar No. 03549500

Jennifer Balido
Public Defenders Office
133 N.  Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion  was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

Balido

ORDER

On 6-04-01 the Court having considered the above and foregoing motion, finds the same is hereby GRANTED / DENIED.

Judge Presiding

00259

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

NO. F00-02424-M AND F00-23910

| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY,TEXAS |

**DEFENDANT'S OBJECTION TO PROPOSED PUNISHMENT CHARGE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and makes the following objections to the Court's proposed charge, and further requests certain additional instructions:

I.

Defendant requests that, if this Court overrules his motion to exclude evidence of unadjudicated extraneous offenses and "bad acts", this Court should at least submit the following limiting instructions:

**During the punishment phase, the state has introduced evidence of one or more unadjudicated extraneous offenses—that is, crimes against the laws of Texas allegedly committed by the defendant for which he has not been convicted in a court of law or other non-criminal "bad acts". In deciding whether the Defendant committed any alleged unadjudicated extraneous offenses or bad acts, the jury must not consider the fact that the defendant committed the capital murder alleged in the indictment. That is, you should not presume that the defendant has a propensity to commit criminal acts generally, merely because you have convicted him of committing the crime of capital murder. The state must prove to you beyond a reasonable doubt that the Defendant committed any unadjudicated extraneous offenses.**

**Furthermore, if you find that the Defendant committed one or more unadjudicated extraneous offenses, you must not consider that fact in deciding whether he committed other unadjudicated extraneous offenses alleged by the state.**

00260

11

The State has introduced evidence that the Defendant has committed unadjudicated criminal offenses and/or bad acts. You shall only consider such evidence in answering the special issue that deals with the issue of "continuing threat" and not for any other purpose.

The State has introduced evidence that the Defendant has committed unadjudicated criminal offenses and/or bad acts. You shall only consider such evidence if the State proves to you that the Defendant in fact committed such crimes or bad acts. You shall presume that the Defendant is innocent of such alleged crimes or bad acts unless and until the State proves beyond a reasonable doubt that the Defendant committed such crimes or bad acts.

Defendant contends that he is entitled to these instructions under the Sixth Amendment, the Eighth Amendment, the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____**GRANTED**
_____ **DENIED**

II.

Assuming that this Court denies Defendant's motion to entirely exclude evidence of unadjudicated extraneous offenses during the sentencing phase, Defendant requests that the Court at least submit special verdict forms that require the jury to specify whether jurors unanimously found each and every alleged unadjudicated extraneous offense to have occurred. Such special verdict forms are required to assure meaningful appellate review of a jury's affirmative answer to the "future dangerousness" issue. Meaningful appellate review is required by the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 13 of the Texas Constitution.

_____**GRANTED**
_____ **DENIED**

00261

III.

Defendant requests that this Court submit, along with the "Penry" or mitigation special issue, special verdict forms listing all possible mitigating factors raised by the evidence in this case. Jurors should be instructed to list which factors, if any, that they considered in answering the mitigation special issue. Such special verdict forms are required to assure meaningful appellate review of the jury's answer to the mitigation special issue. Meaningful appellate review is required by the Eighth and Fourteenth Amendments to the United States Constitution and  Article I, §§ 13 of the Texas Constitution.

_____GRANTED
_____ DENIED

IV.

Defendant requests the following special instruction:

**The law requires that you *must consider* any and all mitigating factors that are established by the evidence. That is, if one or more particular mitigating factors is proven by the evidence, whether that evidence was offered by the state or the defense, you must at least consider that evidence in mitigation of punishment. What weight you assign to any or all mitigating factors is within your judgment by you cannot assign a mitigating factor no weight by excluding it from your consideration entirely.**

Defendant contends that he is entitled to this instruction under the Eighth and Fourteenth Amendments to the United States Constitution and  Article I, §§ 13 of the Texas Constitution.

_____GRANTED
_____ DENIED

V.

Defendant requests the following special instruction:
**You are instructed that in answering the mitigation special issue, you must not consider the subject matter of the first special issue – namely, whether the Defendant  poses a future threat to society—for any purpose.**

00262

Defendant's Objection to Proposed Punishment Charge – Page 3 of 9

Defendant contends that he is entitled to this instruction both as a matter of statutory construction and under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 13 of the Texas Constitution.

_____**GRANTED**

_____**DENIED**

VI.

Defendant requests the following instruction:

**In considering the special issues and deciding whether there is a sufficient mitigating factor or factors to warrant a life sentence, the prosecution has the burden to prove the existence of any and all aggravating factors. It is not the burden of the Defendant in the first instance to disprove the existence of any aggravating factors.**

Defendant contends that he is entitled to this instruction under the Eighth and Fourteenth Amendments. See, e.g., Walton v. Arizona, 110 S.Ct. 3047 (1990) and Article I, §§ 13 of the Texas Constitution.

_____**GRANTED**

_____**DENIED**

VII.

Defendant requests the following definition:

**The term "mitigating" evidence or "mitigating factors" as used herein means any type of evidence relating to the Defendant's background, character, or the circumstances of the crime that would militate in favor of a life sentence rather than a death sentence. Evidence may be mitigating even if it does not relate in any way to the Defendant's moral culpability or moral blameworthiness for the capital murder listed in the indictment.**

Defendant contends that he is entitled to the definition under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 13 of the Texas Constitution.

_____**GRANTED**

_____**DENIED**

VIII.

00263

Defendant requests the following instruction:

**You are instructed that if the jury is unable to agree on either a Yes or No answer, as previously explained in this charge, that the failure to answer a Special Issue will cause the Defendant to receive a life sentence.**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____**GRANTED**
_____ **DENIED**

## IX.

Defendant requests the following instruction:

**You are instructed that certain evidence introduced to you has been offered in mitigation of the Defendant's punishment. That evidence, including youth and mental health testimony, may only be considered by you as mitigation of his punishment.**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____**GRANTED**
_____ **DENIED**

00264
26

## X.

Defendant requests the following instruction:

**If you decide that an aspect of the Defendant's character and record or circumstances of the crime is a mitigating circumstance, you must not give it aggravating effect. Thus, if in your judgment, a mitigating circumstance independently calls for a life sentence even though it also tends to support a "yes" answer to a Special Issue, you must not answer the Special Issue "yes", but rather you should answer it "no".**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, § 10 of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____**GRANTED**
_____**DENIED**

## XI.

Defendant requests the following instruction:

**You are instructed that you are not to consider the impact of this offense on the victim in the case in chief in answering the Special Issue concerning whether the Defendant will be a continuing threat to society.**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____**GRANTED**
_____**DENIED**

00265

## XII.

Defendant requests the following instruction:

**You are instructed that you are not to consider the impact of this offense on the victim of any alleged extraneous offenses. Such evidence is not cognizable under any of the Special Issues.**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____GRANTED
_____DENIED

00266

7 8

XIII.

Defendant requests the following instruction:

You are instructed that mitigating circumstances are not intended as a justification or excuse for a killing or to reduce it to a lesser degree of crime. Instead, a mitigating circumstance is a fact or group of facts which has one of two purposes: (1) a mitigating circumstance may extenuate or reduce the moral culpability of this Defendant for this crime, or (2) a mitigating circumstance may make the Defendant less deserving of the extreme punishment of death.

Our law requires consideration of more than just the bare facts of the crime. A mitigating circumstance may stem from any of the diverse frailties of humankind.

It would be your duty to consider as a mitigating circumstance any aspect of the Defendant's background, character, age, education, environment, behavior and habits which makes him less deserving of the extreme punishment of death.

You may consider as a mitigating circumstance any circumstance which tends to justify the penalty of life imprisonment or that the Defendant contends as a basis for a sentence less than death.

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____GRANTED
_____DENIED

XIV.

Defendant requests the following instruction:

The mitigating circumstances are factors that you should take into account as reasons for deciding to impose a sentence of life imprisonment. You should pay careful attention to each of those factors. Any one of them, standing alone, may be sufficient to support a decision that life imprisonment is the appropriate punishment for Defendant. However, you should not limit your consideration of mitigating circumstances mentioned. You may also consider any other circumstances relating to the case or to Defendant as reasons for imposing a sentence of life imprisonment.

Defendant's Objection to Proposed Punishment Charge – Page 8 of 9

00267

Defendant contends that he is entitled to this instruction under the Sixth

Amendment, the Eighth Amendment, and the due process clause of the Fourteenth

Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas

Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____**GRANTED**
_____ **DENIED**

XV.

Defendant requests the following instruction:

**If you see fit, and regardless of your findings on the other issues, you are always free to afford Defendant mercy in these proceedings and sentence him to life imprisonment. This decision is solely in your discretion and not controlled by any rule of law. Each juror may decide to grant mercy to Defendant with or without an articulable reason. You may, in particular, decide to grant mercy to the Defendant because of any feelings of sympathy for the Defendant arising from the evidence in the case.**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.

_____**GRANTED**
_____ **DENIED**

XVI.

Defendant requests the following instruction:

**The prosecution must prove beyond a reasonable doubt that there is a probability that the Defendant will commit criminal acts of violence on a continuing basis. This probability exists only if it is substantially more likely than not that he will continually commit crimes of violence. To determine whether a probability exists beyond a reasonable doubt, you must decide whether you have a reasonable doubt about any of the facts which you believe must be true to conclude that it is substantially more likely than not that the Defendant will continually commit violent crimes. If you have a reasonable doubt about the truth of any of these facts, you must answer this Special Issue "no" even if the controlling facts are probably true.**

Criminal acts of violence are illegal acts which result in physical injury or the threat of physical injury to living persons. Crimes against property or nonviolent crimes are not criminal acts of violence even if they pose a threat to society.

To answer this Special Issue "yes", you must find that the Defendant's violent conduct will probably continually threaten society as long as he lives. Thus, if you do not believe that it is substantially more likely than not that the Defendant will continue to commit violent crimes, you must answer this Special Issue "no", even if you believe that there is some probability that he will commit one or more criminal acts of violence in the future.

When you decide whether the Defendant will continually commit violent crimes, you must consider the fact that if given a life sentence he will be sentenced to life in prison and will therefore not live among society in the free world. Thus, if you believe that the Defendant will not continually commit violent crimes in prison, you must answer this Special Issue "no" even if you believe there is a likelihood he would do so if he was a free man.

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment, Article I, §§ 10 and 13 and the due course of law clause of the Texas Constitution, and Article 1.04, 1.05 and 36.29 of the Texas Code of Criminal Procedure.


_____ GRANTED
_____ DENIED


WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be granted.

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
State Bar No. 10474880
Public Defenders Office
133 N. Industrial Blvd., LB 2
Dallas, TX 75207

00270

2 7

214-653-3550

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing motion was personally delivered to the Dallas County District Attorney's Office on the same date of filing herewith.

_____

ORDER

On the _____, the Court having considered the above and foregoing Motion finds the same is hereby GRANTED or DENIED as indicated above.

_____
Judge Presiding

Defendant's Objection to Proposed Punishment Charge – Page 12 of 9

00271
33

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

FILED
FEB 27 700?
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**OMNIBUS PRETRIAL MOTION**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Jedidiah Isaac Murphy, the defendant in the above-styled and numbered causes, pursuant to Art. 39.14, Texas Code of Criminal Procedure, and files this his Omnibus Pretrial Motion, requesting and pleading the following:

**I.**

**EXCULPATORY OR MITIGATORY EVIDENCE**

The defendant requests the disclosure of any and all exculpatory and/or mitigatory evidence or evidence favorable to the defendant in any way which the prosecution or any law enforcement agency may have in its possession or within its knowledge or which it has a duty to inquire concerning this defendant or this case. Kyles v. Whitley 115 S. Ct. 1555 (1995), Brady v. Maryland, 373 U.S 83 (1963), Ex Parte Adams, 768 S.W. 2d 281 (Tex. Cr. App. 1989), and O'Rarden v. State 777 S.W. 2d 455.

00272

*"We extend Brady to include the required revelation to an accused, even absent request of exculpatory or mitigatory evidence in the possession of prosecutor, police agencies, and other parts of the prosecutorial team."* U. S. Supreme Court, Kyles v. Whitley, supra.

[X] GRANTED          [ ] DENIED

## II.

## IDENTIFICATION HEARING

The Defendant requests an identification hearing outside the presence of the jury.

[ ] GRANTED          [ ] DENIED          [ ] WAIVED

## III.

## CONFESSION/STATEMENTS HEARING

The defendant requests a sub rosa hearing prior to the introduction of any statements allegedly made by the defendant, either orally or in writing, to determine the voluntariness and admissibility of them, and requests disclosure of these statements prior to trial. Jackson v. Denno, 378 U.S. 368 (1964).

[ ] GRANTED          [ ] DENIED

## IV.

## DISCLOSURE OF PHYSICAL EVIDENCE AND TEST RESULTS

The Defendant request the production and disclosure of all physical evidence or tangible items, objects, and matters not the work product of the State which are or may be relevant to the guilt or innocence or punishment of the accused, and which evidence will or may be offered by the State in the trial of this cause. Further, the defendant requests the State to produce, prior to trial, any laboratory reports or expert opinions

00273

25

pertaining to any tests conducted at the request of the State or any law enforcement

agency or any physical or tangible evidence.

 [X] GRANTED          [ ]  DENIED

## V.

## LIST OF WITNESSES

The defendant requests a list of witnesses who will or may be called by the State

at the guilt/innocence phase of the trial or the punishment phase. <u>Hoagland v. State</u>, 494

S.W.2d 186 (Tex. Cr. App. 1973).

 [ ] GRANTED          [ ]  DENIED

## VI.

## IMPEACHMENT EVIDENCE/EXTRANEOUS OFFENSES

Pursuant to Rule 404 (b), Texas Rules of Criminal Evidence, the defendant:

a) requests notice of the State's intent to use extraneous offenses at trial, and

b) requests a hearing out of the presence of the jury before any evidence of:

1)      extraneous transactions, or

2)      evidence of other crimes, wrongs, or acts allegedly committed by the
defendant,

3)      or reputation testimony,

4)      or impeachment by conviction of prior offenses, if offered by the
State, in order to determine admissibility of this evidence.

c) Further, pursuant to Article 37.07 Tx. Code of Criminal Procedure, the defendant
requests a hearing outside the presence of the jury to determine the relevance of any:

1)      prior criminal record,

2)      reputation or character evidence, or

00274
2/

3)    extraneous crime or bad act allegedly committed by him, which the State would seek to introduce before the jury in the punishment phase of the trial.

d) and the defendant requests specific notice of any such matter prior to trial.

The defendant specifically objects to the introduction of extraneous non-charged offense evidence before the jury in any form, or at any stage of the proceeding.

[X] GRANTED          [  ]  DENIED

## VII.

## JURY SHUFFLE

The Defendant requests that a shuffle be made of the jury panel.

[  ] GRANTED      [  ]  DENIED      [X] WAIVED

## VIII.

## ARRAIGNMENT

The defendant requests arraignment out of the presence of the jury.

[X]  GRANTED          [  ]  DENIED

## IX.

## COMPLETE RECORD OF TRIAL

The defendant requests that a complete record be made of the trial, including voir dire, all testimony, bench conferences, and argument of counsel.

[X] GRANTED          [  ]  DENIED

00275

37

## X.

### WRITTEN STATEMENTS/REPORTS MADE OR READ BY WITNESSES

The defendant requests that the State make available to counsel any and all written statements made or adopted by a witness who testifies, and/or any statements used by a witness to refresh his memory as to the events involved in the trial, at such time as the State passes the witness for cross-examination.

 [X] GRANTED       [  ] DENIED

## XI.

### GRAND JURY TESTIMONY

The defendant requests that counsel for the defendant be permitted to examine the testimony of each witness who testified before the Grand Jury at such time as they are passed for cross-examination, and to be advised, prior to trial, of the names of any persons who testified in regard to this case at the Grand Jury hearing. Dennis v. U.S., 384 U.S. 855 (1966).

 [X] GRANTED          [  ] DENIED     [  ] INAPPLICABLE

## XII.

### PROOF OF LEGALITY OF SEIZURE OF PHYSICAL EVIDENCE

The defendant requests a hearing outside the presence of the jury to determine the admissibility of any physical evidence recovered during the investigation of this case and which the District Attorney intends to offer as evidence herein, and would request that the Court suppress this evidence if the Court determines that the evidence was obtained in

violation of the United States Constitution of Federal Law or the Constitution or laws of the

State of Texas.  Art. 38.23, Code of Criminal Procedure.

[ ]   GRANTED            [ ]   DENIED

## XIII

### IMPEACHMENT EVIDENCE OF STATE'S WITNESSES

The defendant requests that the Court order the State to produce, prior to trial:

a)   all criminal records of witnesses that they intend to call to the stand
in the trial of this case, and further,

b)   to determine and disclose any pending criminal charges that
prospective witnesses may have.

Further, the defendant requests that the State disclose to the defendant

c)   whether it has made, promised, or implied any promises, benefit, or
concessions to any prospective witness in order to induce or influence
his testimony, and

d)   to determine and disclose whether any such benefits or inducements
have been made to any witness by any law enforcement agency or by
any other individual,

e)   or whether any individual has coerced, forced, or threatened the
witness in any way in order to procure the witnesses testimony.

[X]   GRANTED            [ ]   DENIED

f)   any other witness) bias or prejudice known to or discoverable by the
State.

[X] GRANTED            [ ] DENIED

## XIV.

### CERTIFIED DOCUMENTS

The defendant requests notice of the State's intent to offer certified documents in evidence in the trial of this case, and requests disclosure of them prior to trial.

 GRANTED          [  ]   DENIED

## XV.

### ELECTION OF PUNISHMENT

In the event of conviction, the defendants elects to have Jury assess punishment.

 GRANTED          [  ]   DENIED

## XVI.

### REQUEST FOR REASONABLE EXPENDITURES

The defendant requests that the Court allow reasonable and necessary expenses for the use of an investigator and/or expert witness in the preparation for trial in this cause.

GRANTED          [  ]   DENIED          [  ]   INAPPLICABLE

## XVII.

### REQUEST FOR DEFENDANT TO BE FREE OF IMPEACHMENT

The defendant moves the Court, pursuant to Rule 609 (a), to allow him to testify at the guilt/innocence phase of the trial free from impeachment by any or all of his prior convictions that the State has given notice of intent to use for such purpose, and request

sub rosa hearing in regard to this matter, <u>Theus v. State</u>, 845 S.W. 2d 874 (Tx. Cr. App. 1992).

[ ] GRANTED      DENIED     [ ]   INAPPLICABLE

## XVIII.

### BATSON HEARING

The defendant requests that the Court strictly enforce Art. 35.261, Tx. Code of Criminal Procedure and moves that any information that is learned by the State about a prospective juror in this case from any source <u>outside of the courtroom</u> that the State intends to use in exercising their peremptory challenges, i.e., information about a juror other than that disclosed by a juror in questioning during voir dire or in their juror information cards, except that information which is work product of the State, e.g., a prospective juror's prior criminal record, be shared with the defense before such time that the lists are struck, so that inquiry might be made of the juror as to the accuracy and relevance of the information.

This request is made to protect the defendant's and the juror's right guaranteed under <u>Batson v. Kentucky</u> and its progeny, <u>J.E.B. v. Alabama</u> and it progeny, and under Art. 35/261, Tx. Code of Criminal Procedure.

 GRANTED     [ ]   DENIED

**WHEREFORE, PREMISES CONSIDERED,** the defendant prays that a hearing be held on the Motion and that the Court order the State to produce the requested items as designated above and permit the defendant to inspect, copy, photograph and conduct any necessary analytical tests on such items.  The items are not privileged and are within the proper scope of discovery by the defendant.

The defendant prays that this Motion be in all thing granted by the Court.

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1. LB 2
Dallas, Texas 75207
(214) 653-3550
ATTORNEYS  FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Omnibus Pretrial Motion has been personally served upon the Assistant District Attorney of Dallas County, Texas appointed to the prosecution of this case, on the _____ day of _____, 2001.

JANE LITTLE

**ORDER**

On this the _____ day of _____, 2001, came on to be heard the foregoing Defendant' Omnibus Pretrial Motion and the Court, after due deliberation, finds as marked in the body of the Motion and orders disclosures to the Defense as requested.

_____
JUDGE PRESIDING

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M



FILED
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
Am
DEPUTY

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION FOR DISCOVERY, PRODUCTION AND INSPECTION OF EVIDENCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorneys of record, and files this Motion for Discovery, Production, and Inspection of Evidence and in support thereof would show the Court as follows:

I.

The Defendant moves the Court to order the District Attorney to produce and permit the inspection of and the copying and/or photographing of, by or on behalf of the Defendant, the following designated items:

### A. STATEMENT OF DEFENDANT

1. All confessions, admissions and statements, in writing, signed by the Defendant, in connection with this offense with which the Defendant is hereby indicted.

_____GRANTED

_____ DENIED

00282

/L.L.

2.  All confessions, admissions and statements, oral in nature and set down and preserved under Article 38.22 of the Texas Code of Criminal Procedure, made by the Defendant in connection with the offense with which the Defendant is hereby indicted.

_____**GRANTED**

_____ **DENIED**

3.  All oral, written or recorded statements of the Defendant, and memoranda of said statements made to any investigating officer or any member of any law enforcement agency, or to any third party, which is in the possession of or within the knowledge of the District Attorney's Office or any agent thereof, including any law enforcement agency.

_____**GRANTED**

_____ **DENIED**

4.  All oral and written statements made by the Defendant before the Grand Jury and transcribed by a reporter, in connection with the offense with which the Defendant is herein indicted.

_____**GRANTED**

_____ **DENIED**

5.  All handwritten and typed notes made by all law enforcement officers prior to, and during and after the Defendant was interrogated which concern any confessions, admissions or statements made by the Defendant to law enforcement officers concerning these cases.

_____**GRANTED**

_____ **DENIED**

6. Any written or electronically recorded waiver alleged by the State to have been signed by the Defendant concerning the Defendant's right to counsel prior to the making of any written or oral statements.

_____**GRANTED**

_____ **DENIED**

## B. WITNESSES AND THEIR STATEMENTS

7. The names, addresses, and telephone numbers of all witnesses that the State in good faith expects to call in its case in chief and in rebuttal, during both the guilt/innocence stage and the punishment stage of the Defendant's trial.

_____**GRANTED**

_____ **DENIED**

8. The names, addresses and telephone numbers of all persons interview by any employee, agent, or official of the State of Texas or subdivision thereof, or the United States government, concerning this case who in reasonable likelihood may not be used as a witness at the trial of this case, but who may have knowledge of facts material to the guilt or innocence of the Defendant or his reputation or criminal record, if any.

_____**GRANTED**

_____ **DENIED**

9. The names of all subjects who were interrogated and/or arrested in conjunction with these offenses, including their respective names, addresses, telephone numbers,

occupations, physical descriptions and photographs.

_____**GRANTED**

_____ **DENIED**

10. Any statements, whether written or oral, by the Defendant or any Co-defendant or Co-conspirator, either indicted or unindicted, which the State of Texas intends to introduce to show the existence of a conspiracy or evidence of acting in concert, the date of such statements or evidence, the time of such statements or evidence, and the place where such statements or evidence took place.

_____**GRANTED**

_____ **DENIED**

11. All confessions, admissions or statements given by co-defendants, parties, accomplices or co-conspirators which the state intends to offer into evidence in Defendant's trial.

_____**GRANTED**

_____ **DENIED**

12. All statements made by any party or witness to this alleged offense, in the possessions of or within the knowledge of the District Attorney or any of his agents, including any law enforcement agency, whether such statements were written or oral, which might in any manner be material to either the guilt or innocence of the Defendant or to the punishment, if any, to be set in this case.

_____**GRANTED**

_____ **DENIED**

13. All writings used to refresh the recollection of witnesses, as provide in Rule 611 of the Texas Code of Criminal Evidence.

          _____**GRANTED**

          _____ **DENIED**

14. The names and addresses of all persons who testified at the Grand Jury proceedings which culminated in Defendant's indictment in these cases.

          _____**GRANTED**

          _____ **DENIED**

15. A written transcription of the testimony of all the witnesses who appeared and testified before the Grand Jury regarding the facts of these cases; or in the alternative, that the Court order the prosecutor to immediately order said transcription of all of said testimony in order that it will be available and in the possession of the prosecutor at time of trial. In further support of this request, the Defendant submits the following particularized needs:

      a.     To cross examine and impeach said witnesses;

      b.     To discover prior inconsistent statements;

      c.     To test the credibility of said witness;

      d.     To test the recollection of said witness.

          _____**GRANTED**

          _____ **DENIED**

### C. OBJECTS OR TANGIBLE THINGS

16.  All objects and tangible property now in the possession of the State or its agents and alleged by the State to have been taken or used by the Defendant or any Co-conspirator during the course of the commission of the offense with which the Defendant is herein indicted.

_____**GRANTED**

_____**DENIED**

17.  All weapons alleged by the State to have been used by the Defendant, co-defendants, co-conspirators, parties, accomplices, complainants or witnesses in these cases, including ammunition, shells, cartridges, bullets, slugs, wadding, projectiles, missiles, and fragments recovered from the scene or any person.

_____**GRANTED**

_____**DENIED**

18.  All articles of clothing, including shirts, pants, undergarments and shoes allegedly belonging to the Defendant or to the victim which the State intends to introduce as evidence in the trial.

_____**GRANTED**

_____**DENIED**

19.  All contraband drugs, controlled substances and paraphernalia which were seized as a result of the investigation of these cases in order to permit the Defendant to have an opportunity to examine the same and to obtain an expert to examine, test,

weigh, and inspect said evidence.

_____ **GRANTED**

_____ **DENIED**

20.  All video tapes, documents, papers, books, accounts, letters, objects and tangible things which are the property of the Defendant and which are in the possession, custody and control of the State.

_____ **GRANTED**

_____ **DENIED**

21.  All physical evidence in possession or control of the state which the state intends to offer at trial in these cases.

_____ **GRANTED**

_____ **DENIED**

22.  A complete inventory of all items taken from the crime scene(s) or items that have been linked to the crime scene(s) or to the deceased or to either the Defendant or any co-defendant, or any person acting with the Defendant or any co-defendant in these cases.  Defendant would further request that the court order the state in its inventory to provide an itemization of the person from which the item was seized, the date it was seized, and the place that it was seized from, as well as any indication that latent fingerprints were lifted or attempted to be lifted from the item, and the person identified as having made those fingerprints, if any.

_____ **GRANTED**

_____ **DENIED**

00288

23.  All search and arrest warrants and affidavits in support thereof together with any consent to search used or exhibited at the time of the arrest of the Defendant or in the investigation of the offense for which Defendant has been indicted.

_____✗_____ GRANTED

_____ DENIED

24.  All recorded incoming telephone calls to "911" or the sheriff's office or the police station requesting assistance at the time this incident was reported.

_____✗_____ GRANTED

_____ DENIED

25.  All recorded communications between the dispatcher and law enforcement agents who were called to the scene in these cases.

_____✗_____ GRANTED

_____ DENIED

26.  All photographs, drawing and charts made by the State or any agent thereof, including any law enforcement agency, which were made with reference to this case, including but not limited to all photographs, drawings and charts of the scene of the crime and the scene of the Defendant's arrest.

_____✗_____ GRANTED

_____ DENIED

27.  All photographic negative prints whether or not heretofore developed by the agent of the District Attorney or any law enforcement agency, which were made in the

investigation of these cases.

_____X_____ GRANTED

_____ DENIED

28.  All photographs of suspects which were shown to all witnesses to the alleged offense, concerning the identity of the perpetrator of the offense for which the Defendant has been indicted.

_____X_____ GRANTED

_____ DENIED

29.  All photographs of the Defendant which were used in conjunction with the investigation of these cases, including any photographs which may have been shown by an law enforcement officer to any potential witness in these cases.

_____X_____ GRANTED

_____ DENIED

30.  All fingerprints, palm prints, footprints, tool marks, and tire tracks, and reports conducted with respect to said prints and tracks, of all persons and vehicles which were obtained from the scene of the alleged offense for which the Defendant is herein indicted.

_____X_____ GRANTED

_____ DENIED

31. All reports of scientific tests, experiments and comparison, and all other reports of experts and the name, address, and telephone number of each person who made such report or performed such test, experiment or comparison, including but not limited to reports pertaining to weapons, bullets, shots, waddings, cartridge cases, tool marks, blood, bodily fluids, breath, urine, hair, threads, drugs and controlled substances, fingerprints, and

medical or psychological examinations.

_____✕_____ **GRANTED**

_____ **DENIED**

32. A list of names, addresses and professions of all expert witnesses the prosecution intends to call at trial, along with each expert's qualifications, the subject and a description of his or her contemplated testimony, and his or her report.

_____✕_____ **GRANTED**

_____ **DENIED**

33. All autopsy reports based on an examination of the decedent.

_____✕_____ **GRANTED**

_____ **DENIED**

34. All medical reports which show or tend to show the physical condition of the victim at or about the time of the commission of the alleged offense.

_____✕_____ **GRANTED**

_____ **DENIED**

**F-LINE-UPS**

35. All photographs made of all line-ups conducted in these cases, including the line-up wherein the Defendant was one of the participants.

_____ **GRANTED**

_____ **DENIED**

36. The names and addresses of any person who was shown line-ups or photographs or show-ups of any suspects, including the Defendant, whether or not

Defendant was identified.

_____ **GRANTED**

_____ **DENIED**

    37.  The police form used by law enforcement authorities to identify all participants in the line-up wherein the Defendant was a participant, which includes information as to each participant in the line-up and as to each witness who was present at said line-up.

_____ **GRANTED**

_____ **DENIED**

    38.  A copy of the witness' line-up identification form given to each witness who attended the line-up wherein the Defendant was a participant in these cases.

_____ **GRANTED**

_____ **DENIED**

## G. PRIOR CRIMINAL RECORDS AND OTHER WITNESS INFORMATION

    39.  The prior criminal record of the following persons:

        a.  The Defendant,

        b.  Each Co-conspirator,

        c.  The Decedent,

        d.  Each informant

        e.  All State's Witnesses;

including all arrests and convictions, whether as a juvenile or as a adult, including but not limited to:

        a.  All felony convictions and all misdemeanor convictions involving moral turpitude;

b.  All felony convictions and all misdemeanor convictions involving moral turpitude which have resulted in a suspended sentence;

c. All felony and misdemeanor cases which have resulted in the person being placed on probation, wherein the period of probation has not expired;

d. All pending felony and misdemeanor offenses;

Furthermore, the State should be ordered to request the proper law enforcement authorities to obtain full and complete criminal record of such witnesses and reveal same to the Defendant and the State should not be permitted to respond to this motion by advising the Court that the prosecutor does not have any indication in his file of any prior criminal record of such witnesses.

_____ **GRANTED**

_____ **DENIED**

40.  Any deals, arrangements, agreements, threats, payments, or promises made for any witness for the State in these cases which could conceivably influence the testimony of such witness.

_____ **GRANTED**

_____ **DENIED**

41.  Any evidence as to the competency of any prospective witness, including a history of mental illness or psychiatric care which the State may be aware of.

_____ **GRANTED**

_____ **DENIED**

00293

## H. EXCULPATORY EVIDENCE

42.  Any evidence in any form which is in any way exculpatory or favorable to the Defendant.

_____ **GRANTED**

_____ **DENIED**

## I. THE LOCATION OF RECOVERY

43.  The prosecutor should be required to identify the location of the recovery, the time of recovery, and the name of the person who recovered each item provided to the Defendant pursuant to this Motion for Discovery.  Such information is necessary to determine whether or not such evidence is objectionable at the time of trial on the grounds that the evidence has not been properly identified or that the chain of custody has not been properly proved or that the evidence was taken in violation of the Defendant's rights under the laws and Constitution of the State of Texas and the Constitution of the United States.

 **GRANTED**

_____ **DENIED**

## II.

In further support hereof, the Defendant would show this Court that the production of all of the above evidence is the only fair and proper method of showing the good faith of the District Attorney in these cases, the truth of all such matters which the District Attorney intends to introduce in evidence against the Defendant, and to insure the Defendant has adequate time to inspect, examine, and test all of such evidence for its respective validity, authenticity and identity.

00294

56

**III.**

In support of this motion, the Defendant would show the Court as follows:

1. The items requested are in the exclusive possession, knowledge, custody or control of the State of Texas by and through its agents, and the Defendant has no other means of ascertaining the disclosures requested.

2. The items requested are not privileged.

3. The items and information are material to these causes and the issues of guilt or innocence and punishment to be determined in these causes.

4. The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

5. That absent such discovery the Defendant's right under Article 39.14 of the Texas Code of Criminal Procedure, Article 1, Sections 10 and 19 of the Constitution of the State of Texas.

6. That absent such discovery the Defendant's right under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America will be violated to his irreparable injury and thus deprive the Defendant of a fair trial herein.

**WHEREFORE, PREMISES CONSIDERED,** Defendant respectfully prays that this Honorable Court will grant this the Defendant's Motion for Discovery, Production and Inspection of Evidence in all things, or in the alternative, that this Court will set this matter down for a hearing prior to trial on the merits and that at such hearing this motion will be

in all things granted.

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 North Industrial Boulevard
Suite C-1., LB 2
Dallas, Texas 75207
(214) 653-3550

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

Jane Little

## ORDER

**ON THIS DATE** came on to be heard the foregoing Defendant' Motion, and the

Court, after due deliberation, hold that the motion is [GRANTED] [DENIED, to which action

of the Court the defendant respectfully excepts].

_____
Judge Presiding

00296
58



**CAUSE NO. F00-02424-M**
**CAUSE NO. F00-23910-M**

FILED

FEB 27 2001

DIST. CLERK, DALLAS CO., TEXAS
JIM HAMLIN
_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## SECOND MOTION FOR DISCOVERY AND INSPECTION OF EVIDENCE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, the Defendant, JEDIDIAH ISAAC MURPHY, by and through his attorneys of record, and files this, his Second Motion for Discovery and Inspection of Evidence, and in support thereof would respectfully show the Court as follows:

I.

The Defendant moves the Court to order the District Attorney to produce and permit the inspection of and the copying and/or photographing of, by or on behalf of the Defendant, the following designated items:

**A. WITNESS IDENTITY**

1. <u>PROSPECTIVE WITNESSES</u>: A list of names, addresses, and telephone numbers of all prospective prosecution witnesses who have knowledge of the facts of the present cause, and who in reasonable likelihood will be used at any stage of the trial as witnesses in any capacity for the prosecution.

**GRANTED** _____      **DENIED** _____

00297
59

1

2.  <u>PERSONS INTERVIEWED</u>: A list of names, addresses, and telephone numbers of all persons interviewed by any employee, agent or official of the State of Texas or subdivision thereof or the United States government, concerning this case  who in reasonable likelihood may not be used as a witness at the trial of this case, but who may have knowledge of facts material to the guilt or innocence of the Defendant or his reputation or criminal record if any.

**GRANTED** _____          **DENIED** _____

3.  <u>INFORMANT'S IDENTITY</u>: A list of the names, addresses and phone numbers of the informant or informants who were present at, or who participated in, the commission of the offense, such informant(s) being material on the issue of guilt/innocence.

**GRANTED** _____          **DENIED** _____

4.  <u>SUSPECTS IDENTITY</u>: A list of all suspects or person who were arrested and/or interrogated in conjunction with this offense, including names, addresses, telephone numbers, occupations, physical descriptions and photographs.

**GRANTED** _____          **DENIED** _____

**B. CRIMINAL RECORDS**

5.  <u>CRIMINAL RECORD OF INFORMANTS, WITNESSES, PERSONS INTERVIEWED & SUSPECTS</u>: The prior criminal record of all informants, witnesses, persons interviewed, suspects and other persons who have aided in the investigation and prosecution of this case against the Defendant, including all arrests and/or convictions, whether as a juvenile or as an adult, including, but not limited to:

(a)   At least all final convictions for all felonies and all misdemeanors involving moral turpitude which have occurred in the last ten years measured from the date of conviction or the date of release from

00298

2

60

incarceration, whichever is latest; and

(b)    All felony convictions and misdemeanor convictions involving moral turpitude which have resulted in a suspended sentence or conditional discharge or deferred adjudication which has not been set aside; and

(c)    All felony convictions and misdemeanor convictions involving moral turpitude which have resulted in the person being placed on probation, wherein the period of probation has not expired; and

(d)    All pending felony and misdemeanor offenses.

**GRANTED** _____       **DENIED** _____

6.    <u>CRIMINAL RECORD OF ANY COMPLAINANT</u>: The prior criminal record of the Complainant, including all arrests and convictions, whether as a juvenile or as an adult, including but not limited to:

(a)    At least all final convictions for all felonies and all misdemeanors involving moral turpitude which have occurred in the last ten years measured from the date of conviction or the date of release from incarceration, whichever is latest; and

(b)    All felony convictions and misdemeanor convictions involving moral turpitude which have resulted in a suspended sentence which has not been set aside; and

00299

61

(c)     All felony convictions and misdemeanor convictions involving moral turpitude which have resulted in the person being placed on probation, wherein the period of probation has not expired.

**GRANTED** _____     **DENIED** _____

7.    <u>CRIMINAL RECORD OF DEFENDANT</u>: The prior criminal record of the Defendant, including all arrests and convictions, whether as a juvenile or as an adult, including but not limited to:

(a)     At least all final convictions for all felonies and all misdemeanors involving moral turpitude which have occurred in the last ten years measured from the date of conviction or the date of release from incarceration, whichever is latest; and

(b)     All felony convictions and misdemeanor convictions involving moral turpitude which have resulted in a suspended sentence which has not been set aside;

(c)     All felony convictions and misdemeanor convictions involving moral turpitude which have resulted in the person being placed on probation, wherein the period of probation has not expired; and

(d)     All pending felony and misdemeanor offenses.

**GRANTED** _____     **DENIED** _____

8.    <u>PRIOR MISCONDUCT OF DEFENDANT OR DEFENSE WITNESS</u>: A specification of any prior misconduct which the District Attorney intends to use to impeach the Defendant herein and/or defense witnesses called to testify as to the Defendant's good character and

4

00300

reputation, which specifications should include the date, time, place and nature of such misconduct in order to fully apprise and notify the Defendant of all such evidence and to permit the Defendant adequate time to challenge its relevancy, materiality and accuracy prior to trial.

**GRANTED** _____          **DENIED** _____

**C. COMPETENCY/SANITY**

9.      INCOMPETENCY OF DEFENDANT: Any evidence as to the competency of the Defendant at any time, including a history of mental illness or psychiatric care, which is in the possession of or within the knowledge of the District Attorney's Office or any of its agents.

**GRANTED** _____          **DENIED** _____

10.      INSANITY OF DEFENDANT: Any evidence as to the sanity of the Defendant at any time, including a history of mental illness or psychiatric care, which is in the possession of or within the knowledge of the District Attorney's Office or any of its agents.

**GRANTED** _____          **DENIED** _____

11.      INCOMPETENCY OF WITNESSES: Any evidence as to the competency of Witnesses at any time, including a history of mental illness or psychiatric care, which is in the possession of or within the knowledge of the District Attorney's Office or any of its agents.

**GRANTED** _____          **DENIED** _____

**D. AGREEMENT BETWEEN STATE AND WITNESSES**

12.      AGREEMENT BETWEEN STATE & WITNESSES: Any agreement with any witness, or any person (including but not limited to co-defendants, co-conspirators, and/or informants) in the nature of concessions, promises, considerations, dealings, or plea bargains by the State to or with the witness which could influence the witness' testimony, including but not limited to waivers of speedy trial rights and oral agreements.

**GRANTED** _____          **DENIED** _____

00301

63

5

**E. STATEMENTS, ADMISSIONS AND CONFESSIONS**

13.   <u>WITNESS OR PARTY STATEMENTS</u>: All statements made by any party or witness to this alleged offense in the possession of or within the knowledge of the District Attorney or any of his agents, including any law enforcement agency, whether such statements were written or oral, whether such statement is to be used or not at trial, which might in any manner be material to either the guilt or innocence of the Defendant or to the punishment, if any, to be set in this case.

**GRANTED** _____        **DENIED** _____

14.   <u>DEFENDANT'S WAIVER PRIOR TO STATEMENT</u>: The written waiver alleged by the State to have been signed by the Defendant concerning the Defendant's right to counsel prior to the making of any written and oral statements when the Defendant was under arrest.

**GRANTED** _____        **DENIED** _____

15.   <u>WRITTEN STATEMENTS SIGNED BY DEFENDANT</u>: All confessions, admissions, and statements in writing, signed by the Defendant in connection with this offense with which the Defendant is herein indicted.

**GRANTED** _____        **DENIED** _____

16.   <u>ORAL STATEMENTS PRESERVED UNDER 38.22 OF DEFENDANT</u>: All confessions, admissions and statements, oral in nature and set down and preserved under Article No. 38.22 of the Code of Criminal Procedure, made by the Defendant in connection with the offense with which the Defendant is herein indicted.

**GRANTED** _____        **DENIED** _____

17.   <u>DEFENDANT'S STATEMENTS TO GRAND JURY</u>: All oral and written statements made by te Defendant before the Grand Jury and transcribed by a reporter, in connection with the offense with which the Defendant is herein indicted.

**GRANTED** _____        **DENIED** _____

00302

18.    ALL STATEMENTS OF DEFENDANT: All oral, written and recorded statements or memoranda of same made by the Defendant to any investigating officer or to any member of any law enforcement agency or to any third party and in the possession of or within the knowledge of the District Attorney's Office or any agent thereof, including any law enforcement agency.

GRANTED _____          DENIED _____

19.    OFFICER'S NOTES DURING/AFTER DEFENDANT'S INTERROGATION: All handwritten and typed notes made by all law enforcement officers prior to, during and after the Defendant was interrogated; or in the alternative, that all said handwritten and typed notes be accurately preserved and maintained by said law enforcement officers until the trial of this cause in order that same may be available to the court and the jury on the issue of the voluntariness of the Defendant's statements.

GRANTED _____          DENIED _____

20.    OFFICER'S    NOTES    DURING/AFTER    CO-DEFENDANTS    &    CO-CONSPIRATORS INTERROGATION:    All handwritten and typed notes made by all law enforcement officers prior to, during and after the Defendant was interrogated; or in the alternative, that all said handwritten and typed notes be accurately preserved and maintained by said law enforcement officers until the trial of this cause in order that same may be available to the court and the jury on the issue of the voluntariness of the Defendant's statements.

GRANTED _____          DENIED _____

F. EAVESDROPPING AND/OR SURVEILLANCE

21.    EAVESDROPPING AND/OR SURVEILLANCE: All stenographic, telephonic recordings, video tapes and transcriptions thereof of all information and evidence obtained by means of electronic eavesdropping and/or surveillance by law enforcement officers, and all test results run on said recordings, and video tapes, in order to permit the Defendant adequately and properly to test

7

the validity and authenticity of each of said recordings prior to trial by an expert of the Defendant's choosing.

<div align="center"><b>GRANTED</b> _____          <b>DENIED</b> _____</div>

## G. BRADY MATERIAL

22.    <u>FAVORABLE, EXCULPATORY, OR MITIGATION EVIDENCE</u>: All statements (whether witness is to be called at trial or not), police work notes and reports, and any other evidence which might be favorable, exculpatory, or mitigating to Defendant and material to the issues of guilt or punishment or which could reasonably weaken, affect, or impeach any evidence proposed to be introduced against Defendant, which is in the possession or knowledge of the District Attorney or any agent thereof, including any law enforcement or other concerned agency.

a)    Remorse, Sorrow, Contrition, or Grief stated verbally or through appearance and behavior shown by the defendant.

b)    Evidence of the defendant's mental or emotional state as observed by any law enforcement or other concerned agency, concerning, but not limited to:  confusion, depression, anxiety, or emotion instability.

c)    Any video or audio recordings with the defendant that would show the behaviors and attitudes listed in (a) and (b) above or would be mitigating in the punishment phase of the trial.

<div align="center"><b>GRANTED</b> _____          <b>DENIED</b> _____</div>

## H. LINE-UP

23.    <u>LINE-UP PHOTOGRAPHS</u>: All still or moving photographs made of any line-up conducted in this case, wherein the Defendant was one of the participants.

<div align="center"><b>GRANTED</b> _____          <b>DENIED</b> _____</div>

24.    <u>POLICE FORM USED IN LINE-UP</u>: The police form used by law enforcement authorities to identify all participants in any line-up wherein the Defendant was a participant, which includes information as to each participant in the line-up and as to each witness who was

<div align="center">8</div>



present at said line-up.

**GRANTED** _____     **DENIED** _____

    25.   <u>WITNESS LINE-UP FORM</u>: A copy of the witness's line-up identification form given to each witness who attended the line wherein the Defendant was a participant in this case.

**GRANTED** _____     **DENIED** _____

**I. <u>PHOTOGRAPHS, DIAGRAMS & DRAWINGS</u>**

    26.   <u>PHOTOGRAPHS SHOWN TO WITNESSES</u>: All photographs of all suspects which were shown to all potential witnesses to the alleged offense, concerning the identity of the perpetrator of the offense for which the Defendant has been indicted.

**GRANTED** _____     **DENIED** _____

    27.   <u>PHOTOGRAPHS OF DEFENDANT USED IN INVESTIGATION</u>: All photographs of the Defendant which were used in conjunction with the investigation of this case, including any photographs which may have been shown by any law enforcement officer to any potential witness in this case.

**GRANTED** _____     **DENIED** _____

    28.   <u>PHOTOGRAPHS ETC. OF CRIME SCENE AND ARREST</u>: All still or moving photographs, drawings and charts made by the District Attorney's Office or any agent thereof, including any law enforcement agency, which were made with reference to this case, including but not limited to all photographs, drawings, and charts of the scene of the crime and the scene of the Defendant's arrest.  The photos (not just xeroxes of them) so that they can be shown to our own medical expert for evaluation.  The defense would submit that the photos may not be reproduced by the defense, since they must stay in the possession of the State.  The defense prays that they be provided by a day certain, in _____, to allow the defense to use them before the trial.

**GRANTED** _____     **DENIED** _____

00305

29.    PHOTOGRAPHS ETC. OF COMPLAINANT:  All still or moving photographs of the complainant, whether taken at the scene of the alleged offense, at the scene where the complainant was discovered or at the time the examination/autopsy was performed.

**GRANTED** _____          **DENIED** _____

30.    PHOTOGRAPHIC NEGATIVES MADE IN INVESTIGATION: All photographic negatives whether heretofore printed or not by the District Attorney or any of his agents, including any law enforcement agency, which were made in the investigation of this case.

**GRANTED** _____          **DENIED** _____

## J. FINGERPRINTS & REPORTS

31.    FINGERPRINTS AND REPORTS: All fingerprints, palm prints, and footprints, tire tracks and reports of same, alleged by the State to have been made by the Defendant, his co-defendants and co-conspirators in the commission of the offense with which the Defendant is herein indicted.

**GRANTED** _____          **DENIED** _____

## K. GASKIN RULE

32.    CROSS-EXAMINATION & IMPEACHMENT OF WITNESSES: For the purpose of cross-examination and impeachment after a witness called by the State has testified, that the following be make available to the defendant, i.e., prior written, taped or video taped statements of the witness; any notations or memorandum of oral statements of the witness; and any material used to refresh the memory of the witness or used before the jury.

**GRANTED** _____          **DENIED** _____

## L. WARRANTS & AFFIDAVITS

33.    DEFENDANT'S CONSENT TO SEARCH: Any written consents to search the Defendant's residence alleged by the State to have been signed by the Defendant, or any other person

000306

10

prior to the search and seizure of said residence.

    GRANTED _____       DENIED _____

    34.   <u>WARRANTS AND AFFIDAVITS</u>: Any search warrant and arrest warrant and affidavits in support thereof, used by law enforcement authorities to enter the Defendant's residence and vehicle.

    GRANTED _____       DENIED _____

**M. <u>CONTRABAND</u>**

    35.   <u>CONTRABAND SEIZED</u>: All contraband which was seized as a result of the investigation of the instant case in order to permit the Defendant to have an opportunity to examine the same and obtain an expert to conduct an independent evaluation of same.

    GRANTED _____       DENIED _____

    36.   <u>CONTRABAND CONTAINERS</u>: All boxes, cans, cartons, envelopes, plastic bags, sacks, or any container (no matter what type or nature) that the State alleges contained, wrapped, or covered any alleged contraband or controlled substance connected with the offense in which the Defendant is herein indicted.

    GRANTED _____       DENIED _____

**N. <u>TANGIBLE OBJECTS USED IN CRIME</u>**

    37.   <u>OBJECTS USED BY DEFENDANT IN OFFENSE</u>: All weapons, tools, implements, devices or other tangible objects alleged by the State to have been used by defendant in the commission of the offense with which the Defendant is herein indicted. The exact location where the object was recovered.

    GRANTED _____       DENIED _____

00307

**O. OTHER TANGIBLE OBJECTS**

38.   CLOTHING OF COMPLAINANT: The clothing alleged by the State to have been worn by the complainant at the time of the commission of the offense. The exact location where the object was recovered.

GRANTED _____      DENIED _____

39.   PROPERTY OF DEFENDANT: All documents, papers, books, accounts, letters, objects, tangible things, articles of clothing (including shirts, pants, shoes, and rags) which are or have been the property of the Defendant which are in the possession, custody, and/or control of the District Attorney or any agent thereof, including any law enforcement agency, including any knives and guns. The exact location where the object was recovered.

GRANTED _____      DENIED _____

40.   OTHER MATERIAL EVIDENCE: All documents, papers, books, accounts, letters, objects and tangible things which are the property of any other person which are in the possession of the District Attorney as a result of the investigation which resulted in the instant indictment and which are material evidence in this case as to the Defendant's guilt or innocence or as to the punishment, if any.

GRANTED _____      DENIED _____

**P. REPORTS: SCIENTIFIC, FORENSIC & MEDICAL**

41.   SCIENTIFIC REPORTS AND EXPERTS: All reports of scientific tests, experiments and comparisons and all other reports of experts and the name and address of each such person who made such report or performed such test, experiment or comparison, including but not limited to reports pertaining to weapons, bullets, shots, waddings, cartridge cases, and tool marks.

GRANTED _____      DENIED _____

00308

42.   RESULTS OF ANALYSIS OF DEFENDANTS CLOTHING: The analysis of and results of any blood, chemical and scientific tests which have been conducted on the clothing, purportedly worn by the Defendant during the commission of the alleged offense.

GRANTED _____        DENIED _____

43.   RESULTS OF BLOOD AND BREATH TEST: The results of the blood and breath test(s) given to the Defendant in this case.

GRANTED _____        DENIED _____

44.   MEDICAL AND PSYCHIATRIC REPORTS OF DEFENDANT: All medical and psychiatric reports submitted by any doctor, psychiatrist or psychologist at the request of the State or the Court in conjunction with all examinations of the Defendant.

GRANTED _____        DENIED _____

45.   MEDICAL REPORTS OF COMPLAINANT RE: PHYSICAL CONDITION: All medical reports which show or tend to show the physical condition of the complainant at or about the time of the commission of the alleged offense.

GRANTED _____        DENIED _____

46.   BLOOD TYPE OF COMPLAINANT: The blood type of the complainant, including the results of all tests on his blood.

GRANTED _____        DENIED _____

47.   MEDICAL/AUTOPSY REPORTS: All medical/autopsy reports based on examination of the complainant, and all tapes dictated or notes made regarding the injury/death of complainant.

GRANTED _____   DENIED _____

00309

71

## II.

In support of this motion, the Defendant would show the Court as follows:

1.  The items requested are in the exclusive possession, custody and control of the State of Texas by and through its agents, the police or the prosecuting attorney's office, and the Defendant has no other means of ascertaining the disclosures requested.

2.  The items requested are not privileged.

3.  The items and information are material to this cause and the issues of guilt or innocence and punishment to be determined in this cause.

4.  The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

5.  Failing to order such discover would violate Defendant's rights under Article No. 39.14, C.C.P., Article No. I, Section 19 of the Constitution of the State of Texas, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America will be violated, to his irreparable injury and thus deprive the Defendant of a fair trial herein.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully prays that this Honorable Court will grant this the Defendant's Motion for Discovery and Inspection of Evidence in all things, or in the alternative, that this Court will set this matter down for a hearing prior to trial on the merits and that at such hearing this motion will be, in all things, granted.

00310
72

Respectfully submitted,

JANE LITTLE
State Bar No. 12426210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defender
Public Defender's Office
133 N. 133 North Industrial Boulevard
Suite C-1., LB 2
Dallas, TX 75207
ATTORNEY FOR DEFENDANT
214-653-3550

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion has been delivered to the

Dallas County District  on the same day the Motion was filed with the District Clerk.

JANE LITTLE

00311

73

**CAUSE NO. F00-02424-M**
**CAUSE NO. F00-23910-M**

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**ORDER**

On this the _____ day of _____, 2001, came to be considered Defendant's

Motion for Discovery and Inspection of Evidence, and the items requested therein are hereby

**GRANTED/DENIED** as indicated after each request.

SIGNED this _____ day of _____, 2001.

_____
**JUDGE PRESIDING**

00312
74

NO. F00-02424-M and F00-23910-M

**FILED**
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
Am) _____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194th JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

## DEFENDANT'S REQUEST FOR NOTICE OF EXTRANEOUS ACTS
## AND CHARACTER EVIDENCE

COMES NOW, the Defendant in the above-styled and numbered cause, in accordance with Rule 404(b) of the Texas Rules of Evidence and Article 37.07 §3(g) of the Texas Code of Criminal Procedure and requests in advance of trial reasonable notice of the intent of the State to introduce any evidence of Defendant's character or of extraneous acts alleged to have been committed by the Defendant herein.

Respectfully submitted,

*Jennifer Balido*

Jeniifer Balido
Public Defenders Office
133 N. Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorneys Office by personal delivery on the same date of filing herewith.

*Balido*

00313
75

NO. F00-02424-M and F00-23190-M

**FILED**
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194th JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

<u>**MOTION FOR DISCOVERY RELATED TO DNA**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion for Discovery.

I.

Defendant moves the Court, pursuant to Article 39.14 of the Texas Code of Criminal Procedure, to order the District Attorney to permit defense counsel to inspect and copy, or in the alternative, to order the District Attorney to provide copies to the Defendant of the following items:

1. Copies of the regular format, running conditions or protocol used by any laboratory for the techniques employed in this case.

2. Copies of all log books, diagrams, charts, notes, memoranda and worksheets regarding test results and analysis of evidence in this case.

3. Copies of all laboratory records of quality control of all blind trials or proficiency tests conducted by any laboratory involved in this case.

II.

In support of this Motion, the Defendant would show the Court the following:

1. The items requested are in the exclusive possession, custody and control of the State of Texas by and through its agents, the police, or the prosecuting attorney's office, and the Defendant has no other means of ascertaining the disclosures requested.

2. The items requested are not privileged.

3. The items and information are material to this cause and the issues of guilt or innocence and punishment to be determined in this cause.

4. The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

00314
76

5. That absent such discovery the Defendant's rights under Article 39.14 of the Texas Code of Criminal Procedure, Article I, Section 10 of the Constitution of the State of Texas, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America will be violated, to his irreparable injury and thus deprive the Defendant of a fair trial herein.

III.

The Defendant respectfully requests this Court to make this Motion applicable to any testing agency which has conducted, or been involved or associated with conducting tests on evidence in the case pending against the Defendant herein.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be granted.

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
Public Defenders Office
133 N. Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

*JBalido*

00315

77

ORDER

On the _____, the Court having considered the above and foregoing Motion finds the same is hereby GRANTED / DENIED.  The Court further orders the appropriate personnel at the Southwestern Institute of Forensic Sciences to allow Genescreen personnel access to such evidence in order to conduct an independent inspection and analysis.

_____
Judge Presiding

00316

F00-02424-M AND F00-23910-M

**FILED**
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

<u>**MOTION REQUESTING NOTICE OF STATE'S INTENT TO USE PRIOR**</u>
<u>**CONVICTIONS FOR IMPEACHMENT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause and moves the Court to require the State of provide advance written notice of intent to use any prior convictions for the impeachment of Jedidiah Issac Murphy and in support of this motion the Defendant would show:

I.

Such notice is required by rule 609(f) of the Texas Rules of Criminal Evidence.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be in all things granted.

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
Public Defenders Office
133 N.Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

00317
79

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

_Bando_

ORDER

On the _____, the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED / DENIED.**

_____
Judge Presiding



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |

THE STATE OF TEXAS       §       IN THE 194TH JUDICIAL

VS.       §       DISTRICT COURT OF

JEDIDIAH ISAAC MURPHY       §       DALLAS COUNTY, TEXAS

### MOTION FOR INVENTORY OF ITEMS TAKEN AT THE CRIME SCENES

COMES NOW, Jedidiah Isaac Murphy, Defendant in the above-entitled and numbered causes and moves the court to require the State to provide him a complete inventory of all items taken from the crime scene(s) or items that have been linked to the crime scene(s) or to the deceased or to either the Defendant or any co-defendant, or any person acting with the Defendant or any co-defendant in this case. The Defendant would further request that the court order the State in its inventory to provide an itemization of the person from which the item was seized, the date it was seized, and the place that it was seized from, as well as any indication that latent fingerprints were lifted or attempted to be lifted from the item, and the person identified as having made those fingerprints, if any.

As grounds for the above and foregoing motion the Defendant would show the court as follows:

#### I.

It is believed that the state will rely, at least in part, upon circumstantial evidence in the prosecution of this case.

#### II.

Without a complete inventory of all physical evidence, which the State intends to introduce, as well as that evidence of which the state has knowledge, but does not intend to introduce, it will be impossible for the Defendant to properly prepare to rebut any physical evidence or direct evidence of his guilt.

#### III.

A mere showing of such evidence to the Defendant without any indication of when, where, or for whom it was seized would not allow the Defendant to sufficiently prepare to rebut such evidence at time of trial.

00319

Ø1

**WHEREFORE, PREMISES CONSIDERED,** it is respectfully requested that the above and foregoing motion be granted.

Respectfully submitted,

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite, C-1, LB 2
Dallas, Texas 75207
(214) 653-3550

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

Jane Little

## ORDER

**ON THIS DATE** came on to be heard the foregoing Defendant' Motion, and the Court, after due deliberation, hold that the motion is [GRANTED] [DENIED, to which action of the Court the defendant respectfully excepts].

_____
Judge Presiding

00320
82

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

**FILED**
'FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____DEPUTY

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 194TH JUDICIAL** |
| **VS.** | § | **DISTRICT COURT OF** |
| **JEDIDIAH ISAAC MURPHY** | § | **DALLAS COUNTY, TEXAS** |

### MOTION FOR DISCOVERY IN DEATH PENALTY CASE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Jedidiah Isaac Murphy,** the Defendant in the above-styled and numbered cases, by and through his attorneys of record, and files this Motion for Discovery in Death Penalty Case and in support thereof would show:

**I.**

The Defendant moves this Court to order the State to produce and permit the inspection and analysis of and copying and/or photographing of, by or on behalf of the Defendant, the following designated items:

1. All evidence, whether written or oral, of the range and severity of the prior criminal record of the Defendant, including that as a juvenile. In this connection, the Defendant requests the Court to order the prosecuting authorities to tender all files and documents in their possession or under their control dealing with the prosecution of the Defendant in this case for any offenses other than the ones which are the subject of the instant indictment.

_____ **GRANTED**

_____ **DENIED**

In addition, the following requests are made:

(a) Copies of all complaints, information and indictments previously filed against the Defendant for cases other than the above cause.

_____ **GRANTED**

_____ **DENIED**

00321

83

(b)    Copies of statements of all witnesses secured in connection with the investigation of any prior cases against the Defendant

_____ **GRANTED**

_____ **DENIED**

(c)    Copies of arrest reports and offense reports made in connection with the prosecution of any prior cases against the defendant.

_____ **GRANTED**

_____ **DENIED**

(d)    Copies of any statement of facts or transcription of a court reporter's notes of any prior trials or hearing in cases dealing with the prosecution of Defendant for any prior offense.

_____ **GRANTED**

_____ **DENIED**

2.    Any statement, whether written or oral, of any possible witness which indicates directly or indirectly that the Defendant has previously expressed that he has committed or will commit any acts of violence.

_____ **GRANTED**

_____ **DENIED**

3.    Any statement, whether written or oral, of any possible witness which indicates directly or indirectly that Defendant has at any time in his life expressed any of the following.

        1.    A willingness to kill;

        2.    A desire to kill;

        3.    An ability to kill;

4.    Any statement, whether written or oral, of any possible witness which indicates directly or indirectly that the Defendant has previously expressed anything that could reasonably be interpreted to mean that Defendant posed

or poses a threat to society.

 **GRANTED**

_____ **DENIED**

5.   Any statements or admissions of the Defendant made to third parties which show or tend to show a propensity for acts of violence.

 **GRANTED**

_____ **DENIED**

6.   Any statements or admission of the Defendant made to third parties which show or tend to show a propensity to pose a threat to society.

 **GRANTED**

_____ **DENIED**

7.   Any evidence, whether written or oral, of prior specific misconduct (including all of such incidents with a description of each detailing when and where the same occurred, who was involved, and the full names, addresses and telephone numbers of those persons involved), whether charged or not that might be interpreted as showing that Defendant has a propensity for violence or has in the past been violent.

 **GRANTED**

_____ **DENIED**

8.   Any evidence, whether written or oral, of prior specific misconduct (including all of such incidents with a description of each detailing when and where the same occurred, who was involved, and the full names, addresses and telephone numbers of those person involved) whether charged or not that might be interpreted as showing that Defendant poses a threat to society.

 **GRANTED**

_____ **DENIED**

9.   Any evidence, whether written or oral, including letters and statements of witnesses, but not limited thereto, which relates to any efforts of the

Defendant to rehabilitate himself.

_____ GRANTED

_____ DENIED

10.   Any evidence, whether written or oral, of Defendant's employment records, including statements of any witnesses relative to his performance of any job or jobs.

_____ GRANTED

_____ DENIED

11.   Any evidence, whether written or oral, of Defendant's school records including statements of witnesses relative to his performance or attendance at school or schools.

_____ GRANTED

_____ DENIED

12.   Any evidence, whether written or oral, including letters and statements of witnesses, but not limited thereto, which relates to remorse in connection with the crime charged in the instant indictment, or any lack thereof.

_____ GRANTED

_____ DENIED

13.   Any evidence, whether written or oral, including letters and statements of witnesses, but not limited thereto, which relates to whether or not the conduct of the Defendant might reasonably be anticipated to be altered in the future.

_____ GRANTED

_____ DENIED

14.   A copy of all records of Defendant's behavior while incarcerated at the Dallas County Jail, and at the Institutional Division of the Texas Department of

Criminal Justice.

 **GRANTED**

_____ **DENIED**

15.   A copy of all records compiled and kept by the Dallas County Adult Probation Office and the Dallas County Juvenile Probation Department concerning Defendant's conduct as a probationer in all other cases.

 **GRANTED**

_____ **DENIED**

16.   An opportunity to examine the files of the Dallas County District Attorney's Office for all cases in its possession in which Defendant has been the subject of prosecution, either as an adult or juvenile, and regardless of which counties the Defendant has been prosecuted or investigated.

 **GRANTED**

_____ **DENIED**

17.   A list of the names, addresses, and telephone numbers of all persons the State intends to call as witnesses at the punishment phase of this trial.

 **GRANTED**

_____ **DENIED**

18   All evidence in the prosecution's possession or available to the prosecution which is favorable to the Defendant on the issue of punishment, including but not limited to evidence disclosing:

   (a)   The Defendant has no significant history of prior violent criminal activity;

   (b)   The offense was committed when the Defendant was under the influence of extreme mental or emotional disturbance;

   (c)   The victim was a participant in the Defendant's conduct;

   (d)   The Defendant was an accomplice and his participation was relatively minor;

00325
87

    (e)    The Defendant acted under extreme duress or under the substantial domination of another person;

    (f)    The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and

    (g)    Partial or total negation of any evidence offered by the state in support of any alleged aggravating circumstance.

    _____ **GRANTED**

    _____ **DENIED**

19.    Any other evidence of the circumstances of the crime or the character and record of another party to the crime that would tend to show that the other party was more culpable, more dominant, or more dangerous than the Defendant.

    _____ **GRANTED**

    _____ **DENIED**

20.    Any other evidence that is probative of a negative answer to one or more of the special issues provided for by Article 37.071§2(b) or an affirmative answer to the mitigation issue in Article 37.071§2(e).

    _____ **GRANTED**

    _____ **DENIED**

21.    Any other evidence of any aspect of the Defendant's character and record or the circumstances of the crime that may call for a sentence less than death.

    _____ **GRANTED**

    _____ **DENIED**

In support of the Motion, the Defendant would show the Court as follows:

    1.    The items requested are in the exclusive possession, custody and control of the State of Texas or the United States Government by and through its agents, the police or the prosecuting attorney's office, and

the Defendant has no other means of ascertaining the disclosures requested.

2.   The items requested are not privileged.

3.   The items and information are material to these causes and the issues of guilt or innocence and punishment to be determined in these causes.

4.   The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

5.   In order for Defendant's counsel to effectively investigate and defend against any and all extraneous and/or unadjudicated acts of misconduct that the State may present at trial in these causes, counsel is entitled to discovery of such acts with sufficient notice. Granting Defendant's request for discovery will avoid any last minute investigation which may delay the trial and/or hinder Defendant's counsel from properly conducting voir dire and other responsibilities during trial.

6.   Because both adjudicated and unadjudicated offenses are admissible in evidence in the punishment phases of a trial pursuant to art. 37.071, Tex. Code Crim. Pro. Ann., to deny the Defendant access to the evidence available to the State to sustain its burden of proof in this stage of the trial would deny the Defendant due process of law as guaranteed under the Fourteenth Amendment to the United States Constitution as well as the Defendant's right under Art. 39.14, Tex. Code Crim. Proc. Ann., Article I, §§ 3, 10,13, 15 and 19 of the Texas Constitution and the Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully prays that this Motion for Discovery be granted in all things.

Respectfully submitted,

**Jane Little**
State Bar No. 12424210

**Michael Byck**
State Bar No. 03549500
Assistant Public Defenders
133 North Industrial Boulevard
Suite C-1. LB 2
Dallas, Texas 75207
(214) 653-3550

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

Jane Little

00328
90

**ORDER**

**ON THIS DATE** came on to be heard the foregoing Defendant' Motion, and the Court, after due deliberation, hold that the motion is [GRANTED] [DENIED, to which action of the Court the defendant respectfully excepts].

_____
Judge Presiding

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

**FILED**
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194ᵀᴴ JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### DEFENDANT'S MOTION TO PREVENT UNFAIR SURPRISE DURING TRIAL

**COMES NOW, JEDIDIAH ISAAC MURPHY,** Defendant in the above-styled causes, by and through his attorneys, and makes this Motion to Prevent Unfair Surprise During Trial, and as grounds therefor would respectfully show the Court as follows:

**I.**

The Defendant has also filed a Motion to Discover Extraneous and/or Unadjudicated Acts of Misconduct to be Offered at Guilt or Punishment. This Motion is made in conjunction with the requests made in that discovery motion.

**II.**

During the voir dire and trial of a capital murder case the State continues to investigate and discover what they allege are extraneous and/or unadjudicated acts of misconduct. The Defendant is notified at some point and expected to investigate and defend against these acts. Notice to a defendant of such acts during trial is insufficient. Defendant's counsel cannot conduct voir dire and his other responsibilities during trial while investigating last minute allegations against the Defendant.

00330

92

**III.**

Evidence of this type will deny the Defendant effective assistance of counsel, as well as due process, and could result in a punishment verdict in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, §10, §13, §15 and §19 of the Texas Constitution.

If the Court will not establish a "cut off" date for notice to the Defendant of these acts, Defendant will be forced to ask for a continuance in order to conduct a proper investigation into the newly alleged conduct.  In the alternative, Defendant would request that this Court establish a "cut off" date beyond which the State will not be allowed to offer evidence that it has not disclosed to the Defendant.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays this Court establish such a "cut off" date for such notice.

Respectfully submitted,

Jane Little
State Bar No. 12424210

Michael Byck
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite, C-1, LB 2
Dallas, Texas 75207
(214) 653-3550

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

_Jane Little_
Jane Little

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 194TH JUDICIAL** |
| **VS.** | § | **DISTRICT COURT OF** |
| **JEDIDIAH ISAAC MURPHY** | § | **DALLAS COUNTY, TEXAS** |

### ORDER ON DEFENDANT'S MOTION
### TO PREVENT UNFAIR SURPRISE DURING TRIAL

      Came on to be heard this _____ day of _____, 2001, Defendant's Motion to Prevent Unfair Surprise During Trial, and after due consideration, the Court is of the opinion, and it is hereby ORDERED, that said Motion is:

_____  GRANTED, and the State is hereby ORDERED to disclose all relevant conduct of the Defendant that it intends to offer against the Defendant on or before _____, or such evidence will not be admitted before this jury.

_____  DENIED, to which ruling Defendant timely notes his objection.

SIGNED this the ___4___ day of _____June_____, 2001.


_____
Judge Presiding

00333
95

F00-02424-M AND F00-23910-M



| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
|---|---|---|
| V. | § | DISTRICT COURT OF |
| JEDIDIAH ISSAC MURPHY | § | DALLAS COUNTY, TX |

## MOTION IN LIMINE REGARDING DNA EVIDENCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and respectfully requests that the Court instruct the State not to mention, allude to, or refer to in any manner the results of any DNA testing done in this case in the presence of the jury until a hearing has been held outside the presence of the jury to determine the admissibility of such evidence. Tex. Rule Crim. Evid 104. In support of this motion Defendant shows the following:

I.

The Defendant has reason to believe that the State will offer evidence of DNA testing done in this case.

II.

The admissibility of such evidence is first governed by Rule 702 of the Texas Rules of Criminal Evidence. <u>Kelly v. State</u> 824 S.W.2d 568 (Tex. Crim. App. 1992). In order to assist the trier of fact, the proponent of such evidence must show by clear and convincing evidence that such evidence is sufficiently reliable, i.e., probative and relevant.

III.

Defendant would argue that even if the scientific principles at issue are found to be

00334
96

reliable, the probability statistics in this case are of limited probative value, and therefore, not relevant. Tex. Rule Crim. Evid. 401.

IV.

Even if such evidence is found to be relevant, Defendant would argue that its admission is still prohibited by Rule 403 of the Texas Rules of Criminal Evidence since any probative value of such evidence is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury. Considerations of undue delay and the needless presentation of cumulative evidence also militate in favor of the exclusion of such evidence.

WHEREFORE, PREMISES CONSIDERED, the Defendant requests that this motion be in all things granted.

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
Public Defenders Office
133 N. Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing
Motion in Limine was served on the Dallas County District Attorney's Office by personal
delivery on the same date of filing herewith.

*[signature]*

ORDER

On the _____, the Court having considered the above and foregoing
motion, finds the same is hereby **GRANTED / DENIED**.

_____
Judge Presiding

00336

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS

_____ DEPUTY

NO. F00-02424-M AND FOO-23910-M

| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

### MOTION IN LIMINE REGARDING CHARACTER WITNESSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered case, by and through his attorney of record, and respectfully requests that the Court instruct the State not to mention, allude to, or refer in any manner to any character evidence concerning the Defendant in the presence of the jury until a hearing has been held outside the presence of the jury to determine the qualifications of any character witness, and in support of this motion Defendant would show the following:

I.

Defendant anticipates that the State will call witnesses to testify about the Defendant's character either at the guilt/innocence or, if necessary, the punishment phase of the trial.

II.

It is well settled that the opponent is entitled to test the qualifications of any character witness outside the presence of the jury. This rule is meant to prevent the receipt of incurably harmful evidence by the jury. See, Jones v. State, 641 S.W.2d 545, 551-52 (Tex. Crim. App. 1982).

00337
99

WHEREFORE, PREMISES CONSIDERED, Defendant moves that the Court grant this Motion and hold a hearing outside the presence of the jury prior to the testimony of all character witnesses called by the state, so that the Defendant may test their qualifications to testify about the Defendant's character.

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
Public Defenders Office
133 N.Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion in Limine was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

*Balido*

ORDER

On the __6 - 0 4 - 01__, the Court having considered the above and foregoing motion, finds the same is hereby **GRANTED / DENIED**.

Judge Presiding

00338
100

FOO-02424-M AND F00-23910

**FILED**
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISSAC MURPHY | § | DALLAS COUNTY, TX |

<u>MOTION IN LIMINE REGARDING PRIOR CONVICTIONS</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and respectfully requests that the Court instruct the State not to mention, allude to, or refer to in any manner any prior convictions or alleged violations of the law by the Defendant in this cause in the presence of the jury until a hearing has been held outside the presence of the jury to determine the following:

1. Whether the conviction is either a felony or a misdemeanor involving moral turpitude;

2. Whether the conviction occurred at a time so remote as to have no bearing on the present credibility of said witness;

3. Whether the Defendant now on trial is the same person so previously convicted;

4. Whether the prior conviction is a final conviction, and no direct appeal therefrom is pending in the state or federal appellate courts;

5. Whether the prior conviction resulted in the probation of a sentence which was previously discharged;

6. Whether the prior conviction was obtained at a time when the Defendant was indigent and without counsel and in the absence of an effective waiver of counsel;

7. Whether the probative value of admitting this conviction for the purpose of

00339
101

attacking the witness' credibility outweighs its prejudicial effect to the Defendant. <u>Theus</u>

<u>v. State</u>, 845 S.W.2d 874 (Tex. Crim. App. 1992); Tex. R. Crim. Evid. 609 (Vernon

Special Pamphlet 1994).

    WHEREFORE, PREMISES CONSIDERED, the Defendant requests that this motion

be in all things granted.

<div align="center">

Respectfully submitted,

*Balido*

Jennifer Balido
Public Defenders Office
133 N. Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

</div>

<div align="center">CERTIFICATE OF SERVICE</div>

    I hereby certify to the Court that a true and correct copy of the above and foregoing
Motion in Limine was served on the Dallas County District Attorney's Office by personal
delivery on the same date of filing herewith.

<div align="center">*Balido*</div>

<div align="center">ORDER</div>

On the 6-C4-0\ the Court having considered the above and foregoing
motion, finds the same is hereby **GRANTED / DENIED**

<div align="center">Judge Presiding</div>

00340

Motion In Limine Regarding Prior Convictions- Page 2 of 2

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M



FILED
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION IN LIMINE REGARDING STATEMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above styled and numbered causes, by and through his attorneys of record, and respectfully requests this honorable Court to instruct the prosecution not to mention, allude to, or refer to, directly or indirectly, during any stage of this trial, including but not limited to the voir dire examination, opening statements, and the direct and cross-examination of any witness, the fact that the Defendant herein may have made a statement immediately after he was detained and/or arrested in this cause, to any law enforcement official or agent thereof, until such time as a hearing has been conducted out of the hearing of the jury to determine the admissibility of any such testimony.

The Defendant further requests that this Court instruct the prosecution to advise the Court prior to eliciting any such testimony in order for the Court to excuse the jury and conduct a hearing outside the presence of the jury, without the necessity of counsel for the Defendant having to object to said testimony and request that the hearing be held outside the presence of the jury.

**WHEREFORE, PREMISES CONSIDERED**, the Defendant respectfully prays that the honorable Court will grant this his Motion In Limine.

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Public Defenders Office
133 N. Industrial Blvd., LB2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 12424210
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion in Limine was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

JANE LITTLE

## ORDER

On the _____, the Court having considered the above and foregoing motion, finds the same is hereby **GRANTED / DENIED**.

_____
Judge Presiding

00342
104

NO. F00-02424-M AND F00-23910-M

FILED
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISSAC MURPHY | * | DALLAS COUNTY, TEXAS |

### MOTION IN LIMINE REGARDING PUNISHMENT ARGUMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion in Limine and in support thereof would show as follows:

I.

It is anticipated that the State will argue that Defendant will constitute a continuing threat to society, both inside and outside the penitentiary.

II.

Unless the State has introduced evidence to show that this Defendant will be outside the penitentiary, or have influence outside the penitentiary, such an argument invites the jury to speculate upon the possibility of Defendant's parole. Such speculation will be in violation of the Court's specific instructions and will deprive this Defendant of a fair trial, due process, and due course of law, under the provisions of both the United States Constitution and the Constitution of the State of Texas.

III.

Therefore, Defendant requests that the Court instruct the attorneys for the State not to mention, allude to, or make any argument that implies, directly, or indirectly, that Defendant will ever, at any time, be eligible for or receive parole.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant this motion.

00343

105

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
Public Defenders Office
133 N. Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

    I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

*Balido*

ORDER

    On the _____, the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED / DENIED.**

_____
Judge Presiding

00344

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK DALLAS CO. TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### MOTION IN LIMINE REGARDING PHOTOGRAPHS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves the Court to order the State to proffer crime scene photographs in the presence of the jury until the Court has conducted a hearing and had an opportunity to rule on their relevance under Rule 403 admissibility, and in support of such motion Defendant would show:

### I.

The Defendant believes that at some point in the trial the State may attempt to introduce crime scene photographs depicting the body of the complaint in the above-referenced case.

### II.

These crimes scene photographs are highly prejudicial in that they would influence and inflame the jury to convict and punish the Defendant out of all proportion to their weight as probative evidence in this prosecution of capital murder. Defendant would submit to the court that crime scene photographs of the complainant's body and autopsy photographs of the body will show only the depredations of decomposition and evidence

00345
107

of extensive aquatic activity which are gruesome, inflammatory, and highly prejudicial to the defendant.  Defendant urges these photographs will show details of actions the defendant did not personally inflict on the complainant (results).  For this reason, Defendant would be denied a fair trial if such photographs were admitted.

### III.

The Defendant herewith offers to stipulate and agrees to the following:

1.  That the individual found on October 6, 2000 at 5:17 a.m. on a creek bank in Van Zandt County, Texas, is the complainant named in the indictment Bertie Cunningham, and is one and the same individual that was transported to Dallas, Texas, and autopsied in case number JP3564-00-2564 J.D.

2.  That the cause of death of the complainant is a single gunshot wound to the head caused by a firearm, a deadly weapon, a shooting of the complainant exactly as alleged in the indictment and supported by the above-numbered autopsy report.

3.  That the complainant Bertie Cunningham is an individual born alive and was alive until her death on or about October 4, 2000.

4.  That the "shooting with a firearm", a deadly weapon' cause of death alleged in the indictment is the sole, complete, and only cause of death and that,:

    a)  no pre-existing physical conditions or other concurrent or intervening causes or conditions contributed to the complainant's death.

    b)  that the defense will not offer evidence of, or attempts to the adduce or imply, or argue that any cause of death other than the "shooting with a firearm" allegation in the indictment caused the death of the complainant.

   c)  that the manner and means of 'shooting with a firearm' allegation is legally sufficiently proved and uncontested by the defense.

### IV.

  The defendant would urge that gruesome, inflammatory, and prejudicial photographs of the complainant's body would violate defendant's Federal and Texas Constitutional rights to fundamental fairness and a reliable sentencing determination. Tucker v. Kemp 481 U.S. 1063 (1987).   Reese v. State, No. 73, 281, Ct. Crim. App. Dec 6, 2000.

         Respectfully submitted,

         JANE LITTLE
         State Bar No. 12424210
         **Michael Byck**
         State Bar No. 03549500
         Assistant Public Defenders
         Public Defender's Office
         133 N. Industrial Blvd.
         Suite C1-. LB 2
         Dallas, Texas 75207
         (214) 653-3550
         Attorneys for Defendant

### CERTIFICATE OF SERVICE

  I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the District Attorney of Dallas County by personal delivery on the same date of filing herewith.

         JANE LITTLE

FILED

'FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

F00-02424-M AND F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

MOTION IN LIMINE - CHARACTER OF THE
COMPLAINANT - VICTIM IMPACT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Defendant, _J. Murphy_____, by and through his attorneys
of record, and moves in limine before trial for an order instructing the District Attorney, his
representatives and witnesses, to refrain from making any direct or indirect reference whatsoever, at
trial before the jury to irrelevant personal characteristics of the deceased or to the emotional impact
of the death of the deceased on friends and family.

I.

In Booth v. Maryland, 107 S.Ct. 2529, 2533 (1987), the Supreme Court held that evidence
which emphasized the personal qualities of the victim, the emotional impact of the crime on the family
of the victim, and the family members' opinions and characteristics of the crime and the defendant,
was irrelevant to the capital sentencing decision and created a constitutionally unacceptable risk that
the jury would impose the death penalty in an arbitrary and capricious manner.

II.

In South Carolina v. Gathers, 109 S.Ct. 2207, 2211 (1989), the Court agreed that the trial
court committed reversible error in placing before the jury personal characteristics of the victim which
were irrelevant to the circumstances of the crime. In Payne v. Tennessee, 501 U.S. 808, 111 S.Ct.
2598 (1991), the Supreme Court ruled that victim impact testimony is not per se inadmissible.

00348
110

Recently, the Court of Criminal Appeals has issued an opinion in which it held that victim related evidence is relevant in the context of the mitigation special issue to show the uniqueness of the victim, the harm caused by the Defendant and as rebuttal to the Defendant's mitigating evidence.  <u>Mosley v. State</u>, 983 S.W.2d 249 (Tex. Crim. App. 1998).

Defendant contends that <u>Mosley</u> was wrongly decided, and that victim-related evidence is irrelevant to any special issue as currently drafted and, under the Texas capital punishment scheme, with no burden of proof on mitigation and no review of the mitigation verdict, the admission of such evidence violates the principles of the Eighth Amendment by creating an unacceptable risk that the sentencing decision will be made in an arbitrary and capricious manner.

<div align="center">III.</div>

Because it is irrelevant and therefore inadmissible, Defendant moves in limine that the District Attorney, his representatives and witnesses, refrain from direct or indirect reference to the following matters, at voir dire, in the opening or closing statements, in the evidence portion of the trial, and otherwise:

1.  Evidence or assertions that the deceased was peaceable, law-abiding, truthful, honest, a good person, a good family member, a good provider, or possessed positive personal qualities;

2.  Evidence or assertions about the deceased's personal characteristics which are irrelevant to the guilt/innocence of the Defendant or to his punishment;

3.  Evidence or assertions about the emotional impact of the crime on the family of the deceased;

4.  Evidence or assertions of the deceased's family members' opinions or characteristics of the alleged offense; and/or

5.  Evidence or assertions of the deceased's family members' opinions and characteristics of the Defendant.

00349

/ 1 \

V.

Any ordinary objection during the course of trial, even sustained with proper instructions to the jury, will not remove the harmful effect of this inadmissible evidence, in view of its highly prejudicial content.

WHEREFORE, the Defendant prays that this Honorable Court order and instruct the District Attorney, its representatives and its witnesses, not to elicit or give testimony respecting, allude to, cross-examine respecting, mention, or refer to any of the matters specified above, in the presence and hearing of the jury until a hearing has been held outside the presence of the jury to determine the relevance and admissibility of these matters.

Respectfully Submitted,

Jane Little
State Bar Number 12424210

Mike Byck
State Bar Number 03549500

Jennifer Balido
State Bar Number 10474880

ATTORNEYS FOR DEFENDANT

Dallas County Public Defender's Office
133 N. Industrial Blvd., LB 2
Dallas, Texas 75207
214-653-3550

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion was served on the District Attorney of Dallas County by personal delivery on the same date of filing herewith.

*Jane Little*

JANE LITTLE

F00-02424-M AND F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

ORDER ON DEFENDANT'S
MOTION IN LIMINE - CHARACTER OF THE
COMPLAINANT - VICTIM IMPACT

On this ___ day of _____, 2000 came on to be heard the Defendant's

Motion in Limine - Charter of the Complainant - Victim Impact, and after due consideration, the

Court is of the opinion, and it is hereby ORDERED, that said Motion is:

_____     GRANTED

_____     DENIED, to which ruling Defendant timely excepts.

SIGNED this the ___ day of _____, 2000

_____
JUDGE PRESIDING

00352
114



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION FOR PSYCHIATRIC EXPERT ASSISTANCE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, JEDIDIAH ISAAC MURPHY, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves this Court pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, 13, and 19 of the Texas Constitution, and Article 26.05 of the Texas Code of Criminal Procedure for funds to be used in securing a psychiatric expert to assist the preparation of the defense in this matter. In support of said motion, Defendant would show:

### I.

Defendant is an indigent charged by indictment with capital murder in cause numbers F00-02424-M, and F00-23910-M. Defendant is represented by appointed counsel and has no money or assets of his own which could be used to hire an expert.

### II.

In every case in Texas where the State seeks the death penalty and where the defendant is convicted of capital murder, the jury must decide whether there is a

00353
115

probability that the defendant will commit acts of criminal violence in the future that constitute a continuing threat to society. That is, in such a case, future dangerousness is always an issue. Therefore, the services of a psychologist are necessary for Defendant to evaluate, prepare and present mitigating evidence. See <u>Ake. v. Oklahoma</u>, 470. U.S. 68 (1985).

### III.

Neither Defendant nor counsel is sufficiently knowledgeable in psychology to determine and assess the precise significance of the Defendant's psychological condition, or of the mitigating evidence available in this case.

### IV.

The services of a psychologist are necessary to enable the Defendant to prepare effectively for trial, present evidence on his own behalf and to cross-examine the State's witnesses. The evidence which will be the subject of expert opinion is critical to a determination of the mitigating significance of the evidence in this case.

### V.

If the Defendant is not provided expert assistance, he will be deprived of due process, due course, and equal protection of the laws, the effective assistance of counsel, his right to confront witnesses against him, his right to a fair and impartial trial, his right to present evidence on his own behalf, and his right to explain or deny evidence presented against him in the punishment phase, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, § 10, 13, and 19 of the Texas Constitution.

**WHEREFORE, PREMISES CONSIDERED**, the Defendant respectfully prays that the Court grant this motion and order that he be provided with sufficient funds to have a competent psychologist assist him in the investigation, evaluation, preparation and presentation of his case.

Respectfully submitted

*Jane Little*

**JANE LITTLE**
State Bar No. 12424210

*M. Simel Byck*

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1. LB 2
Dallas, Texas 75207
(214) 653-3550
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

*Jane Little*

Jane Little

00355
117

**O R D E R**

ON THIS DATE came on to be heard the foregoing Defendant's Motion, and the Court, after due deliberation, hold that the motion is (GRANTED) (DENIED, to which action of the Court the defendant respectfully excepts).

_____
Judge Presiding

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M



FILED
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**MOTION FOR COURT REPORTER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JEDIDIAH ISAAC MURPHY, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and respectfully moves this Honorable Court to instruct the Court Reporter to this Court to record by any method all proceedings held in this case, including but not limited to the following:

1. All pre-trial hearings held in conjunction with the guilt-innocence hearing and the punishment hearing, if any.

2. The entire voir dire examination of the jury panel during the trial of this cause on the merits.

3. All opening statements made by counsel for the prosecution and counsel for the Defendant during the hearing on guilt-innocence, all objections made thereto, and the ruling of the Court thereon.

4. All testimony of any and all witnesses during the guilt-innocence hearing and the punishment hearing, if any.

5. All testimony adduced at hearings held outside the presence of the jury during the guilt-innocence hearing and the punishment hearing, if any.

6. All communications between the Court and the jury during the guilt-innocence hearing and the punishment hearing if any.

7. All arguments made to the jury by counsel for the prosecution and counsel for the Defendant during the guilt-innocence hearing and the punishment hearing, if any.

00357
119

8.   All objections made by Defense Counsel and the District Attorney, and all rulings of the Court thereon, during the pre-trial hearings, the hearing to determine guilt-innocence , and the punishment hearing, if any.

9.   All objections to the charge of the Court made by Defense Counsel and the District Attorney, during the guilt-innocence hearing and the punishment hearing, if any, and all rulings of the Court with respect thereto.

**WHEREFORE, PREMISES CONSIDERED,** Defendant respectfully prays that the Court grant this Motion in all things.

Respectfully submitted

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1. LB 2
Dallas, Texas 75207
(214) 653-3550
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

Jane Little

Motion For Court Reporter - Page 2 of 3

00358

170

**ORDER**

On the _____6 - 04 - 01_____, the Court having considered the above and

foregoing Motion finds the same is hereby GRANTED/DENIED.

Judge Presiding

00359

/2.1

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JEDIDIAH MURPHY, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and files this Motion for Leave to File Additional Motions, and in support of said motion would show:

I.

Article 28.01 §2 of the Texas Code of Criminal Procedure provides that when a criminal case is set for a pre-trial hearing, any other preliminary matters not raised or filed seven days before such hearing will not thereafter be allowed to be raised or filed except by permission of the court for good cause shown.

II.

Only after the Defendant's Motion for Discovery, Inspection and Production of Evidence has been heard and further investigation made by Defendant will it become known to Defendant the proper additional motions that should be filed and heard prior to trial.

III.

To require Defendant to file all possible pre-trial motions prior to full disclosure and investigation would result in ineffective assistance of counsel to Defendant in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Texas Constitution.

00360

**WHEREFORE, PREMISES CONSIDERED**, the Defendant respectfully prays that the Court grant this motion and Defendant be permitted to file such additional motions as may be proper.

Respectfully submitted,

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Blvd
Suite, C-1, LB 2
Dallas, Texas 75207
(214) 653-3550

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

JANE LITTLE

## ORDER

On the _____, the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED / DENIED.**

_____
Judge Presiding

Motion For Leave to File Additional Motions – Page 2 of 2

00361



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### MOTION FOR ELECTION OF PUNISHMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **JEDIDIAH ISAAC MURPHY,** the Defendant in the above styled and numbered causes and hereby elects the jury to hear and assess punishment in this capital prosecution in the event the defendant is found guilty of a lesser included offense, or to the offense or offenses less than capital.

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1., LB 2
Dallas, Texas 75207
(214) 653-3552

00362

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing

Motion was served on the Assistant District Attorney of Dallas County by personal delivery

on the same date of filing herewith.

_Jane Little_
Jane Little


**ORDER**

**ON THIS DATE** came on to be heard the foregoing Defendant's  Motion, and the

Court, after due deliberation, holds that the motion is [GRANTED] [DENIED, to which

action of the Court the defendant respectfully excepts].

_Judge Presiding_
Judge Presiding

00363



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**MOTION FOR APPOINTMENT OF APPELLATE ATTORNEY PRIOR TO TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JEDIDIAH ISAAC MURPHY, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves this Court pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, 13, and 19 of the Texas Constitution, and Article 26.05 of the Texas Code of Criminal Procedure for the appointment of an appellate attorney prior to trial in order to aid and assist Defendant's trial attorneys in this Capital Murder litigation. Defendant requests that this appointment be made before trial so that certain issues, required by Federal legislation in capital appeals, can be timely and properly raised. In support of said motion Defendant would show:

**I.**

Defendant is an indigent charged by indictment with capital murder in cause numbers F00-02424-M and F00-23910-M. Defendant is represented by appointed counsel and has no money or assets of his own which could be used to hire an attorney.

00364

## II.

If denied such assistance, Defendant will be deprived of a fair trial and the rights secured by the constitutional and statutory provisions aforerecited.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays that this Motion be in all things granted and funds authorized by the Court for the payment of expert assistance in said causes.

Respectfully submitted,

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite, C-1, LB 2
Dallas, Texas 75207
(214) 653-3550

00365

**AFFIDAVIT**

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this date personally appeared Jane Little, attorney of record in the above-styled and numbered causes, who upon her oath does hereby swear and affirm upon her personal knowledge that all statements of fact contained in the foregoing Motion are in all respects true and correct.

_____
Jane Little

STATE OF TEXAS
COUNTY OF DALLAS

SUBSCRIBED AND SWORN BEFORE ME, the undersigned Notary Public, on this the 27th day of. February , 2001.

My Commission Expires:

4/26/01
_____

_____
Notary Public in and for the
State of Texas.

D. J. LONON
COMMISSION EXPIRES
APRIL 26, 2001

**ORDER**

On _____, the Court having considered the above and foregoing Motion for Expert Assistance finds the same is hereby **GRANTED / DENIED.**

_____
Judge Presiding

00366



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| STATE OF TEXAS | § | IN THE 194th JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

MOTION TO ALLOW INCARCERATED DEFENDANT ACCESS TO A HOT MEAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves this Court for an order allowing him access to a hot meal while incarcerated, and in support thereof, would show:

I.

Defendant is incarcerated in the Dallas County Jail and is being brought to Court each day, beginning March 2, 2001, for voir dire examination. This requires he be fed a cold bologna sandwich at lunch each day. On most days he is returned to his cell after the evening meal has been served, requiring that he be fed a cold sandwich. It is anticipated that voir dire will last several weeks. To deprive Defendant of a daily hot meal for that length of time constitutes cruel and unusual punishment.

II.

Defendant requests that he be permitted a daily hot meal, either at midday or evening during the time he is in trial for the above referenced matter.

**WHEREFORE, PREMISES CONSIDERED**, the Defendant respectfully prays that the Court grant this motion and enter an order granting him access to a daily hot meal during the days he is in Court in the above referenced matter and for such other relief as the Court deems appropriate.

Respectfully submitted,

**Jane Little**
State Bar No. 12424210

**Michael Byck**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Blvd.
Suite C-1, LB 2
Dallas, Texas 75207
(214) 653-3550
Attorneys for Defendant

00368

130

CERTIFICATE OF SERVICE

I  hereby certify to the Court that a true and correct copy of the  above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

_Jane Little_
Jane Little

ORDER

On the _6 - 04 - 0,_ the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED / DENIED.**

Judge Presiding

00369

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194th JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

ORDER FOR HOT MEAL

The Court hereby orders appropriate personnel of the Dallas County Sheriff's Department to provide Defendant Jedidiah Isaac Murphy (BNO 00089253) with access to a hot meal, either at midday or evening, on those days when the Defendant is in Court in the above-styled and referenced matter.

_____
Judge Presiding



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 94th JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION TO ALLOW INCARCERATED DEFENDANT ACCESS TO SHAVING

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves this Court for an order allowing him access to shave while incarcerated, and in support thereof, would show:

I.

Defendant is incarcerated in the Dallas County Jail and is being brought to Court each day, beginning March 2, 2001, for voir dire examination. This requires he exhibit good hygiene each day. He is only allowed to shave on Saturdays; this not adequate to meet his shaving needs. It is anticipated that voir dire will last several weeks.

II.

Defendant requests that he be permitted to shave three times a week during the time he is in trial for the above-referenced matter.

00371

133

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully prays that the Court grant this motion and enter an order granting him access to shave during the days he is in Court in the above referenced matter and for such other relief as the Court deems appropriate.

                                        Respectfully submitted,


                                        Jane Little
                                        State Bar No. 12414210


                                        Michael Byck
                                        State Bar No. 03549500
                                        Assistant Public Defenders
                                        Public Defender's Office
                                        133 N. Industrial Blvd.
                                        Suite C-1, LB 2
                                        Dallas, Texas 75207
                                        (214) 653-3550
                                        Attorneys for Defendant


### CERTIFICATE OF SERVICE

    I  hereby certify to the Court that a true and correct copy of the  above and foregoing Motion was served on the Dallas County Assistant District Attorney by personal delivery on the same date of filing herewith.


                                        Jane Little

**ORDER**

On the _6-04-01,_ the Court having considered the above and

foregoing Motion finds the same is hereby **GRANTED / DENIED.**

_____
Judge Presiding

00373

135

**CAUSE NO. F00-02424-M**
**CAUSE NO. F00-23910-M**

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194th JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

ORDER FOR SHAVING

    The Court hereby orders appropriate personnel of the Dallas County Sheriff's Department to provide Defendant Jedidiah Isaac Murphy (BNO 00089253) with access to shave, on those days when the Defendant is in Court in the above-styled and referenced matter.

_____
Judge Presiding

00374

136

NOS. F00-02424-M AND F00-23910-M

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | * | DALLAS COUNTY, TEXAS |

## MOTION TO ORDER THE STATE TO DECIDE WHETHER TO MAKE A CHALLENGE FOR CAUSE OR PEREMPTORY STRIKE BEFORE DEFENDANT MUST DECIDE WHETHER TO MAKE A CHALLENGE FOR CAUSE OR PEREMPTORY STRIKE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and requests the Court to order the State to announce whether it is going to make a challenge for cause or peremptory strike against a prospective juror before the Defendant announces his decision about whether to make a challenge for cause or peremptory strike against the juror. In support of this motion, Defendant would show:

I.

Article 35.13 of the Texas Code of Criminal Procedure declares that a prospective juror shall be "passed for acceptance or challenge first to the State and then to the Defendant. Challenges to jurors are either peremptory or for cause."

II.

In Bigby v. State, 892 S.W.2d 864 (Tex. Crim. App. 1994), the Court of Criminal Appeals held that this statute requires challenges to be made in the following order: (1) State's challenge for cause; (2) State's peremptory strike; (3) Defendant's challenge for cause; (4) Defendant's peremptory strike. A party can make either type of challenge at any time before he passes a juror to the other side for questioning or after the voir dire of a juror is completed, but the order of the challenges for cause and peremptory strikes should never vary.

00375

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant this motion and order the State to announce its decision to make a challenge for cause or peremptory strike against a prospective juror before the Defendant announces his decision to make a challenge for cause or peremptory strike against the venireperson.

Respectfully submitted,

Jennifer Balido
Public Defenders Office
133 N. Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

Balido

ORDER

On the 6-04-0, the Court having considered the above and foregoing Motion finds the same is hereby GRANTED / DENIED.

Judge Presiding

Motion to Order the State to Decide Whether to Make a Challenge for Cause or Peremptory Strike Before Defendant Must Decide Whether to Make a Challenge for Cause or Peremptory Strike– Page 2 of 2

00376

138

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M



| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION REGARDING THE SUBMISSION OF INDIVIDUAL JURORS FOR CHALLENGE FOR CAUSE IN VOIR DIRE PROCEEDINGS

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, **JEDIDIAH ISAAC MURPHY,** an individual charged with Capital Murder in the above styled and numbered causes and respectfully request the honorable trial court to observe the following procedures in the individual voir dire under Article 35.17 (2):

### I.

When, after voir dire questioning of a prospective Capital Murder juror by either State or Defense, grounds for challenge for cause arise, under either Federal or State Constitutional provisions or State statutory provisions, either side unobtrusively and quietly inform the court of such ground and or reasons for a challenge for course submission of the juror:

    1.    outside the presence and observation of the juror

    2.    outside the hearing and awareness of the juror

### II.

That the court hear, on the record, apart from the prospective juror's presence and awareness, and rule appropriately or allow further specific questions by either side or address the juror regarding the area of challenge for cause. That the prospective juror be unware of the party making the challenge for cause, and an objective and neutral inquiry of the area of challenge be explored with a view to discover the venireman's honest and unaffected opinions and feelings is the sole purpose of this motion.

00377

139

**III.**

The aforementioned procedure would protect the defendant's rights to a fundamentally fair jury selection and his rights to due process of law under the 4, 5, 6, 8 and 14 Amendments to the U.S. Constitution and Article I § 10, 13, 15 and 19 of the Texas Constitution.

For the afore-stated grounds and reasons the Defendants prays this motion the granted.

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1., LB 2
(214) 653-3550
Dallas, Texas 75207

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

JANE LITTLE

00378

140

F00-02424-M and F00-23910-M

**FILED**
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | * | IN THE 194TH JUDICIAL |
| VS. | * | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | * | DALLAS COUNTY, TEXAS |

<u>**MOTION TO QUESTION VENIREMEN REGARDING MITIGATING**</u>
<u>**EVIDENCE**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and requests that counsel be permitted to voir dire prospective jurors about mitigating evidence. In particular, Defendant requests that his attorney be permitted to question prospective jurors about whether, if they were to be required to assess punishment in a capital murder case, they could consider or would be willing to consider, at least in some cases, the following types of evidence in mitigation of punishment:

1. A capital defendant's relative youth at the time of the crime;

2. The fact that a capital defendant was intoxicated at the time of the crime;

3. The fact that a capital defendant suffers from a medically-diagnosed form of mental or emotional illness;

4. The fact that a capital defendant is mentally retarded or suffers brain damage;

5. The fact that a capital defendant was abused or neglected as a child;

6. The fact that a capital defendant has exhibited positive character traits, such as having engaged in acts of kindness towards family members;

7. The fact that a capital defendant may have played a relatively minor role in the offense compared to others;

8. Any residual or lingering doubts a juror might harbor concerning the defendant's guilt;

9. Any acceptance of responsibility or remorse on the part of the Defendant

00379
/4)

     10. Any other relevant mitigating factor that would tend to militate in favor of a

          life sentence rather than a death sentence.

     Defendant believes that such questions would not require a prospective capital juror to "commit" to returning a life sentence if any or all of the foregoing types of mitigating evidence were in fact introduced at trial. Nor does Defendant intend for prospective jurors to "commit" that they will assign any particular mitigating weight to such evidence if it were introduced at trial. Rather, Defendant merely wishes to inquire into whether prospective jurors could "consider" such evidence, at least in some cases, in mitigation of punishment, assuming it was introduced and jurors in fact believed that such mitigating factors were found to exist.

     Defendant recognizes that the Texas Court of Criminal Appeals has recently held that such questions are improper during a capital voir dire. See, e.g., Coleman v. State, 881 S.W.2d 344, 350-51 (Tex. Crim. App. 1994); Hood v. State, No. 71,167 unpublished slip op at 7-8 & nn. 1-4 (Tex. Crim. App. Nov. 24, 1993). Defendant also realizes that the Court of Criminal Appeals has likewise held that if such questions are in fact asked by the defense and a prospective juror states that he "could" or "would" not "consider" any particular type of evidence as "mitigating", that prospective juror is not eligible to be removed for cause. Robertson v. State, 871 S.W.2d 701, 712-13 & n.13 (Tex. Crim. App. 1993); Allridge v. State, 850 S.W.2d 471, 481-82 (Tex. Crim. App. 1991); Johnson v. State, 773 S.W.2d 322, 330-31 (Tex. Crim. App. 1989); Cuevas v. State, 733 S.W.2d 175 (Tex. Crim. App. 1987).

     Defendant believes that these cases were erroneously decided. In particular, Defendant believes that the Eighth and Fourteenth Amendments to the United States Constitution require all members of a capital sentencing jury to at least be willing and able to "consider" any and all types of constitutionally relevant mitigating evidence in mitigation of punishment. See Eddings v Okloahoma, 455 U.S. 104 (1982); Morgan v. Illinois, 112 S.Ct. 2222 (1992). Therefore, such questions are proper ones during a capital voir dire. Furthermore, to deny a capital defendant the right to question prospective jurors about whether they could "consider" such mitigating evidence would violate Defendant's rights to effectively exercise his peremptory challenges and effective assistance of counsel under the Sixth Amendment to the United States Constitution, as well as Article I, Sections 10 and 15 of the Texas Constitution.

Respectfully submitted,

*Jennifer Balido*

Jennifer Balido
Public Defenders Office
133 N.Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550
State Bar No. 10474880

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing
Motion was served on the Dallas County District Attorney's Office by personal delivery
on the same date of filing herewith.

*Balido*

ORDER

On the _____, the Court having considered the above and foregoing
Motion finds the same is hereby **GRANTED / DENIED.**

_____
Judge Presiding

00381

143



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194ᵀᴴ JUDICIAL |
| VS. | § | DISTRICT COURT |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION TO QUESTION VENIREMEN REGARDING THE BURDEN OF PROOF ON THE MITIGATION SPECIAL ISSUE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and makes this Motion to Question Veniremen Regarding the Burden of Proof on the Mitigation Special Issue, and as grounds therefore would respectfully show as follows:

**I.**

Defendant contends that the State has the burden of proof on the special issue dealing with mitigation. That is, the Defendant contends that the answer to the issue must be "yes" unless and until the State proves beyond a reasonable doubt that there are no mitigating circumstances whish would justify a life sentence rather than a death sentence. The Defendant requests permission to voir dire each and every venireman to assure that the venireman can follow the law in this regard. These questions are submitted to demonstrate that such questioning would be appropriate and would be designed to elicit information from the venireman so that the Defendant can intelligently exercise his peremptory challenges as well as have effective assistance of counsel. To these matters the Defendant is entitled on the basis of the Sixth Amendment to the United States Constitution, as well as Article I, Sections 10 and 15 of the Texas Constitution.

**II.**

Specifically, the Defendant would ask each and every juror the following questions:

00382

1. Could you hold the State to it's burden of proof beyond a reasonable doubt in answering the special issue regarding mitigation?

2. Do you agree with the law that requires the State to satisfy you, beyond a reasonable doubt, that there is not sufficient mitigating evidence to justify a life sentence, rather than a death sentence?

3. Whether you agree with the law or not could you follow that law?

**WHEREFORE, PREMISES CONSIDERED**, the Defendant requests the opportunity to voir dire each and every venireman on the above-listed questions. The questions are necessary to render effective assistance of counsel and to allow the Defendant to intelligently exercise his peremptory challenges.

Respectfully submitted,

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Public Defenders Office
133 N.Industrial Blvd.,LB 2
Dallas, Texas 75207
(214) 653-3550

### CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

JANE LITTLE                     00383

**ORDER**

On the _____, the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED / DENIED.**

_____
JUDGE PRESIDING

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

F00-02424-M AND F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION TO VOIR DIRE VENIREMAN ON VICTIM CHARACTER/IMPACT TESTIMONY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant, __J. Murphy__, by and through his attorneys of record, and makes this his Motion to Voir Dire Venireman on Victim Character/Impact Testimony, and as grounds therefor would respectfully show as follows:

I.

The Defendant anticipates the State will offer various family members of the complainant to testify about the character of the complainant and the effect of his death. Without waiving the previous objection to that testimony, the Defendant contends that he should be allowed to voir dire on the venireman's ability to consider this testimony as it relates to the special issues that the jury must answer in the punishment phase of the trial.

II.

Specifically, the Defendant would ask each and every juror the following questions:

1. To which special issues do you believe the victim related testimony would be relevant?

2. How is it relevant to that particular issue?

3. Would you consider this victim testimony in your deliberations on guilt?

4. Would this victim testimony cause you to reduce the State's burden of proof at either

00385

/47

guilt or punishment?  Could you promise me it would not do so?

WHEREFORE, PREMISES CONSIDERED, Defendant requests the opportunity to voir dire each and every venireman on the above-listed questions.  The questions are necessary to render effective assistance of counsel and to allow the Defendant to intelligently exercise his peremptory challenges, because the Court of Criminal Appeals has specifically held that victim related evidence is relevant to rebut the defense mitigation evidence and is irrelevant to the continuing threat special issue.

Respectfully Submitted,

Jane Little
State Bar Number 12424210

Mike Byck
State Bar Number 03549500

Jennifer Balido
State Bar Number 10474880

ATTORNEYS FOR DEFENDANT

Dallas County Public Defender's Office
133 N. Industrial Blvd., LB 2
Dallas, Texas 75207
214-653-3550

00386

/110

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion was served on the District Attorney of Dallas County by personal delivery on the same date of filing herewith.

_Jane Little_
JANE LITTLE

F00-02424-M AND F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

ORDER ON DEFENDANT'S MOTION TO VOIR
DIRE VENIREMAN ON VICTIM CHARACTER/IMPACT TESTIMONY

On this ___ day of _____, 2000, came on to be heard the Defendant's

Motion to Voir Dire Venireman on Victim Character/Impact Testimony, and after due consideration,

the Court is of the opinion, and it is hereby ORDERED, that said Motion is:

_____    GRANTED

_____    DENIED, to which ruling Defendant timely excepts.


SIGNED this the___ ___ day of _____, 2000.


_____
JUDGE PRESIDING

00388

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
BY _____ DEPUTY

CAUSE NUMBERS F00-02424-M AND F00-29310-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**MOTION FOR DISCOVERY OF INFORMATION REGARDING
PRIOR JURY SERVICE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant, by and through his counsel and files this his Motion for

Discovery of Information Regarding Prior Jury Service and in support of thereof would show the

following:

I.

The Defendant has reason to believe and does believe that the Dallas County District

Attorney's Office has certain written or otherwise recorded information which reflects the prior

jury service in Dallas County, Texas of prospective jurors on the jury panel in this case. This

information contains the type of case the juror served on, the verdict (guilty or not guilty or hung

jury) reached, what punishment, if any, was imposed, and an opinion of the district attorney that

tried the case as to whether or not the individual juror was "good, bad, or fair" as well as other

comments. Such information is available to the Dallas County District Attorney's Office for its

examination and utilization in screening the individual prospective jurors present on the panel in

this case.

00389

## II.

In support of this motion, the Defendant states that the information requested contains information material to the matters involved in the present action and constitutes a material factor in the preparation of this defense by counsel for the Defendant. More specifically, the Defendant would show the Court as follows:

1.    Such information concerning past jury service, which is available to and referred to by the Dallas County District Attorney's Office, is not available to the Defendant and his counsel. This information is available on the Dallas County Computer System, but is only accessible to members of the Dallas County District Attorney's Office. This information is necessary and material to counsel for the Defendant in order to preserve the just administration of criminal laws and to insure the Defendant a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, §§ 10, 15, and 19 of the Texas Constitution, and Article 1.04 , 1.05 and 36.29 of the Texas Code of Criminal Procedure.

2.    This information does not constitute the work product of any attorney representing the State of Texas in this case or their investigators, nor does it represent the State's notes or reports concerning this cause or the written statements of any witness, and are therefore discoverable under Article 39.14 of the Texas Code of Criminal Procedure. Texas Courts have held that notes made by counsel during trial are privileged work product, *Salazar v. State*, 795 S.W.2d 187 (Tex. Crim. App. 1990), *Franklin v. State*, 986 S.W.2d 349 (Tex. App.-Texarkana, no pet), *Salazar v. State*, 795 S.W.2d 187 (Tex. Crim. App. 1990), *Poindexter v. State*, 942 S.W.2d 577 (Tex. Crim. App. 1990). Defendant, however, does not seek to see the notes made by counsel during trial, but rather the rating and commentary regarding the juror's prior service. This information is gathered after the jury has rendered its verdict and the prosecutor has an opportunity to hear their verdict and subsequently speak to jurors after they have been discharged from their service.

Additionally, Texas Courts have forced the State to turn over privileged work product at times when the Court deemed necessary in the interest of justice. *See Franklin v. State*, 986 S.W.2d 349 (Tex. App.-Texarkana, no pet), *Salazar v. State*, 795 S.W.2d 187 (Tex. Crim. App. 1990), *Poindexter v. State*, 942 S.W.2d 577 (Tex. Crim. App. 1990).

3.    The information which is solely available to the prosecution is absolutely necessary and material to counsel for the defense to properly prepare for trial. The denial of said motion denies the Defendant a fair and impartial trial as guaranteed by Article I §§ 10, 15 and 19 of the Texas Constitution, Article 1.04, 1.05 and

00390

1⊂7

36.29 of the Texas Code of Criminal Procedure, and the Fifth, Sixth and
Fourteenth Amendments to the Constitution of the United States.

4.     The prior jury service information is not subject to cross-examination by the
       opposing attorney or the trial judge for determination of whether the opinion is
       based on race, ethnicity, or sex as required by *Batson v. Kentucky*, 476 U.S. 79
       (1986).  Reliance upon such information by the prosecution in this case would
       therefore violate the Defendant's right to a fair trial under Article I §§ 10, 15, and
       19 of the Texas Constitution, Article 1.04, 1.05, and 36.29 of the Texas Code of
       Criminal Procedure, and the Fifth, Sixth and Fourteenth Amendments to the
       Constitution of the United States.

       The Dallas Court of Appeals has held that denying the defendant the right to
       question the prosecutor who has rated the potential juror as a "bad juror" in the
       past deprives the defendant of the opportunity to develop evidence that the State's
       race neutral explanations were untrue or pretextual, if they were.  *Bausley v. State*,
       997 S.W.2d 313, 317 (Tex. App.–Dallas 1999, no pet.); *See also Yarborough v.*
       *State*, 947 S.W.2d 892, 906 (Tex Crim. App. 1997)(Baird, J., dissenting).  In
       *Bausley*, the prosecutor at trial testified that the jury list "was run" by an
       investigator for the Dallas County District Attorney's Office and could not explain
       why the juror was rated "bad" because he did not participate in that previous trial.
       The Court of Appeals found that **the only way** the defendant could have shown in
       the Batson hearing that the State's rating was racially biased was by questioning
       the prosecutor who previously rated the juror. *Bausely v. State*, 997 S.W.2d at
       318.  Further, the Dallas Court of Appeals criticized the Dallas District Attorney's
       Office for using such a rating system:

                  We do not condone the use of a list by the prosecutor that gives
                  no explanation for its categorization of previous jury experience or
                  criteria for inclusion on the list or in a particular category.  The use of
                  this list too easily allows the possibility of misuse by an unscrupulous
                  prosecutor wishing to circumvent the *Batson* issue.

       *Bausely v. State*, 997 S.W.2d at 318; *See also Webb v. State*, 840 S.W.2d 543,
       545-46 (Tex. App.–Dallas 1992, no pet.)(*citing Ivatury v. State*, 792 S.W.2d 845,
       848 (Tex. App.–Dallas 1990, pet. ref'd).

       Further, attached to this motion and incorporated herein as Defendant's Exhibit A
       is an affidavit of Chris Styron, Investigator for the Dallas County Public
       Defender's Office and former investigator for the Dallas County District
       Attorney's Office.  Ms. Styron states that in her capacity as an investigator with
       the District Attorney's office,  she routinely received lists of potential jurors from
       the prosecutor and "ran" the names through the County computers with the use of
       a special code.  She would then determine whether there was a record of that juror
       previously serving on a jury and whether the prosecutor in that previous case had

rated the juror as "good", "fair" or "bad" and made any other comments regarding that juror.  Additionally, she states that the names of the prosecutors who tried the prior case and the prosecutor who picked the jury are included on the database and are thus available for discovery and that person or those persons can be subpoenaed to testify in a *Batson* hearing, if needed..

Moreover, attached to this motion and incorporated herein as Defendant's Exhibit B is a number of newspaper articles from *The Dallas Morning News* regarding: a now former prosecutor's demotion after running afoul of a district judge's rulings in a *Batson* hearing and the pattern of exclusion of minorities from jury service in criminal cases, especially capital murder/death penalty cases.  These articles establish that at certain times during the past twenty years, anecdotal and statistical evidence belies a pattern of discrimination against certain recognizable groups under *Batson* and its progeny.

5.   Defendants in criminal trials constitute a class of individuals, specifically a minority group, and as such, are within the provision of the Civil Rights Act of 1964 and to allow the State of Texas the sole use and advantage of the requested information would violate the provisions of the above act, the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10, 15, and 19 of the Texas Constitution.

6.   This information, being available only to the prosecution during the selection of the jury and denied to the defendant, constitutes a material advantage to the State of Texas, which cannot be overcome by the Defendant.  Said deprivation of rights violates the right of the Defendant to a fair trial under the Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Texas Constitution.

7.   This information was accumulated by personnel and equipment whose salaries and expenses are being paid by public funds, both state and federal; therefore, to deny the Defendant equal access to this material would be a denial of the Equal Protection Clause of the  Fourteenth Amendments to the Constitution of the United States.

8.   Information collected by the prosecution during the jury selection, trial and verdict of the potential juror's prior jury service has been  recorded and disclosed to other members of the District Attorney's Office in violation of Article 35.29 of the Texas Code of Criminal Procedure.

9.   The information collected by the prosecution is not part of "pending litigation" and should not be afforded the protection of any confidentiality that inures itself to investigative notes, memos, etc under the Work Product Doctrine.

10.   The information subject to this motion has also been requested by Defendant from Dallas County District Attorney's Office though the vehicle of a formal Public Information Act request served upon the Dallas County District Attorney's Office on February 19, 2001, and is attached to this motion and incorporated herein as Defendant's Exhibit C.  On February 22, 2001, Larissa Roeder of the Appellate Section of the District Attorney's Office informed Defendant's Counsel that their office would be seeking an Attorney General's Opinion on Defendant's request and would not expect an opinion from the Attorney General before the statutory 45 days.  Defendant would argue that, by that time, Defendant's rights would be violated to a point that no remedy could cure the violation.

III.

Defendant prays that this Court order that the State of Texas not to use any information collected in the manner described above in its evaluation of potential jurors in this case, unless and until it can and will provide such information to Defendant or his counsel.  Additionally, since the General Voir Dire portion of Defendant's trial begins in this case on March 2, 2001, and by statute, all parties to the case will have the names and personal information of all of the jury panelists two days preceding that day , Defendant prays that this Court immediately enjoin the State of Texas from attempting to "run" the names of potential jurors through their computer's juror history database unless and until this Court has had a full hearing on this matter and enters relevant findings of fact and conclusions of law in this case.

00393

155

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Court consider the issues raised in this Motion, hold a hearing regarding those issues, and grant his Motion in all things.

Respectfully Submitted,

*Jennifer Balido*

Jennifer Balido
Public Defender's Office
133 N. Industrial, LB 2
Dallas, Texas 75207

## CERTIFICATE OF SERVICE

I hereby certify that I personally hand-delivered to Greg Davis, Assistant District Attorney a copy of the foregoing motion on the date of filing herewith.

*Jennifer Balido*
_____
Jennifer Balido

## ORDER

The foregoing motion is hereby _____ (granted/denied), this the _____ day of _____, 2001.

_____
Judge Presiding

00394
156

**AFFIDAVIT OF FACT**

**COUNTY OF DALLAS**

**STATE OF TEXAS**

Before me appeared Chris Styron, who is a person who is known to me, and having been sworn upon oath, makes the following statement:

My name is Chris Styron and I am over 18 years old and of sound mind and body. I am currently an Investigator for the Dallas County Public Defender's Office. From December 1989 to September of 1999, I was an investigator for the Dallas County District Attorney's Office. As part of my duties as an Investigator for the District Attorney's Office, I routinely received lists of potential jurors from the prosecutor I worked with, and I "ran" the names through the County computers with the use of a special code. I would then determine whether there was a record of that juror previously serving on a jury and whether the prosecutor in that previous case had rated the juror as "good", "fair" or "bad" and made any other comments regarding that juror. I would include that information on the list of potential jurors the prosecutor provided to me and then return it to that prosecutor for use in exercising their peremptory strikes. The juror service history database also includes the names of the prosecutor who tried the case and the prosecutor who picked the jury.

_Chris Styron_
Chris Styron

SWORN, upon oath, before me this the 27th day of February , 2001

_D. J. Lonon_
Deborah J. Lonon
Notary Public

D. J. LONON
COMMISSION EXPIRES
APRIL 26, 2001

00395

Dalh s Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19860501N00048

## Jury Debate<P>Questions arise in Dallas County DA race aboutSparling's manual on picking jurors

**By Steve McGonigle**
Published 05-01-1986

From the day Jon Sparling announced his candidacy for Dallas County district attorney last November, the former prosecutor has been answering questions about a 1969 manual in which he advised against selecting minorities as jurors.

The questions arose again Wednesday when U.S. Supreme Court Justice Thurgood Marshall mentioned Sparling's manual in a concurring opinion to a decision by the high court to outlaw the exclusion of jurors because of race.

Marshall cited the Sparling manual as evidence of his contention that the misuse of peremptory challenges -- objections which allow lawyers to dismiss jurors without explanation -- has become so flagrant and widespread throughout the country that the challenges should be abolished.

Sparling praised the high court's majority decision and said he did not interpret Marshall's opinion as a criticism of him because it was made in reference to something he wrote as a junior prosecutor 17 years ago.

"It sort of de-politicizes the issue, and sort of lays it to rest,' he said.

Sparling also repeated his belief that the manual is not a major issue with Republican primary voters, whom he says are more concerned with which candidate will be the most effective prosecutor in fighting crime.

Still, questions about the manual have arisen in almost every media interview, and even when they have not been raised at Republican candidate forums, Sparling's opponent, John Vance, has mentioned the manual in his stump speech.

Democratic candidate Royce West even asked Sparling about the manual on the witness stand in a capital murder trial in an attempt to show the manual reflected a policy of the district attorney's office.

West's actions, in turn, prompted charges of political opportunism from his two Democratic opponents, Peter Lesser and John Allison. West and Allison have also been accused by Lesser of endorsing the manual by not condemning it earlier.

Lesser said he is counting on the jury selection issue to help distinguish him as the candidate who believes the district attorney's office is in need of change. He contended that West and Allison showed support for the manual by supporting incumbent Henry Wade's reelection in 1982.

"For them to get up and parrot the line they've been parroting makes them hypocrites in my

00396
/58

*Defense Exhibit B*
*ph1*

opinion,' Lesser said. "They're hypocrites and they're cowards because they didn't do anything when it counted.'

West and Allison dismiss Lesser's charges as desperation tactics, contending that they have never supported discriminatory jury selection procedures.

Vance supporters acknowledge the jury selection paper has been the subject of an active "whisper campaign' against Sparling. They predict the impact of that campaign will make for a tight race in Saturday's GOP primary.

Sparling, who has said throughout his campaign that the manual reflected the attitudes of a different era, remains confident of victory, believing that primary voters will view him as best-suited to fight the rising crime rate.

"I probably haven't had a question -- outside of news media and TV talk shows -- in two months about jury selection,' he said. "Believe it or not, probably the biggest question is what is the DA going to do about the crime problem.'

Even Vance supporters concede that Sparling's high-profile media campaign has been effective at portraying Sparling as the best person to succeed Wade, who is retiring after 36 years in office.

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19861221N0005

# A PATTERN OF EXCLUSION<P>Blacks rejected from juries in capitalcases

**By Ed Timms, Steve McGonigle / 1986, The Dallas Morning News**
Published 12-21-1986

DISCRIMINATION IN JURIES

For all 15 men tried for capital murder in Dallas County since 1980, prosecutors got what they wanted: the death penalty and overwhelmingly white juries.

Of the 180 Dallas jurors who condemned those men, only five were black. There were 57 other blacks legally qualified to serve on the juries, but prosecutors barred 56.

The prosecutors' use of peremptory challenges -- dismissing potential jurors without having to give a reason -- meant that nine of every 10 blacks qualified for the capital murder juries were excluded. That pattern of racial bias, widespread throughout Texas, is described by one black former prosecutor as "the most dangerous kind of discrimination, because it is oftentimes camouflaged with legal cliches.'

Prosecutors say blacks routinely are excluded from juries because many are soft on defendants, perhaps as a result of their historical distrust of the criminal justice system.

Such exclusion in Dallas County meant that four of the five blacks sent to death row were tried by all-white juries. Two of those, in fact, Larry Smith and Michael Wayne Evans, were executed by lethal injection this year after twice being tried and convicted by all-white juries.

The only black allowed to pass judgment against another black was one who told prosecutors that Texas' form of execution -- lethal injection -- was too humane. "It's too quick,' he testified. "They don't feel the pain.'

These are among the findings of an ongoing investigation by The Dallas Morning News examining jury selection in Dallas and 14 other Texas counties. The analysis included a review of the records of 133 of 232 inmates on death row as of Aug. 1.

The 15 counties, which accounted for almost 60 percent of inmates on death row, represented major geographic regions and included the five largest metropolitan areas in the state. In counties whose black population amounted to at least 10 percent, the investigation also found evidence of racial discrimination in jury selection.

In Dallas County capital murder cases since 1980, blacks had a 1-in-12 chance of being selected as jurors, compared to a 1-in-3 chance for whites and a 1-in-4 chance for Hispanics.

Capital cases, which carry mandatory life sentences or the death penalty, are limited to murders of law enforcement officers or slayings committed in the course of certain other felonies, including robbery, rape and kidnapping.

Several legal experts and community leaders say the findings show that peremptory challenges are being used by prosecutors as tools of discrimination against defendants facing

00398
160

B,p 3

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19861221N0005

the most visceral decision of criminal justice -- execution.

Frank Williams, criminologist with the Criminal Justice Center at Sam Houston State University in Huntsville, analyzed The News' findings. The probability that blacks were eliminated by chance is "1-in-10,000,' he said.

State District Judge Larry Baraka, Dallas' first black felony prosecutor, said The News' findings reaffirm his conclusion that race is the primary reason prosecutors use peremptory challenges to bar blacks.

"Knowing Dallas County and knowing the DAs' practices, l know that's what they're doing.'

Jack Boger, assistant counsel for the NAACP Legal Defense Fund, said the findings establish a pattern:

"The minority community is being told that it doesn't count as much in the criminal justice system. . . . .They certainly don't count as jurors and they're being told they need not apply, or if they apply, they will not be, in effect, hired as jurors.'

In a series of articles published last March, The News documented virtually the same pattern of discrimination in 100 randomly selected felony trials in Dallas County.

In April, a landmark U.S. Supreme Court decision, Batson v. Kentucky, prohibited the use of peremptory challenges in a racially discriminatory manner, saying such practices undermined "public confidence of our system of justice.' In a concurring opinion, Supreme Court Justice Thurgood Marshall cited The News' findings as an example of "systematic exclusion' that violated the 14th Amendment guarantee of due process under the law.

Henry Wade, Dallas County's district attorney for 36 years, said he did not know the specific reasons his prosecutors excluded blacks in capital cases. Wade speculated these blacks were not seated as jurors because prosecutors believed them to be sympathetic toward defendants.

Wade said his office has tried to impanel more blacks on juries in the past five to 10 years. "But I don't believe in putting someone on there just because he's black,' Wade said. "I want someone on there who's going to vote for the state.'

Assistant District Attorney Norman Kinne, who has tried 11 capital cases, more than any other prosecutor on Wade's staff, suggested that most blacks were excluded because they expressed reservations about the death penalty.

Kinne said prosecutors have not intentionally selected all-white juries. "It's just the way things fell,' he said.

While The News' analysis revealed a pattern of prosecutors barring blacks, blacks themselves also shoulder some of the responsibility for the prevalence of all-white juries in capital cases.

Potential jurors in capital cases are screened individually by both prosecutors and defense attorneys. If during the questioning, they state they cannot be impartial, the judge dismisses them for "cause.' After screening, each side has 15 peremptory strikes that allows it to cut potential jurors without explanation. The first 12 remaining are impaneled as jurors.

00399
/b/
B, p 4

Dallas Morning News Archives                http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19861221N00053

In Dallas County, blacks are three times more likely than whites to be excused for cause after saying they cannot assess the death penalty, The News' inquiry showed.

In Harris County, only 8 percent of the jurors in capital cases were black. But blacks there were more likely to hear the cases of other blacks; 65 percent of black defendants had at least one peer on his jury, by far the highest percentage among the 15 counties examined by The News.

Almost 80 percent of the black inmates on death row from the remaining 14 counties faced all-white juries.

"Never in the history of the state of Texas has a white person been sent to death by an all-black jury,' said Harris County Justice of the Peace Al Green, president-elect of the Houston branch of the NAACP. "It has never been done. . . . .Somehow we've come to accept the notion that it's all right for a black defendant to be put to death by an all-white jury.' John Fearance and Ronald Curtis "Buffalo' Chambers are two of the three surviving black inmates on death row from Dallas County. Counting retrials, both have been tried and convicted twice by all-white juries.

"There's no justice to it,' Fearance said from behind a heavy mesh screen at the Texas Department of Correction's Ellis I Unit near Huntsville. Fearance was convicted of the 1978 stabbing death of an East Dallas man while burglarizing his house.

"They have their mind made up,' he said. "They've already tried you before they've actually tried you.'

Chambers, on death row for the 1975 slaying of a Texas Tech University student during an abduction-robbery, said prosecutors didn't want to take a chance at justice.

"You're sitting there and you start seeing only white people going on the jury, right? Well if you're a black dude, and you see all these white people that are going to be on your jury -- the judge, too -- you want somebody who can understand you.'

Houston lawyer Percy Foreman has, by his own estimation, tried more death penalty cases than anyone. He believes that, given the same evidence, a black is more likely to be sentenced to death than a white.

The reason, Foreman asserts: "Racial prejudice on the part of the jurors.'

Beaumont lawyer Gaylyn Leon Cooper, the first black felony prosecutor in Jefferson County, believes black jurors mitigate racist impulses.

"The black juror won't go in and say, "Well, you know how these people are,' or "I'm afraid of these people,' ' Cooper said.

Minority representation on capital murder juries also is seen as a way to ensure that mitigating circumstances are at least considered.

"If you're in a death penalty case and you've got a black kid who grew up . . . in the ghetto,

00400

162

B, p 5

02/22/2001 4:23 PM

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19861221N0005:

and was fatherless, and you've got 12 middle-class, white jurors, you've got nobody on that
jury who by definition can identify with your client,' said Dennis Boskey, former legal
director of Southern Poverty Law Center in Montgomery, Ala.

State Sen. Craig Washington, a Houston defense lawyer, said the secret deliberations of 12
white jurors sends a negative message to the minority community.

"If I'm outside the door when the decisions are being made, I'm suspicious of the decision,'
Washington said. "If you're being fundamentally fair and your decision is right, then you
shouldn't mind me watching it being made.'

The Rev. Zan Holmes, pastor of Dallas' St. Luke Community Methodist Church and a former
Texas legislator, said blacks more often are crime victims than whites. "Blacks have a lot at
stake in the criminal justice system and want to see justice done.'

For more than 20 years, the same U.S. Supreme Court decision that condemned the use of
peremptory challenges "to deny the Negro the same right to participate in the administration
of justice,' in practice gave prosecutors free rein.

Defense lawyers complained that Swain v. Alabama demanded an unattainable standard of
proof; the ruling permitted the use of peremptory challenges in individual cases, and required
documentation of systemwide discrimination.

But under the guidelines of the Batson decision in April, if a defense lawyer shows evidence
of "purposeful racial discrimination' during a single trial, prosecutors can be compelled to
prove they didn't use their peremptory challenges solely to exclude blacks.

The debate now centers on the application of Batson in actual courtroom situations.
Prosecutors say it contradicts the traditional intent, which allowed a person to be excused
without explanation.

Defense attorneys contend the ruling can easily be circumvented.

"A lot of time is going to be wasted because the prosecutor can always come up with some
other reason that would appear equally valid,' explained Houston lawyer Donald W. Rogers
Jr.

There is a wide gap between knowing peremptory challenges are being used racially and
proving it, according to John Paul Davis, Jefferson County's first black prosecutor and now a
municipal judge in Beaumont.

"The subtleties of discrimination within the criminal justice system are the most dangerous
kind of discrimination, because it is often times camouflaged with legal cliches,' he said.
"Lawyers can always use one word when they want to use another.'

However many lawyers believe Batson can be used to curb prosecutors' use of peremptories
along racial lines.

"A good, articulate prosecutor who actually chooses (jurors) on methods other than race will
have no problem with Batson,' said Dallas lawyer Richard Alan Anderson. "If you've got a

00401
163
B, p 6

prosecutor who's obviously choosing on a racial basis and is just trying to make excuses to justify that . . . then you're going to catch those folks.'

University of Iowa law professor David C. Baldus, a nationally known expert in capital murder trials, suggests that lessons learned in job discrimination suits might be applied to jury selection.

In those cases, employers have been found liable for rejecting minority job applicants whose lawyers proved they had the same characteristics as whites who were hired.

Prosecutors who have been successful after picking all-white juries are not likely to change their formula. And that formula, many defense lawyers claim, was etched in an era of segregation and passed blindly to a new, more enlightened generation that nevertheless is practicing age-old discrimination.

"The practice that's been going on in that courthouse ever since I've been involved in it -- as both a prosecutor and a defense attorney -- is that you just don't question success,' said Brad Lollar, president-elect of the Dallas County Criminal Bar. "They've been picking their juries that way forever . . . and it's always worked.'

Lollar, a Dallas County prosecutor for four years before going into private practice, said no one "necessarily . . . came up to me and said directly, "Don't take a black on a jury.' It wasn't that obvious.

"What we were told to do was go around and watch how the experienced prosecutors did things. And it didn't take a Rhodes scholar to figure out that one thing they were all doing was excluding minorities from the jury.'

For Houston lawyer James Stafford, who has appealed the selection of an all-white jury in a capital murder case, the irony is that many blacks eliminated are "probably a lot stronger state's jurors than some of the white people.'

While The News' study showed a higher percentage of blacks on Harris County capital murder juries than on Dallas juries -- 8 percent versus 3 percent -- prosecutors there nonetheless used peremptory challenges to strike more than 90 percent of the black potential jurors.

Harris County District Attorney Johnny Holmes said his prosecutors do not use peremptory challenges solely because of race, but added: "I don't know if we can divorce race from individual philosophies of the potential juror.'

Holmes argues that many blacks perceive the judicial system still tainted by historical experiences of racial prejudice and injustice.

"I still get a rap sheet every now and then on a black defendant and somwhere earlier in his arrest career, it shows "black man walking in a white neighborhood.' Now, when you have been subjected to that, or you know people who have, or your family members have . . . it makes one a little bit skeptical of the system.'

And that skepticism, Holmes said, might be reflected in "some type of turn-the-other-cheek

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19861221N0005

punishment' for a capital murder defendant.

Houston lawyer Carolyn Garcia, who has handled the appeals of several death row inmates, disagrees. She points out that blacks who are removed with peremptory challenges already have sworn they can follow the law. And she fears that the exclusion of blacks from juries is creating yet another disenfranchised generation.

"You can never get off the treadmill of negative experiences,' she said. "The only way to break that cycle is to invite those people into that system.'

Dennis Boskey, a Montgomery, Ala., lawyer who specialized in capital murder cases, described Holmes' position as a form of double jeopardy.

"You're saying, "Well, we beat you over the head then and now we're going to kick you off the juries because we beat you back then,' ' Boskey said.

The search for the ideal juror frequently leads prosecutors and defense lawyers along different routes. They look at a disparate assortment of intangibles to guide them, from how a potential juror looks and how much money he makes to the kinds of books he reads.

"You want a guy with roots in the community,' explained Kinne, who teaches other Dallas County prosecutors how to select juries in capital murder cases. "Usually he has some sort of responsible position that he's held for a number of years. None of his close family or friends has been involved in crime or spent time in the penitentiary. He has a basic understanding of the law . . . and doesn't have any disagreement with any of the law.'

Dallas defense attorney Mike Byck, who defended Chambers and two others on capital murder charges, says each side has its own criteria for jurors.

"The district attorneys want a bunch of jack-booted, marching fascists to sit on a capital murder jury,' Byck said. "I want a bunch of yuppie, knee-jerk, no-backbone liberals to sit on my jury because I don't want them to kill my man. They want them to kill the guy.'

Jurors on Texas capital cases once were required to swear that the potential outcome -- either death or life imprisonment -- would not affect their deliberations. Those who could not were excused from jury duty for cause.

But in 1980, the U.S. Supreme Court ruled that only individuals who say they cannot assess the death penalty under under any circumstances can be excused for cause. The case, Adams v. Texas, involved a Dallas County defendant tried for killing a police officer.

In Adams, Supreme Court justices concluded: "To exclude all jurors (for cause) who would be in the slightest way affected by the prospect of the death penalty . . . would be to deprive the defendant of the impartial jury to which he or she is entitled under the law.'

Some legal scholars, as well as Supreme Court Justices William Brennan and Thurgood Marshall, claim prosecutors are abusing the same constitutional rights protected in Adams.

Brennan, in a recent dissenting opinion, wrote that using peremptory challenges to exclude everyone with reservations about capital punishment creates a "hanging jury.'

00403
165

B, p 8

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19861221N00053

Many blacks in Dallas express some reservations about the death penalty, yet are kept in the jury pool after saying they could assess death in some circumstances. Kinne said those potential jurors are the ones prosecutors are told to strike with peremptory challenges.

"We teach (prosecutors) that if someone expresses doubts about his ability to follow the law, then you get rid of him,' Kinne said. "If it turns out that they're black, that's just how it falls.'

Dallas lawyer Royce West, a black former prosecutor and recent Democratic candidate for district attorney, said he doubts Kinne's explanation of why blacks have been excluded.

"I know, based on my experience not only as a prosecutor but as a defense lawyer, that black people are just as interested in justice and making sure that individuals who don't belong on the street stay off the street.'

A review of trial transcripts in the 15 Dallas County capital cases showed that 33 of the 56 blacks struck by prosecutors voiced reservations about the death penalty. The remaining 23 stated they could assess the death penalty.

Beneath the exacting legal minutiae, the criminal justice system is fueled by the same stereotypes held by the community at large.

In a 1969 speech that later was incorporated into a statewide training manual for prosecutors, former Dallas County Assistant District Attorney Jon Sparling emphasized that minorities "almost always empathize with the accused' and do not make good jurors.

That perception, says defense lawyer Byck, is evident today in prosecutors' jury selection in capital cases.

"I get the impression that they use a racial stereotype much the same, and literally it almost comes out of the Jon Sparling manual where blacks, Jews, well-educated women are too sensitive, too equivocating, too whatever to put on a capital murder jury,' Byck said.

Gaynelle Jones, a black Harris County felony prosecutor, said eliminating people who aren't likely to be receptive to the prosecutor's case -- regardless of their race -- is just common sense.

"I just can't see myself stacking the cards against me,' said Ms. Jones.

Said John Paul Davis, the Jefferson County municipal judge: "I do believe to some extent blacks tend to be more inclined not to be spoonfed by the prosecution. They tend to be a little more independent. . . . .In fact, I think that makes them more valuable on a jury.'

Davis said that while blacks are chosen for some juries, they are "habitually excluded from juries when blacks are defendants, which smacks of the fiercest kind of racism.'

Of the four death row cases from Jefferson County examined by The News, one inmate is white, the others black. The News' analysis showed that one black juror was impaneled in the white defendant's trial; the three blacks were sentenced to death by all-white juries.

00404

166

B, p 9

"We look at who will enforce the law as we see it, and who won't,' said Jefferson County
District Attorney James S. McGrath. "More blacks, through my experience, would be against,
or weaker on, the death penalty than other groups. We may be influenced to that extent.'

However, McGrath said, his prosecutors never have "systematically excluded' any ethnic or
racial group.

"We're cognizant of the fact that certain groups of people make the best jurors,' he said. "If
you want a fine jury, get yourself 12 Germans on there, and you're going to fly. Statistically,
German people are more strict in law enforcement than any group that we know of.'

Beaumont lawyer Cooper, a former assistant on McGrath's staff, said he was never told not to
let blacks on a jury, but felt some pressure.

"Any time a jury came back with what was less than considered to be the appropriate
punishment from a prosecutorial point ofview, then a reason had to be attached," he said.
"And I might be asked, "How many blacks were on the jury?' '

John Vance, who will succeed Wade Jan. 1 as Dallas County district attorney, said he intends
to record the race of each prospective juror in felony trials, and will personally question any
prosecutor whose use of peremptory challenges appears to be racially motivated.

In Tarrant County, a written policy prohibits the systematic exclusion of minorities from
juries. Juries that convicted four to death row were examined by The News -- three were
all-white, the fourth, which convicted a black defendant, included one black juror.

Tarrant County District Attorney Tim Curry said many minorities are "weak on capital
punishment' and excused with peremptory challenges for that reason.

Dallas lawyer Mel Bruder, who represented Randall Dale Adams, the defendant in Adams,
notes that peremptories also eliminate individuals who won't be fair to the defendant, and
warns against too vigorous an attack on their use.

"If you don't like them because they're being used in some discriminatory manner, then they'll
have to be abolished,' Bruder said. "And I think that would be a greater disservice to the
defendants than having them, and allowing the state to strike people who are . . . weak.'

Prosecutors argue that their first responsibility is to get a conviction and find the jurors who
will give it to them.

Troy Woods was the only black juror in the 15 Dallas County capital murder trials involving
a black defendant. His views on the death penalty were unwavering during jury selection.

"What I call punishment is back to the old Indian days,' he said. "Pour some honey on them
and stake them out over an antbed. . . . .That's what I call punishment.'

Woods, 46, was a juror in the trial of Thomas Joe Miller-El, who was sentenced to death in
March for the robbery-murder of an Irving motel clerk.

By the time a trial begins, said Holmes, the Houston district attorney, "We've resolved any

00405
167
B,p10

doubt about the guilt of the accused in our hearts -- this is a guilty son of a bitch and we're trying to find somebody who's going to put him in the pen.'

Sammie Lee Parker was one of four blacks whose opposition to the death penalty kept him from serving on the all-white Dallas jury in 1985 that tried Ronald Curtis Chambers and sentenced him to death.

"I guess the main reason that I'm against the death penalty . . . is maybe 80 or 90 percent of the time there is a black man involved,' Parker testified.

"I am not defending them, because I know we do wrong like everybody, but I think the black man normally gets the tail end of (the) deal.'

Parker's view is shared by many who claim that blacks historically have received harsher treatment from a jury system that has excluded them.

For that reason, many blacks mistrust the legal system. Almost half the blacks summoned for jury service in Dallas County were excluded by the judge because of their stated opposition to the death penalty.

"Minorities correctly realize . . . that they have little chance at the courthouse, or at least that they're running behind,' said Corpus Christi lawyer Doug Tinker, an authority on jury selection in capital trials. "They go down there and they're scared to death. They're like a rabbit in the headlights of a car.'

George C. Wright, director of Afro-American studies at the University of Texas, believes blacks and whites see the law differently: "The whites see the law as the protectors. Black people see it as the oppressor.'

In 1924, when Texas began using the electric chair for executions, the first four inmates seated -- all in one night -- were black. From 1924 through 1964, 504 defendants were sentenced to death; 63 percent of the 361 defendants actually executed were black.

The last to die in the Texas electric chair -- on July 30, 1964 -- was 27-year-old Joseph Johnson Jr., a Houston black convicted of murder.

Because of several factors, executions in Texas were interrupted from 1964 to 1981: anticipation of a U.S. Supreme Court ruling on the constitutionality of the death penalty; a sweeping 1972 Supreme Court decision that overturned potentially discriminatory state laws; and appeals that tested Texas' capital punishment law passed in 1973.

On Dec. 7, 1982, in Huntsville, Charlie Brooks Jr., a Fort Worth black convicted of killing a car dealer, became the first inmate to be executed by lethal injection in the nation.

Fort Worth lawyer Danny Burns unsuccessfully appealed Brooks' conviction, arguing that the Texas death penalty was "a disproportionately severe and excessive punishment . . . being imposed pursuant to a pattern of racial, economic, and sexual discrimination.'

Statewide application of the death penalty echoes the pattern in Dallas County. Since 1924, 17 whites and 40 blacks from Dallas County have been executed.

00406
168
B, p 11

Five whites and 17 blacks from Dallas County have been executed during Wade's tenure as district attorney. Ten of the blacks were executed before 1964 for what are no longer capital offenses -- nine for rape and one for robbery with a firearm.

Gerald Goldstein, general counsel for the Texas Civil Liberties Union, said the attitude among many blacks against the death penalty should surprise no one.

"It should come as no shock to us any more than if we went to Spain after the Inquisition and could find the few Jews left and ask them what they thought,' Goldstein said. "I imagine they would have some problems with the system at that point.'

Houston lawyer Ron Mock, a black, believes the solution to a cycle of skepticism -- one that makes blacks distrust the system and the system mistrust them -- can't be written in the law.

"My changes would involve . . . the hearts and minds of people as a whole to see each other as a brother as equal folks under the law,' he said.

"Those are the things you'd have to change. You'd have to change ordinary people. That's the problem.'
1.GRAPH (Credit:DMN * Source:DMN) DEATH PENALTY CASES: RACIAL MAKEUP OF JURIES BY COUNTY 2.CHART (No credit given) RACIAL

COMPLEXION OF DEATH ROW INMATES, JURIES 3.PHOTO (Credit:DMN-Jan

Sonnenmair) John Fearance looks out of a cage that "dangerous" inmates

are kept in during interviews. 4.PHOTO (Credit:DMN-Jan Sonnenmair)

Clarence Brandley is on death row after an all-white jury in Conroe

convicted him of killing a white girl. 5.GRAPH (Credit/Source:DMN) FEW

BLACKS SELECTED FOR DALLAS DEATH PENALTY TRIALS 6.GRAPH (Credit/Source:

DMN) POTENTIAL DALLAS DEATH PENALTY CASE JURORS EXCUSED FOR CAUSE 7.

PHOTO (Credit:DMN-Jan Sonnenmair * This Photo ran in the BULLDOG

Edition ONLY) Calvin Williams, a Houston man on death row, was

convicted by an all-white jury. 8.GRAPH (Credit/Source:DMN * This

Graph ran in the BULLDOG Edition ONLY) CHANCES OF SERVING IN DALLAS

DEATH PENALTY TRIALS, BY RACE ; LOCATION: Graphs - NR. Photos: 1. -

2. Oversize Black/White File. 3. Prisons & Prisoners - Texas.

00407
169
B, p 12

as Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19990218N0014

## Prosecutor broke no law in juror strikes, DA says<P>Onlywhites impaneled in black woman's case

**By Holly Becka / Staff Writer of The Dallas Morning News**
Published 02-18-1999

A Dallas County prosecutor accused of trying to keep blacks off a jury in a murder trial did not violate the law or commit any other wrongdoing, the district attorney's office said Wednesday.

A state district judge asked District Attorney Bill Hill to look into the matter after becoming concerned about the prosecutor's motives for not using all of her allotted strikes.

Defense attorney John Read contends prosecutor Gina Clark used nine strikes instead of her full 10 in an effort to keep the last qualified black juror from being seated on the jury.

He said he raised the nonstrike issue the morning after an all-white jury had been seated because his client, a black woman accused of killing another black woman, expressed concern over the jury makeup.

Mr. Read, who used all of his strikes, said he realized overnight that a black juror would have been seated if prosecutors had used their 10th strike.

After questioning Ms. Clark, state District Judge Lana McDaniel declared a mistrial and quashed the jury. Jury selection has been rescheduled for Monday.

"It was a strike without using a strike," Mr. Read said Wednesday. "It was pure tactics to keep a black off the jury."

Mike Carnes, Dallas County first assistant district attorney, said it was impossible to not use a strike as a tactic to keep someone off the jury.

"The nonuse of a strike is not something that can be calculated accurately," he said. "The strikes are exercised at the same time, exclusive of each other. So, one side doesn't know how many strikes or which strikes have been exercised by the other side" until they go over them before the judge "because there's no way to read the other side's mind."

Lawyers say it isn't unusual for the state or defense to not use each of its 10 strikes, which can be employed for reasons other than the prospective juror's sex, race, national origin or religion. The Supreme Court decision on Batson vs. Kentucky made it illegal to strike jurors because of race or ethnic background.

Mr. Carnes said a 1991 Tarrant County criminal appeals case backs Ms. Clark's actions. In Hamel vs. Texas, the appeals court found "the state has no duty to use all of [its] strikes merely because there are minority members of the panel farther down the jury list. . . . To hold otherwise would require the state to explain its reasons for failing to strike jurors, which neither the state nor the accused felt should be removed."

00408
170

B, p12

as Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19990218N00149

Judge McDaniel said she went to Mr. Hill after she became concerned about Ms. Clark's responses to her questions about not using the state's 10th strike.

Judge McDaniel said Ms. Clark hesitated for long periods before answering, "waffled" on answers or did not directly reply, asked for a recess and then offered to exchange a white juror for the black juror who had been sent home.

"If you had been in the courtroom that morning, there would have been no question in anybody's mind why she couldn't answer my question with an outright "No, I did not exercise that 10th strike in an effort to keep an African-American juror off the jury,' " Judge McDaniel said.

In a transcript of their exchange, Ms. Clark said her main intention was to use her strikes, not avoiding doing so to eliminate the black juror.

"So your answer is no, you did not" decline to use the 10th strike to keep the black juror off? Judge McDaniel asked.

"For the most part, yes," Ms. Clark replied.

The judge said Ms. Clark's "for the most part" qualification particularly raised a red flag. Ms. Clark deferred comment to Mr. Carnes.

Judge McDaniel, a 12-year Dallas County prosecutor before becoming a judge, said she normally avoids publicity but felt she needed to explain why she quashed the jury and went to Mr. Hill.

"When I asked Ms. Clark that question . . . I fully expected her to say, "We only used nine because there were only nine people we wanted to strike, and the fact that she was an African-American juror in no way entered into our consideration,' " the judge said.

"That's not the answer I got, and that's why I was stunned. I thought, "Oh, my goodness, this is not good.' "

Mr. Carnes, speaking for Mr. Hill, said his office decided Ms. Clark had acted properly after reviewing the transcript and case law and speaking to the judge and prosecutor.

Mr. Carnes also disputed Mr. Read's contention that the court transcript proves his claims.

Mr. Read said he told Dallas County Commissioner John Wiley Price about the incident in light of Mr. Hill's comments only weeks ago at a luncheon with black community leaders.

Mr. Price said Wednesday that he was satisfied with Mr. Hill's handling of the investigation. He said the district attorney's personal involvement, his explanation about the case law and his assurances that Ms. Clark did not act improperly "spoke volumes."

## DA not questioning prosecutor in ex-coach's sex assault case<P>Office backs actions leading to dismissal of charges

**By Holly Becka / Staff Writer of The Dallas Morning News**
Published 07-16-1999

Top officials in the district attorney's office say they won't second-guess the handling of the trial of a Mesquite High School coach after their lead prosecutor had to dismiss his sexual assault charges.

First Assistant District Attorney Mike Carnes said Thursday that his office is reviewing Michael Edward Marsh's trial but that officials had confidence in prosecutor Gina Clark's abilities.

Mr. Carnes said Dallas County authorities would continue the investigation of Mr. Marsh and that he could face other charges.

On Wednesday, after one day of testimony, prosecutors dropped sexual assault and indecency with a child charges that Mr. Marsh faced after his accuser gave conflicting testimony and a judge ruled that Ms. Clark could be called as a defense witness.

The girl, now 16, said Mr. Marsh had sex and other improper contact with her from October through February in a school field house while he was a track coach and world history teacher. Defense attorneys contended that the girl concocted the allegations and was fixated on Mr. Marsh.

Mr. Carnes said the cases were dismissed not because prosecutors doubted the girl's credibility but because they respected her wishes not to proceed.

"Gina had my authorization to continue with the trial, and she had my authorization to dismiss the case," he said. "She made a call, I think, that was meant to protect the victim."

Mr. Marsh's attorney, Tom Pappas, said he believes the dismissals were forced by the girl's many inconsistencies in sworn testimony and statements she made before the trial to Ms. Clark and Child Protective Services caseworkers.

"Because of the nature of the charges and of his position, things moved so rapidly that nobody realized the emotional and credibility problems this girl really had," Mr. Pappas said. "I think whoever would have dealt with this kid was going to have trouble with her as a witness."

Mr. Carnes said part of the review takes into account other allegations that have surfaced about Mr. Marsh.

"Since there's still some possibility for other criminal charges, I just don't think it's appropriate to comment," Mr. Carnes said. "I don't want one case to affect the other."

00410

172

B, p 14

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19990716N0014

Mr. Pappas said his client is focused on regaining a normal life and that he believes he could successfully defend Mr. Marsh against any new charges.

"We've gone back through their accusations, and Mr. Marsh stands ready to defend himself and his reputation if needed," Mr. Pappas said. "We're comfortable in our ability to do that."

Mesquite police said they were disappointed with the turn of events that led to the dismissals. Investigators were confident in the case they built against Mr. Marsh over four months, said Sgt. Joel Martin, a school resource officer and department spokesman.

He said police found witnesses that corroborate the girl's allegations.

"Everybody's innocent until proven guilty," he said, "but we wanted the opportunity to present the evidence that we gathered.

"The investigators worked long hours to show that there was a crime. We believe there was. . . . We're confident that we would have had a guilty verdict."

Mr. Pappas said Mr. Marsh also had witnesses, including some from Mesquite High School, willing to step forward on his behalf.

Ms. Clark said Thursday that she, too, was disappointed the charges didn't go to the jury but that she wouldn't change anything she did.

"I have no reservations with how I handled the case," she said. "I had confidence in my case. I handled it professionally, and it's unfortunate that it didn't end up in the hands of the jury."

Mr. Carnes said each case must be approached individually and that his office wasn't concerned about choices Ms. Clark made.

"We're not going to Monday quarterback a game that was played yesterday," he said. "We're not going . . . to second-guess a prosecutor's call on what the best approach on a specific case is."

Mr. Pappas said Texas' criminal justice system, as opposed to the civil system, gives attorneys little time to sort through evidence that both sides are required to give the other.

"People have a lot of preconceived ideas about lawyers having this almost omnipotent level of knowledge about what people are going to do and say in a case, and it's not really true on criminal side," he said.

"There are surprises all the time. Everybody does the best they can to do their ethical duty, given what's thrown in their lap the last five minutes."

Staff writer Rick Klein contributed to this report.

00411

173

B, p 15

02/22/2001 3:58 PM

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19990720N0025;

## Prosecutor is demoted, reassigned<P>Action follows dismissal of ex-coach's sex case

**By Holly Becka / Staff Writer of The Dallas Morning News**
Published 07-20-1999

One day after expressing confidence in her, the district attorney's office demoted and reassigned the lead prosecutor forced to drop sexual-assault charges against a former Mesquite High School coach.

Dallas County prosecutor Gina Clark was moved, effective Monday, from chief felony prosecutor in state District Judge Lana McDaniel's court to a second-chair prosecutor's slot in the organized-crime division.

As one of seven "drug court" prosecutors, Ms. Clark will help handle felony cases involving defendants accused of drug-related crimes - including capital murder - and witnesses who primarily are police officers.

District Attorney Bill Hill and First Assistant Mike Carnes declined to comment Monday about Ms. Clark's reassignment.

"Personnel issues are internal matters," Mr. Hill said.

Ms. Clark, a Dallas County prosecutor since 1992, said she would not discuss the change. She was notified of her new assignment Friday.

"Since I'm still employed by the district attorney's office, I'll decline to comment," she said.

She was assigned to Judge McDaniel's court in February, after serving as chief prosecutor in two other state district courts; as assistant chief of the misdemeanor division; and as a prosecutor in the organized-crime and child-abuse sections, according to records.

Mr. Carnes declined to respond to some attorneys' view that Ms. Clark's reassignment did not square with his expression of confidence in her after she had to drop the charges against Michael Edward Marsh.

"I don't think there's anything to be reconciled," Mr. Carnes said.

After one day of testimony, prosecutors dismissed sexual-assault and indecency with a child charges against Mr. Marsh, 34, after his accuser gave conflicting testimony and Judge McDaniel ruled that Ms. Clark could be called as a defense witness.

The girl, now 16, said Mr. Marsh had sex and other improper contact with her from October through February in a Mesquite High School field house while he was a track coach and world history teacher. Mr. Marsh's attorneys contended that the girl made up the accusations and was fixated on him.

00412
174
B, P 18
07/22/2001 3:54 PM

1 of 2

Dallas Morning News Archives                    http://archive.dallasnews.com/cgi-bin/d...News%26publishingDocID%3d19990720N00252

On Thursday, Mr. Carnes said that his office was reviewing what occurred at trial and that new charges against Mr. Marsh were possible. He also stressed that top officials in the district attorney's office would not second-guess Ms. Clark's efforts and were not concerned about her ability as a prosecutor.

Lindsey Roberts, who took over Ms. Clark's post in Judge McDaniel's court, declined to comment Monday, as did chief felony prosecutor Toby Shook, Ms. Clark's former boss and one of five supervising prosecutors.

Prosecutor Gregg Long, Ms. Clark's new supervisor, and Judge McDaniel could not be reached for comment Monday.

The move also follows a February incident in Judge McDaniel's court in which she threw out a jury Ms. Clark helped pick after a defense attorney accused Ms. Clark of purposefully trying to keep a black woman off the panel.

The district attorney's office said then that Ms. Clark did not violate the law or commit any other wrongdoing.

Defense attorney John Read had contended that Ms. Clark used nine strikes instead of her full 10 to keep the last qualified black juror from being seated on what ended up being an all-white jury.

He said he raised the issue after his client, a black woman accused of killing another black woman, expressed concern over the jury makeup.

After questioning Ms. Clark, Judge McDaniel declared a mistrial and quashed the jury, citing concern over the answers Ms. Clark gave when asked about not using all of her strikes.

At the time, Mr. Carnes said it was virtually impossible to not use a strike as a tactic to keep someone off the jury.

00413

175

B, p 17



**DALLAS COUNTY**
Public Defender's Office

February 22, 2001

Larissa T. Roeder
Assistant District Attorney
Dallas County District Attorney's Office
133 N. Industrial, LB 19
Dallas, Texas 75207

Dear Ms. Roeder:

This letter is to formally request under the Texas Public Information Act, Chapter 552 of the Texas Government Code, any and all information regarding the prior service and/or history of any juror who served on a jury in Dallas County since your office began its practice of keeping such information. Additionally, I request the ranking, if any, of the former jurors as "good", "fair", or "bad", and any other comments regarding that former juror. Finally, I request that the name of the prosecutor or investigator, either current or former employees of the Dallas County District Attorney's Office, who provided the information, ranking, and comments regarding each individual former juror.

What I am NOT requesting is information contained on "Juror Information Cards" that is subject to and governed by article 35.29 of the Code of Criminal Procedure (and therefore the subject of Attorney General Opinion OR2001-0329 issued on January 29, 2001), but rather the information placed into the internal records of the Dallas County District Attorney's Office which includes both personal information about the former juror and the commentary of the prosecutor or investigator regarding their opinion about the prior jury service of that former juror and the name of prosecutor or investigator making such an entry.

I hereby request a place where I could inspect such information and have the ability to copy that information by electronic means. I will, of course, compensate your office for any reasonable expenses incurred to facilitate this request if you first furnish the amount of the expense before it is incurred.

Thank you for your prompt consideration of this matter.

Sincerely,

*Jennifer Balido*

Jennifer Balido
Assistant Public Defender

00414
176

cc:    The Honorable Harold Entz, 194th Judicial District Court
       Jane Roden, Chief Public Defender

*Defendants C. p.*

CERTIFICATE OF SERVICE

I hereby certify that I delivered a copy of this request to Larissa Roeder, Assistant District Attorney for Dallas County in the following manners:

1) by email on February 19, 2001 (Lroeder@dallascounty.org)

2) by hand-delivery on February 22, 2001

3) by fax on February 22, 2001 (via 214-653-3643)

4) by mail, return receipt requested, on February 22, 2001

_Jennifer Balido_
Jennifer Balido

PUBLIC DEFENDER       Fax:2146533539

## \*\* Transmit Conf.Report \*\*

P.1                                          Feb 22 2001  12:18

| Telephone Number | Mode | Start | Time | Page | Result | Note |
|------------------|------|-------|------|------|--------|------|
| DALLAS DA, APPEL | NORMAL | 22,12:16 | 0'44" | 2 | \* □ K | Manual |

00416

178

n-3

Receipt for Letter From Jennifer Balido, Dallas County Public Defender's Office, by hand-delivery.

Date:   February 22, 2001

Signature: _____

00417
179

Z 579 885 #59

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| Sent to Larissa Roeder | |
|---|---|
| Street & Number 193 N Industrial LB | |
| Post Office, State, & ZIP Code Dallas 75207 | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | |

PS Form 3800, April 1995

Cp4



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### DEFENDANT'S MOTION FOR INDIVIDUAL VOIR DIRE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **JEDIDIAH ISAAC MURPHY** the defendant, charged with Capital

Murder in the above entitled and numbered causes and, prior to the empaneling and

swearing of the special venue or panel of jurors called to serve as jurors, and prior to the

Honorable Court's qualifications, exemptions, and propounding principles to the hearing

of panel, the defendant respectfully demands individual voir dire apart from the entire

panel under Article 35.17(2) Tx. C.C.P. prior to the submission of challenges for cause and

the exercise of peremptory challenges

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1., LB 2
Dallas, Texas 75207
(214) 653-3550

00418

180

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

_____
Jane Little

**ORDER**

ON THIS DATE came on to be heard the foregoing Defendant' Motion, and the Court, after due deliberation, hold that the motion is [GRANTED] [DENIED, to which action of the Court the defendant respectfully excepts].

_____
Judge Presiding



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### REQUEST TO UTILIZE PEREMPTORY CHALLENGES FOLLOWING EXAMINATION OF THE ENTIRE VENIRE

**COMES NOW,** Jedidiah Isaac Murphy, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves this Court to permit the Defendant to exercise his peremptory challenges to prospective jurors after the examination of the entire panel, and for cause would show the Court that:

### I.

Article 35.13 of the Texas Code of Criminal Procedure provides:

> A juror in a capital case in which the State has made it
> known it will seek the death penalty, held to be qualified,
> shall be passed for acceptance or challenge first to the
> State and then to the Defendant.   Challenges to juror are
> either peremptory or for cause.

### II.

A plain reading of Article 35.13 reveals that it governs only the **order** of acceptance or challenge, and not **when** that acceptance or challenge must be made.  There is no statutory support for an interpretation of this article to bar Defendant's request for a circumspect examination of the entire panel.

### III.

A defendant in a non-capital case is not required to challenge before the entire panel has been examined, and may make a sensible and circumspect exercise of his peremptory challenges after examination of the entire panel.

00420
127

## IV.

The discretionary and unnecessary application of Article 35.13 to a defendant in a capital case only constitutes a violation of the constitutional rights to equal protection as set forth in the Fourteenth Amendment to the United States Constitution and Article I, § § 1,3,3a, and 19 of the Texas Constitution.

## V.

Requiring a defendant to exercise his peremptory challenges before the entire panel has been examined denies him the right to intelligently exercise these challenges, in violation of his right to effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I § 10 of the Texas Constitution.

## VI.

Requiring a defendant to exercise his peremptory challenges before the entire panel has been examined denies him the right to a fair and impartial jury, due process and due course of law, guaranteed by the Texas and United States Constitutions.

## VII.

Article 35.13 conflicts with Article 35.15 (d) providing for the selection of alternate jurors.

**WHEREFORE, PREMISES, CONSIDERED,** the Defendant respectfully prays that the Court grant this motion and permit the utilization of the Defendant's peremptory strikes following the qualification of the entire venire.

Respectfully submitted,

**Jane Little**
State Bar No. 12424210

**Michael Byck**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Blvd. LB 2
Dallas, Texas 75207
(214) 653-3550
Attorneys for Defendant

00421

1A3

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

*Jane Little*
Jane Little

**ORDER**

**ON THIS DATE** came on to be heard the foregoing Defendant' Motion, and the Court, after due deliberation, hold that the motion is [GRANTED] [DENIED, to which action of the Court the defendant respectfully excepts].

_____
Judge Presiding

00422
184



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### MOTION TO VOIR DIRE ON PAROLE LAW- 40 YEAR MINIMUM

### TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** the Defendant, Jedidiah Isaac Murphy, by and through his attorneys of record, and makes this his Motion to Voir Dire on Parole Law - 40 Year Minimum, and as grounds therefor would show as follows:

### I.

If the Defendant is convicted of capital murder and sentenced to life imprisonment, he will be required to serve a minimum of 40 calendar years before he will be eligible for parole. The jury has a right to know this information in answering the special issues. The jury will be given this information at punishment pursuant to statue. The Defendant has a right to know how this information will effect the jurors' consideration of the special issues. These questions are necessary in order to allow the Defendant to intelligently exercise his peremptory challenges, as part of his right to the effective assistance of counsel. This request is made on the basis of the Sixth Amendment to the United States Constitution, as well as Article I §§ 10 and 15 of the Texas Constitution and V.A A.C.C.P. 36.79.

00423

185

## II.

The Defendant would ask the following questions of each venireman:

1. Would the minimum length of time a defendant could serve in prison before he could be paroled be something you would want to know in answering the special issues?

2. On which special issue would this be important?

3. How would this 40-year minimum sentence be important to you in answering the special issues?

4. Would you more likely, or less likely, generally, to view a defendant as a continuing threat to society if you knew he could not be paroled for a minimum of 40 years?

5. What kind of evidence would you expect, as a juror, to help you in considering the 40-year parole ineligibility factor when answering the special issue?

**WHEREFORE, PREMISES CONSIDERED**, Defendant requests that the Defendant be allowed to ask these specific questions of each prospective juror, and any follow-up question which may be necessary based on the venireman's responses.

Respectfully submitted,

Jane Little
State Bar No. 12424210

Michael Byck
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Blvd.
Suite C-1, LB 2
Dallas, Texas 75207
(214) 653-3550

00424

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of the same this the

_____27___ day of _____Feb_____, 2001.

Jane Little

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

ORDER ON DEFENDANT'S MOTION TO VOIR DIRE
ON PAROLE LAW - 40 YEAR MINIMUM

On this _____ day of _____, 2001, came on to be heard the Defendant's Motion to Voir Dire on Parole Law - 40 Year Minimum, and after due consideration, the Court is on the opinion, and it is hereby ORDERED, that said Motion is:

_____ GRANTED

_____ DENIED, to which ruling Defendant timely excepts.

SIGNED this the _____ day of _____, 2001.


_____
Judge Presiding

00426

FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION TO VIDEOTAPE THE INDIVIDUAL VOIR DIRE

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JEDIDIAH ISAAC MURPHY, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves this Court to videotape the individual voir dire and make the tapes part of the record of appeal. In support of this motion, Defendant show:

### I.

The Defendant, "has a statutory and constitutional right to an 'adequate' appellate record at (the) State's expense" because he is indigent. Dunn v. State, 733 S.W. 2d 212, 214 n.3 (Tex. Crim. App. 1987).

### II.

An adequate record includes a complete record of voir dire. Austell v. State, 638 S.W. 2d 888, 890 (Tex. Crim. App. 1982).

### III.

The record of the individual voir dire will be incomplete and inadequate if it is not videotaped.

### IV.

An appeal of an adverse ruling on a Batson objection may turn on whether the attire or haircut of one juror was different than the attire or haircut of other venirepersons. See, e.g., Woods v. State, 801 S.W.2d 932, 936,-37 (Tex. App. - Austin 1990); Vann v. State, 788 S.W.2d 899, 903-05 (Tex. App. - Dallas 1990).

00427

### V.

Counsel cannot seriously be expected to verbally describe the appearance of every juror.

### VI.

Moreover, "(t)he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record" <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 n.9 (1985) (citation omitted).

### VII.

Appellate courts compensate for this "lack of clarity of the printed record" by giving great deference to the rulings of "the trial judge who sees and hears the juror." <u>Wainwright v. Witt</u>, 469 U.S. at 426-26.

### VIII.

That doctrine was developed over a century ago when the record for an appeal was made with a fountain pen.   See Wainwright v. Witt, 469 U.S. at 428 n.9 (citing <u>Reynolds v. United States</u>, 98 U.S. 145, 156-157 (1879)).

### IX.

When "advance in scientific knowledge" make a legal practice obsolete, it should be modified to preserve its purpose.  <u>Berger v. United States</u>, 388 U.S. 41, 49 (1967).

### X.

Rule 11(a) of the Texas Rules of Appellate Procedure requires the court reporter to transcribe her notes of the voir dire upon request for the purposes of insuring as complete a record in criminal proceedings as possible <u>Morris v. State</u>, 411 S.W.2d 730 (Tex Crim. App. 1967).

### XI.

The statute has been interpreted to prohibit the use of a mechanical recording in lieu of a transcript of the reporter's notes if the defendant objected, <u>Soto v. State.</u> 671 S.W. 2d 43 (Tex. Crim. App. 1984), but it does not bar the use of a mechanical recording to supplement the written transcript.

00428

190

## XII.

A videotape of the individual voir dire will contribute to the accuracy of appellate review because the Court of Criminal Appeals will be able to see and hear everything that the trial judge did.

## XIII.

The obsolete practices of relying on a written transcript of the voir dire gives the state an unfair advantage. A competent prosecutor can get almost any prospective juror to equivocate and the slightest vacillation in the written record makes the judge's ruling on a challenge for cause virtually immune to appellate review.

## XIV.

The cost of videotaping the voir dire is minimal.

## XV.

A videotape of the voir dire will not delay or disrupt the trial.

**WHEREFORE, PREMISES CONSIDERED,** the Court should have a videotape of the individual voir dire made and include it in the record for appeal.

Respectfully submitted,

**Jane Little**
State Bar No. 12424710

**Michael Byck**
State Bar No. 03549500
Assistant Public Defender
Public Defenders Office
133 North Industrial Boulevard
Suite C-1., LB 2
Dallas, Texas 75202
(214) 653-3550

00429

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

_Jane Little_
Jane Little

**ORDER**

On the _____, the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED/DENIED.**

_____
Judge Presiding

00430
192



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION FOR PRODUCTION OF WITNESS STATEMENTS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **JEDIDIAH ISAAC MURPHY,** the Defendant in the above-style and numbered causes, by and through his attorneys of record, and pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Art 1, Sec. 10 of the Texas Constitution, and Art. 39.14, Tex. Code Crim Proc. Ann., respectfully moves this Honorable Court to order the prosecuting attorney to produce, after a witness called by the State has testified on direct examination, the following requested items to wit:

1.  Any statement, whether in writing or however recorded, whether signed or unsigned, of any witness called to testify by the State after his direct examination;

2.  A transcription of the Grand Jury testimony of any witness called by the State to testify after the witness has completed direct examination;

3.  Any document, object photograph, or chart, the contents of which has in any way been placed before the jury by direct examination of witness;

4.  Any police report where same is shown to purport to be what the witness observed or did at the time in question and which concerns facts testified to by the witness on direct examination, whether made by the witness or not, as long as the witness has adopted the same as correct.

The Defendant further requests the Court to order the prosecuting attorney to not offer, in the presence of the jury, any of the foregoing statements, documents, charts, photographs, or other requested objects in evidence until their admissibility has been established outside the presence of the jury.

**WHEREFORE, PREMISES CONSIDERED,** it is respectfully requested that this Motion be in all things granted.

Respectfully submitted,

**Jane Little**
State Bar No. 12424210

**Michael Byck**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1., LB 2
Dallas, Texas 75207

### CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

Jane Little

00432
194

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## ORDER

On this day, came on to be heard the foregoing Defendant's Motion, and after due consideration, the Court is of the opinion that the same should be and it hereby (GRANTED) (DENIED, to which action of the Court the Defendant excepts.)

_____
**Judge**

00433

10 5



**CAUSE NO. F00-02424-M**
**CAUSE NO. F00-23910-M**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, JEDIDIAH ISAAC MURPHY, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and respectfully moves this Honorable Court to hold a hearing on this motion and thereafter suppress any and all evidence seized or obtained as a result of illegal acts on behalf of the State which violated the Defendant's right under the Fourth and Fourteenth Amendments of the Constitution of the United States of America and Article 1, Section 9 of the Constitution of the State of Texas, and Articles 1.06 and 38.23 of the Texas Code of Criminal Procedure.  In support of this motion the Defendant would show:

**I.**

That the arrest of the Defendant and search of the Defendant's residence were pursuant to a warrant and affidavit which do not allege sufficient facts to establish probable cause and were, therefore, issued without probable cause in violation of Defendant's rights.

**II.**

Any and all tangible items and other evidence seized or acquired during the course of this improper arrest and search are the direct result of illegal police procedures and therefore must be suppressed.

**IV.**

The Defendant would show this Honorable Court that the Defendant has standing to complain of the seizure here complained of and that the Defendant has reason to believe and does believe that said evidence will be used against the Defendant in this or in another criminal proceeding.

0043

196

**WHEREFORE, PREMISES CONSIDERED,** the Defendant prays that this motion be in all things granted.

Respectfully submitted,

**Jane Little**
State Bar No. 12424210

**Michael Byck**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Blvd. LB 2
Dallas, Texas 75207
(214) 653-3550
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion to Suppress was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

Jane Little

## ORDER

On _____, the Court having considered the above and foregoing

Motion finds the same is hereby [ ] GRANTED [ ] DENIED.

_____
Judge Presiding

00435



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## MOTION TO SUPPRESS STATEMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves this Court to excuse the jury before any evidence of an admission or confession by the Defendant, whether written or oral, is admitted in order to determine the admissibility of such statements. Defendant makes this request based on the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, 13 and 19 of the Texas Constitution and Articles 38.21 through 38.23 of the Texas Code of Criminal Procedure. In support of this motion, Defendant would show:

### I.

At the time these statements were made by the Defendant, he was under arrest, in custody and substantially deprived of his freedom.

### II.

These statements were made without the Defendant being sufficiently warned of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Article 38.22 of the Texas Code of Criminal Procedure.

### III.

These statements were involuntary and the result of pressure and coercion by law enforcement agents.

### IV.

These statements are the direct fruit of an illegal arrest of the Defendant under the United States and Texas Constitutions and Chapter 14 of the Texas Code of Criminal Procedure.

00436

192

**V.**

These statements were taken in violation of the Defendant's right to remain silent under the United States and Texas Constitutions.

**VI.**

These statements were taken in violation of the Defendant's right to counsel under the United States and Texas Constitutions.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this motion be granted and all statements make by him to any law enforcement agent be suppressed. Defendant further requests that the Court make and file written Findings of Fact and Conclusions of Law regarding these matters.

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defender
Public Defender's Office
133 N. Industrial Blvd.
Suite C-1. LB 2
Dallas, Texas 75202
(214) 653-3550
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion to Suppress Statements was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

JANE LITTLE

00437

**ORDER**

On _____, the Court having considered the above and
foregoing Motion to Suppress Statements finds the same is hereby
**GRANTED / DENIED.**

_____
Judge Presiding

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M



| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**DEFENDANT'S MOTION FOR DISCOVERY OF BRADY MATERIAL REGARDING
CONFESSIONS, STATEMENTS AND ORAL DECLARATIONS THAT LED TO
PREVIOUSLY UNDISCOVERED EVIDENCE**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, JEDIDIAH ISAAC MURPHY, the Defendant in the above styled

and numbered causes, and respectfully requests the court to order the State of Texas by

and through the Dallas County District Attorney, to provide to the defendant all exculpatory

and mitigating evidence surrounding the defendant's written statements and oral

declarations that may effect either the guilt or sentencing stage of the trial. Brady vs.

Maryland, 373 U.S. 85 and Kyles v. Whitley, 115 S. Ct 1555 (1995) and Giglio v. U.S., 405

US 150 (1972) Thomas v. State, 841 S.W 2d 389 (Tx. Crim. App.1992).

**I.**

Defendant would specifically request the following items or areas of exculpatory or

mitigating evidence:

a)    All electronic recordings of whatever kind made of the defendant from the
      time of his arrest until the conclusion of the law enforcement interviews
      which resulted in taking of a written confession October 6, 2001 at 11:00
      a.m.

00439

    b)    All written notes, memoranda, or data of any nature reflecting the defendant's physical, mental, or emotional condition during the time period referenced in (a) above.

    c)    A list of all law enforcement and government agency personnel who observed, interacted, interviewed, or were otherwise in a position to see and hear the defendant during the time period referenced in (a) above.

    d)    All oral responses of the defendant to questioning by law enforcement, including but not limited to: charges, clarifications, amendments, retractions, and explanations made prior to or during the taking of the written statement.

### III.

Defendant would further request the following items or areas of exculpatory or mitigating evidence:

    (a)    all electronic recordings of whatever kind made of the defendant during the period of time law enforcement agents obtained an oral statement leading to the discovery of physical evidence, whether or not such recordings comply with Article 38.22 § 3 C.C.P.

    (b)    by notes, memoranda, or data of any kind regarding the defendant's ability to remember, recall, and relate orally the facts, circumstances, locations, and activities of the offense including, but not limited to, the whereabouts of the defendant immediately before the initial contact with the complainant, as well as the events preceding his arrest.

    (c)    all unrecorded observations by law enforcement personnel regarding defendant's expressions of guilt, remorse, contrition, and/or grief concerning the offense, the victim or victim's family.

### IV.

Defendant would assert said information requested above is material to the defense of this capital crime, and relates to guilt as well as punishment; is in the possession of the prosecution or affiliated law enforcement investigative and detention agencies; is not privileged; is necessary to the adequate preparation and presentation of a defense in this capital prosecution; and is constitutionally required to be disclosed to the defense.

00440

207

**WHEREFORE, PREMISES CONSIDERED,** it is respectfully requested that this

Motion be in all things granted

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1., LB 2
Dallas, Texas 75207

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing

Motion was served on the Assistant District Attorney of Dallas County by personal delivery

on the same date of filing herewith.

Jane Little

**CAUSE NO. F00-02424-M**
**CAUSE NO. F00-23910-M**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**ORDER**

ON THIS DATE came on to be heard the foregoing Defendant' Motion, and the Court, after due deliberation, hold that the motion is [GRANTED] [DENIED, to which action of the Court the defendant respectfully excepts].

_____
**Judge Presiding**

00442



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**MOTION TO EXCLUDE EVIDENCE OF UNADJUDICATED EXTRANEOUS OFFENSES DURING THE PUNISHMENT PHASE, OR REQUIRE A LIVE-LINE-UP**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **JEDIDIAH ISAAC MURPHY,** the Defendant in the above styled and numbered cases, by and through his attorneys of record, and files this Motion to Exclude Evidence of Unadjudicated Extraneous Offenses During the Punishment Phase or Require a Live Line-Up, would show the following.

**I.**

Permitting the introduction of unadjudicated extraneous offenses at punishment is not consistent with the heightened reliability required in capital litigation.

**II.**

Although there is substantial authority to the contrary, defendant submits that to permit introduction of unadjudicated extraneous offenses at the punishment phase of a capital trial denies him his right to due process, due course, and equal protection of the law as guaranteed by the United States and Texas Constitutions.

**III.**

To permit the State to introduce evidence of unadjudicated offenses to a jury which has just convicted a defendant of capital murder violates the basic premise of a

00443

fundamentally fair trial embodied in the due process and due course of law provisions of

the state and federal constitutions.   State v. Bobo, 727 S.W. 2d 945 (Tenn 1987).  As the

Washington Supreme Court has held:

> To allow the jury which has convicted defendant of aggravated
> first degree murder  to consider evidence of other crimes of which
> defendant has not been convicted is, in our opinion, unreasonably
> prejudicial to defendant..In effect, to allow such evidence is to
> impose upon a defendant who stands in peril of his life the
> burden of defending, before the jury that has already convicted
> him, new charges of criminal activity.  Information relating to
> defendant's criminal past should therefore be limited to his
>  record of convictions.

State v. Bartholomew, 654 P.2d 1170, 1184 (Wash. 1982) (en banc).

   Thus, a jury which has already found a defendant guilty of capital murder would not
be fair and impartial in viewing evidence of other accusations made against him.  That jury
would be predisposed toward finding of guilty and would not require independent proof
beyond a reasonable doubt utilizing those alleged offenses in answering the special issues.

## IV.

   In the event the Court denies a total prohibition of extraneous offenses the
Defendant submits to the court that the State has given notice, as the date of filing this
motion, to four extraneous offenses.  Two of these extraneous offenses; an August 27,
1997 Kidnap/UUMV and on August 27, 1997, theft from a person are based on
identification that occurred over three years from the date of offense.   One such
identification was made from a photograph of the defendant shown on television news with
accompanying facts of the capital murder offense that were superficially similar  to the
Kidnap/UUMV.

   Defendant would request the court to compel the State to place the Defendant in
a live-line-up to be viewed by the witnesses to the 1997 offenses before presenting any
evidence of those extraneous offenses in any part of this capital trial, and as grounds
would show:

   a)   the time period between the occurrence of the offense and the identification
        of the defendant was over three years.

   b)   the viewing of a single photograph of the Defendant coupled with brief news
        accounts of the facts of capital offense are impermissibly suggestive and not
        an independent basis for an in-court identification.

00444

fundamentally fair trial embodied in the due process and due course of law provisions of

the state and federal constitutions.   State v. Bobo, 727 S.W. 2d 945 (Tenn 1987).  As the

Washington Supreme Court has held:

> To allow the jury which has convicted defendant of aggravated
> first degree murder  to consider evidence of other crimes of which
> defendant has not been convicted is, in our opinion, unreasonably
> prejudicial to defendant..In effect, to allow such evidence is to
> impose upon a defendant who stands in peril of his life the
> burden of defending, before the jury that has already convicted
> him, new charges of criminal activity.  Information relating to
> defendant's criminal past should therefore be limited to his
> record of convictions.

State v. Bartholomew, 654 P.2d 1170, 1184 (Wash. 1982) (en banc).

Thus, a jury which has already found a defendant guilty of capital murder would not
be fair and impartial in viewing evidence of other accusations made against him.  That jury
would be predisposed toward a finding of guilty and would not require independent proof
beyond a reasonable doubt utilizing those alleged offenses in answering the special issues.

## IV.

In the event the Court denies a total prohibition of extraneous offenses the
Defendant submits to the court that the State has given notice, as the date of filing this
motion, to four extraneous offenses.  Two of these extraneous offenses; an August 27,
1997 Kidnap/UUMV and on August 27, 1997, theft from a person are based on
identification that occurred over three years from the date of offense.   One such
identification was made from a photograph of the defendant shown on television news with
accompanying facts of the capital murder offense that were superficially  similar  to the
Kidnap/UUMV.

Defendant would request the court to compel the State to place the Defendant in
a live-line-up to be viewed by the witnesses to the 1997 offenses before presenting any
evidence of those extraneous offenses in any part of this capital trial, and as grounds
would show:

a)     the time period between the occurrence of the offense and the identification
of the defendant was over three years.

b)     the viewing of a single photograph of the Defendant coupled with brief news
accounts of the facts of capital offense are impermissibly suggestive and not
an independent basis for an in-court identification.

c)   the opportunity for the witness to observe the defendant, the degree of concentration at the time of the offense, obstruction, distracting, poor lighting and a number of other factor's regarding the proper identification of the defendant can be addressed by determining if the extraneous witness can, with observable certainty, identify the defendant from a live-line-up.

d)   the dangers in extraneous offense testimony, the lack of a charge on extraneous offenses at punishment phase, difficulty of defending against uncharged offenses, and the heightened reliability requirement in capital murder punishment phases would require live line-up in the two aforementioned extraneous offenses.

e)   the two above referenced extraneous offenses are unindicted.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully prays that this Court grant this Motion to Exclude Evidence of Unadjudicated Extraneous Offenses During the Punishment Phase, or in the alternative, require the State, prior to trial to conduct live line-ups containing the defendant to insure the fundamental fairness of any three year old identification and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite C-1., LB 2
Dallas, Texas 75207

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

_Jane Little_
Jane Little

**ORDER**

On _____,the Court having considered the above and foregoing Motion finds the same is hereby [   ] GRANTED   [   ] DENIED.

_____
Judge Presiding

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M



FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS

_____ DEPUTY

| THE STATE OF TEXAS | § | IN THE 194ᵀᴴ JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### MOTION FOR IDENTIFICATION HEARING AND TO EXCLUDE EVIDENCE OF ILLEGAL IDENTIFICATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered causes, by and through his attorneys of record, and moves for an identification hearing outside the presence of the jury for any identification of this Defendant in the State's case in Chief or any extraneous offense, and in support thereof would show the following:

I.

The purpose of this hearing is to determine the following:

1. Whether defendant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Texas Constitution has in any way been violated by the identification procedures in this case.

2. Whether or not any out-of-court identification of the Defendant was the result of unconstitutionally suggestive procedures in violation of the due process of law clause of the Fifth and Fourteenth Amendments to the United States and the due course of law clause of the Texas Constitution, Article 1, Section 19.

3. Whether any in-court identification of the Defendant is directly related to the impermissible out-of-court identification procedure.

00448

II.

Defendant would show that this improper identification procedure results in a substantial likelihood of misidentification of the Defendant at trial.

III.

Defendant moves to exclude evidence of identification of the Defendant derived from these illegal procedures.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays that this Motion be granted.

Respectfully submitted,

**JANE LITTLE**
State Bar No. 12424210

**MICHAEL BYCK**
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Blvd.
Suite, C-1, LB 2
Dallas, Texas 75207
(214) 653-3550

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the same date of filing herewith.

Jane Little

**ORDER**

On the _____, the Court having considered the above and foregoing Motion finds the same is hereby **GRANTED / DENIED**.

_____
Judge Presiding



FILED

FEB 27 2001

JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR LIST OF STATE'S WITNESSES

### TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Jedidiah Isaac Murphy, the Defendant by and through his attorneys of record and respectfully submits the following:

I.

The Defendant respectfully requests this Honorable Court to instruct the prosecution to submit to counsel for the Defendant a written list of names, addresses, and phone numbers of all witnesses and potential witnesses whom the prosecution expects to all to testify in this case as to:

    a.    Any fact connecting or tending to connect the Defendant to the commission of the alleged offense herein.

    b.    Any fact connecting or tending to connect the Defendant to the commission of any and all other offenses which the prosecution intends to prove up during this trial.

    c.    Any expert opinion, including but not limited to opinions as to ballistics tests, autopsy reports, laboratory analyses as to narcotics and/or dangerous drug, intoxication of the accused and/or any other witness, mental capacity of the Defendant as to competency and/or sanity, physical condition of any witness including the Complainant based upon a medical examination and/or medical reports, handwriting comparisons, fingerprint examinations, fabric tests, blood type analysis, polygraph examinations, value, or the character and/or reputation of the Defendant as to truth and veracity or as to the peaceful and law abiding reputation.

00451

213

d.  As to any fact, as a rebuttal witness, to refute the Defendant's defense or self defense and/or accident; and/or sudden passion;

e.  The character and/or reputation of any witness, including the accused whom the State intends to call or could possibly call to testify in this trial against the Defendant during any phase of this trial, to-wit:

    1.  During the State's case in chief on the issue of whether the Defendant is guilty as charged in the indictment;

    2.  During any rebuttal testimony of the State;

    3.  During the punishment hearing, if any.

Under Article 20.20 C.C.P the prosecution is obligated to endorse upon the indictment the names of the witnesses upon whose testimony said indictment was found.

### III.

Articles 35.15 and 35.16 C.C.P. authorize peremptory challenges and challenges for cause.

Article 35.15 C.C.P. provides in part that:

(b)  In non-capital felony cases, the state and defendant shall be entitled to ten preemptory challenges. If two or more defendants are tried together each defendant shall be entitled to six preemptory challenges and the State to six for each defendant."

Article 35.16 C.C.P provides in part as follows:

(a)  A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the State or the defense for any one of the following reason:.....

    6.  That he is a witness in the cases;

    9.  That he has a bias or prejudice in favor of or against the defendant;

    10. That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his actions in

finding a verdict.

To ascertain whether this cause of challenge exists, the juror shall first be asked whether in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative, he shall be discharged without further interrogation by either party or the court. If he answers in the negative, he shall be further examined as to how his conclusion was formed, and the extend to which it will affect his actions; and, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and if the juror states he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged..."

(f)     A challenge for cause may be made by the defenses for any of the following reasons:

  (1)     that he is related within the third degree of consanguinity or affinity to the person injured by the commission of the offense, or to any prosecutor in the case; and

  (2)     that he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefore."

In order to permit the Defendant herein to exercise in an intelligent manner his preemptory challenges and his challenges for cause, it is necessary for the prosecution to submit a complete written list of the witnesses requested above in order that counsel for the defendant may inquire of the prospective jurors as to whether or not, among other things, said prospective jurors know, are related to or have heard of any of said witnesses by name or reputation, and if so, whether this knowledge would affect his or her respective judgment and/or verdict in this cause. If the Defendant is not given a complete list of the names of said witnesses as requested, the Defendant will be precluded from determining whether or not any prospective juror has a bias or prejudice against the Defendant and/or in favor of the prosecution, and thus will be deprived of intelligently exercising the preemptory challenges to which the Defendant is entitled, and further, the Defendant will be precluded from intelligently exercising his challenges for cause.

**IV.**

That in the event the prosecution during the trial of this cause attempts to elicit the testimony from a witness whose name has not been previously disclosed to the Defendant prior to the voir dire examination of the jury panel, the Defendant requests this Court to prohibit the prosecution from using the testimony of any such witness if the Court finds that the prosecution knew or through the exercise of reasonable diligence should have known of existence of such a witness and thus should have included the name of such witness on the list of witnesses submitted to the Defendant prior to the voir dire examination.

**WHEREFORE, PREMISES CONSIDERED**, the Defendant prays that this Honorable Court will require a complete written list of all witnesses as requested above

Respectfully submitted,

JANE LITTLE
State Bar No. 12424210

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard
Suite, C-1, LB 2
Dallas, Texas 75207
(214) 653-3550

**CERTIFICATE OF SERVICE**

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Assistant District Attorney of Dallas County by personal delivery on the same date of filing herewith.

Jane Little

00454

**ORDER**

**ON THIS DATE** came on to be heard the foregoing Defendant' Motion, and the Court, after due deliberation, hold that the motion is [GRANTED] [DENIED, to which action of the Court the defendant respectfully excepts].

_____

Judge Presiding



CAUSE NO. F00-02424-M
CAUSE NO. F00-23910-M

FILED
FEB 27 2001
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### DEFENDANT'S MOTION REGARDING VICTIM CHARACTER/IMPACT TESTIMONY AFTER MOSELY VS. STATE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JEDIDIAH ISAAC MURPHY, by and through his attorney or

record, and files this his Amended Motion Regarding Victim Character/Impact Testimony

After Mosley v. State and as grounds therefor would show the following:

I.

The Court of Criminal Appeals has recently issued a significant opinion on the issue

of victim impact and character evidence.  In that opinion, written by Judge Keller, the

Court informs us that:

> "Our jurisprudence in this area has been somewhat inconsistent
> and confusing at times.  We take this opportunity to announce a
> consistent, if not always clear-cut rule to be followed in future
> cases: Both victim impact and victim character evidence are
> admissible, in the context of the mitigation special issue, to show
> the uniqueness of the victim, the harm caused by the Defendant,
> and as rebuttal to the Defendant's mitigation evidence. Rule
> 403 limits the admissibility of such evidence when the evidence
> predominantly encourages comparisons based upon the greater or
> lesser worth or morality of the victim.   When the focus of the
> evidence shifts from humanizing the victim compared to other
> members of society then the State exceeds the bounds of per-
> missible testimony.  We recognize that this standard does not
> draw a bright and easy line for determining when evidence
> concerning the victim is admissible and when it is not.

Trial judges should exercise their sound discretion in permitting
some evidence about the victim's character and the impact on
other's lives while limiting the amount of scope of such testimony.
Considerations in determining whether testimony should be excluded
under Rule 403 should include the nature of the testimony, the
relationship between the witness and the victim, the amount of
testimony to be introduced, and the availability of other testimony
relating to victim impact and character.  And, mitigating evidence
introduced by the Defendant may also be considered in evaluating
whether the State may subsequently offer victim-related testimony
" <u>Mosely</u> 983 S.W 2d 249 (Tex. Cr. App. 1998).

## II.

### VICTIMS DEFINED BY INDICTMENT

There are several things this opinion does not do.  It does not broaden the right of

the State to include victim impact or character evidence about people not named in the

indictment.   Only those named in the indictment are properly considered as "victims" *See*

<u>Cantu v. State</u> 939 S.W. 2nd 627 (Tex. Cr. App. 1997).

## III.

### DISCOVERY AND HEARING NECESSARY

Counsel requests that the State be required to detail, in writing, exactly which

witness by name and address will testify; the substance of the testimony regarding victim

impact; and the relationship of said witness to complainant.  Counsel further requests that

the Court conduct a pretrial hearing to evaluate each witness's testimony and demeanor.

Only with this pretrial disclosure and hearing can the Court properly engage in the

balancing test now required by the Court of Criminal Appeals, and only in that manner can

Counsel render effective assistance in deciding whether to waive submission of the

mitigation special issue to prevent the State's introducing the victim testimony.

## IV.

### BRADY IMPLICATED

If the State attempts to offer victim impact or character evidence to create a sympathetic picture of the victims, the State is also obligated to disclose, and indeed to discover, any information which is to the contrary.  The "anti victim impact" evidence sought includes conviction and arrest records, problems in school, work or family, and any other character related information which, in fairness, might rebut the god character or impact evidence as offered by the State.  This evidence must be disclosed under Brady v. Maryland 373 U.S. 83 (1963).

### V.

In the alternative if the court declines to order the requests made in IV. above, the defendant moves the court order all victim impact/victim worth witnesses to read from a prepared written statement, and all such statements to be provided to the defense before the commencement of the punishment stage of this capital trial.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully prays that this Motion in all things be granted.

Respectfully submitted,

JANE LITTLE
State Bar No. 12424310

MICHAEL BYCK
State Bar No. 03549500
Assistant Public Defenders
Public Defender's Office
133 N. Industrial Boulevard, LB 2
Dallas, Texas 75207
(214) 653-3550

00458

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the

_27_ day of _February_____, 2001.


_Jane Little_
Jane Little


**ORDER**

On _____,the Court having considered the above

and foregoing Motion finds the same is hereby [   ] GRANTED   [   ] DENIED.


_____
Judge Presiding

Certification

The State of Texas

County of Dallas

VOL. 2, 235 THRO 460

I, Jim Hamlin, Clerk of the ___194TH JUDICIAL DISTRICT COURT___ of Dallas County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5 (b).

GIVEN UNDER MY HAND AND SEAL at my office in Dallas County, Texas this ___25TH___ day of ___OCTOBER___, 20_01_.

Signature of clerk ___Jane Miller___

Name of clerk ___JANE MILLER___

Title ___DEPUTY CLERK___

C L E R K ' S   R E C O R D

Volume __THREE__ of __FOUR__

Trial Court Cause Number __F00-02424-NM__

In the __JUDICIAL__ District Court #194

of Dallas County, Texas,

Honorable __H. ENTZ__, Judge Presiding.

========================================================================

THE STATE OF TEXAS _____, Plaintiff

vs.

__JEDIDIAH ISAAC MURPHY__, Defendant

========================================================================

Appealed to the
Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas.

========================================================================

Attorney for Appellant

Name __ADAM SEIDEL__

Address __2515 MCKINNEY, STE 1400, DLS, TX   75201__

Telephone No. __214-237-0835__

Fax No. _____

SBOT No. __17999290__

Attorney for: __JEDIDIAH ISAAC MURPHY__

**FILED IN
COURT OF CRIMINAL APPEALS**

NOV 0 5 2001

Troy C. Bennett, Jr., Clerk

========================================================================

Delivered to the Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas.
on the ____ day of _____, _____.

signature of clerk   _____

name of clerk   _____

title   _____

========================================================================

Appellate Court Cause No. _____

Filed in the Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas,
this __25TH__ day of __OCTOBER__, __2001__.

JIM HAMLIN, DALLAS COUNTY DISTRICT CLERK

By __JANE MILLER__, Deputy

FORM 355A

```
 1    JEDIDIAH ISAAC MURPHY            CAUSE NO. F00-02424-MN
 2    VS:                             IN THE 194TH JUDICIAL DISTRICT
 3    THE STATE OF TEXAS              COURT OF DALLAS COUNTY, TEXAS
 4    ===============================================================
 5                             = INDEX =
 6    VOL. 3 OF 4: PAGES 461 THRO 724:
 7
 8    NOTICE OF FILING OF BUSINESS RECORDS PURSUANT
      TO RULE 902(10)-AFFIDAVITS (00 DEC 19)              VOL. 3-461
 9    NOTICE OF FILING OF BUSINESS RECORDS PURSUANT
      TO RULE 902(10)-AFFIDAVIT (01 JAN 9)                VOL. 3-480
10    STATE'S PRODUCTION OF DOCUMENTS (01 JAN 16)          VOL. 3-519
11    NOTICE OF FILING OF BUSINESS RECORDS PURSUANT
12    TO RULE 902(10) (01 JAN 30)-AFFIDAVIT                VOL. 3-582
13    NOTICE OF INTENT TO USE CERTIFIED RECORDS
      (01 APR 30)                                         VOL. 3-603
14    NOTICE OF FILING OF BUSINESS RECORDS PURSUANT
15    TO RULE 902(10)-AFFIDAVIT (01 MAY 2)                 VOL. 3-642
16    CLERK'S CERTIFICATE THAT APPELLATE RECORD IS
      TRUE AND CORRECT (10 25 01)                          VOL. 3-724
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
```

FILED

F00-02424-M

2009 DEC 19 AM 9:17

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## NOTICE OF FILING OF BUSINESS RECORDS PURSUANT TO RULE 902 (10)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through its Assistant District Attorney, Gregory

S. Davis, and files this its Notice of Filing of Business Records Pursuant to Rule 902 (10), Rules of

Criminal Evidence, and respectfully shows unto the Court the following:

I.

The State hereby files self-authenticated business records from the following persons or

entities more than fourteen (14) days prior to the commencement of trial:

1. Christus St. Michael.
2. Jeffrey T. Dehaan, M.D.

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

00461

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 19th day of December, 2000.

GREGORY S. DAVIS

STATE OF _Texas_ )
                        ) SS:
COUNTY OF _Bowie_ )

## AFFIDAVIT

My name is _Kay Wadley_ _____ I am of sound mind, capable of making this affidavit and personally acquainted with the facts herein stated:

I am the medical records custodian of the office of:

_Christus St. Michaels_ _____
(Business Name)

Attached hereto are _5_ pages of medical records regarding:

_Murphy, Matthew_ _____
(Name of Patient)

These medical records are kept in the regular course of business, and it is the regular court of business of this office for an employee or representative of this office with the knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion or diagnosis. The records attached hereto are the original or exact duplicates of the original.

_____
SIGNATURE OF AFFIANT

Before me personally appeared affiant, who being by me duly sworn that the facts stated herein are true and correct according to his/her best information and belief.

In witness whereof, I have hereunto subscribed my name and affixed my official seal this _1st_ day of _December_, 19 _2000_

PEGGY A WHISENHUNT
NOTARY PUBLIC
State of Texas
Comm. Exp. 02-04-2003

_Peggy Whisenhunt_
Notary Public

My Commission Expires:

_2-2003_

00463

ST MICHAEL HEALTH CARE CENTER                    EMERGENCY ADMISSIO
   P.O. BOX 2911                                    09/30/96 05:22pm
   TEXARKANA, TX 75503

MURPHY,MATTHEW                    SSN: 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        9627400201

501B W WALTERS          DOB: 09/01/75 21Y         UNIT: 000159107
                              M MALE          (903)628-4129
NEW BOSTON      TX  75570     CAUCASIAN
UNEMPLOYED                     S SINGLE

Adm Date 09/30/96 05:10pm  FINANCIAL    ACCOM SERVICE    STATION  RM  BED
Dsch Date                    SP  ER          ERS           ER-B6790B10

SELR              SSN: 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
MURPHY,MATTHEW
501B W WALTERS

NEW BOSTON      TX  75570
(903)628-4129

MOTHER         (214)962-7443       SIGNIFICANT OTHER(903)628-4129
ABBOTT,HOPE                         WILLIS,CHELSEA
6305 FM 429                         501B W WALTERS
COFFMAN        TX                   NEW BOSTON      TX    75570

ADVANCED DIRECTIVES:

INSURANCE              GROUP #      POLICY #      POLICY HOLDER'S NAME


ATTENDING PHYSICIAN:              ADMITTING DIAGNOSIS:
   DEHAAN,JEFFREY T                  -INCISION OPEN

PREVIOUS ADMIT TO HOSPITAL
----------------------------------------------------------------------

00464

_____    _____
   Date         ATTENDING PHYSICIAN
*** MEDICAL CHART COPY ***            09/30/96 05:22pm

**St. Michael Health Care Center**

**CONDITIONS OF HOSPITAL CARE**   ☐ IP   ☐ OP   ☐ ER

**1. CARE**
I understand the patient is under the care and supervision of the patient's attending doctor and consultant selected by the doctor. It is the responsibility of the hospital and its staff to carry out the instructions of these doctors. I understand ALL DOCTORS FURNISHING SERVICES TO THE PATIENT, INCLUDING THE RADIOLOGIST, PATHOLOGIST, ANESTHESI-OLOGIST, EMERGENCY ROOM PHYSICIANS, AND OTHERS, ARE NOT EMPLOYEES OR AGENTS OF THE HOSPITAL but rather, are independent contractors who have been granted the privilege of using its facilities for the care and treatment of their patients. These doctors will bill separately for these services. Further, I realize that among those who attend patients at this hospital are medical, nursing, and other health care personnel in training who, unless requested otherwise, may be present during patient care as a part of their education. Still or motion pictures and closed circuit television monitoring of patient care also may be used for educational and medical purposes, unless a patient expressly requests otherwise.

The hospital provides only general duty nursing care unless the doctor orders that the patient be provided more intensive nurs-ing care. If the patient's condition requires the service of a special duty nurse or sitter, this service must be arranged by the patient or the patient's representative since the hospital does not provide this special care. When protective rails are placed on the patient's bed and raised for patient protection or when protective restraints are ordered, the patient assumes all risks or injury or damage if the patient refused permit raised side rails or restraints.

**2. SERVICES AND / OR SURGICAL PROCEDURE CONSENT**
I understand any surgical medical treatment has risks including infection and poor results despite sound medical care. The consent to hospital care includes permission for x-ray examination, laboratory procedures, injections, medications and hospital services rendered the patient under the general and special instruction of the doctor. It is hospital policy that the patient have the opportunity to discuss the surgery and procedures with the patient's doctor beforehand. The patient has the right to consent to surgery. Except in emergencies or unusual circumstances the hospital does not allow its facilities to be used without this discussion and the patient's consent.

**3. RELEASE OF INFORMATION**
To the extent necessary to determine liability for payment and to obtain reimbursement, the hospital and the patient's doctors may disclose the patient's records, INCLUDING HIV STATUS OR OTHER SEXUALLY TRANSMITTED DISEASE INFORMA-TION, to medical records auditors, Social Security Administration, insurance or benefit payor, health service plan, or worker's compensation carrier which is, or may be liable for all or any portion of the hospital's or treating doctor's charges.

The hospital may obtain from any source and examine, discuss and disclose the patient's records, including medical history, examinations, diagnoses, treatments, and HIV or Aids information to treating doctors, hospital personnel and agents, other health care providers, medical researchers, audit committees, care evaluators and state and federal agencies.

**4. PERSONAL VALUABLES**
THE HOSPITAL MAINTAINS A SAFE FOR THE PROTECTION OF MONEY AND VALUABLES. THE HOSPITAL IS NOT RESPONSIBLE FOR THE LOSS OF OR DAMAGE TO ANY MONEY, JEWELRY, DOCUMENTS, GARMENTS, DENTURES, PROSTHETIC DEVICES OR OTHER ARTICLES OF PERSONAL PROPERTY, UNLESS DEPOSITED IN THE HOSPITAL'S SAFE.

**5. FINANCIAL AGREEMENT**
In consideration of the services to be rendered to the patient, each person signing this Hospital Care Consent authorizes credit investigation and individually obligates himself/herself to pay the patient's account in accordance with the regular rates and terms of the hospital. In addition, if the services to be rendered to the patient are in any way related to the acts or omissions of a third party against whom the patient may have any claim or cause of action for damages, then the patient expressly grants a contractual lien on such claim or cause of action to the hospital, which contractual lien will attach to any judgment, settlement, or insurance policy (including any liability policy covering a third party, any underinsured or uninsured policy covering the pa-tient, and any other type of insurance policy which may provide benefits or payments to the patient as a result of the injuries sustained) and which will be in addition to any other rights the hospital may have under any laws. If the accounts are referred to any attorney or collection agency, the same person agrees to pay reasonable attorneys' fees and collection expenses. All delinquent accounts will bear interest at the legal rate. If charity services are required, eligibility determination must be re-quested prior to or upon admission.

6. ASSIGNMENT OF BENEFITS
Each person signing this Hospital Care Consent assigns all rights, title and interest and authorizes direct payment to the hospital of any insurance benefits or benefits under Social Security Act otherwise payable to the patient for the hospitalization at a rate not to exceed the hospital's regular charges. I FURTHER AUTHORIZE PAYMENT DIRECTLY TO THE ANESTHESIOLOGISTS, PATHOLOGISTS, RADIOLOGISTS, AND OTHER TREATING PHYSICIANS RENDERING PROFESSIONAL SERVICES. Each person signing this Hospital Care Consent is financially responsible for charges not collected by this assignment.

7. ABSENCE / TRANSPORTATION
If temporary absences from the hospital is authorized by the patient's doctor or if the patient leaves the hospital against medical advice, the hospital is not responsible for patient's welfare while absent. PASS DAYS ARE NOT COVERED BY MEDICARE, MEDICAID, AND OTHER INSURANCE COMPANIES, AND PATIENT ASSUMES ALL RESPONSIBILITY FOR PAYMENT FOR THE DAYS ON WHICH THE PATIENT IS ABSENT FROM THE HOSPITAL. If the hospital assists in arranging private ambulance services, the responsibility is limited to reservation assistance. Transportation arranged by others is the patient's responsibility.

8. ETHICS
The hospital is sponsored by the Sisters of Charity of the Incarnate Word and is dedicated to fulfilling a Christian ministerial role of aiding the sick and injured in conformity with the Ethical and Religious Directive for Catholic Health Facilities, approved by the U.S. Catholic Conference. The hospital does not allow its facilities to be used for procedures in violation of these directives.

Health Care Service Plans: This hospital maintains a list of the health care service plans with which it has contracted. This list is available upon request from the financial office. The hospital has no contract, express or implied, with any plan that does not appear on the list.

Disposition: The hospital may preserve tissue or other parts for scientific purposes, for teaching purposes, for grafts, or it may otherwise dispose of tissue or other parts resulting from procedures in the hospital. In the event of fetal or other death without proper disposition arrangements by or on behalf of the patient within twenty-four (24) hours, the hospital is authorized to make disposition arrangements as required by law or hospital policies.

HOSPITAL CARE CONSENT
1.    I consent to hospital services, treatment and diagnostic procedures by the hospital as ordered by my doctor and consultants selected by my doctor.
2.    I agree to any testing such as for Hepatitis, AIDS, or other communicable diseases, or isolation procedures as required for infection control for the public health.
3.    The Conditions of Hospital Care listed on the front and back of this consent form control the type of care I will receive, release of information, financial responsibility, and other important matters.
4.    (        ) If applicable:
STATEMENT TO PERMIT PAYMENT OF MEDICARE BENEFITS TO PROVIDER, PHYSICIANS AND PATIENT
I certify that the information given by me in applying for payment under title XVII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Social Security Administration or its intermediaries or carriers any information needed for this or a related Medicare claim. I request that payment of authorized benefits be made on my behalf. I assign the benefits payable for physicians services to the physician or organization to submit a claim to Medicare for payment to me.

MY SIGNATURE ACKNOWLEDGES THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO ASK QUESTIONS ABOUT THIS CONSENT FORM AND THE CONDITIONS OF HOSPITAL CARE. I VOLUNTARILY GIVE MY CONSENT TO HOSPITAL CARE. A PHOTOCOPY OF THIS AUTHORIZATION SHALL BE CONSIDERED AS EFFECTIVE AND VALID AS THE ORIGINAL.

Witness: _Mary Idiil_                                    Patient Signature: X _Matthew Murphy_

Date: _9 - 30 -96_        Time: _5:18_              [  ] Parent, Legal Guardian
                                                                    [  ] Other

[  ] Consent to and agreement to assume responsibility for the Financial Agreement, Assignment of Benefits, and Health Care Service Plan, as stated in the Conditions of Hospital Care, if financial responsibility is assumed by someone other than the patient or legal guardian:

                                                              X _Matthew Murphy_
                                                              (1) GUARANTOR / INSURED SIGNATURE

_____
GUARANTOR NAME (PLEASE PRINT)

                                                              _____
                                                              (2) INSURED SIGNATURE            00466

CONDITIONS OF HOSPITAL CARE

(5) 0160-2(7/8)

## ST. MICHAEL HEALTH CARE CENTER
### EMERGENCY SERVICES

| | | | ALLERGIES |
|---|---|---|---|
| TRIAGE TIME AM PM 1655 | GEN CALL | DeHaan | Iodine |

**PATIENT NAME** Rusby Matthew

**ADDRESS** 3018 W Willow Newton

**AGE** 25 **DATE OF BIRTH**

**CHIEF COMPLAINT** Chronic hand recision open - (GSW)

**HOME MEDICATIONS** Hydrocodone 7.5

**TETANUS** **VITAL SIGNS** BP 158 P 80 R 18 97 WT.

**NURSING ASSESSMENT** pt two weeks post op ... the had a pellet ... to R hand ... status ... ridge from palm of L hand ... Digital area and would ... Digits pt awake, alert ... Ambulatory ... warm, dry, no ... no redness ...

**PHYSICIAN EXAM / ORDERS/PROCEDURES**
Dr. DeHaan called will see pt in ER. AB - 1730.
Seen by Dr. DeHaan 1750
L hand wound steri-striped c 1/2 inch tape
Wrapped c Kling and ace wrap.
pt advised to return if any problems or
call Dr. DeHaan.

wound: clean dehiscence / sensory okay

Plan - Redress
RTC
Dressing

Jeffrey F. DeHaan MD

**DIAGNOSIS:** Wound dehiscence

**DISPOSITION OF VALUABLES/CLOTHES:** _____ NONE RECEIVED _____ GIVEN TO _____

**DESCRIPTION:**

**SIGNATURE:** **WITNESS:**

CONSENT TO DIAGNOSIS AND TREATMENT AT ST. MICHAEL HEALTH CARE CENTER

**SIGNED** _____ (Patient)
**OR** _____ (Nearest Relative)     Nurse's Signature  S Brown RN
(Relationship to Patient)

**INSTRUCTION:** Verbal Written Verbalized Understanding
**DISCHARGE CONDITION:** Good Fair Serious Critical Deceased Improved
**DISCHARGE MODE:** Amb Carried Ambulance Wheelchair Stretcher
**ACCOMPANIED BY:** Self Police Relative Ambulance Friend Other
**DISCHARGE DISPOSITION/CARE LEVEL:** Discharged Admitted Transferred RM # Expired ADM. Phys. AMA Time
Dr Doctor Ref to Doctor's MD Dr
DATE/TIME Jeffrey F. DeHaan MD

1800

00467

**EMERGENCY**
**DEPARTMENT**
**DISCHARGE**
**INSTRUCTIONS**

_M. Murphy_ was seen in the Emergency Department by Dr. _DeHaan_

His/Her advice includes the following instructions for you to follow at home. Because the nature of most emergency conditions is such that your illness or injury may change with the passage of time. It is extremely important that you follow the advice given by your physician. If your condition changes or does not improve, call your private physician or contact the Emergency Department at 614-2223.

### ROUTINE INSTRUCTIONS

- ☐ Abdominal Pain
- ☐ Ace Bandage
- ☐ Back Pain
- ☐ Burns
- ☐ Chest Pain
  - ☐ Angina
  - ☐ Generalized
- ☐ Eye Injury
- ☐ Fever
- ☐ Fractures, Cast, Crutches
- ☐ Minor Head Injury

- ☐ Obstetrics
  - ☐ Normal Pregnancy
  - ☐ Threatened Abortion
  - ☐ Complete Abortion
- ☐ Pelvic Inflammatory Disease
- ☐ Sexually Transmitted Disease
- ☐ Stains / Sprains
- ☐ Upper Respiratory Infection
- ☐ Urinary Tract Infection
- ☐ Vomiting / Diarrhea
- ☐ Wounds / Lacerations

Other Instructions: _See Dr DeHaan Thursday at 3pm_
_at his office 3708 Swiss Hill Road Drive_
_Arlington Texas Call Dr DeHaan return_
_to ER or call Dr DeHaan if any problems._

- ☐ **Work / School Activity** Able to work / school
  - ☐ Yes   ☐ No - off through _____   ☐ No physical ED through _____
  If you are not able to return to work / school by the above date, see your doctor.
- ☐ **High Blood Pressure** Your blood pressure was found to be _____. This is higher pressure than average. Please see your physician for a check-up.
- ☐ **Follow-up Care**   ☐ Doctor _____   Office _____
  - ☐ Return to the Emergency Department _____
    Bring this sheet with you
- ☐ **Lab / Culture Reports** Call the Emergency Dept. _____ (903) 614-2223 for lab or culture reports.
- ☐ **Injections** If an injection of medication was given, some swelling, tenderness, and redness is normal and will persist for several days.  If a tetanus immunization was given, you may expect a mild fever, especially in children.
- ☐ **X-rays** If an x-ray was taken and a report was given to you, it may have been a preliminary report. All x-rays are reviewed by the Department of Radiology the next working day.  You will be contacted if additional x-rays are necessary.
- ☐ **EKG** Your electrocardiogram will be reviewed the next working day.  You will be notified if there is any change in the diagnosis.
- ☐ **Medication**   ☐ May cause drowsiness.  Do not drive, operate machinery or consume alcoholic beverages.
  - ☐ Take medication as directed.

I am accepting responsibility as driver of _____ who has received an

Injection in the Emergency Department/n and cannot drive today. _____
_Signature of Designated Driver_

I hereby acknowledge receipt of instructions indicated above. I understand that I have had only emergency treatment, and that I may be released before all my medical problems are known or treated. I will arrange for follow-up as given above.

_Martha Murphy_          Date _9/30/96_   Time _1800_
Patient signature or guardian if patient is unable
to sign because: _____          (Relationship to patient)

_L Brian_
Witness Signature / Date (Verifying Patient's Signature)

11/22/2000  09:49    2146532924              DALLAS COUNTY DA                    PAGE  04

F00-02424-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT

STATE OF TEXAS          §
COUNTY OF Bowie         §
                        §

BEFORE ME, the undersigned authority, on this day personally appeared Jeffrey T. DeHaan, M.D., who being by me duly sworn, deposed as follows:

"My name is Jeffrey T. DeHaan, M.D., I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of Jeffrey T. DeHaan, M.D. Attached hereto are _9_ pages of records from Jeffrey T. DeHaan, M.D. These said _9_ pages of records are kept by Jeffrey T. DeHaan, M.D. in the regular course of business, and it was the regular course of business of Jeffrey T. DeHaan, M.D. for an employee or representative of Jeffrey T. DeHaan, M.D. with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original."

BUSINESS RECORDS AFFIDAVIT - Page 1

00469

Wadley Regional Medical Center
OPERATING ROOM NURSING REPORT                              Page: 2

PROCEDURE DATE: 09/13/96   ROOM: 03000

PATIENT NAME: MURPHY,MATTHEW                    ACCT#: W02423929      UNIT#: M0089550

------------------------------------------------------------------------------------

Method of Transfer: Assisted
Positioning: Supine, Legs Parallel, Arms on Armboards
Positioning Aids: Pillow Under Head
               Right Ulnar Pad
Positioned by OR Staff: Nicole Foster,RN
Positioned by Anesthesiologist/CRNA: David Lummus, CRNA
Saftey Strap Applied: Y   Location: Upper Thighs

EQUIPMENT:
ESU: Y   ID#: D   Cut: 1   Coag: 40   Bipolar#:      Setting:
  Pad Location: Right Thigh
    Post-op skin condition: Clear
Tourniquet: Y  Location: L Upper Arm  Up: 1622   Down: 1643   Setting: 250 mmHg
    Post-op skin condition: Clear
------------------------------------------------------------------------------------
FIRST COUNT:
Circulator: NF   Scrub: PB   Sponge: C   Needles/Sharps: C   Instruments: C

CLOSING COUNT:
Circulator: NF   Scrub: PB   Sponge: C   Needles/Sharps: C   Instruments: C

FINAL COUNT:
Circulator: NF   Scrub: PB   Sponge: C   Needles/Sharps: C   Instruments: C

MD notified of count: Y
------------------------------------------------------------------------------------

POTENTIAL FOR ALTERED BODY TEMP/COMFORT:
Goal: Patient will maintain normal body temperature intra-operatively.

Temp Probe: None
Warm blanket applied: Y


IRRIGATION SOLUTIONS:
  Sterile H20: Y  #Used: 1
Normal Saline: Y  #Used: 1

MEDICATIONS:
  Bacitracin 50,000u


SPECIMENS: Y
Other: BULLET LEFT HAND TO SECURITY: WOOTEN
------------------------------------------------------------------------------------

Wadley Regional Medical Center
OPERATING ROOM NURSING REPORT                          Page: 3

PROCEDURE DATE: 09/13/96    ROOM: 03000

PATIENT NAME: MURPHY,MATTHEW                    ACCT#: W02423929        UNIT#: M0089550

--------------------------------------------------------------------------------
POTENTIAL FOR INFECTION:
Goal: Avoidance of patient infection.

Surgical Skin Prep:
Number Location              Solution
#1     L Hand to Elbow       Hibiclens/Alcohol


Dressings/Packs:  Adaptic
                  4X4
                  Kerlix Rolls
                  ABD
                  Ace Bandage 4"
Tape: Silk
Catheter:
--------------------------------------------------------------------------------
POTENTIAL FOR INJURY DURING TRANSFER:
Goal: Patient will be transferred without injury.

Method: Lifter
        Roller
        Stretcher
Airway: Extubated
        Room Air
From OR: Awakening
Discharged to: PACU
Comments/Evaluation: LEFT HAND ELEVATED.  SANGUINOUS DC ON ACE: SURGEON INFORMED,
 ADDITIONAL DRESSING ORDERED.  ABD'S AND ADDITIONAL ACE APPLIED
 WITHOUT INCREASE IN DRAINAGE.
--------------------------------------------------------------------------------
Signed: _____

Signed: _____

Signed: _____


                          *END OF REPORT*

# WADLEY REGIONAL MEDICAL CENTER

HISTORY AND PHYSICAL EXAMINATION

PT. NAME:  MURPHY, MATTHEW                        ACCT. #:  W02423929

MR UNIT #:  M0089550
ADMISSION DATE:  09/13/96                         ROOM #:  495
DISCHARGE DATE:

ADMISSION DIAGNOSIS:
Gunshot wound left hand, volar entrance with paresthesias to the hand.

HPI:  This is a thin man who shot himself in left hand in the volar entrance
area. He presented to the Emergency Room in New Boston and was transferred here,
told to see a doctor who specializes in hand problems.  He presents to the
Emergency Room here with a swollen hand, tender, with paresthesias in the long,
ring, and 5th fingers.

PMH:  Negative.

PHYSICAL EXAMINATION:

GENERAL:  Healthy, skinny gentleman.

VITAL SIGNS:  Stable.

LUNGS:  Clear.

ABDOMEN:  Non-tender.

ORTHO:  He has a volar entrance wound pretty much smack in the middle of the
palm. You can palpate the pellet in the dorsal aspect of the hand.  He does have
decreased sensation to the 3rd, 4th, and 5th digits.  The index and thumb are
OK.  He has good flexor tendon flexion to all digits.  Good capillary refill of
the fingers.

PLAN:  At this time he will be admitted for incision and drainage of the palmar
area.  Also, wish to remove the bullet as well as are going to be there.

_____
Jeffrey T. DeHaan

D:  DEHJT           T:  DA
DD:  09/13/96       DT:  09/13/96

00476

## WADLEY REGIONAL
## MEDICAL CENTER
OPERATIVE RECORD

PT. NAME:  MURPHY,MATTHEW                    ACCT. #:  W02423929

ROOM #:  49B                                 MR UNIT #:  M0089550
ADMISSION DATE:  09/13/96
DISCHARGE DATE:


DATE OF OPERATION:    09/13/96

PREOP. DIAG.:     Gunshot wound left hand with swelling of the left hand and
                  paresthesias of the hand.

POSTOP. DIAG.:    Same.

PROCEDURE:        Incision and drainage with fasciotomy of the left hand palmar
                  aspect.
                  Removal of foreign object dorsum of hand.

SURGEON:          DeHaan.

ANESTHESIA:       General.

POSITION:         Supine.

NARRATIVE:  The patient was brought to the Operating Room and put under general
anesthesia.  The left hand was prepped and draped in routine sterile fashion.
An incision was made in the distal palmar crease and advanced through subq
tissue.  There was a small hematoma present but not drastic. The entire fascia
was decompressed.  The nerves were inspected and there was no nerve laceration.
This area was irrigated copiously and then it was closed very loosely with three
3-O Nylon sutures.  A longitudinal incision was made over the dorsum of the hand
and advanced down to the pellet which was removed without difficulty.  This
wound was also closed with 3-O Nylon. A sterile bulky dressing was then applied
to the hand and he was taken to the Recovery Room in stable condition.


                                    _____
                                    Jeffrey T. DeHaan


D:  DEHJT       T:  DA
DD: 09/13/96    DT: 09/13/96

00477

**WADLEY REGIONAL MEDICAL CENTER**

**EMERGENCY DEPT. RECORD**

| M02428929 | 09/18/96 | 1341 | GSW LEFT HAND |

MURPHY, MATTHEW

ER DOCTOR

| 20 | 09/18/75 | M | | WALK IN |

| TRIAGE LEVEL 3 | TRAUMA SCORE | ALLERGIES: IODINE | LAST TETANUS 18 MO. AGO  DATE | DR. CALLED / TIME  / : | REPLY  : | ARRIVED  : |
| TRIAGE NURSE | | | | / : | : | : |
| ER BED # T517 | | | LAST MEAL    LAST FLUID | IMMUNIZATIONS CURRENT?  YES  NO  UNKNOWN  IF NO OR UNKNOWN, DOCUMENT TREATMENT OR REFERRAL. | | |

ASSESSMENT/NOTES:

A. PT ALERT. SKIN W/D. NO DISTRESS. RESP. REG. UNLA-
BORED. SEEN TODAY AT NEW BOSTON HOSPITAL.

CURRENT MEDICATIONS:

TALWIN

| | LMP | GRAV | PARA | ABO | RHT | WT |
| BP | T | P | R | TIME | INIT |
| 136/46 | 98.5 | 90 | 20 | 1341 | |

REFER TO PHYSICIAN _____ DR. _____

PHYSICIAN NOTES:    TIME SEEN:

A.

| ✓ | PHYSICIAN'S ORDERS | ORDERED TIME/INITIALS | ✓ | PHYSICIAN'S ORDERS | ORDERED TIME/INITIALS |
|---|---|---|---|---|---|
| | AAS | | | GLUCOSE | |
| | ABG'S | | | LYTES | |
| | ACCUCHECK | | | MONITOR | |
| | BETA HCG | | | OLD CHARTS | |
| | CBC | | | O₂ | |
| | CPK | | | PT/PTT | |
| | CXR | | | PULSE OX | |
| | CARDIAC ENZYMES | | | SMA 6 | |
| | DINAMAP | | | SMA 20 | |
| | EKG | | | UA | |
| | ETOH | | | URINE/ DRUG SCREEN | |

B.

X-RAYS:

LAB:    H/H     WBC     7                    20                    UA

DIAGNOSIS:

DISPOSITION:   RELEASE TO:            ADMITTED TO:        SURGERY ☐  MORGUE ☐   FUNERAL HOME ☐   TRANSFERRED TO OTHER FACILITY ☐

DID DOCTOR SEE PATIENT?  ☑ YES  ☐ NO     CONDITION ON DISCHARGE:   ☐ IMPROVED  ☑ UNCHANGED           TIME OUT: 1602

INSTRUCTIONS TO PATIENT:

SIGNED BY NURSE:                    RN      SIGNED BY PHYSICIAN:              00478

PHYSICIAN'S COPY

DOCTOR _Denham_   NEW PATIENT INFORMATION   DATE 9-11-96

96350S

| PATIENT NAME   Last   First   3 | Date Of Birth 9/18/75 | Sex M | Social Security Number | Relationship To R/P ☒Self ☐Child ☐Spouse ☐Other |
|---|---|---|---|---|
| Murphy Matthew | | | | |

| Street Address | City | State | Zip Code | Phone |
|---|---|---|---|---|
| 501 B West Walters | New Boston | TX | 75570 | |

| Maiden Name | Marital Status  ☐M ☐S ☐W ☐D ☐Sep | Employer Name | Type Of Work | Driver's License#   St. |
|---|---|---|---|---|

| Employer Phone | Employer Address | City | State | Zip Code |
|---|---|---|---|---|

| Friend Or Relative | Relationship | Phone 903 | Address | City | State | Zip Code |
|---|---|---|---|---|---|---|
| Chelsea Willis | girlfriend | 628-4129 | same | | | |

Drug Allergies, If Any

| Responsible Party (R/P) Name   Last   First   MI | DOB / / | Sex | Social Security Number |
|---|---|---|---|
| myself | | | |

| R/P Address | City | State | Zip Code | Phone |
|---|---|---|---|---|

| Employer Name | Phone | Type Of Work |
|---|---|---|

| Insurance Co. Name   (Primary) | Policy No./Member I.D. | Ins. Co. Group No. | Coverage Date / / | Expiration Date / / |
|---|---|---|---|---|
| none | | | | |

| Insurance Co. Address | City | State | Zip Code |
|---|---|---|---|

| Insured Name (If Not R/P) | Patient Relation To Insured ☐Self ☐Child ☐Spouse ☐Other | Insurance Phone Number |
|---|---|---|

| Insurance Co. Name   (Secondary) | Policy No./Member I.D. | Ins. Co. Group No. | Coverage Date / / | Expiration Date / / |
|---|---|---|---|---|

| Insurance Co. Address | City | State | Zip Code |
|---|---|---|---|

| Insured Name (If Not R/P) | Patient Relation To Insured ☐Self ☐Child ☐Spouse ☐Other | Insurance Phone Number |
|---|---|---|

| Were You Injured On The Job? ☐Yes ☒No | Date Of Injury / / | Describe Accident | | Name Of Attorney |
|---|---|---|---|---|
| Was An Automobile Involved? ☐Yes ☐No | Date Of Injury / / | Were X-Rays Taken? ☐Yes ☐No | If Yes, Where Were X-rays Taken? | Date X-rays Taken |

| Referred By | Reason For Seeing Doctor |
|---|---|
| | Checkup   Chamel R. |

All Professional Services Rendered Are Charged To The Patient. Necessary Forms Will Be Completed To Help Expedite Insurance Carrier Payments. However, The Patient Is Responsible For All Fees, Regardless of Insurance Coverage. It is, Also, Customary to Pay For Services When Rendered Unless Other Arrangements Have Been Made In Advance With Our Office.

## INSURANCE AUTHORIZATION AND ASSIGNMENTS

I request the payment of authorized Medicare/Other Insurance Company benefits be made either to or on my behalf to Orthopedic Specialists of Texarkana, P.A. for any services furnished me by that physician/supplier. I authorize any holder of medical information about me to release to the Health Care Financing Administration and its agents any information needed to determine these benefits payable to related services.

I understand my signature requests that payment be made and authorizes release of medical information necessary to pay the claim. If item 9 of the HCFA-1500 claim form is completed, my signature authorizes releasing of the information to the insurer or agency shown. In Medicare/Other Insurance Company assigned cases, the physician or supplier agrees to accept the charge determination of the Medicare/Other Insurance Company as the full charge, and the patient is responsible only for the deductible, coinsurance and noncovered services. Coinsurance and the deductible are based upon the charge determination of the Medicare/Other Insurance Company.

SIGNATURE _Matthew Murphy_   DATE 9-17-96

00479

F00-02424-M

**FILED**

2001 JAN -9 AM 9:49

DISTRICT CLERK
DALLAS CO., TEXAS
DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### NOTICE OF FILING OF BUSINESS RECORDS PURSUANT TO RULE 902 (10)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through its Assistant District Attorney, Gregory

S. Davis, and files this its Notice of Filing of Business Records Pursuant to Rule 902 (10), Rules of

Criminal Evidence, and respectfully shows unto the Court the following:

I.

The State hereby files self-authenticated business records from the following persons or

entities more than fourteen (14) days prior to the commencement of trial:

1. Citizen's National Bank.
2. Aavid Thermalloy.

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 9th day of January, 2001.

GREGORY S. DAVIS

F00-02424-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**AFFIDAVIT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF *Van Zandt* | § |

BEFORE ME, the undersigned authority, on this day personally appeared *Darlene Monroe*, who being by me duly sworn, deposed as follows:

"My name is *Darlene Monroe*. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of Citizen's National Bank. Attached hereto are __4__ pages of records from Citizen's National Bank. These said __4__ pages of records are kept by Citizen's National Bank in the regular course of business, and it was the regular course of business of Citizen's National Bank for an employee or representative of Citizen's National Bank with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original."

BUSINESS RECORDS AFFIDAVIT - Page 1

00482

_Darlene Morrison_
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this ___8___ day of ___Jan___, 2000,

to certify which witness my hand and seal of office.

WILLIE L. RICHARDSON
COMMISSION EXPIRES
JULY 31, 2003

_Willie L Richardson_
Notary Public in and for

_____ County, _____

My Commission Expires:
___7- 31 2003___

```
                                            CHECKING                    EMC·0605
       ACCT #  2092115
       DATE OPENED 03-24-00
       TODAYS DATE 12-05-00
       OWNER 22070-1  IND         BRANCH CLASS CYCLE STATUS SVC CHG
          JEDIDIAH I MURPHY          100   050   010    CL   ST    OD         10-00
          IND 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 EX      BASIC 2 CHECKING           NSF WV PA DWV CHV RE
                                                              .7  N  N  N  N  N

             MEMO BAL     LEDGER BAL      COLLECT BAL      AVAILBL BAL      LAST DEP/PMNT
               0.00         0.00             0.00             0.00       09-05    40.00
      ------------------------------------------------------------------------------------
       MONTH  AVERAGE LEDGER  AVERAGE COLLECT   MONTH  AVERAGE LEDGER  AVERAGE COLLECT

       00-10      -62.10          -62.10       00-04      194.62          182.07
       00-09       18.76           18.76       00-03      220.75          153.75
       00-08       86.19           70.24       00-02        0.00            0.00
       QTR-1       15.07            9.64       QTR-3      201.81          176.10

       00-07       68.42           68.42       00-01        0.00            0.00
       00-06       24.14           24.14       99-12        0.00            0.00
       00-05       63.85           57.31       99-11        0.00            0.00
       QTR-2       52.44           50.24       QTR-4        0.00            0.00
      *6-MO*       33.86           30.05      *YEAR*       62.74           55.16

          P
```

00484

```
(BCF021)                    Customer Information File              EMC=0005
   CIF #.... 22078                                                 12-05-00
    Name                              SSN/TIN No   Home Phone    Work Phone
 I JEDIDIAH I MURPHY                  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  903-873-6959


    Street Address        Address Line 2      City            ST Zip
 I HOLD MAIL AT BANK                         WILLS POINT      TX 75169


 Inq Level  Security Code  Key Cust  Emp/Rel  Other Svcs      Profit
    40                        N         N                       Y

 Appl    Acct #         Rel/Stt     Memo Bal  Note/Title   Cyc C N1 /N2 /Add
 OOA-050 2092115         OW/CL        0.00                  010  I   I      I
```

CITIZENS NATIONAL BANK
500 N 4TH STREET
WILLS POINT TX 75169
(903) 873-4157

JEDIDIAH I MURPHY
HOLD MAIL AT BANK
WILLS POINT TX 75169

| PRIMARY ACCT DDA-2092115 | ENCLOSURES 0 |
|---|---|

ON LINE REQUEST CUSTOMER NUMBER   22078   PAGE NO 1

| LAST DATE 09-17-00 | STATEMENT DATE 10-15-00 | CLOSING BALANCE 70.65- |
|---|---|---|

| ACCOUNT TYPE AND NUMBER | | | |
|---|---|---|---|
| CHECKING 2092115 | BALANCE FORWARD 17.35 | TOTAL DEBITS 88.00 | TOTAL CREDITS 0.00 |

BASIC 2 CHECKING
CHECKING 2092115

| DATE........ | AMOUNT | ...WITHDRAWALS AND OTHER DEBITS | |
|---|---|---|---|
| 09-22 | 20.00 | NONSUFFICIENT FUND FEE | |
| 09-29 | 10.00 | OVERDRAFT FEE | |
| 10-04 | 20.00 | NONSUFFICIENT FUND FEE | |
| 10-06 | 10.00 | OVERDRAFT FEE | |
| 10-11 | 20.00 | NONSUFFICIENT FUND FEE | |
| 10-13 | 8.00 | MAINTENANCE FEE | SVC CH* |

AVERAGE BALANCE $21.59-
AVERAGE COLLECTED BALANCE $21.59-
MINIMUM BALANCE OF $62.65- OCCURRED ON 10-11-00

00486

CITIZENS NATIONAL BANK
500 N 4TH STREET
WILLS POINT TX  75169
(903) 873-4157

PRIMARY ACCT   DDA-2092115

ON LINE REQUEST CUSTOMER NUMBER   22078

ENCLOSURES   0

PAGE NO   1

JEDIDIAH I MURPHY
HOLD MAIL AT BANK
WILLS POINT TX  75169

LAST DATE   10-15-00

STATEMENT DATE   11-15-00

| ACCOUNT TYPE AND NUMBER | BALANCE FORWARD | TOTAL DEBITS | TOTAL CREDITS | CLOSING BALANCE |
|---|---|---|---|---|
| CHECKING 2092115 | 70.65- | 20.00 | 90.65 | 0.00 |

BASIC 2 CHECKING
CHECKING 2092115

DATE.........AMOUNT...DEPOSITS AND OTHER CREDITS
10-30             90.65    SERVICE CHG REVERSAL

DATE.........AMOUNT...WITHDRAWALS AND OTHER DEBITS
10-19             20.00    NONSUFFICIENT FUND FEE

AVERAGE BALANCE $39.00-
AVERAGE COLLECTED BALANCE $39.00-
MINIMUM BALANCE OF $90.65  OCCURRED ON 10-19-00

00487

F00-02424-M

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**AFFIDAVIT**

| STATE OF TEXAS | § |
| COUNTY OF _Kaufman_ | § |
| | § |

BEFORE ME, the undersigned authority, on this day personally appeared _Winnie Boehnke_, who being by me duly sworn, deposed as follows:

"My name is _Winnie Boehnke_, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of Aavid Thermalloy (formerly Aavid Thermal Products). Attached hereto are _29_ pages of records from Aavid Thermalloy. These said _29_ pages of records are kept by Aavid Thermalloy in the regular course of business, and it was the regular course of business of Aavid Thermalloy for an employee or representative of Aavid Thermalloy with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original."

BUSINESS RECORDS AFFIDAVIT - Page 1

00488

_(signature)_

Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this _8_ day of _JAN_____, 200ᴅ,

to certify which witness my hand and seal of office.

WILLIE L. RICHARDSON
COMMISSION EXPIRES
JULY 31, 2003

_(signature)_

Notary Public in and for

_Kaufman_ County, _____

My Commission Expires:
   _7-31-2003_____

00489

10:12 12/07/'00 DALLAS COUNTY D.A.     214 653 3527     PAGE 01



## BILL HILL
### CRIMINAL DISTRICT ATTORNEY
Frank Crowley Courts Building
133 N. Industrial Boulevard, L.B. 19
Dallas, Texas 75207-4399
Office: 214.653.3600

### FACSIMILE COVER SHEET

DATE: 12-7-2000      Total Pages, Including Cover:

| To: W. BOEHNKE | Dept./Agency: AAVID TEC |
| Fax #: 972 551 7361 | Phone #: 972 524 1122 |

From: Inv Willie Richardson     Reply to Fax #: 214 653 5774
P1

Dept./Agency:     DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Comments: PLEASE CK YOUR RECORDS FOR A JEDIDIAH
MURPHY DOB 9-1-75 CK DATES OF AUG-26-27-28
1997 Please Expedite

#### CONFIDENTIALITY NOTICE

The information contained in this facsimile message is privileged and confidential and is intended only for the exclusive use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, and any other proprietary information. Nothing in this facsimile is intended by the attorney to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any use, disclosure, dissemination, duplication, distribution or the taking of any action because of this communication is unauthorized and strictly prohibited. If you have received this facsimile transmission in error, please notify us by telephone immediately so that we can arrange for the return of the original documents.

Joseph Murphy

3rd Shift

00490

MURPHY, JIM
WK END 08-30-97 DEPT #16
EMP. #40564   SHIFT-3

| | | | |
|---|---|---|---|
| In | Sunday | | |
| Out | | | |
| In | | | |
| Out | | | |
| In | Monday | 7.15 | SU 23 35 |
| Out | | | M 7 69 |
| In | | | |
| Out | | | |
| In | Tuesday | 8.36 | M 23 14 |
| Out | | | TU 8 02 |
| In | | | |
| Out | | | |
| In | Wednesday | 7.61 | TU 23 54 |
| Out | | | W 7 65 |
| In | | | |
| Out | | | |
| In | Thursday | 7.74 | W 23 30 |
| Out | | | TH 7 54 |
| In | | | |
| Out | | | |
| In | Friday | 7.95 | TH 23 75 |
| Out | | | FR 8 29 |
| In | | | |
| Out | | | |
| In | Saturday | 7.22 | FR 23 30 |
| Out | | | SA 7 02 |
| In | | | |
| Out | | | |

40.00
6.03
46.03

Faxed

Attn: Willie Richardson

12-22-00
9:46 am

28

29

30

K1491   AEONICS, INC., Richardson, TX — (214) 644-2540

00491

MURPHY, JIM
WK END 08-30-97 DEPT #16
EMP #40564    SHIFT-3

| | | Sunday | |
|---|---|---|---|
| | In | | |
| | Out | | |
| | In | | |
| | Out | | |
| | In | Monday | |
| | Out | | 7.15 |
| | In | | |
| | Out | | |
| | In | Tuesday | |
| | Out | | 8.36 |
| | In | | |
| | Out | | |
| 27 | In | Wednesday | |
| | Out | | 7.61 |
| | In | | |
| | Out | | |
| 28 | In | Thursday | |
| | Out | | 7.74 |
| | In | | |
| | Out | | |
| 29 | In | Friday | |
| | Out | | 7.95 |
| | In | | |
| | Out | | |
| 30 | In | Saturday | |
| | Out | | 7.22 |
| | In | | |
| | Out | | |

40.00
6.03 OT
46.03  26
JLF

K1491    AEONICS, INC., Richardson, TX — (214) 644-2540

00492

Date for orientation: _5-15-97_   **PAYCHEX**

**Employee Profile**

_564_

| | | | | |
|---|---|---|---|---|
| Employee # | _85564_ | Name | _JEDIDIAH MURPHY_ | |
| S.S.# | _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_ | Address | _6305 FM 429_ | |
| | | City/State | _KAUFMAN TX_ Zip _75142_ | |
| | | Federal: Marital Status _M_ Exemptions _0,2_ | | |

Hourly Rate 1 _____   State: _____
Hourly Rate 2 _____   Local: _____
Hourly Rate 3 _____   Male/Female: _MALE_

Birth Date _09/01/75_  Start Date _5/15/97_   Termination Date _____

Supervisor indicate:

Hire Date: _5-15-97_

Start Date: _5-15-97_

Dept. # and Name: _165_   Shift: _3_

Base Rate: $ _____

Shift Prem: _____

Pay Rate: $ _6.50_

_Married_
_or_
_Single_

_How many_
_Dependents_
_claimed?_

_23.38 hrs_

00493

Immigration and Naturalization Service                                    Employment Eligibility Verification

Please read instructions carefully before completing this form. The instructions must be available during completion of this form. ANTI-DISCRIMINATION NOTICE. It is illegal to discriminate against work eligible individuals. Employers CANNOT specify which document(s) they will accept from an employee. The refusal to hire an individual because of a future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Verification.** To be completed and signed by employee at the time employment begins

| Print Name: Last | First | Middle Initial | Maiden Name |
|---|---|---|---|
| MURPHY | JEDIDIAH | J | |

| Address (Street Name and Number) | Apt. # | Date of Birth (month/day/year) |
|---|---|---|
| 6305 FM 429 | | 09-01-75 |

| City | State | Zip Code | Social Security # |
|---|---|---|---|
| KAUFMAN | TX | 75142 | 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 |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):
- ☒ A citizen or national of the United States
- ☐ A Lawful Permanent Resident (Alien # A _____)
- ☐ An alien authorized to work until ___/___/___ (Alien # or Admission # _____)

| Employee's Signature | Date (month/day/year) |
|---|---|
| *[signature]* | 09-01-75 |

**Preparer and/or Translator Certification.** (To be completed and signed if Section 1 is prepared by a person other than the employee.) I attest, under penalty of perjury, that I have assisted in the completion of this form and that to the best of my knowledge the information is true and correct.

| Preparer's/Translator's Signature | Print Name |
|---|---|
| | |

| Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|
| | |

**Section 2. Employer Review and Verification.** To be completed and signed by employer. Examine one document from List A OR examine one document from List B and one from List C as listed on the reverse of this form and record the title, number and expiration date, if any, of the document(s)

| List A | OR | List B | AND | List C |
|---|---|---|---|---|
| Document title: | | Tx DL 12468174 | | 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 |
| Issuing authority: | | | | |
| Document #: | | | | |
| Expiration Date (if any): ___/___/___ | | 9 11 01 | | ___ ___ ___ |
| Document #: | | | | |
| Expiration Date (if any): ___/___/___ | | | | |

**CERTIFICATION** - I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the employee began employment on (month/day/year) ___/___/___ and that to the best of my knowledge the employee is eligible to work in the United States. (State employment agencies may omit the date the employee began employment).

| Signature of Employer or Authorized Representative | Print Name | Title |
|---|---|---|
| | | |

| Business or Organization Name | Date (month/day/year) |
|---|---|
| Aavid Thermal Tech. of TX. Inc. 250 Apache Tr. Terrell, TX 75160 | |

**Section 3. Updating and Reverification.** To be completed and signed by employer

| A. New Name (if applicable) | B. Date of rehire (month/day/year) (if applicable) |
|---|---|
| | |

C. If employee's previous grant of work authorization has expired, provide the information below for the document that establishes current employment eligibility.

Document Title: _____  Document #: _____  Expiration Date (if any): ___/___/___

I attest, under penalty of perjury, that to the best of my knowledge, this employee is eligible to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative | Date (month/day/year) |
|---|---|
| | |

Form I-9 (Rev. 11-21-91) N

00494







## Application for Employment

**AAVID**
THERMAL TECHNOLOGIES. NC — the industry leader in thermal management products

e Kool Path • P.O. Box 400
onia, New Hampshire 03247-0400
man Resources: (603) 527-2118 • Fax: (603) 527-2369

a condition of your continuing at Aavid Thermal Technologies. Inc., you may be subject to periodic testing for the use of alcohol or illegal drugs. You will
med to have consented to these tests by continuing your employment with Aavid.

Applicant Consistent with applicable federal and state laws, all employment applications are considered by Aavid Thermal Technologies. Inc., without reg
race. religion. color, sex or national origin.            J.H.M

| | | |
|---|---|---|
| **RSONAL** | | Date: 5-7-97 |
| me: MURPHY | JEDIDIAH | ISAAC      456 - 71 - 2616 |
| last | first | middle      social security number |

dress: 6305 F.M. 429      KAUFMAN      TX      75142
no.      street      city      state      zip

ephone No. 972-962-7443      Referred by: ☒ Our Advertisement   ☐ Friend/relative
☐ Emp. Agency   ☐ No one

te you can start: WHENEVER   Full time ✓   Part time _____   Temp _____

stion(s) applied for: FORKLIFT OR MACHINERY

te of pay expected: $ _____ per _____   If part time specify days/hours _____

e you 18 or over? YES   (If no, hire is subject to minimum legal age verification.)

e you will to work   2nd shift? _____ Yes _____ No   3rd shift? ✓ Yes _____ No   Veteran? _____

ift preference: ☒ 1st   ☐ 2nd   ☐ 3rd   Other _____

.ve you ever applied for work here before? YES   If yes, when? A YEAR AGO

.ve you worked for us before? NO   If yes, when? _____   Position: _____

.scribe any specialized training, apprenticeship, skills, and extracurricular/personal activities:
FORKLIFT, CRANE, TRACTOR   ZIC. OPERATOR, SHEAR,
ASSEMBLY ETC.

.ve you ever been convicted of a crime which has not been formally pardoned, other than motor vehicle offenses resulting

iey in a fine? _____ Yes   ✓ No   If yes, explain _____

case of an emergency, notify: HOPE ABBOTT
name

6305 FM 429      972-962-7443
address      phone

00496

**ERFORMANCE REQUIREMENTS:**
you are offered a job with Aavid Thermal Technologies. Inc. the offer and continued employment will be based upon your being able to satisfy the physica
nations of the job which were explained to you at the time of the interview. Your job offer or continued employment cannot and will not be rescinded

**DUCATION**

| NAME AND LOCATION OF SCHOOL | # YEARS ATTENDED | DEGREE | GRADUATE Y/N |
|---|---|---|---|
| ELEMENTARY | | | |
| HIGH SCHOOL | 12 | | YES |
| OTHER | NAVARO COLLEGE | | NO |

**RIOR EMPLOYMENT**

| NAME, ADDRESS, TELEPHONE | | PERIOD From | To | POSITION | RATE OF PAY | REASON FOR LEAVING |
|---|---|---|---|---|---|---|
| H&K ENTERPRIZES | ☐ | | | FORKLIFT | 9.75 | MOVED |
| SPEEDS BILLIARDS | ☐ | | | BARTENDER | 8.00 | STARTED |
| ADDISON HERRINGTON | ☐ | | | OPERATOR | 14.00 | STILL THERE |
| | ☐ | | | | | |
| | ☐ | | | | | |

Check box next to employer's name indicating those you do not wish us to contact.

**EFERENCES — PRIOR EMPLOYMENT**

| NAME, COMPANY AND POSITION OF REFERENCE | TELEPHONE |
|---|---|
| LEE PARNELL | 972 563-0200 |
| ~~CHRIS RED RIVER~~ | |
| EDDIE HORTON | 972 563-7360 |
| RAY PHILLIPS | 972 963-7443 |

This space is provided for any additional comments you want to add:

submitting this application for employment, I do so with the understanding that my previous and present employers may be asked for information relative my employment record with them. I hereby release those employers and their individual employees from any and all liability or damage relating to ormation about my prior employment or character which they may relate to Aavid Thermal Technologies, Inc.

inderstand and acknowledge that unless otherwise defined by applicable law, any employment relationship which I may have with Aavid Thermal Technolo-s, Inc. is of an "AT WILL" nature, which means that I may resign at any time and Aavid Thermal Technologies, Inc. may discharge me at any time, with or thout cause.

e information contained in this application is accurate and true. I acknowledge that Aavid Thermal Technologies, Inc., has the right to check the accuracy y of this information or information I may have furnished orally during the application process. I understand that any misleading or any incorrect informa-on or statements may render my application void and constitute cause for immediate termination in the event I have been employed.

ate: 5-7-97          Signed: _Jedidiah Murphy_

**— DO NOT WRITE BELOW THIS LINE —**

UMMARY OF INTERVIEW:                                              Date:

| red | For Dept. | Position | Will Report | Salary Wages | Level |
|---|---|---|---|---|---|
| pproved: | | Circle one: Full Time   Part Time   Temp | Shift | | |

## DRUG SCREENING POLICY STATEMENT
## FOR JOB APPLICANTS

It is the policy of AAVID Thermal Technologies, Inc. to maintain a safe, healthful and productive work environment for our employees; to provide quality services for our customers in an efficient manner; to maintain the integrity and security of our facilities and property; and to perform all these functions in a manner consistent with the interests and concerns of the communities in which we are located.

Because of this AAVID Thermal Technologies, Inc. requests that candidates for employment who receive job offers take a pre-employment physical examination which includes a drug screening test covering illegal substances and legal substances subject to abuse.  All job offers are conditional on passing the physical examination and drug test.

Each eligible candidate will be required to submit a urine and/or blood specimen or other appropriate sample as part of the physical examination and to sign the following Consent and Release.  **Refusal will result in the candidate's disqualification for further employment consideration.**  AAVID Thermal Technologies, Inc. will not knowingly hire anyone who tests positive for substance abuse.

### CONSENT AND RELEASE LIABILITY

I UNDERSTAND that AAVID Thermal Technologies, Inc. requests that I take a pre-employment physical examination which includes appropriate tests to determine the absence or presence of drugs.

I RELEASE AAVID Thermal Technologies, Inc., its parent and affiliated corporations, and their employees and agents from any and all potential liability arising from this request, from taking such tests, or from my failure or refusal to submit to such tests.

_____
Applicant's Signature

CONSENT voluntarily to the physical examination including the drug test.

_____
Applicant's Signature

REFUSE to submit to such tests.  I understand that this refusal will disqualify me from further employment consideration.

_____
5 - 7 - 97
Date

00498



**Application for Employment**

THER **M** AL TECHNOLOGIES, INC. — the industry leader in thermal management products

: Kool Path • P.O.B ⊂⊃✕ 400
onia, New Hampshi ⊏ℯ 03247-0400
man Resources: (60∋) 527-2118 • Fax: (603) 527-2369

a condition of your continuing at Aavid Thermal Technologies, Inc., you may be subject to periodic testing for the use of alcohol or illegal drugs. You will be med to have consen ☰ed to these tests by continuing your employment with Aavid.

Applicant: Consis ⊏℮nt with applicable federal and state laws, all employment applications are considered by Aavid Thermal Technologies, Inc., without regard race, religion, color, s℮x or national origin.

RSONAL                                                                 Date: _2 - 9 - 96_

me: _MURPHY_    _JERIDIAH_    _ISAAC_          _456_ - _71_ - _2610_
        last          first          middle                social security number

ldress: _6 305   FM   429_          _KAUFMAN_       _TX._      _75142_
         no.        street              city          state      zip

lephone No. _214 - 962 - 7643_        Referred by: ☒ Our Advertisement   ☐ Friend/relative

te you can start _ASAP_                        ☐ Emp. Agency      ☐ No one

osition(s) applied for: _FORK LIFT OR ANY_   Full time _✓_   Part time _____   Temp. _____

te of pay expected: $ _5.50_ per _HOUR_   If part time specify days/hours _FULL TIME_

re you 18 or over? _YES_   (If no, hire is subject to minimum legal age verification.)

re you will to work   2nd shift? _✓_ Yes ___ No   3rd shift? _✓_ Yes ___ No   Veteran? _NO_

nift preference: ☒ 1st  ☒ 2nd  ☐ 3rd  Other _____

lave you ever applied for work here before? _NO_   If yes, when? _N/A_

lave you worked for us before? _NO_   If yes, when? _N/A_   Position: _N/A_

Describe any specialized training, apprenticeship, skills, and extracurricular/personal activities: _H & K OUT OF_
_DALLAS I WORKED AS A FORK LIFT OPERATOR_
_ALSO WORKED IN FABRICATION & SHIPPING &_
_RECIEVING_

Have you ever been convicted of a crime which has not been formally pardoned, other than motor vehicle offenses resulting

soley in a fine? ___ Yes _✓_ No   If yes, explain _____

In case of an emergency, notify: _HOPE ABBOTT_
                                        name
_SPRINGFIELD APTS_                      _214 - 962 - 5965_
        address                                phone

00499

**PERFORMANCE REQUIREMENTS:**
If you are offered a job with Aavid Thermal Technologies, Inc. the offer and continued employment will be based upon your being able to satisfy the physical
conditions of the job which were explained to you at the time of the interview. Your job offer or continued employment cannot and will not be rescinded
based upon your physical appearance or condition unless you or your supervisor determine that you cannot perform the essential functions of the job (with

## EDUCATION

| NAME AND LOCATION OF SCHOOL | #YEARS ATTENDED | DEGREE | GRADUATE Y/N |
|---|---|---|---|
| ELEMENTARY | | | |
| HIGH SCHOOL | 12 | | ✓ |
| OTHER | | | |

## PRIOR EMPLOYMENT

| NAME, ADDRESS, TELEPHONE | | PERIOD From | PERIOD To | POSITION | RATE OF PAY | REASON FOR LEAVING |
|---|---|---|---|---|---|---|
| J & H  AUTOMOTIVE ( | ☐ | 11-95 | 1-95 | TECHNITION | 35% | MOVED |
| H & K  DALLAS ( | ☐ | 1-94 | 8-94 | FORK LIFT | 7.50 | LAYED OFF |
| | ☐ | | | | | |
| | ☐ | | | | | |
| | ☐ | | | | | |

Check box next to employer's name indicating those you do not wish us to contact.

## REFERENCES — PRIOR EMPLOYMENT

| NAME, COMPANY AND POSITION OF REFERENCE | TELEPHONE |
|---|---|
| CHELSEA  WILLIS | 962-7443 |
| JEANIE  EGGLLIN | 932-8345 |
| FRANSIS  GRAY | 962-5965 |

This space is provided for any additional comments you want to add:

In submitting this application for employment, I do so with the understanding that my previous and present employers may be asked for information relative to my employment record with them. I hereby release those employers and their individual employees from any and all liability or damage relating to information about my prior employment or character which they may relate to Aavid Thermal Technologies, Inc.

I understand and acknowledge that unless otherwise defined by applicable law, any employment relationship which I may have with Aavid Thermal Technologies, Inc., is of an "AT WILL" nature, which means that I may resign at any time and Aavid Thermal Technologies, Inc., may discharge me at any time, with or without cause.

The information contained in this application is accurate and true. I acknowledge that Aavid Thermal Technologies, Inc., has the right to check the accuracy of any of this information or information I may have furnished orally during the application process. I understand that any misleading or any incorrect information or statements may render my application void and constitute cause for immediate termination in the event I have been employed.

Date: 3-9-96                    Signed: *Jedediah G. Murphy*

## DO NOT WRITE BELOW THIS LINE

SUMMARY OF INTERVIEW:                                        Date: _____

| Hired | For Dept. | Position | Will Report | Salary Wages | Level |
|---|---|---|---|---|---|
| Approved: | | Circle one:  Full Time  Part Time  Temp | | Shift | |
| | Supervisor/Manager | | | | |

00500

DRUG SCREENING POLICY STATEMENT
FOR JOB APPLICANTS


It is the policy of AAVID Thermal Technologies, Inc. to maintain a
safe, healthful and productive work environment for our employees; to
provide quality services for our customers in an efficient manner; to
maintain the integrity and security of our facilities and property; and
to perform all these functions in a manner consistent with the
interests and concerns of the communities in which we are located.

Because of this AAVID Thermal Technologies of TX, Inc. requests that
candidates for employment who receive job offers take a pre-employment
physical examination which includes a drug screening test covering
illegal substances and legal substances subject to abuse.  All job
offers are conditional on passing the physical examination and drug
test.

Each eligible candidate will be required to submit a urine and/or blood
specimen or other appropriate sample as part of the physical
examination and to sign the following Consent and Release.  Refusal
will result in the candidates disqualification for further employment
consideration.  AAVID Thermal Technologies of TX, Inc. will not
knowingly hire anyone who tests positive for substance abuse.


CONSENT AND RELEASE LIABILITY


I UNDERSTAND that AAVID Thermal Technologies of TX, Inc. requests that
I take a pre-employment physical examination which includes appropriate
tests to determine the absence or presence of drugs.

I RELEASE AAVID Thermal Technologies of TX, Inc., its parent and
affiliated corporations, and their employees and agents from any and
all potential liability arising from this request, from taking such
tests, or from my failure or refusal to submit to such tests.

_____   CONSENT voluntarily to the physical
Applicant's Signature             examination including the drug test.


_____   REFUSE to submit to such tests.  I
Applicant's Signature             understand that this refusal will
                                  disqualify me from further employment
                                  consideration.


___2-9-96_____
Date

00501

# AAVID
## SUBSTANCE AND DRUG POLICY

I hereby acknowledge:  (a) that I have received a copy of Substance and Drug Policy; (b) that I have read it in its entirety; and (c) that I understand its contents.

5-15-97
Date

Employee signature



# EMERGENCY CONTACT INFORMATION

## Employee Name: _JEDIDIAH MURPHY_

The following is a list of people to contact in the event of an emergency:

**Name:** _HOPE ABBOTT_
**Telephone: (Home)** _972-962-7443_ **(Work)** _SAME_
**Address:** _6305 FM 429_
**City:** _KAUFMAN_ **State:** _TX_ **Zip:** _75142_
**Relationship:** _MOM_

**Name:** _CHELSEA WILLIS_
**Telephone: (Home)** _1-903-873-2215_ **(Work)** _563-0200_
**Address:**
**City:** _WILLS POINT_ **State:** _TX_ **Zip:** _75169_
**Relationship:** _FIANCE_

ate 5-15-57   **Employee Name** _JEDIDIAH MURRAY_

**please print name**

epartment: _165_

## HAZARD COMMUNICATIONS PROGRAM

|  | True | False |
|---|---|---|
| **CONCENTRATED ACID:** | | |
| . Inhalation will cause severe irritation or a burning sensation of the nose, throat and lungs. | ☑ | ☐ |
| . When working with concentrated acid wear goggles and nitrile rubber gloves. | ☑ | ☐ |
| **CONCENTRATED CAUSTICS:** | | |
| . Concentrated caustics can cause blurred vision. | ☑ | ☐ |
| . Neoprene or nitrile rubber gloves should be used. | ☑ | ☐ |
| **OILS, GREASES, COOLANTS AND LUBRICANTS:** | | |
| . Some individuals may develop an allergic type asthmatic reaction. | ☑ | ☐ |
| . First Aid Treatment for eye contact, you should flush with fresh water for at least 15 minutes. | ☑ | ☐ |
| **HAZCOM, THE MSDS AND PLACARD SYSTEM :** | | |
| . Placards are Generic MSDS Sheets by hazard catagory. | ☑ | ☐ |
| . Aavid's Labeling System is 0 -- 5 with "5" rating as deadly. | ☑ | ☐ |
| . Ventilation is a good engineering control of chemical hazards. | ☑ | ☐ |
| . Only the Loss Prevention Manager has copies of MSDS Sheets. | ☐ | ☑ |

. What do the letters MSDS stand for?

_MEDICAL SAFTY DATA SHEET_

. An MSDS lists four "routes of exposure" into your body, name them.

    1) _BREATHING_            2) _EATING_

    3) _EYES_                4) _SKIN_

. An MSDS lists two "effects of exposure", name them?

    1) _ACUTE_            2) _CHRONIC_

. What do the letters PPE stand for?

_PERSONAL PROTECTIVE EQUIPMENT_

Racking, Kondux, Small Press, Sanding, Drilling, Punch Room, Saw Room, CNC, Warehouse,Packing, Progressive Punch, HEP, and Office.

00504

## SIGNATURE PAGE

EMPLOYEE NAME: _Jeqidiah Murray_

------------------------------------------------------------

### AAVID HANDBOOK

1.  I acknowledge that I have received a copy of the Aavid
    Handbook and that a company Representative went over the
    Handbook and benefits with me.

------------------------------------------------------------

### AAVID SUBSTANCE AND DRUG POLICY

2.  I hereby acknowledge:  (a) that I have received a copy of
    Substance and Drug Policy in the Aavid handbook; (b) that I
    have read it in its entirety; and (c) that I understand its
    contents.  _No handbook given at this time_

------------------------------------------------------------

### ORIENTATION & TRAINING PROGRAM

3.  I have completed the Human Resources Orientation &
    Training Program and I understand the program.

------------------------------------------------------------

_5-15-97_                    _(signature)_
DATE           EMPLOYEE SIGNATURE

00505

# AAVID ENGINEERING, INC.
## STATEMENT OF EMPLOYEE OBLIGATIONS

As an employee of Aavid Engineering, Inc. ("AEI") I expressly acknowledge that I have the following obligations to AEI, to my supervisors, to my fellow employees, and to our valued customers and vendors:

1. -- Safety. I have reviewed the safety requirements set forth in the Aavid Engineering Employee Handbook and other written materials which have been furnished to me or made available to me; and have participated in various sessions explaining safety concerns, procedures, practices and reporting requirements applicable to me as an AEI employee. I hereby acknowledge that it is my responsibility to act in line with all safety requirements applicable at any time during my employment. I also understand that I have an affirmative obligation, as an AEI employee, to report any and all safety concerns to my immediate supervisor.

2. -- Hazardous Materials. I am aware that various types of materials which are classified by federal and state governmental authorities as "hazardous materials", with varying levels of potential danger for me and to my fellow employees (if misused, mismanaged, etc.), are used by AEI in conducting its business. I have participated in various training and update sessions explaining the hazardous materials concerns, procedures, practices and reporting requirements applicable to me as an AEI employee. I am aware that throughout the plant, various materials are placed with pertinent information regarding hazardous materials and I agree to familiarize myself with these materials and the nearest location from my place of work. I hereby acknowledge that it is my responsibility to act in line with all hazardous materials requirements applicable at any time during my employment.

3. -- Confidentiality. I am aware that a broad variety of information, in various forms, is maintained, used and available at AEI. With regard to this information, this includes, but is not limited to, the identity of personnel and their duties, the type and description of various properties, manufacturing processes, trade secrets, financial information, sales information, quoting information, computer systems and data bases, and all other information pertinent to AEI's business. In addition, this includes any and all information, in various forms, from actual and potential customers, which is disclosed to AEI in the normal course of business, including, but not limited to, drawings, specifications, requirements, target prices, customer personnel or operating procedures, customer manufacturing processes, and all other information pertinent to a customer's business. I hereby acknowledge that it is my responsibility to act appropriately to protect any and all information, of AEI and of its customers, with the highest degree of confidentiality and loyalty, and, specifically, to maintain customer information confidential to the same extent as described in any individual non-disclosure agreement to which AEI is now or may in the future become a party.

4. -- Compliance with Employment Practices. I have reviewed the broad range of employment practices described in the Aavid Engineering Employee Handbook and as set forth in other written materials and oral briefing sessions in which I have participated. I hereby acknowledge that it is my responsibility to comply with all such employment practices applicable at any time during my employment.

*No handbook given.*

I understand and hereby acknowledge my responsibilities, as set forth above, as of this _15_ day of _May_ 199_7_.

_Jim. Murphy_
Employee

Name:_____

If the Employee has not completed any training required and/or referred to in Sections 1 or 2 above, set forth the exceptions here, including anticipated date of completion:

[21 Oct 92]

00506

# Personnel Change Notice

☒ **Employment**

☐ **Termination**

☐ **Change**

**Effective Date** _____

| Name (Last, First, Middle) | | Soc. Sec. No. | I.D./Sales | Date Prepared |
|---|---|---|---|---|
| Murphy  Jedidian  Isaac | | 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 | | |
| Address (Street) | (City) | (State) | (Zip Code) | Phone No. |
| 6305 FM 439  Kaufman, Tx  75142 | | | | 962-1443 |

## Employment

☒ New Hire   ☐ Re-instate   ☐ Replacement For: _____
☐ Re-Hire   ☐ Addition

| Birth Date | Sex | Marital Status | Employee Status | Job Class | Expense Class | Shift |
|---|---|---|---|---|---|---|
| 9-1-75 | M | Married | | | | |

## Termination (Give Reasons in Remarks)

☐ Voluntary   ☐ Involuntary

| | Last Day Worked | Pay Up To & Including | Re-Hire |
|---|---|---|---|
| | | | ☐ Yes  ☐ No |

| Employment Date | Vacation Accrued | Severance Pay | Other |
|---|---|---|---|
| | | | |

## Change

☐ Rate/Salary Change   ☐ Promotion   ☐ Transfer

**Leave of Absence**
☐ Military   ☐ Sick Leave   ☐ Layoff
☐ Maternity   ☐ Vacation   ☐ Personal

**Period of Absence**
From _____ Thru _____

| Employment Date | New Address/Phone No. |
|---|---|
| | |

| Status | Job Title | Department | Shift | Location | Rate/Salary |
|---|---|---|---|---|---|
| New | | | | Tx | |
| Present | | | | | |

## Remarks

00507

## Approval

| Approval | | Approved By | | Date |
|---|---|---|---|---|
| Invoiced By | Date | Approved By | | Date |

## ACKNOWLEDGMENT OF TEMPORARY EMPLOYMENT

I, _JEDIDIAH MURPHY_, recognize that I have been hired by Aavid Thermal Technologies, Inc. as a temporary employee. I understand that I will remain in this status as a temporary employee unless Aavid Thermal Technologies, Inc. takes further action to change the category of my employment. No change in status will be effective unless prepared in writing and signed by an officer of Aavid Thermal Technologies, Inc. or an officer's designee.

I understand that if I accept an offer from Aavid Thermal Technologies, Inc., to become a regular Aavid employee, that this job offer is contingent upon passing a pre-employment physical examination which includes a drug screening test.

I understand that, as a temporary employee, my employment with Aavid Thermal Technologies, Inc. may be terminated immediately at any time, for any reason or no reason, solely at the Company's option. By signing this Acknowledgment, I accept employment as a temporary employee with Aavid Thermal Technologies, Inc. based upon these terms and conditions of employment.

Date: _5-15-97_                         _____
                                        Employee's Signature

                                        _____
                                        Witness

## NEW EMPLOYEE SAFETY TRAINING CHECK LIST

To be filled out by new employee the first day of employment and forwarded to the Manager of Loss Prevention.

Employee Name: _SEDIDIAH (JIM) MURPHY_     Date: _5-15-97_

**PLEASE PRINT**

| | SUBJECT MATTER | EMPLOYEE INITIALS |
|---|---|---|
| 1 | Safe job operating procedures. | JM |
| 2 | Potential department hazard conditions and safe operating procedures. EX.: lockout; tagout; hazcom | JM |
| 3 | First-aid treatment: Where and to whom to report. | JM |
| 4 | Reporting unsafe conditions and practices. | JM |
| 5 | Report all accidents and near-accidents immediately. | JM |
| 6 | Loss Prevention Committee: Its function and members. | JM |
| 7 | Smoking Rules | JM |
| 8 | How to report a fire. Location and proper use of fire extinguishers nearest employee's work area, nearest exit. | JM |
| 9 | Horseplay, throwing, kicking, practical jokes, shouting, running, jumping, short-cutting and distracting. | JM |
| 10 | Personal protective equipment — Where and how to use it: eyes; feet; hearing; body. | JM |
| 11 | Rules pertaining to working on and entering tanks. | JM |
| 12 | Lifting truck safety: Proper operation; no riders; no unauthorized use. | JM |
| 13 | Compressed air: Not to be used for cleaning clothing or body; use caution in the presence of others. | JM |
| 14 | Proper lifting: Manual and mechanical. | JM |
| 15 | Proper use of ladders. | JM |
| 16 | Proper clothing — no loose clothing, rings, or sandals. | JM |
| 17 | Housekeeping practices. | JM |
| 18 | Suggestions for improving job or plant safety. | JM |
| 19 | Eyewash location. | JM |

3/1095RES

EMPCKLT.DOC



08/07/97

## OPERATOR/INSPECTOR CERTIFICATION FORM

| OPERATOR/INSPECTOR: Jim Mergoly | MACHINE/AREA: Deburr | TRAINER: D Houston |
|---|---|---|

**RECEIVING OF MATERIALS:**
(1) Extrusion characteristics
(2) Quantity verification/counting
(3) Damage verification
(4) Purchase Order/Receiving Documentation verification
(5) Appropriate Chemical Deburring (i.e.,...burrs, caustic residue, hole deformation, discoloration, plugs are still in the blind holes)

**SAW METHODS:**
(1) Machine Setup
(2) Saw Sharpness
(3) SPC Requirements
(4) Dimensional Characteristics
(5) *Ni Balance Tables* — DH — Wheel Deburr Methods

**APPROPRIATE STRAIGHTENING:**
(1) Dial Indicator Methods
(2) Verify Dial Indicator Setting
(3) Part Straightness Requirements
(3) .112 ± .005 Print Requirements
(4) SPC Requirements

**COMMENTS:**
825-1665   Motorola

DATE / TIME : 8-8-97

**CNC METHODS:**
(1) Tooling
(2) Machine Setup
(3) Part Loading and Unloading
(4) Fixture Sequence
(5) Coolant Removal Practice
(6) SPC Requirements

**PAD MACHINE:**
(1) Machine Setup
(2) Pad Application (i.e.,...pad adherence to the part surface, no bubbles, no scratches, appropriate heat, pad centered between 6.0 mm clip)

**PACKAGING AND SHIPPING:**
(1) Appropriate Part Cleanliness
(2) Part Identification
(3) Bar Code Label
(4) Part insertion into the box (i.e.,...bottom in the upwards position so as to view the .750 fin cut-out)

**INSPECTION:**
(1) Process verification
(2) W.O. completion
(3) Print requirements
(4) Verification of the SPC data
(5) Box Audit Report
(6) Quality Improvment Implemetation Plan
(7) Complete knowledge of the part process

00510

# Form W-4 (1995)

**Want More Money in Your Paycheck?** If you expect to be able to take the earned income credit for 1995 and a child lives with you, you may be able to have part of the credit added to your take-home pay. For details, get Form W-5 from your employer.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct amount of Federal income tax from your pay.

**Exemption From Withholding.** Read line 7 of the certificate below to see if you can claim exempt status. *If exempt, complete line 7; but do not complete lines 5 and 6.* No Federal income tax will be withheld from your pay. Your exemption is good for 1 year only. It expires February 15, 1996.

**Note:** *You cannot claim exemption from withholding if (1) your income exceeds $650 and includes unearned income (e.g., interest*

and dividends) and (2) another person can claim you as a dependent on their tax return.

**Basic Instructions.** Employees who are not exempt should complete the Personal Allowances Worksheet. Additional worksheets are provided on page 2 for employees to adjust their withholding allowances based on itemized deductions, adjustments to income, or two-earner/two-job situations. Complete all worksheets that apply to your situation. The worksheets will help you figure the number of withholding allowances you are entitled to claim. However, you may claim fewer allowances than this.

**Head of Household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals.

**Nonwage Income.** If you have a large amount of nonwage income, such as interest or dividends, you should consider making

estimated tax payments using Form 1040-ES. Otherwise, you may find that you owe additional tax at the end of the year.

**Two Earners/Two Jobs.** If you have a working spouse or more than one job, the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. This total should be divided among all jobs. Your withholding will usually be most accurate when all allowances are claimed on the W-4 filed for the highest paying job and zero allowances are claimed for the others.

**Check Your Withholding.** After your W-4 takes effect, you can use Pub. 919, Is My Withholding Correct for 1995?, to see how the dollar amount you are having withheld compares to your estimated total annual tax. We recommend you get Pub. 919 especially if you used the Two Earner/Two Job Worksheet and your earnings exceed $150,000 (Single) or $200,000 (Married). Call 1-800-829-3676 to order Pub. 919. Check your telephone directory for the IRS assistance number for further help.

---

**Personal Allowances Worksheet**

| | | |
|---|---|---|
| A | Enter "1" for yourself if no one else can claim you as a dependent | A _1_ |
| B | Enter "1" if: • You are single and have only one job; or • You are married, have only one job, and your spouse does not work; or • Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less. | B ___ |
| C | Enter "1" for your spouse. But, you may choose to enter -0- if you are married and have either a working spouse or more than one job (this may help you avoid having too little tax withheld) | C _0_ |
| D | Enter number of dependents (other than your spouse or yourself) you will claim on your tax return | D _1_ |
| E | Enter "1" if you will file as head of household on your tax return (see conditions under Head of Household above) | E _1_ |
| F | Enter "1" if you have at least $1,500 of child or dependent care expenses for which you plan to claim a credit | F _0_ |
| G | Add lines A through F and enter total here. Note: This amount may be different from the number of exemptions you claim on your return ▶ | G _3_ |

For accuracy, do all worksheets that apply.
• If you plan to itemize or claim adjustments to income and want to reduce your withholding, see the Deductions and Adjustments Worksheet on page 2.
• If you are single and have more than one job and your combined earnings from all jobs exceed $30,000 OR if you are married and have a working spouse or more than one job, and the combined earnings from all jobs exceed $50,000, see the Two-Earner/Two-Job Worksheet on page 2 if you want to avoid having too little tax withheld.
• If neither of the above situations applies, stop here and enter the number from line G on line 5 of Form W-4 below.

------- Cut here and give the certificate to your employer. Keep the top portion for your records. -------

| Form **W-4** Department of the Treasury Internal Revenue Service | **Employee's Withholding Allowance Certificate** ▶ For Privacy Act and Paperwork Reduction Act Notice, see reverse. | OMB No. 1545-0010 **1995** |
|---|---|---|

| 1 Type or print your first name and middle initial | Last name | 2 Your social security number |
|---|---|---|
| JEDIDIAH | MURPHY | 456 71 2610 |

Home address (number and street or rural route) **6305 FM 429**

3 ☐ Single ☐ Married ☑ Married, but withhold at higher Single rate.
Note: If married, but legally separated, or spouse is a nonresident alien, check the Single box.

City or town, state, and ZIP code **KAUFMAN**

4 If your last name differs from that on your social security card, check here and call 1-800-772-1213 for a new card ▶ ☐

| 5 | Total number of allowances you are claiming (from line G above or from the worksheets on page 2 if they apply) | 5 | _3_ |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck | 6 | $ |

7 I claim exemption from withholding for 1995 and I certify that I meet BOTH of the following conditions for exemption:
• Last year I had a right to a refund of ALL Federal income tax withheld because I had NO tax liability; AND
• This year I expect a refund of ALL Federal income tax withheld because I expect to have NO tax liability.
If you meet both conditions, enter "EXEMPT" here ▶ | 7 |

Under penalties of perjury, I certify that I am entitled to the number of withholding allowances claimed on this certificate or entitled to claim exempt status.

Employee's signature ▶ *Jim Murphy*   Date ▶ 5-15-97 , 19 9

| 8 Employer's name and address (Employer: Complete 8 and 10 only if sending to the IRS) | 9 Office code (optional) | 10 Employer identification number |
|---|---|---|

Cat. No. 10220Q

00511

**Presbyterian**
**Occupational**
**Health**
**Network**

214-524-4053
214-563-0573

*The health of your employees is our business.*

A Resource of Presbyterian Hospital of Greenville
724-B East Moore Avenue, Terrell, Texas 75160

Fax 214-563-0947

## CONSENT AND RELEASE FOR DRUG SCREENING

The undersigned hereby authorizes Presbyterian Occupational Health Network to conduct through its designated physician, medical facility, or laboratory testing facility, a drug screening test.

I understand that a drug screening test will be administered to determine the presence of certain drugs and substances, such as illegal drugs, controlled substances, marijuana, mood or mind-altering substances, "look-alike" substances, designer and synthetic drugs, certain inhalents, and unauthorized prescription drugs.

I release and hold the designated physician, testing laboratory, and medical facility harmless for release of this information.  I also release and hold harmless Presbyterian Occupational Health Network, its directors, officers, stockholders, and employees for the use of this information.

STATE LAW: PICTURE IDENTIFICATION REQUIRED BEFORE ANY
SCREENING TEST CAN BE PERFORMED.

_____          JEDIDIAH J. MURPHY
Signature                        Printed Name

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                      09-01-75
Social Security Number           Date of Birth

6305 FM 429                      972-962-7443
Home Address                     Day Time Phone #

AAUID                            5-15-97
Company Requesting Drug Screen   Today's Date

OPTIONAL:  YOU MAY LIST ANY PRESCRIPTION AND OVER-THE COUNTER MEDICATION
TAKEN WITHIN THE LAST MONTH.

VICADIN - ADVIL          _____

HYDROCODONE              _____

_____  _____

00519

(20937)

**Quest Diagnostics**

4770 REGAL BLVD
IRVING, TX 75062
972-916-3567/800-824-6150

| | |
|---|---|
| LAB NUMBER | 98913098-6 REQ PD213440-9 |
| PATIENT | MURPHY, JEDIDIAH I |
| AGE | 21Y DOB 09/01/75 |
| SEX | M |
| I.D. OR ROOM NO. | |
| REPORT STATUS | Final Report |
| DATE REPORTED | 05/16/97, 02:33 AM |
| DATE/TIME COLL | 05/15/97, 11:00 AM |
| DATE RECEIVED | 05/15/97, 09:22 PM |
| ACCOUNT | 15258 |
| REQ. PHYSICIAN | NB |
| FASTING | NB |

Presby Occup Hlth/Terrell
5900 Joe Ramsey Blvd E
Ste #3
Terrell, TX 75161-7763

| Exhibit Name | In Range/Interp | Out of Range | Reference | Units |
|---|---|---|---|---|

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 - VICADIN-ADVIL-HYDROCODONE

Ind A300,M50,P75:

| | | | |
|---|---|---|---|
| Amphetamines | NOT DETECTED | | 300 ng/mL |
| Barbiturates | NOT DETECTED | | 200 ng/mL |
| Benzodiazepines | NOT DETECTED | | 200 ng/mL |
| Cocaine | NOT DETECTED | | 300 ng/mL |
| Marijuana | NOT DETECTED | | 50 ng/mL |
| Methadone | NOT DETECTED | | 300 ng/mL |
| Methaqualone | NOT DETECTED | | 300 ng/mL |
| Opiates | NOT DETECTED | | 300 ng/mL |
| Phencyclidine | NOT DETECTED | | 300 ng/mL |
| Propoxyphene | NOT DETECTED | | 300 ng/mL |
| Integrity Check | | 15  L SEE REMARK mg/dL | |

The "Integrity Check" result shown above is creatinine, a normal
constituent of urine used to monitor dilution of the specimen.
A value of 20 or greater is considered to be within normal limits,
while a value less than 20 may be due to increased fluid intake,
adulteration or substitution of the specimen, or a medical condition
of the donor.

Interpretation of immunoassay results which may appear above -

"NOT DETECTED" indicates that the drug or drug family is not present
at or above the cutoff level listed under "Reference."

"SEE CONFIRM" indicates that an additional analysis is required.
Confirmation testing is in process.

We recommend that results be reviewed by a physician who has
knowledge of substance abuse disorders and testing methods.

Tests Ordered:Ind A300,M50,P75

End of Report ( MURPHY,JEDIDIAH I - 98913098-6 )

Results of Urine Drug Screen reported to:

Company Representative: _Linda B_
Date: _5/16/97_  Time: _1415_
POHN Nurse making report: _DM_

00513

PRESBYTERIAN HOSPITAL OF GREENVILLE
3910 Wesley
Greenville, TX 75401

Audio Testing for
AAVID TECHNOLIGIES
TERRELL
Report Date: 05/15/97

SSN:         456712610                    Sex: Male
Badge:
Name:        MURPHY, JIM                  DOB: 09/01/75
Company:     AAVID TECHNOLIGIES
Location:    TERRELL
Department:  UNKNOWN
Occupation:

| | LEFT | | | | | | | RIGHT | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 500 | 1k | 2k | 3k | 4k | 6k | 8k | 500 | 1k | 2k | 3k | 4k | 6k | 8k |
| 05/15/97 | 15 | 10 | 5 | 0 | 5 | 15 | 5 | 10 | 15 | 5 | 5 | 5 | 15 | 10 |
| Age adj | 15 | 5 | 2 | -4 | 0 | 7 | 5 | 10 | 10 | 2 | 1 | 0 | 7 | 10 |

The results of your hearing test showed that your hearing is within
normal limits at all test frequencies (pitches).

This is your first test (baseline) in the program.  Future hearing
tests will be compared to this one to find any change in your
hearing.

No otoscopic information was available.

It is important to have your hearing tested annually and to wear
hearing protection on and off the job when exposed to loud noise.

_Jim Murphy_                      5-15-97
Employee Signature                Date
*Age correction used for STS calculations.

Threshold Shifts and Baseline Revisions Should be Confirmed by an
Audiologist, Otolaryngologist, or Other Physician.

00514

## Presbyterian Occupational Health Network
### HEARING TEST QUESTIONNAIRE

Name: _MURPHY      JIM      I_      Date: _5-15-97_
    Last      First      M.I.

Date of Birth: _09-01-75_   Height: _5-11_   Weight: _145_

Sex: _M_   Race: _W_   Social Security No. _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_

Company: _AAVID_                          Dept. _N/A_

Job Title: _N/A_          Shift: _3RD_   Hire Date: _6.75_

**AUDITORY HISTORY:**

| | Y or N |
|---|---|
| Do you wear any type of hearing protection (ear plugs, etc.)? | Y |
| Anyone in your family have hearing loss before age 50? | N |
| Do you have difficulty hearing? | N |
| Do you wear a hearing aid? | N |
| Do you have ringing in your ears? | N |
| Do you have frequent or severe dizziness? | N |
| Have you had a cold or flu within the last two weeks? | N |
| Do you have frequent allergy problems? | N |
| Have you ever had any of the following (please circle those that apply): | N |
|    measles?   scarlet fever?   diabetes? | |
|    mumps?   meningitis?   high blood pressure? | |
| Have you taken any medication or antibiotics in the last month? | Y |
| Do you or have you had a recent ear infection? | N |
| Do you or have you had any recent ear drainage? | N |
| Do you or have you had a recent earache? | N |
| Are you under a physician's care for ear problems? | N |
| Have you ever had ear surgery? | N |
| Have you ever been exposed to any loud explosion? | Y |
| Have you ever had a head injury causing unconsciousness? | Y |
| Have you ever shot firearms - sport or military? | Y |
| Do you listen to loud music or play in a band? | Y |
| Do you have any noisy hobbies (motorcycles, power tools)? | Y |
| Have you ever operated power driven farm equipment? | Y |
| Have you ever operated construction equipment? | Y |
| Have you worked at a noisy job prior to your current one? | Y |
| Do you have a second job that is noisy? | N |

Comments: _I'M AN OPERATOR_
_OF A BACKHOE_

Signature: _Jim Murphy_

Reviewed by: _Carolela Nguyen Tech_
   (R) EXcessive
      Wax

00515

# RELIASTAR *EMPLOYEE BENEFITS*

## EMPLOYEE ENROLLMENT FORM

- O OPEN ENROLLMENT
- ● NEW HIRE
- O COBRA
- O OTHER

**PLEASE PRINT OR TYPE.** *Fill out all that applies. Use another form if more space is needed.*

## SECTION 1: *COMPLETE ALL THAT APPLIES TO THE EMPLOYEE.*

| NAME OF EMPLOYER / PLAN SPONSOR | MEDICAL EFFECTIVE DATE | GROUP/PLAN NUMBER |
|---|---|---|
| AAVID THERMAL TECHNOLOGIES, INC. | | ASO-26566-7 |

| EMPLOYEE NAME (Last, First, Middle Initial) | GENDER | DATE OF BIRTH | SOC. SECURITY # | TELEPHONE |
|---|---|---|---|---|
| Murphy, Jedidiah I. | O FEMALE  ● MALE | 9/01/75 | 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 | HOME (972) 962-7443  WORK (972) 563-2843 |

| JOB TITLE OR OCCUPATION | MARITAL STATUS | EMPLOYMENT STATUS | | DATE OF HIRE |
|---|---|---|---|---|
| Press | O MARRIED  X SINGLE | O RETIRED  O COBRA (See Section 6) | ● ACTIVE FULL-TIME  O ACTIVE PART-TIME | 5/15/97 |

| EMPLOYEE ADDRESS (Street Address, City, State, Zip Code) |
|---|
| 727 E. N. Commerce   W. 115 Point, Tx. 75169 |

## SECTION 2: *COMPLETE FOR COVERED SPOUSE AND EACH COVERED DEPENDENT*

| SPOUSE / DEPENDENT NAME (Last, First, Middle Initial) | RELATIONSHIP TO EMPLOYEE | GENDER (F or M) | DATE OF BIRTH | SOC. SECURITY # | MARITAL STATUS | EMPLOYED? (Y OR N) | STUDENT? (Y OR N) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## SECTION 3: *NWNL COVERAGE SELECTION   (CHECK ALL THAT APPLY)*

| MEDICAL | O 1 PERSON  O 2 PERSON | O FAMILY | O DECLINE COVERAGE |
|---|---|---|---|

| BASIC LIFE/AD&D/STD | O EFFECTIVE DATE |
|---|---|

## SECTION 4: *COMPLETE IF ANY COVERED PERSON HAS COVERAGE WITH ANOTHER INSURANCE CARRIER / HEALTH PLAN PROVIDER*

| EMPLOYEE/SPOUSE/DEPENDENT NAME (Last, First, Middle Initial) | NAME and ADDRESS of OTHER INSURANCE CARRIER/HEALTH PLAN PROVIDER | POLICY/PLAN NUMBER | EFFECTIVE DATE | OTHER COVERAGE TYPE |
|---|---|---|---|---|
| N/A | | | | O MEDICAL  O SINGLE  O FAMILY |
| | | | | O MEDICAL  O SINGLE  O FAMILY |

## SECTION 5: *COMPLETE IF LIFE / AD&D COVERAGE WAS SELECTED*                    GL-24205-5

| BENEFICIARY NAME (If person, enter Last, First, Middle Initial) | BENEFICIARY ADDRESS (Street Address, City, State, Zip Code) | PERCENT OF BENEFIT (MUST add up to 100%) | RELATIONSHIP TO EMPLOYEE |
|---|---|---|---|
| | | | |
| | | | |

## SECTION 6: *COMPLETE ONLY IF APPLYING FOR COBRA CONTINUATION*

| QUALIFYING EVENT** | EVENT EFFECTIVE DATE | If other coverage, length of pre-existing clause in other coverage: | Were you disabled under the terms of the Social Security Act at the time of your termination of employment or reduction in hours? |
|---|---|---|---|
| | / / | | O YES   O NO   O NOT APPLICABLE |

| To the best of my knowledge and belief the above information is correct. I understand that false or inaccurate information may result in the termination of coverage or the non-payment of benefits. I have also read and understand the authorization printed above and consent to its terms.<br><br>PLEASE READ THE ABOVE RELEASE SECTION AND THEN SIGN → | EMPLOYEE's SIGNATURE<br><br>*Gordon Murphy* | DATE SIGNED<br><br>6/6/97 |
|---|---|---|

### FOR EMPLOYER / PLAN SPONSOR USE ONLY

| EMPLOYMENT DATA IS ACCURATE:<br>O YES  O NO | SIGNATURE | DATE SIGNED<br>/   / | COVERAGE EFFECTIVE DATE<br>/   / | COBRA PAID-TO-DATE<br>/   / |
|---|---|---|---|---|

**..**

INSTRUCTIONS FOR ** FIELDS ON THE FRONT OF THIS FORM          (Fields are listed alphabetically, by name)

*BENEFICIARY NAME:* Enter the name of a person, "My Estate" or the name of an organization. You can enter combinations (e.g., one beneficiary line may be a person's name, while a second beneficiary line may be an organization and a third beneficiary line be for "My Estate").

*COBRA QUALIFYING EVENT:* Enter one of the following:  Employment Termination,  Divorce,  Legal Separation,  Loss of dependent status,  Medicare Entitlement,  Death of employee,  Reduction in hours.

*EMPLOYED:* Enter "Yes" if spouse or a dependent is employed (full-time or part-time). All else, leave blank.

*MARITAL STATUS:* Enter one of the following:  Single,  Married,  Divorce,  Widowed,  Legally Separated.

*STUDENT:* Enter "Yes" if dependent is 19 years or older and a full-time student. All else, leave blank.

# VOLUNTARY DENTAL ENROLLMENT / CHANGE FORM

**Northwestern National Life**
*Employee Benefits Division*

*PLEASE PRINT.* Providing complete information is necessary for the timely and accurate payment of claims. Eligibility for coverage and payment benefits are subject to the terms of the benefit contract.

## AAVID THERMAL TECHNOLOGIES, INC.

GH - 28991-1

| | | | | | |
|---|---|---|---|---|---|
| θ Open Enrollment | ✔ New Hire | θ Termination | θ Add Dependent | θ Delete Dependent | θ Other_____ |

| Employee Name *(last name, first, middle initial)* | Social Security Number | θ Female | Date of Birth |
|---|---|---|---|
| MURPHY, Jediah I | 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 | ✔ Male | 9-1-75 |

| Employee Address *(street, city, state, zip code)* | Telephone Number |
|---|---|
| 727 E.N. Commerce #4  Wills Point, TX. 75169 | 912-962-7443 |

*Complete this section to select the coverage you want for yourself and eligible family members.*

1. ✔ Employee only        2. θ Employee + Family

## Complete for Dependent Coverage

| Add | Drop | Name | Social Security Number | Birthdate | Sex | Relationship |
|---|---|---|---|---|---|---|
| θ | θ | | | | | |
| θ | θ | | | | | |
| θ | θ | | | | | |
| θ | θ | | | | | |
| θ | θ | | | | | |
| θ | θ | | | | | |
| θ | θ | | | | | |

I authorize my employer to deduct from my wages the premium for the above coverages. To the best of my knowledge and belief, the information that I have provided on this form is correct. I understand my coverage begins on the effective date assigned by Northwestern National Life provided I am actively at work.

| PLEASE READ AND SIGN | Employee's Signature X *Jediah Murphy* | Date Signed 6-6-97 |
|---|---|---|

## For employer/plan sponsor use only

| Group/Plan Number GH 28991-1 | Claim Acct# | Location # / Division # | Dental Effective Date or Change Date |
|---|---|---|---|
| Date of Hire | Signature | | Date Signed |

00518

F00-02424-M

**FILED**

2001 JAN 16  AM 10: 03
JIM HAMLIN
DISTRICT CLERK
DALLAS CO., TEXAS
BY_____ S DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**STATE'S PRODUCTION OF DOCUMENTS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney, Gregory S. Davis, and respectfully shows:

I.

The State of Texas has on the 16th day of January, 2001, hand-delivered to opposing counsel the following documents attached hereto:

1. Edgewood Police Department Case Report (Burglary - 4/5/94).
2. Edgewood Police Department Case Report (Burlary - 5/26/94).
3. Van Zandt County Sheriff's Office Report (Theft - 6/2/94).
4. Van Zandt County Sheriff's Office Report (Burglary - 6/2/94).
5. Van Zandt County Sheriff's Office Report (Burglary - 6/2/94).
6. Dallas Police Department Offense Report (Theft - 8/18/95).
7. Terrell Police Department Offense Report (Poss. MJ - 3/14/96).
8. Wills Point Police Department Offense Report (Agg. Asslt. - 8/17/97).
9. Arlington Police Department Incident Report (Kidnaping - 8/26/97).
10. Wichita Falls Police Department Crime Report (Robbery - 8/26/97).
11. Kaufman County Sheriff's Department Report (Evad. Arr. - 5/13/99).
12. Kaufman County Sheriff's Department Report (DWLS - 5/13/99).

STATE'S PRODUCTION OF DOCUMENTS - Page 1

00519

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 16th day of January, 2001.

GREGORY S. DAVIS

**STATE'S PRODUCTION OF DOCUMENTS - Page 2**

## City of Edgewood

P. O. BOX 377
EDGEWOOD, TEXAS 75117

### CASE REPORT

| Disposition | Filed |
|---|---|
| Date_____ | Date_____ |
| Court_____ | With_____ |
| Docket_____ | By_____ |
| Method_____ | D. Corbett/ M. Bates |
| Disposition_____ | Investigating Officers |
| | M. Bates |
| | Arresting Officers |
| | Van Zandt Justice Center |
| | Location of Defendant |

Defend___ __ JEDIDIAH ISAAC MURPHY _____

Race. W ___ D.O.B. 09-01-75. Sex M.___ ___ Residence P. O. Box 885, Edgewood, Tx. 7511

Date of Arrest June 3, 1994 _____ Identification No. _____

Ace of Arrest ___ Van Zandt Co. Justice Center _____ Arrest No. _____

Date and T__ of Offense April 5th or April 6th, 1994 @ 8:00 P.M. Offense No. 410-405-94

Compl___ Elizabeth Chaney Brown, 406 Shady Lane,P.O. Box 329, Edgewood, Texas 75117

When and ___ or Committed 406 Shady Lane, Edgewood, Tx.; removed money from safe without owner
                                                                                    permissic

Charge Felony 1: P.C. 30.02 Burglary of a Habitation _____

Property Taken and Value (1). check from Commerce IDS, value $518.00; (1) check from Quinlan

ISD, value $523.00; Cash, (1) 100.00, (1) 50.00, the rest in 20's and 10's. (TOTAL = $2041.

Evidence and Seizures _____

_____ Voluntary Statement Yes

Accomplices _____

Witnesses _____

Summary of Case Jedidiah Isaac Murphy was arrested by the Van Zandt County Sheriff's

Department on other charges. When questioned he gave a voluntary statement about the

offense which occurred in Edgewood, Texas.

00521

**VAN ZANDT COUNTY SHERIFF'S DEPARTMENT**

Last (name): Murray
First: Jedidiah
Middle: Isaac

Sex: M   Age: 18
Height: 5'10   Weight: 131   Hair: Brn   Eyes: Brn
Date of Birth: 5-1-75
Place of Birth: Edgewood
State: TX

Occupation: Self Employed
Place of Employment:

Social Security Number: [illegible]
Driver's License Number: 13468174

Citizen of U.S.? ☑Yes
Language: U.S.? ☑Yes
Marital Status: S

Date of Commitment: 6-2   19 91   Time Booked: 9:00 PM

Name of Booking Officer: Rose 511
Authority For Arrest: GRID

Arresting Officer(s): Rose 511

Place of Arrest: Ben Wilson
Date of Arrest: 6-2   19 91   Time of Arrest: 5:30

Charge(s):
1. Burg of Habitation
2. Burg of Vehicle
3. Burg of Vehicle

Name of Delivering Officer: Rose 511

Telephone No.: 962-7871

Scars, Marks, Tattoos: Scar Abdomin

Name of Agency Arrestee was Transferred To: Van Zandt JC

Bond/Fine:

Address of Next of Kin, Parent, or Guardian:
Bob Murphy

Remarks: Subject found in possession of recent stolen property

LAW ENFORCEMENT SYSTEMS, INC.

P.O. BOX 1835   CORSICANA, TEXAS 75151
1-800-527-6447

## OFFENSE/INCIDENT REPORT

PAGE NO. 1 OF 1 PAG

|  |  |  |
|---|---|---|
| O. | Felony 1 | NO. 410-405-94 |
| April 6, 1994 | CLASSIFICATION | |
| ATE OF REPORT | D.L. # 04766974 | |

| 1 COMPLAINANT OR FIRM | AGE RACE SEX | DOB | 2 PHONE (BUSINESS) |
|---|---|---|---|
| Elizabeth Chaney Erwin | White/Female | | (903) 356-4584 |

| 3 COMPLAINANT'S ADDRESS | 4 CITY | 5 PHONE (RESIDENCE) |
|---|---|---|
| 406 Shady Lane/P.O. Box 329 | Edgewood, Texas 75117 | (903) 896-1185 |

| 6 COMPLAINANT'S BUSINESS OR SCHOOL | ADDRESS | JOB TITLE (GRADE) | WILL COMPLAINANT PROSECUTE? |
|---|---|---|---|
| | | | ☑ YES   ☐ NO |

| 7 OFFENSE/INCIDENT (AS REPORTED) | 8 LOCATION | ADDRESS | 9 TYPE PREMISES |
|---|---|---|---|
| P.C. 30.02 Burglary of a Habitation | 406 Shady Ln., Edgewood, Tx. | | Residence |

| 10 DAY DATE & TIME OF OFFENSE | 11 REPORTED BY | 12 REPORTED TO | 13 HOW REPORTED |
|---|---|---|---|
| 7:45 A.M. 04-05-94 & 8 A.M. 04-06-94 | #1 | EPD | In Person on 04-06-94  9:00 A |

| 14 BODILY INJURIES | YES ☐ NO ☒ | VICTIM TAKEN TO N/A | 15 TRANSPORTED BY N/A | 16 DESC. INJURIES N/A | 17 CONDITION N/A |
|---|---|---|---|---|---|

| 18 M/O   HOW DONE   FORCE USED | WITH WHAT TOOL OR WEAPON | OTHER ACTS OR TRADEMARKS |
|---|---|---|
| By removing money from the safe without the owners permission | | |

| 19 VEHICLE INVOLVED? OWNER   NO ☐   YES ☐ | 20 YEAR COLOR MAKE MODEL BODY STYLE LIC. NO. YEAR STATE VIN NO. |
|---|---|

CODES:   S — STOLEN PROPERTY   D — DAMAGED PROPERTY   L — LOST PROPERTY   F — FOUND PROPERTY

| 21 CODE S D L F | QTY | DESCRIPTION (SIZE, COLOR, MODEL, STYLE, MATERIAL, CONTENTS) | SERIAL NO | WHERE PURCHASED | VALUE |
|---|---|---|---|---|---|
| S | 1 | Check from Commerce ISD | | | $ 518.00 |
| S | 1 | Check from Quinlan ISD | | | $ 523.00 |
| S | | Cash  (1) 100.00, (1) 50.00 | | | $1000.00 |
| | | the rest in 20's and 10's | | | |
| | | | | | |
| | | | | | |

| 22 DISPOSITION OF PROPERTY | 23 TOTAL VALUE |
|---|---|
| | $2041.00 |

| 24 WITNESSES NAME | BEST CONTACT ADDRESS | AGE | BEST PHONE | OTHER PHONE |
|---|---|---|---|---|
| 1. | | | | |
| WITNESSES NAME | BEST CONTACT ADDRESS | AGE | BEST PHONE | OTHER PHONE |
| 2. | | | | |

| 25 NAME AND ADDRESS OF SUSPECT(S) (AGE, RACE, DESCRIPTION, RELATION TO COMPLAINANT OR WITNESS) |
|---|
| 1. |
| 2. |

26 DETAILS NOT COVERED ABOVE

Comp. advised she had seen the money at about 7:45 A.M. on the 5th of April and
noticed it missing on the 6th of April at 8:00 A.M.  The two checks were made out to
Comp.  She called first thing and stopped payment on both checks.

00523

27 INVESTIGATING OFFICER(S) Sgt. Michael A. Bates  #302   28 REPORT MADE BY Sgt. Michael A. Bates  DATE 04-06-9

<u>WAIVER OF RIGHTS</u>

ON THE __2__ DAY OF __June__, 19_94_, at _11:30_ A.M., _Chief Dale Corbett_ advised me _Jim Murphy_, that I had the right to remain silent and not make any statement at all; that any statement I made could be used against me at my trial; that any statement I made could be used as evidence against me in court; that I had the right to have a lawyer present to advise me prior to and during any questioning; that if I was unable to employ or hire a lawyer, I had the right to have a lawyer appointed to advise me prior to and during any questioning; that I had the right to terminate the interview or questioning at any time; and that if I so desired, an attorney would be called to assist me and no questions would be asked me until the attorney arrived. Having been informed of these rights, prior to any questioning by officers, and understanding my rights, I hereby freely, intelligently, voluntarily and knowingly waive or give up these rights and not desiring a lawyer, voluntarily choose to make a written statement concerning the allegations against me.

_____
SIGNATURE OF SUBJECT

I, _____, a member of the ~~VAN ZANDT~~ Edgewood Police COUNTY ~~SHERIFF'S~~ DEPARTMENT, on the _2nd_ day of _June_, 19_94_, at _11:30_ A.M., administered the foregoing warning to _Jedidiah Isaac Murphy_, before commencing an interview with him. He (signed) (~~did not sign~~) the waiver.

_____
SIGNATURE OF OFFICER

WITNESSES:

_____

00524

ORDER FROM
LAW ENFORCEMENT SYSTEMS, INC.
P.O. BOX 1835   CORSICANA, TEXAS 75110
(214) 872-2511
FORM A-150

## VOLUNTARY STATEMENT

DATE_____, 19 _94_ . TIME_____ M. PLACE _Erwin Residence_

I, _Chelubah Isaac Murphy_____, am _19_ years old and I live at _Edgeacres_

_City lake_

I am giving this statement to _Dale Corbett   EPD._ no. _301_, who has identified

himself as a _Corey Officer_

and he has duly warned me that I have the following rights: that I have the right to remain silent and not make any statement at all;
that any statement I make may be used against me at my trial; that any statement I make may be used as evidence against me in court;
that I have the right to have a lawyer present to advise me prior to and during any questioning; that if I am unable to employ a law-
yer, I have the right to have a lawyer appointed to advise me prior to and during any questioning and that I have the right to terminate
the interview at any time.

Prior to and during the making of the statement, I have and do hereby knowingly, intelligently, and voluntarily waive the above ex-
plained rights and I do make the following voluntary statement to the aforementioned person of my own free will and without any
promises or offers of leniency or favors, and without compulsion or persuasion by any person or persons whomsoever:

I was at the Erwin Residence with Ted Erwin when
we had decided to ride around & drink some beer
we rode back roads for approximately 1 hour
& 15 minutes when Ted informed me he was
going to play Bingo with his mom and his
girlfriend. After they had left I continued to drink
beer for approximately another hour when
I realized that I knew where the key to Ted's
safe was. I removed the key for the fire box on
the back porch entering the house from the back
went to his mother's room to the safe on the
& removing an envelope containing 300 cash and a
couple of checks, leaving the house I got into
my truck and took the back way to wills Point
disposing of the envelope and the checks. I spent
my money on such things as beer and just getting off.

I have read this statement consisting of _____1_____ page(s), each page of which bears my signature, and I do affirm that all
facts and statements contained herein are true and correct.

_____Erin Murphy_____ (Chelubah Isaac Murphy)
Signature of person making voluntary statement

00525

The above warnings were given by and

*THE STATE of TEXAS )*                    X
                                             *ARREST WARRANT AFFIDAVIT*
*COUNTY of VAN ZANDT*    )        X

    *BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, who, after being by me duly sworn on oath deposes and a: My name is* ____Sergeant Michael A. Bates_____ *, and I have d reason to believe and do believe that on or about the* 5th or 6th *day of* ____April____ *, 199* 4 *, in Van Zandt County, Texas,* __JEDIDIAH ISAAC MURPHY__ __W/M D.O.B. 09-01-75__ *did then and there commit the offense of* ____ __P.C. 30.03 Burglary of a Habitation__ *a (felony)/xxxxxxxxxxxxx in that he/she did then and there:* intentionally and knowingly without the effective consent of Elizabeth Chaney Erwin, the owner thereof, enter a habitation and did attempt to commit theft.

    *My belief is based upon the following facts and information:* Your Affiant, Mike Bates, is employed by the Edgewood Police Department and is currently assigned as Sergeant of the Patrol Division of said department. Your Affiant is responsible for investigation of criminal activity in the City of Edgewood.

    On April 6, 1994, Edlizabeth Chaney Erwin, 406 Shady Lane/P.O. Box 329, Edgewood, Texas, reported an offense of Burglary of a Habitation to the Edgewood Police Department. Erwin reported sometime between Tuesday, April 5, 1994, and Wednesday, April 6, 1994, at approximately 8:00 A.M., person(2) had entered her residence without her permission or consent and removed an envelope from the safe in her residence which containedg two (2) checks made out to Comp. One from Commerce ISD for $518.00 and one from Quinlan ISD for $523.00, and also $1000.00 in cash was removed from the safe.

    On Thursday, June 2, 1994, Jedidiah Isaac Murphy was arrested on other charges placed in the Van Zandt County Jail. Deputy James Rose contacted Chief Dale Corbett nd advised he needed to talk to Jedidiah Isaac Murphy because he could clear up some burglaries which occurred in the City of Edgewood. Chief Dale Corbett went to the County Jail and Jedidiah Isaac Murphy, after being advisedof his rights, gave a voluntary statement on commiting the burglary of the Erwin residence.

    Jedidiah Isaac Murphy advised that he had been drinking beer all day when he realized that he knew where the key to Jed Erwin's house was. He advised that he removed the key from a box on the back porch, entering the house from the back. He went to Jed's mothers room to the safe on the floor, removing an envelope containing $300.00 cash and a couple of checks. He left the house, left in his pick-up truck and took the back way to Wills Point, Texas, disposing of the envelope and the checks. He advised that he spent the money on such things as beer and just "goofing off".

00526

WARRANT NO. *1-AV 94180*

THE STATE OF TEXAS                          X           WARRANT OF ARREST

COUNTY OF VAN ZANDT

TO ANY PEACE OFFICER OF THE STATE OF TEXAS:

The undersigned Magistrate having heretofore found that probable
cause exists for the issuance of this warrant you are hereby commanded
to arrest _____JEDIDIAH ISAAC MURPHY_____, hereinafter referred
to as the suspect, and bring the said suspect before a Magistrate in and
for VAN ZANDT, COUNTY, TEXAS, instanter, then and there to answer the
STATE of TEXAS for an offense against the laws of said State, to wit:
___P.C. 30.02 Burglary of a Habitation___ of which offense he, the s
suspect is accused by the written affidavit, under oath of

___Sergeant Michael A. Bates___ filed before me anterior to t
issuance of this warrant.

Herein fail not and due return make hereof at the place hereinafter
named.

Witness my official signature this the *3th* day of *June*
A.D., 19_94_

*Sherry Dearing*
Magistrate in and for VAN ZANDT COU
TEXAS

Recommended Bond:

$ *5,000.00*

*Justice of Peace, Pct. one*
Title and office held by Magistrate

*P.O. Box 189, Grand Saline, Tx. 7*
Address of Magistrate

Came on to hand on the *3rd* day of *JUNE* ,19 9
and executed on the *3rd* day of *JUNE* ,19 *94*

BY: _____

00527

## City of Edgewood

P.O. BOX 377
EDGEWOOD TEXAS 75117

| Disposition | CASE REPORT | Filed |
|---|---|---|

Date_____          Date_____

Court_____          With_____

Docket_____          By_____

Method_____          D. CORBETT/M. BATES
                                      Investigating Officers

Disposition_____          M. BATES
                                      Arresting Officers

                                      VAN ZANDT JUSTICE CENTER
                                      Location of Defendant

Defend:   JEDIDIAH ISAAC MURPHY

Race   W      D.O.B.  09/01/75   Sex   M        Residence  P.O. Box 885 EDGEWOOD Tx. 75117

Date  of Arrest    JUNE 3rd, 1994                Identification No.

Place of Arrest    VAN ZANDT Co. JUSTICE CENTER      Arrest No.

Date and Time of Offense   MAY 26th or 27th, 1994        Offense No. 430-526-94

Complaint  DEBBIE ARMSTRONG RT.2 BOX 371-4 CANTON Tx. (903) 829-3508

Where and How Committed  503 CEDAR St. EDGEWOOD Tx./Removed property without owner's consent

Charge    P.C. 30.04 BURGLARY of a MOTOR VEHICLE F/3

Property Taken and Value   small black make-up bag  450.00

          MOTOROLA BAG PHONE ESN 13003774900 $450.00  (214) 802-4738

Evidence and Seizures    N/A

_____          Voluntary Statement   YES

Accomplices    TRESSHOD MONTRELL TARRANT  B/M 01-16-74

Witnesses _____

Summary of Case     JEDIDIAH MURPHY was arrested  by the Van Zandt Sheriff's Department

     on other chargers  and when questioned he gave a voluntary statement about the offenses

     which occured in the City of Edgewood.

                                                          00528

# VAN ZANDT COUNTY SHERIFF'S DEPARTMENT

**Last Name:** Murphy   **First:** Jedidiah   **Middle:** Jesse

Alias and/or Nickname:

| Citizen of U.S.? | Length of time in U.S.: | Date of Commitment | Time Booked |
| --- | --- | --- | --- |
| ☑Yes ☐No | | 19 | |

Name of Booking Officer: Case 5-11

Address: Street / City / State

| Race | Sex | Age | Height | Weight | Hair | Eyes | Compl. | Marital Status |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| W | M | 18 | 5'10 | 132 | Brn | Brn | L | S |

Date of Commitment: 6-2   Time Booked: 1:00 ☑AM ☐PM
Searched By:

Place of Birth: Edgewood   Occupation: Not Employed

Location of Arrest / Person's Vehicle: N/A   Warning Given? ☐Yes ☐No

Social Security Number: 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

Driver's License Number: 13468974   State Issued: TX

Place of Employment: N/A

| Year | Vehicle Color | Make | Body Style | State | Year | License Number |
| --- | --- | --- | --- | --- | --- | --- |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Prev. Arresting Agency? ☐No ☐Yes

Fingerprinted? ☐Yes ☐No
Photographed? ☐Yes ☐No

Scars, Marks, Tattoos: None

**Charge(s):**

1. Theft ...
   Place of Arrest: ...   Date of Arrest: 6-2   State   Time of Arrest: 5:30
   Charge: Burg of Habitation   Arresting Officer: SCP   Extent of Illness or Injury: N/A

2. Burglary ...
   Place of Arrest: ...   Date of Arrest: 6-2   State   Time of Arrest: 5:30
   Charge: Burg of Vehicle   Arresting Officer: SCP

Name of Agency Arrestee was Received From: VZ JC

Previous Criminal Record:

Inmate Classification: 8-8-0

Name of Next of Kin, Parent, or Guardian: Bob Murphy

II Applicable Name of ☐Parent ☐Guardian ☐Next of Kin

Address of Next of Kin, Parent, or Guardian:

**HOLD FOR:** (Agency - Charge)
Telephone No.: 763- ...87?   Date   Time

Facts of Arrest Not Included Above:

Name of Arrested Person:
Called Attorney? (No. ☐Yes ☐No)
Other Calls Permitted:

Time Released:

| ☐Cash Bond | Bond Amount | Return Date | Released on Bond By: | Other Disposition and/or Remarks: | Name of Person(s) of Firm Making Bond: |
| --- | --- | --- | --- | --- | --- |
| ☐Surety Bond | $ | 19 | | | |
| ☐Personal Bond | $ | | Released By: | ☐Not Placed in Jail | |
| Amt. Fine Paid | $ | Amt. Late Chg:| Total Fine & Costs: $ | | |

00529

ORM A - 110

ORDER FROM
LAW ENFORCEMENT SYSTEMS, INC.
P.O. BOX 1835   CORSICANA, TEXAS 75151
1-800-527-6447

(&) 1978

## OFFENSE/INCIDENT REPORT

PAGE NO. 1 OF 1 PAG

P.C. 30.04  Burglary of a vehicle
CLASSIFICATION

NO. 430-526-94

O. _____
06-01-94
ATE OF REPORT

| | | | | |
|---|---|---|---|---|
| COMPLAINANT OR FIRM | AGE RACE SEX | DOB | | 2 PHONE (BUSINESS) |
| Debbie Armstrong | White/Female | | | |
| COMPLAINANT'S ADDRESS | 4 CITY | | | 5 PHONE(RESIDENCE) |
| Route 2, Box 373-D | Canton, Texas | | | (903) 829-8500 |

| | | | |
|---|---|---|---|
| COMPLAINANT'S BUSINESS OR SCHOOL | ADDRESS | JOB TITLE (GRADE) | WILL COMPLAINANT PROSECUTE? |
| E.I.S.D. | Edgewood, Texas | Teacher | ☒ YES   ☐ NO |

| | | |
|---|---|---|
| OFFENSE/INCIDENT (AS REPORTED) | 8 LOCATION         ADDRESS | 9 TYPE PREMISES |
| Burglary of a vehicle | 503 Cedar St. Edgewood, Tx. | Residence |
| 0 DAY DATE & TIME OF OFFENSE | 11 REPORTED BY | 12 REPORTED TO | 13 HOW REPORTED |
| 05-26-94 - 05-27-94 | #1 | EPD | Phone |
| 4 BODILY  YES ☐  VICTIM TAKEN TO | 15 TRANSPORTED BY | 16 DESC. INJURIES | 17 CONDITION |
| INJURIES  NO ☒  N/A | N/A | N/A | N/A |

| | |
|---|---|
| 8 M.O.   HOW DONE   FORCE USED   WITH WHAT TOOL OR WEAPON | OTHER ACTS OR TRADEMARKS |
| Entered unlocked vehicle and removed property without owner's permission | |

| | |
|---|---|
| 9 VEHICLE INVOLVED? OWNER  NO ☐  YES ☒ | 20 YEAR COLOR MAKE MODEL BODY STYLE LIC. NO. YEAR STATE VIN NO. |
| | '89 Grand-Prix   Red   Lic. No. 563 XSX |

:ODES:      S—STOLEN PROPERTY      D—DAMAGED PROPERTY      L—LOST PROPERTY      F—FOUND PROPERTY

| CODE S-D-L-F | QTY. | DESCRIPTION (SIZE, COLOR, MODEL, STYLE, MATERIAL, CONDITION) | SERIAL NO. | WHERE PURCHASED | VALUE |
|---|---|---|---|---|---|
| S | 1 | make-up (small black bag) | | | $450.00 |
| S | 1 | Motorola Bag Phone | ESN 13003774900 | | $450.00 |
| | | (214) 802-4738 Phone No. | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | |
|---|---|---|
| 22 DISPOSITION OF PROPERTY | 23 TOTAL VALUE | $900.00 |

| | | | | |
|---|---|---|---|---|
| 24 WITNESSES NAME | BEST CONTACT ADDRESS | AGE | BEST PHONE | OTHER PHONE |
| 1. | | | | |
| WITNESSES NAME | BEST CONTACT ADDRESS | AGE | BEST PHONE | OTHER PHONE |
| 2. | | | | |

25 NAME AND ADDRESS OF SUSPECT(S) (AGE, RACE, DESCRIPTION, RELATION TO COMPLAINANT OR WITNESS)
1.

2.

26 DETAILS NOT COVERED ABOVE

Unknown person or persons entered unlocked vehicle and removed above property without

owners permission.  Owner stated S.W. Bell disrupted services on Friday afternoon 05-27-94

00530

## WAIVER OF RIGHTS

ON THE __2__ DAY OF __June__, 19_94_, at __1:30__
A.M., _Chief Dale Corbett_____, advised me _____
_Jim Murphy_____, that I had the
right to remain silent and not make any statement at all; that any
statement I made could be used against me at my trial; that any
statement I made could be used as evidence against me in court;
that I had the right to have a lawyer present to advise me prior
to and during any questioning; that if I was unable to employ or
hire a lawyer, I had the right to have a lawyer appointed to advise
me prior to and during any questioning; that I had the right to
terminate the interview or questioning at any time; and that if I
so desired, an attorney would be called to assist me and no questions
would be asked me until the attorney arrived.  Having been informed
of these rights, prior to any questioning by officers, and under-
standing my rights, I hereby freely, intelligently, voluntarily
and knowingly waive or give up these rights and not desiring a
lawyer, voluntarily choose to make a written statement concerning
the allegations against me.

_____
SIGNATURE OF SUBJECT

_____, a member of the ~~VAN ZANDT~~ Edgewood
COUNTY SHERIFF'S DEPARTMENT, on the _2nd_ day of _June_, 19_94_,
at _11:30_ A.M., administered the foregoing warning to _Jedidiah
Isaac Murphy_____, before commencing an interview
with him.  He (signed) ~~(did not sign)~~ the waiver.

_____
SIGNATURE OF OFFICER

WITNESSES:

00531

ORDER FROM
LAW ENFORCEMENT SYSTEMS, INC.
P.O. BOX 1835   CORSICANA, TEXAS 75110
(214) 872-2511
FORM A-150

## VOLUNTARY STATEMENT

DATE _6 - 2 - 9_ , 19 _94_ . TIME _11:30 AM._ PLACE _Van Zant County Jail_

I, _Jim Murphy_ , am _18_ years old and I live at _Edgewood_
_(did at rear murph)_
_City lake_

I am giving this statement to _Dale Cabell    EPD._ I.D. _301_ , who has identified
himself as a _Police Officer_
and he has duly warned me that I have the following rights: that I have the right to remain silent and not make any statement at all;
that any statement I make may be used against me at my trial; that any statement I make may be used as evidence against me in court;
that I have the right to have a lawyer present to advise me prior to and during any questioning; that if I am unable to employ a law-
yer, I have the right to have a lawyer appointed to advise me prior to and during any questioning and that I have the right to terminate
the interview at any time.

Prior to and during the making of the statement, I have and do hereby knowingly, intelligently, and voluntarily waive the above ex-
plained rights and I do make the following voluntary statement to the aforementioned person of my own free will and without any
promises or offers of leniency or favors, and without compulsion or persuasion by any person or persons whomsoever:

Shed Tarrant and I were riding around on
5-26 of May of 1994 in the Humphries
addition in Edgewood when we spotted a car that
was away from a house and decided to
see what was in the house, I walked
to the car and opened the door removed a
makeup bag and a cellular telephone, I threw the makeup
bag out on the 1st Bridge headed toward the Edgewood
city lake I kept the cellular telephone for about
a week and disposed of it on the side
of Hwy 635 in mesquite. While taking the cellular
phone and makeup bag we were in Shed Tarrants
82 Geo Tracker Shed Tarrant never exited the vehicle.

I have read this statement consisting of _____/_____ page(s), each page of which bears my signature, and I do affirm that all
facts and statements contained herein are true and correct.

_Jim Murphy ( Jididiah Isaac Murphy )_
Signature of person making voluntary statement

00532

THE STATE of TEXAS                    X
                                      X    ARREST WARRANT AFFIDAVIT
COUNTY of VAN ZANDT        )          X

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, who, after being by me duly sworn on oath deposes an says: My name is _____ Sergeant Michael A. Bates _____, and I have good reason to believe and do believe that on or about the 26th or 27th day of _____ May _____, 1994, in Van Zandt County, Texas, JEDIDIAH ISAAC MURPHY W/M D.O.B. 09-01-75 did then and there commit the offense of P.C. 30.04 Burglary of a vehicle a (felony/misdemeanor) in that he/she did then and there: intentionally without the effective consent of Debbie Armstrong, the owner thereof, break into and enter a vehicle and part thereof with intent to commit theft.

My belief is based upon the following facts and information: Your Affiant, Mike Bates, is employed by the Edgewood Police Department and is currently assigned as Sergeant of the Patrol Division of said department. Your Affiant is responsible for investigation of criminal activity in the City of Edgewood.

On Wednesday, June 1, 1994, Debbie Armstrong, Route 2, Box 373-D, Canton, Texas, reported an offense of Burglary of a Motor Vehicle to the Edgewood Police Department. Armstrong reported sometime between Thursday, May 26, 1994, and Friday, May 27, 1994, person(s) unknown had entered her unlocked vehicle, a 1989 Pontiac Grand Prix, Texas License No. 563-XSX, that was parked at 503 Cedar Street, in Edgewood, Texas. Ms. Armstrong advised she was missing a small black make-up bag and a Motorola Bag Phone, Serial Number 13003774900, Phone No. (214) 802-4728.

On Thursday, June 2, 1994, a Jedidiah Isaac Murphy was arrested and placed in the Van Zandt County Jail. Deputy James Rose of the Van Zandt County Sheriff's Department notified Chief Dale Corbett that Jedidiah could clear up some burglaries in the City of Edgewood. At approximately 11:30 A.M., Chief Corbett advised Jedidiah Isaac Murphy of his rights and interviewed him and received a written voluntary statement concerning his aforementioned offense of Burglary of a Motor Vehicle.

In Jedidiah Isaac Murphy's statement, he advised that he and Shod Tarrant were riding around in the Humphries Edition in Shod's 1992 Geo Tracker. They spotted a car parked away from a residence and decided to see what was in the car. Murphy advised he removed a cellular phone and a make-up bag, while Shod waited in the Tracker. Jedidiah Isaac Murphy advised that he threw the make-up bag out of the car on the first bridge headed toward the Edgewood City Lake. He also advised that he kept the cellular phone for about a week and disposed of it on the side of Hwy 635 in Mesquite, Texas.

00533

# Van Zandt County Sheriff's Office
## Incident Report

Incident # 94001164

Date & Time Reported: 6-2-94 5:00 PM

Location of Incident: T. 5, BOX 34    VZ 3501

WILLS POINT, TEXAS    Grid 35    Beat    Shift 8-4

Earliest Date & Time Occurred: 6-1-94 8:00 AM

Latest Date & Time Occurred: 6-2-94 5:00 PM

Related Incident Number

Number of Officers Killed By Accident/Negligence

Incident Status Date

Incident Status: ☑ Active 10

Exceptional Status: 94

### REPORTING PARTY

Name (Last, First Middle): OATS, GARY

Home Phone: 873-2986    Work Phone: 873-2579

Address: RT. 5, BOX 34

City, State Zip: WILLS POINT, TEXAS

### VICTIM

Victim (Last, First Middle): OATS, GARY

Victim Type: ☑ Individual

Address: RT. 5, BOX 34

Date of Birth or Age Range: 4-1-50

City, State Zip: WILLS POINT

Race: W    Sex: M

Phone: 873-2579

Relative (Last, First Middle): OATS, RAMONA

Employer: A S C

Address: RT. 5, BOX 34

Employer's Address: TERRELL

City, State Zip: WILLS POINT, TEXAS

City, State Zip: TEXAS

Phone: 873-2579

Phone: *&# @%&(

Relation To Victim: WIFE

Form 2100-1 December, 1980

Applied Micro Technology, Inc.
00534

## OFFENSES

| Info Only | UCR Offense Code | Federal/State/City Statute | Status | Location Type | Premises Entered | Forced Entry? | Criminal Activity | Type of Weapon Or Force Used | Modius Operandi |
|---|---|---|---|---|---|---|---|---|---|
| | | THEFT | ☐ Attempted ☑ Completed | 20 | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |

### Location Type
01-Air/Bus/Train Terminal
02-Bank/Savings & Loan
03-Bar/Night Club
04-Church/Synagogua/Temple
05-Commercial/Office Building
06-Construction Site
07-Convenience Store
08-Department/Discount Store
09-Drug Store/Dr's Office/Hospital
10-Field/Woods
11-Government/Public Building
12-Grocery/Supermarket
13-Highway/Road/Alley
14-Hotel/Motel/Etc.
15-Jail/Penitentiary
16-Lake/Waterway
17-Liquor Store
18-Parking Lot/Garage
19-Rental/Storage Facility
20-Residence/Home
21-Restaurant
22-School/College
23-Service/Gas Station
24-Specialty Store
25-Other/Unknown
26-Park
27-Farm Residence
28-Farm Building
29-Farm Other

### Criminal Activity
B-Buying
C-Cultivate/Manufacture/Publish
D-Distributing/Selling
E-Exploiting Children
O-Operating/Promoting/Assisting
P-Possessing/Concealing
T-Transporting/Transmit/Import
U-Using/Consuming

### Type of Weapon/Force Used
11-Firearm
12-Handgun
13-Rifle
14-Shotgun
15-Other Firearm
20-Knife/Awl/Etc.
30-Blunt Object
35-Motor Vehicle
40-Personal Weapons
50-Poison
60-Explosives
65-Fire/Incendiary Device
70-Narcotics/Drugs/Sleep Pills
90-Other
95-Unknown
99-None

### Modius Operandi

| A - Object of Attack | B/C - Point Entry/Exit | D - Method Of Entry | E - Method of Attack - Person | | F - Meth Attack/ | G - Weapon Type |
|---|---|---|---|---|---|---|
| 01-Cash Register/Drawer | 01-Front | 01-Attempt Only | 01-Bound/Gagged | 30-Unique Statement | 01-Person Disabled/Inop | 01-Automatic |
| 02-Customers | 02-Rear | 02-Bodily Force | 02-Handcuffed | 31-Swap. Phone Call | 02-Attacked Conc Wall | 02-Revolver |
| 03-Display Items | 03-Side | 03-Bolt Cutter | 03-Answered V Ad | 32-Answered V Ad | 03-Attacked Doorknob | 03-Derringer |
| 04-Owner/Employee | 04-Ground Level | 04-Brick/Rock/Bottle | 04-Covered Mouth w/Hand | 33-Vict Hitchhiking | 04-Attacked Hinges | 04-Handgun |
| 05-Safe/Box | 05-Upper Level | 05-Brake Glass | 05-Choked | 34-Susp Hitchhiking | 05-Attacked Padlock/Hasp | 05-Rifle |
| 06-Vending Machines | 06-Adjoining Building | 06-Burn/Torch | 06-Hit | 35-Met V In Bar | 06-Attacked Tin Wall | 06-Shotgun |
| 07-Attic | 07-Basement | 07-Explosive | 07-Bit | 36-Lured V to Isol Area | 07-Aband/Und Const | 07-Machine Gun |
| 08-Basement | 08-Door | 08-Glass Cutter | 08-Cut | 37-Waited at Structure | 08-Cut Screen | 08-Pellet/BB Gun |
| 09-Bathroom | 09-Cont/Vent | 09-Hammer/Mallet | 09-Shot | 38-Used Stol Vehicle | 09-Hid Prop-Return | 09-Blued Steel |
| 10-Family Room/Den | 10-Floor | 10-Hatchet/Axe | 10-Grabbed | 39-Used V Vehicle | 10-Left Tools at Scene | 10-Chrome/Nickel |
|  1-Garage/Carport | 11-Garage | 11-Hid in Building | 11-Made Purchase | 40-Posed As Salesman | 11-Mult Susp Indicated | 11-Stainless Steel |
| 1-Kitchen | 12-Sliding Glass Door | 12-Key/Slip/Card | 12-Grabbed & Run | 41-Posed Officer/Guard | 12-Obscene Writing | 12-Razor |
| 13-Living Room | 13-Wall | 13-Knife | 13-Took Cash Drawer | 42-Posed Bank Exam/Officer | 13-Ransacked | 13-Knife |
| 14-Storage Area | 14-Window | 14-Left Unlocked | 14-Req. Keys/Combo | 43-Deficated | 14-Smoked/Ate/Drank | 14-Stiletto/Icepick |
| 90-Other | | 15-Pipe Wrench/Pliers | 15-Took V Clothes/Items | 44-Urinated | 15-Susp Phone Call | 15-Sword/Dagger |
| | | 16-Punch | 16-Forced V to Open Reg | 45-Raped | 16-Tech Skill Used | 16-Club/Stick/Bat |
| H - Use of Weapon | J - Demeanor of | 17-Removed AC/Screen | 17-Forced V to Open Safe | 46-Lubricated | 17-Tidy | 17-Bottle |
| 01-Cut/Stab | 01-Angry | 18-Removed Hinges | 18-Forced V to Bag Money | 47-Kissed | 18-Tripod Alarm-Ret Later | 18-Brick/Rock |
| 02-Bite/Strike | 02-Apologetic | 19-Saw/Drill | 19-Jumped Counter | 48-Touched Breasts | 19-Used Gloves | 19-Cable |
| 03-Shoot | 03-Calm/Professional | 20-Screwdriver | 20-Used Note | 49-Touched Genitals | 20-Used Matches | 20-Chain |
| 04-Threaten Use | 04-Disoriented/Sewild | 21-Tape/Wire | 21-Looking for Work | 50-Masturbated | 21-Used Victim's Tools | 21-Rope/Belt/Strangle |
| 99-Other | 05-Disorganized | 22-Tire Iron | 22-Asked Assistance | 51-Forced V to Fondle | 22-Vandalized | 22-Hands/Feet |
| | 06-Feminine | 23-Unknown Type Pry Bar | 23-Offered Assistance | 52-Orally Copulated | 23-Vehicle Used | 23-Toy |
| I - Method of Departure | 07-Irrational | 99-Other | 24-Told V To Count | 53-Anally Sodomized | 99-Other | 24-Simulate |
| 01-Bicycle | 08-Masculine | | 25-Told V Go Rear | 54-S Climax Immed | | 99-Other |
| 02-Motorcycle | 09-Nervous | | 26-Told V Lay Floor | 55-S Un Acchv Erect | | |
| 03-Motor Vehicle | 10-Polite | | 27-Told V Raise Hands | 56-Disrobed Before | | |
| 04-Walk/Run | 11-Violent | | 28-Threatened Harm | 57-Disrobed During | | |
| 99-Other | 99-Other | | 29-Used Obscenities | 99-Other | | |

## PROPERTY

| Type Loss | Qty | Description | Property Code | Brand/Make/Model | Color | Size | Serial/OAN | Value |
|---|---|---|---|---|---|---|---|---|
| S | 1 | CHAIN SAW | 36 | HANDI-MAN | | | | $150.00 |
| S | 1 | "ROPE & SADDLE" RIG TREE CLIMBING EQ. | 36 | | | | | 75.00 |
| | | | | | | | | |
| | | | | | | | | |

### Type Of Loss
B-Burned
E-Evidence
F-Forged/Counterfeited
N-None
 -Other
 -Recovered
S-Stolen
U-Unknown
V-Vandalized/Damaged/Destroyed
Z-Seized

### Property Codes
01-Aircraft
02-Alcohol
03-Automobiles
04-Bicycles
05-Buses
06-Clothes/Furs
07-Computer Hardware/Software
08-Consumable Goods
09-Credit/Debit Cards
10-Drugs/Narcotics
11-Drug/Narcotic Equipment
12-Farm Equipment
13-Firearms
14-Gambling Equipment
15-Heavy Construction/Industrial Equipment
16-Household Goods
17-Jewelry/Precious Metals
18-Livestock
19-Merchandise
20-Money
21-Negotiable Instruments
22-Nonnegotiable Instruments
23-Office-type Equipment
24-Other Motor Vehicles
25-Purses/Handbags/Wallets
26-Radios/TVs/VCRs
27-Recordings-Audio/Visual
28-Recreational Vehicles
29-Structures-Single Occupancy Dwellings
30-Structures-Other Dwellings
31-Structures-Other Commercial/Business
32-Structures-Industrial/Manufacturing
33-Structures-Public/Community
34-Structures-Storage
35-Structures-Other
36-Tools
37-Trucks
38-Vehicle Parts/Accessories
39-Watercraft
50-Tractors
51-Combines
52-Other Farm Machinery
53-Farm Chemicals
54-Other Farm Supplies
55-Grass
56-Cattle
57-Hogs
58-All Other Livestock
77-Other
88-Pending Inventory
99-Special Category

00535

COUNTY OF VAN ZANDT

SHERIFF'S DEPARTMENT

**SUPPLEMENTARY INVESTIGATION REPORT**

Name of Complainant

Oats, Gary

S.O. No. 94001164

Offense

Theft $750.00

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:

Date 6-12 19 94

Actors of Offense are Brian Lane and Mike Williams. Actors have committed several offenses in the county. This charge may be enhanced with the others or filed separately at a later date. Property was recovered. Actors gave statements after being arrested for another offense.

Recommend this case be declared {
Unfounded ☐
Active (not cleared) ☐
Cleared by Arrest ☐
Exceptionally Cleared ☒
}

Sig. D. Blaylock SR

Investigating Officer

00536

**Van Zandt County Sheriff's Office**
**Incident Report**

Incident No: 94 001149

Date & Time Reported: 6-2-94 6:45

Location of Incident: VZ 3210 1 mile N. Fm 1395

City: Wills Point   Grid: 37   Beat   Shift

Earliest Date & Time Occurred: 6-1-94 5Pm

Latest Date & Time Occurred: 6-2-95 6 Am

Incident Status: Active

**REPORTING PARTY**

Name (Last, First Middle): Same as below

**VICTIM**

Victim (Last, First Middle): Read, Mark S.

Address: RR 2101

City, State Zip: Edgewood TX   Resident: Yes

Phone: 903-896-1961

Date Of Birth: 6-26-59

Race: W   Sex: M

Victim Type: Individual

Form 2100-1  December, 1990

00537

Applied Micro Technology, Inc.

## OFFENSES

| Info Only | UCR Offense Code | Federal/State/City Statute | Status | Location Type | Premises Entered | Forced Entry? | Criminal Activity | Type of Weapon Or Force Used | Modius Operandi |
|---|---|---|---|---|---|---|---|---|---|
| | | *Burglary MV* | ☐ Attempted ☑ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |

### Location Type
01-Air/Bus/Train Terminal
02-Bank/Savings & Loan
03-Bar/Night Club
04-Church/Synagogue/Temple
05-Commercial/Office Building
06-Construction Site
07-Convenience Store
08-Department/Discount Store
09-Drug Store/Dr's Office/Hospital
10-Field/Woods
11-Government/Public Building
12-Grocery/Supermarket
13-Highway/Road/Alley
14-Hotel/Motel/Etc.
15-Jail/Penitentiary
16-Lake/Waterway
17-Liquor Store
18-Parking Lot/Garage
19-Rental/Storage Facility
20-Residence/Home
21-Restaurant
22-School/College
23-Service/Gas Station
24-Specialty Store
25-Other/Unknown
26-Park
27-Farm Residence
28-Farm Building
29-Farm Other

### Criminal Activity
B-Buying
C-Cultivate/Manufacture/Publish
D-Distributing/Selling
E-Exploiting Children
O-Operating/Promoting/Assisting
P-Possessing/Concealing
T-Transporting/Transmit/Import
U-Using/Consuming

### Type of Weapon/Force Used
11-Firearm
12-Handgun
13-Rifle
14-Shotgun
15-Other Firearm
16-Knife/Cutting Instr.
30-Blunt Object
35-Motor Vehicle
40-Personal Weapons
50-Poison
60-Explosives
65-Fire/Incendiary Device
70-Narcotics/Drugs/Sleep Pills
80-Other
95-Unknown
99-None

### Modius Operandi

| A - Object Of Attack | B/C - Point Entry/Exit | D - Method Of Entry | E - Method of Attack - Person | F - Meth Attack/ | G - Weapon Type |
|---|---|---|---|---|---|
| 01-Cash Register/Drawer | 01-Front | 01-Attempt Only | 01-Bound/Gagged | 01-System Disabled/Inop | 01-Automatic |
| 02-Customers | 02-Rear | 02-Bodily Force | 02-Handcuffed | 02-Attacked Cond Wall | 02-Revolver |
| 03-Display Items | 03-Side | 03-Bolt Cutter | 03-Covered Face | 03-Attacked Door/knob | 03-Derringer |
| 04-Owner/Employee | 04-Ground Level | 04-Brick/Rock/Bottle | 04-Covered Mouth w/Hand | 04-Attacked Hinges | 04-Shotgun |
| 05-Safe/Box | 05-Upper Level | 05-Broke Glass | 05-Choked | 05-Attacked Padlock/Hasp | 05-Rifle |
| 06-Vending Machines | 06-Adjoining Building | 06-Burn/Torch | 06-Hit | 06-Attacked Tin Wall | 06-Shotgun |
| 07-Attic | 07-Basement | 07-Explosive | 07-Bit | 07-Aband/Und Const | 07-Machine Gun |
| 08-Basement | 08-Door | 08-Glass Cutter | 08-Shot | 08-Cut Screen | 08-Pellet/BB Gun |
| 09-Bathroom | 09-Duct/Vent | 09-Hammer/Mallet | 09-Shot | 09-Hid Prop-Return | 09-Blued Steel |
| 10-Family Room/Den | 10-Floor | 10-Hatchet/Axe | 10-Kidnapped | 10-Left Tools at Scene | 10-Chrome/Nickel |
| 11-Garage/Carport | 11-Garage | 11-Hid In Building | 11-Made Purchase | 11-Mult Susp Involved | 11-Stainless Steel |
| *12-Kitchen | 12-Sliding Glass Door | 12-Key/Slip/Card | 12-Grabbed & Run | 12-Obscene Writing | 12-Razor |
| 3-Living Room | 13-Wall | 13-Knife | 13-Took Cash Drawer | 13-Ransacked | 13-Knife |
| 14-Storage Area | 14-Window | 14-Left Unlocked | 14-Reg. Keys/Combo | 14-Smoked/Ate/Drank | 14-Stiletto/Icepick |
| 99-Other | | 15-Pipe Wrench/Pliers | 15-Took V Clothes/Harms | 15-Susp Phone Call | 15-Sword/Dagger |
| | | 16-Punch | 16-Forced V to Open Reg | 16-Tech Skill Used | 16-Cut/Stick/Bat |
| **H - Use of Weapon** | **J - Demeanor of** | 17-Removed A/C/Screen | 17-Forced V to Open Safe | 17-Tidy | 17-Bottle |
| 01-Cut/Stab | **Subject** | 18-Removed Hinges | 18-Forced V to Beg Money | 18-Tripped Alarm-Ret Later | 18-Brick/Rock |
| 02-Strike/Strike | 01-Angry | 19-Saw/Drill | 19-Jumped Counter | 19-Used Gloves | 19-Explosives |
| 03-Shoot | 02-Apologetic | 20-Screwdriver | 20-Used Note | 20-Used Matches | 20-Narcotics/Drugs |
| 04-Threatens Use | 03-Calm/Professional | 21-Tape/Wire | 21-Looking for Work | 21-Used Victim's Tools | 21-Rope/Belt/Strangle |
| 99-Other | 04-Disoriented/Bewild | 22-Tire Iron | 22-Asked Assistance | 22-Vandalized | 22-Hands/Feet |
| | 05-Disorganized | 23-Unknown Type Pry Bar | 23-Offered Assistance | 23-Vehicle Used | 23-Toy |
| **I - Method of Departure** | 06-Feminine | 99-Other | 24-Told V To Count | 99-Other | 24-Simulate |
| 01-Bicycle | 07-Irrational | | 25-Told V To Count | | 99-Other |
| 02-Motorcycle | 08-Masculine | | 26-Told V Lay Floor | | |
| 03-Motor Vehicle | 09-Nervous | | 27-Told V V Lay Floor | | |
| 04-Walk/Run | 10-Polite | | 28-Told V Raise Hands | | |
| 99-Other | 11-Violent | | 29-Threatened Harm | | |
| | 99-Other | | 29-Used Obscenities | | |

Additional E column entries:
30-Unique Statement
31-Susp. Phone Call
32-Answered V Ad
33-Visit Hitchhiking
34-Susp Hitchhiking
35-Met V in Bar
36-Lured V to Isol Area
37-Waited at Structure
38-Used Stol Vehicle
39-Used V Vehicle
40-Posed As Salesman
41-Posed Officer/Guard
42-Posed Bank Exam/Officer
43-Defecated
44-Urinated
45-Raped
46-Lubricated
47-Kissed
48-Touched Breasts
49-Touched Genitals
50-Masturbated
51-Forced V to Fondle
52-Orally Copulated
53-Anally Sodomized
54-S Climax Immed
55-S Un Acchv Erect
56-Disrobed Before
57-Disrobed During
99-Other

## PROPERTY

| Type Loss | Qty | Description | Property Code | Brand/Make/Model | Color | Size | Serial/OAN | Value |
|---|---|---|---|---|---|---|---|---|
| S | 1 | *Knife* | 77 | *none* | *Brown* | *12"* | | *$30.00* |
| S | 1 | *Shotgun* | 13 | *12ga. Winchester* | *Blue* | *Ranger* | *N1015972* | *$250.00* |
| | | | | | | | | |
| | | | | | | | | |

### Type Of Loss
B-Burned
E-Evidence
F-Forged/Counterfeited
H-None
O-Other
  Recovered
  -Stolen
U-Unknown
V-Vandalized/Damaged/
  Destroyed
Z-Seized

### Property Codes
01-Aircraft
02-Alcohol
03-Automobiles
04-Bicycles
05-Buses
06-Clothes/Furs
07-Computer Hardware/Software
08-Consumable Goods
09-Credit/Debit Cards
10-Drugs/Narcotics
11-Drug/Narcotic Equipment
12-Farm Equipment
13-Firearms
14-Gambling Equipment
15-Heavy Construction/Industrial Equipment
16-Household Goods
17-Jewelry/Precious Metals
18-Livestock
19-Merchandise
20-Money
21-Negotiable Instruments
22-Nonnegotiable Instruments
23-Office-type Equipment
24-Other Motor Vehicles
25-Purses/Handbags/Wallets
26-Radios/TVs/VCRs
27-Recordings-Audio/Visual
28-Recreational Vehicles
29-Structures-Single Occupancy Dwellings
30-Structures-Other Dwellings
31-Structures-Other Commercial/Business
32-Structures-Industrial/Manufacturing
33-Structures-Public/Community
34-Structures-Storage
35-Structures-Other
36-Tools
37-Trucks
38-Vehicle Parts/Accessories
39-Watercraft
50-Tractors
51-Combines
52-Other Farm Machinery
53-Farm Chemicals
54-Other Farm Supplies
55-Grain
56-Cattle
57-Hogs
58-All Other Livestock
59-Nursery
70-Other
88-Pending Inventory
90-Special Category

## OFFENDER

| Name (Last, First Middle) | AKA (Last, First Middle) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Murphy, Jedidah Issac | | | | | | | | |
| ess | Date Of Birth (Month/Day/Year) or Age Range | | | | | | | |
| | 7-7-75 | | | | | | | |
| City, State Zip | Resident | Race | Sex | Height | Weight | Hair | Eye | Hispanic? |
| | | W | M | | | | | ☐ Yes ☐ No |
| Phone | Social Security Number | OLN | | OLS | | OLY | | |
| Employer | Relative (Last, First Middle) | | | | | | | |
| Employer's Address | Address | | | | | | | |
| City, State Zip | City, State Zip | | | | | | | |
| Phone | Extension | Phone | | | Relation To Offender | | | |

| Scars/Marks/Tatoos | Offender Suspected Of Using | Offender Present During Initial Investigation |
|---|---|---|
| | ☐ Alcohol  ☐ Drugs  ☐ Computer | ☐ Yes  ☐ No |

Victim Is Related To Offender As

| | | | | |
|---|---|---|---|---|
| SB | Spouse | SF | Stepparent | BG | Boyfriend/Girlfriend |
| CS | Common-Law Spouse | SC | Stepchild | HR | Homosexual Relation |
| PA | Parent | SS | Stepsibling | XS | Ex-Spouse |
| SB | Sibling | OF | Other Family | EE | Employee |
| CH | Child | AQ | Acquaintance | ER | Employer |
| GP | Grandparent | FR | Friend | OK | Otherwise Known |
| GC | Grandchild | NE | Neighbor | RU | Relation Unknown |
| IL | In-Law | | | ST | Stranger |

### Additional Physical Descriptors (Check all that apply)

| A - Appearance | C - Clothing | D - Hair Length | F - Hair Style | G - Facial Hair | H - Teeth  Babysitter | I - Speech | J - Glasses |
|---|---|---|---|---|---|---|---|
| 01-Conservative | 01-Shorts | 01-Bald | 01-Afro/Natural | 01-Clean Shaven | 01-Chipped | 01-Accent | 01-None |
| 02-Dirty | 02-Sweater | 02-Collar | 02-Braided | 02-Fuzz | 02-Crooked | 02-Lisp | 02-Plastic Frame |
| 03-Disguise | 03-Jacket/Coat | 03-Long | 03-Bushy | 03-Lower Lip Hair | 03-False | 03-Mumbles | 03-Wire Frame |
| 04-Flashy | 04-Baseball Cap | 04-Receding | 04-Crew Cut | 04-Unshaven | 04-Gapped | 04-Nasal | 04-Rimless |
| 05-Military | 05-Cowboy Hat | 05-Shoulder | 05-Greasy | 05-Heavy Brows | 05-Gold | 05-Offensive | 05-Sunglasses |
| 06-Unkempt | 06-Other Hat/Cap | 06-Short | 06-Military | 06-Sideburns | 06-Irregular | 06-Pleasant | 06-Tint Lens |
| 07-Unusual Odor | 07-Suit | 99-Other | 07-Pony Tail | 07-Mustache | 07-Missing | 07-Rapid | 99-Other |
| 08-Well Groomed | 08-Boots | | 08-Processed | 08-Fu Manchu | 08-None | 08-Slow | |
| 09-Work Clothing | 09-Headband/Scarf | | 09-Straight | 09-Goatee | 09-Protruding | 09-Slurred | |
| 99-Other | 10-Gloves | E - Hair Texture | 10-Wavy/Curly | 10-Thin Beard | 10-Silver | 10-Stutters | K - Hand Use |
| | 11-Uniform | 01-Coarse | 11-Wig | 11-Full Beard | 11-Stain/Decay | 11-Talkative | 01-Left |
| - Build | 12-Blue Jeans | 02-Fine | 99-Other | 99-Other | 99-Other | 99-Other | 02-Right |
| 01-Fat/Heavy | 13-Ski Mask | 03-Shaved | | | | | 03-Ambidextrous |
| 02-Medium | 14-Stocking Mask | 04-Thick | | | | | 99-Other |
| 03-Thin | 15-Coveralls | 05-Thinning | | | | | |
| 04-Muscular | 16-Bathing Suit | 06-Wiry | | | | | |
| 99-Other | 17-Earrings/Jewelry | 99-Other | | | | | |
| | 99-Other | | | | | | |

## OFFENDER ARREST

| Arrest Number | Date & Time of Arrest | Disposition | How Armed (Use "A" suffix if automatic) |
|---|---|---|---|
| | 6-3-94 | ☒ Handled Within Department | 01 Unarmed |
| Arrest Type | | ☒ Referred to Counseling/Social Services | 11 11A Firearm |
| ☒ On-View Arrest  ☒ Summoned/Cited | ☐ Taken Into Custody  Multiple Clearance? | ☒ Referred to Juvenile Court | 12 12A Handgun |
| Statute | ☐ Yes  ☐ No | ☒ Referred to Criminal Court | 13 13A Rifle |
| | Blood Alcohol | ☒ Referred to Other Agency | 14 Shotgun |
| Arresting Officer | Assisting Officer | ☒ Other | 15 15A Other Firearm |
| | | | 16 Cutting Instrument |
| | | | 17 Club/Blackjack/Brass Knuckles |

## DRUGS

| Type Loss | Qty & Measure | Type | Description | Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### Drug Types

| | | | | Unit Of Measure | |
|---|---|---|---|---|---|
| A-"Crack" Cocaine | E-Marijuana | I-LSD | L-Amphetamines/ | D-Other Depressants | GM-Gram | ML-Milliliter | DU-Dosage Units/Items |
| B-Cocaine | F-Morphine | J-PCP | Methamphetamines | P-Other Drugs | KG-Kilogram | LT-Liter | NP-Number of Plants |
| T-Hashish | G-Opium | X-Other Hallucinogens | M-Other Stimulants | Q-Unknown Type Drug | OZ-Ounce | FO-Fluid Ounce | XX-Not Reported |
| -Heroin | H-Other Narcotics | | N-Barbiturates | R-Over 3 Drug Types | LB-Pound | GL-Gallon | |

## VEHICLE

| Type Loss | Color | Year | Make | Model | Style | LIY | LIS | LIC | LIT | VIN |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | | | | | | | | | Property Code | Value |

00539

Incident No. 9400 1150

# Van Zandt County Sheriff's Office
## Incident Report

Date & Time Reported: 6-2-94 6:30A

6-2-94

| Location of Incident | | | Related Incident Number | Incident Status | Exceptional Status |
|---|---|---|---|---|---|
| Hwy 80 2 miles East Wills Point | | | | ☐ ACtive ☐ INactive ☒ Adult Arrest ☐ Adult eXception ☐ Juvenile Custody ☐ Juvenile eXception ☐ UNfounded | ☐ Death Of Offender ☐ Prosecution Declined ☐ Extradition Declined ☐ Refused To Cooperate ☐ Juvenile, No Custody ☐ Warrant |
| City: Wills Point TX | Grid | Beat / Shift | Number of Officers Killed By Accident/Negligence | | |
| Earliest Date & Time Occurred: 6-2-94 12:00 A | Latest Date & Time Occurred: 6-2-94 6:00 A | | Incident Status Date | | |

### REPORTING PARTY

| Name (Last, First Middle) | Home Phone | Work Phone |
|---|---|---|
| Chrisler, Kenneth | 896-1237 | |
| Address: P.O.B. 280 Edgewood TX | City, State Zip: Wills Point TX | |

### VICTIM

| | |
|---|---|
| Victim (Last, First Middle): Crisler, Kenneth Wayne | Victim Type: ☒ Individual ☐ Business ☐ Financial ☐ Government ☐ Religious ☐ Society ☐ Other ☐ Unknown |
| Address: POB 280 Edgewood TX | Date Of Birth (Month/Day/Year) or Age Range |
| City, State Zip: Edgewood TX 75117; Resident: yes | Race: W; Sex: M; Height: 5'11"; Weight: 180; Hair: BLO; Eye: BLU; Hispanic? ☐Yes ☐No |
| Phone: 896-1237; Social Security Number | OLN: 04648285; OLS; OLY |
| Employer: Self | Relative (Last, First Middle) |
| Employer's Address | Address |
| City, State Zip | City, State Zip |
| Phone; Extension | Phone; Relation To Victim |
| Scars/Marks/Tatoos | Type Of Injury: B Broken Bones, I Internal Injury, L Severe Laceration, T Loss of Teeth, S Scalds/Burns, U Unconsciousness, O Other Major Injury, M Minor Injury, N None |

| LEOKA Victims Only | Type of Activity | Body Armor | Type of Assignment |
|---|---|---|---|
| Killed by Felonious Act? ☐ Yes ☐ No | 1 Disturbance Call, 2 Burglary, 3 Robbery, 4 Other Arrest, 5 Civil Disorder, 6 Handling Prisoners, 7 Investigating Suspicious Persons/Circumstances, 8 Ambush, 9 Mentally Deranged, 10 Traffic Pursuit/Stop, 11 All Other | 1 Wearing-Protected, 2 Wearing-Not Protected, 3 Not Wearing | 3 1-Man Car-Uniformed-Alone, 4 1-Man Car-Uniformed-Assisted, 5 1-Man Car-Plain-Alone, 6 1-Man Car-Plain-Assisted, 1 2-Man Car-Uniformed, 2 2-Man Car-Plain, 7 Other Alone, 8 Other Assisted |

| Aggravated Assault/Homicide Circumstances: Aggravated Assault/Murder/Non-Neg Manslaughter (max 2) | Negligent Manslaughter (max 1) | Justifiable Homicide (max 1) | Additional Justifiable Homicide Circumstances |
|---|---|---|---|
| 1 Argument, 2 Assault On LE Officer, 3 Drug Dealing, 4 Gangland, 5 Juvenile Gang, 6 Lovers' Quarrel, 7 Mercy Killing, 8 Other Felony Involved, 9 Other Circumstances, 10 Unknown Circumstances | 30 Child Playing with Weapon, 31 Gun-Cleaning Accident, 32 Hunting Accident, 33 Other Negligent Weapon Handling, 34 Other Negligent Killing | 20 Criminal Killed by Private Citizen, 21 Criminal Killed by Police Officer | A Criminal Attacked Police Officer, B Criminal Attacked Fellow Police Officer, C Criminal Attacked Civilian, D Criminal Attempted Flight from a Crime, E Criminal Killed In Commission of a Crime, F Criminal Resisted Arrest, G Unable to Determine/Not Enough Info. |

| Hate-Bias Crimes Only: Type Of Bias | Target |
|---|---|
| 1 Black, 2 Asian/Pacific Islander, 3 American Indian, 4 White, 5 Other Race/Color, 6 Hispanic, 7 Anti-Semitic, 8 Other Religion, 9 Ethnic/National Origin, 10 Sexual Orientation, 11 Age, 12 Gender, 13 Disability, 14 Political | 1 Place of Worship, 2 Other Group Property, 3 Public Property, 4 Business, 5 Residence, 6 Other Property, 7 Clergy, 8 Other Person |
| Circumstances | |

| Domestic Abuse Cases Only | Children | Referrals | Reporter |
|---|---|---|---|
| | H Harmed, U Unharmed, N None Present | C Counseling, F Financial, L Legal, M Medical, S Shelter, O Other, N None | V Victim, O Other |

Form 2100-1 December, 1990

Applied Micro Technology, Inc.

00540

## OFFENSES

| Info Only | UCR Offense Code | Federal/State/City Statute | Status | Location Type | Premises Entered | Forced Entry? | Criminal Activity | Type of Weapon Or Force Used | Modius Operandi |
|---|---|---|---|---|---|---|---|---|---|
| | | theft $20,000^{00}$ | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |
| | | | ☐ Attempted ☐ Completed | | | | | | |

### Location Type
01-Air/Bus/Train Terminal
02-Bank/Savings & Loan
03-Bar/Night Club
04-Church/Synagogue/Temple
05-Commercial/Office Building
06-Construction Site
07-Convenience Store
08-Department/Discount Store
09-Drug Store/Drs Office/Hospital
10-Field/Woods
11-Government/Public Building
12-Grocery/Supermarket
13-Highway/Road/Alley
14-Hotel/Motel/Etc.
15-Jail/Penitentiary
16-Lake/Waterway
17-Liquor Store
18-Parking Lot/Garage
19-Rental/Storage Facility
20-Residence/Home
21-Restaurant
22-School/College
23-Service/Gas Station
24-Specialty Store
25-Other/Unknown
26-Park
27-Farm Residence
28-Farm Building
29-Farm Other

### Criminal Activity
B-Buying
C-Cultivate/Manufacture/Publish
D-Distributing/Selling
E-Exploiting Children
O-Operating/Promoting/Assisting
P-Possessing/Concealing
T-Transporting/Transmit/Import
U-Using/Consuming

### Type of Weapon/Force Used
01-Firearm
12-Handgun
13-Rifle
14-Shotgun
15-Other Firearm
20-Knife/Axe/Etc.
30-Blunt Object
35-Motor Vehicle
40-Personal Weapons
50-Poison
60-Explosives
65-Fire/Incendary Device
70-Narcotics/Drugs/Sleep Pills
90-Other
95-Unknown
99-None

### A - Object Of Attack
01-Cash Register/Drawer
02-Customers
03-Display Items
04-Owner/Employee
05-Safe/Box
06-Vending Machines
07-Attic
08-Basement
09-Bathroom
10-Family Room/Den
11-Garage/Carport
12-Kitchen
-Living Room
-torage Area
ther

### B/C - Point Entry/Exit
01-Front
02-Rear
03-Side
04-Ground Level
05-Upper Level
06-Adjoining Building
07-Basement
08-Door
09-Duct/Vent
10-Floor
11-Garage
12-Sliding Glass Door
13-Wall
14-Window
99-Other

### D - Method Of Entry
01-Attempt Only
02-Bodily Force
03-Bolt Cutter
04-Brick/Rock/Bottle
05-Broke Glass
06-Burn/Torch
07-Explosive
08-Glass Cutter
09-Hammer/Mallet
10-Hatchet/Axe
11-Hid In Building
12-Key/Slip/Card
13-Knife
14-Left Unlocked
15-Pipe Wrench/Pliers
16-Punch
17-Removed AC/Screen
18-Removed Hinges
19-Saw/Drill
20-Screwdriver
21-Tape/Wire
22-Tie Iron
23-Unknown Type Pry Bar
99-Other

### E - Method of Attack - Person
01-Bound/Gagged
02-Handcuffed
03-Covered Face
04-Covered Mouth w/Hand
05-Choked
06-Hit
07-Bit
08-Cut
09-Grabbed
10-Kidnapped
11-Made Purchase
12-Grabbed & Run
13-Took Cash Drawer
14-Req. Keys/Combo
15-Took 'n' Clothes/Items
16-Forced V to Open Reg
17-Forced V to Open Safe
18-Forced V to Bag Money
19-Jumped Counter
20-Used Note
21-Looking for Work
22-Asked Assistance
23-Offered Assistance
24-Told V To Count
25-Told V Go Rear
26-Told V Go Floor
27-Told V Raise Hands
28-Threatened Harm
29-Used Obscenities
30-Unique Statement
31-Susp. Phone Call
32-Answered V Ad
33-Vict Hitchhiking
34-Susp Hitchhiking
35-Met V in Bar
36-Lured V to Isol Area
37-Waited at Structure
38-Used Stol Vehicle
39-Used V Vehicle
40-Posed As Salesman
41-Posed Officer/Guard
42-Posed Bank Exam/Officer
43-Defecated
44-Urinated
45-Raped
46-Lubricated
47-Kissed
48-Fondled Breasts
49-Touched Genitals
50-Masturbated
51-Forced V to Fondle
52-Orally Copulated
53-Anally Sodomized
54-S Climax Inmend
55-S Un Actm Erect
56-Disrobed Before
57-Disrobed During
99-Other

### F - Meth Attack/
01-SNISIN Disabled/Inop
02-Attacked Conc Wall
03-Attacked Doorknob
04-Attacked Hinges
05-Attacked Padlock/Hasp
06-Attacked Tin Wall
07-Aband/Und Const
08-Cut Screen
09-Hid Prop-Return
10-Left Tools at Scene
11-Mult Susp Indicated
12-Obscene Writing
13-Ransacked
14-Smoked/Ate/Drank
15-Susp Phone Call
16-Tech Skill Used
17-Tidy
18-Triped Alarm-Ret Later
19-Used Gloves
20-Used Matches
21-Used Victim's Tools
22-Vandalized
23-Vehicle Used
99-Other

### G - Weapon Type
01-Automatic
02-Revolver
03-Derringer
04-Handgun
05-Rifle
06-Shotgun
07-Machine Gun
08-Pellet/BB Gun
09-Blued Steel
10-Chrome/Nickel
11-Stainless Steel
12-Razor
13-Knife
14-Stiletto/Icepick
15-Sword/Dagger
16-Club/Stick/Bat
17-Bottle
18-Brick/Rock
19-Explosives
20-Gas/Poison/Drugs
21-Rope/Belt/Strangle
22-Hands/Feet
23-Toy
24-Simulate
99-Other

### H - Use of Weapon
01-Cut/Stab
02-Bite/Strike
03-Shoot
04-Threatens Use
99-Other

### I - Method of Departure
01-Bicycle
02-Motorcycle
03-Motor Vehicle
04-Walk/Run
99-Other

### J - Demeanor of
01-Angry
02-Apologetic
03-Calm/Professional
04-Disoriented/Bewild
05-Disorganized
06-Feminine
07-Irrational
08-Masculine
09-Nervous
10-Polite
11-Violent
99-Other

## PROPERTY

| Type Loss | Qty | Description | Property Code | Brand/Make/Model | Color | Size | Serial/OAN | Value |
|---|---|---|---|---|---|---|---|---|
| S | 1 | Cub Cadet lawnmower | | Riding | yellow/w | | | $800^{00}$ |

### Type Of Loss
B-Burned
E-Evidence
F-Forged/Counterfeited
N-None
O-Other
-Recovered
-len
-known
-ndalized/Damaged/
-Destroyed
Z-Seized

### Property Codes
01-Aircraft
02-Alcohol
03-Automobiles
04-Bicycles
05-Buses
06-Clothes/Furs
07-Computer Hardware/Software
08-Consumable Goods
09-Credit/Debit Cards
10-Drugs/Narcotics
11-Drug/Narcotic Equipment
12-Farm Equipment
13-Firearms
14-Gambling Equipment
15-Heavy Construction/Industrial Equipment
16-Household Goods
17-Jewelry/Precious Metals
18-Livestock
19-Merchandise
20-Money
21-Negotiable Instruments
22-Nonnegotiable Instruments
23-Office-type Equipment
24-Other Motor Vehicles
25-Purses/Handbags/Wallets
26-Radios/TVs/VCRs
27-Recordings-Audio/Visual
28-Recreational Vehicles
29-Structures-Single Occupancy Dwellings
30-Structures-Other Dwellings
31-Structures-Other Commercial/Business
32-Structures-Industrial/Manufacturing
33-Structures-Public/Community
34-Structures-Storage
35-Structures-Other
36-Tools
37-Trucks
38-Vehicle Parts/Accessories
39-Watercraft
50-Tractors
51-Combines
52-Other Farm Machinery
53-Farm Chemicals
54-Other Farm Supplies
55-Grain
56-Cattle
57-Hogs
58-All Other Livestock
77-Other
88-Pending Inventory
99-Special Category

00541

```
*******************************************************************
DALLAS POLICE DEPARTMEN                  SERV   #: 0707175 D S02
ID#:                                     ARREST #:
DA/WARRANT#:        F95-75692            CHARGE#:

INIT: GIB/AT    INV: C.S.MASSEY                   BUS PH#: 670-6632
 YPE REPORT: ACCOMPLICE       TYPE FILING: ADULT
DATE OF ORIGINAL REPORT: 09/06/95                FG575692
SUPP ATTACHED TO: COMPLETE    REASON FOR SUPP:
FILED WITH: DPD LEGAL LIASON  JUDGE:
OTHER COUNTY:                 FILING OFFICER: C TUBOS
FILING DATE:    SEP 0 7 1995  APPROVED BY: 2861 DUKES,J D

                    **************************
*********************  SUSPECT  INFORMATION  ********************
                    **************************
SUSPECT: MURPHY,JEDIDIAH ISAAC     LOC OF SUSPECT: AT LARGE
STATUS OF SUSPECT: AT LARGE   RACE: W  SEX: M   AGE: 20 DOB: 09/01/75
HT: 509    WT: 143    HAIR: BROW   EYES: BROW
HOME ADDR: 06218    PINELAND      HOME APT#: 1508
HOME CITY: DALLAS                 HOME ST: TX   HOME ZIP: 75231
BUSN NAME:
BUSN ADDR:                        BUSN SUITE#:
BUSN CITY:                        BUSN ST:     BUSN ZIP:

*****************     CHARGE INFORMATION   ***********************
CHARGE:  $5500              PENAL CD: 31.03    PENAL CLS: SJ
HOW COMMITTED: POSSESSION COMP AUTO OBTAIN THEFT PROP  PES CALLED: N

****************   COMPLAINANT INFORMATION  *********************
COMPLAINANT:
 ACE: W    SEX: M               AGE: 41  DOB: 10/31/53
.OME PHONE: 214-276-8040       BUSINESS PHONE:    241-8531
HOME ADDR: 1010    DELMAR       HOME APT#:
HOME CITY: GARLAND             HOME ST: TX  HOME ZIP: 75040
BUSN ADDR:                     BUSN SUITE#:
BUSN CITY: DALLAS              BUSN ST:     BUSN ZIP:

*******************  ARREST INFORMATION  ***********************
REC CHK: Y          ARR DATE: 08/30/95   ARR TIME: 1215   ARR#
ARREST ADDR: 02363            LITTLEPOCKETRD
APT/SUITE#:       CITY/ST:DALLAS      TX
ARRESTING OFFICERS: 1)  4016  CLIFTON,WALTER M JR
                        4865  POOLE,MICHAEL B
OFFENSE DATE(S): 08/18/95  08/19/95  OFFENSE TIME(S):  2300   0700
LOCATION OF OFFENSE: 11201        E LAKEHIGHLANDSD

****************  PROPERTY RECAP INFORMATION  *******************
TOTAL VALUE OF PROPERTY STOLEN:
TOTAL VALUE OF PROPERTY RECOVERED:    $9100.00

****************  REPORT APPROVAL INFORMATION  ******************
REPORT APPROVED BY: 2861 DUKES,J D              DATE: 09/06/95
```

THIS INFORMATION IS CONFIDENTIAL
UNDER LAW AND IS SUBJECT TO THE
TEXAS CIRI COLIPLIA CE AND NON-
DISCLOSURE AGREEMENTS.

DALLAS COUNTY ADULT PROBATION DEP 00542

```
*****************************************************************
DALLAS POLICE DEPARTMENT          SERV#  #: 070717S D S02
ID#:                              ARREL  J:
DA/WARRANT#:                      CHARGE#:

********************* PROPERTY INFORMATION *********************
ESCRIPTION: 89 CHEVY,PU,LIC#95/TX/BL5561,VIN#2G
 UANTITY: 00001    SERIAL#: CEC19K8K12VALUE:    $10100.00
STATUS: STOLEN      TAG#:              RELEASE TO OWNER: N

DESCRIPTION: 89 CHEVY,PU,LIC#95/TX/BL5561,VIN#2G
 QUANTITY: 00001    SERIAL#: CEC19K8K12VALUE:     $9100.00
STATUS: RECOVERED   TAG#:              RELEASE TO OWNER: N

********************* EVIDENCE INFORMATION *********************
** THERE IS NO EVIDENCE INFORMATION ASSOCIATED WITH THIS REPORT **

********************* ACCOMPLICE INFORMATION *******************
NAME: TESTA,JOSEPH,CHRISTIAN
RACE: W    SEX: M    AGE: 18    DOB: 07/01/77    FILED ON: Y


********************* WITNESS #01 INFORMATION ******************
NAME: WEBSTER,LESLIE              CODE:  C
RACE: W    SEX: M                 AGE:  41    DOB: 10/31/53
HOME PHONE: 214-276-8040          BUSINESS PHONE:  214-241-8531
HOME ADDR: 1010    DELMAR         HOME APT#:
HOME CITY: GARLAND                HOME ST: TX  HOME ZIP:  75040
BUSN ADDR:                        BUSN SUITE#:
BUSN CITY:                        BUSN ST:    BUSN ZIP:

 NARRATIVE:
  JMPLAINANT CAN TESTIFY TO THE FACTS OF THIS CASE: THAT HE REPORTED THE
LISTED VEHICLE STOLEN TO DALLAS POLICE ON REPORT NUMBER 70717S-D: THAT
HE DID NOT GIVE ANYONE CONSENT TO OPERATE OR POSSESS HIS VEHICLE: THAT
HE DOES NOT KNOW THIS SUSPECT.

********************* WITNESS #02 INFORMATION ******************
NAME: W.M. CLIFTON # 4016         CODE:  AO
RACE:      SEX:                   AGE:        DOB:
HOME PHONE:                       BUSINESS PHONE:  214-670-4415
HOME ADDR:                        HOME APT#:
HOME CITY:                        HOME ST:    HOME ZIP:
BUSN ADDR:       N/E PATROL DPD   BUSN SUITE#:
BUSN CITY: DALLAS                 BUSN ST: TX  BUSN ZIP:

NARRATIVE:
ARRESTING OFFICER CAN TESTIFY TO THE FACTS OF THIS CASE PERTAINING TO
HIM.
```

```
************************************************************************
DALLAS POLICE DEPARTMEN                    SERVI  #: 0707175 0 S02
ID#:                                       ARRES  #:
DA/WARRANT#:                               CHARGE#:

*******************   WITNESS #02 INFORMATION   *******************

*******************   WITNESS #03 INFORMATION   *******************
NAME: M.D.POOLE #4865                       CODE:  AO
RACE:      SEX:                     AGE:         DOB:
HOME PHONE:                         BUSINESS PHONE:  214-670-4415
HOME ADDR:                          HOME APT#:
HOME CITY:                          HOME ST:        HOME ZIP:
BUSN ADDR:      N/E PATROL DPD BUSN SUITE#:
BUSN CITY: DALLAS                   BUSN ST:  TX  BUSN ZIP:
```

NARRATIVE:
ARRESTING OFFICER CAN TESTIFY TO THE FACTS OF THIS CASE PERTAINING TO
HIM.

```
*******************   WITNESS #04 INFORMATION   *******************
NAME: C. GARCIA #7111                       CODE:  AO
RACE:      SEX:                     AGE:         DOB:
HOME PHONE:                         BUSINESS PHONE:  214-670-4415
HOME ADDR:                          HOME APT#:
HOME CITY:                          HOME ST:        HOME ZIP:
BUSN ADDR:      N/E PATROL DPD BUSN SUITE#:
BUSN CITY: DALLAS                   BUSN ST:  TX  BUSN ZIP:
```

NARRATIVE:
ARRESTING OFFICER CAN TESTIFY TO THE FACTS OF THIS CASE PERTAINING TO
HIM.

```
*******************   WITNESS #05 INFORMATION   *******************
NAME: M.SULLIVAN                            CODE:  AO
RACE:      SEX:                     AGE:         DOB:
HOME PHONE:                         BUSINESS PHONE:  214-653-3430
HOME ADDR:                          HOME APT#:
HOME CITY:                          HOME ST:        HOME ZIP:
BUSN ADDR:      DESOTO P.D.    BUSN SUITE#:
BUSN CITY: DESOTO                   BUSN ST:  TX  BUSN ZIP:
```

NARRATIVE:
ARRESTING OFFICER CAN TESTIFY TO THE FACTS OF THIS CASE PERTAINING TO
HIM: THAT HE IS A DESOTO P.D. DETECTIVE CURRENTLY ASSIGNED TO THE DALLAS
COUNTY COMMERCIAL AUTO THEFT TASK FORCE: THAT HE OBSERVED THIS SUSPECT
IN POSSESSION OF THE COMPLAINANT'S STOLEN VEHICLE.

00544

```
*****************************************************************
DALLAS POLICE DEPARTMEN'                    SERV'  #: 0707175 D S02
ID#:                                        ARRES.#:
DA/WARRANT#:                                CHARGE#:


*********************    WITNESS #06 INFORMATION    *********************
NAME: BEDFORD, BRIAN                         CODE:  W
RACE: B     SEX: M                  AGE:  32    DOB:  03/02/63
HOME PHONE: 214-328-0953            BUSINESS PHONE:  214-670-6632
HOME ADDR: 2363    LITTLEPOCKET     HOME APT#:
HOME CITY: DALLAS                   HOME ST:  TX   HOME ZIP:
BUSN ADDR:                          BUSN SUITE#:
BUSN CITY: DALLAS                   BUSN ST:  TX   BUSN ZIP:

NARRATIVE:
WITNESS CAN TESTIFY TO THE FACTS OF THIS CASE PERTAINING TO HIM: THAT HE
ASSISTED ARRESTING OFFICERS IN APPREHENDING THIS SUSPECT.

*********************    WITNESS #07 INFORMATION    *********************
NAME: C.S. MASSEY #5366                      CODE:  IO
RACE:     SEX:                      AGE:       DOB:
HOME PHONE:                         BUSINESS PHONE:  214-670-6632
HOME ADDR:                          HOME APT#:
HOME CITY:                          HOME ST:       HOME ZIP:
BUSN ADDR:       GIB/AUTO THEFT     BUSN SUITE#:   DPD
BUSN CITY: DALLAS                   BUSN ST:  TX   BUSN ZIP:

NARRATIVE:
INVESTIGATING OFFICER CAN TESTIFY TO THE FACTS OF THIS CASE PERTAINING
TO HIM: THAT HE PREPARED THIS CASE FOR FILING.

***************    MAGISTRATING INFORMATION    *************************
BY JUDGE:                DATE:              BOND $:
OUT BEFORE MAGISTRATE - METHOD:                    DATE:
NO MAGISTRATE INFO -    CLERK:                      DATE:
```

00545

```
*****************************************************************
DALLAS POLICE DEPARTMEI        SERV   N#: 070/175 D S02
ID#:                           ARRESI#:
DA/WARRANT#:                   CHARGE#:

****************   NARRATIVE INFORMATION   ****************
COMPLAINANT LESLIE WEBSTER REPORTED HIS 1989 CHEVY, SILVERADO, PICK-UP,
LICENSE PLATE NUMBER 95/TX/BL5561, VIN NUMBER 2GCEC19K8K1256756, VALUED
AT $10,100., STOLEN FROM THE APARTMENT PARKING LOT AT 11201
LAKEHIGHLANDS DRIVE, DALLAS, DALLAS COUNTY, TEXAS, BETWEEN THE TIMES OF
FRIDAY AUGUST 18, 1995 AT 11:00 P.M. AND SATURDAY AUGUST 19, 1995 AT
7:00 A.M., TO DALLAS POLICE ON OFFENSE REPORT NUMBER 707175-D.
ON AUGUST 30, 1995, AT ABOUT 12:15 P.M., ARRESTING OFFICER SULLIVAN, WHO
IS ASSIGNED TO THE DALLAS COUNTY COMMERCIAL AUTO THEFT TASK FORCE,
OBSERVED THIS SUSPECT AND THE ACCOMPLICE ENTER THE COMPLAINANT'S STOLEN
VEHICLE IN A MOTEL PARKING LOT AT 8901 E. RLT FREEWAY. THIS SUSPECT
ENTERED THE PASSENGERSIDE OF THE VEHICLE AND THE ACCOMPLICE ENTERED THE
DRIVERSIDE OF THE VEHICLE. THE ACCOMPLICE THEN DROVE THE VEHICLE OUT
OF THE PARKING LOT AND ONTO THE ROAD.  ARRESTING OFFICERS ATTEMPTED TO
STOP ███████████████ IN THE 7500 BLOCK OF E. RLT FREEWAY. WHEN THIS
SUSPECT AND THE ACCOMPLICE SAW THE OFFICERS, THE ███████████████
MOV ███████████████████████T. TH ██████████████████ AFTER A SHORT
FOOT CHASE WITH THE ASSISTANCE OF WITNESS BEDFORD. THE VEHICLE WAS
RECOVERED WITH A BROKEN RADIO, DENTED HOOD, AND DENTED DOOR. THE VEHICLE
ALSO HAD A BROKEN DRIVERSIDE DOOR LOCK AND A BUSTED STEERING COLUMN.
THIS DAMAGE WAS IN CLEAR VIEW OF THIS SUSPECT INDICATING THAT HE KNEW
THAT THE VEHICLE WAS STOLEN. ARRESTING OFFICER SULLIVAN WAS ABLE TO STOP
THE MOVING VEHICLE AFTER THIS SUSPECT JUMPED OUT TO PREVENT FURTHER
DAMAGE. THE COMPLAINANT DID NOT GIVE ANYONE CONSENT TO OPERATE, POSSESS,
OR STEAL HIS VEHICLE. THE COMPLAINANT DOES NOT KNOW THIS SUSPECT OR THE
ACCOMPLICE.
```

THIS INFORMATION IS CONFIDENTIAL
UNDER LAW AND IS SUBJECT TO THE
TEXAS CRIMINAL COMPLIANCE AND NON-
DISCLOSURE AGREEMENTS.
DALLAS COUNTY ADULT PROBATION DEPT.

00546

```
***********************   **********************   *********************
OID 2VB   TCR - 0801     DALLAS POLICE DEPARTMENT   SERVICE #070717S-D
NCIC YES   TCE - 0809    OFFENSE INCIDENT REPORT    DATE REPORTED 08/19/95

DISPATCHED TO:                            AT:0730  AS SIG:09/05

  EAT: 231          WATCH: 1                    ELEMENT: 1393

COMP. NAME:WEBSTER, LESLIE           R/S/A/DOB: W/M/41/103153
HOME ADDR:1010  DELMAR               BUSN.ADDR.
GARLAND  TX 75040  214-276-8040      DALLAS                241-8531
                                     OCC:ACCTS RECV    HRS:0730-1600

OFF.LOC:11201 E LAKEHIGHLANDSD        APT. 2060    DATES OF OCCURRENCE
PREMISES:THE HIGHLANDS PK LT   PROP.All.CODE:920   FRI, AUG 18, 1995 2300
INV.ASSGN:                                         SAT, AUG 19, 1995 0700

OFFENSE/INCIDENT:UUMV                       UCR CODE 1:07211

M/O:
  TOOK LOCK 2 TONE DRK BLU/TAN 89 CHEV XCAB SILVERADO PICKUP, LICENSE BL5561

STATUS: S UCR DISP:P   2SPECIAL REPORT:   FOLLOW UP:2   REVIEWED BY:3853

SR CODE:1  RELATED REPORTS:          WEATHER COND:WARM

FAMILY VIOLENCE: N               GANG ACTIVITY CRIME: N

INV.DIV.NOTIFIED:

REPT.OFF:BEASLEY,VICKEY  08590   OTHER OFF:

                      PROPERTY INFORMATION 1
CD QTY            DESCRIPTION        SERIAL NO.   VALUE    CLASS
S     1 89 DRK BLU/TAN CHEV XCAB SILVERADO        10100.   SO
S     1 SET ASSORTED HAND TOOLS                    250.    10
S     1 TRUCK MANUAL                               95.     ZO
S     1 TRUCK INSURANCE ID CARD

VALUE PROP.STOLEN:  10445.00
                                          RECV BEAT: 01
                                        O I D # 3993
NCIC YES Y

                    VEHICLE INFORMATION 1
  STOLEN  YEAR MAKE MODEL STYLE      LICENSE      VALID TAG#
          1989 CHEV      PK    1996 TX BL5561
VEHICLE COLOR    COLOR 1: BLUE    COLOR 2: TAN   VIN: 2GCEC19K8K1256756
SPECIAL FEATURES  MISSING PARTS

                                            VEH COND
                                               U
DESC:2 TONE DRK BLU/TAN, XCAB, MISS 2 FRONT HUBCAPS,BLK ATTACH TOOLBOX

                      NARRATIVE
   COMPLAINANT STATES THAT WHILE VISITING FRIENDS UNKNOWN SUSPECTS TOOK
THE LOCKED VEHICLE WITHOUT CONSENT.
   COMPLAINANT STATES THAT HE DID NOT NOTICE ANY BROKEN GLASS THIS
MORNING.
   COMPLAINANT STATES THAT HE HAS THE KEYS TO THE VEHICLE AND HE HAS NOT
```

09/06/95 1223              DALLAS POLICE DEPARTMENT              PAGE   1-2
'*********************!  '**********************!  **********************
OID 2VB  BEASLEY,VICKEY    8590                SERVICE #070717S-D
WEBSTER, LESLIE            UUMV                DATE REPORTED 08/19/95

AUTHORIZED ANYONE TO TAKE THE VEHICLE.
     REGISTRATION VERIFIED. UNABLE TO CHECK REPO, TOW AND AUTO POUND.
     QKCK FILES CLOSED.
     NO SUSPECTS OR WITNESSES.NFI

                    ** END PAGE 1 **
                    ** END OF REPORT **
                                              00548

```
                                      SUPPLEMENT # 1        PAGE 1.1
*****************************   ******************   *********************
OID 2GE                  DALLAS POLICE DEPARTMENT    SERVICE #0707175-D
NCIC YES                                             DATE REPORTED 08/30/95

DISPATCHED TO:

  CAT: 231

COMP. NAME:WEBSTER, LESLIE

OFF.LOC:11201 E LAKEHIGHLANDSD                DATE OF OFF.: 08/18/95

OFFENSE/INCIDENT:UUMV                         UCR 1:07211

REPT.OFF:CLIFTON,WALTER  4016        SUPERVISOR: PATROL

STATUS: S      UCR DISP:P      FOLLOW UP: 2      REVIEWED BY: 93174
                     PROPERTY INFORMATION 1
CD QTY           DESCRIPTION              SERIAL NO.    VALUE      CLASS
R    1 89 DRK BLU/TAN CHEV XCAB SILVERADO              10100.      50

                            RECOVERED AT:7500    E RLT
VALUE PROP.REC:     10100.00     JURISDICTION:9/1    BADGE:4016
DISP OF PROP:24HRWRECKR                          RECV BEAT: 321
                                                 O I D # 3993
NCIC YES Y

                     VEHICLE INFORMATION 1
   OT      YEAR MAKE MODEL STYLE     LICENSE      VALID TAG#
           1989 CHEV       PK     1996 TX BL5561
   VHICLE COLOR  COLOR 1: BLUE    COLOR 2: TAN   VIN: 2GCEC19K8K1256756
SPECIAL FEATURES  MISSING PARTS

                                                 VEH COND
                                                  GOOD
DESC:2 TONE DRK BLU/TAN, XCAB, MISS 2 FRONT HUBCAPS,BLK ATTACH TOOLBOX
  R/O WAS COVERING DET.SULLIVAN OF THE DESOTA POLICE DEPT.  WHO WAS WORKIN
  FOR DALLAS COUNTY AUTO TASK FORCE.  HE WAS SITTING UP ON THE LISTED
  STOLEN VEHICLE WHICH WAS FOUND ON 8901 EAST R.L.T. AT THE COMFORT INN.
  TWO SUSPECTS GOT INTO THE VEHICLE AND IT WAS STOPPED AT 7500 EAST.R.L.
  THORTON WHERE THEY RAN AND WERE CAPTURED.
  THE VEHICLE WAS TAKEN TOL 24HOUR WRECKER STORAGE FACILITY AND CONFIRMED
  STOLEN BY GOFFNEY.
  AP TESTA WAS THE DRIVER AND AP MURPHY WAS THE PASSENGER AND BOTH
  WANTED ON OTHER WARRANTS.
  NFI.
```

00549

```
.................              DALLAS POLICE DEPARTMENT              PAGE
, ***************************   ***************************   ***************************
OID 2GE  CLIFTON,WALTER  .016                      SERVICE #0707175-D
WEBSTER, LESLIE          UUMV                      DATE REPORTED 08/30/05
                         SUPPLEMENT   1

                    SUSPECT INFORMATION 1
    DOE  NAME              ADDRESS            NICKNAME/ALIAS  ARREST #
    AP   TESTA,JOSEPH,CHRIST  6218    PINELAND  1508
                          DALLAS     TX

    R/S/A     DOB     WEIGHT    HEIGHT    HAIR COLOR      EYE COLOR
    W/M/18  07/01/77    145       600        BROW             HAZE

    OTHER DESC LS

               WEAPON DESCRIPTION

        WEAPON TYPE
    HANDS-FEET

                    SUSPECT INFORMATION 2
    CODE  NAME              ADDRESS            NICKNAME/ALIAS  ARREST #
    AP   MURPHY,JEDIDIAH,ISAA  6218    PINELAND 1508
                          DALLAS     TX

    R/S/A     DOB     WEIGHT    HEIGHT    HAIR COLOR      EYE COLOR
    W/M/19  09/01/75    143       509        BROW             BROW

    OTHER DESC LS

               WEAPON DESCRIPTION

        WEAPON TYPE
    HANDS-FEET
```

                    ** END OF SUPPLEMENT **                    00550

COPY

## TERRELL POLICE DEPARTMENT
### OFFENSE/INCIDENT REPORT

Case Number _7438-96_

Attempt / Completed _____

Offense: _Poss Marijuana u/2oz   MB_   Date: _031496_   Time: _2230_

UCR Code: _1832_

**VICTIM**

Name _State of Texas City of Terrell PD_   File No. _30_

Age _____ DOB _____   Resident Status _____
OLN _____   Address _701 E. Nash_
State _____   Apartment No. _____
Type _____   City / State _Terrell, TX_
Expiration _____   Zip Code _75160_
Soc. Sec. _____   Home Phone _____
Sex ___ Race___ Height___ Weight___   Work Phone _551-6622_
Employer _____   NCIC _____
Position _____

Agency Classification _____   Method of Entry _____
Modus Operandi _____
Entry _____   F - Forced
Instrument Used _____   N - Non Force

Grid _SE_   Location _____
Address _1100 Blk S. Virginia_
City / State _Terrell, TX_   Zip Code _75160_

Criminal Mischief Damage  $ _____

### WHEN OFFENSE / INCIDENT OCCURRED

Date _031496_   Date _____
Time _2230_   TO   Time _____

Sale of Drug _____   Type of Drug _Marijuana_
Possession _Marij u/2oz_   Weight _26 Grams_   Value _____
Analysis Date _____

Case Status _C_   Status Explanation:   A - Active     E - Exceptional Closed
I - Inactive   C - Closed
U - Unfounded

00551

Case Number _7438-96_

**#1 SUBJECT FILE** _A_

S - Suspect    V - Victim    W - Witness    J - Juvenile
P - Parent     A - Accused   C - Complainant    R - Reporter

File No. _26615_    Name _MURPHY, JEDIDIAH ISAAC_
Alias _JIM_    Age _20_    DOB _090175_    Race _W_
Sex _M_    Height _5-09_ to _____    Weight _113_ to _____    Hair _BRO_
Eyes _BRO_    Address _6305 FM 429_
Phone _214-962-7443_    City / State _KAUFMAN  TX_    Zip Code _75142_
OLN / Soc. Sec. _1246817/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_    Relationship To Victim _____
Comment: _____
_____
_____

**#2 SUBJECT FILE** _A_

S - Suspect    V - Victim    W - Witness    J - Juvenile
P - Parent     A - Accused   C - Complainant    R - Reporter

File No. _26614_    Name _PHILLIPS, RAY BOB_
Alias _BOB_    Age _23_    DOB _021873_    Race _W_
Sex _M_    Height _5-08_ to _____    Weight _115_ to _____    Hair _BRO_
Eyes _BRO_    Address _6305 FM 429_
Phone _____    City / State _KAUFMAN_    Zip Code _75142_
OLN / Soc. Sec. _1624932S/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_    Relationship To Victim _____
Comment: _____
_____
_____

**#3 SUBJECT FILE** _____

S - Suspect    V - Victim    W - Witness    J - Juvenile
P - Parent     A - Accused   C - Complainant    R - Reporter

File No. _____    Name _____
Alias _____    Age _____    DOB _____    Race _____
Sex _____    Height: _____ to _____    Weight: _____ to _____    Hair _____
Eyes _____    Address _____
Phone _____    City / State _____    Zip Code _____
OLN / Soc. Sec. _____    Relationship To Victim _____
Comment: _____
_____

00552

Case Number _____

**#4 SUBJECT FILE** _____

S - Suspect      V - Victim      W - Witness      J - Juvenile
P - Parent       A - Accused     C - Complainant            R - Reporter

File No. _____ Name _____

Alias _____ Age _____ DOB _____ Race _____

Sex _____ Height: _____ to _____ Weight: _____ to _____ Hair _____

Eyes _____ Address _____

Phone _____ City / State _____ Zip Code _____

OLN / Soc. Sec. _____ Relationship To Victim _____

Comment: _____
_____
_____

**#5 SUBJECT FILE** _____

S - Suspect      V - Victim      W - Witness      J - Juvenile
P - Parent       A - Accused     C - Complainant            R - Reporter

File No. _____ Name _____

Alias _____ Age _____ DOB _____ Race _____

Sex _____ Height: _____ to _____ Weight: _____ to _____ Hair _____

Eyes _____ Address _____

Phone _____ City / State _____ Zip Code _____

OLN / Soc. Sec. _____ Relationship To Victim _____

Comment: _____
_____
_____

**VEHICLE FILE**     Type  SU   S - stolen     E - evidence     D- damaged     SU - suspect vehicle

License No. 816SBF   Lic. State  TX   Lic. Expiration  APR 96

Vehicle Year  1986   Make  BUICK   Model  SKYLARK   Color  GRAY

VIN  1G4NJ69U7GM131212   Value _____

Comment:  IMPOUNDED — OPERATOR ARRESTED — CROW'S WRECKER
SERVICE.

**STOLEN PROPERTY FILE**

| Quantity | Item | Description | Ser. No. | Mod. No. | Value | Rec. Date |
|---|---|---|---|---|---|---|
| ONE | PLASTIC BAG | CONTAINING MARIJUANA — TOTAL WEIGHT | | | | |
| | OF BAG & MARIJUANA 26 GRAMS — EVIDENCE | | TAG #2107 | | | |
| | | | | | | |
| | | | | | | |

00553

## OFFENSE / INCIDENT NARRATIVE

Case Number __7438-96__   Date __031496__   Officer __6146__   Document No. __1 OF 1__

ON THURSDAY, 031496, AT 2213 HOURS, I OBSERVED AN
86 GRAY BUICK SKYLARK, TX LP 816SBF, SOUTHBOUND
IN THE 100 BLK OF S. VIRGINIA WITH AN INOPERATIVE
HEADLIGHT. I CONDUCTED A TRAFFIC STOP OF THE
VEHICLE IN THE 1100 BLK OF S. VIRGINIA. OFFICERS:
S. JOHNS #6154 AND R. LAVIN #6140 ALSO WERE PRESENT
AT THE SCENE. I MADE CONTACT WITH THE DRIVER,
MURPHY, AND HE STATED HE DID NOT HAVE HIS DL IN
HIS POSSESSION, THERE WAS NO PROOF OF INSURANCE ON
THE VEHICLE, THE VEHICLE REGISTRATION WAS EXPIRED,
THE STEERING COLUMN HAD BEEN TAMPERED WITH BUT
HE DIDN'T DO IT, AND THAT HE WAS ON PROBATION. I
REQUESTED PERMISSION TO SEARCH THE VEHICLE AND
MURPHY STATED IT WAS OKAY. A REGISTRATION CHECK
WAS CONDUCTED. I SEARCHED THE FRONT SEAT AREA
AND AS I WAS WALKING AROUND THE OUTSIDE OF THE
VEHICLE I OBSERVED A ROLLED UP PLASTIC BAGGIE
LAYING ON THE REAR SEAT. I ASKED THE PASSENGER,
PHILLIPS, WHAT WAS IN THE BAGGIE. HE STATED HE DID
NOT KNOW BUT APPEARED TO BECOME NERVOUS. I
UNROLLED THE BAGGIE AND OBSERVED IT CONTAINED
WHAT I BELIEVE IS MARIJUANA. THE BAGGIE WAS
WITHIN ARMS REACH OF BOTH MURPHY AND PHILLIPS.
BOTH WERE ARRESTED WITHOUT INCIDENT.

REFER TO DA'S OFFICE.

| ENTERED INTO | ☐ TCIC<br>☐ NCIC | SIGNATURE VICTIM / REPORTER (Circle appropriate one)<br>See reverse side of Victim's Copy | X D. Allerty |
|---|---|---|---|
| Initial Officer Status<br>☐ Active ☐ Suspended ☐ Unfounded ☒ Cleared | | Recommend to Continue<br>☐ Field ☐ Investigation | Initial Officer's Name, PE, Date<br>D. ALBERTY #6149  031496 |
| Field Supervisor Status<br>☒ Agree ☐ Disagree | | Recommend to Continue<br>☐ Field ☐ Investigation ☐ Suspend | Field Supervisor's Name, PE, Date<br>D. Bollins, 6112, 3-15-96 |
| Investigative Coordinator<br>☐ Field ☐ Status Investigation | | Investigative Coordinator Initial, PE, Date, Status | Assigned Investigator Initial, PE, Date |

PS539

## TERRELL POLICE DEPARTMENT

### PROBABLE CAUSE FORM FOR MAGISTRATES WARNING

NAME OF PERSON ARRESTED: _MURPHY_ , _JEDIDIAH_ , _ISAAC_
LAST              FIRST              MIDDLE

DATE ARRESTED: _03_   _14_   _96_
MONTH   DAY   YEAR

PRIMARY CHARGES:

1. _POSS MARIJ < 2 OZ_    _MB_         _TERRELL_
CHARGE          CLASSIFICATION OF OFFENSE       CHARGING OFC.

PROBABLE CAUSE SUMMARY:
_SUSPECT WAS THE DRIVER IN A VEHICLE STOPPED FOR A TRAFFIC VIOLATION._
_A PLASTIC BAG CONTAINING SUSPECTED MARIJUANA WAS OBSERVED IN PLAIN VIEW_
_LAYING ON THE BACKSEAT WITHIN REACH OF THE SUSPECT. SUSPECT ARRESTED WITHOUT_
_INCIDENT._

2.
CHARGE          CLASSIFICATION OF OFFENSE       CHARGING OFC.

PROBABLE CAUSE SUMMARY:



3.
CHARGE          CLASSIFICATION OF OFFENSE       CHARGING OFC.

PROBABLE CAUSE SUMMARY:



SUBSEQUENT CHARGES:

1.
CHARGE          CLASSIFICATION OF OFFENSE       CHARGING OFC.

PROBABLE CAUSE SUMMARY:



2.
CHARGE          CLASSIFICATION OF OFFENSE       CHARGING OFC.

PROBABLE CAUSE SUMMARY:



00555

TERRELL POLICE DEPARTMENT
ARREST REPORT

1832

| DPS NO. (S/DI) | FBI NO. | CONTRIBUTOR ORI | LEAVE BLANK |
|---|---|---|---|
| TXD5280958 | 93818WA4 | TX1290500 | |

NAME (LAST, FIRST, MIDDLE) MURPHY, JEDIDIAH ISAAC
DATE OF BIRTH 09011975  PLACE OF BIRTH TX

| SEX M | RACE W | ETH N | HGT 5-09 | WGT 113 | EYES BRO | HAIR BRO | SCARS, MARKS, TATTOOS, AMPUTATIONS TAT BACK |
|---|---|---|---|---|---|---|---|

SKIN TONE MED   SOCIAL SECURITY NO 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   MISC NO   CTZ US

DRIVER LICENSE NO 12468174   STATE TX   TYPE C   ID CARD NO   STATE

ALIAS NAME(S) JIM   ADDRESS 6305 FM 429  CITY KAUFMAN  STATE TX  ZIP 75142

OR: TX1290500   ARRESTING AGENCY   TRANS. HAZ. MATERIAL Y OR N ☐   OPER. COM. VEHICLE Y OR N ☐   LIC. PLATE NO   STATE   YEAR   DATE OF ARREST 03141996   AGENCY ARREST NO 26615

NAME TERRELL PD   AGENCY CASE NO 1438-96   FIREARM CODE ☐

| LOCATION OF ARREST 1100 BLK S. VIRGINIA | TIME 2254 | CROW | VEHICLE IMPOUNDMENT INFO |
|---|---|---|---|

| CHARGES | WARRANT # | AGENCY | BOND / FINE |
|---|---|---|---|
| 1. POSS MARIJ 4/2 OZ | ON VIEW | TPD | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

BRIEF NARRATIVE: SUSPECT WAS STOPPED FOR A TRAFFIC OFFENSE. A PLASTIC BAG CONTAINING MARIJUANA WAS OBSERVED IN PLAIN VIEW WITHIN REACH OF THE SUSPECT. SUSPECT WAS ARRESTED WITHOUT INCIDENT, TRANSPORTED TO TPD, AND BOOKED IN TO CELL #5.

DISPOSITION OF INMATE:   RELEASED ON: ____BOND, ____FINE, ____CITATION, ____OTHER

TRANSFERRED TO: ✓ KAUFMAN S.O., ____OTHER AGENCY   3-15-96 DATE & 1:13 AM TIME

ARRESTING OFFICER(S): ALBERTY/JOHNS/LAVIN   BOOKING OFFICER ALBERTY/JOHNS   RELEASING OFFICER WILLS

00556

[X] OFFENSE                   W[ILL]LS POINT POLICE DEPARTM[EN]T            [_] INCIDENT
                                  OFFENSE/INCIDENT REPOR[T]

COMPLAINANT'S                                                          COMPLAINANT'S
DL                                                                    SS

| 1.comp.(last name first) R/S/DOB | 2.home phone | 3.work phone | 4.occupation |
| EVANS, JEANNE          W/F | | | |
| 5.residence address, city, state | 6.business address, city, st. | 7.work hrs. |
| 2113 HILLCREST  #248 MESQ., TX | | |
| 8.reportee(last name first) | 9.home phone | 10.work phone | 11.occupation |
| SAME AS COMP | | | |
| 12.reportee res. address | 13.bus.address,  city, st. | 14.work hrs. |
| | | |

| 15.offense/incident | 16.location offense/incident |
| ASSAULT/SERIOUS BODILY INJURY | 334 E.N. COMMERCE #4  WILLS POINT, TEXAS |
| 17.address dispatched to | 18.type premises offense/incident |
| 734 #4 E.N. COMMERCE  WILLS PT. T[X] | ARRESTED PERSON'S HOME |
| 19.date reported | 20.date off/inc. | 21.days offense/inc. | 22.time of offense/inc. |
| 08-17-97 | 08-17-97 | SUNDAY | 5:40 P.M. |
| 23.type evidence | 24.cid unit | 25.vin.# |
| STATEMENT OF COMP. | | |
| 26.lic.# | yr. | st. | 27.color | 28.yr. | 29.make | 30.model | 31.style |
| 32.other description | | 33.lien holder | 34.past due | 35.value now |

| 36.quan. | 37.description | 38.model no. | 39.serial no. | 40.age | 41.value |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| 42.entered TCIC/NCIC by | 43.time/date | | 44.total |
| 45.victim taken to | 46.transported by | 47.injury description | 48.condition |

49.how done - force used - at what point - with what tool or weapon
COMP. WAS TRYING TO BREAK DOMESTIC FIGHT AND WAS HIT IN THE LEFT EYE.
50.brief narrative:COMP. WAS TRYING TO BREAK UP A FIGHT BETWEEN CHELSEA WILLIS
AND JEDIDIAH MURPHY AND MR. MURPHY HIT HER IN THE EYE.  VICTIM WILL GO TO THE
DOCTOR FOR CHECK UP.  SHE POSSIBLY HAS AN ORBITAL FRACTURE OF THE LEFT EYE.

| 51.reporting officer | ID | 52.other officer | ID | 53.investigator assigned |
| JAMES R. LEE  J.Lee | 2203 | IVAN MEDINA | 2207 | |
| 54.time disp. | 55.time clear | 56.grid | 57.status |
| [_] am | [_] am | | |
| 5:46 | 7:30 | | [X] open  [_] suspended  [_] closed |
| [X] pm | [X] pm | | |

00557

```
.01/06/1994  22:36    9036731214         WILLS POINT POLICE            PAGE  02
                                   WILLS POINT POLICE DEPARTMENT       |_| INCIDENT
                                       OFFENSE/INCIDENT REPORT
COMPLAINANT'S                                                        COMPLAINANT'S
DL                                                                   SS
 1.comp.(last name first) R/S/DOB|2.home phone|3.work phone|4.occupation
STATE OF TEXAS                   |            |            |
 5.residence address, city, state|6.business address, city, st.|7.work hrs.

 8.reportee(last name first)      |9.home phone|10.work phone|11.occupation
JAMES R. LEE                      | 560-0824   |873-2588     |POLICE OFFICER
12.reportee res. address          |13.bus.address,   city, st.|14.work hrs.
RT. 3 BOX 187  WILLS POINT, TX    |120 N. 5TH ST. WILLS PT.TX |3P-3A
15.offense/incident               |16.location offense/incident
ASSAULT/F/V SER. BODILY INJURY    | 334 E.N. COMMERCE #4  WILLS POINT, TEXAS
17.address dispatched to          |18.type premises offense/incident
734 #4 E.N. COMMERCE  WILLS PT. T | ARRESTED PERSON'S HOME
19.date reported|20.date off/inc.|21.days offense/inc.|22.time of offense/inc.
08-17-97        | 08-17-97       | SUNDAY             |5:40 P.M.
23.type evidence                  |24.cid unit |25.vin.#
OBSERVATION OF REPORTING OFFICER  |
26.lic.#      yr.   st.|27.color  |28.yr. |29.make |30.model |31.style
32.other description              |33.lien holder  |34.past due   |35.value now
36.quan.|37.description            |38.model no. |39.serial no. |40.age|41.value
        |                          |             |              |      |
        |                          |             |              |      |
        |                          |             |              |      |
        |                          |             |              |      |
        |                          |             |              |      |
        |                          |             |              |      |
        |                          |             |              |      |
42.entered TCIC/NCIC by           |43.time/date                |44.total
45.victim taken to|46.transported by|47.injury description    |48.condition
49.how done - force used - at what point - with what tool or weapon
REPORTING SAW CHELSEA WILLIS BLEEDING FROM NOSE, HEAD BUTTED (INTENTIONALLY)
50.brief narrative:VICTIM IS THE COMMON LAW WIFE OF JEDIDIAE MURPHY.  THEY GOT
INTO AN ARGUMENT AND MR. MURPHY SAID THAT HE INTENTIONALLY HEAD BUTTED HER IN
THE NOSE (POSSIBLY BROKEN).  MR. MURPHY WAS HOLDING A KNIFE WHEN I ARRIVED AND
HE DID NOT DROP IT WHEN ORDERED TO AND I SPRAYED HIM WITH PEPPER MACE AND
PLACED HIM IN CUSTODY.

51.reporting officer    ID |52.other officer    ID |53.investigator assigned
JAMES R. LEE       2203    | IVAN MEDINA      2207  |
54.time disp.  |55.time clear |56.grid |57.status
5:46   |_| am  |7:30  |_| am  |        ||X| open  |_| suspended  |_| closed
       |X| pm  |      |X| pm  |
```

00558

01/06/1994  22:36    9038731214          WILLS POINT POLICE              PAGE  03

THE STATE OF TEXAS                        CASE NUMBER_____
COUNTY OF VAN ZANDT

                              AFFIDAVIT

        BEFORE ME THE UNDERSIGNED AUTHORITY ON THIS DAY PERSONALLY
APPEARED JAMES R. LEE_____, A PEACE OFFICER OF THE STATE
OF TEXAS, WHO AFTER BEING SWORN UPON OATH DEPOSES AND SAYS THAT HE HAS
GOOD REASON TO BELIEVE AND DOES BELIEVE THAT JEDIDIAH ISAAC MURPHY
(NAME OF ACCUSED) DID COMMIT THE OFFENSE OF ASS. F/V SBI & ASS. SBI
AGAINST THE LAW OF THE STATE OF TEXAS ON ___17___ DAY OF AUGUST
1997___.

SAID REASON AND BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES
(PROVIDE NARRATIVE, USING BACK OF THIS AFFIDAVIT OR ATTACHING ADDITIONAL
PAGES AND /OR CASE REPORT, AS NEEDED).

ON AUGUST 17, 1997 AT APPROXIMATELY 5:46 P.M. I WAS DISPATCHED TO 734 I.N.
COMMERCE LOT #4, IN REFERENCE TO A DISTURBANCE.  WHEN I ARRIVED JEANNE
EVANS WAS IN THE FRONT YARD SCREAMING THAT THEY WERE FIGHTING IN THE HOUSE.
I WENT INSIDE AND HEARD THE SOUNDS OF SCUFFLING AND ARGUING IN THE FRONT
BEDROOM.  I APPROACHED THE BEDROOM DOOR AND SAW JEDIDIAH MURPHY WITH A KNIFE
IN HIS HAND AND I HEARD HIM SAY THE NEXT ONE THAT COMES THROUGH THE DOOR
WILL GET CUT.  I DREW MY SERVICE PISTOL AND PEPPER MACE AND DEMANDED THAT
HE DROP THE KNIFE BUT HE DID NOT.  I THEN SPRAYED HIM WITH THE PEPPER MACE
AND MR. MURPHY FELL TO THE FLOOR AND DROPPED THE KNIFE.  MR. MURPHY
COMPLIED WITH MY ORDER FROM THAT POINT ON.  MR. MURPHY WAS TAKEN INTO
CUSTODY AND GIVEN HIS RIGHTS.  VICTIMS OF THE ASSAULT WERE CHELSEA WILLIS
MR. MURPHY'S COMMON LAW WIFE AND JEANNE EVANS A FRIEND OF THE FAMILY.

WITNESS MY SIGNATURE THIS THE __17__ DAY OF AUGUST_____, 19 97.

_James R. Lee_____          _____
AFFIANT SIGNATURE                           AGENCY

SUBSCRIBED AND SWORN TO BEFORE ME THIS THE __17__ DAY OF _____
19 __.

_____
        NOTARY PUBLIC/MAGISTRATE

*************************************************************************
                              ORDER

THE FOREGOING AFFIDAVIT HAVING BEEN PRESENTED TO ME AND UPON CONSIDERATION
OF THE FACTS AND CIRCUMSTANCES CONTAINED THEREIN, IT IS HEREBY DETERMINED
THAT PROBABLE CAUSE EXISTS/DOES NOT EXIST TO WARRANT FURTHER DETENTION OF
THE ABOVE NAMED ACCUSED, THEREFORE, IT IS ACCORDINGLY ORDERED THAT
                              REMAIN IN THE CUSTODY OF THE VAN ZANDT
COUNTY SHERIFF'S DEPARTMENT/BE RELEASED FROM CUSTODY.

_____      _____
DATE/TIME                            MAGISTRATE/VAN ZANDT COUNTY, TEXAS

00559

08/26/1997  15:19    19038735512              CITY OF WILLS POINT                    PAGE  02

WILLS POINT POLICE DEPARTMENT
WILLS POINT, TEXAS
SUPPLEMENTARY INVESTIGATIVE REPORT

DATE 08-25-97   COMPLAINTANT STATE OF TEXAS          OFFENSE #_____

OFFENSE ASS. F/V S.B.I.      CLASSIFICATION  FEL     OFFICER JAMES R. LEE_____

ON AUGUST 25, 1997 I CALLED LESLIE WITH THE DISTRICT ATTORNEY'S OFFICE AND TOLD
HER ABOUT THE JEDIDIAH MURPHY CASE THAT THE VICTIM CAME TO THE POLICE DEPARTMENT
AND SAID THAT HER NOSE HAD NOT BEEN BROKEN.  LESLIE AND I AGREED THAT THE CHARGE
SHOULD BE LOWERED TO ASSAULT/BODILY INJURY, M-A. THE VICTIM'S NAME IN THIS CASE
IS CHELSEA WILLIS, THE COMMON LAW WIFE OF JEDIDIAH MURPHY.

_____
James R. Lee
OFFICER'S SIGNATURE

00560

**(NOT UNDER ARREST)**

Address _727 E. N. COMMERCE_                    Page No. _1_ of _1_ Page
Phone # _NO PHONE_
Date of birth _03/0X/77_
Drivers Lic. _16469642_

I, _CHELSEA WILLIS_, am not under arrest for, nor am I being
detained for any criminal offenses concerning the events I am about to make
known to _OFFICER LEE_. Without being accused of or questioned
about any criminal offenses regarding the facts I am about to state, I vol-
unteer the following information of my own free will, for whatever purposes
it may serve.

Me & Lance was arguing. Nothing
Serious friend tried to step
in & thats all really
No Charges or anything to be
pressed   Thanks
                Chelsea

            SORRY

I have read each page of this statement consisting of _1_ page(s) each page of
which bears my signature, and corrections, if any, bear my initials and I
certify that the facts contained herein are true and correct.

Dated at _6:13 P.M._, this _10th_ day of _August_, 199_2_.

Witness _James R. Lee_
Witness _____

Signature of person giving
voluntary statement

00561

```
ID # Q0005358              VAN ZANDT SHERIFF'S OFFICE           Aug 18, 1997
                                ARREST REPORT


Name: MURPHY,JEDIDIAH ISAAC             AKA: MURPHY,JIM
Addr: 734 LOT 4
      WILLS POINT, TX 75169
      903-000-0000  Res: Y


Born:  9/01/75 in SONORA, TX
Age:   21 years old as of  8/18/97
Citizen of UNITED STATES


Sex:          M        Hispanic:   N       Race:    W-WHITE
Height:       5'10"    Weight:     135     Build:   B-THIN
Hair Color:   BRO      Eye Color:  BRO     Skin:    F-FAIR
Glasses:      C        Shoe Size:  10      Hand:    R
Marital Stat: S        Dependents: 1       Caution: -


Occupation: COC OPERATOR                Education: 12
Employer:   INTEL
            TERRELL, TX 75160
            972-524-1122   06/97


SOC: 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           OLS: TX   OLY: 97  OLN: 12468174
FBI: 93818WA4    State: TX05280958   Old No            SPN No
Prints: 23040718092311121312
DAD          MURPHY,BOB
             P O BX 885
             EDGEWOOD        TX 75117 Res Y
             903-962-4871          01/19/95
MOTHER       HOPE,ABBOTT
             6305 FM 429
             KAUFMAN         TX 75142 Res Y
             903-962-7443          09/05/95


S/M/T:  SC-ABDOM      -APPENDECIDES


Remarks:



Arrested  8/17/97 @ 19:42   21 years old              W-004
Incident:                            Dept Disp: ARREST/INI APPEARANCE
Arr Type: ON-VIEW                    Pros Disp:
Grid/Loc: 0004/334 E.N.COMMERCE      Adult/Juv: A   Film No:
Arr  OFC: LEE,JAMES                  Drug Use?  N   Alcohol?
Asst OFC:                            How Armed: UNARMED
                                     IBR Code:  11A  UCR Code: 0210

Charged With:
      Section: PC22.02       ASSAULT W/SBI              Counts: 1
      Incident:                       Charge Type: FELONY 3
      Warrant:          Agency: W-VZDC Fed/St/Local:S
      Remarks:                        NCIC:     1100
      Crim Actv:                      IBR Code: 11A
                                      UCR Code: 0210

END OF REPORT
```

00562

```
ID # 00005358           V   ZANDT SHERIFF'S OFFICE          8/18/97 @ 14:34
Book# 97001601                 BOOKING REPORT

Name: MURPHY,JEDIDIAH ISAAC                    MALE  21  5'10"  135 WHITE

Classification: 1 1ST OFFENDER                  Cell: HOLD   HOLDING
L   :ed:  8/17/97 @ 19:46   Order:            Reason: C    CRIMINAL CHARGE

Transport by:  L2203 LEE,JAMES
Searched by:   S5018 SHELTON,JAMES(SKIP)       PAT DOWN
Picture by:    S5018 SHELTON,JAMES(SKIP)
Prints by:     S5018 SHELTON,JAMES(SKIP)

Scheduled Release:  0/00/00 @  0:00
Actually Released:  0/00/00 @ 00:00 by
Release reason:
Released to:
Time in custody:    2 days
```

Nov-27-00 14:08   ARL PD 817 459 5323                                      P.02

# Incident Report                              [DRAFT
# Arlington, Texas Police Department

|                                    | 972380237 | Supplement No ORIG |
|---|---|---|

620 W Division St

Arlington, TX 76010                        Nature of Call

(817) 459-5700                                           Entry By

(817) 459-5680(Records Dept.)

P.O. Box 1065, Arlington TX 76004-1065

## Incident Information

| Agency | Report No | Supplement No | Reported Date |
|---|---|---|---|
| ARLINGTON POLICE | 972380237 | ORIG | 08/27/1997 |

Call No       Status

Nature of Call

| Location | | City | ZIP Code | PRA |
|---|---|---|---|---|
| 800 W RANDOL MILL RD | | ARLINGTON | | |

| From Date | From Time | To Date | To Time | Officer | |
|---|---|---|---|---|---|
| 08/26/1997 | 001130 | | 001145 | 1559/NEESE,DARLA KAY | |

Assignment                                    Entry By            RC Status

| RC Status Date | Status Time | Confidential? | RMS Transfer | Beat | Sector | Division |
|---|---|---|---|---|---|---|
| | 00:00:00 | | | | | |

Location Name
URL MEMORIAL HOSPITAL
CPS             DA'S OFFICE        ME'S OFFICE        PROSECUTE NO        PROSECUTE YES        TABC

## Summary Narrative

UNKNOWN SUSPECT INTENTIONALLY AND KNOWINGLY ROBBED VICTIM OF HER
VEHICLE, AND REFUSED TO LET HER GET OUT OF HER VEHICLE, WITHOUT HER
EFFECTIVE CONSENT.

00564

Nov-27-00  14:09   ARL PD 817 459 5323                          P.03

## Incident Report                    DRAFT
## Arlington, Texas Police Department

972380237   Supplement No
            ORIG

### Narrative

ON TUESDAY , AUG 26, 1997 AT 0000 HOURS, D. NEESE , ID 1559, WAS DISPATCHED
TO A REPORT OF ROBBERY AT ARL MEMORIAL HOSPITAL, AND WAS INFORMED IT HAD
JUST OCCURRED IN THE AREA OF W RANDOL MILL AND NW GREEN OAKS.  UPON
ARRIVAL AT THE HOSPITAL I MADE CONTACT WITH DANA JONES (WITNESS), W/F,
2-4-54, WHO STATED THAT SHE WAS WESTBOUND ON THE 2800 BLOCK OF W RANDOL
MILL, IN THE CENTER LANE, AT THE RED LIGHT AT 1500 NW GREEN OAKS BLV. SHE
STATED SHE WAS PREPARING TO TURN LEFT WHEN SHE NOTICED A WHITE
COLORED CAR GOING FAST, COMING DOWN THE HILL TOWARDS GREEN OAKS, AND
IT TURNED RIGHT TO GO NORTHBOUND AT NW GREEN OAKS. SHE STATED WHEN THE
CAR TURNED RIGHT, THE PASSENGER DOOR FLEW OPEN AT APPROX THE
INTERSECTION OF OAKWOOD AND NW GREENOAKS, A W/F TUMBLED OUT OF THE
VEHICLE AND THE VEHICLE CONTINUED TO GO NORTHBOUND ON GREEN OAKS.
JONES STATED THE FEMALE GOT UP AND WAS WALKING AROUND TRYING TO PICK
UP HER SHOES, WHEN SHE PULLED UP AND THE VICTIM STATED SHE HAD BEEN
ABDUCTED, AND ASKED THAT SHE TAKE HER TO ARL MEMORIAL HOSPITAL.  I THEN
SPOKE TO THE SECOND WITNESS, LESLIE DUNKIN, W/F, 6-5-59. MS DUNKINSTATED
SHE WAS DRIVING NORTHBOUND ON NW GREEN OAKS, APPROACHING 2800 W
RANDOL MILL, WHEN SHE SAW DANA JONES ATTEMPTING TO GET THE VICTIM INTO
HER CAR. IT SHOULD BE NOTED THAT MS JONES DRIVES A VOLKSWAGON BUG AND
THE CAR WAS SMALL. DUNKIN PULLED UP AND PUT THE VICTIM IN HER VAN, AND
TRANSPORTED HER TO ARL MEMORIAL HOSPITAL. I GATHERED ALL THEIR
INFORMATION FOR THE REPORT AND ASKED IF THEY WOULD STAND BY. I THEN
WENT BACK TO THE EMERGENCY ROOM AND MADE CONTACT WITH THE VICTIM,
IDENTIFIED AS SHERRYL WILHELM, W/F, 1-19-50. I GATHERED FROM HER THAT THE
SUSPECT WAS A W/M WITH TAN SKIN, BLACK HAIR SHAVED CLOSE TO HIS HEAD AND
LONGERON TOP, BROWN EYES, A GOLD HOOP EARRING IN HIS LEFT EAR, A SLENDER
FACE, EARLY 20'S, WEARING A DARK BLUE TSHIRT AND BLUE JEANS, 5'10", THIN
BUILD. SHE STATEDHE DID NOT HAVE A WEAPON; HOWEVER, HE CHOKED HER AT
ONE TIME. HE STOLE HER 1990, WHITE PONTIAC GRAND AM, 4D, LICENSE CBB42X. I
BOLOED THE SUSPECT INFORMATION TO ALL UNITS, AS WELL AS THE CORRECT
LICENSE PLATE. IT SHOULD BE NOTED THAT IN THE ORIGINAL TEXT OF THE CALL, WE
HAD BEEN GIVEN THE WRONG LICENSE PLATE BY ONE OF THE WITNESSES. THE
LICENSE PLATE WAS RUN AND IT CAME BACK TO MS WILHELM'S HUSBAND GARY. THE
VEHICLE WAS THEN ENTERED AS STOLEN INTONCIC, AS WELL AS TCIC. THE VICTIM,
SHERRYL WILHELM, STATED THAT SHE WORKED AT ARL MEMORIAL HOSPITAL IN
RADIOLOGY, DOING TRANSCRIPTIONS.  SHE STATED ON HER LUNCH BREAK, SHE
DECIDED SHE WOULD WALK OUT TO HER CAR AND JUST SIT IN HER CAR, JUST TO
RELAX FOR A WHILE. SHE LEFT THE HOSPITAL AND WENT TO THE NORTH PARKING
LOT, WHICH WAS ON THE NORTH SIDE OF 800 W RANDOL MILL, AND WALKED OUT TO
HER PONTIACGRAND AM. SHE STATED SHE WAS PARKED IN THE NORTH PARKING
LOT, NEAR THE NORTH END, BY THE DOCTOR OFFICES. SHE WENT TO OPEN HER CAR
DOOR AND SIT DOWN, AND JUST AS SHE WAS GETTING READY TO SIT, SHE WAS
PUSHED OVER BY THIS W/M, WHO TOLDHER TO MOVE OVER, "I WON'T HURT YOU. I
JUST NEED A RIDE TO FORT WORTH." SHE STATED HE PUSHED HER OVER INTO THE
PASSENGER SEAT, SHE CRAWLED OVER TOWARD THE PASSENGER SEAT, AND HE
GOT IN THE VEHICLE WITH HER. SHE BEGAN TO OFFER HIM MONEY AND TOLD HIM
SHE WOULD GIVE HIM MONEY FOR A CAB OR ANYTHING, BUT JUST LETHER GET OUT

Printed By                          Printed At
0743/STANTON,JOHN T                 11/27/2000 13:57      Page 2 of 3        00565

Nov-27-00 14:09   ARL PD 817 459 5323                                    P.04

## Incident Report
## Arlington, Texas Police Department

**DRAFT**

972380237   Supplement No ORIG

### Narrative

OF THE CAR. HE TOLD HER TO GET DOWN ON THE FLOOR AND WAS TRYING TO PUSH HER ONTO THE FLOORBOARD. SHE TOLD HIM SHE COULD NOT FIT IN THE FLOORBOARD AND COULDN'T GET DOWN THERE. IT WAS AT THIS TIME SHE TRIED TO OPEN THE PASSENGER DOOR AND GET OUT, BUT THE SUSPECT GRABBED HER WITH BOTH HANDS AND BEGAN CHOKING HER AROUND THE NECK. WILHELM STATED SHE THEN STOPPED TRYING TO GET OUT OF THE CAR AND HE SAID, "I WON'T HURT YOU. I JUST NEED TO GO TO FORT WORTH; MY MOTHER IS SICK." HE KEPT SAYING OVER AND OVER, "I WON'T HURT YOU. I WON'T HURT YOU. DON'T MAKE ME HURT YOU." HE STOPPED CHOKING HER AND STARTED DRIVING THE VEHICLE. HE HAD TOLD HER TO GET DOWN AND YELLED AT HER SEVERAL TIMES TO GET DOWN. SHE HAD HER HEAD DOWN BY HER KNEES, AND OCCASIONALLY WHEN SHE WOULD RAISE UP TO KIND OF LOOK TO SEE WHERE THEY WERE, HE WOULD CONTINUE TO YELL AT HER TO GET DOWN. SHE STATED SHE RAISED UP AFTER HE HAD BEEN DRIVING FOR A FEW MINUTES, AND SHE SAW THAT HE WAS ON THE WEST END OF RANDOL MILL, AND HE WAS APPROACHING THE FREEWAY. IT WAS AT THIS TIME SHE STATED SHE WAS IN FEAR FOR HER LIFE AND WAS AFRAID IF SHE DIDN'T GET OUT OF THE VEHICLE, SHE WOULD BE KILLED. AS HE WENT AROUND THE CORNER, TURNING RIGHT TO GO NORTHBOUND ON GREEN OAKS, SHE OPENED THE DOOR AND JUMPED OUT. THE SUSPECT CONTINUED DRIVING NORTHBOUND ON GREEN OAKS, AND ACCORDING TO WILHELM, AS SHE OPENED THE DOOR TO GET OUT, HE SPED UP. I ASKED HER APPROX HOW FAST HE MIGHT HAVE BEEN GOING AND SHE ESTIMATED THE SPEED BETWEEN 45-55 MPH WHEN SHE JUMPED OUT. I ASKED HER IF HE HAD SHOWN HER ANY WEAPONS OR THREATENED HER WITH ANY WEAPONS, AND SHE STATED HE DID NOT PRESENT ANY WEAPONS TO HER OR TELL HER THAT HE HAD ANY WEAPONS. SHE STATED THE ONLY TIME HE ASSAULTED HER WAS WHEN HE GRABBED HER AROUND THE NECK IN THE PARKING LOT AND BEGAN CHOKING HER WITH BOTH HANDS. IT SHOULD BE NOTED THAT WILHELM HAD SEVERAL ABRASIONS OVER HER BODY; HER FACE, HER HANDS, HER FEET, WHICH SHE SUSTAINED WHEN SHE JUMPED OUT OF THE VEHICLE. CRIME SCENE TECHNICIAN INGRAM, ID 1079, WAS ON SCENE AND TOOK PHOTOGRAPHS FOR THIS REPORT. DETECTIVE STANTON, ID 0743, WAS CONTACTED AND ARRIVED ON SCENE TO CONTINUE THIS INVESTIGATION. DETECTIVE STANTON, MYSELF, AND CRIME SCENE TECHNICIAN INGRAM, GATHERED OUR INFORMATION FOR THE REPORT, THEN WENT TO THE PARKING LOT ON THE NORTH SIDE OF THE HOSPITAL, WHERE THE VICTIM'S VEHICLE WAS EARLIER PARKED, AND LOOKED FOR EVIDENCE, BUT FOUND NONE. IT SHOULD BE NOTED THAT ACCORDING TO CO-WORKERS, THE VICTIM LEFT WORK AT APPROX 1130 HRS TO GO TO LUNCH, AND THE VICTIM STATED SHE JUST WALKED FROM THE HOSPITAL TO HER VEHICLE; THEREFORE, THE OFFENSE TIME WAS ESTIMATED TO BE BETWEEN 1130-1145 HRS. ONCE AGAIN, THE VICTIM FELT PAIN AND WAS WILLING TO PROSECUTE. THIS WILL BE LEFT OPEN FOR INVESTIGATION. THE AREA OF N GREEN OAKS AND THE NORTHERN PART OF ARL, WAS SEARCHED BY OFFICERS FOR THE VEHICLE; HOWEVER, THE VEHICLE WAS NOT LOCATED. ALSO NOTE THAT SURROUNDING AGENCIES, SUCH AS EULESS, GRAND PRAIRIE, AND FORT WORTH, WERE NOTIFIED OF THIS INCIDENT AND GIVEN THE VEHICLE DESCRIPTION. NO FURTHER. NORTH

00566

Nov-27-00 14:10   ARL PD 817 459 5323                                    P.05

# Incident Report
## Arlington, Texas Police Department

**DRAFT**

**972380237** Supplement No 0021

### Narrative

CONTINUATION: PLEASE ADD THE VIN #1G2NE54D7LC321980. THE PLATE IS CBB42X. THE VEHICLE IS A 1990 PONTIAC GRAND AM FOUR DOOR, WHITE IN COLOR, REGISTERED TOWILHELM, GARY, OUT OF GRAND PRAIRIE. NO FURTHER. BY OFFICER D NEESE ID 1559. TM/1344 NORTH SIDE.

Printed By
0743/STANTON,JOHN T

Printed At
11/27/2000 13:57

Page 2 of 2

00567

Nov-27-00 14:10   ARL PD 817 459 5323                              P.06

| Incident Report | DRAFT |
| Arlington, Texas Police Department | |
| | 972380237 | Supplement No 0022 |

## Narrative

082797 WICHITA FALLS PD SENT A TELETYPE ADVISING THEY HAD LOCATED THIS VEHICLE ABANDONED AT 4939 SEYMOUR HWY UNOCCUPIED, WITH THE KEYS IN IT, NO DAMAMGE. A DET STECCO IS HANDLING THE CASE AND THE PHONE NUMBER IS 940-761-7773. THE VEH HAS BEEN PROCESSED BY THEIR CRIME SCENE, CLEARED AND LOGGED IN THE BOOK. THIS OPERATOR NOTIFIED BOTH DET STANTON AND SGT HAWTHORNE. OPERATOR T JACK SENT THE TELETYPE CONFIRMATION. END OF REPORT/CHERRY/9118

Nov-27-00 14:11 ARL PD 817 459 5323 P.07

## Incident Report
## Arlington, Texas Police Department

**DRAFT**

| 972380237 | Supplement No 0023 |

### Narrative

VICTIM: WILHELM, SHERRYL DET. ASSIGNED: J.T. STANTON #743 OFFENSE: ROBBERY DATE ASSIGNED: 8-26-97 . I WAS ASSIGNED THIS CASE INVOLVING THE VICTIM BEING FORCED INTO HER CAR AND DRIVEN TO THE AREA OF GREEN OAKS BLVD AND RANDOL MILL ROAD, WHERE SHE JUMPED FROM HER OWN CAR, TO GET AWAY FROM THE SUSPECT. STANTON MET THE VICTIM AT THE AHM EMERGENCY ROOM, WHERE SHE DETAILED THE ROBBERY. THE VICTIM'S CAR DESCRIP- TION WAS BROADCAST TO THE AREA UNITS. THE CAR WAS LAST SEEN NORTHBOUND ON GREEN OAKS FROM RANDOL MILL. THE VICTIM HAD NUMEROUS LACERATIONS, BRUISES AND DEEP ABRASIONS. HER HIP WAS DEEPLY BRUISED BUT NOT APPARENTLY BROKEN. THE VICTIM DETAILED AND GAVE A VERBAL DESCRIPTION OF THE SUSPECT. STANTON CANVASSEDTHE AREA OF THE AMH PARKING LOT FOR POSSIBLE WITNESSES. THE LOCAL MEDIA RAN THESTORY AS THE LEED STORY OF THE DAY. AFTER SEVERAL DAYS, THE VICTIM CAME TO THE POLICE STATION AND GAVE A SKETCH OF THE SUSPECT. THE SKETCH WAS DISTRIBUTED TO THE LOCAL MEDIA AND THROUGH CRIME STOPPERS. THE VICTIM'S CAR WAS RECOVERED IN WICHITA FALLS AND WAS PROCESSED BY THEIR P.D. THE LATENT PRINT CARDS WERE MAILED TO DET. STANTON TO BE USED BY APD CRIME SCENE IN THE AFIS SYSTEM. NONE OF THE COLLECTED LATENTS WERE OF AFIS QUALITY HOWEVER. STANTON GOT ACRIME STOPPER LEAD ON A W/M SUBJECT NAMED HAROLD MCCLESKY, BUT A RECENT PHOTO OF MCCLESKY COULD NOT BE IDENTIFIED BY THE VICTIM. MR. MCCLESKY DID NOT LIVE IN THE AREA OF AMH EITHER. STANTON WAS CALLED BY THE VICTIM UPON HER GETTING HER CAR BACK AND SHE FOUND SOME ITEMS IN HER CAR THAT DID NOT BELONG TO HER. STANTON WENT TO THE VICTIM AND COLLECTED THESE ITEMS. ONE ITEM WAS A CASH RECEIPT FOR PAYMENT TO AN INSURANCE COMPANY IN WICHITA FALLS. THE RECEIPT HAD THE NAME MARGORIE ELLIS ON IT. STANTON CONTACTED THE INSURANCE COMPANY AND WAS GIVEN INFO ON THAT LADY. MS. ELLIS HAD BEEN THE VICTIM OF A PURSE SNATCH TYPE ROBBERY ON THE EVENING AFTER THIS VICTIM WAS ROBBED. UNFORTUNATELY MS. ELLIS COULD PROVIDE NO INFO ON THE YOUNG MAN WHO ROBBED HER SINCE SHE WAS NOT WEARINGHER GLASSES AT THE TIME AND THE SUSPECT HIT HER FROM BEHIND. THE COLLECTED ITEMS WERE BROUGHT BY STANTON TO THE CSSU AND THEY WERE ALL PROCESSED AS WELL. NO LATENTS OF ANY QUALITY WERE DEVELOPED. STANTON HAS HAD SOME CONTACTS WITH THIS VICTIM SINCE THE TIME OF HER ROBBERY. SHE WAS EXPLAINEDTHAT THE FINGERPRINT EVIDENCE WOULD NOT BE GOOD ENOUGH TO RUN IN AFIS AND THAT THE CRIME STOPPERS STORY WOULD BE RUN AGAIN. THERE HAVE BEEN NO ADDITIONAL LEADS DEVELOPE IN THIS CASE. THIS CASE WILL BE INACTIVATED AT THIS TIME PENDINGFURTHUR DEVELOPEMENTS. JTS #743 INA 12-17-97

Printed By
0743/STANTON, JOHN T

Printed At
11/27/2000 13:57

Page 2 of 2

00569

# CITY OF ARLINGTON POLICE DEPARTMENT
## PHOTO SPREAD



**#1**
DATE
INITIALS

**#2**
DATE
INITIALS

**#3**
DATE
INITIALS

**#4**
DATE
INITIALS

**#5**
DATE 11-3-2000
INITIALS S.W.

**#6**
DATE
INITIALS

SECTION CAPERS

OFFICER John T Shelton # 743

OFFENSE Robbery

TIME PHOTO SPREAD SHOWN 1205 hrs

DATE PHOTO SPREAD SHOWN 11-3-2000

LOCATION PHOTO SPREAD SHOWN 3610 S. Elm Grand Prairie

VIEWED BY Sherry Wilhelm

DATE OF OFFENSE 8-26-1997

REPORT # 972387337



00570

Dec 01 00 01:51p    Wichita Falls PD        (940)761-7797        P.3

WICHITA  FALLS  POLICE  DEPARTMENT
Crime Report
610 Holliday St, Wichita Falls, TX 76301
Reported Date: 08/26/97  Time: 20:24        Case: 97-082405        Page: 1
Code: 29.03 PC          Crime: AGG ROBBERY      Class: 030410
Occurrence Date: 08/26/97-      Day: TUESDAY  -          Time: 20:15-20:22
Status: AF  ACTIV FELONY          Closing Officer:
Location: 2304 KEMP BL., WF                      RD: 6143
AGG ROBBERY OF AN INDIVIDUAL
============================ INVOLVED PERSONS ============================
VICTIM-1:    ELLIS MARGIE              DOB: 01/10/28  Race: W  Sex: F
    3010 BARRYWOOD DR., WF
    Apt:      State: TX  Zip: 76310    Phone:              Adu/Juv: A
    POB:                Hair: GRY  Eye: GRY  Hgt: 505  Wgt: 170    Bld:
Business Name:                                    Phone:


    ----------------------------------------------------------
WITNESS-1:    OZUNA FELIX TREVINO        DOB: 11/23/43  Race: W  Sex: M
    1613 HAYES ST., WF
    Apt:      State: TX  Zip: 76309    Phone: 940 322-5334  Adu/Juv: A
    POB:                Hair: GRY  Eye: BRO  Hgt: 506  Wgt: 180    Bld:
Business Name: JUV PROB OFFICER
                                                  Phone:
    WICHITA FALL,TX

======================= SUSPECTS/ARRESTS ========================
SUSPECT-1:    AUG 97-082405              DOB:              Race: H  Sex: M

    Apt:      State:    Zip:          Phone:              Adu/Juv: A
    POB:                Hair: BRO  Eye:      Hgt: 510  Wgt: 170    Bld:
Business Name:                                    Phone:


    Driver License:              Social Security:
    CII:        FBI:            Booking Number:
==================== CRIME ANALYSIS ELEMENTS =========================
    Age: 30-40   Hair Length: SHORT    Hair Type: THICK
    Hair Style: BUSHY, WAVY   Complexion: LIGHT/FAIR    Pants: BLU
    Shirt: PLAID L/S

======================= PROPERTY ========================
Item Number: 0001  Evid/Cust: N   Property Type: S  Cat: P  Article: PURSE
Brand:        Model:          Serial:            Group Serial:
Descr: BLU CANVAS PURSE W/FLOWER PATTERN        Qty:        1  Value:

Item Number: 0002  Evid/Cust: N   Property Type: S  Cat: J  Article: J MISC
Brand: DIA    Model:          Serial:            Group Serial:
Descr: ASST DIAMOND JEWELRY                  Qty:        6  Value:

Item Number: 0003  Evid/Cust: N   Property Type: S  Cat: P  Article: BILLFO
Brand:        Model:          Serial:            Group Serial:
Descr: BLK NYLON CASE W/SS CARD/CREDIT CARDS    Qty:        1  Value:


        S t a n d a r d  T r a i l e r  -  F i r s t  P a g e

Reporting Officer: FOLMAR KEVIN    Number: 000564  Date: 08/26/97  Time: 20:24
        Typed by: ALLENJ          Number: 839    Date: 08/27/97  Time: 09:43
Approving Officer: BORREGO MANUE  Number: 000002  Date: 09/10/97  Time: 13:47

Dec 01 00 01:51p     Wichita Falls PD          (940)761-7797          p.4

```
         C R I M E   R E P O R T   C O N T I N U A T I O N
                   WICHITA  FALLS  POLICE  DEPARTMENT
Reported Date: 08/26/97  Time: 20:24        Case: 97-082405    Page: 2
Code: 29.03 PC       Crime: AGG ROBBERY      Class: 030410


Item Number: 0004   Evid/Cust: N   Property Type: S  Cat: D  Article: CHECK
Brand:        Model:         Serial:               Group Serial:
Descr: CHECKBOOKS (2 SEPERATE ACCTS)             Qty:      2  Value:

Item Number: 0005   Evid/Cust: N   Property Type: S  Cat: D  Article: CHECK
Brand:        Model:         Serial:               Group Serial:
Descr: CHECK IN VICTIM'S NAME                    Qty:       Value:

Item Number: 0006   Evid/Cust: N   Property Type: S  Cat: E  Article: KEY
Brand:        Model:         Serial:               Group Serial:
Descr: KEYS                                      Qty:       Value:

===================== PROPERTY SUMMARY =======================================
Clearance:
                            STOLEN          RECOVERED
      DESCRIPTION           QTY   VALUE     QTY    VALUE
  Currency, Notes, etc.:     1      3
  Jewelry and Precious Metals: 6    6
  Clothing and Furs:         2      2
  Miscellaneous:             1      1
              Totals:       10     12        0       0

===================== MO FACTORS =============================================
Place: BEAT 6   Area: SHOP/CENTER   Structure: FAST FOOD
Target: ELDERLY (65 +)  Actions: PURSE SNATCH, SELECTIVE IN LOOT
Evidence: NONE

===================== NARRATIVE ==============================================
STOLEN: $3.00 CASH

TYPED BY J ALLEN
```

```
      S t a n d a r d   T r a i l e r  -  C o n t i n u a t i o n

Reporting Officer: FOLMAR KEVIN    Number: 000564  Date: 08/26/97  Time: 20:24
       Typed by: ALLENJ           Number: 839      Date: 08/27/97  Time: 09:43
Approving Officer: BORREGO MANUE   Number: 000002  Date: 09/10/97  Time: 13:47
```

00572

Dec 01 00 01:51p     Wichita Falls PD     (940)761-7797     P.5

WICHITA FALLS POLICE DEPARTMENT
Crime Report
610 Holliday St, Wichita Falls, TX  76301
Reported Date: 08/26/97  Time: 20:24          Case: 97-082405       Page: 1
Code: 29.03 PC         Crime: AGG ROBBERY     Class:
Occurrence Date: 08/26/97-        Day: TUESDAY         Time: 20:15-20:22
Status: AF  ACTIV FELONY                  Closing Officer: 000651 COOK KYLE
Location: 2304 KEMP BL., WF                               RD: 6143
        AGG ROBBERY OF AN INDIVIDUAL
========================== NARRATIVE ===========================================

I WAS ASSIGNED THIS CASE ON 08-27-97 TO INVESTIGATE THE OFFENSE OF ROBBERY
AS REPORTED BY THE COMPLAINANT, MARGIE ELLIS.

ON 08-26-97 AT APPROX. 2024 HRS., OFFICERS WERE DISPATCHED TO 2304 KEMP
(BRAUMS) IN REFERENCE TO A ROBBERY. UPON THEIR ARRIVAL THEY SPOKE WITH THE
VICTIM, ELLIS. SHE STATED A LIGHT SKINNED HISPANIC MALE OR A WHITE MALE
HAD ROBBED HER. SHE STATED THAT SHE WAS WALKING TO HER VEHICLE IN THE
PARKING LOT OF BRAUMS. SHE STATED SHE FIRST NOTICED THE SUSPECT WALKING BY
HER VEHICLE. SHE STATED AS SHE CONTINUED TO HER VEHICLE THE SUSPECT
APPROACHED HER. SHE STATED SHE THEN MOVED HER PURSE STRAP UP ONTO HER
SHOULDER AND GRABBED A HOLD OF HER PURSE WITH BOTH HANDS IN FEAR THE
SUBJECT SHE HAD SEEN WAS GOING TO TAKE HER PURSE. SHE STATED THE SUSPECT
THEN RAN UP TO HER AND GRABBED HER PURSE. SHE STATED SHE STRUGGLED WITH
THE SUSPECT. SHE STATED THE SUSPECT JERKED THE PURSE AWAY FROM HER CAUSING
HER TO FALL. SHE STATED THE SUSPECT SAID NOTHING TO HER AND SHE SAW NO
WEAPONS. SHE STATED SHE DID NOT GET A GOOD LOOK AT HER ATTACKER DUE TO
HAVING BAD EYE SIGHT.

A SUBJECT BY THE NAME OF FELIX OZUNA TOLD OFFICERS THAT HE SAW THE SUSPECT
RUN FROM THE AREA AND GAVE CHASE. HE STATED HE LOST SIGHT OF HIM IN AN
ALLEY ON TILDEN.

ON 08-27-97 AT APPROX. 0955 HRS., OFFICERS WERE DISPATCHED TO 5000 BLK OF
SEYMOUR HWY ON A REPORT OF A SUSPICIOUS VEHICLE. A CHECK OF THE VEHICLE
REVEALED IT HAD BEEN TAKEN IN A CAR JACKING OUT OF ARLINGTON, TX ON
08-26-97. SEVERAL ITEMS OF IDENTIFICATION WERE FOUND ON THE GROUND BY THE
VEHICLE. THE IDENTIFICATION WAS IN THE NAME OF MARGIE ELLIS. DETECTIVE
RUTLEDGE AND I RESPONDED TO THIS LOCATION. THERE WE MET OFFICER BOND AND
I.D. TECH CALLAHAN. BOND ADVISED US OF THE SITUATION. CALLAHAN COLLECTED
THE FOUND PROPERTY. THE VEHICLE WAS IMPOUNDED AND PROCESSED. NO AFIS
QUALITY PRINTS WERE DEVELOPED.

I THEN SPOKE WITH DETECTIVE JOHN STANTON OF THE ARLINGTON PD. HE STATED
THE VEHICLE WAS TAKEN ON 08-26-97 AT APPROX. 1130 HRS. HE STATED THE OWNER
OF THE VEHICLE WAS ABDUCTED DURING THE JACKING. HE STATED HIS VICTIM WAS
ABLE TO JUMP FROM THE VEHICLE CAUSING HER SERIOUS INJURY. HE STATED SHE
DESCRIBED THE SUSPECT AS A MALE SUBJECT WITH OLIVE COLORED SKIN. TALL AND
THIN.

I THEN HAD DISPATCH BROADCAST A COS IN REFERENCE TO THE ROBBERY AND CAR
JACKING.

AT APPROX 2000 HRS SAME DATE, I WAS CALLED TO THE POLICE STATION IN
REFERENCE TO A POSSIBLE SUSPECT IN THE ABOVE OFFENSES BEING DETAINED. UPON
MY ARRIVAL AT THE STATION I MET WITH LT. ARNOLD AND SGT. YONTS. YONTS TOLD
          S t a n d a r d   T r a i l e r  -  F i r s t   P a g e

Reporting Officer: COOK KYLE      Number: 000651  Date: 09/30/97  Time: 11:03
      Typed by: COOKK            Number: 651     Date: 09/30/97  Time: 11:04
Approving Officer: ARNOLD LAURA   Number: 000321  Date: 10/14/97  Time: 15:08

00573

Dec 01 00 01:52p     Wichita Falls PD        (940)761-7797         p.6

C R I M E   R E P O R T   C O N T I N U A T I O N
WICHITA FALLS POLICE DEPARTMENT
Reported Date: 08/26/97  Time: 20:24          Case: 97-082405      Page: 2
Code: 29.03 PC           Crime: AGG ROBBERY   Class:

ME THAT OFFICERS WERE SENT ON KARLA STREET IN REFERENCE TO A SUSPICIOUS
PERSON IN THE AREA. UPON THEIR ARRIVAL THEY HAD A WHITE MALE RUN AND HIDE
FROM THEM. AFTER SEVERAL MINUTES OF SEARCHING THEY FOUND THIS SUBJECT IN A
RESIDENCE LOCATED AT 4706 KARLA. HE WAS IDENTIFIED AS JOHN EGBERT WARREN.
HE STATED THAT HE HAD JUST MOVED BACK HERE FROM THE IRVING, TX. DUE TO
THIS STATEMENT AND THE FACT HE HAD RAN AND TRIED TO HIDE FROM THE POLICE,
OFFICERS FELT HE WAS POSSIBLY INVOLVED IN THE ABOVE ROBBERY AND  CAR
JACKING. WARREN THEN AGREED TO GO TO THE POLICE STATION AND TALK WITH
DETECTIVES.

WARRAN GAVE A TAPED STATEMENT TO MYSELF. HE DENIED ANY KNOWLEDGE OF THE
ROBBERY OR CAR JACKING. HE DID CONSENT TO HIS FINGER, PALM PRINTS AND
PERSONAL PHOTOGRAPHS TO BE TAKEN. DETECTIVE PURSLEY TOOK WARREN'S PRINTS.
WARREN WAS THEN TRANSPORTED BACK TO HIS RESIDENCE BY MYSELF. PURSLEY THEN
COMPARED WARREN'S PRINTS TO SOME PALM PRINTS RECOVERED FROM THE STOLEN
VEHICLE. NO MATCH WAS MADE.

ON 08-27-97 MS. ELLIS CONTACTED ME AND INFORMED ME THAT HER PURSE HAD BEEN
FOUND BY A JULIE GAYNOR ON MINNETASKA AVENUE.SHE STATED HER KEYS AND BOTH
CHECKBOOKS WERE FOUND TO STILL BE IN THE PURSE. SHE STATED THE ONLY THINGS
 FOUND TO BE MISSING ARE HER JEWELRY, A SMALL AMOUNT OF MONEY, HER CREDIT
CARDS AND I.D., AND HER MEDICAL CARDS AND PAPERS. IT SHOULD BE NOTED THAT
HER CREDIT CARDS AND MEDICAL PAPERS WERE FOUND ON SEYMOUR HWY BY THE
STOLEN VEHICLE. THE ONLY THING THAT WAS NOT RECOVERED WAS THE JEWELRY.

ON 08-28-97 I MET WITH MS. ELLIS. SHE STATED SHE WAS STILL SORE FROM THE
FALL. SHE THEN GAVE ME A DESCRIPTION OF THE JEWELRY THAT WAS STOLEN. I
THEN GAVE A COPY OF THE LIST TO DETECTIVE FARRIS WHO WORKS THE PAWN
DETAIL. ELLIS AGAIN DESCRIBED THE SUSPECT TO ME. HER DESCRIPTION MATCHED
THAT OF THE DESCRIPTION GIVEN TO ME BY OFFICER STANTON OUT OF ARLINGTON.

I THEN SPOKE WITH JULIE GAYNOR WHO WAS THE PERSON THAT FOUND THE PURSE.
SHE STATED SHE FOUND THE PURSE IN THE STREET BY THE CURB IN FRONT OF HER
HOUSE. SHE STATED SHE DID NOT OR HAS NOT SEEN ANY SUSPICIOUS PERSONS IN
THE AREA.

THERE HAS BEEN NO NEW LEADS IN THIS CASE. SPEAKING WITH DETECTIVE STANTON
IN ARLINGTON, HE ADVISED THERE HAS BEEN NO NEW LEADS IN HIS CASE. IT IS MY
OPINION THAT THE PERSON THAT JACKED THE CAR IN ARLINGTON MAY HAVE BEEN
JUST TRAVELLING THROUGH WICHITA FALLS AND COMMITED THIS ROBBERY FOR
TRAVELLING MONEY. AS FOR THE VEHICLE BEING RECOVERED HERE THERE WAS A
LARGE PATCH OF OIL ON THE ROADWAY INDICATING THE VEHICLE MAY HAVE QUIT ON
HIM.

DUE TO NO VIABLE LEADS TO FURTHER THIS CASE, I RECOMMEND IT TO BE CLOSED
BY EXCEPTION.

END OF REPORT.

KYLE COOK #651

S t a n d a r d   T r a i l e r  -  C o n t i n u a t i o n

Reporting Officer: COOK KYLE      Number: 000651  Date: 09/30/97  Time: 11:03
       Typed by: COOKK            Number: 651     Date: 09/30/97  Time: 11:04
Approving Officer: ARNOLD LAURA   Number: C00321  Date: 10/14/97  Time: 15:08

00574

PROSECUTION REPORT

KAUFMAN COUNTY SHERIFF'S DEPARTMENT

MURPHY, JEDIDIAH W/M 9-1-75
DEFENDANT

240-031-99
CASE NUMBER

EVADING ARREST OR DETENTION W/MOTOR VEHICLE
OFFENSE

MISDEMEANOR A
DEGREE OF OFFENSE



SGT. II TIMMY MOORE #3454
CASE PREPARED BY:

APPROVED BY C.I.D. CAPTAIN:

AUG 31 1999

00575

CHRONOLOGY OF EVENTS

THURSDAY, MAY 13, 1999, APPROXIMATELY 2151 HOURS, KAUFMAN COUNTY SHERIFF'S DEPARTMENT DEPUTY JERRY WOOD AND DEPUTY HAL TIMM WERE DISPATCHED TO THE FAITH BAPTIST CHURCH, IN REFERENCE TO A POSSIBLE ATTEMPTED SUICIDE. WHILE ENROUTE, THE DISPATCHER ADVISED THAT THE SUSPECT WAS TRAVELING WEST BOUND ON HIGHWAY 243 IN A MAROON CHEVROLET 4X4 PICKUP. DEPUTY WOOD AND DEPUTY TIMM SET UP AT PAT'S COUNTRY STOP ON HIGHWAY 243 AND FARM TO MARKET ROAD 2727 TO ATTEMPT TO LOCATE THE SUSPECT VEHICLE.

THURSDAY, MAY 13, 1999, APPROXIMATELY 2200 HOURS, DEPUTY WOOD AND DEPUTY TIMM OBSERVED A VEHICLE MATCHING THAT DESCRIPTION TRAVELING WEST BOUND ON HIGHWAY 243. DEPUTY WOOD PULLED BEHIND THE VEHICLE AND ACTIVATED HIS EMERGENCY LIGHTS, AT WHICH TIME THE VEHICLE PROCEEDED TO TRAVEL NORTH BOUND ON FARM TO MARKET ROAD 2727. DEPUTY WOOD THEN ACTIVATED HIS EMERGENCY SIREN IN AN ATTEMPT TO STOP THE VEHICLE. THE SUSPECT CONTINUED TRAVELING NORTH BOUND ON FARM TO MARKET ROAD 2727 AT A SPEED OF APPROXIMATELY 45 MILES PER HOUR. THE VEHICLE TRAVELED APPROXIMATELY TWO TO THREE MILES BEFORE STOPPING IN FRONT OF THE 3343 FARM TO MARKET ROAD 2727. DEPUTY WOOD THEN ADVISED THE SUSPECT TO EXIT THE VEHICLE, AT WHICH TIME DEPUTY WOOD PLACED THE SUSPECT, IDENTIFIED AS JEDIDIAH ISAAC MURPHY (W/M DOB 090175), INTO CUSTODY. A COMPUTER CHECK ON MURPHY INDICATED HIS DRIVERS LICENSE TO BE SUSPENDED. DEPUTY TIMM THEN PLACED MURPHY INTO DEPUTY WOOD'S PATROL VEHICLE AND READ HIM HIS MIRANDA WARNING. MURPHY THEN ADVISED THAT HE WANTED TO KILL HIMSELF, AND HE WOULD KILL HIMSELF WHEN HE WAS RELEASED FROM JAIL. MURPHY WAS THEN TRANSPORTED TO THE KAUFMAN COUNTY LAW ENFORCEMENT CENTER FOR THE OFFENSES OF DRIVING WHILE LICENSE SUSPENDED AND EVADING ARREST.

FRIDAY, MAY 14, 1999, APPROXIMATELY 0931 HOURS, MURPHY WAS READ HIS WARNING OF RIGHTS BY JUDGE JAMES C. WILLIAMS, AND BOND WAS SET IN THE AMOUNT OF $1,000.00 FOR THE OFFENSE OF DRIVING WHILE LICENSE SUSPENDED AND $1,000.00 FOR THE OFFENSE OF EVADING ARREST.

FRIDAY, MAY 14, 1999, MURPHY WAS RELEASED FROM CUSTODY, AFTER POSTING THE REQUIRED BONDS.

SHERIFF'S OFFICE
KAUFMAN COUNTY    KAUFMAN, TEXAS

T. MOORE
240-031 -
330-041 -

MARITAL STATUS: S

ARREST REPORT

K.S.O. NO. _____    CASE NO. _____

BOOKING NO. _____

| Name of Person Arrested | Alias | Date |
|---|---|---|
| MURPHY, JEDIDIAH ISAAC | JIM | 5-13-99 |

| Address of Suspect | | Time |
|---|---|---|
| 6305 Fm 429 | Kaufman | 2250 Hrs. |

| In Case of Emergency Notify: | Address | Phone |
|---|---|---|
| ABBOTT, HOPE | 6305 Fm 429 Kaufman | 962-7443 |

| Social Security No. | Driver's Lic. Information | Type | Expires |
|---|---|---|---|
| 456/71/2616 | State TX  12468174 | C-A | 2001 |

| Age | Race | Sex | Hair | Eyes | Ht | Wt. | DOB | POB | Tatooes |
|---|---|---|---|---|---|---|---|---|---|
| W | m | BRN | BRN | | 142 | 9-1-75 | | |

| Occupation | Where Arrested |
|---|---|
| METAL TEK - FOREMAN | Hwy 2727 |

| Offense Suspected or Charged | Where Offense Commited |
|---|---|
| DRIVING WHILE LICENSE SUSPENDED | FAITH BAPTIST CHURCH - Hwy 243 @ Fm 429 |

| Date Offense Committed | Time | Type Premises |
|---|---|---|
| | | ROADWAY |

| How Arrest Made | Check All Items Which Apply |
|---|---|
| On View     Call     Warrant | No Drunk  Yes Drinking  No Cursed |
| EVADING ARREST OF DETENTION W/ VEHICLE | Other Persons Arrested for Same   No. |
| | No.   4 |

| Vehicle Impounded: | Make | Model | License | Year |
|---|---|---|---|---|
| | -N/A- | | -N/A- | |

| Name of Complainant | Relation to Suspect | Bus. Phone |
|---|---|---|
| STATE OF TEXAS | -N/A- | Res. Phone |

Give Complete Details as to What You Saw and What You Were Told about Suspect
Which Prompted Arrest: THURSDAY, MAY 13, 1999, AT APPROXIMATELY 2151 HRS.

I, J.WOOD #3346 AND H. TIMM #3348, WAS DISPATCHED TO THE FAITH BAPTIST

CHURCH IN REFERENCE TO A POSSIBLE ATTEMPTED SUICIDE. WHILE IN ROUTE DISPATCH

ADVISED THAT THE SUSPECT (LATER IDENTIFIED AS MURPHY, JEDEDIAH I. W/m 9-1-75) WAS

TRAVELING W/B ON Hwy 243 IN A MAROON CHEVROLET 4X4 PICKUP. I, J.WOOD #3346

AND HATIMM #3345, THEN SET UP AT PAT'S COUNTRY STOP AT Hwy 243 @ Fm 2727 TO

| Witness | Address | Res. Phone | Bus. Phone |
|---|---|---|---|
| | | | |

| Witness | Address | Res. Phone | Bus. Phone |
|---|---|---|---|
| 4 | a | a | a |

Results of Investigation    ARREST

| Arresting Officers | Report made by: | Final Disposition |
|---|---|---|
| J.WOOD 3346 | J.WOOD #3346 | KCLEC    00577 |

## DETAILS (CONT'D)

ATTEMPT TO LOCATE THE SUSPECT VEHICLE. AT APPROXIMATELY 2200HRS, OFFICERS OBSERVED A VEHICLE MATCHING THAT DESCRIPTION TRAVELING W/B HWY 243. I, J.WOOD #3346, PULLED IN BEHIND THE VEHICLE AND ACTIVATED MY EMERGENCY LIGHT AT WHICH TIME THE VEHICLE PROCEEDED TO TRAVEL N/B ON FM 2727. I, J.WOOD #3346, THEN ACTIVATED MY EMERGENCY SIREN

| S.O. CHARGES | | ARRESTING AGENCY CHARGES | | | OTHER AGENCY HOLD | | |
|---|---|---|---|---|---|---|---|
| CHARGE | BOND | CHARGE | BOND | FINE | AGENCY | CHARGE | BOND |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## ☑ BOOK-IN PROCEDURES CHECK LIST

☐ 1. JAILER WILL CHECK ARREST REPORT AND MAKE SURE ALL PERTINENT INFORMATION IS INCLUDED PRIOR TO DEPARTURE OF ARRESTING OFFICER.

☐ 2. REMOVE ALL PROPERTY FROM INMATE & PLACE ALL PROPERTY IN RED PROPERTY BAG (WATCH, NECKLACE, RINGS, KEY, ETC.)

☐ 3. PLACE OFFENSE NUMBER & S.O. NUMBER ON THE ARREST REPORT AND INDEX CARD.

☐ 4. BOOK-IN INMATE ON COMPUTER FILLING IN ALL SPACES WHERE APPLICABLE.

☐ 5. MAKE OUT INMATE BANK SHEET ON INMATE SHOWING AMOUNT OF CURRENCY AND COINS RECEIVED FROM INMATE.

☐ 6. PHOTO INMATE.

☐ 7. FINGERPRINT INMATE.

☐ 8. HAVE INMATE USE THE TELEPHONE LOCATED IN BOOK-IN. FILL OUT INMATE TELEPHONE LOG SHOWING INMATE'S NAME & NUMBER CALLED. IF INMATE DOES NOT WANT TO MAKE A CALL OR REFUSES, MAKE NOTATION ON LOG. (INMATE IS TO BE GIVEN (2) CALLS WITHIN NEVER MORE THAN (4) HOURS AFTER BEING BOOKED IN TO L.E.C.) \

☐ 9. PLACE INMATE IN HOLDING OR DETOX CELL, REMOVING ALL BELTS, NECKERCHIEFS, HANDERCHIEFS, NECKLACES, JEWELRY, SHOES, MATCHES OR LIGHTERS, ETC.

☐ 10. PLACE OFFENSE NUMBER IN THE UPPER RIGHT HAND CORNER OF EACH SHEET OF PAPERWORK, S.O. OR PHOTO NUMBER IN UPPER LEFT HAND CORNER.

☐ 11. MAKE OUT MANILA FOLDER FOR INMATE. PRINT LAST NAME FIRST, FIRST NAME SECOND, MIDDLE NAME LAST ON LEFT CORNER OF MANILA FOLDER. PLACE OFFENSE NUMBER IN CENTER OF FOLDER. PLACE S.O. OR PHOTO NUMBER IN RIGHT CORNER.

☐ 12. PLACE ALL PAPERWORK IN MANILA JACKET. IF AN INMATE HOLD EXISTS, STAPLE YELLOW INMATE HOLD SHEET TO FRONT OUTSIDE OF MANILA FOLDER.

☐ 13. FLOOR JAILER WILL THEN PRESENT THE CONTROLLER WITH ARREST INDEX CARD AND INMATE MANILA FOLDER AT WHICH TIME THE CONTROLLER WILL FILE IMMEDIATELY BOTH ARREST CARD & FOLDER IN THE APPROPRIATE FILE.

☐ 14. BOOK-IN JAILER WILL PRINT THE INMATE'S LAST NAME AND FIRST INITIAL OF HIS/HER FIRST NAME IN THE APPROPRIATE CELL SPACE ON ALL THREE FLOOR PLAN MAPS.

NOTE: FEMALE INMATES WILL BE BOOKED IN BY A FEMALE JAILER.

JAILER INITIALS_____

SRS BUS SVCS

00578

**SUPPLEMENTARY REPORT**

M-B / M-A

240-631 -S
330-041 -S

Classification

NO. _____                                                    NO. _____

Name of Complainant                          Address                          Phone No.

STATE OF TEXAS

Offense

D.W.L.S. AND EVADING ARREST OR DETENTION W/ VEHICLE

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:
(Investigating Officer must sign)

Page No. ___2___                                          Date MAY 13       19___

IN AN ATTEMPT TO STOP THE VEHICLE, THE SUSPECT CONTINUED TRAVELING
N/B ON FM 2727 AT A SPEED OF APPROXIMATELY 45 MPH FOR APPROXIMATE
TWO (2) TO THREE (3) MILES BEFORE STOPPING IN FRONT OF THE ADDRESS
OF 3343 FM 2727. I, J. WOOD #3346, THEN INSTRUCTED THE SUSPECT TO
EXIT THE VEHICLE AND THEN PLACE HIM INTO CUSTODY. KAUFMAN POLICE
OFFICER D. CARRIER #9112, THEN CLEARED THE VEHICLE. MURPHY WAS
IDENTIFIED BY HIS TEXAS DRIVER LICENSE #12468174, WHICH A SUBSEQUE
OMPUTER SEARCH SHOWED TO BE SUSPENDED. H. TIMM #3346, PLACED
MURPHY INTO MY SQUAD CAR AND READ MURPHY HIS MIRANDA WARNIN
AT WHICH TIME MURPHY ADVISED THAT HE WANTED TO KILL HIMSELF AND THI
HE WOULD KILL HIMSELF WHEN HE WAS RELEASED FROM JAIL. MURPHY'S VEHI
WAS RELEASED TO THE VEHICLES OWNER RANDY CROW (932-6628), MURPHY
WAS TRANSPORTED TO KCLEC AND BOOKED IN FOR D.W.L.S. AND EVADING ARREST
OR DETENTION W/ VEHICLE. WITHOUT INCIDENT. MADE CONTACT WITH MURPHY'S
MOTHER ABBOTT, HOPE WHO ADVISED THAT SHE WAS GOING TO ATTEMPT TO HAVE
MURPHY COMMITTED INTO A HOSPITAL FOR HIS PROBLEMS AS SOON AS POSSIBLE

25 INVESTIGATING OFFICER(S)  J. WOOD #3346        26 REPORT MADE BY  J. WOOD #3346    DATE 5-13-5

27 CASE FILED              28 THIS CASE IS                  Active ☐  29 APPROVED BY
Yes ☐    No ☐        Cleared by arrest ☐   Unfounded ☐   Inactive ☐   Other ☐                  00579

**SUPPLEMENTARY REPORT**

240-031
330-041

M-A / M-B

NO. _____    Classification    NO. _____

Name of Complainant          Address                Phone No.
State of Texas

Offense
Driving while license suspended + Evading Arrest

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:
(Investigating Officer must sign)

Page No. _____1_____          Date    5-13    199

On Thursday 5-13-99 at approximately 2151 hrs., I Deputy Hal Timm 3349 set up on a maroon truck traveling westbound on Hwy 243. Dispatched advised that the male subject was threating to commit suicide. I Deputy Hal Timm 3349 and Deputy Jerry Wood 3346 waited at Pat's Country stop located at Hwy 243 and Fm 2727. I Deputy Hal Timm 3349 observed a maroon truck traveling westbound on Hwy 243, I Deputy Hal Timm 3349 Deputy Jerry Woods 3346 pulled behind the vehicle Deputy Jerry Wood 3346 turned his emergency lights and sirens, Deputy Jerry Wood 3346 was behind the vehicle and the vehicle then turned North on Fm 2727. The vehicle continued Northbound on Fm 2727 for approximately two miles, traveling at speeds of approximately Forty Five miles an Hour. The vehicle pulled off the side of the road and stopped in front of 3343 Fm 2727. Deputy Jerry Wood 3346 instructed the driver of the vehicle to exit the vehicle, Deputy Jerry Wood 3346 then placed the driver into protective custody. I Deputy Hal Timm 3349 read the driver his Miranda warnings, the driver then Identified himself as Murphey, Jedidiah (w/m 9-1-75) Murphey stated that he wanted to kill himself, and Murphey also stated that he would kill himself as soon as he got out of jail. Deputy Jerry Wood 3346 placed Murphey under arrest for Driving while license suspended. Deputy Jerry Wood 3346 transported Murphey to the Kaufman County Jail

25 INVESTIGATING OFFICER(S) _____    26 REPORT MADE BY  Deputy Hal Timm 3349  DATE 5-13-9

27 CASE FILED          28 THIS CASE IS                              Active ☐  29 APPROVED BY
Yes ☐  No ☐   | Cleared by arrest ☐  Unfounded ☐  Inactive ☐  Other ☐ |    00580

PROBABLE C SE FORM FOR MAGISTRATES WAR  G

NAME OF PERSON ARRESTED: _MURRAY_____, _JEDIDIAH_  _ISAAC_
                                  Last          First      Middle

DATE ARRESTED: _5__  _13__  _99__
                  Mo.    Day    Yr

PRIMARY CHARGES:

1. _D.W.L.S._____   _M-B_____   _KSO_____
         Charge          Classification of Offense    Charging Ofc.
   PROBABLE CAUSE SUMMARY:

   SUBJECT WAS FOUND OPERATING A MOTOR VEHICLE WITH A SUSPENDED DRIVERS LICENSE

2. _EVADING ARREST W/ VEHICLE_   _M-A_____   _KSO_____
         Charge          Classification of Offense    Charging Ofc.
   PROBABLE CAUSE SUMMARY:

   SUBJECT WAS OBSERVED OPERATING A MOTOR VEHICLE AND ATTEMPTS TO STOP THE VEHICLE WAS MADE, BUT SUBJECT REFUSED TO STOP

3. _____   _____   _____
         Charge          Classification of Offense    Charging Ofc.
   PROBABLE CAUSE SUMMARY:

SUBSEQUENT CHARGES:

1. _____   _____   _____
         Charge          Classification of Offense    Charging Ofc.
   PROBABLE CAUSE SUMMARY:

2. _____   _____   _____
         Charge          Classification of Offense    Charging Ofc.
   PROBABLE CAUSE SUMMARY:

3. _____   _____   _____
         Charge          Classification of Offense    Charging Ofc.
   PROBABLE CAUSE SUMMARY:

00581

F00-02424-M

FILED

200_ JAN 20 AM 9:30

JIM HAMLIN
DIST CLERK
DALLAS CO. TEXAS
DEPUTY

| THE STATE OF TEXAS | | IN THE 194TH JUDICIAL |
| --- | --- | --- |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

### NOTICE OF FILING OF BUSINESS RECORDS PURSUANT TO RULE 902 (10)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through its Assistant District Attorney, Gregory

S. Davis, and files this its Notice of Filing of Business Records Pursuant to Rule 902 (10), Rules of

Criminal Evidence, and respectfully shows unto the Court the following:

I.

The State hereby files self-authenticated business records from the following persons or

entities more than fourteen (14) days prior to the commencement of trial:

1. Doctors Hospital of New Boston.
2. Addison - Harrington.

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

00582

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 29th day of January, 2001.

GREGORY S. DAVIS

F00-02424-M

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
|---|---|---|
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT

STATE OF TEXAS                   §

COUNTY OF *Bowie*                §
                                 §

BEFORE ME, the undersigned authority, on this day personally appeared
*Virginia White*, who being by me duly sworn, deposed as follows:

"My name is *Virginia White*, I am of sound mind, capable of making this

affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of Doctors Hospital. Attached hereto are *5* pages of

records from Doctors Hospital. These said *5* pages of records are kept by Doctors Hospital in

the regular course of business, and it was the regular course of business of Doctors Hospital for an

employee or representative of Doctors Hospital with knowledge of the act, event, condition, opinion,

or diagnosis recorded to make the record or to transmit information thereof to be included in such

record; and the record was made at or near the time or reasonably soon thereafter. The records

attached hereto are the original or exact duplicates of the original."

BUSINESS RECORDS AFFIDAVIT - Page 1

00584

_Virginia White_
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this 24th day of _January_, 2000, to certify which witness my hand and seal of office.

_Gayla Hooper_
Notary Public in and for

_Bowie_ County, _Texas_

GAYLA HOOPER
MY COMMISSION EXPIRES
July 19, 2003

My Commission Expires:
_July 19, 2003_

BUSINESS RECORDS AFFIDAVIT - Page 2

00585

DOCTORS HOSPITAL

ALL BLANKS MUST BE FILLED IN. USE N/A IF NOT APPLICABLE. ALL ORIGINAL REPORTS MUST BE ATTACHED.

EMERGENCY
ROOM RECORD

☐ BLUE CROSS  ☐ COMMERCIAL  ☐ MEDICARE
☐ WKMN COMP  ☐ MEDICAID   ☑ SELF PAY

18195-
49902

CHART NO. **25141**   ADM. DATE **9-13-96**   DRIVER'S LICENSE NO.   MEDICAL RECORD NO. **49166**

LAST NAME **Murphy**   FIRST NAME **Matthew**   M.I. **S**   BIRTHDATE **9-18-75**   AGE **20**   SEX **M**

GUARANTOR NAME **Gurav**

ADDRESS **Matthew Murphy  501B W. Walters  New Boston, TX** ZIP **75570**

EMPLOYER **Snelling Temporary**

HOSPITALIZATION INSURANCE OR MEDICARE **Self**

RELATIVE **Ruby Pelozier**

COMPLAINT & HISTORY: C/o puncture wound to palm of ® hand 2° to being shot in hand c pellet gun while handling it ⊘ around 0013. tonight CFTs2≥sec ↓ sensory perception 2nd, 3rd, 4th + 5th digits.

ACUITY LEVEL 1 ②3 4

| TIME | T. | P. | R. | B.P. |
|------|----|----|----|------|
| 0035 | 980 | 78 | 20 | 157/106 |
| 0035 |  | 76 | 78 | 149/92 |

ROUTINE MEDS: **None**

DRUG OR OTHER ALLERGIES: **Iodine**

TREATMENT: 0100 Released to site cleaned, drsg applied instructions to return PRN per T.O. Dr. Gurav.

| MEDICATIONS | SITE | TIME | BY WHOM |
|-------------|------|------|---------|
| Duricef | P.O. | 0120 |  |
| Motrin 800mg | P.O. | 0120 |  |
| Talwin 30mg / 1m (L) hip | 1135 | J Miller |  |

PHYSICIANS NAME **RBF**   SIGNATURE x **9/13/?**

CHART   00586

THIS FORM MUST BE COMPLETED IN USE IF IT IS NOT APPLICABLE. ALL ORIGINAL REPORTS MUST BE ATTACHED.

| EMERGENCY ROOM RECORD | ☐ BLUE CROSS ☐ WKMN COMP | ☐ COMMERCIAL ☐ MEDICAID | ☐ MEDICARE ☑ SELF PAY | HOSP. NO. 49902 |
|---|---|---|---|---|

| CHART NO. 25141 | ADM. DATE 9-13-96 | DRIVER'S LICENSE NO. | MEDICAL RECORD NO. | RACE | SOCIAL SECURITY NO. |
|---|---|---|---|---|---|

| LAST NAME Murphy | FIRST NAME Matthew | M.I. S | BIRTHDATE 9-13-75 | AGE | SEX M | PATIENTS PHONE NO. |
|---|---|---|---|---|---|---|

**TREATMENT RECOMMENDED**

☐ Sutured      ☐ X-Ray      ☐ Tetanus Booster      ☐ Medication_____

☐ Lavaged      ☐ Lab Test      ☐ Hypertet & Booster      ☐ Other_____

NOTE: Treatment given in the Emergency Service is offered as emergency first care ONLY. Follow-up treatment by a physician may be important for your safety, and you are urged to follow carefully the instructions checked below:

☐ **TETANUS** - Within the next 24 hours, consult your physician as to whether or not you should receive injections to protect you against the disease of tetanus (lockjaw).

As a consequence of even small injuries this disease can be fatal, so the considered advice of your physician will be essential to your safety.

☐ **HEAD INJURY** - Contact your physician immediately if any of the following conditions occur:
- Persistent or increasingly severe headache
- Vomiting
- Unusual drowsiness
- Drainage of blood or fluid from ear or nose
- Convulsions
- Weakness of limbs or loss of coordination
- Blurred vision
- Stiffness of neck

☐ **NECK AND BACK INJURIES**
___ 1. Complete bed rest for 24 or 48 hours
___ 2. Sleep on a firm mattress or place boards under your mattress
___ 3. Apply wet heat (warm towel) to affected area
___ 4. See family doctor or return to Emergency Room if NO improvement in 48 hours.

☐ **VOMITING**
___ 1. No food or liquids for 4 hours
___ 2. Only clear liquids for first 24 hours
___ 3. If vomiting persists see family doctor or return to Emergency Room

☐ **WOUND CARE**
___ 1. Keep wound cleaned and dry.
___ 2. See family doctor or return to Emergency Room immediately if FEVER or other signs of infection occur: (1) Redness, (2) Swelling, (3) Discharge or (4) Red streaks on skin from wound.
___ 3. See family doctor or return to Emergency Room as indicated below:

   (1)_____ days following injury for wound examination

   (2)_____ days following treatment for removal of stitches

☐ **SPRAINS AND BRUISES**
___ 1. Elevate affected part.
___ 2. Apply ice packs to affected area for 10-20 minutes four times daily during first 24 to 48 hours following injury.
___ 3. No weight bearing on affected area for _____ days.

☐ **CAST CARE**
___ 1. Keep casted limb elevated
___ 2. Report any numbness or tingling to your doctor
___ 3. Keep your cast dry
___ 4. Report any signs of infection (1) Redness, (2) Swelling, (3) Discharge or foul odor.
___ 5. Do not insert sharp objects in your cast to relieve itching

Within the next _____ days, check with your physician for:

☐ Removal of sutures

☐ Examination of wound

☐ Further treatment of the condition which brought you here

☐ Other_____

**PATIENT ACKNOWLEDGEMENT OF INSTRUCTIONS AND ADVICE**

I have received and understand the instructions indicated above.
I also understand that I had emergency examination and/or treatment only and that I will arrange for follow-up care as instructed above.

| Matthew Murphy | 9-13-96 | RM |
|---|---|---|
| PATIENT'S OR RESPONSIBLE PERSON'S SIGNATURE | DATE | PHYSICIAN SIGNATURE |

**EMERGENCY COPY**

00587

ER CHART #: 2514/
PT. NAME: Murphy
DATE: 9-13-96 y Matthew
DOCTOR: Swanson
NURSE: (signature)

# EMERGENCY ROOM CHARGES

## EMERGENCY ROOM FEES

| | |
|---|---|
| DOES NOT INCLUDE DOCTOR CHG | |
| LIMITED | |
| INTERMEDIATE | |
| EXTENDED | |
| INTENSIVE | |

## CARDIAC CART

| | |
|---|---|
| CARDIAC MONITOR | |
| ATROPINE INJ | |
| EPINEPHRINE INJ | |
| LIDOCAINE INJ | |
| STDL. AIRWAY | |
| HYPERTET 2000 | |
| LANOXIN INJ | |
| LASIX (FUROSEMIDE) INJ | |
| LIDOCAINE INJ | |
| LIDOCAINE 2 gm. I.V. | |
| NARCAN INJ | |
| SOLU-MEDROL INJ | |
| SOLU-MEDROL INJ | |
| SODIUM BICARB BRISTOJECT | |

## I.V. SUPPLIES

| | |
|---|---|
| CATHLON IV PLACEMT CATH. | |
| CATHLON IV 250 ml | |
| D5 .45 500 CCL 1000 ml | |
| D5LR 500 cc | |
| D5LR 1000 cc | |
| D5W 100 ml BAG | |
| D5W 250 ml BAG | |
| D5W 500 ml BAG | |
| D5W 1000 ml BAG | |
| L.R. 1000 ml BAG | |
| BLOOD SET | |
| SCALP V PED 19 GA | |
| SCALP V PED 21 GA | |
| SCALP V PED 23 GA | |
| SOD.CHL 0.9% 250 ml BAG | |
| SOD.CHL 0.9% 500 ml BAG | |
| SOD.CHL 0.9% 1000 ml BAG | |
| IV EXTENSION | |
| PRIMARY IV SET | |
| PRIMARY IV SET | |
| SECONDARY V SET | |
| 3 WAY STOPCOCK | |

## PHARMACY

| | |
|---|---|
| ACETAMINOPHEN RO/SUPP | |
| ACTIFED SYRUP & CODEINE | |
| ADRENALIN (EPINEPH) 1 ML | |
| AMINOPHYLLIN INJ | |
| AMOXICILLIN CAPS/SUSP | |

| | |
|---|---|
| AMPICILLIN CAP | |
| AMPICILLIN INJ | |
| APRESOL (HYDRAL.) INJ | |
| APRESOL (MECLIZINE TAB) | |
| ARAMINE INJ | |
| ASPIRIN TAB 325 MG | |
| ASPIRIN RS | |
| AQUAMEPHYTON INJ | |
| BACITRACIN OINT PKG | |
| BACTRIM/SEPTRA IV/S | |
| BENADRYL (ANY ORAL) | |
| BENADRYL INJ | |
| BENTYL INJ | |
| BENTYL ORAL | |
| BETADINE OINT/SPRAY/SOL | |
| BICILLIN 1200 | |
| BICITRA INJ | |
| CECLON ORAL | |
| CECLON DOSE, 250 MG | |
| CECLON SUSP 75 ML | |
| CECLON SUSP, IV | |
| CHRG TAB | |
| COMPAZINE SOLU/SPAN 1 ML | |
| DARVOCET-N 100 | |
| DARVOCET-N 100 | |
| DECADRON INJ 4 MG | |
| DEPO-MEDROL INJ | |
| DEXTROSE 50% 50 ml | |
| DILANTIN 100% CAP | |
| DILANTIN 100 mg/ml INJ | |
| DIMENHYDRINATE INJ | |
| DIMMAMINE INJ | |
| DURICEF CAP | |
| EKG 12 LEAD | |
| EXPEL TAB | |
| FLEXERIL TAB | |
| GARAMYCIN (OPHTH) (ANY) | |
| HYDROGEN PEROXIDE (ANY) | |
| INDERAL INJ | |
| IPECAC SYRUP | |
| KANTREX INJ | |
| LOMOTIL (DIPHENOXYLATE) | |
| MAALOX/AMPHOJEL (ANY) | |
| MANDOL INJ | |
| MARCAINE INJ | |
| MICRO-K CAP | |
| MORPHINE INJ | |
| MOTRIN TAB | |
| NALDECON SYRUP | |
| NEOSPORIN OINT. | |
| NITROGLYCERIN OINT DOSE | |
| NITROGLYCERIN 1/150 | |
| NTG TAB SL .25 s | |
| NUBAIN INJ | |
| PARAGON FORTE/CHLORZOX | |
| PHENERGAN INJ | |
| PHENERGAN LIQ (ANY) | |
| PROCARDIA | |
| PYRIDIUM 100 mg TAB | |

| | |
|---|---|
| REGLAN INJ 10 mg | |
| SILVADENE 50 gm* | |
| SILVADENE 400 gm | |
| SOLARCAINE AER INJ | |
| TAGAMET INJ | |
| TAGAMET TAB | |
| TALWIN NX TAB | |
| TALWIN INJ | |
| TETANUS TOXOID 0.5 ml | |
| TETANUS/DIPHTH TOXOID | |
| THEODUR TAB A/B | |
| TIGAN INJ | |
| TIGAN SUPP | |
| TUSSI-ORGANIDIN LIQ | |
| TYLENOL/COD TAB | |
| TYLENOL ELIX DOSE | |
| TYLENOL INFANT DROPS 15 ml | |
| TYLENOL SUP | |
| TYLENOL TAB 5 gr | |
| VALIUM INJ | |
| VALIUM TAB A/B | |
| VISTARIL INJ | |
| VISTARIL (HYDROXYZINE) INJ | |
| WYCILLIN 1,200,000 INJ | |
| WYCILLIN 600,000 INJ | |
| WYCILLIN 600,000 INJ | |
| XYLOCAINE VISCOUS DOSE | |
| XYLOCAINE INJ (ANY) | |
| ZANTAC 150 mg TAB | |

## RESPIRATORY

| | |
|---|---|
| O₂ CANNULA | |
| O₂ - MASK | |
| IPPB-UP/DOAET NEBULIZER | |
| IPPB SET-UP | |
| SUCTION SET-UP | |
| O₂ SET-UP | |
| BRONCHODIL. | |
| ALUPENT | |

## ORTHOPEDIC

| | |
|---|---|
| LONG ARM CAST, ADULT | |
| SHORT ARM CAST, ADULT | |
| LONG ARM CAST, CHILD | |
| SHORT ARM CAST, CHILD | |
| LONG LEG CAST, ADULT | |
| SHORT LEG CAST, ADULT | |
| LONG LEG CAST, CHILD | |
| SHORT LEG CAST, CHILD | |
| PLASTER SPLINTS | |

## MISCELLANEOUS

| | |
|---|---|
| LACERATION TRAY/MINOR | |
| RICHARDS ARM SPLINT | |
| SHOULDER IMMOBILIZER | |
| CERVICAL COLLAR | |
| KNEE IMMOBILIZER | |
| RIB BELT | |
| LACERATION TRAY/MAJOR | |
| PLAST. CAST | |
| STERILE 4x4 SINGLES | |
| STERILE 4x4 PKG. | |
| SUTURE | |
| VAG EXAM TRAY | |
| EYE DRESSING TRAY | |
| EYE EXAM TRAY | |
| STERI STRIPS | |
| STERI STRIPS | |
| ADHESIVE TAPE 2 18 | |
| NASAL PACKING TRAY | |
| 3 WAY STOPCOCK | |
| STERILE GLOVES/PAIR | |
| STERILE BASIN | |
| LUMBAR PUNCTURE KIT | |
| FOLEY CATHETER TRAY | |
| UNDIE CATHETER TRAY | |
| TEXAS CATHETER | |
| CLEAN CATCH URINE KIT | |
| REFLEX 4x4 ROLL | |
| CONFORM 2" ROLL | |
| CONFORM 3" ROLL | |
| CONFORM 4" ROLL | |
| CONFORM 6" ROLL | |
| ACE BANDAGE 2" ROLL | |
| ACE BANDAGE 3" ROLL | |
| ACE BANDAGE 4" ROLL | |
| ACE BANDAGE 6" ROLL | |
| ICE PACK | |
| NORMAL SALINE 1,000 cc. IRRIG. | |
| STERILE WATER 1,000 cc. IRRIG. | |

Form #23
New Practon Printing Co.

00588



Lateral





F00-02424-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**AFFIDAVIT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF _Dallas_ | § |

BEFORE ME, the undersigned authority, on this day personally appeared _Peter Harrington_, who being by me duly sworn, deposed as follows:

"My name is _Peter Harrington_, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of Addison Harrington, Inc. Attached hereto are _10_ pages of records from Addison Harrington, Inc. These said _10_ pages of records are kept by Addison Harrington, Inc. in the regular course of business, and it was the regular course of business of Addison Harrington, Inc. for an employee or representative of Addison Harrington, Inc. with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original."

BUSINESS RECORDS AFFIDAVIT - Page 1

00591

_Affiant_

SUBSCRIBED AND SWORN TO BEFORE ME this 29th day of _January_ ,200\_,

to certify which witness my hand and seal of office.

> T. L. PRAZUCK
> MY COMMISSION EXPIRES
> April 12, 2003

_Notary Public in and for_

_DALLAS_ County, _TEXAS_

My Commission Expires:
4-12-03

BUSINESS RECORDS AFFIDAVIT - Page 2



11/15/00  WED 16:59 FAX 9724881783          ADDISON HARRINGTON                    ☑001

# *FAX COVERSHEET*

## ADDISON HARRINGTON, INC.

13370 BRANCH VIEW • SUITE 130 • DALLAS, TEXAS 75234 • PH(972)488-1751 • FX(972)488-1782

Date: *11·15·00*

Number of pages
including cover sheet: *10*

**TO:** *Invest. Willy Richardson*

**FROM:** *LISA SERVANTES*

Phone:
Fax: *214 653 8000 3924*
CC:

**REMARKS:** ☐ URGENT  ☑ FOR YOUR REVIEW  ☐ REPLY ASAP  ☐ PLEASE COMMENT

*called wanting information on employee
for ____ Inc.*

00593

11/15/00   WED 16:59 FAX 9724581783          ADDISON HARRINGTON                    ☑002

*ADDISON-HARRINGTON, INC.*

*ACCIDENT INVESTIGATION FORM*

Name of Injured Employee _Jediah ISSIAC Accident Murphy_ Date:_8-14-97_Time:_11:00_

Place of Accident:_St Monica_      Supervisor:_Chabs_

Apparent Nature of Injuries: _broke Left Thumb_

_at Knuckle_

**Describe fully how accident/injuries occurred:**
(What was the employee doing when injured? Regular job? What
went wrong? Proper equipment furnished? Used? Proper training
given? Personal protective equipment needed? Being used?
Environmental factors? Other appropriate information?)

_Pulling Streng Line Tight & nail Holding_
_Streng Line came out of Form hitting his_
_Left Thumb._

Name & Address of Witnesses:_____
_Primo Jimmerez_

**What can be done to prevent a recurrence of this type of
accident?** _Have Safety meeting_

Has this been done?_Yes_ If no, when will it be done?_____
How will it be done & by whom?_____

Other Comments?_____

Name of Investigator:_Charles Flores_   Title:_Foreman_
Date_3-17-97_

00594

11/15/00  WED 17:00 FAX 9724581783          ADDISON HARRINGTON                    @003
                                                                                  P. 1

*J. Murphy —*
*Physicians*
*Work Release*



© **COLUMBIA**
**Medical Center at Terrell**
1551 Hwy. 34 S. - Terrell, Texas 75160 (214)-563-7611

Name _J. MURPHY_____ Date _3/11/97_

Address _____, Texas

℞

MR. MURPHY MAY RETURN
TO WORK TODAY.

REFILL
NON-REP

                                    TROY L. MILLER, MD
                                    DEA - BM1397505
                                  DPS - 30061928  TX LIC - J2688

_____ M.D. _____
Product Selection                 Dispense As Written      M.D.
Permitted
              Reg. No. _____

00595

11/15/00   WED 17:00 FAX 9724881783          ADDISON HARRINGTON                    ☑004

**RMH ENTERPRISES, INC.**
13370 BRANCH VIEW, SUITE 130C
DALLAS, TEXAS 75234
(972) 488-1751

43-1465

APPLICATION FOR EMPLOYMENT

DATE: 12-28-96

NAME: MURPHY JEDIDIAH ISAAC          1-09-01-75
        (Last name first)                    DATE OF BIRTH:

ADDRESS: 6305 FM 929
         (City, State, Zip Code)

PHONE NUMBER: (903) 873-2215   SOCIAL SECURITY NUMBER: 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

12468174          97
DRIVERS LICENSE OR I.D. NUMBER, STATE ISSUED, EXPIRATION DATE

**WORK EXPERIENCE**

| Company Name & Phone No. | Duties | Supervisor |
|---|---|---|
| H&K | FORKLIFT | DON MYERS |
| FRASIER INDUSTRIES | FORKLIFT | RODNEY BROWN |
| SMITH BLAIR | CRAINE | MIKE PHILLIPS |

REFERENCES: BILLY COURTNEY   903 846-1220   CON. WORKER
            Name              Phone No.        Occupation

            LOGAN CRAFT   903-873-2215   FORMAN TCI
            Name          Phone No.        Occupation

**IN CASE OF EMERGENCY NOTIFY: HOPE ABBOTT   214-862-7443
                                Name and phone number

========================================================
RMH ENTERPRISES, INC. HIRING PRIORITY IS AS FOLLOWS:

     Applicant was hired because:

A. Current employees of the company_____
B. Past employees with proven safety, attendance, and work attendance._____
C. Applicants recommended by current supervisors._____
D. Applicants recommended by current employees._____
E: Unknown applicants._____

JOB CLASSIFICATION:_____   RATE OF PAY $7.00 JW O

00596

11/15/00  WED 17:01 FAX 9724881783       ADDISON HARRINGTON        @005
~~~ ~~ OF JUSTICE    HR~~ ~~~~~~ ~~~~~
Immigration and Naturalization Servi       CHANGED ADDRESS      OMB No. 1115-0136
                                           MARTINEZ 5-M 26/97    Employment Eligibility Verificatio

1465

Please read instructions carefully before completing this form. The instructions must be available during completion of
this form. **ANTI-DISCRIMINATION NOTICE.** It is illegal to discriminate against work eligible individuals. Employers
CANNOT specify which document(s) they will accept from an employee. The refusal to hire an individual because of a
future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Verification.** To be completed and signed by employee at the time employment begins

| Print Name:  Last | First | Middle Initial | Maiden Name |
|---|---|---|---|
| MURPHY | JEDIDIAH | ISAAC | |

| Address (Street Name and Number) | Apt. # | Date of Birth (month/day/year) |
|---|---|---|
| 900 EAST SOUTH COMMERCE | | 09-01-75 |

| City | State | Zip Code | Social Security # |
|---|---|---|---|
| WILLS POINT | TX | 75169 | 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 |

I am aware that federal law provides for
imprisonment and/or fines for false statements or
use of false documents in connection with the
completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):
☑ A citizen or national of the United States
☐ A Lawful Permanent Resident (Alien # A
☐ An alien authorized to work until     /    /
(Alien # or Admission #

| Employee's Signature | Date (month/day/year) |
|---|---|
| Jedidiah Murphy | 1-29-97 |

**Preparer and/or Translator Certification.** (To be completed and signed if Section 1 is prepared by a person
other than the employee.) I attest, under penalty of perjury, that I have assisted in the completion of this form and that
to the best of my knowledge the information is true and correct.

| Preparer's/Translator's Signature | Print Name |
|---|---|
| | |

| Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|
| | |

**Section 2. Employer Review and Verification.** To be completed and signed by employer. Examine one document from List A OR
examine one document from List B and one from List C as listed on the reverse of this form and record the title, number and expiration date, if any, of
the document(s)

| List A | OR | List B | AND | List C |
|---|---|---|---|---|
| Document title: _____ | | Tx Drivers License | | Social Security Card |
| Issuing authority: _____ | | Tx Dept of Public Safety | | US Dept of Health |
| Document #: _____ | | 12468174 | | 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 |
| Expiration Date (if any): __/__/__ | | __/__/__ | | __/__/__ |
| Document #: _____ | | | | |
| Expiration Date (if any): __/__/__ | | | | |

**CERTIFICATION** - I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named
employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the
employee began employment on (month/day/year)     /    /    and that to the best of my knowledge the employee
is eligible to work in the United States. (State employment agencies may omit the date the employee began
employment).

| Signature of Employer or Authorized Representative | Print Name | Title |
|---|---|---|
| Ray Moore | RAY MOORE | FOREMAN |

| Business or Organization Name | Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|---|
| RMH ENTERPRISES, INC. 13370 BRANCH VIEW, SUITE 130C, DALLAS, TEXAS  75234 | | 1/29/97 |

**Section 3. Updating and Reverification.** To be completed and signed by employer

| A. New Name (if applicable) | B. Date of rehire (month/day/year) (if applicable) |
|---|---|
| | |

C.  If employee's previous grant of work authorization has expired, provide the information below for the document that establishes current employment
eligibility.

Document Title: _____     Document #: _____     Expiration Date (if any): __/__/__

I attest, under penalty of perjury, that to the best of my knowledge, this employee is eligible to work in the United States, and if the employee
presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative | Date (month/day/year) |
|---|---|
| | |

Form I-9 (Rev. 11-21-91) N

00597

11/15/00  WED 17:02 FAX 9724881783          ADDISON HARRINGTON                          ☒006

# Form W-4 (1997)

**Want More Money In Your Paycheck?**
If you expect to be able to take the earned income credit for 1997 and a child lives with you, you may be able to have part of the credit added to your take-home pay. For details, get Form W-5 from your employer.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct amount of Federal income tax from your pay. Form W-4 may be completed electronically, if your employer has an electronic system. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption From Withholding.** Read line 7 of the certificate below to see if you can claim exempt status. If exempt, only complete lines 1, 2, 3, 4, 7, and sign the form to validate it. No Federal income tax will be withheld from your pay. Your exemption expires February 17, 1998.

**Note:** You cannot claim exemption from withholding if (1) your income exceeds $650 and includes unearned income (e.g. interest and dividends) and (2) another person can claim you as a dependent on their tax return.

**Basic instructions.** If you are not exempt, complete the Personal Allowances Worksheet. Additional worksheets are on page 2 so you can adjust your withholding allowances based on itemized deductions, adjustments to income, or two-earner/two-job situations. Complete all worksheets that apply to your situation. The worksheets will help you figure the number of withholding allowances you are entitled to claim. However, you may claim fewer allowances than this.

**Head of Household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals.

**Nonwage Income.** If you have a large amount of nonwage income, such as interest or dividends, you should consider making

estimated tax payments using Form 1040-ES. Otherwise, you may find that you owe additional tax at the end of the year.

**Two Earners/Two Jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one W-4. This total should be divided among all jobs. Your withholding usually be most accurate when all allowances are claimed on the W-4 filed for the highest paying job and zero allowances are claimed for the others.

**Check Your Withholding.** After your W-4 takes effect, use Pub. 919, Is My Withholding Correct for 1997?, to see how the dollar amount you are having withheld compares to your estimated total annual tax. Get Pub. 919 especially if you used the Two-Earner/Two-Job Worksheet and your earnings exceed $150,000 (Single) or $200,000 (Married). To order Pub. 919, call 1-800-829-3676. Check your telephone directory for the IRS assistance number for further help.

**Sign This Form.** Form W-4 is not considered valid unless you sign it.

---

## Personal Allowances Worksheet

| | | | |
|---|---|---|---|
| A | Enter "1" for yourself if no one else can claim you as a dependent | | A ___ |
| B | Enter "1" if: { • You are single and have only one job; or • You are married, have only one job, and your spouse does not work; or • Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less. } | | B _1_ |
| C | Enter "1" for your spouse. But, you may choose to enter -0- if you are married and have either a working spouse or more than one job (this may help you avoid having too little tax withheld) | | C ___ |
| D | Enter number of dependents (other than your spouse or yourself) you will claim on your tax return | | D ___ |
| E | Enter "1" if you will file as head of household on your tax return (see conditions under Head of Household above) | | E ___ |
| F | Enter "1" if you have at least $1,500 of child or dependent care expenses for which you plan to claim a credit | | F ___ |
| G | Add lines A through F and enter total here. **Note:** This amount may be different from the number of exemptions you claim on your return ▶ | | G ___ |
| | For accuracy, complete all worksheets that apply. | • If you plan to itemize or claim adjustments to income and want to reduce your withholding, see the Deductions and Adjustments Worksheet on page 2. • If you are single and have more than one job and your combined earnings from all jobs exceed $32,000 OR if you are married and have a working spouse or more than one job, and the combined earnings from all jobs exceed $55,000, see the Two-Earner/Two-Job Worksheet on page 2 if you want to avoid having too little tax withheld. • If neither of the above situations applies, stop here and enter the number from line G on line 5 of Form W-4 below. | |

---

**- - - - Cut here and give the certificate to your employer. Keep the top portion for your records. - - - -**

| Form **W-4**<br>Department of the Treasury<br>Internal Revenue Service | **Employee's Withholding Allowance Certificate**<br>▶ For Privacy Act and Paperwork Reduction Act Notice, see reverse. | OMB No. 1545-C01C<br>**1997** |
|---|---|---|

| 1  Type or print your first name and middle initial   Last name | 2  Your social security number |
|---|---|
| ZEPIDIAH   J   MURPHY | 456 71 2610 |

Home address (number and street or rural route)
700 EAST SIXTH COMMERCE

City or town, state, and ZIP code
WILLS POINT TX 75169

3  ☐ Single  ☒ Married  ☐ Married, but withhold at higher Single rate.
Note: If married, but legally separated, or spouse is a nonresident alien, check the Single box.

4  If your last name differs from that on your social security card, check here and call 1-800-772-1213 for a new card ▶ ☐

| 5 | Total number of allowances you are claiming (from line G above or from the worksheets on page 2 if they apply) | 5 | _3_ |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck | 6 | $ |
| 7 | I claim exemption from withholding for 1997, and I certify that I meet BOTH of the following conditions for exemption: <br> • Last year I had a right to a refund of ALL Federal income tax withheld because I had NO tax liability; AND <br> • This year I expect a refund of ALL Federal income tax withheld because I expect to have NO tax liability. <br> If you meet both conditions, enter "EXEMPT" here ▶ | 7 | |

Under penalties of perjury, I certify that I am entitled to the number of withholding allowances claimed on this certificate or entitled to claim exempt status.

Employee's signature ▶ _Zephiah Murphy_    Date ▶ _1-29_ , 19_97_

| 8  Employer's name and address (Employer: Complete 8 and 10 only if sending to the IRS) | 9  Office code (optional) | 10  Employer identification number |
|---|---|---|

Cat. No. 10220Q

00598

11/15/00  WED 17:03 FAX 9724881783          ADDISON HARRINGTON                    ☒007

# Form W-4 (1996)

**Want More Money in Your Paycheck?**
If you expect to be able to take the earned income credit for 1996 and a child lives with you, you may be able to have part of the credit added to your take-home pay. For details, get Form W-5 from your employer.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct amount of Federal income tax from your pay. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption From Withholding.** Read line 7 of the certificate below to see if you can claim exempt status. If exempt, only complete lines 1, 2, 3, 4, 7, and sign the form to validate it. No Federal income tax will be withheld from your pay. Your exemption expires February 18, 1997.

**Note:** You cannot claim exemption from withholding if (1) your income exceeds $650

and includes unearned income (e.g., interest and dividends) and (2) another person can claim you as a dependent on their tax return.

**Basic Instructions.** If you are not exempt, complete the Personal Allowance Worksheet. Additional worksheets on page 2 so you can adjust your withholding allowances based on itemized deductions, adjustments to income, or two-earner/two-job situations. Complete all worksheets that apply to your situation. The worksheets will help you figure the number of withholding allowances you are entitled to claim. However, you may claim fewer allowances than this.

**Head of Household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals.

**Nonwage Income.** If you have a large amount of nonwage income, such as interest or dividends, you should consider making estimated tax payments using Form 1040-ES.

Otherwise, you may find that you owe additional tax at the end of the year.

**Two Earners/Two Jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one W-4. This total should be divided among all jobs. Your withholding will usually be most accurate when all allowances are claimed on the W-4 filed for the highest paying job and zero allowances are claimed for the others.

**Check Your Withholding.** After your W-4 takes effect, use Pub. 919, Is My Withholding Correct for 1996?, to see how the dollar amount you are having withheld compares to your estimated total annual tax. Get Pub. 919 especially if you used the Two-Earner/Two-Job Worksheet and your earnings exceed $150,000 (Single) or $200,000 (Married). To order Pub. 919, call 1-800-829-3676. Check your telephone directory for the IRS assistance number for further help.

**Sign This Form.** Form W-4 is not considered valid unless you sign it.

---

## Personal Allowances Worksheet

| | | |
|---|---|---|
| **A** | Enter "1" for yourself if no one else can claim you as a dependent | **A** ___ |
| **B** | Enter "1" if: { • You are single and have only one job; or<br>• You are married, have only one job, and your spouse does not work; or<br>• Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less. } | **B** ___ |
| **C** | Enter "1" for your spouse. But, you may choose to enter -0- if you are married and have either a working spouse or more than one job (this may help you avoid having too little tax withheld) | **C** ___ |
| **D** | Enter number of dependents (other than your spouse or yourself) you will claim on your tax return | **D** ___ |
| **E** | Enter "1" if you will file as head of household on your tax return (see conditions under Head of Household above) | **E** 1 |
| **F** | Enter "1" if you have at least $1,500 of child or dependent care expenses for which you plan to claim a credit | **F** ___ |
| **G** | Add lines A through F and enter total here. This amount may be different from the number of exemptions you claim on your return ▶ | **G** 3 |

For accuracy, do all worksheets that apply.
• If you plan to itemize or claim adjustments to income and want to reduce your withholding, see the Deductions and Adjustments Worksheet on page 2.
• If you are single and have more than one job and your combined earnings from all jobs exceed $30,000 OR if you are married and have a working spouse or more than one job, and the combined earnings from all jobs exceed $50,000, see the Two-Earner/Two-Job Worksheet on page 2 if you want to avoid having too little tax withheld.
• If neither of the above situations applies, stop here and enter the number from line G on line 5 of Form W-4 below.

---- Cut here and give the certificate to your employer. Keep the top portion for your records. ----

---

| Form **W-4** | **Employee's Withholding Allowance Certificate** | OMB No. 1545-0010 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | ▶ For Privacy Act and Paperwork Reduction Act Notice, see reverse. | **1996** |

| 1 Type or print your first name and middle initial    Last name | | 2 Your social security number |
|---|---|---|
| JEDIDIAH          MURPHY        I | | 456 71 3610 |

| Home address (number and street or rural route) | 3  ☒ Single  ☐ Married  ☐ Married, but withhold at higher Single rate.<br>Note: If married, but legally separated, or spouse is a nonresident alien, check the Single box. |
|---|---|
| 6305 FM 429 | |
| City or town, state, and ZIP code | 4  If your last name differs from that on your social security card, check here and call 1-800-772-1213 for a new card ▶ ☐ |
| KAUFMAN   TX   75142 | |

| 5 | Total number of allowances you are claiming (from line G above or from the worksheets on page 2 if they apply) | **5** | 3 |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck | **6** $ |  |
| 7 | I claim exemption from withholding for 1996 and I certify that I meet BOTH of the following conditions for exemption:<br>• Last year I had a right to a refund of ALL Federal income tax withheld because I had NO tax liability; AND<br>• This year I expect a refund of ALL Federal income tax withheld because I expect to have NO tax liability.<br>If you meet both conditions, enter "EXEMPT" here | **7** |  |

Under penalties of perjury, I certify that I am entitled to the number of withholding allowances claimed on this certificate or entitled to claim exempt status.

Employee's signature ▶ *Jedidiah Murphy*    Date ▶ 12-29-    19 96

| 8 Employer's name and address (Employer: Complete 8 and 10 only if sending to the IRS) | 9 Office code (optional) | 10 Employer Identification number |
|---|---|---|
| | | |

Cat. No. 102200

00599

11/15/00  WED 17:05 FAX 9724881783        ADDISON HARRINGTON                    ☒008

**U.S. Department of Justice**                              OMB No. 1115-0136
Immigration and Naturalization Service          **Employment Eligibility Verificat**

Please read instructions carefully before completing this form. The instructions must be available during completion of this form. **ANTI-DISCRIMINATION NOTICE.** It is illegal to discriminate against work eligible individuals. Employe CANNOT specify which document(s) they will accept from an employee. The refusal to hire an individual because of future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Verification.** To be completed and signed by employee at the time employment begins

| Print Name:   Last | First | Middle Initial | Maiden Name |
|---|---|---|---|
| MURPHY | JEDIDIAH | I | |

| Address (Street Name and Number) | Apt. # | Date of Birth (month/day/year) |
|---|---|---|
| 6303 FM 429 | | 08-01-75 |

| City | State | Zip Code | Social Security # |
|---|---|---|---|
| KAUFMAN | TX | 75142 | 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 |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):
☒ A citizen or national of the United States
☐ A Lawful Permanent Resident (Alien # A
☐ An alien authorized to work until ___/___/___
    (Alien # or Admission #

| Employee's Signature | Date (month/day/year) |
|---|---|
| *[signature]* | 12-29-96 |

**Preparer and/or Translator Certification.** (To be completed and signed if Section 1 is prepared by a person other than the employee.) I attest, under penalty of perjury, that I have assisted in the completion of this form and that to the best of my knowledge the information is true and correct.

| Preparer's/Translator's Signature | Print Name |
|---|---|
| | |

| Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|
| | |

**Section 2. Employer Review and Verification.** To be completed and signed by employer. Examine one document from List A OR examine one document from List B and one from List C as listed on the reverse of this form and record the title, number and expiration date, if any, the document(s)

| | List A | OR | List B | AND | List C |
|---|---|---|---|---|---|
| Document title: | | | Tx Driver Licence | | Social Security Card |
| Issuing authority: | | | Tex Dept. P S | | USDep Health |
| Document #: | | | 12468174 | | 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 |
| Expiration Date (if any): | ___/___/___ | | 9/18/97 | | ___/___/___ |
| Document #: | | | | | |
| Expiration Date (if any): | ___/___/___ | | | | |

**CERTIFICATION - I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the employee began employment on (month/day/year) ___/___/___ and that to the best of my knowledge the employee is eligible to work in the United States. (State employment agencies may omit the date the employee began employment).**

| Signature of Employer or Authorized Representative | Print Name | Title |
|---|---|---|
| *[signature]* Charles Flowers | Charles Flowers | Foreman |

| Business or Organization Name        Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|
| RMH ENTERPRISES, INC.  13370 BRANCH VIEW, SUITE 130C, DALLAS, TEXAS  75234 | 12/28/96 |

**Section 3. Updating and Reverification.** To be completed and signed by employer

| A. New Name (if applicable) | B. Date of rehire (month/day/year) (if applicable) |
|---|---|
| | |

C. If employee's previous grant of work authorization has expired, provide the information below for the document that establishes current employment eligibility.

Document Title: _____  Document #: _____  Expiration Date (if any): ___/___/___

I attest, under penalty of perjury, that to the best of my knowledge, this employee is eligible to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative | Date (month/day/year) |
|---|---|
| | |

Form I-9 (Rev 11-21-91) N

00600

11/15/00  WED 17:06 FAX 9724851783          ADDISON HARRINGTON                    ☒009

# RMH ENTERPRISES, INC.

## SAFETY PROGRAM & DRUG TESTING

I, _JEDIDIAH  MURPHY_ , have read and understood that RMH ENTERPRISES, INC. dru
EMPLOYEE NAME

program and agree to observe all rules and regulations set forth in this program.  I understand that complia
with the above stated policy is a condition of my employment at RMH ENTERPRISES, INC.  I also underst
the disciplinary action that will be taken if I have been found to be in violation of this policy or refuse to com
with any of its requirements.

I, _JEDIDIAH  MURPHY_ , understand that RMH ENTERPRISES, INC. may require
EMPLOYEE NAME

applicant's take a pre-hire drug test, employment dependant upon test results.  It is also my understanding t
RMH ENTERPRISES, INC. may require random drug testing, employment dependant upon test results.


_Jedidiah M_                               _12-28-96_
Signature                                  Date


_Charles Flowler_                          _12-28 96_
Witness                                    Date


00601

**RMH ENTERPRISES, INC.**
**13370 BRANCH VIEW LANE, SUITE 130C**
**DALLAS, TEXAS 75234**
**(972) 488-1751**

### NOTIFICATION OF WORKERS' COMPENSATION NONSUBSCRIBER

I, _____, understand that RMH Enterprises, Inc. is a nonsubscriber to the

workers' compensation program. However, I do understand that RMH Enterprises, Inc. has a group health

program to cover on the job injuries and that said company's insurance company will be notified of my

employment so that coverage will begin at once. I also understand that should an injury occur, I am to notify

RMH Enterprises, Inc. at once so that they may direct me to their medical provider. I understand that should I

follow all guidelines set forth, I may be eligible for weekly income benefits until I am able to return to work.


_____                    12-29-96
EMPLOYEE SIGNATURE                          DATE


_____                    12-28-96
WITNESS                                     DATE

F00-02424-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## NOTICE OF INTENT TO USE CERTIFIED RECORDS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney, Gregory

S. Davis, and files this Notice of Intent to Use Certified Records, and respectfully shows:

I.

The State of Texas may offer the following certified records at the trial of this cause:

1.     Defendants records from Edgewood Independent School District.

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

NOTICE OF INTENT TO USE
CERTIFIED RECORDS - Page

00603

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 30th day of May, 2001.

GREGORY S. DAVIS

# Edgewood I.S.D.
P.O. Box 6
Edgewood, Tx  75117

Jack Shellnutt
Superintendent
Ph. # 903-896-4332
Fax # 903-896-7056

Betty Waters
H.S. Counselor
903-896-4856
Fax # 903-896-1050

Terry Phillips
M.S. Prin
903-896-1530

Rudy Waters
Intermediate Prin
903-896-2134

Carolyn James
Elementary Prin
903-896-4773

Cavin Travis
Technology Coor
903-896-1275

David Tidwell
Maint/Transp Dir
903-896-1539

Jane Mattingly
Business Manager
903-896-4332

Glenda Barrett
Payroll/Personnel
903-896-4332

Faye McBride
Payroll/Personnel
903-896-4332

*April 26, 2001*

*Investigator Willie Richardson,*

*Enclosed you will find all school records on Jedidiah Isaac Murphy, from Edgewood Independent School District. These papers are original state seal copies. I am also making this letter official by way of Notary. If you need any further assistance in the matter please feel to call me.*

*Thank you,*

*Jack Shellnutt*
*Superintendent*
*Edgewood I.S.D.*
*(903) 896-4332*

Sworn to and Subscribed before me this ___26___ day of *April* 2001.

Notary Public, *Van Zandt* , County, Texas.



MARY FAYE MCBRIDE
Notary Public, State of Texas
My Commission Expires 12-04-01

00605

**I. NAME** Murphy (Jim) Ed

**MALE** ☒  **FEMALE** ☐  **DATE OF BIRTH** 9 - 1 - 75  **PLACE OF BIRTH** Sonora, Texas

**II. ENROLLMENT & WITHDRAWAL RECORD**

STUDENT I.D. NO. 940138

| DATE | CODE | GRADE | Prev. School or Reason for Leaving |
|---|---|---|---|

**III. FAMILY DATA**

| | MOTHER | FATHER |
|---|---|---|
| NAME OF PARENTS | Samantha | Bob Murphy |
| ADDRESS | Box 412, Edgewood | Box 412, Edgewood |

ETHNIC GROUP

LANGUAGE IN HOME

With Whom Does The Child Reside

**CODE OF BIRTH INFORMATION**

| | PRE. KDG. | 1ST GR. |
|---|---|---|

TEACHER: Henson DMc

| | 6 | 7 |
|---|---|---|

**IV. PHOTO**

SS# 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

**V. ELEMENTARY - JUNIOR HIGH SCHOOL RECORD**

| YEAR | | | | | | 5th 1986-87 | 1987-88 | 1988-89 | 89-90 | |
|---|---|---|---|---|---|---|---|---|---|---|
| SUBJECTS | Pre-K | KINDERGARTEN | 1ST GRADE | GRADE | GRADE | GRADE 5 | GRADE 6 | GRADE 7 | GRADE 8 | GRADE |
| Arithmetic | | | | | | 73 78 | 72 77 80 | 79 79 79 71 | | |
| Basic | | | | | | | | | | |
| Enriched | | | | | | | | | | |
| Reading | | | | | | 82 83 83 74 | 74 74 | | | |
| Remedial | | | | | | | | | | |
| Literature | | | | | | 85 84 | 93 89 91 | 81 87 79 | | |
| English | | | | | | 84 | 93 89 91 79 | 80 84 84 | | |
| Enriched | | | | | | | | | | |
| Basic | | | | | | | | | | |
| Writing | | | | | | | | | | |
| Spelling | | | | | | 87 90 89 | | | | |
| Social Studies | | | | | | 74 90 77 96 | 91 94 88 | 93 91 92 90 | 81 94 83 | |
| History | | | | | | | | 85 83 83 85 | 84 | |
| Computer Literacy | | | | | | | | 93 | | |
| Science | | | | | | 80 82 81 86 | 84 81 85 | 83 85 | | |
| Health | | | | | | S S S | 91 85 82 80 | | | |
| Art | | | | | | S | | | | |
| Band | | | | | | | | | | |
| Choral | | | | | | | • | | | |
| Physical Ed. | | | | | | S S S | | 95 95 95 | | |
| Conduct | | | | | | | | | | |
| Unexcused Absence | | | | | | | | | | |

00006

CONFIDENTIAL
TEST DATE 02/89
GRADE 7
BIRTHDATE 09/01/75
STUDENT: MURPHY JIM X
(OPTIONAL)
I.D. NO: 234-90-...
DISTRICT: 234  EDGEWOOD ISD
CAMPUS: 041  EDGEWOOD MIDDLE
SCALED SCORE  SUBJECT MASTERY
MATHEMATICS   768   YES
READING       749   YES
WRITING       700   YES

AMERICAN TESTRONICS

| Name | Sex | | Comprehensive Assessment Program | Test Date |
|---|---|---|---|---|
| TOLAR | JIM | M | | 04/08/87 |

AMERICAN TESTRONICS

| Name | Sex | | Comprehensive Assessment Program | Test Date |
|---|---|---|---|---|
| MURPHY | JIM | M | | 04/19/88 |

AMERICAN TESTRONICS

| Name | Sex | | Comprehensive Assessment Program | Test Date |
|---|---|---|---|---|
| MURPHY | JIM | M | | 03/23/89 |

Special Comments

Honors / Activities

Academic Achievement Record Sent:
Requesting Agency            Date Sent

Academic Achievement Record Sent:
Requesting Agency            Date Sent

00607

# ACADEMIC ACHIEVEMENT RECORD

00608

Full Legal Name: Murphy, Jim Ed.
First: Jim   Middle: Ed.

Student ID Number: 040138
Social Security Number: 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
Date of Birth: 9-1-75   Sex: M
Place of Birth: Sonora

Parent(s)'/Guardian(s)' Name: Bob y Samatha Murphy
Current Address: Bay 412, Edgewood
Street   City   State/Zip Code

Home Phone ( ): 214 86-4779   Business Phone ( ):

Name of High School:
Phone ( ):   Proposed Date of Graduation:
High School Address:
Street   City   State/Zip Code
District Name:
TEA County/District/Campus Number:
Rank:   No. in Class:
Grade Point Average:
Last District/High School Attended:   Date Graduated:
Address:   Date of Ranking:
Street   City   State/Zip Code

TABS Mastery, Exit Level
Mathematics   Reading   Writing
Advanced High School Honors Program
Advanced High School Program
College Board Campus Code Number
Date of First Entry in 8th Grade

| Generic Course Name | Grade 9, 19__ Abbreviated Course Name | 1st Sem Gr. | 2nd Sem Gr. | Credit | Grade 10, 19__ Abbreviated Course Name | 1st Sem Gr. | 2nd Sem Gr. | Credit | Grade 11, 19__ Abbreviated Course Name | 1st Sem Gr. | 2nd Sem Gr. | Credit | Grade 12, 19__ Abbreviated Course Name | 1st Sem Gr. | 2nd Sem Gr. | Credit | Extra 19__ Abbreviated Course Name | 1st Sem Gr. | 2nd Sem Gr. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| English Language Arts | | | | | | | | | | | | | | | | | | | |
| Mathematics | | | | | | | | | | | | | | | | | | | |
| Science | | | | | | | | | | | | | | | | | | | |
| Social Studies | | | | | | | | | | | | | | | | | | | |
| Economics/Free Enterprise | | | | | | | | | | | | | | | | | | | |
| Health | | | | | | | | | | | | | | | | | | | |
| Physical Ed./Equivalent | | | | | | | | | | | | | | | | | | | |
| Other Languages | | | | | | | | | | | | | | | | | | | |
| Fine Arts | | | | | | | | | | | | | | | | | | | |
| Computer Science | | | | | | | | | | | | | | | | | | | |
| Vocational Education | | | | | | | | | | | | | | | | | | | |
| Electives | | | | | | | | | | | | | | | | | | | |
| Business Education | | | | | | | | | | | | | | | | | | | |
| Local Credit | | | | | | | | | | | | | | | | | | | |

Explanation of Grades
(Example: A = 90-100)
A = ____
B = ____
C = ____
D = ____
F = ____

Definition of Code Points
(if course A = 4.0 points)
A = ____   B = ____   C = ____   D = ____   F = ____

Total Credits for Year (each year)

ABSENCES
Regular School Year
1st Sem.   2nd Sem.   Total
Entered
Reason
Entered
Reason
Withdrew

Note: In the "Abbreviated Course Name" column, space is provided to the right of the entered line for H = Honors Course, S = Special Education (enter H or S as a result of an ARD decision), Other

Signature and Title of School Official: _____

ACCREDITED BY
Texas Education Agency

# STATE OF TEXAS
## ACADEMIC ACHIEVEMENT RECORD

Full Legal Name: **MURPHY** (Last) **JEDIDIAH** (First) **ISAAC** (Middle)

Student ID Number: **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**

Ethnicity: **W**   Sex: **M**

Date of Birth: **9 / / 75**   Place of Birth:

Parents or Guardians Name: **Gregg Edgewood Murphy**

Current Address: **Box 472 Edgewood TX 75117**

Most Recent Former Address:

Home Phone: **896-4779**   Business Phone: **896-4466**

Name of High School: **Edgewood High School**

Phone: (214) 896-4686

Proposed Date of Graduation: **5.27.94**

High School Address: **P.O. Box 6   Edgewood, TX 75117**

District/Home Campus Number:

TEA County/District Number: **234-903-001**

Rank: **37**   No. in Class: **91**

Grade Point Average: **2.69**   Date Graduated: **5.27.94**

Last District/High School Attended:

College Board Campus Code Number: **44692-X**

High School Program: 
Advanced High School Program:
Advanced High School Honors Program:

| Generic Course Name | Abbreviated Course Name | Grade 9 | 19 90 - 91 | | | | Grade 10 | 19 91 - 92 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1st Sem Gr. | 2nd Sem Gr. | Total | Credit | Abbreviated Course Name | 1st Sem Gr. | 2nd Sem Gr. | Total | Credit |
| English Language Arts | ENG I | | 88 | 83 | | 1 | ENG II | 73 | 80 | | 1 |
| Mathematics | ALG I | | 76 | 63 | | 1 | GEOM | 85 | 75 | | 1 |
| Science | PHYS SCI | | 87 | 78 | | 1 | BIO I | 80 | 86 | | 1 |
| Social Studies | US HIST | | 91 | 84 | | 1 | W HIST | 87 | 86 | | 1 |
| Economics/Free Enterprise | | | | | | | | | | | |
| Health | | | | | | | HEALTH | 78 | 81 | | |
| Physical Ed. (Equivalent) | PE EQUIV | | 95 | 95 | | 1 | PE EQUIV | 75 | 85 | | |
| Fine Arts | | | | | | | | | | | |
| Computer Science | | | | | | | | | | | |
| Vocational Education | AG SCI 1/2 | | 87 | 93 | | 1 | | | | | |
| Other Languages | | | | | | | | | | | |
| Business Education | | | | | | | | | | | |
| Other Electives | | | | | | | | | | | |
| Local Credit | | | | | | | | | | | |
| | Total Credits for Year | | | | 6 | | Total Credits for Year | | | | 6 |

ABSENCES (Grade 9): Regular School Year 1st Sem **0** 2nd Sem **6** Total **6**

ABSENCES (Grade 10): Regular School Year 1st Sem **3** 2nd Sem **4** Total

| Generic Course Name | Abbreviated Course Name | GRADE 11 | 19 92 - 93 | | | | Abbreviated Course Name | GRADE 12 | 19 93 - 94 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1st Sem Gr. | 2nd Sem Gr. | Total | Credit | | 1st Sem Gr. | 2nd Sem Gr. | Total | Credit |
| English Language Arts | ENG III | | 78 | 72 | | 1 | ENG 4 | 82 | 72 | | |
| Mathematics | ALG 2 | | 81 | 65 | | 1 | | | | | |
| Social Studies | US GOVT | | | | | | SOCIAL STUDIES | 81 | 0 | | |
| | ECO-FE | | | | | | EXIT LEVEL | | | | |
| | PE EQUIV | | W | W | | | SCIENCE | 67 | 77 | | |
| | MIGROAP | | 87 | 77 | | | READING | 10 72 MO/YR | | | |
| | SPANI | | 94 | 87 | | | MATH | 5 93 MO/YR | | | |
| | | | | | | | WRITING 5 91 MO/YR | | | | |

TOTAL CREDITS FOR YEAR: **6**

TOTAL CREDITS FOR YEAR: **4½**

ID # **A001-92**   ID # **A001-94**

GRADUATION DATE: **08-17-92**

INDIVIDUAL GRADUATION COMMITTEE

REGULAR SCHOOL YEAR

TRANSFER/SUMMER SCHOOL

| | 1st Sem | 2nd Sem | Total |
|---|---|---|---|
| HUF | B | B+ | |
| BUDHAF1 | B | B+ | |
| BUDHAF1 | B | B+ | |
| ASSTTECHA | BB | CC | |
| ASMPTECHB | 95 | 95 | |

MURPHY JIM   MURPHY JIM   TURNER HILL

A Passing Grade is 70 or above. (Example: A = 4.0 points)

Definition of Grade Points: A = ___ B = ___ C = ___ D = ___ F = ___

00609

FOR LOCAL USE

STANDARDIZED TEST/TEAMS RESULTS

AMERICAN TESTRONICS

MURPHY          JIM

NORM-REFERENCED ASSESSMENT PROGRAM FOR TEXAS
CONFIDENTIAL STUDENT LABEL

Comprehensive Assessment Program

TEST DATE APRIL 1992
MURPHY          JIM
FORM 2          GRADE 5    SPRING 1992
STUDENT-ID (PEIMS): 456712610

## TEAMS CONFIDENTIAL

TEST DATE: 10/90
STUDENT: MURPHY  JEDIDIAH I
BIRTH DATE: 09/13/75
DISTRICT: 254-903 EDGEWOOD ISD
CAMPUS: 001 EDGEWOOD H S

| | SCALE SCORE | SUBJECT |
|---|---|---|
| WRITING | 1570 | YES |
| READING | 1540 | YES |
| MATHEMATICS | 1420 | YES |

## TEAMS CONFIDENTIAL

EXIT LEVEL CUMULATIVE LABEL
STUDENT: MURPHY  JEDIDIAH I
BIRTH DATE: 09/13/75
STUDENT ID (PEIMS): 456712610
DISTRICT: 254-903 EDGEWOOD ISD
CAMPUS: 001 EDGEWOOD H S

| | SCALE SCORE | MET MINIMUM EXPECTATIONS |
|---|---|---|
| WRITING | 1770 | YES |
| READING | 1510 | YES |
| MATHEMATICS | 1490 | NO |

Academic Achievement Record Sent:

Requesting Agency

Date Sent

Special Comments

00610

EDGEWOOD INDEPENDENT SCHOOL DISTRICT
DISCIPLINE MANAGEMENT PLAN
PARENTAL AGREEMENT

I am the Parent/guardian of _____
and I have read the Discipline Management Plan of the Edgewood
Independent School District, and I am aware of the responsibilities
outlined in the program.

_____          _____
Signature                      Date

A copy of this agreement must be signed and returned to the
Principal's Office each year your child attends Edgewood
Independent School District.

---

**IMMUNIZATION RECORD**

Name: Murphy, Jim (Tolar)    Date of Birth: 9-1-75    Sex: (M)  F

Address: Box 412, Edgewood    Tel. No.: 796-4779

School: Edgewood H.S.    Parent's Name: Bob √ Samatha Murphy

| VACCINES | DATE | DATE | DATE | DATE |
|---|---|---|---|---|
| DTP, DT, Td-Smallpox | X | | | |
| OPV, IPV-Sabin | X | X | | |
| Measles VACCINE▶ | 1-7-81 | X | 6-27-80 | 6-28-90 |
| Mumps VACCINE▶ | 1-7-81 | X | 6-27-80 | 6-28-90 |
| Rubella VACCINE▶ | 1-7-81 | / | ILLNESS▶ | |
| | | | ILLNESS▶ | |

| | Date: | Result: |
|---|---|---|
| TB Test | | |
| T | | |
| H | | |
| R | | |
| *Diseases | | |

Record hearing and
vision on reverse.

Date: _____    Signed: _____

00611

PHYSICAL EXAM

NO.   000913

Murphy   Tim                                          1   1        11-3-88
LAST NAME      FIRST        MIDDLE      AGE      BIRTHDATE      DATE OF EXAM

_____ (    )
STREET ADDRESS      CITY      COUNTY      STATE   ZIP CODE   PHONE NUMBER

_____ (    )
PARENT OR GUARDIAN                                    WORK PHONE NUMBER

| HEARING EXAM: _____ | VISION EXAM: _20/20_ _c glasses far card_ |
| _____ | _20/20_ _c glasses on near card_ |
| _____ |  |
| REC: _____ BY: _____ | REC: _____ BY: _M. Dougherty_ |
| DENTAL EXAM: _____ | SOCIAL SERVICE NEEDS: _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| REC: _____ BY: _____ | REC: _____ BY: _____ |

VITAL SIGNS AND GENERAL CHECK UP            IMMUNIZATION RECORD

BP _____ PULSE _____ RESPIRATION ____   D.P.T./Oral Polio _____
                                                (5 doses)
GENERAL APPEARANCE _____   _____
HEENT _____   _____
CHEST _____   _____
ABDOMEN _____   _____
EXTREMITIES _____   M.M.R.  (1 dose) _____
OTHER _____   OTHER _____

REC: _____ BY: _____            REC: _____ BY: _____

COMMENTS: _____
_____
_____
_____

SIGNATURE OF EXAMINOR

00612

CHI 1325



AudioScope™ Screening Results
25dB HL

Patient _Jan M Negahan_          Date _11/3/06_

Tested by _D. Moleun_
_Adient Test_

Y = Response     N = No Response

| | Frequency (Hz) | | | |
|---|---|---|---|---|
| | 500 | 1000 | 2000 | 4000 |
| Right Ear | ✓ | ✓ | ✓ | ✓ |
| Left Ear | ✓ | ✓ | ✓ | ✓ |

Form 25010-2

**Welch Allyn**
State Street Road, Box 220
Skaneateles Falls, NY 13153-0220
USA

Reorder No. 55230

00613

## REPORT OF WITHDRAWAL

Name _Tim Tolar_ Date _3/4/87_

School _Fruitvale Elem._

Reason for withdrawal _____

**Please grade student for work completed to date. (Grades in ink, please.)**

| Period | Subject | Room Books Ret'd | Grade | Teacher's Signature |
|--------|---------|------------------|-------|---------------------|
| 1 | Reading | ✓ | 77 | Betty Shaffer |
| 2 | Eng | ✓ | 80 | Betty Shaffer |
| 3 | Spelling | ✓ | 74 | Betty Shaffer |
| 4 | Math | ✓ | 76 | Betty Shaffer |
| 5 | Science | ✓ | 76 | Betty Shaffer |
| 6 | Health | ✓ | 78 | Betty Shaffer |
| 7 | Soc St | ✓ | 75 | Betty Shaffer |

Textbook Custodian _____ Due Refund or Fees Paid _____ Amt. _____

HOMEROOM TEACHER _Betty Shaffer_ Lock Record _____

GUIDANCE DIRECTOR _____ Library Record _____

PRINCIPAL _Marsha Maciel_

Reorder Form 7421 • Steck-Vaughn Company

0061

Textbook Card ——ELEMENTARY SCHOOL, 19 86-1987 SESSION

State of Texas

Name of Pupil _____ Grade _____ School _Fruit Vale_ Ele.

Name and Address of Parent

District _____ County _____

| List of Books | Book No. | Condition of Book | | List of Books | Book No. | Condition of Book | |
|---|---|---|---|---|---|---|---|
| | | Issued | Returned | | | Issued | Returned |
| Arithmetic | | | | Science | S-3-85-7 | | |
| Civil Government | | | | Social Studies | 85-85-5 | | |
| Dictionary | | | | Spanish | | | |
| Art | | | | Spelling | | | |
| Handwriting | | | | Vocal Music | | | |
| History | | | | Band | | | |
| Homemaking | | | | Orchestra | | | |
| Language & Grammar | | | | Intro. Gen. Shop | | | |
| Literature | | | | | | | |
| Physiology | | | | | | | |
| Reader-Basal | | | | | | | |
| Reader-Supp. | | | | | | | |

I certify that the above is the pupil's record of State books.

This card is to be kept by this teacher during the school term. When all books have been returned or paid for, it should be signed by the teacher and given to the pupil as a receipt. Upon entering school again, it must be presented to the teacher before other books will be issued.

Teacher _____

Principal _____

# PERSONNEL DEPARTMENT

Name: _Yedidiah Issac Murphy_

Social Security No.: _456-77-____

Address: _R.1 / Box 412 Edgewood X._

City: _Edgewood_   State: _Texas_   Date: _10/01/88_

Sex: _male_   Color: _White_   Color of Eyes: _Brown_

Age: _13_   Color of Hair: _Brown_   Weight: _75.6_   Height: _5'11"_

Religion: _1st Baptist_   Date of Birth: _9/11/86_   Place of Birth: _Austin_

Occupation: _Student_   Married?: _no_   No. of Dependents: _____   Citizen?: _____

Education: _7th grade_

Remarks: _Best and Samantha Murphy_

_806-4779    Jeff Cabler, Light Mesa_

Place Photo Here

Person To Be Notified In Case Of Emergency

## LIST EMPLOYERS DURING PAST 5 YEARS

| From | To | Firm or Individual | Reason for Leaving | Address |
|------|-----|-------------------|--------------------|---------| 
|      |     |                   |                    |         |
|      |     |                   |                    |         |
|      |     |                   |                    |         |

## GIVE 3 PERSONAL REFERENCES (Do not give relatives)

| Name | Address | Business | How Long Known |
|------|---------|----------|----------------|
|      |         |          |                |
|      |         |          |                |
|      |         |          |                |

The information and finger prints entered and this record are voluntarily submitted by the under-signed as a statement of fact and qualifications for the position applied for and/or hired for. The undersigned expressly authorizes the employer to submit the said information and fingerprints to any person, firm, corporation, body, bureau, department, police officials and police record bureau what-soever or whomsoever, for the purpose of any investigation whatsoever which the employer may desire to make with reference thereto. And the undersigned does remise, release and forever discharge the employer, its successors and assigns of and from all manner of action and actions, suit, either in law or in equity, which against the employer the undersigned ever had, now has or which the undersigned, his heirs, executors and administrators hereafter can, shall or may have, for upon or by reason of any matter, cause or thing whatsoever in connection with the foregoing.

Employee's Signature: _Yedidiah Murphy_

### (For Office Use Only - Do Not Write In Space Below)

Date Employed: _____

Duties: _____

Assigned To: _____

Examined By: _____

Remark: _____

PERSONAL IDENTIFICATION

INDUSTRIAL

NAME _Jedidiah Isaac Murphy_

NO. _____

F.B.I. No. _____
B.C.I. No. _____

CLASS. _____

REF. _____ Mrs Bunce

Date _12/3/68_     BY _Sgt Rose_

Impressions taken by _____

| 1. Right Thumb | 2. R. Fore Finger | 3. R. Middle Finger | 4. R. Ring Finger | 5. R. Little Finger |

RIGHT HAND

| 6. L. Thumb | 7. L. Fore Finger | 8. L. Middle Finger | 9. L. Ring Finger | 10. L. Little Finger |

LEFT HAND

LEFT HAND Plain Impressions Taken Simultaneously

LEFT HAND - Four Fingers

| L. Thumb | R. Thumb |

RIGHT HAND Plain Impressions Taken Simultaneously

RIGHT HAND - Four Fingers

PLEASE DO NOT FOLD THIS CARD

MANUFACTURED BY
SIRCHIE FINGER PRINT LABORATORIES

CAT. NO. FC 334

## Census Registration Card — Grades K-6
### (CENTRAL OFFICE COPY)

Reorder Form 7002 • Steck-Vaughn Company

| NAME OF | | School Year | | | | Code | |
|---|---|---|---|---|---|---|---|
| | | Birthplace Country | Nationality or Ethnic Origin | | Speaks English | | |
| | | | | | Yes | No | |
| STUDENT (Last First Middle) | Tolive   Jim   Ed | | | | | | |
| FATHER | Bob (g Name)  Murphy | | | | | | |
| MOTHER | Samantha  Murphy | | | | | | |
| LEGAL GUARDIAN | (Above) | | | | | | |

To the student and teacher: This information asked for above and on the other side is required for your school record. Fill it out accurately. Have parent or guardian sign this card.

Birthdate of Student: ..... Mo. ....   Day ....   Year 75   Date of Vaccination: ..... Results ........

Birthplace: Senora   Father living? ..... Address ........
List any physical defects    Mother living? ..... Address ........
or handicap;    Full name of person (or institution) with whom student lives, if not with both parents:

Name: ........
Relationship: ........
Residence of student on Feb. 1, 19.....   (District) ........   Address ........

County: ........   State ........

Date moved to present district: Mo. ....   Day ....   Year ....   Date now: ........

Distance student is transported, etc: ........   Bus Route ........   Run No. ........

Signature of Parent or Guardian: ........   Telephone 826-4779

---

## Census Registration Card — Grades K-6
### (SCHOOL COPY)

Reorder Form 7002 • Steck-Vaughn Company

| NAME OF | | School Year | | | | Code | |
|---|---|---|---|---|---|---|---|
| | | Birthplace Country | Nationality or Ethnic Origin | | Speaks English | | |
| | | | | | Yes | No | |
| STUDENT (Last First Middle) | Tolive   Jim   Ed | | | | | | |
| FATHER | Bob (g Name)  Murphy | | | | | | |
| MOTHER | Samantha  Murphy | | | | | | |
| LEGAL GUARDIAN | (Above) | | | | | | |

To the student and teacher: This information asked for above and on the other side is required for your school record. Fill it out accurately. Have parent or guardian sign this card.

Birthdate of Student: ..... Mo. ....   Day ....   Year ....   Date of Vaccination: ..... Results ........

Birthplace: .....   Father living? ..... Address ........
List any physical defects    Mother living? ..... Address ........
or handicap;    Full name of person (or institution) with whom student lives, if not with both parents:

Name: ........
Relationship: ........
Residence of student on Feb. 1, 19.....   (District) ........   Address ........

County: ........   State ........

Date moved to present district: Mo. ....   Day ....   Year ....   Date now: ........

Distance student is transported, etc: ........   Bus Route ........   Run No. ........

Signature of Parent or Guardian: ........   Telephone No. ........

DISTRICT NAME *Edgewood*

TEXAS EDUCATION AGENCY

DIVISION OF BILINGUAL EDUCATION

Home Language Survey

Grades K-7

Name of Child *Jim Solar*

Campus *Edgewood Elementary*

To be filled in by parent of guardian

(1) What language is spoken in your home most of the time? *English*

(2) What language does your child speak most of the time? *English*

*Bob C. Murphy*

Signature of parent or guardian

*3-5-87*

DATE

BE-029a

--------------------------------------------------

Nombre del Districto

CUESTIONARIO DE IDIOMA HOGAREÑO

ESTADO DE TEXAS

Grados K-7

Nombre del niño (a)

Escuela _____ Grado

Debe De Completarse for el padre or guardian:

(1) Cual es el idioma que mas se habla en su hogar?

(2) Cual es el idioma que mas habla su niñi (a) ?

Firma del Parde o Guardian

FECHA

00610

## TEXAS DEPARTMENT OF HEALTH
## VISION SCREENING and/or EYE EXAMINATION

**ATTENTION PARENT:** Please present this certificate when enrolling your child in school for the first time. Article 4419f, Texas Revised Civil Statutes, requires that every child have an eye examination or approved vision screening test prior to, or within 90 days after, entry into a Texas school.

SCHOOL _Edgewood H.S._ CITY _Edgewood_ COUNTY _Van Zandt_

Child's Name _Jim Murphy_ Birth Date _9-1-75_ Age _15_ Sex _male_

Parent's Name _M/M Bob Murphy_ Telephone Number _896-4779_

Address _Box 412 Edgewood TX_ Zip Code _75117_

### VISION SCREENER REPORT

> Visual acuity screening is only a check of the sharpness of a child's vision and should not be interpreted as a substitute for a complete vision examination. A child who fails this screening should be referred to an eye specialist for a complete visual examination.

VISUAL ACUITY
First test                    Screened with glasses?   Yes ☑    SCREENING RESULTS
                                                       No ☐

| Right Eye 20/20 | ☑ Snellen Chart | | PASSED ☑ |
| Left Eye 20/20 | ☐ Other: _____ | (instrument) | FAILED ☐ |

Second test

| Right Eye 20/ | ☐ Snellen Chart | | PASSED ☐ |
| Left Eye 20/ | ☐ Other: _____ | | FAILED - REFERRED ☐ |

Observable Signs _____

Other Tests(s) _____

Reason for referral to Eye Specialist _____

_Elma Milton_                _Edgewood High School_
DATE        VISION SCREENER        ORGANIZATION RESPONSIBLE FOR SCREENING

## EYE SPECIALIST REPORT
### (Ophthalmologist or Optometrist)

| VISUAL ACUITY | Without correction | With correction |
|---|---|---|
| RIGHT EYE | 20/ | 20/ |
| LEFT EYE | 20/ | 20/ |

Problem(s) noted: _____

PLEASE CHECK IF APPROPRIATE:

☐ Recommendations:                        ☐ Corrective Lens prescribed
  ☐ Medical evaluation                   ☐ Constant Wear
  ☐ Glasses                              ☐ Near Vision only
  ☐ Contact Lenses                       ☐ Far Vision only
  ☐ Other: _____                    ☐ May be removed for physical education

☐ Re-examination advised                  Please print or stamp
  ☐ Six months                          Doctors Name: _____
  ☐ Twelve months                       Address: _____
  ☐ Other: _____                    City: _____

Present Date _____
Date of last examination _____                                      **00620**

_Please retain this certificate with other health records of the child._    DOCTOR'S SIGNATURE    1980

## SWEEP CHECK SCREENING TEST

School _Edgewood High School_          Grade _9_  Date _4-22-91_

1. Screen four frequencies at 25 dB HTL.
2. Make a check mark for each tone heard.
3. Identify failure to respond with an "F" or "X."
4. Sequence of tone presentation: ⟶

| Student's Name | ear | 4 500 Hz | 1 1000 Hz | 2 2000 Hz | 3 4000 Hz | Remarks |
|---|---|---|---|---|---|---|
| 1st Screen | | | | | | |
| Jim Murphy | R | ✓ | ✓ | ✓ | ✓ | passed |
| | L | | ✓ | ✓ | ✓ | |
| 2nd Screen | | | | | | |
| | R | | | | | |
| | L | | | | | |

Children failing to respond to TWO (of the four) frequencies in EITHER ear should be re-screened with another Sweep Check Test within 3 to 4 weeks. (Signs or symptoms alone would be sufficient for referral.) Failure of TWO frequencies in EITHER ear on the second Sweep Check Test requires the Threshold Screening Test. (Failure of one frequency may be marked "Observe.")

## THRESHOLD SCREENING TEST

1. Screen six frequencies, beginning each at 40 dB HTL (down--10 dB; up--5dB).
2. Graph the threshold for each frequency ("O" = right ear; "X" = left ear). Connect those symbols with a straight line as screening is completed for each ear.
3. Tone presentation sequence: ⟶

**AUDIOGRAM**

FREQUENCY IN HERTZ

| EAR | AIR |
|---|---|
| Right (red) | O |
| Left (blue) | X |

Complies with ANSI-1969

☐ = Frequencies not used for referral

A child is considered to have failed this test if his/her threshold for any one of the four referral frequencies, between 500 and 4000 Hz, is greater than 25 dB in EITHER ear.

Texas Department of Health                     Form M-40

## TEXAS DEPARTMENT OF HEALTH
### BUREAU OF VITAL STATISTICS

| STATE OF TEXAS | CERTIFICATE OF BIRTH | BIRTH NO. 142-75-169317 |
|---|---|---|

**CHILD**

| 1. NAME (Type or print) (a) First | (b) Middle | (c) Last | 2. DATE OF BIRTH |
|---|---|---|---|
| Jim | Ed | Tolar | September 1, 1975 |

| 3. SEX | 4a. PLACE OF BIRTH — COUNTY | 4b. CITY OR TOWN (If outside city limits, give precinct no.) |
|---|---|---|
| Male | Sutton | Sonora |

| 4c. NAME OF HOSPITAL (If not in hospital, give street address) | 4d. INSIDE CITY LIMITS? | 5a. THIS BIRTH SINGLE, TWIN, TRIPLET, ETC (Specify) | 5b. IF TWIN OR TRIPLET, WAS CHILD BORN 1st, 2nd, 3rd (Specify) |
|---|---|---|---|
| - | Yes | Single | - |

**FATHER**

| 6. NAME (a) First | (b) Middle | (c) Last |
|---|---|---|
| Terry | Clyde | Tolar |

| 7. RACE | 8a. IS FATHER OF SPANISH ORIGIN? | 8b. IF YES, SPECIFY MEXICAN, CUBAN, PUERTO RICAN, ETC |
|---|---|---|
| White | No | - |

| 9. AGE (At time of this birth) | 10. BIRTHPLACE (State or foreign country) | 11a. USUAL OCCUPATION | 11b. KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| 25 | Texas | Delivery Truck Driver | Meat Market |

**MOTHER**

| 12. MAIDEN NAME (a) First | (b) Middle | (c) Last |
|---|---|---|
| Celeste | Elaine | Peoples |

| 13. RACE | 14a. IS MOTHER OF SPANISH ORIGIN? | 14b. IF YES, SPECIFY MEXICAN, CUBAN, PUERTO RICAN, ETC |
|---|---|---|
| White | No | - |

| 15. AGE (At time of this birth) | 16. BIRTHPLACE (State or foreign country) | 17a. USUAL OCCUPATION | 17b. KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| 20 | Texas | Child Care | - |

| 18a. RESIDENCE — STATE | 18b. COUNTY | 18c. CITY OR TOWN (If outside city limits, show rural) ZIP CODE | 18d. STREET ADDRESS (If rural, give location) | 18e. INSIDE CITY LIMITS? |
|---|---|---|---|---|
| Texas | Van Zandt | Grand Saline, 75140 | 313 N. Saline | - |

| 19. Children previously born to this mother (Do NOT include this birth) | a. How many other children are now living? | b. How many other children were born alive but are now dead? | c. How many children were born dead after 20 weeks pregnancy? | 20. INFORMANT |
|---|---|---|---|---|
| 2 | 2 | 0 | 0 | Terry Clyde Tolar |

| 21. I hereby certify to the birth of this child who was born alive on the date stated above | 22a. NAME |
|---|---|
| | Terry Clyde Tolar |

| | 22b. ADDRESS |
|---|---|
| | Route 2, Box 257A, Grand Saline, Texas |

| at 8:10 P.M. | | |
|---|---|---|

| 23a. FILE NO. | 23b. FILE DATE | 23c. SIGNATURE OF STATE REGISTRAR |
|---|---|---|
| 688 | November 7, 1975 | W.D. Carroll |

This is to certify that this is a true and correct reproduction of the original record as recorded in this office. Issued under authority of Rule 54a, Article 4477, Revised Civil Statutes of Texas.

00622

ISSUED

W. D. CARROLL
STATE REGISTRAR

**WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY.**

CERTIFICATION OF VITAL RECORD

Tawater

Jim Ed Tolar
456 - 71 - 2610

Our court hearing on the adoption and
name change is scheduled for this
month according to our attorney.
Jim's new name is:

Jedidiah Isaac Murphy

Social Security will be changed
to that name.

Thanks,
Murphy

00623

# TEXAS EDUCATIONAL ASSESSMENT OF MINIMUM SKILLS
## CONFIDENTIAL STUDENT REPORT

REPORT DATE: MAY 1987
DATE OF TESTING: FEBRUARY 19
GRADE 05

STUDENT: TOLAR                    JIM

DATE OF BIRTH: 09/01/75

DISTRICT STUDENT ID:

DISTRICT: 234-909 FRUITVALE ISD
CAMPUS: 101 FRUITVALE EL
CLASS GROUP: BETTY DRAKE

| SUBJECT AREAS TESTED | OBJECTIVES | MASTERY | ITEMS CORRECT |
|---|---|---|---|
| M A T H | 1.PLACE VALUE<br>2.EQUIVALENT FRACTIONS<br>3.DECIMALS (+,-)<br>4.MULTIPLICATION<br>5.DIVISION<br>6.WORD PROBLEMS (+,-)<br>7.WORD PROBLEMS (x,÷)<br>8.PROBLEMS (DECIMAL)<br>9.MEASUREMENT UNITS<br>10.GRAPHS<br>11.PERIMETER OR AREA OF POLYGONS | YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES | 4<br>4<br>5<br>5<br>4<br>4<br>3<br>3<br>4<br>4<br>4 |
| | TOTAL OBJECTIVES MASTERED: 11 | TOTAL ITEMS CORRECT: 39 | SCALED SCORE: 826 |
| | | DEMONSTRATED MASTERY OF MINIMUM GRADE FIVE MATHEMATICS COMPETENCIES:  YES | |
| R E A D I N G | 1.MAIN IDEA<br>2.CONTEXT CLUES<br>3.SPECIFIC DETAILS<br>4.SEQUENCING OF EVENTS<br>5.DRAWING CONCLUSIONS<br>6.FACT OR OPINION<br>7.CAUSE-AND-EFFECT<br>8.PARTS OF A BOOK<br>9.GRAPHIC SOURCES | YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES<br>YES | 3<br>3<br>5<br>2<br>3<br>3<br>3<br>4<br>3 |
| | TOTAL OBJECTIVES MASTERED: 8 | TOTAL ITEMS CORRECT: 29 | SCALED SCORE: 778 |
| | | DEMONSTRATED MASTERY OF MINIMUM GRADE FIVE READING COMPETENCIES:  YES | |
| W R I T I N G | 1.CAPITALIZATION<br>2.PUNCTUATION<br>3.SPELLING<br>4.CORRECT ENGLISH USAGE<br>5.SENTENCE STRUCTURE<br>6.PROOFREADING | YES<br>YES<br>YES<br>YES<br>YES<br>YES | 3<br>2<br>3<br>3<br>4<br>3 |
| | MULTIPLE-CHOICE OBJECTIVES MASTERED: 5 | TOTAL ITEMS CORRECT: 18 | SCALED SCORE: 600 |
| | DESCRIPTIVE WRITTEN COMPOSITION RATING: 1 | | DEMONSTRATED MASTERY OF MINIMUM GRADE FIVE WRITING COMPETENCIES:  NO |

5001-00089-0070

00624

# FRUITVALE INDEPENDENT SCHOOL DISTRICT

FRUITVALE, TEXAS

**ELEMENTARY SCHOOL**
**PROGRESS REPORT**

STUDENT'S NAME _Jim Tolar_

GRADE _5_   YEAR 19 _86_   -19 _87_

TEACHER _B Drake_

PRINCIPAL _Mrs. Marel_

## ATTENDANCE RECORD

| Report Period | 1 | 2 | 3 | 4 | 5 | 6 | Total |
|---|---|---|---|---|---|---|---|
| Days Present | | | | | | | |
| Days Absent | | | 28 | | | | |
| Tardiness | | | 2 | | | | |
| School work is affected by | | | 0 | | | | |
| frequent absences (Yes-No) | | | | | | | |

## PHYSICAL GROWTH

| | September | May |
|---|---|---|
| Height | | |
| Weight | | |

## PARENT SIGNATURE

_____

_____

_____

_____

numeral Assigned To _____ Grade _____

00625

Student's Name _Jim_

## Areas of Learning (Grades 1-6)

| Reporting Period | 1 | 2 | 3 | Mid Term Avg. | 4 | 5 | 6 | Year Avg. |
|---|---|---|---|---|---|---|---|---|
| Reading          |   |   |   |   |    |   |   |   |
| Level _OL_       |   |   |   |   |    |   |   |   |
| Language         |   |   |   |   | 91 |   |   |   |
| Handwriting      |   |   |   |   | 90 |   |   |   |
| Spelling         |   |   |   |   | C- |   |   |   |
| Math             |   |   |   |   | 74 |   |   |   |
| Level _OL Health_|   |   |   |   | 73 |   |   |   |
| Science+Health   |   |   |   |   | 76 |   |   |   |
| Social Studies   |   |   |   |   | 75 |   |   |   |
| Art (S-N)        |   |   |   |   | S  |   |   |   |
| Music (S-N)      |   |   |   |   | S  |   |   |   |
| P.E.             |   |   |   |   | S  |   |   |   |

### GRADES

A - Excellent (90-100)

B - Good (80-89)

C - Fair (70-79)

F - Failing (69-Below)

## Social Attitudes/Study Habits

| Reporting Period | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| 1. Conduct (A-F) |   |   |   | B |   |   |
| 2. Is Courteous  |   |   |   | S |   |   |
| 3. Works neatly & carefully |   |   |   | S |   |   |
| 4. Works quietly, does not disturb others |   |   |   | S |   |   |
| 5. Finishes work |   |   |   | S |   |   |
| 6. Always has school supplies |   |   |   | S |   |   |
| 7. Follows instructions (oral and written) |   |   |   | S |   |   |
| 8. Is attentive & listens well |   |   |   | S |   |   |
| 9. Gets along well with other students |   |   |   | S |   |   |
| 10. Respects authority |   |   |   | S |   |   |
| 11. Assumes responsibility |   |   |   | S |   |   |
| 12. Uses time wisely |   |   |   | S |   |   |

## EXPLANATION OF MARKS

Levels

AL-Above level

OL-On level

BL-Below level

Progress Mark

N-Needs improvement

I-Improving

S-Satisfactory

U-Unsatisfactory

Students may be working above, on, or below grade level in the basic skills. Both the level on which they are working and the grade they receive are marked so that parents may be aware of the levels of performance of their child.

00626

Jim _____ lls Test
th _____ 75·
_____ 82
_____ 98·
_____ 100
_____ 97
Health _____ 100
Eng. _____ 78·

00627

REPORT OF WITHDRAWAL

Date 3/4/87

Name Tim Tolar

School Fruitvale Elem.

Reason for withdrawal

Please grade student for work completed to date. (Grades in Ink, please.)

| Period | Subject | Room | Books Ret'd | Grade | Teacher's Signature |
|--------|---------|------|-------------|-------|---------------------|
| 1 | Reading | | ✓ | 77 | Betty Pluke |
| 2 | Eng. | | — | 80 | Betty Pluke |
| 3 | Spelling | | — | 74 | B. Pluke |
| 4 | Math | | ✓ | 73 | B. Pluke |
| 5 | Science | | — | 76 | B. Pluke |
| 6 | Health | | — | 73 | B. Pluke |
| 7 | Soc. St. | | | 75 | B. Pluke |

Due Refund on Fees Paid ................... Amt. ...............

Textbook Custodian ..............................   Lock Record ..................

HOMEROOM TEACHER  Betty Pluke

Library Record .................

GUIDANCE DIRECTOR ................................   PRINCIPAL  Morita Mauel

Reorder Form 7421 • Steck-Vaughn Company

∫ 00628



Comprehensive Assessment Program
Individual Student Profile

Achievement Series
American Testronics

00629

Comprehensive Assessment Program

Individual Student Profile

Achievement Series

MURPHY

READING COMPREHENSION
VOCABULARY
LANGUAGE TOTAL
SPELLING TOTAL
CAPITAL. PUNC.
GRAMMAR
MATHEMATICS TOTAL
CONCEPTS
COMPUTATION
COMPUTATION TOTAL
PROBLEM SOLVING
BASIC SKILLS TOTAL
WORD ATTACK
STUDY SKILLS

VOCABULARY
READING COMP
LITERAL COMP
FACT STATED
FACT RESTATED
COMBINING INFO
INFERENTIAL COMP
FACT IMPLIED
CONCLUSION
CRITICAL THINKING
MAIN IDEA
TITLE, TOPIC
CONTEXT CLUES
DIFF-MULT MEAN WORD

MATH COMPUTATION
WHOLE NOS/INTEGERS
ADD/SUBTRACT
MULTIPLY, DIVIDE
DECIMALS
FRACTIONS

MATH CONCEPTS
NUMBER THEORY
GEOMETRY
MEASUREMENT
MATH PROBLEM SOLV
WHOLE NUMBERS
FRACTIONS
CURRENCY, DECIMALS
RATIO, AVG, PERCENT

SPELLING
CONSONANTS
VOWELS
AFFIXES

CAPITAL, PUNC
CAPITALIZATION
PUNCTUATION

GRAMMAR
VERBS
PRONOUNS
OTHER USAGE

REF / STUDY SKILLS
LIBRARY REFERENCE

SOCIAL SCIENCE

006.30

Individual Student Profile

| | GE | NCE | NP | National Percentile |
|---|---|---|---|---|
| READING TOTAL | 7.5 | 54 | 57 | |
| COMPREHENSION | 6.5 | 56 | 52 | XXXXXXX |
| VOCABULARY | 8.8 | 64 | 542 | XXXXXXXX |
| LANGUAGE TOTAL | 6.8 | 48 | 45 | XXXXXXXXX |
| SPELLING | 6.8 | 46 | 50 | XXXXXXX |
| GRAMMAR, PUNC. | 5.7 | 33 | 24 | XXXXXXX |
| MATHEMATICS TOTAL | 6.9 | 45 | 40 | XXXXXXXX |
| CONCEPTS | 6.7 | 49 | 49 | XXXXXXX |
| COMPUTATION | 6.7 | 46 | 44 | XXXXXXX |
| PROBLEM SOLVING | 6.2 | 43 | 19 | XXXXXXXX |
| BASIC SKILLS TOTAL | 5.4 | 31 | 18 | XXXXXXXX |
| WORD ATTACK | 6.4 | 44 | 31 | XXXXXXXXXXXXXX |
| STUDY SKILLS | 3.6 | 15 | 5 | XXXXXXXXX |

| | | | MATH CONCEPTS | |
| VOCABULARY | 83/73 | 01+ 07+ 19+ 25+ | | NUMBER THEORY | 42/56 | 26+ 38- 48- |
| READING COMP | 91/69 | 02- 49+ 54+ | | MEASUREMENT | 33/39 | 51+ 52+ 53- |
| LITERAL COMP | | | | MATH PROBLEM SOLV | 25/47 | 44- 47- 56- |
| FACT STATED-RESTAT | 90/72 | 30+ 43+ 56+ | | WHOLE NUMBERS | 50/61 | 61- 63+ 65- |
| COMBINING INFO | | | | FRAC, CURR, DEC | 33/47 | 62+ 69- 70- |
| INFERENTIAL COMP | 55/65 | 19- 47- 57+ | | RATIO, AVG, PERCENT | 25/37 | 66- 72+ 74- |
| FACT IMPLIED | 45/58 | 05- 13- 47+ | | SPELLING | 60/55 | 01- 04+ 10- |
| CONCLUSION | 50/51 | 45- 54+ 70+ | | CONSONANTS | 86/72 | 03+ 06+ 09+ |
| CRITICAL THINKING | | | | VOWELS | | |
| MAIN IDEA | | | | AFFIXES | 33/42 | 01+ 12+ 14- |
| TITLE/TOPIC | 83/61 | 17+ 25+ 51+ | | CAPITAL, PUNC | 75/78 | 01+ 07+ 10+ |
| CONTEXT CLUES | | | | CAPITALIZATION | | |
| DIFF-MULT-MEAN WORD | 62/57 | 06+ 46- 54+ | | PUNCTUATION | 40/56 | 02+ 08+ 09- |
| MATH COMPUTATION | | | | GRAMMAR | 33/51 | 01- 07+ 08+ |
| WHOLE NUMBER OPNS | 89/69 | 01+ 22+ 24+ | | VERBS | | |
| DECIMAL OPERATIONS | 50/53 | 14+ 15- 19+ | | PRONOUNS | 00/41 | 02- 13- 14- |
| FRACTION OPERATIONS | 70/67 | 06+ 17+ | | OTHER USAGE | 27/48 | 03+ 11+ 15- |
| | | | | REF / STUDY SKILLS | 10/49 | 01- 07- 17+ |
| | | | | LIBRARY REFERENCE | | |
| | | | | SOCIAL SCIENCE | 50/67 | 16+ 19- |

00631

TEXAS ELEMENTARY SCHOOL TRANSFER FORM

This form is to be filled out and given the student at the time he withdraws from school. Please place a question mark in the space where information is not available.

1. Student [illegible] Grade 5
2. Date of Birth 9-1-75 Parent or Guardian
3. School Elementary School District [illegible] Town [illegible] State [illegible]
4. Date Enrolled 9-2-86 Date Withdrawn 1-5-87 Days Absent from School this year [illegible]
5. Has School Insurance ______ Name of Company ______
   Address of Company ______
6. Grades - Card Attached
7. Grade level on which student reads: Year 5 Semester 1
8. Will you make test information available to the receiving school, if requested? yes
9. Immunization - Card Attached
10. Hearing Test Date 85-86 Result normal Eye Test Date 85-86 Result [illegible]
11. Other information that will help this child adjust to the new school situation

Please attach book card, immunization, and report card to this form.

NURSE: ______ CAFETERIA. ______ LIBRARY: ______

PRINCIPAL ______

MALE ☐
FEMALE ☐   DATE OF BIRTH _____   PLACE OF BIRTH _____

Mo.   Day   Yr.   Town   State   STUDENT I.D. NO. _____

## II. ENROLLMENT & WITHDRAWAL RECORD

| DATE | CODE | GRADE | [From School of Reason for Leaving] |
|---|---|---|---|
| 5-89 | | 5/K | |

## III. FAMILY DATA

NAME OF PARENTS

ADDRESS

ETHNIC GROUP

LANGUAGE IN HOME

With Whom Does The Child Reside

| | MOTHER | FATHER | ADDRESS |
|---|---|---|---|

## V. ELEMENTARY — JUNIOR HIGH SCHOOL RECORD

| SUBJECTS | YEAR | Pre-K | KINDERGARTEN | 1ST GRADE | GRADE | GRADE | GRADE | GRADE | GRADE | GRADE | GRADE | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Arithmetic | | | | | | | | | | | | |
| Enriched | | | | | | | | | | | | |
| Basic | | | | | | | | | | | | |
| Reading | | | | | | | | | | | | |
| Remedial | | | | | | | | | | | | |
| Literature | | | | | | | | | | | | |
| English | | | | | | | | | | | | |
| Enriched | | | | | | | | | | | | |
| Basic | | | | | | | | | | | | |
| Writing | | | | | | | | | | | | |
| Spelling | | | | | | | | | | | | |
| Computer Literacy | | | | | | | | | | | | |
| History | | | | | | | | | | | | |
| Social Studies | | | | | | | | | | | | |
| Science | | | | | | | | | | | | |
| Health | | | | | | | | | | | | |
| Art | | | | | | | | | | | | |
| Band | | | | | | | | | | | | |
| Choral | | | | | | | | | | | | |
| Physical Ed. | | | | | | | | | | | | |
| Conduct | | | | | | | | | | | | |
| Unexcused Absence | | | | | | | | | | | | |
| Days Present | | | | | | | | | | | | |

TEACHER

| DATE OF BIRTH | PRE KIN. | 1ST GR. | KINDERGARTEN ENROLLMENT | JUNIOR HIGH | PARENT STATEMENT | ADDITIONAL INFORMATION |
|---|---|---|---|---|---|---|

IV. PHOTO

00633

00634

| NAME OF PUPIL | Sex | Age Yrs Mos | Number Marked | Raw Score | Scores by Age | | | | Grade Scores | | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | NMU | PR | STA9 | MA | PR | STA9 | |
| Tolar, Jim | Boy | 8-4 | 86 | 62 | 97 | 43 | 5 | 4-1 | 60 | 6 | |

TOLAR JIM

SCHOOL LEE

STUDENT TOLAR
ID
JIM
TEST DATE 0205          BIRTHDATE 09/01/75
E

DISTRICT 234-904 GRAND SALINE ISD
CAMPUS 101 GRAND SALINE EL
CONFIDENTIAL OBJECTIVES

| TEST | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Total Items Correct |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 33 |
| MATHEMATICS | Y | N | Y | N | Y | N | Y | Y | Y | Y | 31 |
| READING | Y | Y | Y | Y | Y | Y | | | | | 20 |
| WRITING | Y | Y | Y | Y | Y | | | | | | |

Y = MASTERED   N = NOT MASTERED   2 A = ACCEPTABLE   B = HARD TO READ   C = ILLEGIBLE   D = NOT RATABLE

| TOLAR JIM | PRESCORE* | GD AVG | SCORES | COMPOSITE | READING | LANGUAGE | MATHEMATICS | SKILLS STUDY | SCIENCE | SOCIAL STUDIES |
|---|---|---|---|---|---|---|---|---|---|---|
| GR2 | 3-2 | ACH | NATL PERCENTILE | 40 | 31 | 50 | 40 | 19 | NO TEST | NO TEST |
| BATCH SEP 01 1975 | 4-05 | 1 D | GRADE EQUIV. | 3-6 | 2-9 | 3-9 | 3-6 | 3-6 | NO TEST | NO TEST |
| | | | STANINE | 5 | 4 | 5 | 5 | | | |

| TOLAR JIM EO | PRESCORE* | GD AVG | SCORES | COMPOSITE | READING | LANGUAGE | MATHEMATICS | SKILLS STUDY | SCIENCE | SOCIAL STUDIES |
|---|---|---|---|---|---|---|---|---|---|---|
| GR2 | 4-2 | ACH | NATL PERCENTILE | 16 | 32 | 17 | 05 | 19 | 20 | NO TEST |
| BATCH SEP 1 1975 | 4-86 | E | GRADE EQUIV. | 3-4 | 3-6 | 3-4 | 3-3 | 3-4 | 3-3 | NO TEST |
| | | | INTERP NO.27 | 18 | 34 | 19 | 07 | 21 | 19 | |

Copyright © 1998 ...
All rights reserved.
Printed in the United States of America

SKILLS PROFILE:

EDUC. ABIL. SER.

SUBJECT AREA
COMPOSITE
READING
MATHEMATICS
LANGUAGE ARTS
REFERENCE MATL.
SOCIAL STUDIES
SCIENCE

GRAND SCALING

| SPECIFIC SKILL AREA | PERCENT CORRECT | RATIO RIGHT/TOTAL |
|---|---|---|
| READING VOCABULARY | | |
| MEANINGS | S | 35/40 |
| NONLITERAL MEANINGS | S | 18/20 |
| READING COMPREHENSION | | |
| SUMMARIZING DETAILS | S | 13/50 |
| PERCEIVING RELATIONSHIPS | S | 4/15 |
| DRAWING CONCLUSIONS | N | 4/13 |
| UNDERSTANDING THE AUTHOR | N | 1/6 |
| MATH CONCEPTS | | |
| WHOLE NUMBERS | N | 19/30 |
| FRACTIONS & DECIMALS | N | 7/12 |
| GEOMETRY / MEASUREMENT | N | 5/8 |
| MATH COMPUTATION | | |
| WHOLE NUMBERS | N | 15/42 |
| FRACTIONS, MIXED NUMBERS | N | 4/12 |
| DECIMALS, MONEY, PERCENTS | | |
| MATH PROBLEM SOLVING | | |
| WHOLE NUMBERS | N | 3/10 |
| FRACTIONS-DECIMALS | N | 7/10 |
| RATE & PERCENT PROBLEMS | N | 0/4 |
| GEOMETRY, STAT. / PROBABILITY | | |

| SPECIFIC SKILL AREA | PERCENT CORRECT | RATIO RIGHT/TOTAL |
|---|---|---|
| LANGUAGE ARTS MECHANICS | | |
| CAPITALIZATION | | |
| PUNCTUATION | | |
| LANGUAGE ARTS USAGE | | |
| VERBS OF MODIFIERS | | |
| CLARITY OF EXPRESSION | | |
| SENTENCE STRUCTURE | | |
| SENTENCE TRANSFORMATIONS | | |
| LANGUAGE ARTS SPELLING | | |
| REFERENCE MATERIALS | | |
| PARTS OF A BOOK | | |
| SOURCES OF INFORMATION | | |
| MAPS, TABLES, GRAPHS | | |
| SOCIAL STUDIES | | |
| SOCIOLOGY / ANTHROPOLOGY | | |
| GOVERNMENT | | |
| GEOGRAPHY / ECONOMICS | | |
| SCIENCE | | |
| SCIENCE CONCEPTS / PRINCIPLES | | |
| PROCESS | | |
| EDUCATIONAL ABILITY SERIES | | |
| VERBAL | | |
| NONVERBAL | | |

00636

## Cumulative Record — Grades K-6 (continued)

### EDUCATIONAL TEST RECORD

| Name of Test | Form | T.S. | Remarks |
|---|---|---|---|
| | | | |

### RECORD OF SPECIAL EDUCATION AND PHYSICAL DEFECTS

Psychological Age, Mental Age, or Achievement Age. Use Site if preferred.

| Condition | Action Take | Year-end Results |
|---|---|---|
| | | |

1. Deficient Hearing  3. Orthopedic Handicaps  4. Speech Disorders  5. Lowered Vitality  6. Nervous Disorders
10. Adenoids  11. Skin  12. Feet  13. Posture  14. Heart  15.   16.   17.   18.

### GROWTH, HEALTH, AND IMMUNIZATION RECORD

TELEPHONE NO. (In Pencil)

Notes on Health, Diseases, and Vaccination

| Date | Hgt. | Wgt. | Notes on Health, Diseases, and Vaccination |
|---|---|---|---|
| 10/15 | 54½ | 74¼ | DPT/Pa 3/c ⑤ E. 4.27.80 |
| 5/16 | 53½ | 84 | Polio S/c ⑤ 8.22.80 |
| 5/16 | 53½ | 84 | Measles 1.7.81 |
| | | | Mumps 1.7.81 |
| | | | Rubella 1.7.81 |
| | | | Vision R 20/25 x L 20/20 |
| | | | Hearing R x L x |

Interests, Distinctions, and Memberships

| Grade | | |
|---|---|---|
| | | |

Final Recommendation and Comments

| Date | |
|---|---|
| | |

Signed by:

Student's Name: _Jane Irlen_

## Areas of Learning (Grades 1-5)

| Reporting Period | 1 | 2 | 3 | 4 | 5 | 6 | Year Avg. |
|---|---|---|---|---|---|---|---|
| Reading: | 80 | 88 | 7½ | | | | |
| Level | OL | OL | OL | | | | |
| Language | 85 | 83 | 87 | | | | |
| Handwriting | 82 | 75 | 80 | | | | |
| Spelling | 81 | 85 | 75 | | | | |
| Level | 54 | 82 | 84 | | | | |
| Math | AL | AL | AL | | | | |
| Level | AL | AL | AL | | | | |
| Science-Health | 82 | 81 | 75 | | | | |
| Social Studies | 69 | 78 | | | | | |
| Art (S/N) | 93 | 94 | 92 | | | | |
| Music (S/N) | S | S | | | | | |
| P.E. | S | S | | | | | |

*Math: Daily average 55, test average 61.
*L.L. didn't turn in a long report: 52.

### GRADES

A - Excellent (90-100)
B - Above Average (80-89)
C - Average (70-79)
D - Below Average (60-69)

## Social Attitudes/Study Habits

| Reporting Period | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| 1. Conduct (A-F) | S | S | | | | |
| 2. Is courteous | S | S | | | | |
| 3. Works quietly & carefully | S | S | | | | |
| 4. Works quietly, does not disturb others | N | N | | | | |
| 5. Finishes work | N | N | | | | |
| 6. Always has school supplies | S | S | | | | |
| 7. Follows instructions (oral and written) | S | S | | | | |
| 8. Is attentive & listens well | N | N | | | | |
| 9. Gets along well with other students | S | S | | | | |
| 10. Respects authority | S | S | | | | |
| 11. Assumes responsibility | S | S | | | | |
| 12. Uses time wisely | S | N | | | | |

### EXPLANATION OF MARKS

Levels
AL - Above level
OL - On level
BL - Below level

Progress Mark
N - Needs improvement
I - Improving
S - Satisfactory

Students may be working above, on, or below grade level in the basic skills. Both the level on which they are working and the grade they receive are marked so that parents may be aware of the level of performance of their child.

00637

DISTRICT NAME _____

TEXAS EDUCATION AGENCY
DIVISION OF BILINGUAL EDUCATION

Home Language Survey
Grades K-8

Name of Child _____

Campus _____   Grade ____

TO BE FILLED IN BY PARENT OR GUARDIAN:

(1) What language is spoken in your home most of the time?

(2) What language does your child speak most of the time?

Signature of Parent or Guardian _____

Date _____

BE-029A

---

Nombre del Distrito _____

CUESTIONARIO DE IDIOMA HOGAREÑO
ESTADO DE TEXAS
GRADOS K-8

Nombre del Niño(a) _____

Escuela _____   Grado ____

DEBE DE COMPLETARSE POR EL PADRE O GUARDIAN:

(1) ¿Cuál es el idioma que se habla mas en su hogar?

(2) ¿Cuál es el idioma que mas habla su niño(a)?

FRUITVALE INDEPENDENT SCHOOL DISTRICT
DISCIPLINE MANAGEMENT PLAN
PARENTAL AGREEMENT

I am the parent/guardian of _Jim Tolar_____

and I have read the Discipline Management Plan of the Fruitvale

Independent School District, and I am aware of the responsibilities

outlined in the program.


_____        __1-5-87__
        Signature                      Date

A copy of this agreement must be signed and returned to the
Principal's Office each year your child attends Fruitvale
Independent School District.

00639

SWEEP CHECK SCREENING TEST

School Fruitvale Grade 5 Date 1-21-87

1. Screen four frequencies at 25 dB HTL.
2. Make a check mark for each tone heard.
3. Identify failure to respond with an "F" or "X".
4. Sequence of tone presentation.

| Student's Name | Ear | 500 Hz | 1000 Hz | 2000 Hz | 4000 Hz | Remarks |
|---|---|---|---|---|---|---|
| Screen Jim Tolar | R | ✓ | ✓ | ✓ | ✓ | |
| | L | ✓ | ✓ | ✓ | ✓ | |
| Retest | R | | | | | |
| | L | | | | | |

Vision Screening Test

Student Name: Jim Tolar                    Date: 1-21-87

Grade: 5

Vision Screening                    R 20-20    L 20-20

Glasses worn for testing _____

Failed _____/_____

Passed _____/_____

                                    Referred _____

                                    Treated _____

THE STATE OF TEXAS

V.

JEDIDIAH ISAAC MURPHY

§
§
§
§
§
§

IN THE 194TH JUDICIAL

DISTRICT COURT OF

DALLAS COUNTY, TEXAS

FILED
F00-02424-M
2001 MAY -2  AM 9: 51

**NOTICE OF FILING OF BUSINESS RECORDS PURSUANT TO RULE 902 (10)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through its Assistant District Attorney, Gregory S. Davis, and files this its Notice of Filing of Business Records Pursuant to Rule 902 (10), Rules of Criminal Evidence, and respectfully shows unto the Court the following:

I.

The State hereby files self-authenticated business records from the following persons or entities more than fourteen (14) days prior to the commencement of trial.

1.    Timberlawn Mental Health System.

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 2nd day of May, 2001.

GREGORY S. DAVIS

00644

FILED
F00-02424-M
2001 MAY -2 AM 9:52
JIM HAMLIN
DALLAS CO TEXAS
DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| v. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**AFFIDAVIT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jill Darjee, who being by me duly sworn, deposed as follows:

"My name is Jill Darjee. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of Timberlawn Mental Health System. Attached hereto are 18 pages of records from Timberlawn Mental Health System. These said 18 pages of records are kept by Timberlawn Mental Health System in the regular course of business, and it was the regular course of business of Timberlawn Mental Health System for an employee or representative of Timberlawn Mental Health System with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original."

_(signature)_
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this _14th_ day of _May_, 2001, to

certify which witness my hand and seal of office.



_Donna L. Shoemake_
Notary Public in and for
_Dallas_ County, _Texas_

DONNA L. SHOEMAKE
MY COMMISSION EXPIRES
October 1, 2001

My Commission Expires:
_October 2001_

00645

Chart Copy

00646

**TIMBERLAWN** MENTAL HEALTH SYSTEM
Dedicated to patient care, education and research since 1917.

| | |
|---|---|
| NAME: | MURPHY, JIM |
| MR#: | 89018 |
| UNIT: | AP |
| ADMIN. DR.: | S. Richard Roskos, M.D. |
| ADMIT DATE: | 10/09/99 |

Page 1 of 4

**CHIEF COMPLAINT AND IDENTIFYING INFORMATION:** The patient is a 24-year-old single white male who presents stating "I can't go on."

**HISTORY OF PRESENT ILLNESS:** The patient reports a history of bipolar II disorder and dissociative identity disorder. He is currently followed by Dr. Estabrook at Glen Oaks. The patient reports that he has been feeling more depressed and hopeless recently. He reports a current suicidal plan of overdosing. He states he has not been sleeping very well. He reports frequent nightmares. He reports appetite decline with weight loss. His energy has been poor. He states that he wants to stay in bed all the time. He feels like he is overmedicated from his medications. He reports increasing dissociative episodes. He reports that one of his alters is very aggressive. He reports auditory hallucinations "all of the time."

Recent stressors include relationship problems and starting a new job next week.

**PAST PSYCHIATRIC HISTORY:** As mentioned he is currently followed by Dr. Estabrook at Glen Oaks. He was recently discharged from Glen Oaks earlier this month. He has been involved in drug rehabilitation in the past. He also states that he has been involved in AA, has a sponsor.

**SUBSTANCE ABUSE HISTORY:** He does have a significant history of alcohol use. He used to drink an eighteen pack a day. He did this for four or five years. His last use of alcohol was about two months ago.

**History of Withdrawal:** He does report a history of tremors and nausea.

**Related Medical/Social/Vocational/Legal Problems:** He reports two to three Public Intoxication charges.

**MEDICAL HISTORY:**
Past hospitalizations/surgery: He reports numerous surgeries. He states that he was shot in the hand and the lung in the past. He had an appendectomy in 1994. He had arthroscopic surgery on both knees in 1996.
Serious illnesses: Patient denies.
Review of systems: He states that currently he is okay physically.
Immunization status: Unsure
Dental exam status: Last dental examination was one and a half months ago.

**MEDICATION HISTORY:** Current medications include Haldol 5 mg q h.s.; Effexor unknown dosage; Seroquel 100 mg t.i.d.; Depakote 250 mg t.i.d.

Page 2 of 4

Previous Medication Trials:  Ativan and Klonopin.

Medication Allergies:  Iodine

**PERSONAL/SOCIAL HISTORY:**

Developmental History:  The patient reports normal birth and states that he met developmental milestones on time.  He lived with his biologic parents until age five.  At age five his father died.  He went to a foster home at that point.

Family/Martial History, Social Support Current Living Situation:  He is currently living alone.  He has never been married.  He states that he has a two-year-old daughter.  He does report relationship problems.  He states that his mother is supportive.

Family Psychiatric History:  His father abused alcohol and died of liver cirrhosis.  His brother is an alcoholic.  His paternal grandparents used alcohol.

Vocational History:  He reports that he is currently unemployed.  He states that he is suppose to start a new job next week.

Educational History:  Graduated from high school.

Spiritual Orientation:  States that he is Baptist.

Cultural Issues:  The patient denies.

Legal Issues:  The patient denies.

Physical/Sexual Abuse:  The patient reports that he was sexually abused by his adoptive father from age three to six.

**MENTAL STATUS EXAMINATION:**

1. GENERAL APPEARANCE, BEHAVIOR AND SPEECH:  The patient is well-developed, well-nourished appearing.  He is casually groomed.  He does appear sedated and his speech is mildly slurred.  He is cooperative and makes fair eye contact.

2. MOOD AND AFFECT:  Mood is "depressed."  Affect is congruent.

3. SENSORIUM:

Orientation:  He is mildly sedated.  He is oriented to person, place, time and situation.

4. GENERAL INTELLECTUAL EVALUATION:

Memory:  Immediate, recent and remote memory are fair.



TIMBERLAWN
MENTAL HEALTH SYSTEM
*Dedicated to patient care, education and research since 1917.*

NAME:        MURPHY, JIM
MR#:         89018
UNIT:        AP
ADMIN. DR.:  S. Richard Roskos, M.D.
ADMIT DATE:  10/09/99

**ADMISSION HISTORY**
Chart Copy

00647

00648

# TIMBERLAWN MENTAL HEALTH SYSTEM

*Dedicated to patient care, education and research since 1917.*

| | |
|---|---|
| NAME: MURPHY, JIM | ADMIN. DR.: S. Richard Roskos, M.D. |
| MR#: 89018 | ADMIN. DR.: AP |
| UNIT: AP | ADMIT DATE: 10/09/99 |

### PRELIMINARY TREATMENT PLAN

1 ☐ Discharge and aftercare planning

### RECOMMENDATIONS

Inpatient Hospital Unit:  Admit to the Adult Psychiatric Program.

### STRENGTHS/ASSETS:

1. ☐ Ability to provide for *ADLS*
2. ☐ Effectiveness of *support system* in and beyond immediate family
3. ☐ Impaired social, educational, or occupational functioning related to psych diagnosis

### PROBLEM LIST/JUSTIFICATION FOR ADMISSION:

1. ☐ Impaired reality testing
2. ☐ Diagnostic evaluation, drug therapy or treatment requiring continuous observation
3. ☐ Impaired social, educational, or occupational functioning related to psych diagnosis

### PROVISIONAL DIAGNOSES:

| | | |
|---|---|---|
| AXIS | I. | 1.  Bipolar II Disorder, depressed |
| | | 2.  Dissociative Identity Disorder |
| AXIS | II. | Deferred |
| AXIS | III. | No Apparent Medical Problems |
| AXIS | IV. | Moderate |
| AXIS | V. | Current GAF of 30; Highest GAF past year of 45-50 |

5.  THOUGHT:

Flow of Thought:  Thought process is logical and goal-directed.

Content of Thought:  He reports suicidal thoughts with the plan of overdosing. He denies homicidal thoughts.  He states that he experiences auditory hallucinations most of the time.  He reports a history of visual hallucinations, but none now.

General Fund of Knowledge:  Intelligence is average.

Judgement:  Limited

Page 4 of 4

Physical activities:  Regular

Follow up medical care:  With primary care physician.

Aftercare therapy:  The patient has a medication management follow-up appointment scheduled with MHMR for Wednesday, 10-13-99 at 1:00 p.m. with Kin Kaiser in Terrell, Texas.

**PROGNOSIS:**  Prognosis is fair.

S. Richard Roskos, M.D.

Date Dictated:  11/07/99
Date Typed:  11/10/99
Transcriptionist i.d.:  jw
Job #:  2191



**TIMBERLAWN**
**MENTAL HEALTH SYSTEM**
*Dedicated to patient care, education and research since 1917.*

NAME:        MURPHY, JIM
MR#:         89018
UNIT:        AP
ADM. DR.:  S. Richard Roskos, M.D.

**DISCHARGE SUMMARY**
Chart Copy

00649

2 ☐ Medical consultation and baseline laboratory studies
3 ☐ Stabilize behavior and facilitate rapid diagnosis
4 ☐ Psychopharmacologic evaluation and treatment
5 ☐ Social/Family assessment
6 ☐ Continuous skilled observation in a safe environment

Jim Airhart, M.D.

Date Dictated: 10/09/99
Date Typed: 10/11/99
Transcriptionist i.d.: jw
Job #: 1238

2

TIMBERLAWN
MENTAL HEALTH SYSTEM
*Dedicated to patient care, education and research since 1917.*

NAME: MURPHY, JIM
MR#: 89018
UNIT: AP
ADMIN. DR.: S. Richard Roskos, M.D.
ADMIT DATE: 10/09/99

Case 3:10-cv-00163-N Document 42-4 Filed 05/05/10 Page 420 of 642 PageID 1721

890.0

## [INITI]AL EVALUATION
### PART I
#### (May be completed by QMHP or Physician)

Patient Name _Jim Murphy_ _____ Accompanied By _W_

s# _456 - 71 - 2610_ ___ Date _10-9-99_ ___ Time _11:20a_

### IDENTIFYING INFORMATION AND CHIEF COMPLAINT
28 m/o WM - presents with "I cant go on"

### HISTORY OF PRESENT ILLNESS

Pt reported ↑ depression w/ ↑ hopeless

Pt reported ↑SI w/ plan of OD

Pt reported ↓ sleep (4 hrs a night) ↑nightmares

Pt reported ↓ appetite w/ weight loss

Pt reported ↓ energy - stays in bed all day

Pt reported ↑ dissociative episode - pt blackout for 2 days

Pt reported ↑ irritability - pt reported one of her personalities is very aggressive - last week - pt had to be restrained

Pt reported ↑ auditory hallucinations "all of the time"

### RECENT/REMOTE STRESSORS: relationship problems, to start a new job next week.

### PAST PSYCHIATRIC HISTORY

Pt dc fl Glenn Oaks  10/6 - there (w/ C) Dr. Esterson

Pt inpt at Glenn Oaks for 30 days - Sept 95

Pt reported inpt drug rehab  Nov 97 - Dec 97 - Oak + River - Marshal

Pt reported he has been in AA - has a sponsor - most recent 2 mos ago

**TIMBERLAWN**
MENTAL HEALTH SYSTEM™

Page 1 of 5

Patient Name _____
Attending _J.M
    DR. ROSKOS
    AP - 9-1-75
    NS/MG

Trial 4/97-1

INITIAL EVALUATION

00051

x? started at age 10

## SUBSTANCE ABUSE HISTORY

| Substance | Amount/Route | Duration | Last Use |
|---|---|---|---|
| alcohol | 18 pack q day | q day 4.5 yrs | 2 month ago |
| | | | |
| | | | |
| | | | |
| | | | |

History of Withdrawal: tremors, nausea.

Related Medical/Social/Vocational/Legal Problems: 2-3 PI's

## MEDICAL HISTORY

Serious Illnesses: Pt denies

Past Hospitalizations/Surgeries: Pt reported numerous surgeries - shot in the hand & leg. Pt reported appendectomy-94, orthoscopic on both knee 96

Review of Systems: Pt reported as in OK physical health.

Immunization Status: Pt reported unknown

1st Dental Examination: Pt reported 1½ mo ago

TB Screen: ☐ Night Sweats ☐ Productive Cough ☐ Exposure ☐ Hx. of Alcohol/Chemical Abuse

## MEDICATION HISTORY

| *Psychiatric* Name | Dose/Duration | Last Taken | *Medical* Name | Dose/Duration | Last Taken |
|---|---|---|---|---|---|
| haldol | 1.5mg q h.s. | 10-9-99 | Pt denies | | |
| effexor | ? mg q day | 10-9 99 | | | |
| seroquel | 100mg q tid | 10-8 99 | | | |
| depakote | 250mg tid | 10-9-99 | | | |
| | | | | | |
| | | | | | |

Previous Med Trials: ativan, klonopin

Medication Allergies: iodine

TIMBERLAWN MENTAL HEALTH SYSTEM℠

Patient Name: ... 10-?-99
Attending Physician: MURPHY, JIM
DR. ROSKOS
AP 9-1-75

## INITIAL EVALUATION

**PERSONAL SOCIAL HISTORY**

Development History *Pt reported normal birth + met development milestones WN. Pt reported living w/ bio parents until age 5. Pt (B) did not age*

Family History, Social Support, Current Living Situation *Pt live alone. 1 marriage. Pt has one daughter - 24 y/o age. Pt SUPPORT: NS*

Family Psychiatric History *(B) - alcohol - died liver cirrhosis. (B) - alcoholic. paternal Gparent - alcohol. paternal (U) - alcoholism*

Vocational History *Pt reported currently unemployed - most recent 7/98*

Educational History *Pt reported graduated 4/ h.s.*

Spiritual Orientation *Pt reported "Baptist"*

Cultural Issues *Pt denies*

Legal Issues *Pt - denies*

Physical/Sexual Abuse *Pt reported sexual abuse by adopt from age 3-6 y.s.*  □ Victim  □ Perpetrator

**MENTAL STATUS EXAMINATION**

Appearance, Behavior and Speech *Pt appo presented casually dressed. Pt maintained intermitten*

Mood *depressed*    Affect *restricted*

Sensorium

Level of Consciousness: *mildly drowsy*

Orientation:   Person ✓   Place ✓   Time ____   Situation ✓

Memory:   Immediate (digital span) *good*

Recent (2/3 objects at 5') *3  / 3 a 5*

Remote (e.g., past presidents) *Carter, Nixon, Roosevelt, Clinton, Fos*

Intelligence (estimated by vocabulary, reasoning and insight) *average*

Thought Process *clear*

Thought Content (Hallucinations, Delusions, S/H Ideation) *Pt reported ↑SI w/ plan + OD. Pt denies current or past HI. Pt reported aud. halluc. that talks to him. Pt reported visual halluc. saw snake - twt ago*

Judgement *impaired*

Abstractions (similarities/proverbs) *appl/banana - "you peel them", dog/table "Bro 'leg*

TIMBERLAWN
MENTAL HEALTH SYSTEM™

Patient Name:

Attending Physician:
ROSKOS JIM
DR. ROSKOS
AP  9-1-75
NS/MG

00653

INITIAL EVALUATION

INITIAL EVALUATION

PROBLEM LIST/JUSTIFICATION FOR ADMISSION

Risk Assessment: Harm to Self: ✓ Others: ______ : High risk: ✓ Medium Risk ______ Low risk ______

History of Suicide Attempts: Pt OD 11/97

Plan/ Means/ Intent: Pt reported current plan of OD

History of Aggressiveness: pt reported ↑ aggressiveness - has personality that is aggressive - physically

(check all that are appropriate)

1. ☐ Severe behavioral disturbances, psychopathology or disorganized behavior
2. ☐ Runaway or escape behavior
3. ☐ Assaultive behavior
4. ☑ Impaired reality testing
5. ☑ Diagnostic evaluation, drug therapy or treatment requiring continuous observation
6. ☑ Impaired social, educational, or occupational functioning related to psych diagnosis
7. ☐ Alcohol or chemical addiction, abuse or dependence
8. ☐ Legally mandated involuntary admission

STRENGTHS/ASSETS

(check all that are appropriate)

1. ☑ Ability to provide for *ADLS*
2. ☑ Effectiveness of *support system* in and beyond immediate family
3. ☑ *Motivation* for treatment
4. ☐ Stability and support of *employment*
5. ☐ *Educational* attainment and intellectual skills
6. ☐ *Insight* into and judgement regarding current problem/problems
7. ☐ Range of *interests* in hobbies, sports, arts, music, reading
8. ☐ Functionality of marriage and *family* system
9. ☑ *Readiness* to learn

RECOMMENDATIONS

Inpatient Hospital Unit: AP Dr. [illegible]

Partial Hospital Unit: ______ Referred By: ______

Outpatient Services Clinic: ______

☐ Individual ☐ Family/Couples ☐ Group ☐ Med Eval

PRELIMINARY TREATMENT PLAN

1. ☒ Discharge and aftercare planning
2. ☒ Medical consultation and baseline laboratory studies
3. ☒ Stabilize behavior and facilitate rapid diagnosis
4. ☒ Psychopharmacologic evaluation and treatment
5. ☒ Social/Family assessment
6. ☒ Continuous skilled observation and safe environment
7. ☐ Medical detoxification

ESTIMATED LENGTH OF STAY ______

10-9-99.

TIMBERLAWN MENTAL HEALTH SYSTEM

Page 4 of 5

Patient Name: [illegible]

Attending Phys: [illegible]

Unit: AP 9-1-75

NS/MG

MR #

00654

INITIAL EVALUATION
PART II
(This section MUST be completed by Physician if Patient is Admitted)

Physicians' brief clinical summary, Formulation and Mental Status Exam (*Does not need to be completed if physician completed PART I*)

24 y/o single w/m reports a history of Bipolar II disorder and DID. States he has been more depressed — expresses SI c̄ plan to OD. Reports being over-sedated from medication

## PROVISIONAL DIAGNOSIS

AXIS I   1) Bipolar II disorder, depressed

2) DID

3) _____

AXIS II   deferred

AXIS III   Ø

AXIS IV (specify)   moderate

AXIS V (current)   30   (highest in past year)   45-50

## DETERMINATION OF PRELIMINARY EXAMINATION

on basis of preliminary examination, I determine that this patient has the symptoms of mental illness and will benefit m hospitalization and admit such as a (circle one) voluntary / involuntary patient.

| I found the patient to be factually competent | ☑ Yes | ☐ No |

HP Signature _(signature)_   Date 10-9-99
(who completed PART I, if other than physician)

sician Signature _(signature)_ MD   Date 10/9/99

# TIMBERLAWN
MENTAL HEALTH SYSTEM℠

Patient Name _____
Attending Physician _____ JIM
Unit ROSKOS
MR# LMG

TIAL EVALUATION
: 5 of 5

00655

09900

Chart Copy

# PHYSICAL EXAM

**TIMBERLAWN MENTAL HEALTH SYSTEM**

*Dedicated to patient care, education and research since 1917.*

NAME: MURPHY, JIM
MR#: 89018
UNIT/ROOM#: AP
ACCT.#:
ADMIN. DR.: S. Richard Roskos, M.D.
ADMIT DATE: 10/09/99

Page 1 of 2

**VITAL SIGNS:**

BLOOD PRESSURE: 124/70
PULSE: 100 regular
RESPIRATIONS: Nonlabored
HEIGHT: 5'9"
WEIGHT: 136 pounds

**PRESENT ILLNESS:** This is a twenty-four-year-old male, who is admitted for depression. He has no chronic medical problems. His weight is unchanged.

**PAST MEDICAL HISTORY:** Surgical--gunshot wound left hand 1994 with subsequent operations; gunshot wound right lung 1994; appendectomy 1988. Allergies--iodine.

**REVIEW OF SYSTEMS:** Head and neck--grinds his teeth and complains of jaw pain. Cardiorespiratory--no chest pain or shortness of breath. GI--no weight loss. GU--negative.

**GENERAL:** This is a well-developed, well-nourished male in no distress.

**HEENT:** Head was normocephalic, no signs of trauma. Eyes - sclerae clear, pupils are equal, round and reactive. EOMs intact. Ears - TMs clear. Mouth - Tongue in midline, uvula elevates normally, no lesions seen.

**NECK:** Supple, no thyromegaly or nodules. Upstrokes are normal.

**CHEST:** Clear.

**HEART:** S1 and S2 normal. No murmurs, gallops, or clicks.

**ABDOMEN:** Benign, soft, nontender, no masses.

**EXTREMITIES:** No edema, no tremor, pulses intact.

**LYMPHATICS:** No cervical or axillary adenopathy.

Page 2 of 2

**NEUROLOGICAL:** Cranial nerve testing - grossly normal vision, normal extraocular movements, normal muscles of mastication, normal facial symmetry, normal hearing, normal phonation, normal elevation of the uvula, normal trapezius muscle strength, normal tongue movements. Cerebellar testing - Finger-nose-finger normal. Reflex testing is normal, symmetric. No clonus. Hoffmann's absent. Strength testing is normal and gait is normal.

**IMPRESSION:**

1. Normal exam.



Paul Neubach,  MD

Date Dictated:  10/10/99
Date Typed:  10/12/99
Transcriptionist i.d.:  pr
Job #:  1266

TIMBERLAWN
MENTAL HEALTH SYSTEM
*Dedicated to patient care, education and research since 1917.*

NAME:       MURPHY, JIM
MR#:          89018
UNIT/ROOM#: AP
ACCT.#:
ADMIN. DR.:       S. Richard Roskos, M.D.
ADMIT DATE: 10/09/99

PHYSICAL EXAM
Chart Copy

00657

8C900

DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE
PUBLIC HEALTH SERVICE
ALCOHOL, DRUG ABUSE, AND MENTAL HEALTH ADMINISTRATION
NATIONAL INSTITUTE OF MENTAL HEALTH

**ABNORMAL INVOLUNTARY MOVEMENT SCALE (AIMS)**

10-6-99
M106301
M89018
MURPHY, JIM
O+. R5KO5
A# 2-1-75
N5/46

ADDRESSOGRAPH

**INSTRUCTIONS:** Complete Examination Procedure (reverse side) before making ratings.
**MOVEMENT RATINGS:** Rate highest severity observed. Rate movements that occur upon activation one *less* than those observed spontaneously.

Code:
0 = None
1 = Minimal, may be extreme normal
2 = Mild
3 = Moderate
4 = Severe

| | | (Circle One) |
|---|---|---|
| **FACIAL AND ORAL MOVEMENTS:** | 1. Muscles of Facial Expression e.g., movements of forehead, eyebrows, periorbital area, cheeks; Include frowning, blinking, smiling, grimacing | (0) 1 2 3 4 |
| | 2. Lips and Perioral Area e.g., puckering, pouting, smacking | (0) 1 2 3 4 |
| | 3. Jaw e.g., biting, clenching, chewing, mouth opening, lateral movement | (0) 1 2 3 4 |
| | 4. Tongue Rate only increase in movements both in and out of mouth, NOT inability to sustain movement | (0) 1 2 3 4 |
| **EXTREMITY MOVEMENTS:** | 5. Upper (arms, wrists, hands, fingers) Include choreic movements (i.e., rapid, objectively purposeless, irregular, spontaneous), athetoid movements (i.e., slow, irregular, complex, serpentine). DO NOT Include tremor (i.e. repetitive, regular, rhythmic) | (0) 1 2 3 4 |
| | 6. Lower (legs, knees, ankles, toes) e.g., lateral knee movement, foot tapping, heel dropping, foot squirming, inversion and eversion of foot | (0) 1 2 3 4 |
| **TRUNK MOVEMENTS:** | 7. Neck, shoulders, hips e.g., rocking, twisting, squirming, pelvic gyrations | (0) 1 2 3 4 |

| | | | |
|---|---|---|---|
| **GLOBAL JUDGMENTS:** | 8. Severity of abnormal movements | None, normal | (0) |
| | | Minimal | 1 |
| | | Mild | 2 |
| | | Moderate | 3 |
| | | Severe | 4 |
| | 9. Incapacitation due to abnormal movements | None, normal | (0) |
| | | Minimal | 1 |
| | | Mild | 2 |
| | | Moderate | 3 |
| | | Severe | 4 |
| | 10 Patient's awareness of abnormal movements Rate only patient's report | No awareness | (0) |
| | | Aware, no distress | 1 |
| | | Aware, mild distress | 2 |
| | | Aware, moderate distress | 3 |
| | | Aware, severe distress | 4 |
| **DENTAL STATUS:** | 11. Current problems with teeth and/or dentures | No | (0) |
| | | Yes | 1 |
| | 12. Does patient usually wear dentures? | No | (0) |
| | | Yes | 1 |

MH-9-117
1-97

M10?_01    10-9-?
M89018
MURPHY, JIM

**TIMBERLAWN MENTAL HEALTH SYSTEM**

**MEDICAL HISTORY REVIEW QUESTIONNAIRE**

NAME: Jedidiah Issac Murphy   AGE 24   MARITAL STATUS S

COMPLETED BY: Leah Ray   RELATIONSHIP Friend   DATE 10/9/99

**CURRENT MEDICAL CARE:**

Are you or have you ever been under the care of a physician for any type of medical problem? If so, please explain.

APPENDICITIS   KNee Surgery (both Knees)
HAND SURGERY
LUNG SURGERY

CHECKUP:

Approximate date of your last checkup: 7-10 days   Done for: (Circle) Illness, Routine, Work, Insurance

Name of Doctor: DR. Esterbrook   Address: GLEN OAKS

Included in checkup: (Circle) History, physical, Blood tests, Urine Tests, X-ray, EKG (cardiogram), Pap smear

Date of your last tetanus shot: UNKNOWN

Approximate date of last dental checkup 2 moNTHS Dentist's Name Dr. FREAKER

**MEDICATION:**

Please list all medications (prescription and non-prescription) that you currently take and dosage, if known:

DEPAKOTE
HALDOL
SEREQUEL

**ALLERGIES:**

Please list all medications you are allergic to, including X-ray dye:

iodine

**HOSPITALIZATIONS AND SURGERY:**

List any and all surgeries (problem/year):
shot — hand/gLung - 96
APENDicitis -94
ORTHOSCOPE - 96
List any other hospitalizations (problem/year):
GLEN OAKS HOSPITAL   99
DID

List any other major illnesses you have had (hepatitis, HIV, etc, include date):
None

**WEIGHT:**

Now UnKnowN   One year ago ___   Have you had a 10 lb. weight change within the last year? ___

**ALCOHOL AND TOBACCO:**

Do you smoke? yes   How much? (pack or less   How long? 6 yrs

Do you drink alcohol? (Circle): Never, Less than one drink daily, 1-2 daily, More than 2 daily   NONE

Have you ever drunk more heavily than you do now? YES   Have you ever taken unprescribed drugs (including "street drugs")? ___

If so, specify: ___

|  | YES | NO | EXPLAIN ALL YES ANSWERS |
|---|---|---|---|
| 1. Have you had any fever in the last week? |  | ✓ |  |
| 2. Do you have frequent headaches? If so, describe what they are like. | ✓ |  |  |
| 3. Have you had a recent change in your vision or hearing? |  | ✓ |  |
| 4. Have you ever had numbness, severe muscular weakness? | ✓ |  |  |
| 5. Have you ever had trouble with dizziness? | ✓ |  |  |

00659

00660

| | Yes | No |
|---|---|---|
| 6. Have you had seizures or tics? | ✓ | |
| 7. Have you had unusual sensitivity to heat or cold or insensitivity? | | ✓ |
| 8. Do you have trouble breathing, a chronic cough, or have you coughed up blood? | | ✓ |
| 9. Do you have chest pains, high blood pressure, or any type of heart problems? | | ✓ |
| 10. Do you have any abdominal pains, any change in bowel habits, or have you had any rectal bleeding? | | ✓ |
| 11. Do you have difficulty or pain in urination, or blood in urine? | | ✓ |
| 12. Have you had blackout spells? | ✓ | |
| 13. Do you have trouble with walking or balance? | ✓ | |
| 14. Do you have back pain or other back problems? | ✓ | |
| 15. Do you have arthritis? | | ✓ |
| 16. Have you had frequent ear infections? | | ✓ |
| 17. Have you had frequent sore throats? | | ✓ |
| 18. Do you have any ongoing dental problems? | ✓ | |
| 19. Have you received any transfusions? | | ✓ |

**FOR WOMEN:** (If you are uncomfortable answering any of these questions, you may respond later in private with your physician.)

Are you having periods? Yes ______ No ______ Date of last normal menstrual period: ______

Menses: (Please check appropriate boxes) Normal ☐ Heavy ☐ Irregular ☐

Please Explain) ______

Possibility of current pregnancy? (Check): Yes ______ No ______

Pregnancies:
Number ______ Miscarriages ______ Complications ______ Abortions ______

History of venereal disease (herpes, gonorrhea, syphilis): ______

Date of last Pap smear ______ Birth Control Pills ______

Recent change in sexual functioning ______

**FOR MEN:** (If you are uncomfortable answering any of these questions, you may respond later in private with your physician.)

Onset of puberty N/A

History of venereal disease (herpes, gonorrhea, syphilis, non-specific discharge): N/A

Recent change in sexual functioning YES SIR BIG PROBLEM!

**FOR ADOLESCENT AND CHILDREN UNIT PATIENTS:**

Give inoculation dates:

DPT or TD ______ basic series ______ boosters ______

Polio ______ basic series ______ boosters ______

Measles ______

Mumps ______

Rubella ______

Most Recent Tine Test ______

## PHYSICIAN'S ORDERS

Drug Allergies: *Iodine*

| Date & Time | Another brand of drug identical in form and content may be dispensed unless checked ☐ | DO NOT USE THIS SHEET — UNLESS A RED NUMBER SHOWS ⬭ |
|---|---|---|

10/9/99
12:15 pm

Admit to Dr.: *Avelos*                         Program: *AP*

Allergies: *Iodine*                              Diet: *Regular*

Admission lab as follows: TSH, CBC c̄ Diff. & Plt Count,   N4096699-2

Basic Metabolic Profile, RPR, Hepatic Panel

☒ Other labs: *Depakote level*   N4096699-2

Observation Status:        ☒  Close Observation
                           ☐  Suicide Precaution
                           ☐  Elopement Precaution

☒ Patient may smoke. Withdrawal from nicotine could interfere with treatment at this time.

Medications: ① *Seroquel 100-g po q am, 200-g po q hs*
② *Depakote 250-g po q am, 500-g po q hs*
③ *Effexor 37.5 mg po bid*
④ *Tylenol 650-g po q 6° prn pain*
⑤ *MOM 30cc po q 4° prn constipation*
⑥ *Maalox + Mylox 30cc po q 4° prn indigestion*

If Using Admitting Form, Destroy Second White Copy

Physician Signature: *SB* *MD*

TIMBERLAWN
MENTAL HEALTH SYSTEM

13-9-99

KIM
DR. JOSKOS
AP 9-1-75
RS/RG

00661

PLEASE! USE BALL POINT PEN ONLY

YELLOW - PHARMACY COPY

# PHYSICIAN'S ORDERS

Drug Allergies: Iodine

| Date & Time | Another brand of drug identical in form and content may be dispensed unless checked ☐ | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS → |
|---|---|---|
| 1/10/99 | Δ Seroquel to 100mg po TID (midday dose now) | |
| 13:50 | Δ Depakote 250mg po TID [midday dose now] | |
| | Δ Effexor to Effexor XR 150mg q2m | |
| | Noted; P. Pickard RN - 1355 P. Pickard RN | |
| 10/10/99 2200 | T.O. Ativan 2mg p.o. q HS prn insomnia | |
| | Dr. Bracken / R. Dowzge | |
| | Jill Bracken DO 11/14/99 @ 1600 | |
| 10/11/99 | D/C Effexor | |
| | Serzone 50mg / Bid 100 hs | |
| | ↑ Seroquel to 100mg tid (5-1-5) | |
| | add 300 hs | |
| | Klonopin 1mg tid | |
| | noted 10/11/99 @ 1045 [illegible] | |

May participate in Memory Research Yes ✓ No ___

Date ___

Sign ___

10/12/99 @ 0050 2nd orders noted Mimmeeler RN

If Using Admitting Form, Destroy Second White Copy

Physician Signature:

TIMBERLAWN MENTAL HEALTH SYSTEM℠

10-5-99

[illegible] JIM
DR. ROSKOS
AP 9-1-75

00662

PLEASE! USE BALL POINT PEN ONLY

YELLOW - PHARMACY COPY

3117 REV 5/99

# PHYSICIAN'S ORDERS

Drug Allergies:

| Date & Time | Another brand of drug identical in form and content may be dispensed unless checked ☐ | DO NOT USE THIS SHEET ──→ UNLESS A RED NUMBER SHOWS |
|---|---|---|
| 12 P 5 | _Dr Jr [illegible] Sept reqt_ | _[illegible signature]_ |
| | _Jill Bracken DO 11/14/99 @ 1600_ | |

If Using Admitting Form, Destroy Second White Copy

Physician Signature:



**TIMBERLAWN** MENTAL HEALTH SYSTEM℠

```
M10650!    10-9-99
M89018
MURPHY, JIM
DR. ROSKOS
AP  9-1-75
NS/MG
```

00663

PLEASE! USE BALL POINT PEN ONLY

3117 REV 5/99



**LabCorp**

| Specimen # | Control/Reference Number | PAGE # |
|---|---|---|
| 43657330-6 | M4056[illegible]-2 | |

| Fasting | Micro Source | Total Urine Volume | Report Status |
|---|---|---|---|
| | | | FINAL |

| Date Collected | Time Collected | Date Entered | Date Reported |
|---|---|---|---|
| 11-OCT-99 | | 11-OCT-99 | 12-OCT-99 |

Patient ID Number: 106501
Patient Name: MURPHY,JIM
Sex: M
Date of Birth: 01-SEP-1975
Patient Address:

Comments: AGE: 24 SPC RCVD: COR,R,L

Clinical Information: 9[illegible]6-7500 [illegible] DALLAS, TX 75230 CL-0141 C.A.R. 20680 CLIA # 45D04808

Account [08972-7]
TIMBERLAWN INPATIENT SERVICES
4600 SAMUELL BLVD.
DALLAS, TX 75228

DR. ROSKOS

[ 316 ]
ROUTE: 08972-57993.003

Tests Requested: HEPATIC FUNCTION PANEL, COMP. METABOLIC PANEL (13), THYROID PANEL WITH TSH, CBC WITH DIFFERENTIAL/PLATELET, RPR, Valproic Acid, Serum, VENIPUNCTURE.

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| CHEMISTRY *************************************** | | | | | |
| GLUCOSE | 36 | LOW | MG/DL | 65-115 | |
| ****RESULTS CONFIRMED BY REPEAT ANALYSIS.**** | | | | | |
| SLIGHT PRESENCE OF RED BLOOD CELLS IN SPECIMEN. | | | | | |
| RBCs MAY ELEVATE LDH, SGOT, SGPT, POTASSIUM, INORG. PHOS., | | | | | |
| AND DECREASE GLUCOSE. | | | | | |
| BUN | 12 | | MG/DL | 5-26 | |
| CREATININE | 1.0 | | MG/DL | 0.5-1.5 | |
| BUN/CREAT RATIO | 12.0 | | MG/DL | | |
| SODIUM | 139 | | MEQ/L | 135-148 | |
| POTASSIUM | 4.7 | | MEQ/L | 3.5-5.5 | |
| CHLORIDE | 99 | | MEQ/L | 96-109 | |
| CARBON DIOXIDE | | 19 LOW | MEQ/L | 20-32 | |
| CALCIUM | 9.7 | | MG/DL | 8.5-10.6 | |
| TOTAL PROTEIN | 7.7 | | G/DL | 6.0-8.5 | |
| ALBUMIN | 4.7 | | G/DL | 3.5-5.5 | |
| GLOBULIN | 3.0 | | G/DL | 0.5-4.5 | |
| A/G RATIO | 1.6 | | | 1.2-2.2 | |
| TOTAL BILIRUBIN | 0.9 | | MG/DL | 0.1-1.2 | |
| DIRECT BILIRUBIN | 0.2 | | MG/DL | 0.0-0.4 | |
| ALK. PHOS. | 71 | | IU/L | 40-150 | |
| SGOT(AST) | 23 | | IU/L | 0-45 | |
| SGPT(ALT) | | 54 HIGH | IU/L | 0-50 | |
| HEMATOLOGY ****************************************** | | | | | |
| WBC | 6.1 | | THOUS/MM3 | 4.0-10.5 | |
| RBC | 4.53 | | MILL/MM3 | 4.10-5.60 | |
| HGB | 14.9 | | G/DL | 12.5-17.0 | |
| HCT | 43.3 | | % | 36.0-50.0 | |
| MCV | 95 | | FL | 80.0-98.0 | |
| MCH | 32.9 | | PG | 27.0-34.0 | |
| MCHC | 34.5 | | % | 32.0-36.0 | |
| NEUTROPHILS | 56 | | % | 40-74 | |
| LYMPHOCYTES | 29 | | % | 14-46 | |
| MONOCYTES | 11 | | % | 4-13 | |
| EOSINOPHILS | 4 | | % | 0-7 | |
| BASOPHILS | 0 | | % | 0-3 | |
| ABS NEUTROPHILES | 3.42 | | THOUS/MM3 | 1.90-8.00 | |
| ABS LYMPHOCYTES | 1.77 | | THOUS/MM3 | 0.90-5.20 | |
| ABS MONOCYTES | 0.67 | | THOUS/MM3 | 0.20-1.00 | |
| ABS EOSINOPHILS | [illegible] | | THOUS/MM3 | 0.00-0.82 | |
| PLATELET COUNT | 269 | | THOUS/MM3 | 140-415 | |

00664

REPORT FOR MURPHY, JIM CONTINUED...

©1998 Laboratory Corporation of America® Hol

**LabCorp®**

| Fasting | Specimen # | Micro Source | Control Number | PAGE # | Report Status |
|---|---|---|---|---|---|
| | | Total Urine Volume | | | |

Date Collected: 11-OCT-99
Time Collected:
Date Entered: 11-OCT-99
Date Reported: 12-OCT-99

Clinical Information: Dallas, TX 75230

TIMBERLAWN INPATIENT SERVICES
4600 SAMUELL BLVD.
DALLAS, TX 75200

DR. ROSKOS

Patient Name: MURPHY, JOHN
Sex: M   Date of Birth: 01-SEP-1975

ROUTE: 08972-57993.00

Tests Requested: HEPATIC FUNCTION PANEL, COMP. METABOLIC PANEL (14),
THYROID PANEL WITH TSH, CBC WITH DIFFERENTIAL/PLATELET, RPR,
Valproic Acid, Serum, VENIPUNCTURE.

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LA |
|---|---|---|---|---|---|
| HEMATOLOGY (Continued) | | | | | |
| HEMATOLOGY COMMENT | NOTE | | | | |
| RBC MORPHOLOGY APPEARS ESSENTIALLY NORMAL. | | | | | |
| PLATELETS APPEAR ADEQUATE | | | | | |
| THYROID TEST(S) ************ | | | | | |
| T3 UPTAKE | 25 | | | 24-37 | |
| T4, TOTAL | 8.0 | | MCG/DL | | |
| T7 | .6 | | | | |
| TSH | 4.50 | | MCIU/ML | 0.35-5.5 | |
| THE MINIMUM DETECTABLE CONCENTRATION IS 0.03 WHICH IS HIGHLY SENSITIVE. | | | | | |
| VENIPUNCTURE ************ | | | | | |
| RPR | NONREACTIVE | | | NONREACTIVE | |
| Valproic Acid, Serum ************ | | | | | |
| VALPROIC ACID | 104 | HIGH | MCG/ML | 50-100 | |
| Toxic Range: Greater than 125 mcg/ml | | | | | |

*** END OF REPORT ***

00665

Interdisciplinary Treatment Plan

CARE PLAN FORMULATED BY: Tx Team DATE: 10-9-99

DATE OF ADMISSION: 10-9-99 PROGRAM: AP

DIAGNOSES
AXIS I: Bipolar D/O, D/D
AXIS II: deferred
AXIS III: none
AXIS IV: [illegible]
AXIS V: 30/60

PATIENTS ASSETS/STRENGTHS
- ☐ General Fund of Knowledge
- ☐ Average or Above Intelligence
- ☐ Supportive Family/Friends
- ☐ Motivation for Treatment/Growth
- ☐ Capable of Independent Living
- ☐ Work Skills
- ☐ Religious Affiliation
- ☐ Physical Health
- ☐ Active Sense of Humor
- ☐ Ability for Insight
- ☐ Communication
- ☐ Financial Means
- ☐ Special Hobby/Interest
- ☐ Other ______

PATIENT'S STRESSORS/WEAKNESSES
- ☐ Loss (of Whom or What) ______ ______
- ☐ Legal Issue
- ☐ Marital or Family Conflict
- ☐ Financial Difficulties
- ☐ Traumatic Event
- ☐ Educational Concerns
- ☐ Substance Abuse
- ☐ Medication Change or Non-Compliance
- ☐ Occupational Concerns
- ☐ Health Problems
- ☐ Other ______

| PROBLEM LIST | TO BE ADDRESSED | DEFERRED | PROBLEM LIST | TO BE ADDRESSED | DEFERRED |
|---|---|---|---|---|---|
| 1. Depressed - Bipolar | active | | 3. | | |
| 2. | | | 4. | | |

**TO BE COMPLETED BY TREATMENT TEAM:**
**DISCHARGE CRITERIA: (as supported by clinical data)**
- ☐ Reduction of life-threatening or endangering symptoms to within safe limits
- ☐ Ability to meet basic life and health needs
- ☐ Adequate post-discharge living arrangements
- ☐ Self-care adequate arrangements made
- ☐ Improved stabilization in mood, thinking and/or behavior
- ☐ Withdrawal symptoms are absent or sub-acute and managed without 24-hour nursing intervention.
- ☐ Need for constant or close observation no longer present
- ☐ Medical problems require only outpatient monitoring or transfer to higher level of care
- ☐ Verbal commitment to aftercare and medication compliance
- ☐ Motivation to continue treatment in a less acute level of care
- ☐ Other ______

**TO BE COMPLETED BY TREATMENT TEAM:**
**PRELIMINARY DISCHARGE PLAN: (see psychosocial form for complete details)**
- ☐ Return to previous living arrangement
- ☐ Placement in alternative living arrangements
- ☐ Participate in Family Therapy
- ☐ Return to previous work or school arrangement
- ☐ Attend aftercare/Continuing Care Group
- ☐ Attend PHP/IOP
- ☐ Attend 12-step Recovery Group
- ☐ Outpatient Therapy with attending M.D. or AHP or Mental Health Center (Circle Applicable)
- ☐ Referrals indicated: ______
- ☐ Other ______
- ☐ Estimated Length of Stay: ______

**PHYSICIAN APPROVAL OF TREATMENT PLAN:** [signature] DATE: 10/9/99

**PATIENT / FAMILY INVOLVEMENT**
This Treatment Plan has been developed and reviewed with the patient and/or family member.

PATIENT SIGNATURE: [signature] DATE: ______

RN SIGNATURE: [signature], RN DATE: 10-9-99

LMSW SIGNATURE: [signature], LMSW, ACP DATE: 10/10/99

OTHER: ______ DATE: ______

**TIMBERLAWN**
**MENTAL HEALTH SYSTEM℠**
Interdisciplinary Treatment Plan

4/98

Patient Identification: [illegible]
MURPHY, JIM
DR. ROSKOS
AP 9-1-75

00666

Interdisciplinary Treatment Plan

PROBLEM: M10B501    Bipolar Depressed    PROBLEM #:    1
M32B1B
MURPHY, JIM
DR. ROSKOS
As manifested by: 7-1-75

**SHORT-TERM GOALS:**

| Date | # | Goals | Target Date | Date Resolved | Intervention | Frequency | Staff Initiating Intervention | Disciplin |
|------|---|-------|-------------|---------------|--------------|-----------|-------------------------------|-----------|
| 10 9 99 | 1 | Pt's mood will stabalize prior to D/C | | | ① initiate precautions ② meds per order ③ encourage group attendence and participation ④ Teach alternate coping skills | | | |
| | | | | | | | | |
| | | | | | | | | |

# TIMBERLAWN
## MENTAL HEALTH SYSTEM sm
Treatment Plan - Problem Sheet

Patient Identification

00667

Case 3:10-cv-00163-BLW Document 234-1 Filed 04/06/12 Page 438 of 642   PageID 1739

89900

**TIMBERLAWN MENTAL HEALTH SYSTEM** ℠



## CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION

The individual **Jim Murphy**, being served at **TMHS** (Facility), on: **10/9/99** (Date)

has received a complete explanation of: **Antipsychotic** (Name of Medication/Medication Group (Class))

| | Indicate Accomplishment by a check mark |
|---|---|
| The explanation was given to the individual in simple, nontechnical language and included: | |
| 1) The nature of his/her mental and physical condition. | / |
| 2) The expected beneficial effects on his/her condition as a result of treatment with the medication (s). | / |
| 3) The probable health and mental health consequences of not taking medication, including the occurrence, increase or reoccurrence of symptoms of mental illness. | |
| 4) The existence of generally accepted alternative forms of treatment, if any, that could reasonably be expected to achieve the same benefits as the medication(s) and why the physician rejects the alternative treatment. | |
| 5) A description of the proposed course of treatment with the medication(s). | / |
| 6) The fact that side effects of varying degrees of severity are a risk of all medications. | |
| 7) The relevant side effects of the medication(s) being prescribed are explained, including: (A) any side effects which are known to frequently occur in most individuals; (B) any side effects to which the individual may be predisposed; and (C) the nature and possible occurrence of the potentially irreversible symptoms of tardive dyskinesia in some individuals taking neuroleptic medication in large dosages and/or over long periods of time. | / |
| 8) The need to advise staff immediately if any of these side effects occur. | / |
| 9) An instruction that the individual may withdraw consent at any time without negative actions on the part of the staff. | / |
| 10) A review of Patients' Rights Under the Consent to Treatment with Psychoactive Medication Rule (See MHRS 9-7.1 ) | / |
| 11) An offer to answer any questions concerning this treatment. | / |

I have received a complete explanation of the psychoactive medication(s) by means of:
(Circle those appropriate)
(Specify)

(Continued on Back)

**CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION**

I have also received the Consent to Treatment with Psychoactive Medication information Sheet (MHRS 9-7.1) and the printed material which summarizes specific information regarding the psychoactive medication(s) for which I have given my consent.

Based upon this explanation, I hereby consent to treatment with a specific psychoactive medication or medication group (class) as indicated on the front of this form. I understand that I may withdraw this consent at any time, however a probate court may decide that I lack the capacity to make the decisions whether or not to take the medication(s) and decide that I must continue taking the psychoactive medication prescribed by my physician.

| | |
|---|---|
| Patient | 10-12-55 |
| | Date |
| Representative | Relationship to Patient | Date |
| Physician, P.A., R.Ph., RN or LVN Giving Explanation | Position | 10-12-55 |
| | | Date |
| Signature of Treating Physician to confirm explanation given by P.A., R.Ph., RN or LVN (required within two working days of P.A., R.Ph., RN or LVN giving explanation) | Date |

**CONSENT FOR TREATMENT INVOLVING A MINOR:**

If this consent is for treatment of a minor under Section 35.01, Texas Family Code, the following information must be provided:

a) Name of one or both parents, if known:_____

b) Name of legally authorized representative of person, if appointed:_____

c) Date on which treatment is to begin:_____ **CONSENT GIVEN BY PHONE DATE:**_____ **TIME:**_____

**WITHDRAWAL OF CONSENT FOR MEDICATION:**

I formally withdraw my consent for_____

(Name of Psychoactive Medication or Medication Group)

| | |
|---|---|
| Patient Signature | Date | Witness | Date |

00669

MHRS 9-7 (back)

Case 3:10-cv-00... Document #2-... Filed ... Page 440 of 642 PageID 1741

# TIMBERLAWN MENTAL HEALTH SYSTEM℠

## CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION

The individual _Ann Murphy_ being served at: _TMHS_ on: _10/9/99_
(Facility) (Date)

has received a complete explanation of: _Antidepressant_
Name of Medication or Medication Group (Class)

| | Indicate Accomplishment by a check mark |
|---|---|
| The explanation was given to the individual in simple, nontechnical language and included: | |
| 1) The nature of his/her mental and physical condition. | ✓ |
| 2) The expected beneficial effects on his/her condition as a result of treatment with the medication (s). | ✓ |
| 3) The probable health and mental health consequences of not taking medication, including the occurrence, increase or reoccurrence of symptoms of mental illness. | ✓ |
| 4) The existence of generally accepted alternative forms of treatment, if any, that could reasonably be expected to achieve the same benefits as the medication(s) and why the physician rejects the alternative treatment. | ✓ |
| 5) A description of the proposed course of treatment with the medication(s). | ✓ |
| 6) The fact that side effects of varying degrees of severity are a risk of all medications. | ✓ |
| 7) The relevant side effects of the medication(s) being prescribed are explained, including: (A) any side effects which are known to frequently occur in most individuals; (B) any side effects to which the individual may be predisposed; and (C) the nature and possible occurrence of the potentially irreversible symptoms of tardive dyskinesia in some individuals taking neuroleptic medication in large dosages and/or over long periods of time. | ✓ |
| 8) The need to advise staff immediately if any of these side effects occur. | ✓ |
| 9) An instruction that the individual may withdraw consent at any time without negative actions on the part of the staff. | ✓ |
| 10) A review of Patients' Rights Under the Consent to Treatment with Psychoactive Medication Rule (See MHRS 9-7.1 ) | ✓ |
| 11) An offer to answer any questions concerning this treatment. | ✓ |

I have received a complete explanation of the psychoactive medication(s) by means of:
Check those appropriate
___ written explanation ___ video presentation
___ oral explanation

(specify)

(Continued on Back)

## CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION

I have also received the Consent to Treatment with Psychoactive Medication information Sheet (MHRS 9-7.1) and the printed material which summarizes specific information regarding the psychoactive medication(s) for which I have given my consent.

Based upon this explanation, I hereby consent to treatment with a specific psychoactive medication or medication group (class) as indicated on the front of this form. I understand that I may withdraw this consent at any time, however a probate court may decide that I lack the capacity to make the decisions whether or not to take the medication(s) and decide that I must continue taking the psychoactive medication prescribed by my physician.

Patient _____   Date  10-12-95

Representative _____   Relationship to Patient _____   Date

Physician, P.A., R.Ph., RN or LVN Giving Explanation _____   Position _____   Date  10-12-95

Signature of Treating Physician to confirm explanation given by P.A., R.Ph., RN or LVN   Date
(required within two working days of P.A., R.Ph., RN or LVN giving explanation)

## CONSENT FOR TREATMENT INVOLVING A MINOR:

If this consent is for treatment of a minor under Section 35.01, Texas Family Code, the following information must be provided:

    a) Name of one or both parents, if known:_____

    b) Name of legally authorized representative of person, if appointed:_____

    c) Date on which treatment is to begin:_____ CONSENT GIVEN BY PHONE DATE:_____ TIME:_____

## WITHDRAWAL OF CONSENT FOR MEDICATION:

I formally withdraw my consent for_____
                                              (Name of Psychoactive Medication or Medication Group)

_____   _____   _____   _____
Patient Signature   Date   Witness   Date

000672

# TIMBERLAWN MENTAL HEALTH SYSTEM℠

## CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION

The individual: Jim Murphy being served at: TMHS on: 10/9/9 (specify)
(Facility)          (Date)

has received a complete explanation of:

Name of Medication or Medication Group (Class)

Mood Stabilizers

| | The explanation was given to the individual in simple, nontechnical language and included: | Indicate Accomplishment by a check mark |
|---|---|---|
| 1) | The nature of his/her mental and physical condition. | ✓ |
| 2) | The expected beneficial effects on his/her condition as a result of treatment with the medication (s). | ✓ |
| 3) | The probable health and mental health consequences of not taking medication, including the occurrence, increase or reoccurrence of symptoms of mental illness. | ✓ |
| 4) | The existence of generally accepted alternative forms of treatment, if any, that could reasonably be expected to achieve the same benefits as the medication(s) and why the physician rejects the alternative treatment. | ✓ |
| 5) | A description of the proposed course of treatment with the medication(s). | ✓ |
| 6) | The fact that side effects of varying degrees of severity are a risk of all medications. | ✓ |
| 7) | The relevant side effects of the medication(s) being prescribed are explained, including: (A) any side effects which are known to frequently occur in most individuals; (B) any side effects to which the individual may be predisposed; and (C) the nature and possible occurrence of the potentially irreversible symptoms of tardive dyskinesia in some individuals taking neuroleptic medication in large dosages and/or over long periods of time. | ✓ |
| 8) | The need to advise staff immediately if any of these side effects occur. | ✓ |
| 9) | An instruction that the individual may withdraw consent at any time without negative actions on the part of the staff. | ✓ |
| 10) | A review of Patients' Rights Under the Consent to Treatment with Psychoactive Medication Rule (See MHRS 9-7.1 ) | ✓ |
| 11) | An offer to answer any questions concerning this treatment. | ✓ |

I have received a complete explanation of the psychoactive medication(s) by means of:

oral explanation _____ (either) (those appropriate) video presentation _____

(specify)

(Continued on Back)

## CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION

I have also received the Consent to Treatment with Psychoactive Medication information Sheet (MHRS 9-7.1) and the printed material which summarizes specific information regarding the psychoactive medication(s) for which I have given my consent.

Based upon this explanation, I hereby consent to treatment with a specific psychoactive medication or medication group (class) as indicated on the front of this form. I understand that I may withdraw this consent at any time, however a probate court may decide that I lack the capacity to make the decisions whether or not to take the medication(s) and decide that I must continue taking the psychoactive medication prescribed by my physician.

_____          _10-12-95_
Patient                                              Date

_____          _____
Representative          Relationship to Patient     Date

_____          _10-12-95_
Physician, P.A., R.Ph., RN or LVN Giving Explanation     Position     Date

_____          _____
Signature of Treating Physician to confirm explanation given by P.A.. R.Ph., RN or LVN     Date
(required within two working days of P.A., R.Ph., RN or LVN giving explanation)

## CONSENT FOR TREATMENT INVOLVING A MINOR:

If this consent is for treatment of a minor under Section 35.01, Texas Family Code, the following information must be provided:

a) Name of one or both parents, if known:_____

b) Name of legally authorized representative of person, if appointed:_____

c) Date on which treatment is to begin:_____**CONSENT GIVEN BY PHONE DATE:**_____**TIME:**_____

## WITHDRAWAL OF CONSENT FOR MEDICATION:

I formally withdraw my consent for_____
                                    (Name of Psychoactive Medication or Medication Group)


_____          _____          _____          _____
Patient Signature          Date                    Witness                    Date

00673

MHRS 9-7 (back)

00674

# TIMBERLAWN MENTAL HEALTH SYSTEM℠

## CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION

The individual _Murphy, Tim_ being served at _TMHS_ on: _10/12/99_
     (Facility)               (Date)

has received a complete explanation of: _Benzodiazepine_
                                Name of Medication or Medication Group (Class)

The explanation was given to the individual in simple, nontechnical language and included:      Indicate Accomplishment by a check mark.

1) The nature of his/her mental and physical condition.

2) The expected beneficial effects on his/her condition as a result of treatment with the medication(s).

3) The probable health and mental health consequences of not taking medication, including the occurrence, increase or reoccurrence of symptoms of mental illness.

4) The existence of generally accepted alternative forms of treatment, if any, that could reasonably be expected to achieve the same benefits as the medication(s) and why the physician rejects the alternative treatment.

5) A description of the proposed course of treatment with the medication(s).

6) The fact that side effects of varying degrees of severity are a risk of all medications.

7) The relevant side effects of the medication(s) being prescribed are explained, including:

(A) any side effects which are known to frequently occur in most individuals;

(B) any side effects to which the individual may be predisposed; and

(C) the nature and possible occurrence of the potentially irreversible symptoms of tardive dyskinesia in some individuals taking neuroleptic medication in large dosages and/or over long periods of time.

8) The need to advise staff immediately if any of these side effects occur.

9) An instruction that the individual may withdraw consent at any time without negative actions on the part of the staff.

10) A review of Patients' Rights Under the Consent to Treatment with Psychoactive Medication Rule (See MHRS 9-7.1)

11) An offer to answer any questions concerning this treatment.

I have received a complete explanation of the psychoactive medication(s) by means of:     Other _____
                                                     (Specify)
Video presentation, printed material,      (Circle those appropriate)

(Continued on Back)

**CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION**

I have also received the Consent to Treatment with Psychoactive Medication information Sheet (MHRS 9-7.1) and the printed material which summarizes specific information regarding the psychoactive medication(s) for which I have given my consent.

Based upon this explanation, I hereby consent to treatment with a specific psychoactive medication or medication group (class) as indicated on the front of this form. I understand that I may withdraw this consent at any time, however a probate court may decide that I lack the capacity to make the decisions whether or not to take the medication(s) and decide that I must continue taking the psychoactive medication prescribed by my physician.

X _____   10/10/99
Patient                                                                              Date

_____   10/10/99
Representative          Relationship to Patient                     Date

_____
Physician, P.A., R.Ph., RN or LVN Giving Explanation     Position     Date

_____
Signature of Treating Physician to confirm explanation given by P.A.. R.Ph., RN or LVN     Date
(required within two working days of P.A., R.Ph., RN or LVN giving explanation)

**CONSENT FOR TREATMENT INVOLVING A MINOR:**

If this consent is for treatment of a minor under Section 35.01, Texas Family Code, the following information must be provided:

a) Name of one or both parents, if known:_____

b) Name of legally authorized representative of person, if appointed:_____

c) Date on which treatment is to begin:_____ **CONSENT GIVEN BY PHONE  DATE:**_____ **TIME:**_____

**WITHDRAWAL OF CONSENT FOR MEDICATION:**

I formally withdraw my consent for_____
                                                    (Name of Psychoactive Medication or Medication Group)

_____          _____
Patient Signature                Date               Witness                Date

00675

MHRS 9-7 (back)

96900    076

# TIMBERLAWN MENTAL HEALTH SYSTEM℠

## CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION

The individual: Jim Murphy being served at: TMHS on: 10/12/__
                                          (Facility)          (Date)

has received a complete explanation of: Buspar, divalproex
                                        Name of Medication or Medication Group (Class)

| The explanation was given to the individual in simple, nontechnical language and included: | Indicate Accomplishment by a check mark |
|---|---|
| 1) The nature of his/her mental and physical condition. | ✓ |
| 2) The expected beneficial effects on his/her condition as a result of treatment with the medication (s). | ✓ |
| 3) The probable health and mental health consequences of not taking medication, including the occurrence, increase or reoccurrence of symptoms of mental illness. | ✓ |
| 4) The existence of generally accepted alternative forms of treatment, if any, that could reasonably be expected to achieve the same benefits as the medication(s) and why the physician rejects the alternative treatment. | |
| 5) A description of the proposed course of treatment with the medication(s). | ✓ |
| 6) The fact that side effects of varying degrees of severity are a risk of all medications. | ✓ |
| 7) The relevant side effects of the medication(s) being prescribed are explained, including: (A) any side effects which are known to frequently occur in most individuals; (B) any side effects to which the individual may be predisposed; and (C) the nature and possible occurrence of the potentially irreversible symptoms of tardive dyskinesia in some individuals taking neuroleptic medication in large dosages and/or over long periods of time. | ✓ |
| 8) The need to advise staff immediately if any of these side effects occur. | ✓ |
| 9) An instruction that the individual may withdraw consent at any time without negative actions on the part of the staff. | ✓ |
| 10) A review of Patients' Rights Under the Consent to Treatment with Psychoactive Medication Rule (See MHRS 9-7.1 ) | ✓ |
| 11) An offer to answer any questions concerning this treatment. | ✓ |

I have received a complete explanation of the psychoactive medication(s) by means of:
(Circle those appropriate)   oral explanation   video presentation   printed material   other

**CONSENT TO TREATMENT WITH PSYCHOACTIVE MEDICATION**

I have also received the Consent to Treatment with Psychoactive Medication Information Sheet (MHRS 9-7.1) and the printed material which summarizes specific information regarding the psychoactive medication(s) for which I have given my consent.

Based upon this explanation, I hereby consent to treatment with a specific psychoactive medication or medication group (class) as indicated on the front of this form. I understand that I may withdraw this consent at any time, however a probate court may decide that I lack the capacity to make the decisions whether or not to take the medication(s) and decide that I must continue taking the psychoactive medication prescribed by my physician.

_____    10/12/99
Patient                                                                          Date

_____
Representative                         Relationship to Patient                         Date

_____    10/12/99
Physician, P.A., R.Ph., RN or LVN Giving Explanation         Position                  Date

_____
Signature of Treating Physician to confirm explanation given by P.A., R.Ph., RN or LVN          Date
(required within two working days of P.A., R.Ph., RN or LVN giving explanation)

**CONSENT FOR TREATMENT INVOLVING A MINOR:**

If this consent is for treatment of a minor under Section 35.01, Texas Family Code, the following information must be provided:

a) Name of one or both parents, if known:_____

b) Name of legally authorized representative of person, if appointed:_____

c) Date on which treatment is to begin:_____ **CONSENT GIVEN BY PHONE DATE:**_____ **TIME:**_____

**WITHDRAWAL OF CONSENT FOR MEDICATION:**

I formally withdraw my consent for_____
                                                          (Name of Psychoactive Medication or Medication Group)

_____                    _____
Patient Signature                    Date                    Witness                    Date

00677
MHRS 9-7 (bac

C L E R K ' S     R E C O R D

Volume __FOUR__ of __FOUR__

Trial Court Cause Number __F00-02424-NM__

In the __JUDICIAL__ District Court __#194__

of Dallas County, Texas,

Honorable __H. ENTZ__, Judge Presiding.

=================================================================

THE STATE OF TEXAS _____, Plaintiff

vs.

JEDIDIAH ISAAC MURPHY _____, Defendant

FILED IN
COURT OF CRIMINAL APPEALS

NOV 0 5 2001

Troy C. Bennett, Jr., Clerk

=================================================================

Appealed to the
Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas.

=================================================================

Attorney for Appellant
Name __ADAM SEIDEL__
Address __CHATEAU PLAZA, STE 1400, 2515 MCKINNEY AVE, DLS, TX  75201__
Telephone No. __214-237-0835__
Fax No. __214-237-0901__
SBOT No. __17999290__
Attorney for: __JEDIDIAH ISAAC MURPHY__

=================================================================

Delivered to the Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas.
on the ____ day of _____, _____.

signature of clerk _____
name of clerk _____
title _____

=================================================================

Appellate Court Cause No. _____

Filed in the Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the ____ District of Texas, at _____, Texas,
this __25TH__ day of __OCTOBER__, __2001__.

JIM HAMLIN, DALLAS COUNTY DISTRICT CLERK

By __JANE MILLER_____, Deputy

FORM 355A

1   JEDIDIAH ISAAC MURPHY     CAUSE NO. F00-02424-NM

2   VS:     IN THE 194TH JUDICIAL DISTRICT

3   THE STATE OF TEXAS     COURT OF DALLAS COUNTY, TEXAS

4   ================================================================

5                = INDEX =

6

7   VOL. 4 OF 4: PAGES 725 THRO 916:

8   NOTICE OF FILING OF BUSINESS RECORDS PURSUANT
     TO RULE 902(10)(00 DEC 12)     VOL. 4-725

9   STATE'S PRODUCTION OF DOCUMENTS (01 MAR 13)     VOL. 4-727

10   STATE'S PRODUCTION OF DOCUMENTS (01 MAR 20)     VOL. 4-729

11   GARLAND POLICE DEPT INCIDENT/INVESTIGATION
12   REPORT (OCT 4 00)     VOL. 4-731

13   GARLAND POLICE DEPT INVESTIGATIVE NOTES     VOL. 4-735

14   GARLAND POLICE DEPT FORENSIC INVESTIGATIONS
     UNIT EVIDENCE LOG     VOL. 4-785

15   CITY OF GARLAND POLICE DEPT INVENTORY OF
16   RECOVERED PROPERTY     VOL. 4-808

17   CITY OF GARLAND POLICE DEPT AFFIDAVIT IN
     ANY FACT (5 OCT 00)     VOL. 4-813

18   VAN ZANDT COUNTY SHERIFF'S REPORT (OCT 10 00)     VOL. 4-845

19   TERRELL POLICE DEPT CRIM INVESTIGATION
20   DIVISION SUPPLEMENT REPORT (10 06 00)     VOL. 4-859

21   BUSINESS RECORD AFFIDAVIT (01 MAY 15)/MHMR     VOL. 4-862

22   BUSINESS RECORD AFFIDAVIT (01 MAY 15)/FRUITVALE
     INDEPENDENT SCHOOL DISTRICT     VOL. 4-865

23   BUSINESS RECORD AFFIDAVIT (01 MAY 15)-PRES
24   BYTERIAN HOSPITAL     VOL. 4-878

25   TIME SCHEDULE OF VICTIM AND DEFENDANT     VOL. 4-907

26   CRIME SCENE SEARCH REPORT BY CTY OF DLS SHEFIFF'S
27   DEPT (05 06 01)     VOL. 4-914

28   CLERK'S CERTIFICATE THAT APPELLATE RECORD IS
     TRUE AND CORRECT (10 25 01)     VOL. 4-916

29

30

31

32

33

FILED
F00-02424-M
2000 DEC 12  AM 9: 23

J. A. HAMLIN
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

**NOTICE OF FILING OF BUSINESS RECORDS PURSUANT TO RULE 902 (10)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through its Assistant District Attorney, Gregory

S. Davis, and files this its Notice of Filing of Business Records Pursuant to Rule 902 (10), Rules of

Criminal Evidence, and respectfully shows unto the Court the following:

I.

The State hereby files self-authenticated business records from the following persons or

entities more than fourteen (14) days prior to the commencement of trial:

1. Glen Oaks Hospital.
2. Medical Center of Arlington.
3. Medical Center at Terrell.
4. Oak Haven Recovery Center.
5. Texas Orthopaedic Associates.

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

00725

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to

opposing counsel on the 12th day of December, 2000.

GREGORY S. DAVIS

F00-02424-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194<sup>TH</sup> JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## STATE'S PRODUCTION OF DOCUMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney, Gregory

S. Davis, and respectfully shows:

I.

The State of Texas has on the 13th day of March, 2001, hand-delivered to opposing counsel

the following documents attached hereto:

1. J.C. Penney Videotape (10-4-00).
2. Chachos Videotape (10-5-00).
3. Texas Department of Public Safety Report (12-8-00).
4. Texas Department of Public Safety Report (2/27/01).
5. Arlington Police Department Lineup (11/3/00).

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

STATE'S PRODUCTION OF DOCUMENTS - Page 1

00727

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 13th day of March, 2001.

GREGORY S. DAVIS

**STATE'S PRODUCTION OF DOCUMENTS - Page 2**

00728

F00-02424-M

2001 MAR 20  PM 2: 51

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| JEDIDIAH ISAAC MURPHY | § | DALLAS COUNTY, TEXAS |

## STATE'S PRODUCTION OF DOCUMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney, Gregory

S. Davis, and respectfully shows:

I.

The State of Texas has on the 13th day of March, 2001, hand-delivered to opposing counsel

the following documents attached hereto:

1. Garland Police Department Prosecution Report
2. Garland Police Department Incident/Investigation Report.
3. Garland Police Department Investigative Notes.
4. Garland Police Department Forensic Science Reports.
5. Garland Police Department Arrest Report.
6. Van Zandt County Sheriff's Reports.
7. Terrell Police Department Reports.

Respectfully submitted,

GREGORY S. DAVIS
Assistant District Attorney
Dallas County, Texas
Bar No. 05493550

STATE'S PRODUCTION OF DOCUMENTS - Page 1

00729

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing instrument was hand-delivered to opposing counsel on the 20th day of March, 2001.

GREGORY S. DAVIS

| | | | | |
|---|---|---|---|---|
| Agency Name | | **INCIDENT / INVESTIGATION REPORT** | OCA | 2000R030905 |
| *Garland Police Department* | | | | |
| ORI | | | Date / Time Reported | |
| *TX0571100* | | | *WE Oct 4, 2000* | 20:00 |

| Crime Incident | UCR:09A | Local Statute: 19.03 | ☐ Att ☑ Com | Last Known Secure | |
|---|---|---|---|---|---|
| *CAPITAL MURDER* | | | | *WE Oct 4, 2000* | 15:30 |
| #2 Crime Incident | UCR: | Local Statute: | ☐ Att ☐ Com | At Found | |
| | | | | *WE Oct 4, 2000* | 15:30 |
| #3 Crime Incident | UCR: | Local Statute: | ☐ Att ☐ Com | | |

| Location of Incident *Dallas County Tx, Garland, TX* | Premise Type *Parking Lot/Garage* | Offense Tract |
|---|---|---|

**MO**

| How Attacked or Committed | | |
|---|---|---|
| Weapon / Tools *Handgun* | Forcible Entry ☐ Yes ☐ No ☑ N/A | |

**VICTIM**

| # Victims *1* | Type *Individual* | Injury *None* | Residency Status *Unknown* | | | |
|---|---|---|---|---|---|---|
| V1 Victim/Business Name (Last, First, Middle) | | Victim of Crime # *1* | Age / DOB *80* | Race *W* | Sex *F* |
| *Cunningham, Bertie* | | Relationship to Offenders | *12/13/1919* | | |
| Home Address *2749 Laurel Oaks Dr, Garland, TX 75044* | | Home Phone | | | |
| Employer Name/Address | | Business Phone | | | |

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

**OTHERS INVOLVED**

CODES: V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)   I = Other Involved

| Code | Name (Last, First, Middle) | Victim of Crime # | Age / DOB | Race | Sex |
|---|---|---|---|---|---|
| | | | | | |
| | Home Address | Home Phone | | | |
| | Employer Name/Address | Business Phone | | | |
| Code | Name (Last, First, Middle) | Victim of Crime # | Age / DOB | Race | Sex |
| | | | | | |
| | Home Address | Home Phone | | | |
| | Employer Name/Address | Business Phone | | | |

**PROPERTY**

Status Codes: L = Lost  S = Stolen  R = Recovered  D = Damaged  Z = Seized  B = Burned  C = Counterfeit / Forged  F = Found  U = Unknown
(Check "OJ" column if recovered for other jurisdiction)

| Victim # | UCR | Status - Date | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Number of Vehicles Stolen 0 | Number Vehicles Recovered 0 | |
|---|---|---|

**ID**

| Officer *(1582) MYERS, M J* | Officer Signature | Supervisor Signature *(1586) THOMPSON, S K* |
|---|---|---|
| Complainant Signature | Case Status: *October 4, 2000* | Case Disposition: |

Printed at: 10/13/2000  14:11

Page: 1

00731

## Incident / Investigation Report

Garland Police Department

| OCA: | 2000R030905 |
|------|-------------|

**Status Codes**   L = Lost   S = Stolen   R = Recovered   D = Damaged   Z = Seized   B = Burned   C = Counterfeit / Forged   F = Found   U = Unknown

**D R U G S**

| Status | Quantity | Type Measure | Suspected Drug Type |
|--------|----------|--------------|---------------------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**O F F E N D R**

| Offender(s) Suspected of Using | Offender 1   SU1 | Offender 2 | Offender 3 | Primary Offender Resident Status |
|---|---|---|---|---|
| ☐ Drugs   ☐ N/A  ☑ Alcohol  ☐ Computer | Age: 25   Race: W  Sex: M | Age:   Race:   Sex: | Age:   Race:   Sex: | ☑ Resident |
| | Offender 4 | Offender 5 | Offender 6 | ☐ Non-Resident |
| | Age:   Race:   Sex: | Age:   Race:   Sex: | Age:   Race:   Sex: | ☐ Unknown |

**S U S P 1 C T**

| | |
|---|---|
| Name (Last, First, Middle)   *Murphy, Jedidiah Isaac* | Home Address   *1718 Barclay, Richardson, TX 75081* |
| SU1   Also Known As | |

| Occupation   *Welder* | Business Address   *Griffin Industries / WILLS POINT, TX* | | |
|---|---|---|---|

| DOB. /   Age | Race | Sex | Hgt | Wgt | Build | Hair Color   *Brown* | Eye Color   *Brown* |
|---|---|---|---|---|---|---|---|
| *9/1/1975*   *25* | *W* | *M* | *5'11* | *145* | Hair Style | Hair Length | Glasses |

Scars, Marks, Tatoos, or other distinguishing features (i.e. limp, foreign accent, voice characteristics)
*Tattoo/Back Back-Crazy J*

| Hat | Shirt/Blouse | Coat/Suit | Socks |
|---|---|---|---|
| Jacket | Tie/Scarf | Pants/Dress/Skirt | Shoes |

| Was Suspect Armed?   Type of Weapon | Direction of Travel | Mode of Travel |
|---|---|---|

| VYR | Make | Model | Style/Doors | Color | Lic/Lis | Vin |
|---|---|---|---|---|---|---|

| Suspect Hate / Bias Motivated:   ☐ Yes  ☑ No | Type: |
|---|---|

**W I T N E S S**

| Name (Last, First, Middle) | D.O.B. | Age | Race | Sex |
|---|---|---|---|---|
| Home Address | Home Phone | Employer | | Phone |

**N A R R A T I V E**

Field Event CAPITOL MURDER LOI search completed at 10/11/00 16:17:24 Case number R00R030905 has been assigned >>>> by: NELDA J. GLASSON on terminal: dispsouth

Printed at: 10/13/2000 14:11

Page: 2

## Incident / Investigation Report

| Garland Police Department | OCA: 2000R030905 |
|---|---|

| Officer's Supplement | | |
|---|---|---|

| Officer   (1582) MYERS, M J | Date / Time Reported   WE Oct 4, 2000 | 20:00 |
|---|---|---|

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

THE COMPLAINANT, BERTIE LEE CUNNINGHAM, WAS REPORTED AS A MISSING PERSON UNDER CALL FOR SERVICE 121188, CASE ID R030225.

SC

**Incident / Investigation Report**

*Garland Police Department*                    OCA: *2000R030905*

**Additional Officer Supplements**

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

Officer   *(1582) MYERS, M J*

Supplement Type: Witness Interview :                    Date / Time *10/4/2000  20:00*

DURING THE COURSE OF THE INVESTIGATION, THE COMPLAINANT WAS FOUND DECEASED IN VAN ZANDT COUNTY.  THE DALLAS
COUNTY MEDICAL EXAMINER RULED THE DEATH A HOMICIDE.  JEDIDIAH ISAAC MURPHY WAS DEVELOPED AS A SUSPECT IN
THE ABDUCTION OF THE COMPLAINANT.  IT WAS DETERMINED THE COMPLAINANT WAS KILLED IN DALLAS COUNTY.  THE
SUSPECT HAS SIGNED A VOLUNTARY WRITTEN STATEMENT AND WILL BE FILED ON FOR CAPITAL MURDER.

**Myers,Matt**

| | |
|---|---|
| **To:** | Mowery,John |
| **Cc:** | Thompson, Keith |
| **Subject:** | BERTIE CUNNINGHAM |

JOHN:  LET ME KNOW WHEN YOU GUYS ARE DONE PROCESSING THE CAR AND ITS CONTENTS AND BERTIE'S PURSE AND ITS CONTENTS.I WOULD LIKE TO GO THROUGH BOTH.I'M STILL LOOKING FOR ANY CLUE THAT MIGHT TELL US WHERE SHE STOPPED AFTER SHE LEFT THE MALL.

*Det Myers*

00735

JOEL —

JERRY CONNER   8-23-50
602 HUNTINGTON CT.
GRAPEVINE   817-4884781
        W-9 - 83090005

— BIRDY LEE CUNNINGHAM  12-31-1919
  504 - 150 — GRAY & HAZEL
  2749 LAUREL OAK
  9 - 53079877
PRINT BLOUSE & LAVENDER SLACKS — 200 OTEAS

ASKED SISTER
AT 2:30 & SHD
HE WAS GOING
TO THE MALL

LEFT HOUSE AT 2:30 P TO GO TO
COLLIN CREEK MALL & MADE PURCHASE AT 4 PM
UNK STORE —
JUST PRIOR TO 6 PM — W/M 25 BLOND HAIR - THIN-
GLASSES & RED CAP  W/ 2 YOUNG GIRLS
PURCHASE 2 GO PEDS  1700 00  FROM RICHARDSON
MOTOR SPORTS — & HE LEFT IN A SILVER CAR

— COMP. DRIVES SILVER HONDA -(96)  YLD944

—

SISTER — EVELYN OR MARY SHELTON
          3119 BIL OAKS
          9 - 4148153

00736

JAY - 2073

BIRDY CUNNINGHAM
2749 LAUREL OAKS
9 - 530 9987


EVELYN SHELTON
3119 BIL- OAKS
9 - 414 8153


OTHER CARD - FRANCIS CONNER - SISTER


NEPHEW - JERRY CONNER
877 - 488 4781
W - 9 - 830 9005


7618 CREEKWOOD            WANDA CURRY

                          817 4783559
                          FT. WORTH P.O. CALLED & GAVE
   J.C. PENNY & DILLARDS   THIS NAME & # OF LADY
                          WHO THOUGHT SHE SAW THE
FRANCIS CONNER            HONDA IN FT. WORTH
8917 WESTGLEN DR          ON 12-5-80

~~9 - 551 6644~~
~~APOLLO JR HIGH~~

~~###~~ APOLLO JR. HIGH
9- 2386770
3207 PARKRISE CT. GARLAND
~~###~~ 2023 PORTSMOUTH RICHARDSON

JOB IN KEY WEST AS UNDERWATER WELDER

                    SCHOELMIER
CHUCK SPOKE TO SUSP. YESTERDAY 11AM ON PHONE &
HE WAS DEPRESSED

FRIEND IN FLA.

9- 816 4591 - WILLS POINT OFCR. — DET. LEE

~~9- 288 5062    DET WARD  216 6390~~

1996 ADDRESS  6305 FM 429
KAUFMAN, TX 75142

JEDIDIAH                           584 - 140
CYNTHIA VEGA                       BRN - BRN
J. ISAAC MURPHEY              W - M - 9-1-75
726 N. EAST FRANK
TERRELL  75742

Go PEDS  &  HONDA ACCORD

S/N  HB25701  —  GO PED   LIQUIMATIC  YELLOW
GO PED SEATS →  T 40965  RED
               T 39669  BLUE

TERRELL P.D. - 9E3972  5243699
STEVE  JOHNS — )

96 ARREST FOR MARIHAUNA - TERRELL, TX.
98 REPORT  PHONE HARRASSMENT

KAUFMAN CO. 9 9324331  4337
CAPT. STARKS - SGT. MᶜMᶜGREGOR

SGT ZEPEDA   214  4575049   CALL WHEN

00739

5389235

YELLOW CAB ON 10-5-10 - BARCLAY T# BAR

NOT IN ON WEDNESDAY

2-SHOTS - CALLED HIMSELF JIM    1:30-2P

KENNETH CLANCE  W-M-2-18-76
2509  LOOKOUT #12202
GARLAND  75044
H-9-414 4735   W-9-495 2991

GOING TO FLORIDA


- BARTENDER AT BLEACHERS -

cell - 972 816 8287

DET MINTON
DET WOOD
PLANO P.D.

Discover Credit Crd - 6011 0060 5062 7147
    1358   JC Penney's
Frances Connor - sister   6011 0035 3969 7834
Bertie Cunningham - Missing -

Penney's  -   5:58 Pm   10-4-00   32.
Dillard's - ~~2:55~~ 2:55 pm   10-4-00   46.

10-5-00   Met Matt Tollefson - Loss Prev. Mgr - (972) 578-8646 x 220
1420 HRs   Pulling info on credit charge - having to track through Home office.
1440   Found   Receipt  for  32.33   2:55 pm   on Frances Connor
    Charge is catalogue - Button Down Fleece Robe - Royal Blue
1445   Met in catalogue w/ clerk ~~finding~~ finding Purchase
    <u>Patrick   Joseph   Lash</u>   w/m   8-5-57
    802   Dumont Dr.
    Richardson, TX  75080
    (972) 235-6498 (HH)   No cell, Pager
    (972) 578-8520 (WK)
  ~~Patrick~~ Lash Does not remember Transaction

Jerry Minton  (972) 741-2706
Bryan Wood  (972) 941-2087

00741

ID **2973**    035492    PG 1 OF 1

FRANCES L CONNER
2749 LAUREL OAKS DR
GARLAND TX 75044

(972) 530-7987

| | |
|---|---|
| Store no. 2055-2 | 87 CPC LEN |
| Inv. date. 10/03/00 | |
| Inv. no. 3325-15139  DR 34 | |

Terms  CASH

| W/H Pkgs. | 0 | ns | UCP Packing List |
|---|---|---|---|
| A Pkgs. | Y | | |

| | |
|---|---|
| MDSE. TOTAL (T) | 25.49 |
| SHIP/HDLG (T) | 4.75 |
| TAX 8.25% | 2.49 |
| INV. TOTAL | 32.73 |
| AMT. DUE | 32.73 |

| CCSC 4301-8 | CSR 0698 | Pkc. 651 | Pull 1500 | Ln. 2 | Pg.70 | Bin |
|---|---|---|---|---|---|---|
| Qty. | Catalog no. SKU/Desc. | Location | Price | Ship Adj | Tax Adj | Ln |
| 1 | R114-5000D | A32E2 | 25.49 | 4.75 | 2.49 | 01 |
| | 0273 / Short Robe-M M Royal 27 | | | | | |

Welcome To The Convenience Of Shopping JCPenney Catalog

* DMB    DISC. APPLIED)

00742



# Wrap yourself
## in softness

The comforts of home
begin with what you're wearing.

**D** Adonna® long, fleece robe. Ease into morning. Slipping into our soft fleece robe makes it a little easier to leave the comfort of your warm bed. Richly hued with trapunto stitching and satin trim. Raglan sleeves. Side-seam pockets. Hidden zipper front. Polyester. Washable. Imported of domestic fabric. 1.10 lbs. *90 floral print, 56 jade, 27 royal.* See sizes below.

R 114-5009 D   Misses   35.99
R 114-8009 D   Petites   35.99
R 114-8011 D   Talls   39.99
R 114-8008 D   Women's   39.99

**E** Adonna® short, fleece robe. Treat yourself to a robe full of ease and comfort; a robe you can wear right into Spring. Accented with trapunto stitching and satin trim. Convenient snap front. Patch pockets. Polyester. Washable. Imported of domestic fabric. 1.10 lbs. *27 royal, 56 jade, 90 floral print.* See sizes below.

R 114-5000 D   Misses   33.99
R 114-8000 D   Petites   33.99
R 114-8002 D   Women's   37.99

Sizes for These Two Pages
Misses S(6/8), M(10/12), L(14/16), XL(18/20).
Petites S(6/8), M(10/12), L(14/16), XL(18/20).
Talls M(10/12), L(14/16), XL(18/20).
Women's 1X(18W/20W), 2X(22W/24W), 3X(26W/28W).

*adonna* 143

Frances L. Conner
2749 Laurel Oaks Dr
Garland, Tx. 75044
972-530-7989

Item:
Short Robe-m
$25.49

JCPENNEY
STORE 2055-2
PLANO, TX 75075
972-578-8666

*C 02:55 PM 5954 2055/704  157

CATALOG INVOICE #332515139

QTY 1   *SHORT-ROBE-M          25.49T
CAT# R 114-5000D
LN 01-9 4.75 2.49 B)

MDSE TOTAL                     25.49
SHIP/HDLG                       4.75T
SUBTOTAL                       30.24
SALES TAX    8.250%             2.49
6011008530697884/0305/004318005/M
DISCOVER                       32.73
CHANGE                           .00
TTL 10/04/00                   32.73

SIGNATURE _Frances L. Conner_

CARDHOLDER ACKNOWLEDGES RECEIPT OF
GOODS/SERVICES IN THE AMOUNT SHOWN AND
AGREES TO PAY FOR THEM ACCORDING TO
CREDIT CONTRACT WITH CARD ISSUER.

STORE COPY

00744

Investigative Notes: Cmdr. J.L. Lay
Bertie Cunningham Capital Murder Case
October 5, 2000

Oct. 5, 2000   6:30 p.m.

Cmdr. Lay relieved Lt. S.K. Thompson at the CAPERS Unit Supervisor's desk to field incoming calls from other agencies, citizens, and police officers regarding the Missing Person Investigation on Bertie Cunningham of Garland.

7:00 p.m.

Inv. W.H. Brown Jr. returned from conducting a consent search at Tonya Thorp's residence on Barclay. Thorp is suspect Murphey's natural sister. Inv. Brown recovered a Van Zandt County court receipt with numerous telephone numbers handwritten on the back of the receipt. Inv. Brown turned this information and receipt over to Cmdr. Lay, should any of the telephone numbers become leads in the case. Lay turned this note over to Lt. Thompson upon his return to the desk at 9:00 a.m. the next morning.

7:20 p.m.

Cmdr. Lay received a telephone call from Mr. Jerry Conner, the victim's nephew. Mr. Conner stated the family had just received a call from the Washington Mutual Master Card Company stating the victim's Master Card had some suspicious activity on it. Conner explained to Cmdr. Lay the reason this credit card had not already been reported to the police was due to the family not realizing Bertie had such a card. Washington Mutual Master Card gave Bertie's card number as, 5544 2600 10255141 with a phone number of 1(800)450-6715.

7:30 p.m.

Cmdr. Lay telephoned the Associates Credit Card Service regarding the Washington Mutual M/C in Bertie's name. Mr. Whalen Brunton, a fraud clerk for the company, assisted Cmdr. Lay in researching recent activity on the card. Mr. Brunton discovered the credit card had been used on 10-05-00 at 6:35 p.m. and again at 6:43 p.m. at **Chacho's Grocery Store,** located at 500 S. Virginia Street, in Terrell, TX. The first transaction was for $70.44 in merchandise and the subsequent transaction for $33.64.

7:45 p.m.

Cmdr. Lay notified Detective Peavey with the Terrell Police Department regarding the suspicious credit card transaction with the victim's card. Detective Peavey responded to the grocery store to investigate.

8:00 p.m.

Cmdr. Lay dispatched Garland P.D. Forensics Supervisor John Mowery and Forensics Investigator Phillip Parker to **Chacho's Grocery Store** in Terrell, TX, to collect the forensics evidence and any possible videotape from the store.

8:30 p.m.

John Mowrey and Inv. Parker arrive at the store and obtain register receipts, videotape and a good physical description of the suspect and an unknown B/M who was with the suspect Murphey. The suspect is clearly Jedediah Murphey, based on description and videotape replay, and the B/M is described as 5'11", 300 pounds wearing a canary yellow tshirt. The clerk stated the men were in a gold Buick type vehicle.

8:30 p.m.

All new information is put out on a teletype to the Terrell PD area.

9:00 p.m.

Cmdr. Lay was contacted on the telephone by Glenda Lee of Wylie, TX, 972.442.4754. Lee used to live in Edgewood, TX and was the editor of the Edgewood newspaper. Lee knows the suspect Murphey and a number of his relatives. Lee provided that names of Tracy and Tim Irwin as sister and brother-in-law in Edgewood, TX. Lee provided some other family information, which was noted.

9:30 p.m.

Cmdr. Lay received a call from Officer Rick McDonald, a K9 Officer for the Plano Police. Ofcr McDonald stated he had received a call from a Mimi Farnsworth of Edgewood, TX at 903.873.8068. Farnsworth was supposed to have information on the suspect, Murphey. Cmdr. Lay called Farnsworth who stated her 16 year old daughter, Jennifer, was friends with a girl named Erika Irwin, daughter of Tracy and Tim Irwin. Erika told Jennifer she had actually seen Jed Murphey at the Edgewood High School on 10-05-00 at 5:00 p.m. driving the victim's 1996 Honda Accord 4dr. Erika and her sister, Cassye, spoke with "Jim" at that time. "Jim" stated the Honda was his car.

9:45 p.m.

Cmdr. Lay telephoned the residence of Tracy and Tim Irwin, parents of Erika and Cassye Irwin. Cmdr. Lay reached the Irwins at ~~903.896.4222~~. The Irwins live at 207 Southridge Dr. in Edgewood, TX. Erika's DOB is 11-14-82 and Cassye's DOB is 03-27-85. Lay spoke with Erika who stated "Jim" showed up at

903 896 7856

Edgewood H.S. at approx. 5:00 p.m. while she was at Cheerleading practice. Erika stated Jim told her he was dying of a brain tumor and didn't "have long." Erika said that Jim told her the silver Honda was his car and that it was a piece of "junk, don't ever buy one." Jim left the girls telling them he might drop by their house that night to see their parents. Erika stated her younger sister Cassye was present and spoke with Jim as well. Tracy Irwin stated she was going to notify her husband, Tim Irwin, who was an Irving Firefighter and on duty at the time. Tracy also stated she and her daughters were going to leave the house and stay in a motel for the night. Cmdr. Lay asked Tracy to be sure and call to let the police know where they would be for the night.

10:30 p.m.

Cmdr. Lay continued to follow phone leads on this case. Lay spoke with Det. M.R. Roberds, who is remotely related to the family. Roberds was able to provide a telephone number for Samantha Murphey, the suspect's mother. Cmdr. Lay spoke with her at 214.684.4008. "Sammy" stated she has not seen or talked with her adopted son, Jim, for over 3 years. Sammy stated she had no idea where he might be, but had notified all of her family in Edgewood, TX to be on the alert for Jim. Sammy agreed to contact police should Jim contact her.

11:00 p.m.

Cmdr. Lay received a call from Charles Armitage of Greenville, TX, 972.871.9277. Mr. Armitage stated he and Jim were patients in Glen Oaks Psychiatric Hospital some months back. Armitage stated that Jim has been violent in the past when he quits taking his medicine. Armitage stated that Jim has contacted him in the past, when he would get into trouble. Armitage stated if Jim made any attempt to contact him, he would notify the police. Armitage had not talked with Jim in several months.

11:15 p.m.

Cmdr. Lay was contacted by Ken Friteher, who is the employer of Jim Murphey in Wills Point, TX at Griffin Products. Friteher's phone numbers are 903.873.3176 and 903.873.6388. Friteher stated Murphey had been on a Worker's Comp leave, but had been notified at the address in Richardson last week that if he did not return to work, he would be terminated. Friteher stated Murphey had not responded to the letter.

October 6, 2000 @ 12:00 a.m.

Cmdr. Lay was contacted by Van Zandt County S.O. stating they had received a call from a citizen who had witnessed Murphey in the victim's stolen vehicle at

3:15 p.m. on Thursday, October 3, 2000.  Cmdr. Lay telephoned Brent Simmons
at 903.896.7674 (hm).  Mr. Simmons stated he went to high school with Murphey
and knew him on sight.  Simmons stated he was stopped at a red light on Hwy
80 in Edgewood, TX at 3:15 p.m. when he observed Murphey driving a clean,
silver 1996 Honda Accord 4dr toward Edgewood H.S.  Simmons stated Murphey
was slumped down low in the seat, but he could see it was him driving the
vehicle.  Mr. Simmons resides at 605 Crooked Creek Dr. in Edgewood, TX.  He
works for the Terrell F.D. and his work number is 972.551.6650.

12:30 p.m.

Cmdr. Lay received a call from Jan Brooks of the Van Zandt Co. Adult Probation
Department.  Mrs. Brooks stated she is a supervisor with the Probation Dept and
that Jim Murphey is on probation with her agency.  Mrs. Brooks agreed to go to
her office and check their files for possible contact persons and addresses on
Murphey.  At first glance it appears all the information contained in probation files
is the same as the information already gathered by police.

12:45 a.m.

Cmdr. Lay had called some of the phone numbers found on the back of the slip
of paper recovered by Det. W.H. Brown at Tracy Thorp's residence in
Richardson, TX.  "Zac" Stanfield was contacted at 500 Rolling Hills Place #1802,
Lancaster, TX at 972.274.4576.  Stanfield stated he used to live in a trailer park
next door to Murphey, his wife and young daughter.  Mr. Stanfield, w/m 06-10-74,
has not talked with Murphey is several weeks and said he would call police
should Murphey call him.

1:00 a.m.

At about this time, Cmdr. Lay was contacted by Terrell P.D. Det. Peavey.
Peavey stated Tim Irwin has stopped in at the Terrell P.D. on his way to
Edgewood after taking off for the shift at the Irving F.D. where worked.  Peavey
stated he asked Irwin if he knew of a B/M, 5'11", 300 pounds, who was a friend to
Jim Murphey.  Tim Irwin provided Terrell P.D. with the name of Treshod Tarrant
as a friend of Murphey's who fit that description.  Irwin stated all he knew was
that Murphey and Tarrant had grown up together in Edgewood, TX.  Terrell P.D.
then contacted Van Zandt Co. S.O. to ascertain if they possibly handled a
Treshod Tarrant.  Van Zandt Co. S.O. stated they had handled tarrant and had a
previous address on him of 509 N. Lamar Dr. in Edgewood, TX.  Van Zandt
county records revealed that Tarrant was 5'11", 280 pounds.  Tarrant's DL
number is #11430351 and DOB is 01-16-74, according to Van Zandt Co. S.O.
records.  Lay asked Terrell P.D. to check the Edgewood address to see if either

the gold Buick used in the credit card case in Terrell was there or the victim's
silver Honda.

2:00 a.m.

Cmdr. Lay was contacted by Det. Peavey of the Terrell P.D.  Det. Peavey stated
they has asked Van Zandt Co. S.O. to go by the Edgewood address on Tarrant.
Det. Peavey stated Van Zandt Co. S.O. and an Edgewood P.D. unit were
surveilling the victim's stolen 1996 Honda in front of Tarrant's residence at 509 N.
Lamar Dr. in Edgewood, TX.  Peavey stated the Honda was back in at the house
and appeared to be unoccupied.  Cmdr. Lay asked Peavey to notify the units to
hold their surveillance until G.P.D. arrived, if possible.

2:10 a.m.

Cmdr. Lay, Lt. S.K. Thompson, Det's Myers, Mendoza, Vanek, and Lee left the
police department to travel to Edgewood, TX.

Jan Brooks
(903) 567-4406    (903)567-4066
Van Zandt Co. Adult Probation Probation
Supervises Jed Murphy

LOGON CRAFT   — contact person
(903)873.2215    (EX-FATHER-IN-LAW)
~~Leslie Khrabitz~~
X 2865



00750

L. OLIVER
214 3843903

610 S. WAXAHACHIE
MANSFIELD, TX

| GRIFFIN PROD. EMPLOYER | | |
|---|---|---|
| CLEBURNE | CHAS. ARMITAGE 972. 871. 9277 GLEN OAKS PSYCH PATIENTS TOGETHER | BROWN (RPD) 903 873 3176 903 873 6388 KEN FRITCHER | MCDONALD, RICK (K-9) 972 816 8326 PLANO P.D. |

GLENDA LEE   (EDITOR - EDGEWOOD)          BOB MURPHEY (FATHER)
972. 442. 4754                              EDGEWOOD ?

TRACY IRWIN (SISTER)   TIM IRWIN (903) 896-1715      7856
                        (903) 896-4222 WRONG #
                                        Stuart
SKINNER, FINIS                          Residence

"JENNIFER"                EDGEWOOD H.S.
        FARNSWORTH, MIMI   EDGEWOOD, TEXAS   "ERIKA" IRWIN
        (903) 873 - 8068

SUSAN                     VILLAGE APTS      TERRELL, TX
(817) 247-5688            B/M GOLD CHAIN
                          5'11"    300

                          BLUE SHORTS
                          ATHLETIC SHOES BLK/GRY
GLENN STRONG
EDGEWOOD P.D.     GOLD CUTLASS ?            214
903                                         8035076
896-4100          SAMMY   214. 684. 4008              JJ
                  MURPHEY 972. 896.4008              00751
                          817. 595. 5104

10-05-00  STRAWN
ERIKA IRWIN 11-14-82 W/F  BOX OF BEER
✱ 5:00PM  (AT SCHOOL)
SILVER HONDA ACCORD
207 SOUTHRIDGE
EDGEWOOD , TX  75117

CASSIE LINN IRWIN
03-27-85  W/F

---

LISA      VAN ZANDT CO.
(903) 567-4133  VZSO
✱ 3:15 PM      HWY 80
BRENT SIMMONS OBS. IN VICTIM'S VEHICLE  ← EDGEWOOD
605 CROOKED CREEK
EDGEWOOD, TX          TERRELL F.D.
1(877) 601-0080 BPR
4 DR HONDA ACCORD
(903) 896-7674  HM
(972) 551-6650  WK

00752

(214) 384 6227   TANNOCK
(214) 384 0209   GLENTAGERMAN

ZACHARY   QUINN  STANFIELD
w/m  06-10-74
500 ROLLING HILLS PLACE #1802
LANCASTER, TX
   - ex-neighbor in Wills Point, TX @ trailer park.
972.274.4576

BOB MURPHEY + SAMANTHA  (SAMMY)
MATTHEW  (BROTHER)

JEFF ROSE
w/m  01-29-76
1425 VAN ZANDT CO  3206
WILLS POINT, TX   75169
(903) 865-6083

BIG FAT B/m    BRIGHT YELLOW SHIRT
GOLD NEWER BUICK  5TH AVE

00753

CREDIT CARD ACTIVITY

(10-5-00)   2:35 AM   NO LOCAL          972.563.6922
2 — 751    6:43 PM     TERRELL, TX     CHACHO'S  Groc. $33.64
1 —        6:35 PM     SAME STORE                  $170.44

Wylie
Sent out @   8:00 P.M.  10-05-00
8:30 PM     Mowry/Parker dispatched to Chachos Groc. Store
w/update to  (214) 536-2972
Terrell over:

10-05-00   WHALEN (12 MID)

1 (800) 450 6715 FRAUD          Betie Cunningham

— Wash Mutual M/c   5544 2600 10255 141
6 att ATM
& checks

(972) 492-9949

00755

TRESHOD TARRANT
01-16-74                    5'11  280 lbs.
11430351  TX OLN
509 W. LAMAR DR.       * GREW UP W/JED
EDGEWOOD, TX


509 N Lamar   in   Edgewood
      903-567-4133
         Peary in Terrell

Fullerton

972

653-6849

Assoc.

CC SGRN

BRUTON, WHALEN

WILSON

SSN

497 80 3618

W/m 06-20-  (38)

6:00 LAS COLINAS  876 110

IRVING  75039

WHALEN BRUTON

Wfor

LIPSEY

972 - 690 6721

00757

Chacho's    500 S. Virginia   543-6922
10-5-00    6:26 P.M.

Gold newer Buick
   "Johnson"   Yellow shirt - cap backwards
                  gold chain - medium thickness
Knee length shorts - jean

Platinum Discover

Comps

Aridi, Doha
32/W/F   10-10-67
1108 Americana #906
Mesquite 75150
972/5681-2476

Akram Aridi
38/W/M   7-21-62

00758

MCWREN'S
NOTES: TERRELL

Extremely
FAT   5'11"

| Stomach
| sticks way
| out

.922

Real
Dark
Skin

No Face Hair
BLACK
Cap on BACKWARDS

| Hard To
| WALK

backwards
thickness

Athletic
Tennis SHOES

"Johnston Needs Orange
Juice"

Black
&
GRAY

Bright Yellow T Shirt

Baggy Blue Jean Shorts    67

Gold Chain    #906

4 door  cutlass sierra    76
Gold      w/ Guy DRiving
          38 / W/M   7-21-62

00759

BIRDY CUNINGHAM W/F
   123119

— LEFT JCPENNEY AT 3:58 P.M. - WERE SHE UTILIZED FR
DISCOVER CARD. BIRDY WAS ALSO AT DILLARDS, PICKING U
FOR FRANCIS.

Officer J Franey
C

— AT APPROX 6:00 P.M. A W/M, APPROX 25-30 ENTERED RICHARDSON
MOTOR SPORTS WITH 2 W/F APPROX 13 YRS. SUBJECT BOUGHT 2
GO-PEDS, VALUED #1728.00. THE WHITE MALE IS DESCRIBED AS THIN,
WEARING GLASSES, BLUE JEANS. SUBJECT HAD A TX ID WITH PICTURE THAT
APPEARED TO BE HIM, AND NAME CUNNINGHAM ON IT. SUBJECTS LEFT IN
A SILVER VEHICLE,

BIRDY HAS ONE WASHINGTON MUTUAL VISA THAT TIES INTO
HER BANK ACCOUNT. BIRDY SS# IS 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 -
PHONE # 1-800-788-7000

J.C. Penney
2 Loss Prevention
      Matt Tollosbol
2.        214 349 9402

PLANO, P.D. - 972-941-7900          BIRDY CUNINGHAM
                                    123791  123119

RAYLOR RICHARDSON - 972-498-4000 - NONE

COLUMBIA PLANO - 972-596-6800

STATION 1 - 972-941-7460                    2073  3077  2040  2090

RICHARDSON - NO ONE AT 10:43 P.M  ADMITTED

COLUMBIA PLANO - NO ONE ADMITTED CONTACTED AT  10:46 P.M.

STATION 1 - NO RESPONSE TO COLLIN CREEK. - CONTACTED  AT
                    10:53 P.M.
PLANO - DID NOT LOCATE VEHICLE AT COLLIN CREEK.

JERRY    KWIECIEN - OWNER RICHARDSON MOTOR SPORT
         972-414-9327

BOBBY HARP    972-475-7530 - EMPLOYEE  RICHARDSON SPORT
              214-912-3949 - CELL PHONE

DISCOVER CARD # 6011008050627147.                    121188 CFS.

SHELTON, EVELYN - SISTER    972-530-7987 - 3119 BIG OAKS DR
         MARY

JERRY CONNER / NEPHEW - 602 HUNTINGTON CT.
  082350          GRAPEVINE TX 76051
                  H/P-817-488-4781
                  B/P- 972-830-9005

COLIN CREEK MALL - STOPPED AT DILLARDS
                   STOPPED AT JCPENNY. - 3:58 P:M

BONNER, FRANCIS - SISTER WHO HAS BEEN LIVING WITH BIRDY UNTIL
  090715          SHE GOES INTO ASSISTED LIVING.                    00761

Plano.P.D. - 972-941-7900

Birdy Coningham
~~123791~~ 123119

Baylor Richardson - 972-498-4000 - None

Columbia Plano - 972-596-6800

Station 1 - 972-941-7460

Richardson - No one at 10:42 P.M

Columbia Plano - No one admitted Contacted at 10:46 P.M.

Station 1 - No response to Collin Creek. - Contacted at 10:58 P.M.

COLIN CREEK MALL, CLOSET STATN,  SHELTON, MARY      BIRDY CUNINGHAM
BAYLOR RICHARDSON       FIRE STATN    1917    01817     1231-1919
COLUMBIA PLANO                                            5.4/50

                                      3119 BIG OAKS
                                      2749 Laurel Oaks
        Printed Diann    HONDA
        Larinda           SILVER 96 4DR.
        Pants                     YLD944

     LEFT AT 4:00 P.M FROM COLIN CREEK
#1728. 60H008050627147   AFTER PICKING UP PACKAGES
    DISCOVER CARD - 7:00 P.M CHARGE MADE
 RICHARDSON MOTOR
        SPORT.
                      CONNER, JERRY
                        NEPHEW
                        817-488-4781

25 YRO OCD      IN
W/M
                    ABOUT 6:00 P.M. PRESENTED I.D.
2 YOUNG GIRLS       WITH CUNINGHAM ON IT, BOUGHT TWO
                    60 PEDS, LEFT IN SILVER VEHICLE

Denna

            1-800-347 2683
    Elan    Discover Inv. no other transaction from 6:45
        Grubbs
    will monitor Cunninghams account + will call 2150 if another
    transaction take place

                                    00763

Mendoza
2777

①

Officer
Mendoza

✳ Treshod montrell Tarrant
   B/m 1-16-74
   509 Lamar     903. 896. 7875

said that susp showed up about 3 or 4pm.
told susp he had to report to parole ofcr
& told him to come back.
susp showed back up at 6pm and Tarrant
and susp went to chacho's in terrell and
bought beer. susp's left and returned
5 mins later for more beer. Tarrant stated
both purchases were made with a credit
card. Susp and tarrant then went to
culpeppers in terrell and had dinner also
payed w/ credit card. Susp stated
credit card was a girlfriends.
Susp & tarrant tried to use card
a B.J.'s store in terrell but it wouldn't
work. They then went to Texxaco and
bought gas with card.

Susp and tarrant returned to Lamar and
met a w/m nick Bunch 17yrs &
Jimmy Grant w/m 20yrs. at a park
around the corner. Tarrant stated he
and a w/m named P.A. 17yrs & a w/F
christie went to wills point in the Honda
with Tarrant driving.

00764

②

Tarrant stated they bought some marihuana
and smoked it on the way back to Lamar.
He stated that P.A. lives in the Edgwood
Estates Apts. He bought dope from a B/m
named Brad Thompson 20yrs old. He
said they left about 9pm + returned
about 10pm. He stated they sat in the
front yard till 11pm and then went
to bed. Tarrant said susp was gonna take him
shopping in the morning.
Tarrant stated that susp told him he
bought the car. Tarrant asked about
Blood on Bumper and susp said he shot
a deer and put it in the trunk. Tarrant
hadn't seen susp in approx 2 mos.

✳ Jatora Yarbourough
   B/F  2·27·79
   509 Lamar

Jatora stated she left work at Estate
Planning in Canton around 8:30pm + got
home around 9pm. She saw susp and
told him hi. She then went inside and
checked her E·mail and talked to her
friend on the phone.

00765

③

she said that tarrant. who is her cousin
and susp were hanging outside and went
to bed around 11pm. she said she did
not talk to susp and hasn't seen him
in about a year.

✳ ora mae milton
  B/F 1-12-25
  509 Lamar

she said susp came over about 6pm and
took tarrant out to eat. she said she
has known susp since he was a young
child. she said susp asked if he could
spend the night and she told him yes
she said she had no other conversation
with susp

00766

10/5 from Office Ryan
Calls on Tonya Thorpe Caller Id
unknown

972- 931- 8420          1:04 pm

Wollenbend, Mort

X 972- 524- 5330     10:14, 11:45
McCoy Bld Supply
Chelsea

214- 319- 7834          9:40 AM

Wheeler, Cadonia

2000R.030275
Processed with Ninhydrin
C.J. #611



00768

6:15 - 6:20
  Business closed @ 6:00

                                        CAR
                                        4dr Silver Honda
WM  25-30                               Accord?
  glasses
  blue jeans
  ~~black~~ light shirt - T-shirt
  baseball cap- dark color- UK marking
  dark hair - brownish
  short hair
  said he was underwater welder


  2 boys      both approx 12

#1  blonde hair                    #2
  baggy pants                      dark complex
  no cap  no glasses               hispanic
  called 25yr old uncle            shorts Tank Top
                                   dark hair
                                   no glasses


  2 sports    red & blue    499⁰⁰ ea
  1 Liquimatic - yellow     $599⁰⁰

00769

# ⬦ BT MASTERBRAND™

REORDER NO.
**BTM00279**

W- 972-231-4833

Jerry Kwiecien   H 972 414 9327
owner

employee   Bobby Harp   972 475 7530
c 214 912 3949

358 PM @ JC Penney  - pd w/ Frances card
went to JC Penney & Dillards

~~358~~

Discover   6011 0085 5062 7147

2:30   calls Evelyn
358   JC Penney
645   408 S. Central - Richardson

-   Teletype sent
    Contacted local P.P. in person   J. Azeurie

Bobby Harp - full time
   8:30 AM - today
Jerry saw car older model Dodge
-   parts asst - Mark Cannon

Bobby said suzy made

Bobby Douglas HARP    3-31-66
7618 Creekwood Dr
Rowlett Tx 75088
10861532
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

Larry Levy   972-578-   ...  - 200-

CARLA



Patti Subia  DPS - 5...

Tom Connor
4:00 pm   St. isidal
up physys

1,7 ...
Richardson motors stores

DETTCD  455-3685
RM          323-2373

SKILLINGS - 465 2007
DEMAR  442 6955

MARK Allen CANNON   2-19-63   09210650

1622  Goodwin Dr.   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

Garland Tx 042

972 - 276 - 0828

W 972 -231- 4833


— not really uncle

→ my niece's boyfriend

Wm on phone


on phone   "I know where the field's

Bobby said the didn't put them in trunck


on @ 6:20 - 6:25

left approx 7:00


saw gray honda 4dr

Bobby said guy smelled drunk


# Wm 25

dark brn hair - on BLK - over collar  - scruffy - weird hhair

mustache


Larry Levy   972   578   8666  - 200

WM 12/13 ⟩ larger darker hair ⟩ Approx Same
Hm 12/13                              Size + height

J ISAAC Murphey     972 498 1148
726 N East Frank
Terrell Tx  78742

418-773

Go-Ped
Liquimatic  yellow    HB-25701

Go-Ped  sport     T 40965     one
                                   red
Go-Ped sport .    T 39669     one
                                   blue

00773

Jerry & wife    left about 6:15 - 6:20 P.M.

Black man allowed in to exchange Brake Pads
with 2 other adults

Gray older "Scuzzy Vehicle".

Points People Last to leave

— 15% Commission on "50 Pesos" —

★ pB

Serial #'s are unique

I am Jay
Allege to we Amvic Card for
Cash advance   4:33AM   unk where

1718 BARCLAY

Silver Honda YDL94Y

1600 Apollo

Tonya Thorp wf 7-19-68
1718 Barclay
Richardson 750F1

Ashleigh Johnson wf 7-29-87
1718 Barclay

last seen 6- or 610

5:30 @ 1718 Barclay - Honda - Shiny
                                    4dr

his girlfriend bought for me
pick-up Zach - @ Zach's house
then Ryen @ Ryen's house
first drove to Cliffs house Ryen not there
Jim driving
Ashleigh FS
got Zach went to beer store
                    Jupiter @ Renner
Jim bought 6 pack beer - Bud Lite
              2 packs cigaretes uk
showed 2 Credit Cards uk
Ashleigh called mom from home - mond wk

00776

not seen again dropped 605 - 610
Today Zack said
Zack said → Jim said going to Key West Florida
— haven't talked to Ryan

STAIN in CAR — on Back seat left side Brownish
J.C. Penney Bag in Car

Chelsea Willis - wife

Friend
Randy Crow wm 35/43 reg man
in AA together
married
lives in Kaufman
has shop in Terrell - Crow Wrecker
H 972-932-6628
W 972 563 2543
Cell 214-354-6120


CHUCK - Preacher   Sch ???
(Terell Tx
like a brother to me
Rand Crow probably knows Chuck
uk if really a preacher
ZACH maybe been to church w/ BLAKE & Blake Grandfather


Chelsea Willis Ex
WF 23
live in Wills Point - mobil home park off square
grandfather Logan Willis - big name in Wills Point
Chelsea works McCoys in Terell
ALLYSA Logan Murphy 3
Chelsea has 5 mo old - not Jim

00778

Friend
Phillip Shawn Fitzgerald
Lives Belt Line Jupiter area
Phillip - Black sports car - not expensive
Jim calls him Shawn


Mother - Hope Abbott in Fort Worth
   Jim doesn't know where

Father deceased

Tonya siblings
Ray Bob - "Ray" works Terell state Hospital
Hollie Jo - unk where
brother Danie Toler - possib Jim will contact
           lives Blanket TX   no phone

Daniel Flores Renton P.P
H   972-416-1586

from LT. Thompson
Christy Leann Baugh
Wh 14
903-896-7715
or   903 896 1964


Was in car 8/9PM in car
w/ David
& Paul Hewitt


Det  Terry Blaylock —  info from
903 567 4133

10/9/00  4 PM - 6 PM

Phillip Shaun Cruz   3-4-74      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
1922 Matterhorn               Tx 11444420
Garland Tx  75044
H 972-615-4329
Morley-Moss Electrical Contractor ⟩
4530 Ceda Lake  -Dallas
214-388-1177


Known Jim since 4th grade  Edgewood
moved to Grac - Feb 2000  w/ fiancee - Emily Fitzgerald


@Shaun house WED Eve  8 PM -10 PM
very drunk - had beer in hand  Bud Lite - longneck
came in said
"got brand new Honda 2000 - Accord"
have to Leave - go to Florida - did something bad
Left a box & Asked to Shaun to deliver to Alysia
                    in Edgewood
He was obviously upset
he drove around BACK
box was in back seat - right rear
Jim stressed - "nothing in the trunck"
Stayed for 10 mins - left
  ALone
SAW  Go-Ped in back seat - only one
hasn't seen or heard from again
Shaun saw newspaper on Fri morning

00782

saw something on his white T-Shirt
T-Shirt Pegasus on Front
maybe had blood drops maybe not
knows Shad - in grad class
good friend in school
Shad said he saw blood on car
Shad said car smelled bad
Shad said he went to Probation meeting Thur 3.30
Jim said he was going to clean car
Fred is best friend in Edgewood
Can't think of anyone who might have to Go - led.
Emily saw Jim
uk if Emily saw car - she didn't come out
may have looked out window

Cousin Derek Cruz - lives w/Shawn
he came out saw Jim + Car

Where does Jim drink?   Bleacher's
w/ Shawn - Chili's a 190 a 78  - Speeds Garland Rd spillway
                                          + white sock le

Shawn has never been to Colin Creek Mall
Doesn't know where it is
uk if Jim even a Colon Creek Mall

00783

## Notes

1) Attempted to enterview defendant on Fri 10-13-00 he said he would talk but he met w/ lawyer this morning. He said won't talk to Police unless you call me first.

He was not interviewed & was immediately returned to cell

3 Interviews
  Oct 6
  Oct 7
  Oct 11
  Attempt Oct 13 —

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | CFS# 2000E- | 121188 (R030225) |
|---|---|---|---|---|
| DATE OF OFFENSE:  10- | 05 | -2000 | | |
| OFFENSE LOCATION: | | UNKNOWN | | |
| LOCATION OF INVESTIGATION: | | 408 N. CENTRAL EXPRESSWAY | | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-1 | Telephone | North End of Counter |
| 607-2 | Receipt, "Richardson Motor Sports…06:49PM…10/04/00..1728.75…Bertie Cunningham" | Bank deposit bag |
| 607-3 | Warranty document, "Liquimatic…Serial No. HB-25701" | Detective Myers |
| 607-4 | Warranty document, "Sport…Serial No. T40965 | "          " |
| 607-5 | Warranty document, "Sport…Serial No. T39669" | "          " |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | | CFS# 2000E- | 121188 (R030225) |
|---|---|---|---|---|---|
| DATE OF OFFENSE: | 10- | 0504 | -2000 | | |
| OFFENSE LOCATION: | | | UNKNOWN | | |
| LOCATION OF INVESTIGATION: | | 1718 Barclay, Richardson, TX | | | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-15 | Note, 2 pages ,"Chelsea...Jim" | Kitchen table |
| 607-16 | Blue denim shorts, blue plaid boxer shorts | Laundry room |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

00786

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | CFS# 2000E- | 121188 (R030225) |
|---|---|---|---|---|
| DATE OF OFFENSE: 10- | 08-04 | -2000 | | |
| OFFENSE LOCATION: | 7* | UNKNOWN | | |
| LOCATION OF INVESTIGATION: | 3207 Parkrise Ct. | | | |
| FORENSIC INVESTIGATOR J. ROGERS # 607 | | | | |

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-11 | Motorized scooter, "GO-PED", SN# T39669 | Garage |
| 607-12 | Blue pants and white tshirt with blue print | Floor of Master Bathroom |
| 607-13 | Red Tshirt | Floor of SW bedroom |
| 607-14 | Ball cap (top cut out) | Bed of SW bedroom |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | CFS# 2000E- | 121188 (R030225) |
|---|---|---|---|---|
| DATE OF OFFENSE: 10- | 08⁺ₜₕ -2000 | | | |
| OFFENSE LOCATION: | | UNKNOWN | | |
| LOCATION OF INVESTIGATION: | 2023 Portsmouth, Richardson, TX | | | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-6 | Motorized scooter, "GO-PED", SN# T40965 | Entry way |
| 607-7 | White cotton socks | Floor of SW bedroom |
| 607-8 | Boxer shorts, red plaid and white undershirt | "    "    " |
| 607-9 | White boxer shorts | "    "    " |
| 607-10 | White ball cap (top cut out) | "    "    " |

00788

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | CFS# 2000E- | 121188 (R030225) |
|---|---|---|---|---|
| DATE OF OFFENSE: 10- | 04 | -2000 | | |
| OFFENSE LOCATION: | | UNKNOWN | | |
| LOCATION OF INVESTIGATION: | | | ,Edgewood, TX | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-17 | Athletic Shoes, Blue, "AND 1" | Floor of living room |
| 607-18 | White socks | "    "    " |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
EVIDENCE LOG

| FI# 00- | 2831 | | | CFS# 2000E- | 121188 (R030225) | |
|---|---|---|---|---|---|---|
| DATE OF OFFENSE: 10- | 04 | -2000 | | | | |
| OFFENSE LOCATION: | UNKNOWN | | | | | |
| LOCATION OF INVESTIGATION: | VAN ZANDT CO. RD # 602 LIVINGSTON CREEK | | | | | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-19 | BLACK TSHIRT | CREEK BED |
| 607-20 | HAIR | ROCK ABOVE CULVERT |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | CFS# 2000E- | 121188 (R030225) | |
|---|---|---|---|---|---|
| DATE OF OFFENSE:  10- | 04 | -2000 | | | |
| OFFENSE LOCATION: | | UNKNOWN | | | |
| LOCATION OF INVESTIGATION: | | 1640 Commerce | | | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-21 | Purse, tan weave containing: | Trunk |
| | (1)Clear plastic clutch bag | Inside 607-21 |
| | (1)Kroger Plus card #43426379164-9 | "     " |
| | (1)Foley's card "Bertie L. Cunningham" #298-944-359-0 | "     " |
| | (1)"Health Insurance" card Bertie L. Cunningham # 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-A | "     " |
| | (1)ATM card, Washington Mutual...Bertie L. Cunningham ...575706330438008001-6 | "     " |
| | (1)Tom Thumb Reward Card...8500020208646 | "     " |
| | (1)Blue Cross Blue Shield card, Bertie L. Cunningham ...1219396183 | "     " |
| | (1)Lions Club Community card | "     " |
| | (1)Key ring, clear plastic square..one automobile key "HD103" | "     " |
| | | |
| 607-21A | Brown leather wallet containing: | Inside 607-21 |
| | (1)ID card Bertie L. Cunningham...2749 Laurel Oaks... | Inside 607-21A |
| | (1)Bridge Club Card..Mrs. B.L. Cunningham | "     " |
| | (1)Kroger Cares card "Arapaho Baptist Church" | "     " |
| | (4)Family photographs | "     " |
| | (1)Cross Country Motor Club card...Orville Cunningham...#V000113847" | "     " |
| | (1)OLAB lens implant card...#081980-101K-616 | "     " |
| | (1) pair of women's sunglasses | Inside 607-21 |
| | (1) brown leather address book | "     " |
| | (1)brown pill bottle, containing 3 unknown tablets | "     " |
| | (1)brown pill bottle, marked "Tylenol-Axid" containing unknown capsules | "     " |
| | (1) Key ring with (3) house keys | "     " |
| | (1)assorted makeup items | "     " |
| | (1) assorted coupons | "     " |
| | | |
| 607-22 | Paper bag, "JC Penney"...blood | Trunk floor |
| 607-23 | Paper bag, "JC Penney" containing:   a plastic wrapped blue robe,  a Dillard's bag containing a Daniel Green shoe box and shoes | Trunk |
| 607-24 | Tshirt, White, blood | Trunk |

GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
EVIDENCE LOG

| FI# 00- | 2831 | | CFS# 2000E- | 121188 (R030225) |
|---|---|---|---|---|
| DATE OF OFFENSE:  10- | 04 | -2000 | | |
| OFFENSE LOCATION: | | UNKNOWN | | |
| LOCATION OF INVESTIGATION: | | 1640 COMMERCE | | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-25 | Carpet sample, bloody | Trunk floor |
| 607-26 | Blood sample | Trunk seal |
| 607-27 | Driving gloves, brown leather | Trunk |
| 607-28 | Shoes, one pair...Hilfiger, brown leather | Rear passenger side floorboard |
| 607-29 | 3 x 5 notebook with handwriting throughout | Trunk |
| 607-30 | ATM reciept..."100400...1131PM...RT0504...9620 HARRY HINES...DALLAS, TX..$.00  SEQ# 4891" | Cup holder center console |
| 607-31 | Check book cover, containing | Front driver's door cargo holder |
| | (1)ID card, "Murphy, Jedidiah Isaac...DOB: 09-01-75...1718 Barclay.. I.D. : 0121195..." | Inside 607-31 |
| | (1) credit card, Mastercard...Bertie L. Cunningham..Washington Mutual...5544-2600-1025-5141 | " " |
| | (1) credit card, Discover Platinum...Bertie L. Cunningham...6011-0080-5062-7147 | " " |
| | (1) checkbook register | " " |
| | (4) money order receipts: #151007289, 9/04/00; #51007290, 09/04/00; #46849105, 07/02/00; #46849106, 07/02/00 | " " |
| | (1) yellow receipt | " " |
| | (1) yellow receipt | " " |
| | (1) note "903-865-8181...Wanda" | " " |
| | (6) business cards, Shelley D Featherston...Constable PCT#1...JP #1...Kaufman, TX | |
| | (1) business card, Wizards Sports Café...Richardson, TX | " " |
| | (1) business card, "Sept. 14th 4:00 PM Thursday | " " |
| | (1) business card, Van Zandt Community Counseling...Edgewood, TX | " " |
| | (1) business card, First Christian Church...Wills Point, TX | " " |
| | (1) Bank receipt, Citizen's National Bank...Wills Point, TX... 7188404 #009B4C92662700 #016...$153.88 | " " |
| | (1) receipt, "Lynk Systems" | " " |
| | (1) receipt, "Cowboy Quick...10/05/00...0618PM...22.29" | " ' |

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | CFS# 2000E- | 121188(R030225) | |
|---|---|---|---|---|---|
| DATE OF OFFENSE: 10- | 04 | -2000 | | | |
| OFFENSE LOCATION: | | UNKNOWN | | | |
| LOCATION OF INVESTIGATION: | | 217 N. FIFTH ST. | | | |

**FORENSIC INVESTIGATOR J. ROGERS # 607**

| ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| 607-34 | RECEIPT, COWBOYS QUICK...10-05-00... 22.29 | DETECTIVE MYERS |
| 607-35 | RECEIPT, COLE MOUNTAIN...OCT, 05, 00...25.28 | "          " |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**
**EVIDENCE LOG**

| FI# 00- | 2831 | | CFS# 2000E- | 121188(R030225) |
|---|---|---|---|---|
| DATE OF OFFENSE:  10- | 04 | -2000 | | |
| OFFENSE LOCATION: | | UNKNOWN | | |
| LOCATION OF INVESTIGATION: | | 1640 Commerce | | |

FORENSIC INVESTIGATOR J. ROGERS # 607

| ·ITEM # | DESCRIPTION | COLLECTED FROM |
|---|---|---|
| | (6) Workman's Comp. claim, Policy # 1312912…claim # 011000011160160: check # 0116071970…7/2 – 7/8/00 check # 0116075127…7/23 – 7/29/00 check # 0116079801…9/5 – 9/11/00 check # 0116080559…9/12 – 9/18/00 check # 0116082873…9/26 – 10/2/00 | Inside 607-31 |
| | (1) receipt, "Bruce & Hunan Drug Co.  Wills Point, TX with drug label "Murphy, Jedidiah…C1055295…Dr. William Vandiver…Propoxyphene NAP" | "         " |
| | (1)doctor's note…"Texas Orthopaedic Associates L.L.P., …6/29/00…Jedidiah Murphy" | "         " |
| | (2) one dollar bills, US currencey, SN# K74815283M, A23163190I | "         " |
| | (1) receipt, cash register, "1TX * 2.55 1" | "         " |
| | (1) letter, "State of Texas…two years have lapsed…Jedidiah I. Murphy…Patsy L. Findley…Notary Public | "         " |
| | (1) Certificate, "Certification of Vital Record…File No. 169317-1975…Jedidiah Isaac Murphy…CF530444" | "         " |
| | (1)  Appointment reminder…"Jim Murphy…Oct 2, 2000…Van Zandt County Adult Probation Department" | "         " |
| 607-32 | (1) note, "to Shiloh…10:30" | Back of front pass. seat |
| 607-33 | (2) shoes, brown leather, Hilfiger | Rear pass seat floorboard |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
FORENSIC INVESTIGATION NARRATIVE

FI#: 00-2831                                      CFS# E121188/ R030225

DATE RECEIVED: 10-05-00                           TIME RECEIVED: 4:02 PM
OFFENSE: MISSING PERSON                           DATE OF OFFENSE: 10-05-00
VICTIM/COMPLAINANT: BERTIE CUNNINGHAM
LOCATION OF OFFENSE:
LOCATION OF INVESTIGATION: 217 N. FIFTH STREET
FORENSIC INVESTIGATOR: P. D. PARKER #605

| PHOTO: Y | 35MM: Y | DGTL: Y | VIDEO: N | F/P: N (AFIS QUALITY: ) |
| PALM/P: N | PHYS: N | LAB: N | CHEM: N | |

      INVESTIGATOR PARKER WAS CONTACTED BY FORENSIC INVESTIGATIONS UNIT
SUPERVISOR MOWERY ON 10-05-00 IN THE FORENSIC INVESTIGATIONS OFFICE.  MOWERY
ADVISED THAT A LETTER HAD BEEN RECOVERED THAT WAS WRITTEN BY THE SUSPECT,
JEDIDIAH MURPHY.  MOWERY REQUESTED THAT THE LETTER BY PHOTOGRAPHED AND
PROCESSED FOR FINGERPRINTS.

      INVESTIGATOR OBSERVED A HANDWRITTEN NOTE.  THE NOTE WAS WRITTEN IN
GREEN INK ON RULED PAPER.

      THE LETTER WAS PHOTOCOPIED AND PHOTOGRAPHED USING 35MM AND DIGITAL
FORMATS.

      THE LETTER WAS PLACED INTO A PLASTIC SHEET PROTECTOR AND RETAINED FOR
FURTHER EXAMINATION.

2

GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
FORENSIC INVESTIGATION NARRATIVE

FI#: 00-2831

CFS# E121188/ R030225

DATE RECEIVED: 10-05-00
OFFENSE: MISSING PERSON
VICTIM/COMPLAINANT: BERTIE CUNNINGHAM
LOCATION OF OFFENSE:
LOCATION OF INVESTIGATION: 500 S. VIRGINIA , TERRELL, TEXAS
FORENSIC INVESTIGATOR: P. D. PARKER #605

TIME RECEIVED: 8:00 PM
DATE OF OFFENSE: 10-05-00

| PHOTO: Y | 35MM: Y | DGTL: Y | VIDEO: N | F/P: N  (AFIS QUALITY:  ) |
| PALM/P: N | PHYS: Y | LAB: N | CHEM: N | |

INVESTIGATOR PARKER AND FORENSIC INVESTIGATIONS UNIT SUPERVISOR MOWERY
WERE DISPATCHED TO CHACHO'S STORE, 500 S. VIRGINIA STREET TERRELL, TEXAS, AT
APPROXIMATELY 8:00 PM ON 10-05-00.  MOWERY ADVISED THAT A CREDIT CARD BELONGING
TO THE MISSING PERSON, BERTIE CUNNINGHAM, HAD BEEN USED AT THIS LOCATION.
SERGEANT PEAVY AND DETECTIVE S. W. JOHNS OF THE TERRELL POLICE DEPARTMENT
WERE CONTACTED UPON ARRIVAL.  DETECTIVE JOHNS ADVISED THAT HE HAD TAKEN
CUSTODY OF TWO RECEIPTS FOR THE VICTIM'S CREDIT CARDS.  DETECTIVE JOHNS ADVISED
THAT A HE HAD TAKEN CUSTODY OF A STORE SECURITY TAPE FROM THE LOCATION.
MOWERY, DETECTIVE JOHNS, AND INVESTIGATOR PARKER WATCHED THE TAPE AT THE
LOCATION AND OBSERVED THE SUSPECT IDENTIFIED AS JEDIDIAH MURPHY.

INVESTIGATOR PARKER TOOK CUSTODY OF TWO RECEIPTS FROM THE MASTERCARD
ACCOUNT OF BERTIE L. CUNNINGHAM, ACCOUNT NUMBER 5544260010255141, FROM
DETECTIVE JOHNS.

INVESTIGATOR PARKER, SUPERVISOR MOWERY, AND DETECTIVE JOHNS RETURNED
TO THE TERRELL POLICE DEPARTMENT TO REWATCH THE VIDEO.  COMMANDER LAY OF THE
GARLAND POLICE DEPARTMENT AND CONTACTED AND ADVISED OF THE VIDEO AND UPDATED
INFORMATION ON THE SUSPECT.  AFTER THE VIDEO WAS OBSERVED A SECOND TIME,
INVESTIGATOR PARKER TOOK CUSTODY OF THE VIDEO FROM DETECTIVE JOHNS.

INVESTIGATOR PARKER, SUPERVISOR MOWERY, AND DETECTIVE JOHNS RETURNED
TO THE CHACHO'S STORE.  THE STORE OWNER'S, DOHA ARIDI, W/F, 10-10-67, AND AKRAN
ARIDI, W/M, 07-21-62, WERE CONTACTED UPON ARRIVAL AT THE LOCATION.  DOHA ARIDI
ADVISED THAT THE SUSPECT CAME TO THE LOCATION IN A GOLD COLORED FOUR-DOOR
VEHICLE WITH AN OVERWEIGHT BLACK MALE IN THE PASSENGER SEAT OF THE VEHICLE.
ARIDI GAVE SUPERVISOR MOWERY A DISCRIPTION OF THE PASSENGER AND VEHICLE.
COMMANDER LAY WAS CONTACTED AND UPDATED ON THE INCIDENT.

INVESTIGATOR PARKER, SUPERVISOR MOWERY, AND DETECTIVE JOHNS RETURNED
TO TERRELL POLICE DEPARTMENT TO CONTACT SERGEANT PEAVY AND GARLAND POLICE
OFFICERS, TANNOCK, MCCULLY, AND GUENTHERMAN.  INVESTIGATOR PARKER AND
SUPERVISOR MOWERY FOLLOWED GARLAND AND TERRELL OFFICERS TO A PARK TO STAGE
FOR OBSERVING A LOCATION WHERE THE SUSPECT MIGHT HAVE BEEN.  COMMANDER LAY
WAS CONTACTED AND ADVISED THAT FORENSIC INVESTIGATIONS UNITS COULD RETURN TO
GARLAND.

UPON RETURN TO THE GARLAND POLICE STATION, INVESTIGATOR PARKER AND
SUPERVISOR MOWERY CONTACTED COMMANDER LAY TO OBSERVE THE VIDEO.  THE VIDEO
WAS LABELED AND PLACED INTO THE LOCKED CABINET IN THE FORENSIC INVESTIGATIONS
LABORATORY.  THE TWO RECEIPTS WERE PHOTOCOPIED AND PHOTOGRAPHED USING 35MM
AND DIGITAL FORMATS.  THE RECEIPTS WERE PLACED INTO A PLASTIC SHEET PROTECTOR
PENDING FURTHER EXAMINATION.

GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
FORENSIC INVESTIGATION NARRATIVE

FI#: 00-2831                                          CFS# E121188/ R030225

DATE RECEIVED: 10-11-00                               TIME RECEIVED: 8:00 PM
OFFENSE: MURDER                                       DATE OF OFFENSE: 10-05-00
VICTIM/COMPLAINANT: BERTIE CUNNINGHAM
LOCATION OF OFFENSE:
LOCATION OF INVESTIGATION: 217 N. FIFTH STREET
FORENSIC INVESTIGATOR: P. D. PARKER #605

| PHOTO: Y | 35MM: Y | DGTL: Y | VIDEO: N | F/P: Y  (AFIS QUALITY:  ) |
| PALM/P: Y | PHYS: Y | LAB: Y | CHEM: Y | |

ON 10-11-00, INVESTIGATOR PARKER PROCESSED ITEMS RECOVERED BY
INVESTIGATOR ROGERS IN REFERENCE TO A MURDER INVESTIGATION.  THE ITEMS WERE
PHOTOCOPIED AND PHOTOGRAPHED USING 35MM AND DIGITAL FORMATS PRIOR TO BE
PROCESSED FOR FINGERPRINTS.

INVESTIGATOR PARKER OBSERVED AND PROCESSED THE FOLLOWING ITEMS USING
NINHYDRIN:
607-32 NOTE "TO SHILOH...10:30".  NO LATENTS OF VALUE DEVELOPED.

607-30 ATM RECEIPT..."100400...1131PM...RT0504...9620 HARRY HINES...DALLAS, TX...$.00
SEQ# 4891.  LATENTS WERE DEVELOPED.

607-29 3X5 NOTEBOOK WITH HANDWRITING THROUGHOUT.  LATENTS DEVELOPED

ITEMS FROM 607-31

CHACHO'S RECEIPT TIME 17:27.  LATENTS DEVELOPED.

CHACHO'S RECEIPT TIME 17:36.  LATENTS DEVELOPED.

COWBOY QUICK RECEIPT TIME 6:18 PM.  LATENTS DEVELOPED.

COLE MOUNTAIN RECEIPT TIME 19:05.  LATENTS DEVELOPED.

TEXAS ORTHOPAEDIC ASSOCIATES LETTER. LATENTS DEVELOPED ON BACK.

WORKER'S COMPENSATION RECEIPT, JEDIDIAH MURPHY CHECK 0116071970.  NO LATENTS OF
VALUE.

WORKER'S COMPENSATION RECEIPT, JEDIDIAH MURPHY CHECK 00116082873.  LATENTS
DEVELOPED.

WORKER'S COMPENSATION RECEIPT, JEDIDIAH MURPHY CHECK 00116080559.  LATENTS
DEVELOPED.

WORKER'S COMPENSATION RECEIPT, JEDIDIAH MURPHY CHECK 0116079801.  LATENTS
DEVELOPED.

WORKER'S COMPENSATION RECEIPT, JEDIDIAH MURPHY CHECK 0116075127.  LATENTS
DEVELOPED.

APPOINTMENT REMINDER, JIM MURPHY, VN ZANDT ADULT PROBATION DEPARTMENT.
LATENTS DEVELOPED.

BRUCE AND HUMAN DRUG CO. RECEIPT. LATENTS DEVELOPED.
GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
FORENSIC INVESTIGATION NARRATIVE

FI#: 00-2831                          CFS# E121188/ R030225

DATE RECEIVED: 10-11-00               TIME RECEIVED: 8:00 PM
OFFENSE: MURDER                       DATE OF OFFENSE: 10-05-00
VICTIM/COMPLAINANT: BERTIE CUNNINGHAM
LOCATION OF OFFENSE:
LOCATION OF INVESTIGATION: 217 N. FIFTH STREET
FORENSIC INVESTIGATOR: P. D. PARKER #605

| PHOTO: Y | 35MM: Y | DGTL: Y | VIDEO: N | F/P: Y (AFIS QUALITY: ) |
| PALM/P: Y | PHYS: Y | LAB: Y | CHEM: Y | |

WHITE RECEIPT. LATENTS DEVELOPED.

MONEY ORDER RECEIPT 146849105/ 146849106. NO LATENTS DEVELOPED.

MONEY ORDER RECEIPT 151007289/ 151007290. LATENTS DEVELOPED.
CITIZEN NATIONAL BANK RECEIPT. LATENTS DEVELOPED.

TWO (2) ONE DOLLAR BILLS, SERIAL NUMBER A231631901, K74815283M. NO LATENTS OF VALUE.

CHECK BOOK REGISTER. LATENTS DEVELOPED.

STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY, SAFETY RESPONSIBILITY LETTER. LATENTS DEVELOPED.

CERTIFICATION OF VITAL RECORD, JEDIDIAH ISAAC MURPHY. LATENTS DEVELOPED.

Dr. Lee NOTE. LATENTS DEVELOPED.

    THE ITEMS WERE STORED IN PLASTIC SHEET PROTECTORS AND RETAINED FOR COMPARISON PURPOSES.

GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
FORENSIC INVESTIGATION NARRATIVE

FI#: 00-2831                                      CFS# E121188/ R030225

DATE RECEIVED: 10-12-00                           TIME RECEIVED: 8:00 PM
OFFENSE: MURDER                                   DATE OF OFFENSE: 10-05-00
VICTIM/COMPLAINANT: BERTIE CUNNINGHAM
LOCATION OF OFFENSE:
LOCATION OF INVESTIGATION: 217 N. FIFTH STREET
FORENSIC INVESTIGATOR: P. D. PARKER #605

| PHOTO: Y | 35MM: Y | DGTL: Y | VIDEO: N | F/P: Y (AFIS QUALITY: ) |
| PALM/P: Y | PHYS: Y | LAB: Y | CHEM: Y | |

ON 10-12-00, INVESTIGATOR PARKER PROCESSED ITEMS RECOVERED BY INVESTIGATOR ROGERS IN REFERENCE TO A MURDER INVESTIGATION. THE ITEMS WERE PHOTOCOPIED AND PHOTOGRAPHED USING 35MM AND DIGITAL FORMATS.

INVESTIGATOR OBSERVED AND PROCESSED THE FOLLOWING ITEMS USING NINHYDIN:

ONE WIZARDS SPORTS CAFÉ CARD, JEDIDIAH MURPHY. LATENTS DEVELOPED.

SIX BUSINESS CARDS, SHELLEY D. FEATHERSON, CONSTABLE PCT# 1. LATENTS DEVELOPED ON FIVE CARDS.

FIRST CHRISTIAN CHURCH CARD. LATENTS DEVELOPED.

VAN ZANDT COMMUNITY COUNSELING CENTER CARD. NO LATENTS OF VALUE.

INVESTIGATOR OBSERVED AND PROCESSED THE FOLLOWING ITEMS USING CYANOACRYLATE ESTER FUMING AND BLACK MAGNETIC POWDER.

BLUE PLASTIC CHECKBOOK, TEXAS IDENTIFICATION CARD, 01211952, MURPHY, JEDIDIAH ISAAC, DISCOVER PLATINUM CARD, 6011008050627147, BERTIE CUNNINGHAM, WASHINGTON MUTUAL MASTERCARD, 5544260010255141, BERTIE L. CUNNINGHAM.

NO LATENTS OF VALUE OF VALUE WERE DEVELOPED ON THE ITEMS. THE ITEMS WERE PLACED INTO PLASTIC AND RETAINED AS EVIDENCE.

GARLAND POLICE DEPARTMENT
FORENSIC INVESTIGATIONS UNIT
FORENSIC INVESTIGATION NARRATIVE

FI#: 00-2831                              CFS# E121188/ R030225

DATE RECEIVED: 10-13-00                   TIME RECEIVED: 8:00 PM
OFFENSE: MURDER                           DATE OF OFFENSE: 10-05-00
VICTIM/COMPLAINANT: BERTIE CUNNINGHAM
LOCATION OF OFFENSE:
LOCATION OF INVESTIGATION: 217 N. FIFTH STREET
FORENSIC INVESTIGATOR: P. D. PARKER #605

| PHOTO: Y | 35MM: Y | DGTL: Y | VIDEO: N | F/P: Y (AFIS QUALITY: ) |
| PALM/P: Y | PHYS: Y | LAB: Y | CHEM: Y | |

ON 10-13-00, INVESTIGATOR PARKER PROCESSED ITEMS RECOVERED BY INVESTIGATOR ROGERS IN REFERENCE TO A MURDER INVESTIGATION.  THE ITEMS HAD BEEN PHOTOGRAPHED, MARKED AND LABELED BY INVESTIGATOR ROGERS.

INVESTIGATOR OBSERVED AND PROCESSED THE FOLLOWING ITEMS USING NINHYDRIN:
607-34 MERCHANT COPY RECEIPT, COWBOYS QUICK.  LATENTS WERE DEVELOPED.

607-35 MERCHANT COPY RECEIPT, COLE MOUNTAIN.  LATENTS WERE DEVELOPED.

THE ITEMS WERE PLACED INTO PLASTIC SHEET PROTECTORS FOR COMPARISON.



TO:        John Mowery, Supervisor
           Forensic Investigation Unit

FROM:      Virginia Long
           Forensic Investigation Unit

DATE:      September 20, 2000

SUBJECT:   Positive latent print identification:


On October 6, 2000 Forensic Investigator Rogers conducted the homicide investigation of
Bertie Cunningham.  During the course of the investigation latent prints were developed.
On October 8, 2000 the latent print were compared to the rolled inked prints belonging to
Jedidiah Isaac Murphy, a white male, date of birth 09-01-75, GPD# 2444172.  The
comparison resulted in positive identifications of:
1)  Jedidiah Isaac Murphy's right thumb to a latent lift labeled " DATE: 10-07-00,  fi#
00-2831, CF# E121188,  OFFENSE (Type & No.)  1 (murder), VICTIM: Bertie
Cunningham, ADDRESS; 217 N. Fifth, PRINTS LIFTED FROM:  unopened pack of
basic Menthol Lights 100's, LIFTED BY; Forensic Investigator Tharp # 608.
2)  Jedidiah Isaac Murphy's left thumb to a latent lift labeled " DATE: 10-6-00,  FI#
2831, CF# e121188,  OFFENSE (Type & No.) Murder 1,  VICTIM  Bertie Cunningham,
ADDRESS:            , PRINTS LIFTED FROM:  interior drivers door handle , LIFTED
BY: Forensic Investigator Rogers # 607.
3)   Jedidiah Isaac Murphy's left ring and left thumb to latent print on a "Patmont Motor
    Werks Warranty Registration" sheet.


Virginia Long, CSCSA
Certified Latent Print Examiner


Reviewed By: Bill Rice, CSCSA
Certified Latent Print Examiner



**GARLAND POLICE DEPARTMENT**
**FORENSIC INVESTIGATIONS UNIT**

TO:        DETECTIVE M. MYERS
           CRIMINAL INVESTIGATIONS DIVISION

FROM:   JAMES ROGERS
           FORENSIC INVESTIGATOR
DATE:    October 5, 2000

REF:      FINGERPRINT COMPARISON ON JEDIDIAH ISAAC MURPHY

    On October 5, 2000, Forensic Investigator Rogers collected evidence of credit card abuse at 408 N. Central Expressway in Richardson, TX.   Several items were collected for latent print processing in the Forensic laboratory.
    During the course of the processing, latent fingerprints of value were enhanced on the documents collected.
    The enhanced latent fingerprints were compared to photocopied fingerprints of Jedidiah Isaac Murphy, W/M, DOB 09-01-1975, from the Kaufman County Sheriff Office.
    The comparison resulted in a match between the #9 (left ring) finger of Jedidiah Isaac Murphy and an enhanced latent fingerprint on item 607-3 (GO-PED...warranty document...Liquimatic...HB-25701).

_James Rogers_
James Rogers
Forensic Investigator

_Phillip D. Parker_
Phillip D. Parker
Forensic Investigator

00803



# GARLAND POLICE DEPARTMENT

# MEMORANDUM

TO      : Detective M. Myers
          **Criminal Investigations Division**

FROM    : Investigator Vicki S. Standley
          **Forensic Investigations Unit**

DATE    : October 15, 2000
SUBJECT : **Positive Latent Print Identification(s)**

On October 05, 2000, Forensic Investigator Rogers conducted a forensic investigation in reference to the homicide/missing person investigation of Bertie Cunningham, CFS# E121188, Off# R030225, FI# 00-2831. During the course of the investigation, latent prints were developed.

On October 15, 2000, Investigator Standley compared a copy of the fingerprints of Jedidiah Isaac Murphy, W/M 09/01/75, GPD# 2444172 to the latent prints developed on documents processed with ninhydrin during the course of the homicide/missing person investigation of Bertie Cunningham. The fingerprints of Jedidiah Isaac Murphy, W/M 09/01/75, GPD# 2444172 were identified:

01. The left index finger to a latent print developed on a piece of paper with "DR. LEE 551-6957" written on it.

02. The left thumb to a latent print developed on a torn piece of yellow paper in the same sheet protector with the piece of paper with "DR LEE 551-6957" written on it.

03. The left little finger to a latent print developed on a second torn piece of yellow paper in the same protector with the piece of paper with "DR LEE 551-6957" written on it.

04. The left thumb, left index and left middle fingers to a yellow piece of paper wit Lynk Systems, Inc. Atlanta GA 1-800-859-5965" printed on it.

05. The right index finger on the back of a proof of financial responsibility form dated August 4, 2000.

06. The left thumb on the front of a workers compensation indemnity payment check stub with check number 0116075127 on it.

07. The left index and right index fingers on the front of a workers compensation indemnity payment check stub with check number 0116079801.

Page two CFS# E121188 Off# R030225

08. The left thumb and right index finger on the front of a workers compensation indemnity payment check stub with check number 0116082873 on it.

09. The right index finger on the back of "Wizards Sports Café" business card.

10. The right index finger on the back of a business card for Shelley D. Featherston.  The right index, middle and ring fingers also are on the front of the same business card.

11. The left index finger on the back of a white receipt in the amount of $33.64.  The left thumb is also on the front of the same receipt.

All items are labeled and initialed by Investigator J. Rogers as being from evidence item 607-31.


Vicki S. Brainard-Standley CSCSA
IAI Certified Latent Print Examiner


Bill Rice CSCSA
Forensic Investigator



TO:        John Mowery, Supervisor
           Forensic Investigation Unit

FROM:      Virginia Long
           Forensic Investigation Unit

DATE:      September 20, 2000

SUBJECT:   Positive latent print identification:


On October 6, 2000 Forensic Investigator Rogers conducted the homicide investigation of
Bertie Cunningham.  During the course of the investigation Investigator Rogers processed
the victims vehicle a silver Honda "Accord" Texas tag YLD 94Y. Latent prints of value
were developed and lifted. On October 9, 2000 the latent prints were compared to the
rolled inked prints belonging to Jedidiah Isaac Murphy, a white male, date of birth 09-01-
75, GPD# 2444172.  The comparison resulted in positive identifications of:
1)   Jedidiah Isaac Murphy's left middle finger to a latent lift labeled " DATE: 10-06-00,
FI# 00-2831, CF# E121188 R030225,  OFFENSE (TYPE & No.) Murder 1,  VICTIM:
Bertie Cunningham,  ADDRESS:      ,  PRINTS LIFTED FROM: exterior drivers
door frame, LIFTED BY: Forensic Investigator J. Rogers # 607".
2)   Jedidiah Isaac Murphy's right index, middle and ring fingers to a latent lift labeled "
DATE: 10-06-00, FI# 00-2831, CF# E121188 R030225,  OFFENSE TYPE & No.)
Murder 1,  VICTIM: Bertie Cunningham, ADDRESS:      ,  PRINTS LIFTED FROM:
interior upper edge of rear pass. door window,  LIFTED BY: Forensic Investigator J.
Rogers # 607"
3)   Jedidah Isaac Murphy's right index finger to a latent lift labeled 'DATE: 10-06-00.
FI# 00-2831, CF# E121188 R030225, OFFENSE ( TYPE & No.) Murder 1, VICTIM:
Bertie Cunningham,  ADDRESS:    , PRINTS LIFTED FROM:  drivers side of front
hood,  LIFTED BY: Forensic Investigator J. Rogers # 607


Virginia Long, CSCSA
Certified Latent Print Examiner


Reviewed By: Bill Rice, CSCSA
Certified Latent Print Examiner

00806



# GARLAND POLICE DEPARTMENT
## MEMORANDUM

TO        :    John Mowery, Supervisor
               **Forensic Investigation Unit**

FROM      :    Investigator Holly Tharp
               **Forensic Investigations Unit**

DATE      :    September 12, 2000
SUBJECT   :    **Positive Latent Print Identifications**

---

On October 6, 2000 Forensic Investigator Rogers conducted the homicide investigation of Bertie Cunningham, FI #00-2831, 2000E121188, 2000R030225. During the course of the investigation Investigator Rogers collected several items of evidence. This evidence was processed in the forensic investigations laboratory for latent prints. During the processing of evidence latents were enhanced on an ATM bank receipt. On October 12, 2000, the latent prints were compared to the rolled inked prints belonging to Jedidiah Isaac Murphy W/M/09-01-75 GPD #2444172. The comparison resulted in the positive identification of Jedidiah Isaac Murphy's left index finger from ATM receipt dated 10-04-00 at 11:31pm from 9620 Harry Hines Dallas TX with "Transaction selected can not be processed" on the receipt.

_Holly Tharp_
Holly Tharp
Forensic Investigator


_Jim Rogers_
Jim Rogers
Forensic Investigator

**CITY OF GARLAND**
**POLICE DEPARTMENT**
*INVENTORY OF RECOVERED PROPERTY*

OFFENSE # R 030225 _____   CALL SHEET # E121188

COMP. ☐   OWNER ☐   ARR. SUB ☒   OTHER ☐   RELEASED TO OWNER ☐

NAME FILED UNDER  MURPHY      JEDIDIAH    ISAAC
                (LAST)          (FIRST)             (MIDDLE)

TURNED IN BY  MYERS   M. J.   #177      1582

DATE  10-7-00 _____   TIME  12:10 PM

OFFENSE _____   IF FOUND CHECK ☐
          TYPE OF OFFENSE

| QUANTITY | DESCRIPTION OF PROPERTY (Include Serial Number - Please Print) | ARTICLE # | BIN # |
|---|---|---|---|
| 1 | HOSE from wet dry VAC | | |
| 1 | Hose from House VAC } Conected | | |
| 1 | HEATER HOSE | | |
| 1 | Blue Towel | | |
| | | | |
| | | | |
| | Items removed from Tony Thorp | | |
| | house on 10-6-00 | | |
| | by Det Myers + Brown | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

00808

COG 120-129  DSK #6 (replaced 172-66)

DATE ____ 7 - 6 - 00 ____        CASE # _____

## GARLAND POLICE DEPARTMENT
## FIELD RECEIPT

[X] PROPERTY RECEIPT     [ ] HOLD NOTICE     [ ] PROPERTY SEIZURE

**PERSON IN POSSESSION OF PROPERTY AT THE TIME OF (HOLD) (SEIZURE) OR TO WHOM RELEASED.**

NAME _____ PHONE ( ____ )_____

ADDRESS _____

| QTY. | ITEM DESCRIPTION (Make, Model Number, etc.) | SERIAL NUMBER |
|---|---|---|
| 1 | Hose from wet dry VAC | |
| 1 | blue towel | |
| 1 | heater hose | |
| 1 | hose from house VAC | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**I AGREE THAT THE DESCRIPTION AND QUANTITY LISTED ABOVE MATCHES THE PROPERTY SURRENDERED:**

_____        _____
SIGNATURE OF PERSON RELEASING PROPERTY          SIGNATURE AND ID NUMBER OF POLICE PERSONNEL

## PERMANENT RECEIPT OF PROPERTY

**I CERTIFY UNDER PENALTY OF PERJURY THAT I AM THE LAWFUL OWNER/GUARDIAN OF THE DESCRIBED PROPERTY; I HAVE TAKEN POSSESSION OF THE DESCRIBED PROPERTY ON** _____.

NAME _____

ADDRESS _____ CITY/STATE/ZIP_____

PHONE ( ____ )_____ ID _____

_____        _____
SIGNATURE OF PERSON RECEIVING PROPERTY           SIGNATURE OF POLICE PERSONNEL

COG 120-143                                                    00809

## CITY OF GARLAND
## POLICE DEPARTMENT
### *INVENTORY OF RECOVERED PROPERTY*

OFFENSE # _R030225_      CALL SHEET # _121188_

COMP. ☐   OWNER ☐   ARR. SUB ☒   OTHER ☐   RELEASED TO OWNER ☐

NAME FILED UNDER _MURPHY_    _JEDIDAH_    _ISAAC_
                     (LAST)         (FIRST)         (MIDDLE)

TURNED IN BY _Brown, W. It. #199_

DATE _10/12/00_      TIME _4:44 P.M._

OFFENSE _Cap. Murder_           IF FOUND CHECK ☐
       TYPE OF OFFENSE

| QUANTITY | DESCRIPTION OF PROPERTY (Include Serial Number - Please Print) | ARTICLE # | BIN # |
|---|---|---|---|
| 3 | Live 22 Cal. Bullets | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

00810

**CITY OF GARLAND**
**POLICE DEPARTMENT**
*INVENTORY OF RECOVERED PROPERTY*

OFFENSE # _R030225_      CALL SHEET # _121188_

COMP. ☐   OWNER ☐   ARR. SUB ☒   OTHER ☐   RELEASED TO OWNER ☐

NAME FILED UNDER _MURPHY_    _JEDIDIAH_    _ISAAC_
                (LAST)         (FIRST)           (MIDDLE)

TURNED IN BY _MYERS  M.J.  1582_

DATE _10-12-00_      TIME _4:45 PM_

OFFENSE _____ IF FOUND CHECK ☐
       TYPE OF OFFENSE

| QUANTITY | DESCRIPTION OF PROPERTY (Include Serial Number - Please Print) | ARTICLE # | BIN # |
|---|---|---|---|
| 17 | .22 CALIBER CASINGS | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

00811

**CITY OF GARLAND**
**POLICE DEPARTMENT**
*INVENTORY OF RECOVERED PROPERTY*

OFFENSE # 2000 R030225 _____   CALL SHEET # 121188 _____

COMP. ☐   OWNER ☐   ARR. SUB ☒   OTHER ☐   RELEASED TO OWNER ☐

NAME FILED UNDER Murphy _____ Jedidiah _____
(LAST)                          (FIRST)                          (MIDDLE)

TURNED IN BY Myers _____

DATE 10-18-00 _____   TIME 1:00 Pm _____

OFFENSE _____   IF FOUND CHECK ☐
          TYPE OF OFFENSE

| QUANTITY | DESCRIPTION OF PROPERTY<br>(Include Serial Number - Please Print) | ARTICLE # | BIN # |
|---|---|---|---|
| 2 | VHS Tapes | | |
| | recovered from J.C. Penney | | |
| | store @ Colin Creek Mall | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | 00812 |

COG 120-129  DSK #6 (replaced 172-66)

City of Garland
POLICE DEPARTMENT
AFFIDAVIT IN ANY FACT

THE STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, Matt Myers , a Notary Public in and for said County, State of
Texas, on this day personally appeared ____Tonya Thorp____.
Who, after being by me duly sworn, on oath deposes and says:

OLD & SHOULD BE ABLE TO TAKE CARE OF HIMSELF.
I THEN TOLD HER ABOUT HIM TELLING ZACK THAT
HE WAS PLANNING ON GOING TO FLORIDA & KILLING
HIMSELF. I ALSO TOLD HER THAT HE HAD COME BY
THE HOUSE LAST NIGHT WHILE I WAS OUT IN A CAR &
THAT HE HAD A COUPLE OF CREDIT CARDS. I THEN
TOLD HER I WOULD CALL HER LATER & LET HER KNOW
IF I FOUND ANYTHING OUT.

I ARRIVED AT HOME AROUND 12:00 NOON & WALKED
INTO MY KITCHEN WHERE I NOTICED A NOTE ON THE
TABLE. IT WAS A SUICIDE NOTE FROM MY BROTHER.
IMMEDIATELY CALLED MY MOM & TOLD HER WHAT I
HAD FOUND. SHE THEN TOLD ME WHAT SHE HAD HEARD
ON THE NEWS, AN OLD WOMAN WAS MISSING FROM COLLIN
& CREEK MALL & A DESCRIPTION OF A MALE THAT HAD BEEN
SEEN WITH HER & THAT SOMEONE FITTING THIS DECRIPTION

SUBSCRIBED AND SWORN TO BEFORE ME THIS 5 DAY OF Oct A.D.
2000



MATT MYERS
Notary Public
State of Texas
My Comm. Exp. 02-09-2002

_Matt Myers_
NOTARY PUBLIC, DALLAS COUNTY, TEXAS

00813

City of Garland
POLICE DEPARTMENT
AFFIDAVIT IN ANY FACT

THE STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, Matt Myers , a Notary Public in and for said County, State of
Texas, on this day personally appeared _TONYA THORP_
Who, after being by me duly sworn, on oath deposes and says:

HAD BEEN SEEN AT A MOTORCYCLE SHOP IN RICHARDSON
WITH 2 TEENAGE BOYS. I TOLD HER I HAD TO
GO & LEFT MY HOUSE IMMEDIATELY FOR APOLLO
Jr. HIGH WHERE MY DAUGHTER ATTENDS SCHOOL TO VERIFY
WHETHER ZACK & RYAN HAD GONE TO A MOTORCYCLE
SHOP WITH MY BROTHER. THEY HAD. THEY SAID THAT
'N HAD BOUGHT THEM BOTH A GO-PED AS WELL AS ONE
FOR HIMSELF. AT THIS POINT CARON YARDHAM CALLED
THE POLICE OFFICER AT THE SCHOOL & TOLD HIM WHAT
WAS GOING ON & THEN THE GARLAND POLICE DEPARTMENT
WAS CALLED & HERE I AM, AT THE POLICE STATION
IN GARLAND WRITING OUT A STATEMENT.

SUBSCRIBED AND SWORN TO BEFORE ME THIS _5_ DAY OF _OCT_ A.D.
2000

NOTARY PUBLIC, DALLAS COUNTY, TEXAS

00814

# DISCOVER CARD, INC.

Richard Shollenberger
P.O. Box 48187
Fort Worth, TX 76148

Telephone 817-581-2928
Fax 817-581-4943

January 12, 2001

Dallas Dist. Atty. Office
133 N. Industrial Blvd.
Lock Box 19
Dallas, TX 75207
Attn:  Willie Richardson

RE: 6011 0080 5062 7147 & 6011 0085 3069 7884

Dear Mr. Richardson:

Enclosed are documents pertaining to the accounts of Bertie Cunningham and
Frances Conner.  The first page on the Cunningham account is titled "fednet detail
review".  This shows the authorizations with the time in EST.  The next three
pages titled "expanded Authorization"  show the three fraud charges with the
exact dollar amount.  The next two pages are the statement pages for the account
showing the charges posted to the account.

The two pages on the Conner account show an attempt of a cash advance, but it
was declined.  We checked the location and it took place at 9620 Harry Hines
Blvd., Dallas, TX and had no camera.

If you need anything else, let me know.

Sincerely,

Richard Shollenberger
Richard Shollenberger
Regional Field Investigator

00815

```
       6011 0080 5062 7147   *      DISCOVER CARD      *  DSC052   @1FA 10/06/0?
                             *  FEDNET DETAIL REVIEW   *
CUNNINGHAM,BERTIE            *   NO AUTH BUYERS    *                    14:26:4?
                             *  FOR THIS ACCOUNT  *
GARLAND              TX                                     CM EXP DATE: 08/0?
10/05 20:24 MA     $22      PHLLPS 66 AUTH ONLY      OLATHE       KS
10/05 20:09 MA     $25      COLE MOUNTAIN            TERRELL      TX
10/04 19:45 MA  $1,728  HQ  RICHARDSON MOTOR SPORT   RICHARDSON   TX
10/03 13:35 MA      $8      HOME DEPOT 556           GARLAND      TX
10/03       PY   $314-      PAYMENT - THANK YOU
10/02 17:51 MA     $17      MFS 81                   GARLAND      TX
09/28 15:08 MA     $10      SNS 225                  RICHARDSON   TX
09/25 17:03 MA      $8      ALBERTSONS 4260          RICHARDSON   TX
09/25 10:29 MA     $16      MFS 81                   GARLAND      TX
09/22 10:47 MA     $15      SNS 207                  GARLAND      TX
09/19 12:41 MA     $15      CLARK RETAIL ENTERPRISES GLEN ELLYN   IL
09/18 15:05 MA      $8      IHOP 1413                PLANO        TX
09/15 10:37 MA     $13      KROGER DALLAS # 557      GARLAND      TX
09/14 12:10 MA     $12      ALBERTSONS 4260          RICHARDSON   TX
09/14 11:08 MA     $21      SEARS 1207               RICHARDSON   TX

 F3=SFR   F6=MEMOS   F7=UP   F8=DOWN   F9=SFI   F11=EXPAND   F18=ADD MEMOS
```

```
    6011 0080 5062 7147 *      DISCOVER CARD      *  DSC011   @1FA 10/06/00
JNNINGHAM,BERTIE           * EXPANDED  AUTHORIZATION *                14:27:27
                           *  NO AUTH BUYERS  *    GARLAND                  TX
                           * FOR THIS ACCOUNT *

    DATE:       10/04/00         AUTH CODE: 004541 FULL POSITIVE AUTH
    TIME:       19:45            AUTH TYPE: SWIPED AUTH
    AMOUNT:     $1,728.75                       CM EXP DATE: 08/03
    TYPE:    MERCHANDISE PURCHASE               TRANS EXP DATE: 08/03

    PRODUCT:  MOTORCYCLE DEALERS                FLOOR LIMIT:   $0

    MERCHANT:                    CORPORATE:
      RICHARDSON MOTOR SPORT        RICHARDSON MOTOR SPORTS LLC
      601101029764568              408 S CENTRAL EXPRESSWAY
      408 S CENTRAL EXPRESSWAY
      RICHARDSON      TX            RICHARDSON      TX
      75080                        75080
      (972) 310-8330
      POS ZIP:

F1=HELP    F3=END
```

00817

```
   6011 0080 5062 7147 *       DISCOVER CARD       *   DSC011   @1FA 10/06/00
JNNINGHAM,BERTIE          * EXPANDED  AUTHORIZATION *                  14:26:51
                         *  NO AUTH BUYERS  *      GARLAND                    TX
                         * FOR THIS ACCOUNT *

   DATE:      10/05/00           AUTH CODE: 005037 FULL POSITIVE AUTH
   TIME:      20:24              AUTH TYPE: SWIPED AUTH
   AMOUNT:        $22.29                          CM EXP DATE: 08/03
   TYPE:      MERCHANDISE PURCHASE                TRANS EXP DATE: 08/03


   PRODUCT:  SERVICE STATIONS                     FLOOR LIMIT:    $0

   MERCHANT:                      CORPORATE:
     PHLLPS 66 AUTH ONLY            NO CORPORATE INFORMATION
     60110160110504                 FOUND FOR MERCAHNT
     12085 STRING LINE
     OLATHE           KS
     66062
     (913) 900-5000
     POS ZIP:

 F1=HELP    F3=END
```

00818

```
  6011 0080 5062 7147 *       DISCOVER CARD        *   DSC011    @1FA 10/06/00
JNNINGHAM,BERTIE        * EXPANDED  AUTHORIZATION  *                   14:27:17
                        *  NO AUTH BUYERS  *       GARLAND                    TX
                        * FOR THIS ACCOUNT *

    DATE:      10/05/00         AUTH CODE: 005464 FULL POSITIVE AUTH
    TIME:      20:09            AUTH TYPE: SWIPED AUTH
    AMOUNT:       $25.28                           CM EXP DATE: 08/03
    TYPE:      MERCHANDISE PURCHASE                TRANS EXP DATE: 08/03


    PRODUCT:  EATING PLACES, RESTAURANTS            FLOOR LIMIT:   $0

    MERCHANT:                          CORPORATE:
      COLE MOUNTAIN                      CULPEPPER CATTLE & CATTERING
      601101701735373                    303 I 30 EAST
      419 E MOORE AVE
      TERRELL        TX                  ROCKWALL        TX
      75160                              75087
      (972) 240-4980
      POS ZIP: 75160

F1=HELP    F3=END
```

```
    6011 0080 5062 7147      CARDMEMBER STATEMENT           15:02:33    01/12/01
  JNNINGHAM, BERTIE          CLOSING DATE: 10/16/00
                             VIEW DATE: 10 / 00
  CREDIT LIMIT: 10000   PAYMENT DUE DATE: 11/13/00  PREVIOUS BALANCE:          314.37
  CREDIT AVAIL:  8093   MIN PAYMENT DUE:      39.00  PAYMENTS/CREDITS: -        314.37
                        AMOUNT PAST DUE:       0.00  PURCHASES/MISC:   +       1906.30
                                                     CASH ADVANCES:    +          0.00
                                                     BALANCE TRANSFERS +          0.00
                                                     FINANCE CHARGES:  +          0.00
  *STATEMENT IS ON HOLD                               NEW BALANCE:      =       1906.30

  PAYMENTS AND CREDITS  10/03  PAYMENT - THANK YOU                             314.37-
  MERCHANDISE/RETAIL    10/03  HOME DEPOT 556 GARLAND TX                         8.57
  RESTAURANTS           09/18  IHOP #1413 PLANO TX                               8.26
                        10/05  COLE MOUNTAIN REST TERRELL TX                    30.28
  GAS/AUTOMOTIVE        09/19  CLARK 00020080290 QQ GARLAND TX                  14.02
                        10/04  RICHARDSON MOTOR SPORT RICHARDSON TX          1,728.75
                        10/05  COWBOYS QUICK TERRELL TX                         22.29
  SUPERMARKETS          09/14  ALBERTSON'S #42 390461 RICHARDSON TX             12.39
                        09/15  KROGER #557 SL9 GARLAND TX                       13.79
                        09/22  SACK N SAVE #207 GARLAND TX                      15.14
                                       F5-CBB   F6-FC                 F8-DOWN
  F9-PREV F10-NEXT  F11-VIEW DETAIL                          F14-ADJ F15-REPRINT
  MSG: MORE PAGES FOR THE STATEMENT EXIST
```

00820

```
    6011 0080 5062 7147          CARDMEMBER STATEMENT          15:02:57   01/12/01
 JNNINGHAM,BERTIE                CLOSING DATE: 10/16/00
                                 VIEW DATE: 10 / 00
 SUPERMARKETS           09/25 MINYARD #081 GARLAND TX                        16.33
                        09/25 ALBERTSON'S #42 390461 RICHARDSON TX            8.94
                        09/28 SACK N SAVE #225 RICHARDSON TX                 10.03
                        10/02 MINYARD #081 GARLAND TX                        17.51
```

```
                                        F5-CBB   F6-FC   F7-UP
                                                         F14-ADJ F15-REPRINT
   F9-PREV F10-NEXT  F11-VIEW DETAIL
 MSG: LAST PAGE OF THE STATEMENT
```

```
    6011 0085 3069 7884  *      DISCOVER CARD     *   DSC011   @518 10/05/00
CONNER,FRANCES LOUISE     *  EXPANDED  AUTHORIZATION  *                09:05:02
                          *  NO AUTH BUYERS     *       DALLAS              TX
                          *  FOR THIS ACCOUNT *

   DATE:       10/05/00         DECLN CODE: 2A INVALID PIN NUMBER ENTERED
   TIME:       05:33            AUTH TYPE: ATM AUTH
   AMOUNT:        $201.50                             CM EXP DATE: 03/05
   TYPE:       DECLINED AUTHORIZATI                   TRANS EXP DATE: 03/05


   PRODUCT:  FINANCIAL INSTITUTIONS, ATM'S            FLOOR LIMIT:   $0


   MERCHANT:                         CORPORATE:
    MAC/PHILDELPHIA NAT'L             NOVUS NETWORK SERVICES
    601101089892044                  ATM CLIENT RELATIONS
    PO BOX 3016   ATTN: ATM          PO BOX 28543
    NEW ALBANY       OH              COLUMBUS       OH
    43054                            43228
    (614) 830-0030
    POS ZIP:

F1=HELP    F3=END
```

```
                                            *    DISCOVER CARD       *   DSC052   @518 10/05/00
        6011 0085 3069 7884       *    *  FEDNET DETAIL REVIEW   *
                                         *   NO AUTH BUYERS    *                    09:06:40
CONNER,FRANCES LOUISE                    *  FOR THIS ACCOUNT   *
                                                                          CM EXP DATE: 03/05
DALLAS                      TX
                                                                   NEW ALBANY      OH
10/05 05:33 CD      $201     MAC/PHILDELPHIA NAT'L         DALLAS          TX
10/04 15:58 MA      $32      JC PENNEY AUTH RETAIL         LITTLE ROCK     AR
10/04 12:55 MA      $46      DILLARDS,AUTH ONLY            RICHARDSON      TX
10/03 13:59 MA      $14      ECKERD 0943                   RICHARDSON      TX
10/03 13:42 MA      $20      ALBERTSONS 4260               RICHARDSON      TX
10/02 17:02 MA       $9      DRUG EMPORIUM 14              RICHARDSON      TX
09/29 16:44 MA      $44      ALBERTSONS 4260               PHOENIX         AZ
09/26 16:05 MA      $12      MERVYN'S AUTH ONLY            RICHARDSON      TX
09/25 17:08 MA      $52      ALBERTSONS 4260               BENTONVILLE     AR
09/22 15:30 MA      $13      WALMART*SAMS CLUB AUTH        DANVILLE        IL
09/13 16:30 MA      $12   HQ WALGREEN ELECTRONIC           DALLAS          TX
09/13 14:33 MA      $98   HQ V TERRY MILLER, DDS             JALICEA
09/11 10:18 NM               TAAP ACCOUNT
09/04       PY     $213-     PAYMENT - THANK YOU
09/01 04:26 NM               PRELIMINARY REISSUE


F3=SFR   F6=MEMOS   F7=UP   F8=DOWN   F9=SFI   F11=EXPAND   F18=ADD MEMOS
```

CHARGES ON BERTIE CUNNINGHAM AND FRANCIS CONNERS CREDIT CARDS

*Det Delmar*

0-4-2000
CUNNINGHAM MASTERCARD #5544260010255141
4:03 PM       ATTEMPT AT ATM, WASHINGTON MUTUAL FOR $200.00,  1225 E. BELT LINE RIC
4:04 PM       ATTEMPT AT ATM, WASHINGTON MUTUAL FOR $200.00,  1225 E. BELT LINE RIC
4:16 PM       ATTEMPT AT ATM, WASHINGTON MUTUAL FOR $ 40.00,  1225 E. BELT LINE RICHARDSON
4:17 PM       ATTEMPT AT ATM, WASHINGTON MUTUAL FOR $ 40.00,  1225 E. BELT LINE RICHARDSON

CUNNINGHAM DISCOVER CARD #6011008050627147
6:45 PM       RICHARDSON MOTOR SPORTS FOR $1,728.75, 408 S. CENTRAL EXPRESSWAY RICHARDSON

CUNNINGHAM MASTERCARD #5544260010255141
11:30 PM      ATTEMPT AT ATM, RACETRACK  FOR $200.00, 9620 HARRY HINES DALLAS

10-5-2000
FRANCIS CONNER DISCOVER CARD #6011008530697884
4:33 AM       ATTEMPT AT ATM, RACETRACK FOR $200.00, 9620 HARRY HINES DALLAS

CUNNINGHAM MASTER CARD #5544260010255141
4:34 AM       ATTEMPT AT ATM, RACETRACK FOR $100.00, 9620 HARRY HINES DALLAS

CUNNINGHAM DISCOVER CARD #6011008050627147
6:18 PM       COWBOYS QUICK STOP SERVICE STATION FOR $22.29,  214 E. MOORE AVE. TERRELL

CUNNINGHAM MASTER CARD #5544260010255141
6:35 PM       CHACHO'S
6:43 PM       CHACHO'S

CUNNINGHAM DISCOVER CARD #6011008050627147
9:05 PM       COLE MOUNTAIN CATERING FOR $30.28, 419 E. MOORE AVE. TERRELL

WITNESS INFO
WASHINGTON MUTUAL- MONTY DUNN, 3550 FOREST LANE DALLAS 214-353-9646
DISCOVER CARD- RICHARD SHOLLENBERGER P.O. BOX 48187 FORT WORTH TX. 76148 817-581-2928
MASTER CARD, THE ASSOCIATES-, CESAR A. DE LA TORRE, 6400 LAS COLINAS IRVING TEXAS 972-653-3532

GEORGE POTEET, W/M 1-4-72, TX. DL. 07494520, H. 201 TIMBER COURT ST. PT. 714 TERRELL TX. NO HOME PHONE,
BUSINESS COLE MOUNTAIN CATERING, 419 E. MOORE AVE. TERRELL 972-524-0498.  DAD- GEORGE POTEET,
HOLLOW HORN WILLS POINT 75169, 903-560-0785.
POTEET WAITED ON MURPHY WHO PAID FOR TWO MEALS WITH A DISCOVER CARD,  POTEET IS NOT SURE THAT
HE CAN IDENTIFY MURPHY.

DAN HAGGLER EMPLOYEE AT COLE MOUNTAIN CATERING 419 E. MOORE AVE. TERRELL TX. 972-524-0498
DET. DELMAR CONTACTED HAGGLER WHO FOUND THE CREDIT CARD RECEIPT, PLACED IT IN A ENVELOPE AND
THEN INTO THE BUSINESS SAVE ON 10-6-00 FOR DET. DELMAR TO RETRIEVE.

SHERRY WAGNER, W/F 10-18-72 TX. DL. 04873304, H. 508 E. ONEAL WILLS POINT 75159 WITH NO TELEPHONE,
BUSINESS COLE MOUNTAIN CATERING 419 E. MOORE AVE. TERRELL 972-524-0498,  MOTHER KAREN FOSTER AT
RT.1 FM 2112 WILLS POINT 903-873-3239.
WAGNER REMOVED THE ENVELOPE FROM THE SAFE AND REMOVED THE CREDIT CARD RECEIPT TO SHOW TO
HER BOYFRIEND, JOEY CAGLE AND HER MOTHER, KAREN FOSTER.   PUTTING THE RECEIPT BACK IN THE SAFE.

KENNETH PHILLIPS, W/M 1-22-62, H.826 N. VIRGINIA TERRELL 75160, 972-524-5460.  BUSI. 214 E. MOORE AVE.
TERRELL TX. 75160, 972-524-2301, BOSS DANNY ALI.

00824

PHILLIPS BELIEVES THAT HE CAN IDENTIFY THE MURPHY IN A LINEUP.  PHILLIPS SAID HE WAS BUSY THAT DAY
BUT THAT MURPHY IS A REGULAR CUSTOMER.  PHILLIPS WILL CHECK ON THE VIDEO TAPE.

MARK LANDRUM, 214-358-5093
LANDRUM IS THE MANAGER OF THE RACETRACK, 9620 HARRY HINES BLVD DALLAS.  LANDRUM STATED THAT
THE ATM IS ACROSS THE PARKING LOT AND THAT HE WOULD CHECK HIS RECEIPTS AND VIDEO TAPE.

Oct 10 00 09:57a    Richard Shollenberger    817-581-4943            p.2

```
   6011 0080 5062 7147  *        DISCOVER CARD      *  DSC052  @1FA 10/06/00
                              *  FEDNET DETAIL REVIEW  *
CUNNINGHAM, BERTIE            *   NO AUTH BUYERS   *                    14:26:44
                              *  FOR THIS ACCOUNT  *
GARLAND                TX                              CM EXP DATE: 08/03

10/05 20:24 MA      $22    PHLLPS 66 AUTH ONLY      OLATHE        KS
10/05 20:09 MA      $25    COLE MOUNTAIN            TERRELL       TX
10/04 19:45 MA   $1,728 HQ RICHARDSON MOTOR SPORT   RICHARDSON    TX
10/03 13:35 MA       $8    HOME DEPOT 556           GARLAND       TX
10/03        PY    $314-   PAYMENT - THANK YOU
10/02 17:51 MA      $17    MFS 81                   GARLAND       TX
09/28 15:08 MA      $10    SNS 225                  RICHARDSON    TX
09/25 17:03 MA       $8    ALBERTSONS 4260          GARLAND       TX
09/25 10:29 MA      $16    MFS 81                   GARLAND       TX
09/22 10:47 MA      $15    SNS 207                  GARLAND       TX
09/19 12:41 MA      $15    CLARK RETAIL ENTERPRISES GLEN ELLYN    IL
09/18 15:05 MA       $8    IHOP 1413                PLANO         TX
09/15 10:37 MA      $13    KROGER DALLAS # 557      GARLAND       TX
09/14 12:10 MA      $12    ALBERTSONS 4260          RICHARDSON    TX
09/14 11:08 MA      $21    SEARS 1207               RICHARDSON    TX

F3=SFR  F6=MEMOS  F7=UP  F8=DOWN  F9=SFI  F11=EXPAND  F18=ADD MEMOS
```

00826

Oct 05 00 08:32a     Richard Shollenberger      817-581-4943          p.3

```
      6011 0080 5062 7147 *       DISCOVER CARD       *   DSC011   @518 10/05/00
CUNNINGHAM,BERTIE             *  EXPANDED  AUTHORIZATION  *      GARLAND          08:58:43
                             *  NO AUTH BUYERS  *                             TX
                             *  FOR THIS ACCOUNT *

      DATE:     10/04/00          AUTH CODE: 004541 FULL POSITIVE AUTH
      TIME:     19:45             AUTH TYPE: SWIPED AUTH
      AMOUNT:     $1,728.75                          CM EXP DATE: 08/03
      TYPE:     MERCHANDISE PURCHASE               TRANS EXP DATE: 08/03

      PRODUCT:  MOTORCYCLE DEALERS                    FLOOR LIMIT:    $0

      MERCHANT:                        CORPORATE:
        RICHARDSON MOTOR SPORT           RICHARDSON MOTOR SPORTS LLC
        601101029764568                  408 S CENTRAL EXPRESSWAY
        408 S CENTRAL EXPRESSWAY
        RICHARDSON       TX              RICHARDSON        TX
        75080                            75080
        (972) 310-8330
        POS ZIP:

F1=HELP     F3=END
```

00827

Oct 05 00 08:32a    Richard Shollenberger    817-581-4943         p.2

```
     6011 0085 3069 7884 *       DISCOVER CARD      *    DSC011   @518 10/05/00
  CONNER,FRANCES LOUISE      *  EXPANDED  AUTHORIZATION  *                  09:05:02
                             *  NO AUTH BUYERS  *        DALLAS                  TX
                             *  FOR THIS ACCOUNT *

     DATE:      10/05/00          DECLN CODE: 2A INVALID PIN NUMBER ENTERED
     TIME:      05:33             AUTH TYPE: ATM AUTH
     AMOUNT:      $201.50                                 CM EXP DATE: 03/05
     TYPE:      DECLINED AUTHORIZATI              TRANS EXP DATE: 03/05

  PRODUCT:  FINANCIAL INSTITUTIONS, ATM'S          FLOOR LIMIT:   $0

  MERCHANT:                      CORPORATE:
   MAC/PHILDELPHIA NAT'L          NOVUS NETWORK SERVICES
   601101089892044               ATM CLIENT RELATIONS
   PO BOX 3016  ATTN: ATM         PO BOX 28543
   NEW ALBANY    OH               COLUMBUS       OH
   43054                          43228
   (614) 830-0030
   POS ZIP:

  F1=HELP    F3=END
```

00828

```
BS 5544260010255141
CUNNINGHAM,BERTIE L**2749  LAUREL OAKS**GARLAND*TX*75044-6939*5544260010255141
                                                              CRCD 840    01/12/01 16:21
CURRENT BAL          104.08  STATUS CODES INT/EXT D/Z  HOME PHONE      972-530-7987
  REDIT LIMIT          3500  CYCLE CODE           25C  WORK PHONE
AVAILABLE CR              0  OPEN DATE          04-00  SOC SEC #      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
LST STMT BAL        104.08  EXPIRATION DATE     04-03  CHECKING
PREV HIGH BAL          104  PLASTICS #   00 TYPE 11    SAVINGS
LAST PMT AMOUNT          0  LAST MONETARY 01-09-01 Y  ANNUAL CHARGE    00-00    1
LAST PMT DATE  00-00-00    LAST NONMON 01-11-01 149   CREDIT LINE    04-00

AMOUNT DUE              60  DISPUTES       0   0  0  FIXED PAY AMT          0.00
AMT DELINQUENT          45  AUTH FLAG Y  PIN TRIES 0  RENEWAL CODE 6  CONTROL 0
# DAYS DELINQUENT       92  OVERLIMIT HISTORY      0  USER FLAGS          V 0
# TIMES 1 CYCLE          0  TERMS LEVEL            1  SPECIAL FLAGS       O 1
# TIMES 2 CYCLES         0  HISTORY    321A           MISC F          0000002
# TIMES 3 CYCLES         1  REAGE COUNTER         00  MONTHS GROSS ACTIVE     4
RECOURSE FLAG           N  STATUS CODE CHG 01-09-01  DELQ SCENARIO        0050
CASH ADV OUT            0  AUTO PAYMENT FLAG      0  SCORE:  BH   183   CR 000
CREDIT BUREAU FLAG      Z  YTD INTEREST        0.00  CREDIT LIFE 0 / DUALITY 0
CROSS REFERENCE 1   5544260019022906 2  0000000000000000 3  0000000000000000
CURRENT BAL           0.00  STATUS CODES INT/EXT  /C  AMOUNT DUE              0
CREDIT LIMIT          3500  LAST MONETARY 11-07-00 P  AMT DELINQUENT          0
```

00829

```
*WD
                    CIMS WORKCASE DISPLAY  6509              01/12/01 16:22:16
WORKCASE NO  5732345   TYPE USTATUS   FRAUD REF USTATU   RECEIPT DATE        101100
CSR ID       33U          REASSIGN REASON                 ENTRY DATE         101100
WORKCASE AMT       19    CURRENT BALANCE      104.08      ENTRY OP/TERM   777/ALYP
PRIORITY     N                                            SOURCE CODE
ACCOUNT    5544260010255141                               COMPLIANCE DATE
PRIMARY    CUNNINGHAM,BERTIE L                            TARGET DATE        011001
SECONDARY                                                 REVIEW DATE        120200
ADDRESS 1 2749 LAUREL OAKS                                RESOLVE DATE       011201
ADDRESS 2                                                 RESOLVE CODE
ADDRESS 3 GARLAND TX 75044-6939                           HM PHON 972-530-7987
                                                          WK PHON
                                                          SOC-SEC       411124340
AUTH FLAG Y   INT/EXT D Z      CYCLE CODE 25   HOLD CODE C   RSN CODE 88

CLIENT 1        CLIENT 2        CLIENT 3
NOTEPAD     MORE NOTEPAD LINES
CIS MEMO 023 !ASSGN INV #19 STLN $104.08 #5732345...NH/CSU
CIS MEMO 029 RECVD FILE..AFF SNT/DRFT ORDRD...JG/FRD

PF1 HELP          PF2  NON-MON  PF4  NEXT IN QUEUE      PF5 RESOLVE WORKCASE
PF6 ACCT SEARCH   PF10 NOTEPAD  PF11 SCENARIO
                                                          VDCMSWD  04
```

00830

```
*SL
CUNNINGHAM,BERTIE L**2749 LAUREL OAKS**GARLAND*TX*75044-6939*5544260010255141
                                                                    WB 998

4P 9725307987 WP 0000000000 PDB 000000 SDB 000000 CL 1 CI 1 ST U WM
        4        DL 100500 DR 100600 PS    EX 0403 LD 010200 LB 0000829 PD   PN N
TB TF PF Y TL 01 LL 1 AL TX FR 19 01 101100    TM 0729 A RI    WBA    NC    SF4
XREF-2 0000000000000000 XREF-3 0000000000000000  ADDR FL Y  STS RSN 88
CM KINAPPED FROM HOME.....SUSPECT USED CC ON 10/05 & WAS ARRSTD BY
GARLAND PD 10/06              TGF/FRAUD
```

```
*FAI  5544260010255141
CUNNINGHAM,BERTIE L            LOSS   LOSS   LOSS  REPORT  FRAUD  FRAUD   INV
5544 2600 1025 5141           DATE   TYPE   AREA   DATE    DATE   AREA    BY
TRACK L 0 U 0                 100500  01     TX    100600  101100  01      19
OPEN DATE 04/00  EXPR DATE 04/03  WB DATE 000000  BULLETIN AREAS YYYYYYYYYYYYY
-------------------------------------------------------------------------------
CD DTYPE CBIN INEL  CHARGED TO     E DATE  SEQ #    AC   CTCD  RRDATE  TD
   TC    AMT         MRCH DESC               CITY        ST CBR  DATE    CRI

F1                    PENDING      10/06/00 00280001 N    5411           100500
   253        33.64 CHACHO'S                TERRELL       TX

F1                    PENDING      10/06/00 00280002 N    5411           100500
   253        70.44 CHACHO'S                TERRELL       TX



               FRAUD TOTALS NOT FOUND

==>     ** NO MORE PAGES AVAILABLE FOR THIS REQUEST           VSSCDRV2 1C
```

```
20 777 101100 W 5732306   FRAUDREF OPENED
19     100600 N  KE5H463 NM-028 NEW REASON CODE =  35OLD REASON CODE =  00
18     100600 N  KE5H463 NM-016 = L; PREV STATUS =
17 M5P 100600 C XFER TO X32433 TO SPEAK WITH FRAUD INVSTGATIONS...WB/FALL
16 M5P 100600 C XFER ALL CALLS TO X32433 TO SPEAK WITH FRAUD INVESTIGATIONS...
15 M5P 100600 C B/FALL
14 M5P 100500 C TT COMMANDER JODI LAY FROM GARLAND POLICE DEPT. WAS WANTING TO
13 M5P 100500 C KNOW WHERE CHRGS TOOK PLACE. ADV HIM OF THE CITIES THAT THEY W
12 M5P 100500 C RE IN. MR.LAY'S # IS 972-207-2079. HE SAID TO SPEAK WITH HIM,
11 M5P 100500 C R LUTINENT KEITH THOMPSON. HE REQUESTED TO BE NOTIFIED IF ANY
10 M5P 100500 C EW CHRGS TAKE PLACE ON ACCT...WB/FALL
09 FAL 100500 C FALCON REVIEWED ACCOUNT ACTIVITY
08 FAL 100500 C FALCON REVIEWED ACCOUNT ACTIVITY
07 VBZ 100500 C DO NOT BLOCK THIS ACCT LEAVE OPEN FOR FRAUD INVESTIGATORS AND
06 VBZ 100500 C DET WORKING THE CASE FOR THE FAMILY MEMBERS CLOSE ACCT ONLY IF
05 VBZ 100500 C FRAUD INVESTIGATORS SAY TO!!!!!!!!!!!    SM/FAL2
04 VBZ 100500 C HI 805,RVD ACCT CLLD CH HP TTCH DAUGHTER CH WAS KIDNAPPED LAST
03 VBZ 100500 C NIGHT ADVISED FAMILY MEMBERS TO HAVE THE DET. WORKING THEIR
```

00833

Oct 10 00 09:57a     Richard Shollenberger     817-581-4943          p.3

```
   6011 0080 5062 7147 ** DISCOVER CARD SERVICES **              10/10/00
                          VIEW DETAIL                            10:49:30
                                                                   @0B2

                                    CM NAME  : CUNNINGHAM,BERTIE
STMT LINE :     4
TRAN DATE : 10/05/00               CM ADDR  : 2749 LAUREL OAKS DR
POST DATE : 10/05/00
TRAN AMT  :    30.28                      GARLAND          TX 75044-6939
TRAN CODE : 253                     DETL DESC: COLE MOUNTAIN REST TERRELL TX
MRCH NUM  : 601101701735373
MRCH POST : 10/08/00
MRCH NAME : COLE MOUNTAIN               MRCH ADDR: 419 E MOORE AVE
REF NUM 17: R 9882 99 MAX2CGLHG9                 TERRELL      TX 75160
             TYP  SYS  PFX  DATE  ID  BOX  BATCH  CD
REF NUM 23: R   9882 99  0282  999  000  00000  9

NEW TRAN CODE / EXT:  1720  /  001001


                          PF3 = END

  MSG:
```

Oct 10 00 09:58a     Richard Shollenberger     817-581-4943          p.4

```
      6011 0080 5062 7147 ** DISCOVER CARD SERVICES **              10/09/00
                             VIEW DETAIL                           09:02:28
                                                                      @56C
                                  CM NAME  : CUNNINGHAM,BERTIE
STMT LINE :     7
TRAN DATE : 10/05/00              CM ADDR  : 2749 LAUREL OAKS DR
POST DATE : 10/05/00
TRAN AMT  :    22.29                         GARLAND           TX 75044-6939
TRAN CODE : 253             DETL DESC: COWBOYS QUICK TERRELL TX
MRCH NUM  : 601101601100520
MRCH POST : 10/08/00
MRCH NAME : PHILLIPS 66 COMPANY    MRCH ADDR: PO BOX 66 CCC
REF NUM 17: R 9882 05 MA023YCB21             BARTLESVILLE OK 74005-0007
            TYP  SYS  PFX  DATE  ID  BOX  BATCH  CD
REF NUM 23: R    9882  05  0282 002  280  00876  9

NEW TRAN CODE / EXT:  1720  /  001001


                       PF3 = END
   MSG:
```

00835

# Washington Mutual

## STATEMENT OF ACCOUNT

1... FEE FOR EACH OVERDRAWN ITEM,
WHETHER PAID OR RETURNED, IS $25.00.

TO REACH CUSTOMER SERVICE, PLEASE CALL
TELEPHONE BANKING AT 1-800-788-7000.

23,295

01-E-85

BERTIE L CUNNINGHAM
OR ALICE S CZOLBA
2749 LAUREL OAKS DR
GARLAND TX 75044-6939

STATEMENT PERIOD:
FROM 07-06-00
THRU 08-02-00

8

GIVE YOUR HOME A FACELIFT.
ADD A MASTER BATH. RESHAPE YOUR KITCHEN. TRIM YOUR HIGH INTEREST.
ASK US ABOUT OUR AMAZING HOME EQUITY LOAN!

| INTEREST CHECKING | WASHINGTON MUTUAL BANK, FA | FDIC INSURED |
|---|---|---|

BERTIE L CUNNINGHAM
OR ALICE S CZOLBA

ACCOUNT NUMBER: 696-046188-7

OVERDRAFT LIMIT 1,000.00
SUBJECT TO A PER ITEM OVERDRAFT TRANSACTION CHARGE

| BEGINNING BALANCE | TOTAL WITHDRAWALS | TOTAL DEPOSITS | ENDING BALANCE |
|---|---|---|---|
| 6,503.11 | 1,558.92 | 1,690.69 | 6,634.88 |

INTEREST PAID: 4.35   ANNUAL PERCENTAGE YIELD EARNED : 1.00 %   YTD INTEREST PAID : 34.35
YTD INTEREST WITHHELD: .00

| ATE | WITHDRAWALS | DEPOSITS | TRANSACTION DESCRIPTION | | | |
|---|---|---|---|---|---|---|
| /17 | | 104.43 | CUSTOMER DEPOSIT | | | |
| /18 | 60.00 | | ATM-NCHG  S2B06007  4906 N. JUPITER | GARLAND | 77 | 0718 |
| /25 | 100.00 | | ATM-NCHG  S2B06007  4906 N. JUPITER | GARLAND | 09 | 0725 |
| /01 | | 1,159.91 | US TREASURY 312  CIVIL SERV F 2390908 W CSF | | | |
| /02 | | 422.00 | US TREASURY 303  SOC SEC | | | |
| /02 | | 4.55 | INTEREST PAYMENT | | | |

ETAIL OF CHECKS PAID:

| CHECK NUMBER | DATE PAID | AMOUNT | CHECK NUMBER | DATE PAID | AMOUNT | CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 679 | 07/06 | 150.00 | 683 | 07/14 | 37.63 | *687 | 07/21 | 8.88 |
| *681 | 07/26 | 45.00 | 684 | 07/17 | 938.72 | 688 | 07/28 | 35.00 |
| 682 | 07/12 | 46.69 | 685 | 07/13 | 137.00 | | | |

OTE: * INDICATES CHECK OUT OF SEQUENCE

*Monty Dunn*
*214-355-9646*

 **THE ASSOCIATES**

| *Facsimile* | | | *"2000: Proud of Our Past;* |
| | | | *Passionate about Our Future"* |

| | | | |
|---|---|---|---|
| **DATE:** | 10/11/2000 1:19 PM | | |
| **TO:** | Detective Delmar | **FAX#:** | 972.205.2894 |
| **SUBJECT:** | Authorization Detail for "Bertie Cunningham" Account | | |
| **FROM:** | Cesar A. De La Torre | **FAX #:** | 972.653.8546 |
| **PAGES:** | 2 (Includes Cover) | | |

Enclosed is the authorization information, which we had discussed. We do not have the actual ATM report, which would provide the terminal information. Though the authorization detail provides the following information:

| ATM | Location | Date | Time |
|---|---|---|---|
| Washington (Mutual) | 1225 E. Belt Line, Richardson | 10/4 | 16:03:41 |
| Washington (Mutual) | 1225 E. Belt Line, Richardson | 10/4 | 16:04:04 |
| Washington (Mutual) | 1225 E. Belt Line, Richardson | 10/4 | 16:16:51 |
| Washington (Mutual) | 1225 E. Belt Line, Richardson | 10/4 | 16:17:12 |
| Banc One | 9620 Harry Hines, Dallas | 10/4 | 23:30:40 |
| Banc One | 9620 Harry Hines, Dallas | 10/5 | 04:34:03 |
| Chacho's | Terrell TX | 10/5 | 18:35:04 |
| Chacho's | Terrell TX | 10/5 | 18:43:56 |

The investigator on the case will be Jerrod Gardenhire - telephone 972.653.5656.

Please let me know if you have any questions regarding this fax at 972.653.3532.

**WEDNESDAY 10-4-00**

**2:30PM**

THE VICTIM LEAVES HER RESIDENCE TO GO TO COLIN CREEK MALL

**2:55PM**

VICTIM USES FRANCES CREDIT CARD AT JC PENNEY IN COLIN CREEK MALL.  PURCHAES A ROBE.  AMOUNT OF SALE IS $32.73

**4:03PM**
**4:04PM**
**4:16PM**
**4:17PM**

DEFENDANT MAKES FOUR ATTEMPTS TO USE THE VICTIM'S MASTER CARD.  ALL TRANSACTIONS OCCUR AT ATM MACHINE LOCATED AT 1225 E BELT LINE IN RICHARDSON.  THE NAME OF THIS BUSINESS IS SAVING'S OF AMERICA

**5:00PM to**
**6:00PM**

VICTIM'S SISTER, EVELYN, BECOMES CONCERNED BECAUSE VICTIM DID NOT RETURN HOME

**5:30PM**

THE DEFENDANT PICKS UP HIS NEICE, AHSLEIGH JOHNSON, AT HER RESIDENCE 1718 BARCLAY IN RICHARDSON. HE IS DRIVING THE VICTIM'S CAR A SHORT TIME LATER THEY PICK UP ZACHRY MAMOT AND RYAN HAMMONDS.

**6:05PM**

MURPHY DROPS OFF HIS NEICE AT 1718 BARCLAY.  MURPHY AND ZACHRY MAMOT AND RYAN HAMMONDS DRIVE OFF IN THE CAR

**6:20PM**

RICHARDSON MOTORSPORT SALESPERSON, BOBBY HARP, ESTIMATES THE DEFENDANT AND TWO BOYS ARRIVE AT RICHARDSON MOTORSPORT.

**6:49PM**

TIME RECORDED ON THE CASH REGISTER RECEITP AT RICHARDSON MOTORSPROT

**7:00PM to
7:30PM**

MURHY AND ZACHRY MAMOT ARE SEEN RIDING THE GO-PEDS AT HUFFINES PARK IN RICHARSON.  CAUGHT ON VIDEO TAPE

**8:00PM**

THE VICTIM'S SISTER EVELYN, CALLS GARLAND POLICE AND MAKES A MISSING PERSON REPORT.

**9:00PM**

WITNESS, PHILLIP SHAUN CRUZ, ESTIMATES TIME DEFENDANT ARRIVES AT HIS HOUSE LOCATED AT 1922 MATTERHORN IN GARLAND

**11:15PM**

LT THOMPSON NOTIFIED AND RESPONDS TO GPD

**11:30PM**

DEFENDANT ATTEMPTS TO USE VICTIMS MASTER CARD TO OBTAIN CASH..TRANACTION OCCURRS AT 9620 HARRY HINES BLVD IN DALLAS

**12:00 MIDNIGHT**

DETECTIVE MYERS NOTIFIED AND RESPONDS TO GPD

**THURSDAY 10-5-00**

**2:00AM**

DETECTIVE MYERS AND LT THOMPSON CHECK AREA OF COLIN CREEK MALL AND RICHARDSON MOTORSPORT

**4:00AM**

DETECTIVE MYERS AND LT THOMPSON CONTACT EVELYN SHELTON AT THE VICTIM'S RESIDENCE

**4:34AM**

DEFENDANT ATTEMPTS TO USE VICTIMS'S MASTER CARD TO OBTAIN CASH.  TRANSACTION OCCURS AT 9620 HARRY HINES BLVD.

**8:00AM**

DETECTIVE MYERS AND DETECTIVE BROWN  ALONG WITH FORENSIC INVESTIGATORS ROGERS AND MOWERY ARRIVE AT RICHARDSON MOTORSPORT TO INTERVIEW MARK CANNON AND OBTAIN EVIDENCE.  ASSERTAIN THE NAME J ISAAC MURHPEY FROM WARRANTY PAPERS.

**11:00AM**

LT THOMPSON CONTACTS TERRELL  PD AND LEARNES THEY HAVE HANDLED A SUBJECT NAMED JEDIDIAH ISAAC MURPHY. INVESTIGATORS FIND TX ID CARD FOR MURPHY WITH 1718 BARCLAY ADDRESS.

**8:00AM**
**12:00 NOON**

TONYA THORP ADISED SHE LEFT HER RESIDENCE AT 1718 BARCLAY IN RICHARDSON AT APPROXIMATELY 8:00AM TO GO

TO WORK.  WHEN SHE RETURNED TO THE RESIDENCE AT
APPROXIMATELY 12:00 NOON SHE FOUND THE SUICIDE NOTE.

**12:20PM**

DETECTIVE MYERS RESPONDS TO 1718 BARCLAY TO CHECK THE
AREA.

**12:30PM**

DETECTIVE MYERS IS ADVISED BY DISPATCH THERE ARE
SUBJECTS AT APOLLO JR HIGH IN RICHARDSON THAT HAVE
INFORMATION.  DETECTIVE MYERS RESPONDS.
**12:35PM**

DETEDCTIVE BROWN RESPONDS TO APOLLO JR HIGH SCHOOL.

**3:00PM**

**4:00PM**

TRESHOD TARRANT ESTIMATES TIME DEFENDANT ARRIVES AT
HIS RESIDENCE IN EDGEWOOD.

**5:00PM**

ERIKA IRWIN ESTIMATES TIME SHE SAW DEFENDANT IN THE
VICTIMS CAR AT EDGEWOOD HIGH SCHOOL

**5:27PM**

VICTIM'S CREDIT CARD IS USED AT CHACHO'S IN TERRELL TX
IN AMOUNT OF $33.64

**5:36PM**

VICTIM'S CREDIT CARD IS USED AT CHACHO'S IN TERRELL TX
IN AMOUNT OF $70.44

**6:35PM**

DEFENDANT USES VICTIM'S CREDIT CARD AT CHACHO'S IN
TERRELL

**6:43PM**

DEFENDANT AGAIN USES VICTIM'S CREDIT CARD AT CHACHO'S
IN TERRELL

**7:00PM**

DETECTIVE MYERS AND LT THOMPSON RELEIVED BY
COMMANDER LAY

**9:09PM**

DEFENDANT USES VICTIM'S CREDIT CARD AT COLE MOUNTAIN
RESTURANT IN TERRELL TO BUY DINNER FOR HIMSELF AND
TRESHOD TARRANT.

**9:24PM**

DEFENDANT USES VICTIM'S CREDIT CARD AT COWBOY QUICK
STOP IN TERRELL TO PURCHASE GAS.  TRESHOD TARRANT IS
PRESENT

**FRIDAY 10-6-00**

**2:00AM**

VAN ZANDT COUNTY CALLS TO ADVISE THEY HAVE LOCATED
THE VEHICLE IN EDGEWOOD

**2:10AM**

DETECTIVES MYERS, TOOKE, VANEK AND MENDOZA ALONG
WITH LT THOMPSON AND COMMANDER LAY LEAVE GPD
ENROUTE TO EDGEWOOD

MURPHY IS ARRESTED BY VAN ZANDT SHERIFF DEPUTY GARY
ROSE

MURPHY TELLS WILLS POINT POLICE OFFICER, JASON BOHAM,
WHERE TO FIND THE VICTIM'S BODY

VICTIMS BODY IS LOCATED AND PRONOUNCED DEAD VAN
ZANDT COUNTY JUSTICE OF THE PEACE



**VAN ZANDT COUNTY SHERIFF**
KATHY L. JACKSON
1220 W. DALLAS
CANTON, TX. 75103-1016

*To Serve*
*&*
*To Protect*

Phone:      (903) 567-4133
Fax:         (903) 567-6317
ORI:                TX 234000
Mnemonic Address:   CTSZ

October 10, 2000

TO:      Detective Matt Myers
          Garland Police Department

FROM:  Cpl. J. Branch
          Van Zandt County Sheriff's Department

                    Ref.:   Recovery of Evidence (Creek)
                             Item Recovered – One (1) dark colored shirt

Fee:      $200.00 Labor, equipment and maintenance

              Mail check to:

              Joey Branch
              16060 FM 3204
              Brownsboro, Texas 75756
              903-852-3318

00845

| Incident No. 2000 5735 | **Van Zandt County Sheriff's Office**<br>( ) Offense        ( )Incident Report<br>Honesty & Professionalism | Date & Time 10-06-00 3:25am |

**Location of Incident (County Road/Nearest Crossroad Also)**
VZ 3206

| City Edgewood | Grid 36 | Precinct 3 | Shift 3 | () Active |
| Earliest Date & Time Occurred 10/4/00 | Latest Date & Time Occurred 10/6/00 | | | () Inactive |

| () Active | () Death of Offender |
| () Inactive | () Prosecution Declined |
| () Adult Arrest | () Extradition Declined |
| () Adult Exception | () Refused to Cooperate |
| () Juvenile Custody | () Juvenile, No Custody |
| () Unfounded | () Warrant |

## REPORTING PARTY

| Name (Last,First Middle) | Home Phone | Work Phone |
| Address | City/State/Zip | |

## VICTIM

**Victim Name (Last,First Middle)**
Cunningham,Bertie Lee

| Address | Date of Birth (Month/Day/Year) or Age Range 12/31/19 | | |
| City/State/Zip Garland, Texas | Resident | Race white | Sex f |
| Home Phone | Social Security # | Driver's License # | State |
| Employer | Employer's Address | City/State | Zip |
| Employer's Phone | | Extension | |

## OFFENSES

| Federal/State/City Statute Murder | Location Type unknown | Premises Entered | Forced ? | Type weapon / Force Used handgun |
| Describe location type | | Describe weapon type | | |

## VEHICLE DESCRIPTION

| Color | Year | Make | Model | License | V.I.N. |
| Description | | | | | |

## PROPERTY

| Type Loss | Qty. | Description | Brand/Make/Model | Serial/OAN | Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Loss Codes        E - Evidence   F - Forged    R-Recovered  S - Stolen    D - Damaged  Z - Seized

| Reporting Officer ( ID & Name ) Gary Rose 502 | Assisting Officer ( ID & Name ) See Report |

## OFFENDER/SUSPECT

| | | | | |
|---|---|---|---|---|
| Name (Last,First Middle) **Murphy, Jedidiah Isaac** | | | AKA **Jim** | |

| Address **Unknown** | D.O.B. **9/1/75** | Race **W** | Sex **M** | Height **5'10"** | Weight **142** |
|---|---|---|---|---|---|

| City,State,Zip | Hair **Brown** | Eyes **Brown** | Hispanic () Yes   () No |
|---|---|---|---|

| Phone | Social Security No. **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** | Driver's License No. **12468174** | D.L. State **tx** | Scars/Marks/Tattoos |
|---|---|---|---|---|

| Employer | Employer Address | | Phone |
|---|---|---|---|

## OFFENDER ARREST

| Arrest Number | Date & Time of Arrest | Arrest Type () On View  () Summoned () Custody | Multiple Clearence () Yes   () No |
|---|---|---|---|

| Arresting Officer **Rose, Gary** | Assisting Officer |
|---|---|

Victim Is Related to Offender As

| | | | |
|---|---|---|---|
| () Spouse | () Grandchild | () Acquaintance | () Ex-Spouse |
| () Common-Law Spouse | () In-Law | () Friend | () Employee |
| () Parent | () Stepparent | () Neighbor | () Employer |
| () Sibling | () Stepchild | () Boyfriend/Girlfriend | () Otherwise Unknown |
| () Child | () Stepsibling | () Child of Boyfriend/Girlfriend | () Relation Unknown |
| () Grandparent | () Other Family Member | () Homosexual Relation | () Stranger |

## OTHER NAME

| Name (Last,First Middle) | Home Phone | Work Phone | Involvement |
|---|---|---|---|
| Address | City,State,Zip | | |

| Name (Last,First Middle) | Home Phone | Work Phone | Involvement |
|---|---|---|---|
| Address | City,State,Zip | | |

| Name (Last,First Middle) | Home Phone | Work Phone | Involvement |
|---|---|---|---|
| Address | City,State,Zip | | |

## NARRATIVE

See Supplements

**FILING A FALSE REPORT WITH A LAW ENFORCEMENT AGENCY IS A CRIMINAL OFFENSE.**

_____          _____
Date                                                    Signature of Victim

00847

VAN ZANDT COUNTY SHERIFF'S DEPARTMENT
Supplement Investigative Report

October 6, 2000

Ref:          Bertie Lee Cunningham W/F  12-31-1919
Offender:     Jedidiah Isaac Murphy  W/M 09-01-1975
Offense:      Murder, Credit Card Abuse and UUMV

On October 5, 2000, I was contacted by the Van Zandt County Sheriff's Department dispatcher that the Sheriff's Department had received several calls in reference to Jedidiah Murphy. The dispatcher stated that people had been calling the Sheriff's Department after the news had aired at 10:00 p.m. in reference to the disappearance of Bertie Cunningham in the Garland area. The dispatcher stated that the reports they had been receiving indicated that Jedidiah Murphy had been seen in Edgewood, Texas, driving a vehicle that matched the description of the vehicle owned by Bertie Cunningham.

At approximately 11:00 p.m. I received a call from the Van Zandt County dispatcher who stated they had received a call from Tracy Erwin in Edgewood, Texas. Tracy stated to the dispatcher that she was related to Jedidiah Murphy. Tracy told the dispatcher that her daughter told her that Jedidiah Murphy had came to the Edgewood High School and spoke with her on October 5, 2000. Tracy's daughter told Tracy that Jedidiah Murphy told her that he was going to come to her house on the night of October 5, 2000. I immediately had the dispatcher to notify Sgt. Rick Goldey to come by my residence to pick up my unmarked unit to set up surveillance at the residence of Tracy Erwin at 207 South Ridge Street in Edgewood, Texas. When Sgt. Rick Goldey arrived at my residence I advised Sgt. Goldey to have at least one other patrol unit to drive the streets of Edgewood and the surrounding area continuously to see if Jedidiah Murphy could be located.

At 1:58 a.m. I was contacted by the Van Zandt County Sheriff's Department that the vehicle belonging to Bertie Cunningham was located at a residence in the city of Edgewood. I met with Sgt. Ronnie Goodson of the Van Zandt County Sheriff's Department and was briefed of the location of the vehicle. Myself and Sgt. Goodson went to the Dairy Queen in Edgewood, Texas, and met with other officers while Sgt. Rick Goldey kept surveillance on the residence. I made contact with Commander Lay of the Garland Police Department that the vehicle of Bertie Cunningham had been located at the residence of Ora Mae Milton on Lamar Street in the city of Edgewood. Commander Lay advised me to go ahead and attempt the arrest of Jedidiah Murphy at the residence and recover the stolen vehicle belonging to Bertie Cunningham. I lead an arrest team consisting of myself, Sgt. Ronnie Goodson, Sgt. Rick Goldey, Cpl. Joey Branch, Deputy Ralph Pool and Deputy James DeCoux all of the Van Zandt County Sheriff's Department. Along with Officer Raymond Keener of the Wills Point Police Department, Officer Jason Bonham of the Edgewood Police Department and Officer Bill Strange. Parameter coverage officers consisted of Sgt. Goodson, Deputy DeCoux, Officer Bonham, Deputy Pool and Officer Strange.  At approximately 2:55 a.m. we arrived at the residence located at 509 North Lamar Street. I observed a silver Honda Accord bearing Texas License Plate YLD94Y backed in front of the residence. I approached and knocked on the front door of the residence. Ora Mae Milton met me at the front door. I identified

myself to Mrs. Milton as Gary Rose of the Van Zandt County Sheriff's Department. Mrs. Milton opened the door. I asked Mrs. Milton if Jim Murphy was at her residence. Mrs. Milton stated that he was and that he was in bed asleep. Mrs. Milton asked me, why? I told Mrs. Milton that there was a warrant for his arrest. I walked inside the residence and asked Mrs. Milton where Jim Murphy was and she indicated that to the eastern end of the residence. I walked to the open bedroom located on the southeastern corner of the residence and observed Jedidiah Murphy asleep in the bed on southern wall. Jedidiah Murphy was taken into custody without incident at 2:58 a.m.

I read Jedidiah Murphy his Miranda Rights. I asked Jedidiah Murphy where Bertie Cunningham was. Jedidiah lowered his head and stated it was an accident the gun went off. I asked Jedidiah Murphy if Bertie Cunningham was dead. Jedidiah Murphy stated yes. I asked Jedidiah Murphy where her body was and he stated he did not know. At that time Cpl. Branch stated the key to the silver Honda Accord was in the living room. I walked to the living room and found the key on a table beside the front door. I took the key and walked outside to the silver Honda Accord and opened the trunk. As I opened the trunk I noticed blood on the rear bumper of the vehicle. When I opened the trunk I smelled a pungent odor. I did not see a body inside so I closed the trunk of the vehicle. I advised the other officers that the vehicle was a crime scene and that no one was to touch the vehicle and that the vehicle was not to be moved except by Garland Police Department Investigators. As I walked back inside the residence I was pulled aside be Officer Jason Bonham. Officer Bonham stated that he was talking to Jedidiah Murphy and that Jedidiah told him that the body of Bertie Cunningham was thrown in a creek on Livingston Road (Van Zandt County Road 3602). Myself, Cpl. Joey Branch and Officer Jason Bonham went to the creek on Livingston Road located approximately one mile north of the city of Edgewood, Texas. There we observed the body of Bertie Cunningham in the creek on the west side of the roadway. Bertie Cunningham's body was against the creek bank and culvert, covered with a duffel bag and towels. I left Cpl. Branch and Officer Bonham at the creek to preserve the scene until Garland Police Department Investigators could arrive.

I went back to the Dairy Queen located in Edgewood, Texas, and waited for Investigators from the Garland Police Department. Once the Investigators arrived I briefed them on the arrest of Jedidiah Murphy and the recovery of the body of Bertie Cunningham. I had the Van Zandt County Sheriff's Department dispatcher to contact Justice of the Peace Ozelle Wilcoxson of Precinct 3 at the request of Commander Lay, to be enroute to Edgewood, Texas. I then took Commander Lay and other Investigators to Van Zandt County Road 3602 where the body of Bertie Cunningham was in the creek. I released that crime scene to his Investigators. I then took Commander Lay to the residence located at 509 North Lamar Street and released the silver Honda Accord to his Investigators. We transported Jedidiah Murphy to the Edgewood Police Department where he was arraigned by Judge Ozelle Wilcoxson for the offenses of Credit Card Abuse and Murder. Jedidiah Murphy was released to the Garland Police Department.

Gary Rose
Chief Deputy
Van Zandt S.O.

00849

 

# COUNTY of VAN ZANDT

Sheriff's Department
Supplementary Investigation Report

Complainant's Name: *Cunningham, Bertie*     C.F.S.# _____

Offense: *Murder, Credit card Abuse* _____

### Details of Offense, Progress of Investigation, Etc.

Date: __10 ㅡ__ . 20 __00__

    On 100500 when I Deputy DeLoux came on duty I was
given a copy of a region Broadcast message to be on the look out
for a 1996 Silver Honda Accord bearing Texas license plate YCD94Y
that was last seen in the area of Edgewood. And the vehicle was
reported stolen and that the driver may be armed and dangerous.
   Deputy DeLoux checked the area and was unable to locate the
vehicle Deputy DeLoux was then dispatched to a call, while out on
the call Deputy DeLoux heard Col J. Branch state on the radio that he
located the vehicle and for all available units to meet at the Dairy
Queen in Edgewood.
   Once at the Dairy Queen Deputy DeLoux meet with other Deputies
and Officers from other agenies. Once the Chief Deputy arrived Deputy
DeLoux Sgt. Gordon and Officer Bonham were taken to the street
behind the house and dropped off, as we made our way to the house
other Deputies and officers drove to the house and made entry
Deputy DeLoux and Sgt Gordon along with Officer Bonham secured the
outside of the house. Once Jedidiah Murphy was taken into custody
Deputy DeLoux and officer Bonham visited with him until Garland
P.D. was called officer Bonham spoke with Jedidiah and Jedidiah
told officer Bonham were the body of Bertie Cunningham was
located officer Bonham left with Deputies to find the body while
Deputy DeLoux visited with Jedidiah once Garland officer arrived
Deputy DeLoux left the scene and went to where the body was
located to relieve officer Bonham Garland Officer also arrived
there and photograph and video taped the scene. And removed the body

I recommend this case be declared:
Unfounded         { [    ] }
Active (Not Cleared)    { [    ] }
Cleared by Arrest      { [    ] }
Exceptionally Cleared    { [    ] }

Signed: *James B DeLoux* _____
### Investigating Officer

 

# COUNTY of VAN ZANDT

### Sheriff's Department
### Supplementary Investigation Report

Complainant's Name: _____   C.F.S.# _____

Offense: _____

### Details of Offense, Progress of Investigation, Etc.

Date: __10  06__ , 20 00

The suspect was identified as Murphy, Jedidiah Isaac.
WM DOB 090175 510 142 BRO /BRO
The body was identified as that of Cunningham, Bertie Lee
WF DOB 12311ⁿ 504 150 GRY/HZL.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

I recommend this case be declared:

| | |
|---|---|
| Unfounded | [    ] |
| Active (Not Cleared) | [    ] |
| Cleared by Arrest | [    ] |
| Exceptionally Cleared | [    ] |

Signed: _James B DeCoup  519_____
Investigating Officer

00851



# COUNTY of VAN ZANDT

### Sheriff's Department
### Supplementary Investigation Report



Complainant's Name: _State of Texas_       C.F.S.# _2000-5735_

Offense: _Recovery of Stolen Vehicle / Evidence Recovery_

Details of Offense, Progress of Investigation, Etc.

Date: _10-6_, 20 _00_

On 10-6-00 I, Cpl J. Branch #515 was advised
that a Silver colored 96 Honda 4DR TX-YLD94Y was
stolen out of Garland PD Area and that Foul play was
suspected with the disappearance of the vehicle owner
(victim Cunningham, Rectie). I was patrolling around Edgewood
when I was advised that the vehicle could possibly
be at Shod Tarrant residence with a possible address of
509 Lamar Edgewood TX. I went by the residence and
located the victim's vehicle 96 Honda TX YLD94Y parked
at the residence. I then notified Sgt Golden #505 and
Chief Deputy G Rose #502 was called to the scene. Chief
Deputy G Rose was advised by Dispatch that the actor aka "Jim"
Murphy, Jedidiah Issac w/m 9-1-75 had outstanding Felony
warrants out of Garland PD. I along with G Rose and several
other officers approached the residence and G Rose spoke with
the owner of the residence and asked her if "Murphy" "Jim"
was there and she said "yes" G Rose then asked her where
he was and she said asleep in the bedroom. We then
entered the residence and suspect was located in the
bedroom laying in the bed and subject was taken into custody.
Tarrant, Shod B/m 1-16-74 was also inside the room laying on
another bed. Once suspect (Murphy) was in custody I left
the room and went outside to secure my weapon. I then
walked by the victim's vehicle and observed a red colored
substance around the trunk area that I thought to be blood.

I recommend this case be declared:

| | Unfounded | [   ] |
| | Active (Not Cleared) | [   ] |
| | Cleared by Arrest | [   ] |
| | Exceptionally Cleared | [   ] |

Signed: _Cpl J Branch #515_

### Investigating Officer

00852

 

## COUNTY of VAN ZANDT
### Sheriff's Department
### Supplementary Investigation Report

Complainant's Name: _State of Texas_          C.F.S.#: _2000-5735_

Offense: _Recovery of Stolen Vehicle / Evidence Recovery_

Details of Offense, Progress of Investigation, Etc.

Date: _10-6_, 20 _00_

I then notified G. Rose of what I saw and he asked me if I had seen any thinds Keys I advised that there was a thinds Key on a piece of furniture in the Living Room. I then went outside and G. Rose came out and opened the vehicles Trunk and failed to locate the victims body. I then stayed outside and several minutes later G. Rose advised that the body was possibly in a creek outside of Edgewood. I, along with G. Rose and Edgewood officer Bowlan #303 got into a vehicle with G. Rose driving and we went down Livingston Rd and located the victim in a creek in the water. Chief Deputy Rose then left me and officer Bowlan on scene with the victim until he returned with several Garland PD officers. I was advised that there was possibly a handgun used in the murder in the water and was asked to dive to attempt to recover it by a Garland PD Detective. I entered the water in the creek near retrieving my Diving Equipment and located a Dark colored shirt in the water near where the victims body was located. I turned over the shirt to a Garland PD crime-scene officer and I continued to search for the handgun but was unable to locate it and was advised that I could discontinue the search after. I failed to locate any more evidence —

I recommend this case be declared:

| | |
|---|---|
| Unfounded | [ ] |
| Active (Not Cleared) | [ ] |
| Cleared by Arrest | [ ] |
| Exceptionally Cleared | [ ] |

Signed: _G.A. J. Rose #515_
Investigating Officer

00853

*FL Vanek 2692*

LAW ENFORCEMENT PRESENT AT 509 N LAMAR, EDGEWOOD TX

CHIEF DEPUTY GARY ROSE VAN ZANDT COUNTY SO
   DEP ROSE ADVISED THAT THE VEHICLE WAS LOCATED AT 509 N
LAMAR AT ABOUT 1:58 AM. HE SAID THAT ENTRY WAS MADE INTO THE
HOUSE AT 2:58 AM. ROSE SAID THAT HE CONTACTED ORA MAE MILTON
AT THE FRONT DOOR OF THE RESIDENCE. MS MILTON IS THE OWNER
OF THE HOUSE. ROSE SAID THAT HE ASKED MS MILTON IF JIM MURPHY
WAS THERE AND SHE SAID YES. ROSE ASKED HER WHERE HE WAS AT
AND SHE SAID THAT HE WAS ASLEEP IN THE BEDROOM. MS MILTON
SHOWED DEPUTIES WHERE JIM WAS AT. DEPUTIES WENT INTO THE
BEDROOM AND WOKE UP JIM. HE WAS ASLEEP IN THE BED IN THE
SOUTH SIDE OF THE ROOM. DEP ROSE PLACED MURPHY UNDER
ARREST AND CHECKED FOR THE GUN IN THE BEDROOM. DEP ROSE
ASKED MURPHY WHERE THE KEYS TO THE CAR WERE. MURPHY
ADVISED THAT THE KEYS WERE IN THE BED BUT ROSE COULD NOT FIND
THEM.
   DEP ROSE READ MURPHY HIS RIGHTS. HE ASKED MURPHY WHERE
THE OLD LADY WAS. MURPHY STATED "IT WAS AN ACCIDENT, THE GUN
WENT OFF". DEP ROSE ASKED MURPHY IF SHE WAS DEAD AND HE SAID
YES. ROSE ASKED HIM WHERE SHE WAS AT. MURPHY SAID IN DALLAS.
ROSE ASKED HIM WHERE AT IN DALLAS. MURPHY STATED THAT HE
DIDN'T KNOW, A FRIEND LOADED HER IN THE TRUNK AND DUMPED HER
SOMEWHERE.  ROSE ASKED HIM WHO THE FRIEND WAS AND MURPHY
SAID THAT HE COULD NOT TELL YOU THAT.
   AT THAT TIME SOME UNKNOWN DEPUTY IN THE LIVING ROOM YELLED
THAT HE FOUND THE KEYS NEAR THE FRONT DOOR. ROSE WENT INTO
THE LIVING ROOM AND SAW THE KEYS LAYING ON  A SMALL TABLE
NEAR THE FRONT DOOR. ROSE WENT OUT AND OPENED THE TRUNK OF
THE CAR TO CHECK FOR THE BODY BUT BODY WAS NOT THERE. ROSE
NOTICED BLOOD ON THE BUMPER OF THE CAR. ROSE WENT BACK
INSIDE AND EDGEWOOD PD OFFICER JASON BONHAM WAS TALKING
WITH MURPHY. MURPHY TOLD BONHAM THAT THE BODY WAS IN A
CREEK OUTSIDE OF TOWN. BONHAM WENT TO THE CREEK AND
LOCATED THE BODY.

OTHERS AT SCENE

EDGEWOOD PD OFFICER JASON BONHAM
VAN ZANDT CO SO DEPUTY JOEY BRANCH #515   (DIVER AT SCENE OF
BODY)
VAN ZANDT CO SO SGT RONNIE GOODSON #505
VAN ZANDT CO SO DEPUTY JAMES DECOUX #519
CIVILIAN-HEATH BURTON (JAILER VAN ZANDT CO SO) RIDER
VAN ZANDT CO SO DEPUTY RALPH POOL #513

DELTA CO SO DEPUTY BILL STRANGE #107
VAN ZANDT CO SO SGT RICHARD GODLEY #506
WILLS POINT PD OFFICER RAYMOND KEENER #206

   AL OTHERS THAT WERE AT THE SCENE OTHER THAN CHIEF DEPUTY
ROSE AND EDGEWOOD PD OFFICER JASON BONHAM ADVISED THAT
THEY JUST ASSISTED WITH ENTRY INTO THE HOUSE AND DID NOT TALK
WITH THE SUSPECT.

SHERIFF KATHY JACKSON #501 SHOWED UP AT THE SCENE AFTER
SUSPECT WAS IN CUSTODY.


   OTHER VEHICLES AT SCENE
WHITE PONTIAC LEMANS 2DR     TX LP #SGS83D
BLUE BUICK LESABRE 4DR       TX LP #KCC08C
BLUE FORD GRANADA 4DR        TX LP #LMN70H

```
FROM: MVD#   TO: GRX2
10/06/00   11:07:21

1ZJTL


LIC SGS83D EXPIRES JUN/00 EWT  3400 GWT    3400
PASSENGER PLT, STKR 5415818WA  REG CLASS 25   $ 50.80
TITLE 23400236382114439 ISSUED 08/25/99 ODOMETER 130000
92 PONT  SD  KL2TN2461NB322878    PASS
PREVIOUS OWNER  JAMES E ILEY SR TYLER TX
OWNER  JATORA N YARBROUGH,P O BOX 396,EDGEWOOD,TX  75117
LIEN  08/12/99 FIRST NATIONAL BANK OF EDGWD.,P O BOX 8,EDGEWOOD,TX
75117
PLATE AGE:  3
REMARKS ACTUAL MILEAGE.
```

```
FROM: MVD#   TO: GRX2
10/06/00   11:08:04

1ZJXL
N*

L1c KCC08C EXPIRES JUN/01 EWT  3900 GWT    3900
PASSENGER PLT, STKR 4883885WB  REG CLASS 25   $ 50.80
TITLE 00022200051326152 ISSUED 11/08/96 ODOMETER N/A
83 BUIC  4D  1G4AP69YXDX446337        PASS
PREVIOUS OWNER  BILLY G DUNN COMMERCE TX
OWNER  ORA MAE MILTON,PO BOX 396,EDGEWOOD,TX  75117
PLATE AGE:  4
```

```
ROM: MVD#    TO: GRX2
)/06/00   11:08:19

:J1M

:C LMN70H EXPIRES JUL/94 EWT  3400 GWT    3400
.SSENGER PLT, STKR           REG CLASS 25    $ 0.00
TLE 0000000016598722 ISSUED 07/30/87 ODOMETER 074700
: FORD  4D  6W81L206178           PASS
:EVIOUS OWNER   ORA MAE MILTON EDGEWOOD
'NER   ORA JEAN DANIELS,C/O ORA MAE MILTON,PO BOX 396,EDGEWOOD,TX  7
17
ATE AGE:  1
MARKS ACTUAL MILEAGE.CCO 08/11/93 .
```

**TERRELL POLICE DEPARTMENT**
Criminal Investigation Division
Supplement Report

| | |
|---|---|
| Case#: | 00-4380 |
| Other Agency #: | 2000-R-030225 |
| Offense: | Assist Other Agency |
| Complainant: | Garland Police Department |
| Victim: | Berttie Lee Cunningham |
| Defendant: | Jedidiah Issac Murphy |
| Date of Offense: | 10/4/00 |
| Date of Report: | 10/6/00 |
| Disposition: | Arrest on Garland Police Warrant |

**NARRATIVE**

On the morning of 10/5/00, Garland Police Detective Lieutenant Keith Thompson contacted Terrell Police requesting assistance in the case. According to Thompson, leads indicated the suspect possibly resided in Terrell. The address provided was found to be fictitious. According to TPD jail records the suspect was handled by this department in 1996 for harassment and in 1998 for drug possession. The Kaufman County Sheriff's Department had also arrested him in recent years. The records showed the suspect's address to be 6305 FM 429 South in Kaufman, Texas. Detective Johns and I drove to that location and located no sign of the suspect or the victim's vehicle.

Throughout the day Lieutenant Thompson provided TPD with additional information as it became available. He reported the suspect was known to associate with TPD Chuck Schorlemmer and that his former fiance, Chelsea Willis, worked at McCoy's Building Supplies in Terrell. According to TPD records of the suspect's arrest in 1996, Chelsea Willis was the victim. In-person interviews with the chaplain and ex-fiance provided numerous possible leads to the suspect's location. According to them the suspect had in recent days exhibited signs of depression. They stated he is known to be suicidal and had attempted it in the past. Ms. Willis also indicated the suspect had been violent with her on numerous occasions and that she is now seeking a protective order. She expressed concern about their common child in the event he attempted to get her from day care. I contacted the Van Zandt County SO and Wills Point Police and alerted them of the situation. While those agencies conducted surveillance on the day care center, Ms. Willis arranged to have the daughter picked up by family members. All leads were investigated.

At 19:59 I received a page from TPD dispatch to contact Garland Police immediately. According to GPD Commander Jody Lay, the victim's credit card was used at Chachos Store in Terrell within the past hour. He said GPD Detectives were en-route to Terrell to process available evidence. TPD Detectives were called in to assist in securing the scene and to locating the suspect. Detective Johns responded to Chachos Store and secured that scene until GPD detectives arrived. Specific evidence (credit card receipts and video tape) was secured by Detective Johns and later given to GPD Mowery. According to Detective Johns and Mowery, the store surveillance video captured the known suspect making the beer/liquor purchase with the victim's credit card. According to the store clerk, the suspect (Murphy) was with a very large black male and that they left in an newer unknown make/model gold 4 door. Sergeant Joel Blair, Detective W. K. Newell, and I, along with additional GPD detectives/officers, patrolled the city in the attempt to locate the suspect. TPD patrol was alerted with the BOLO information. The suspect was not located in the Terrell area and the search ceased. Refer to GPD case report for other officer identities.

At about 01:45 TPD dispatch notified me that I was needed at the police station to meet with a person having information about the suspect. On arrival I met with Tim Erwing who said he is the suspect's brother-in-law. He came to the police after seeing the news east of the missing woman. His two daughters told him that the suspect had contacted them at their Edgewood school earlier that day about 17:00 wanting to talk to him. He said his daughters mentioned the suspect claimed to have

FROM : AC.I.D.TERRELL PD                PHONE NO. : 972 551 0911          Oct. 06 2000 02:50PM P2

been diagnosed with a brain tumor and was planning to go to Florida after taking his daughter to dinner. He said they said the suspect was alone and was driving a silver Honda Accord that he said he wished he had not bought. The suspect told the girls he would contact their dad later that night. I asked him if he knew of a large black male associate of the suspect. He said that a man named Shod Tarrant from Edgewwod was a school buddy of the suspect. I contacted the Van Zandt County SO who confirmed past dealings with Tarrant. Records showed an address of 509 N. Lamar in Edgewood. I asked that deputies be dispatched to that location to search for the suspect vehicles. Within 30 minutes they reported hack that the victim's vehicle was at the location. Surveillance was setup until GPD arrival. I phoned Commander Lay at GPD and he coordinated efforts with TPD and the other agencies. I learned later that the suspect had been taken into custody by officers from the Van Zandt County SO and Edgewood Police and that the victim's body had been recovered.

Sergeant Richard Peavy #6134
Criminal Investigation Division
Terrell Police Department

**TERRELL POLICE DEPARTMENT**
Criminal Investigation Division
Supplement Report

TPD Case#:  00-4380
Garland PD # 2000 R 030225
Complainant: Berttie Lee Cunningham
Defendant: Jedidiah Murphy
Date of Report:  10/10/00

On 10/10/00 at about 13:00, I was eating lunch at the Cole Mountain Restaurant at 419 E. Moore, Terrell, with TABC Agent Tim Maloney.  Sherry Wagner WF 10/18/72, a waitress, mentioned to me that the suspects in the case involving the woman from Garland had been in the restaurant eating last Thursday.  She said they had paid with the victim's credit card.  She said that she had not seen the men, but that another waiter, George Poteet, had waited on them.   She lead me to the office where she gave me an envelope containing what she said was the credit card receipt.  I verified that it was a receipt in the name of the victim.  It was dated 10/5/00 at 19:05 PM.

I then contacted the waiter, George Poteet WM 1/4/72.  He said that he recalled the two men coming in that night and ordering a rack of ribs and a beer each.   He described the men as one large black male and a skinny white male.  He said the black male ate his dinner, but that the white male just sat there with a blank stare on his face not eating.  He said he asked the man if he was going to eat his dinner and the man responded that he had heartburn then asked for a carryout bag.  There is no video tape in the restaurant. Mr. Poteet believes he would recognize the suspect's if seen again.

When I returned to the CID offices TPD Detective W.K. Newell informed me that Garland Detective Delmar was planning to come to Terrell to pickup a credit card receipt from Cowboy's Quick Stop. I contacted the owner of the store Firoz "Danny" Ali, WM 2/2/56, at 214 E. Moore, Terrell. He provided me with the credit card receipt dated 10/5/00 at 6:18PM.  Mr. Ali said that he will search for the video tape of the transaction then contact me.

The evidence was turned over to the Garland Police.

Sergeant Richard Peavy #6134
Criminal Investigation Division
Terrell Police Department

CAUSE NO.
F00-02424

STATE OF TEXAS                          §          194TH Fi Judicial
                                        §
V.                                      §          DiStrict 15 Cou 4 01
                                        §
JEDIDIAH ISAAC MURPHY                   §          DALLAS COUNTY TEXAS
                                        §          DISTRICT CLERK
                                                   10 DALLAS CO. TEXAS
                                                   AM DEPUTY

## BUSINESS RECORD AFFIDAVIT

Before me, the undersigned authority appeared __MARTHA WEST__, who, being by me duly sworn, deposed as follows:

My name is __MARTHA WEST__, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the custodian of the records of __MHMR__. Attached hereto are __1__ pages of records from __MHMR__. These said __1__ pages of records are kept by __MHMR__ in the regular course of business, and it was the regular course of business of for an employee or representative of __MHMR__, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the exact duplicates of the original.

_Martha West_
AFFIANT

SWORN TO AND SUBSCRIBED before me on the __14TH__ day of __May__, 2001.

Notary Public,

_Larry P. Reid_ State of Texas

__LARRY P. REID__ Notary's printed name:

My Commission expires: _____

LARRY P. REID
COMMISSION EXPIRES
JUNE 26, 2004

Affidavit - Solo Page

00862

**RSOCS Screening Form**   Perso... completing Log __Keyser__   ...mp I.D.# __97__  Unit# _____

Client Name __Murphy__ __Jim__ _____   Case# _____
(Last)        (First)        (MI)

☐ Pre-Register        ☐ Register (if registering, financial form must be completed)

*...e this form when Screening or Walk-In/Telephone Initial Contact*

## SERVICE RECORD

Randy AA Sponser

| Server ID | Ref. Phys. ID | Coll Serv Y/N | Coll ID | Length of Svc hr:min | Subunit | Service Code | Start Time | Stop Time | mg's inj. | Prov to | Prov at | Cont. Type | Appt. Type | Bill. Type | Int. Type | # of Partic |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 97 | | | | | 1599 | V310 | 21:45 | 22:10 | | X | O | H | 1 | N | N | 1 |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Registration Effective Date: __/__/__   Client's Date of Birth: __9/1/74__   Sex: (M) F

Address __6305 FM 429__   City __Kaufman__   State___ Zip___

Telephone # _____   Referral Source _____

Parent/Guardian Name _____   Telephone # _____

*Residence County Code: __129__   *Marital Status: __X__   *Legal Status: __A__   *Ethnicity: __W__

*Living Arrangement: _____   S.S.# __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__

Medicaid # _____

...urance: None ☐  Medicare ☐  Regular Medicaid ☐  Other ☐ _____

IF NorthSTAR RECIPIENT: ☐ Magellan  ☐ Value Options  ☐ Unk  Confirmed ☐ YES ☐ NO   Insurance # _____

I.  **PRESENTING PROBLEM:** Have not sleep in two days.
Killed a snake in his house, Fri afternoon.
Sun 2pm. to Now see snakes everywhere.
Called cops 3x's Checked house no snakes - IN his
head - can't sleep, eat or go anywhere

☑ Suicidal: RISK OF HARM TO SELF: ☐ Yes ☑ No
Explain _____

☐ Homicidal: RISK OF HARM TO OTHERS: ☐ Yes ☑ No
Explain _____

☐ Hallucinations (explain) __sees snakes__
☐ Depression (explain) _____
☑ Substance Abuse - How long? __Alcoholic__   How often? __3 weeks sober__
Substances used _____

II.  **SERVICES REQUESTED BY INDIVIDUAL/FAMILY:**
☐ Medications   ☐ Counseling   ☐ Hospitalization
☐ Other (explain) _____

RECEIVED AUG 2 3 1999

Revised July 20, 1999

00969

**III.   HISTORY OF PSYCHIATRIC TREATMENT:**
☒ New Client       ☐ Open Client       ☐ Former Client
Explain (include services previously received):_____
_____
_____

**IV.   MEDICATION/HEALTH STATUS:**
Currently taking medications? ☐ Yes  ☐ No   If yes, what?_____
used Tegretol years ago for aggression
Allergies? ☐ Yes  ☐ No     If yes, what?_____

Medical Problems? ☐ Yes  ☐ No   If yes, what?_____
_____

**V.   MENTAL STATUS OBSERVATIONS:**

INSTRUCTIONS: Check (X) if symptom is present

| GENERAL APPEARANCE | Range: | () Apathetic | INSIGHT AND | () Ideas of worthlessness |
|---|---|---|---|---|
| **Facial Expression:** | () Appropriate | () Withdrawn | **JUDGMENT:** | () Excessive religiosity |
| () Sad | () Blunted | () Evasive | () Good | () Sexual preoccupation |
| () Expressionless | () Flat | () Passive | () Fair | () Blames others |
| () Hostile | () Euphoric | () Aggressive | () Poor | () Magical thinking |
| () Worried | () Excited | () Naive | () Unrealistic regarding | () Illogical thinking |
| () Avoids gaze | | () Overly dramatic | degree of illness | **Delusions:** |
| **Dress:** | **SPEECH:** | () Manipulative | () Doesn't know why | () Of persecution |
| () Appropriate | () Excessive | () Dependent | she/he is here | () Of grandeur |
| () Clothing/Hygiene poor | () Poverty of | () Uncooperative | () Unmotivated for | () Of reference |
| () Eccentric | () Pressured | () Negative | treatment | () Of being controlled |
| () Seductive | () Slowed | () Callous | | () Bizarre |
| | () Loud | | **CONTENT OF** | () Nihilistic |
| **MOTOR ACTIVITY:** | () Soft | **ORIENTED TO:** | **THOUGHT:** | () Of poverty |
| () Increased | () Mute | () Time | () Antisocial attitudes | () Jealousy |
| () Decreased | () Slurred | () Place | () Suspiciousness | |
| () Agitated | () Stuttering | () Person | () Phobias | **INTELLECT:** |
| () Tics | | () Situation | () Obsessions/Compulsions | () Above normal |
| () Tremors | **INTERVIEW** | () Disoriented | () Feelings of unreality | () Normal |
| () Peculiar posturing | **BEHAVIOR:** | **Memory:** | () Thoughts of running away | () Below normal |
| () Unusual gait | () Angry outbursts | () Intact recent memory | () Somatic complaints | () Paucity of knowledge |
| () Repetitive acts | () Irritable | () Inability to concentrate | () Ideas of guilt | () Poor vocabulary |
| | () Impulsive | () Poor recent memory | () Ideas of hopelessness | () Poor abstraction |
| **AFFECT:** | () Hostile | | | |
| () Appropriate | () Silly | | | |
| () Inappropriate | () Sensitive | | | |
| () Labile | | | | |

*Not Assessed*
*Not face to face contact*

**VI.   TREATMENT RECOMMENDATIONS/STAFF RECOMMENDATIONS:**
Recommended Treatment is:
☐ Medication Services       ☐ Counseling       ☒ Hospitalization
☐ Other (explain)      Go to nearest ER to stabilize
_____

**CONSUMER AND FAMILY RESPONSE:**_____
_____

**CASE DISPOSITION (include referral and follow up):**_____
_____

Set Appointment With:_____      When:_____

Staff Signature   *Kimberly Keyse*          8/23/99

| Assgn Date | Server | Unit | Subunit |
|---|---|---|---|
| | | | |

CAUSE NO. *F00- 02424*

| | | |
|---|---|---|
| STATE OF TEXAS | § | *194ʳᵈ Criminal* FILED |
| | § | |
| V. | § | *District Court* 2001 MAY 15 PM 1:01 |
| | § | JIM HAMLIN |
| *Jedidiah Isaac Murphy* | § | DALLAS COUNTY, TEXAS CLERK |
| | | DALLAS CO., TEXAS |
| | | BY _____ DEPUTY |

### BUSINESS RECORD AFFIDAVIT

Before me, the undersigned authority appeared *Stan Surrett*, who, being by me duly sworn, deposed as follows:

My name is *Stan Surrett*, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the custodian of the records of *Fruitvale Schools*. Attached hereto are *12* pages of records from *Fruitvale School*. These said *12* pages of records are kept by *Fruitvale School* in the regular course of business, and it was the regular course of business of for an employee or representative of *Fruitvale School*, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the exact duplicates of the original.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me on the *14th* day of *May*, 2001.

Notary Public,

*Susan McCann* State of Texas

*Susan McCann* Notary's printed name:

[Notary seal: Susan McCann / My Commission Expires / March 22, 2005]

My Commission expires: *5/22/2005*

Affidavit - Solo Page

00865

## REGISTRATION CARD    K-6

| | School Year_____ | | Code_____ | | |
|---|---|---|---|---|---|

Grade _5 th_    ID # _____

| | Birthplace | Nationality | Speaks English Yes | No | Other |
|---|---|---|---|---|---|
| STUDENT (Last Name) _TOLAR_ (First) _Jim_ (Middle)_____ Sex _M_ | | _Cauc_ | ✓ | | — |
| FATHER_____ | | | | | |
| MOTHER_____ | | | | | |
| LEGAL GUARDIAN _Joe King_ | | | | | |

Birthdate of Student:

Dominant language spoken in home _English_

Father living? _—_    Address_____

Mo. ____ Day ____ Year ____    Phone: Home _—_    Work_____

Mother living? _—_    Address_____

Birthplace: _____    Phone: Home _—_    Work_____

List any physical defects or handicaps:

Full name of person (or institution) with whom student lives, if not with both parents:

Name _Joe King_    Relationship _—_

Address _Children's Shelter_    _Hy-80_

Phone: Home _894-4968_    Work _894-4966_

Residence of student on Feb. 1, 19_87_  (District) _Grand Saline_

County _Van Zandt_    State _Texas_

Date moved to present district: Mo _1_    Day _1_    Year _87_    Date now _1-5-87_

Distance student is transported, etc. _____    Bus Route_____    Run No_____

Signature of Parent or Guardian _Joe King_    Phone _894-4968_

EMERGENCY: Name_____    Phone_____

To the student and teacher: This information asked for above and on the other side is required for your school record. Fill it out accurately. Have parent or guardian sign this card.

**(COUNSELOR OR TEACHER COPY)**    School Specialty Supply, Inc. 13-518-735 (47) Rev.

## ENROLLMENT CARD

Name _Jim Tolar_    Phone _894-4968_    Locker No. _____    Grade _5_    Sex _M_

Address _Children's Shelter_ City _Fruitvale_ Transported_____ Bus Route_____

Date of Birth Mo. _9_    Day _1_    Year _75_    Place-City_____    State_____

Source of Entry_____    Gr. Entered_____    Basis of Admission_____

Authority for Birth Record_____    Home Dist No. if Transf._____

Name of Parent or Guardian _Joe King_    Doctor _Engwin_

Street _Hy-80_ Rural Route _1_ City_Fruitvale_ Occupation _Manager_ Co/Dist Taxd

Previous School _Grand Saline Elementary_ Date Entered_____ Left _1-1-87_

| Period | Room | Subject | Teacher | Period | Room | Subject | Teacher |
|---|---|---|---|---|---|---|---|
| 1 | | | | 1 | | | |
| 2 | | | | 2 | | | |
| 3 | | | | 3 | | | |
| 4 | | | | 4 | | | |
| 5 | | | | 5 | | | |
| 6 | | | | 6 | | | |
| 7 | | | | 7 | | | |
| 8 | | | | 8 | | | |

M - T - W - T - F    M - T - W - T - F

(FORM BD-47)    SCHOOL SPECIALTY SUPPLY, SALINA, KANSAS

00866

**IMMUNIZATION RECORD**

Name: Jim Tolar Date of Birth 9-1-75

Address P.O. Box 250 Fruitvale Tel. No. ______ Sex: (M) F

School Fruitvale ~~Parent's~~ Guardian Name Joe King

| VACCINES | DATE | DATE | DATE | DATE | DATE |
|---|---|---|---|---|---|
| DTP, DT, Td* | S/C | (B) 8-27-80 | | | |
| OPV, IPV* | S/C | (B) 8-27-80 | | | |
| Measles | VACCINE► | 1-7-81 | | ILLNESS► | |
| Mumps | VACCINE► | 1-7-81 | | ILLNESS► | |
| Rubella | VACCINE► | 1-7-81 | | | |
| OTHER | | | | Record hearing and vision on reverse. | |
| | | | | | |
| | | | | | |
| TB Test | Date: | Result: | | | |

*Circle one

Date ______ Signed ______

*for office*

**EMERGENCY PROCEDURE CARD**

Date 1-6-87

Student's Name Tolar, Jim Phone 896-4988

Address Childrens Shelter PO Box 250

List Allergies / Major Health Problems ______

*In case of emergency, illness or accident to the student named above the school is authorized to proceed as indicated.* LO 39

Number Below In Order Of Desired Action

____ Contact Father at ______ Address ______ Phone

1 Contact Mother at Childrens Shelter 892-4988 (Address / Phone)

____ Contact Family Physician ______ Name ______ Phone

____ Take Child to Emergency Hospital ______

2 Take Child to any Licensed Physician Dr. Ingram Grand Saline

____ Other Desired Procedures ______

Signature of Parent or Guardian Joe King

School Specialty Supply, Inc. 13-517-208 (No. 371-C)

Vision Screening Test

Student Name: _Jim Tolar_____   Date: _1-21-87_

Grade: _5____

Vision Screening           R _20~20_   L _20-20_

Glasses worn for testing _____

Failed _____/_____          Referred _____

Passed _____/_____          Treated _____

## SWEEP CHECK SCREENING TEST

School _Fruitvale_____   Grade _5_____   Date _1-21-87_

1. Screen four frequencies at 25 dB HTL.
2. Make a check mark for each tone heard.
3. Identify failure to respond with an "F" or "X".
4. Sequence of tone presentation.

| Student's Name | Ear | 500 Hz | 1000 Hz | 2000 Hz | 4000 Hz | Remarks |
|---|---|---|---|---|---|---|
| Screen Jim Tolar | R | ✓ | ✓ | ✓ | ✓ | |
| | L | ✓ | ✓ | ✓ | ✓ | |
| Retest | R | | | | | |
| | L | | | | | |

00868

**REPORT OF WITHDRAWAL**

Name _Jim Tolar_                                    Date _3/4/87_

School _Fruitvale Elem._

Reason for withdrawal _____

Please grade student for work completed to date. (Grades in ink, please.)

| Period | Subject | Room | Books Ret'd | Grade | Teacher's Signature |
|--------|---------|------|-------------|-------|---------------------|
| 1 | Reading | | | 77 | |
| 2 | English | | | 86 | |
| 3 | Spelling | | | 74 | |
| 4 | Math | | 75 | |
| 5 | Science | | | 76 | |
| 6 | Health | | | 78 | |
| 7 | Soc. St. | | | 75 | |

Textbook Custodian _____ Due, Refund on Fees/Paid _____ Amt. _____

HOMEROOM TEACHER _Betty Pidge_           Lock Record _____

GUIDANCE DIRECTOR _____          Library Record _____

                    PRINCIPAL _Martha Wheel_

Reorder Form 7421 • Steck-Vaughn Company

---

FRUITVALE INDEPENDENT SCHOOL DISTRICT
DISCIPLINE MANAGEMENT PLAN
PARENTAL AGREEMENT

I am the parent/guardian of _Jim Tolar_

and I have read the Discipline Management Plan of the Fruitvale

Independent School District, and I am aware of the responsibilities

outlined in the program.

_____          _1-5-87_
Signature                            Date

A copy of this agreement must be signed and returned to the
Principal's Office each year your child attends Fruitvale
Independent School District.

00869

‾‾‾‾District‾Name‾‾‾

TEXAS EDUCATION AGENCY
DIVISION OF BILINGUAL EDUCATION

Home Language Survey
Grades K-8

Name of Child _Jim Tolar_____

Campus _Fruitvale_____ Grade _5th____

TO BE FILLED IN BY PARENT OR GUARDIAN:

(1)  What language is spoken in your home most of the time?

_English_____

(2)  What language does your child speak most of the time?

_English_____

_Jim King_____
Signature of Parent or Guardian

_1-5-87_____
Date

BE-029A

-------------------------------------------------------------------

‾‾Nombre del Distrito‾‾

CUESTIONARIO DE IDIOMA HOGARENO
ESTADO DE TEXAS
GRADOS K-8

Nombre del Nino(a)_____

Escuela_____Grado_____

DEBE DE COMPLETARSE POR EL PADRE O GUARDIAN:

(1)  Cual es el idioma que mas se habla en su hogar?

_____

(2)  Cual es el idioma que mas habla su nino(a)?

_____

_____
Firma del Padre o Guardian

00870



00871

Copyright© Science Research Associates, Inc., 1983
All rights reserved.
Printed in the United States of America

| NAME OF PUPIL | Sex | Age Yrs | Age Mos | Number Marked | Raw Score | Scores by Age | | | MA | Grade Scores | | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | DIQ | PR | STA-9 | | PR | STA-9 | |
| Tolar, Jim | Boy | 8 | 4 | 86 | 62 | 97 | 43 | 5 | | 60 | 6 | |

NAME: TOLAR JIM

PRESSCORE ⊕

| FORM | DATE | | GUD. | | SCORES | |
|---|---|---|---|---|---|---|
| 1 | 4-84 | | | | SR.EQUIV. | |
| C | | | OTHO. | 2 | STA-9 | |
| | | LEV. | SEM. | 2 | STA.OR GRT | |

OPT. SCORE  SCHOOL LCC

| | | TOTAL SCORES | | | | |
|---|---|---|---|---|---|---|
| COMP. 3-4 | 2-6 | | 3-8 | 4-1 | | |
| 70 | 44 | 74 | 64 | TEST | TEST | TEST |
| 65 | 63 | 2 | | | | |

REF.MAT  SOC.STU  SCIENCE  S/S

★★★ GRADE 3
⚡ ABS
STUDENT TOLAR                JIM
                    BIRTHDATE 09/01/75
ID:                                E
DISTRICT 234-904 GRAND SALINE ISD
CAMPUS 101 GRAND SALINE EL
*CONFIDENTIAL* OBJECTIVES

| TEST | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | | Test Items Correct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MATHEMATICS | Y | N | Y | N | Y | Y | Y | Y | | | Written Comp. 2 | 33 |
| READING | Y | Y | Y | Y | Y | Y | Y | | | | Hand Writing 2- A | 31 |
| WRITING | Y | Y | Y | Y | Y | Y | | | | | | 20 |

Y = MASTERED
N = NOT MASTERED

1 = WRITTEN COMPOSITION RAW SCORE
2 = HARD TO READ

A = ACCEPTABLE
B = HARD TO READ
C = ILLEGIBLE
D = NOT AVAILABLE

| NAME TOLAR JIM | PRESSCORE ⊕ | ED. OBJ. | GRADE/AGE 3-2 | TEST ACH | SCORES | COMPOSITE | READING | LANGUAGE | MATHEMATICS | REF.& SKL. | SOC.STUDY | SCIENCE | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ID.NO. | | | 808 | | NAT'L PERCENTILE | 40 | 31 | 50 | 40 | NO | NO | NO | |
| BIRTHDATE SEP 01 1975 | | | 4-85 1 D TEST DATE  STANINE | | GRADE EQUIV. | 3-6 | 2-9 | 3-9 | 3-6 | TEST | TEST | TEST | |
| | | | | | STANINE | 5 | 4 | 5 | 5 | | | | |

| NAME TOLAR JIM ED | PRESSCORE ⊕ | ED. OBJ. | GRADE/AGE 4-2 | TEST ACH | SCORES | COMPOSITE | READING | LANGUAGE | LANGUAGE | MATHEMATICS | REF.& SKL. | SOC.STUDY | SCIENCE | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ID.NO. | | | 808 | | NAT'L PERCENTILE | 16 | 32 | 17 | | 05 | 19 | 20 | 18 | |
| BIRTHDATE SEP 1 1975 | | | 4-86 E TEST DATE ABILITY BATTERY | | GRADE EQUIV. | 3-4 | 3-8 | 3-3 | | 3-3 | 2-9 | 3-4 | 3-3 | NO TEST |
| | | | | | INTERP NO.27 | 18 | 34 | 19 | | 07 | 21 | 21 | 19 | |

00872

TEXAS ELEMENTARY SCHOOL TRANSFER FORM

This form is to be filled out and given the student at the time he withdraws from school.  Please place a question mark in the space where information is not available.

1. Student _Solar, Jim._ Grade _5_

2. Date of Birth _9-1-75_ Parent or Guardian _____

3. School _Elementary_ School District _GS_ Town _Grand Salin_ State _Tx._

4. Date Enrolled _9-2-86_ Date Withdrawn _1-5-87_ Days Absent from School this year _0_

5. Has School Insurance _____ Name of Company _____

   Address of Company _____

6. Grades - Card Attached

7. Grade level on which student reads: Year _5_ Semester _1_

8. Will you make test information available to the receiving school, if requested? _yes_

9. Immunization - Card Attached

10. Hearing Test Date _85-86_ Result _normal_ Eye Test Date _85-86_ Result _R 20 L 20_

11. Other information that will help this child adjust to the new school situation.

   _____

   _____

Please attach book card, immunization, and report card to this form.

NURSE: _____ CAFETERIA. _____ LIBRARY: _____

PRINCIPAL _____

00873

## Cumulative Record—Grades K-6 (continued)

### EDUCATIONAL TEST RECORD

| Name of Test | Score | T.A.* | Remarks |
|---|---|---|---|
|  |  |  |  |

biological Age, Mental Age, or Achievement Age. Use %ile if preferred.

### RECORD OF SPECIAL EDUCATION AND PHYSICAL DEFECTS

| Condition | Action Take | Year-end Results |
|---|---|---|
|  |  |  |

### GROWTH, HEALTH, AND IMMUNIZATION RECORD

TELEPHONE NO. (In Pencil)

| Date | Hgt. | Wgt. | Notes on Health, Diseases, and Vaccination |
|---|---|---|---|
|  |  |  | DPT/Yr. — S/C @ 8-27-80 |
|  |  |  | Polio — S/C @ 8-27-80 |
|  |  |  | Measles 1-7-81 |
|  |  |  | Mumps 1-7-81 |
|  |  |  | Rubella 1-7-81 |
| 8/26/80 | 105 | 57 | Vision R 20/20 L 20/20 Negative R x Negative |
| 8/11/85 | 54¼ | 78 | Vision R w/20 L w/20 Negative R x Negative |
| 8/82 | 55½ | 57 | Vision R 20/20 L 20/20 Negative Negative |

| Grade | Interests, Distinctions, and Memberships |
|---|---|
|  |  |

| Date | Final Recommendation and Comments |
|---|---|
|  |  |

Signed by: _____ (Position)

ficient Hearing 3. Orthopedic Handicaps 4. Speech Disorders 5. Lowered Vitality 6. Nervous Disorders
ils 10. Adenoids 11. Skin 12. Feet 13. Posture 14. Heart 15. 16. 17. 18.

00874

NAME: _Tolar, Jim Ed_

Reorder Form 7103-12 • Steck-Vaughn Company

# Student's Cumulative Record — Grades K-6

NAME OF

| | (Last Name) | (First) | (Middle) |
|---|---|---|---|
| STUDENT | Tolar | Jim | Ed |
| FATHER | | Terry Tolar | |
| MOTHER | | Colette Tolar | |
| LEGAL GUARDIAN | | | |

| Birthplace County or U.S. State | Speaks English | Occupation of Parents or Guardian | Education | Birthdate _9-1-_ 19 25 |
|---|---|---|---|---|
| Sonora | | | | Birthdate Based on: B.C. 2508 |

Age at Entrance:

School Last Attended: _Terrell State Hosp_  _Kaufman ISD_

Identification: Picture, Fingerprint, or:
Color Eyes
Color Hair
Other:

## RECORD OF ATTENDANCE, SCHOLARSHIP, AND RESIDENCE

Notes on Transportation:

| Grade | School Year | Date of Entrance | Grade | Days Present | Days Absent | Times Tardy | Language | Spanish | Literature | Reading | Spelling | Writing | Citizenship | Government | History | Geography | Agriculture | Shop Work | Homemaking | Physical Ed. | Health | Music | Art or Drawing | Arithmetic | Mathematics | Science | Effort | Study Habits | Promoted to or Retained in | Date and Reason | Withdrawn | Name of Teacher | School or Building | County, Parish, or City | R ... Street Name and or District Num. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| K | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 59-60 | 9/7 | 2 | 173 | 2 | | | | B | B | H | | B | | | | | | | | | | | B | | | | P-3 | | | Stringer | Elem. V.S. | 904 | |
| 3 | 58-59 | 9/10 | 3 | 175 | | 74 | | 74 | | 73 | 74 | | 82 | | | | | | | | | | | 78 83 | | | | | | | 76-0 | Elem. V.S. | 90 ... | |
| 4 | 59-60 | 9/13 | 4 | 175 | 0 | | | 81 | | 76 | | | | | 76 | | | | | | | | | 83-79 | | | | 84 | | | Teacher | Elem. V.S. | 904 | |
| 5 | 60-61 | 9/15 | 5 | | | | | | | | | | | | | | | | | | | | | | | | | | 12-5-87 tropac | Belay | Elem. V.S. | 904 | |
| 6 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Previous Record:

| Grade | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Kindergarten | Grade 1 | Grade 2 | Grade 3 | Grade 4 | Grade 5 | Grade 6 | | |

J. H.

00875

Student's Name  Jim Allen

## Areas of Learning (Grades 1-5)

| Reporting Period | 1 | 2 | 3 | 4 | 5 | 6 | Year Avg. |
|---|---|---|---|---|---|---|---|
| Reading | 80 | 88 | 7½ | | | | |
| Level | OL | OL | OL | | | | |
| Language | 85 | 83 | 87 | | | | |
| Handwriting | 82 | 75 | 80 | | | | |
| Spelling | 81 | 85 | 75 | | | | |
| Math | *54 | 82 | 84 | | | | |
| Level | AL | AL | AL | | | | |
| Science-Health | 82 | 81 | 75 | | | | |
| Social Studies | **69 | 78 | | | | | |
| Art (S-N) | 93 | 94 | 92 | | | | |
| Music (S-N) | S | S | | | | | |
| P.E. | | | | | | | |

*Math daily average 55 test average 52
**Didn't turn in a long report.

## Social Attitudes/Study Habits

| Reporting Period | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| 1. Conduct (A-F) | S | S | | | | |
| 2. Is courteous | S | S | | | | |
| 3. Works neatly & carefully | S | N | | | | |
| 4. Works quietly, does not disturb others | N | N | | | | |
| 5. Finishes work | N | N | | | | |
| 6. Always has school supplies | S | S | | | | |
| 7. Follows instructions (oral and written) | S | S | | | | |
| 8. Is attentive & listens well | N | N | | | | |
| 9. Gets along well with other students | S | S | | | | |
| 10. Respects authority | S | S | | | | |
| 11. Assumes responsibility | S | S | | | | |
| 12. Uses time wisely | S | N | | | | |

### EXPLANATION OF MARKS

**Levels**
AL - Above level
OL - On level
BL - Below level

**Progress Mark**
N - Needs improvement
I - Improving
S - Satisfactory

Students may be working above, on, or below grade level in the basic skills. Both the level on which they are working and the grade they receive are marked so that parents may be aware of the level of performance of their child.

### GRADES

A - Excellent (90-100)
B - Above Average (80-89)
C - Average (70-79)
D - Below Average (60-69)
F - Failing (Below 60)

00876

## IMMUNIZATION RECORDS

This certifies that _Jim Tylac_ (Name) _M_ (Sex) _9-1-75_ (Date of Birth) has been immunized as follows.

| VACCINES | DATE | DATE | DATE | DATE | DATE | DATE | DATE | DATE | DATE | SIGNED / SCHOOL NU... |
|---|---|---|---|---|---|---|---|---|---|---|
| DTP or Td | 5/c | 8-21-80 | | | | | | | | |
| Oral Polio | 3/c | 8-21-80 | | | | | | | | |
| Measles | VACCINE▶ 1-1-81 | ILLNESS▶ | VACCINE▶ | | ILLNESS▶ | | | | | |
| Mumps | VACCINE▶ 1-1-81 | ILLNESS▶ | VACCINE▶ | | ILLNESS▶ | | | | | |
| Rubella | VACCINE▶ 1-1-81 | | VACCINE▶ | | | | | | | |
| OTHER | | | | | | | | | | |
| TBC TEST | | | | | | | | | | |

00877

CAUSE NO.
*F00-02424*

STATE OF TEXAS §                                    *194 TH JUDICIAL*
                  §                      FILED
V.                §                    2001 MAY 15 PH 1:00
                  §                    *District Court*
*JEDIDIAH ISAAC MURPHY*  §                JIM HAMLIN
                  §        DALLAS COUNTY, TEXAS
                  §                    DISTRICT CLERK
                  §                        DEPUTY

## BUSINESS RECORD AFFIDAVIT

Before me, the undersigned authority appeared *Barbara Ray*, who, being by me duly sworn, deposed as follows:

My name is *Barbara Ray*, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the custodian of the records of *Presbyterian Hospital*. Attached hereto are *28* pages of records from *Presbyterian Hospital*. These said *28* pages of records are kept by *Presbyterian Hospital* in the regular course of business, and it was the regular course of business of for an employee or representative of *Presbyterian Hospital*, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the exact duplicates of the original.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me on the *15th* day of *May*, 2001.

Notary Public,

_____ State of Texas

*Larry P. Reid* Notary's printed name:

My Commission expires: _____

LARRY P. REID
COMMISSION EXPIRES
JUNE 26, 2004

Affidavit - Solo Page

00878

07/06/00          K0

PRESBYTERIAN HOSPITAL OF KAUFMAN          1200157667   OT   402372
                                          MURPHY ,JEDIDIAH
                                          24 / M   DSUR          ORT

                                          93902   VANDIVER   WILLIAM

Att. Physician:_____ Admit Date:_____ Discharge Date:_____

Anesthesiologist(s):_____ Consultant(s):_____

PRINCIPAL DIAGNOSIS:    (reason for admission after study)      228
                                                                   94192

SECONDARY DIAGNOSIS/CO-MORBID CONDITIONS/COMPLICATIONS:
_____
_____
_____
_____

Adverse Drug Reaction? Yes__ No__ Drug:_____

PRINCIPAL PROCEDURE:   (Surgery/Procedure for the principal diagnosis)

SECONDARY PROCEDURES: (Other surgery/procedures performed)
_____
_____       8179
_____  7-600     24540  LT
_____
_____

DISCHARGE DESCRIPTION:

AHR - ROUTINE DISCHARGE                    ATE - TRANSFER TO OTHER SNU
AMA - LEFT AGAINST MEDICAL ADVICE          ATH - TRANS TO ACUTE CARE GEN'L HOSP
ATW - HOME CARE/HOSPICE RELATED TO ADM     ATI - TRANSFER TO NURSING HOME
ARS - HOME CARE/HOSPICE NOT RELATED        ATV - TRANSF TO HOSP OWNED PSYCH
      TO ADMISSION                         ATP - TRANSFER TO OTHER PSYCH UNIT
ARU - HOME CARE START 3 DAYS AFTER         ATU - TRANS TO HOSP OWNED REHAB CNTR
      DISCHARGE DATE                       ATR - TRANSFER TO OTHER REHAB CENTER
ATA - TRANS/DISCH TO ANOTHER FACILITY,     ATT- TRANS TO INPATIENT HOSPICE
      EXCLUDING ACUTE CARE                 DBA - EXPIRED - AUTOPSY
ATD - TRANSFER TO HOSP OWNED SNU           DBN - EXPIRED - NO AUTOPSY

PHYSICIAN:_____          DATE:_____

                          PATIENT SUMMARY
10:18 07/06/00 FROM N00K,PMSADMF1
P1567207

00879

```
PRESBYTERIAN HOSPITAL OF KAUFMAN
    -----------------------------------------------------------------------
    PATIENT NAME: MURPHY ,JEDIDIAH                   PATIENT NUMBER : 1200157667
    PATIENT TYPE: X                                  MED REC NUMBER :  402372
    SERVICE/CLINIC CODE:   ORT / DSUR                ROOM/BED NUMBER:
    DIAGNOSIS:  RUPT ULNER COLLATERAL LIGAMENT       EXPECTED ARRIVAL DATE: 07/07/00
               LT THUMB                              EXPECTED ARRIVAL TIME:   10:18
    ** PATIENT INFORMATION **
    STREET:        727 E N COMMERCE #4
    CITY:          WILLS POINT                   STATE: TX
    ZIP CODE:      75169                         PHONE NO:  903-873-6959
    MARITAL STS:   S      SEX:  M                BIRTHDATE: 09/01/1975  AGE :  24
    SSN:           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                   RELIGION: DNV
                                                 CONGREGATION:

    ** PATIENT EMPLOYER INFORMATION **
    EMP NAME:     GRIFFIN PRODUCTS
    EMP ADDR:                                    CITY:
    STATE:                                       ZIP CODE:
    OCCUPATION:                                  PHONE NO.: 903-873-6388


    ** REGISTRATION INFORMATION **
    REGISTRATION DATE: 07/07/00 ADMIT DR VANDIVER   WILLIAM R   93902
    REGISTRATION TIME: 10:18   ATTND DR VANDIVER  WILLIAM R   93902
    REGISTRATION SOURCE:  RP   REFER DR VANDIVER ZANE A    T40693
    PREVIOUS ADMIT DATE: 08/23/99   ADMITTED BY: RGKSKH   REF SRC: PHYS
    ACCIDENT INDICATOR: J   ACCIDENT DATE: 06/22/00  ONSET DATE: 06/22/00


    ** EMERGENCY CONTACT INFORMATION **
    NAME:    CRAFT ,LOGAN            RELATION TO PATIENT: OTHER
    STREET:                          CITY:
    STATE:        ZIP CODE:          PHONE NO:  903-873-2215
    ** GUARANTOR INFORMATION **
    NAME:    MURPHY ,JEDIDIAH        RELATION TO PATIENT: SELF
    STREET: 727 E N COMMERCE #4      CITY:
    STATE : TX  ZIP CODE: 75169      PHONE NO:  903-873-6959


    ** INSURANCE INFORMATION **              FINANCIAL CLASS:  K
    1SUBSCRIBER: MURPHY ,JEDIDIAH     POLICY NO.:  456712610        COB: 1
    GROUP NAME: GRIFFIN PRODUCTS      GROUP NO:             INS PLAN CODE: V01
    MAIL TO: UNITRIN                  DOB: 09/01/1975
          P O BOX 655028                                       BC PLAN:
          DALLAS         TX   75265   TREATMENT AUTHORIZE ID: TU0050A
          BEFN PH#: 800-926-1887  PRECERT PH#: 888-336-8759  BEHV PH#:
    2SUBSCRIBER:                      POLICY NO.:                 COB#:
    GROUP NAME:                       GROUP NO:             INS PLAN CODE:
    MAIL TO:                          DOB:
                                                             BC PLAN:
                                 TREATMENT AUTHORIZE ID:
              BENF PH#:          PRECERT PH#:        BEHV PH#:
    3SUBSCRIBER:                      POLICY NO.:                 COB:
    GROUP NAME:                       GROUP NO:             INS PLAN CODE:
    MAIL TO:                          DOB:
                                                             BC PLAN:
                                 TREATMENT AUTHORIZE ID:
              BENF PH#:          PRECERT PH#:        BEHV PH#:
    4SUBSCRIBER:                      POLICY NO.:                 COB:
    GROUP NAME:                       GROUP NO:             INS PLAN CODE:
    MAIL TO:                          DOB:
                                                             BC PLAN:
                                 TREATMENT AUTHORIZE ID:
              BENF PH#:          PRECERT PH#:        BEHV PH#:
    -----------------------------------------------------------------------
                                                             RGKTLW
14:39 07/07/00 FROM N000,ZPOREGF1
P1568179
```

00880

**Presbyterian Hospital of Kaufman**
A Member of Presbyterian Healthcare System

1200157667  402312
MURPHY, JEODIAH
09/01/1975
07/07/00
S3502  VANOIVER VI   AM

| DATE 6/30/00 | TIME |
| --- | --- |

**CHIEF COMPLAINT** Left thumb pain

**PRESENT ILLNESS** 24 y.o. w/m injured left MCP on 6-22-00. Ruptured ulnar collateral ligament.

**PAST HISTORY  ALLERGIES [ ] NKA** Codine

**REVIEW OF SYSTEMS** see above

**MEDICATIONS**

**SURGICAL** Lt hand 96, appendix 93, lung 95

**MEDICAL**

**FAMILY / SOCIAL**

| | SMOKES | DRUGS | ALCOHOL |
| --- | --- | --- | --- |
| | ✓ | Ø | Ø |

| ASSESSMENT | B/P | T | P | R | WT |
| --- | --- | --- | --- | --- | --- |
| HEENT | | | | | |
| BREASTS | deferred | | | | |
| CARDIOVASCULAR | RRR | | | | |
| CHEST | CTA | | | | |
| ABDOMEN | soft, NT, ⊕BS | | | | |
| GENITOURINARY | deferred | | | | |
| MUSCULOSKELETAL | pain left thumb | | | | |
| NEUROLOGICAL | intact UE | | | | |
| IMPRESSION | Ulnar collateral ligament tear | | | | |

THE RISKS, BENEFITS AND ALTERNATIVES OF THE OPERATION OR PROCEDURE HAVE BEEN EXPLAINED AND PATIENT / FAMILY UNDERSTAND(S) AND AGREE(S) TO THE OPERATION OR PROCEDURE. [✓] YES [ ] NO

**PLAN** Open repair ulnar collateral ligament

**PROGRESS/OPERATION/DISCHARGE NOTE [ ] SEE DICTATION**

| PRINCIPAL Dx | |
| --- | --- |
| CONDITION | |
| INSTRUCTIONS | [ ] INSTRUCTION SHEET COMPLETED |
| MEDICATIONS | |
| FOLLOW-UP | |
| ACTIVITY | DIET |

Physician Signature                    7/5/00
                                        Date

SHORT STAY RECORD

00881

446350 (3/98)                                    4442

**UNIVERSAL CONSENT FOR TREATMENT**

I understand that my health condition requires inpatient or outpatient admission. I consent to and authorize testing, treatment and/or hospital care as ordered by my doctor and his/her consultants, associates and assistants. I authorize Hospital nurses, employees and others as necessary to carry out the instructions of my doctor(s) with respect to procedures and treatment they have ordered. I understand that it may be necessary for representatives of outside health care companies to assist in my care. I also understand student nurses and others in professional training programs may be among the individuals who provide care to me. If I am to receive obstetrical care, this consent is given for any child(ren) born to me during this hospitalization. I understand that in connection with my treatment, photos or videos may be taken. Any tissue or body parts removed from my body may be retained or disposed of by the Hospital at its sole discretion.

I also understand and acknowledge that Texas law provides if any health care worker is exposed to my blood or other bodily fluid, the Hospital may perform tests, with or without my consent, on my blood or other bodily fluid to determine the presence of any communicable disease, including but not limited to, Hepatitis, HIV/AIDS and Syphilis. I understand that such testing is necessary to protect those who will be caring for me while I am a patient of the Hospital. I understand that the results of tests taken under these circumstances are confidential and do not become a part of my medical record.

**I acknowledge and agree that the doctors participating in my care in the Hospital do not work for the Hospital. They are not employees, servants or agents of the Hospital. They are either engaged in the private practice of medicine or are licensed practitioners participating in the care of patients as part of a post-graduate medical education program. In addition to my attending doctor, other doctors who may participate in my care may include radiologists, pathologists, anesthesiologists, neonatologists, cardiologists, emergency physicians and other specialists. I acknowledge and agree that the Hospital is not responsible for the judgment or conduct of any doctor who treats or provides a professional service to me, but rather is an independent contractor who is engaged in private practice and is not an agent, servant or employee of the Hospital.**

**NO GUARANTEE: I acknowledge that no guarantees or warranties have been made to me with respect to treatment to be provided at this Hospital. I understand that all supplies, medical devices and other goods sold or furnished to me by the Hospital are sold or furnished on an "AS IS" basis, and Texas Health Resources disclaims any expressed or implied warranties with respect to them.**

If the person signing this form is not the patient, please give full name, phone number and address:

_____

_____

I HAVE READ AND UNDERSTAND THIS INFORMATION.

| | | |
|---|---|---|
| _Signature of Patient or Legally Authorized Representative_ | _Relationship to Patient_ | _Reason Patient Unable to Sign_ |
| _Witness_ | _Title_ | _Date of Signature_ |

**HOSPITAL BOX MUST BE CHECKED**

**Texas Health Resources**
UNIVERSAL CONSENT FOR TREATMENT
FORM NO. HM-968541055 (8/99)

| | | |
|---|---|---|
| ☐ AMH | ☐ MMHEB | ☐ MRMC |
| ☐ HCCH | ☐ MMNW | ☐ PHD |
| ☐ HMEC | ☐ MHSPG | ☐ PHK |
| ☐ HMEW | ☐ MHSW | ☐ PHP |

☐ PHW
☐ SPMC
☐ WRH
☐ Other

9080

PATIENT IDENTIFICATION
MURPHY ,JEDIDIAH
09/01/1975   24 / M   OT
07/07/00      DSUR      ORT
93902   VANDIVER WILLIAM

## AUTHORIZATION TO RELEASE VERBAL HEALTH CARE INFORMATION
## DURING THIS ADMISSION

*With exceptions the law has created, you have the right to decide what verbal information the hospital can release during your admission. Please take a moment to read this form carefully to properly choose the option which best suits your needs.*

I understand there are times when the law allows the hospital to release information regardless of whether or not I give my consent. For example, the hospital may release information to doctors, nurses and others who provide me with health care or are prospective health care providers; to government agencies as authorized by law; to insurance companies or others who are responsible for paying my medical bills; or to a court of law that issues a subpoena or court order. I understand this information may be released either orally or in document form.

I understand that "Directory Information", such as my presence in the hospital, my room number, room telephone number, age, sex, race and one word statement relating to my condition may be released to all who ask unless I specifically request to be a "No Information" patient as stated below.

☐ **STANDARD DISCLOSURE** - I authorize this hospital and medical staff members to discuss my medical history, diagnosis, treatment and prognosis with those listed below. I understand this may include information regarding testing, examination and treatment for HIV, AIDS related illness, mental health and drug, alcohol or chemical abuse.

☐ spouse _____
☐ children _____        _____
_____        _____
_____
☐ parent _____        _____
☐ other _____        _____

☐ **NO INFORMATION** - I do not authorize release of any information regarding my admission or treatment. I choose to be a "No Information" patient and I realize that mail, flowers, telephone calls and visitors will be refused on my behalf. (The hospital staff will not be able to acknowledge nor deny my absence or presence.)

This authorization will expire at the end of my hospitalization or clinic service, unless I revoke the consent prior to that time.

_____        _____        _____
Signature of Patient or *Legally Authorized Representative        Relationship        Date

7-6-10

_____                                _____
Witness                                                          Date

*For Purposes of this form, "Legally Authorized Representatives" include: 1) legal guardian, 2) agents authorized in a Medical Power of Attorney, 3) Attorney or guardian ad litem appointed by the court, 4) attorney retained by the patient or patient's legally authorized representative, 5) parent or legal guardian of a minor, 6) a personal representative or statutory beneficiary if the patient is deceased, that is a spouse, adult children and parents of the deceased patient.



**Texas Health Resources**
Authorization for Verbal Release of Health Care
Information During Admission for Services
Form HM-998540228 (Rev. 8/99)

PATIENT IDENTIFICATION

MURPHY .JEDIDIAH
09/01/1975    24 / M    OT
07/07/00      OSUR     09T
SPMC93502  VANDIVER  WILLIAM

☐ AMH   ☐ HMHEB  ☐ MRMC   ☐ PHW
☐ HCCH  ☐ HMNW   ☐ PHD    ☐ SPMC
☐ HMEC  ☐ HMSPG  ☐ PHK    ☐ WRH
☐ HMFW  ☐ HMSW   ☐ PHP    ☐ Other

9100

## ADMISSION ACKNOWLEDGMENTS

**RELEASE OF INFORMATION:** I consent and authorize the Hospital to release all information contained in my financial and medical records, including diagnoses and test results, to (a) any of my treating practitioners, (b) my insurance company or health plan, (c) any other person or entity that is responsible for paying or processing for payment of any portion of my Hospital bill, (d) governmental or accrediting agencies, (e) any other health care provider to which I am transferred for care, (f) to entities utilizing this information for quality management, peer review and/or outcome analysis such as tumor registry follow-up, or (g) any other person or entity as required or allowed by state and federal law. This consent applies to all records created in the course of and relating to this hospitalization, including those related to alcohol and/or substance abuse diagnosis or treatment, mental health treatment, and/or any communicable disease, including HIV/AIDS. To provide the practitioners who will treat me during this hospitalization with access to my prior medical history, I also consent and authorize any health care provider to release to any of the practitioners who treat me during this hospitalization all information contained in my medical records from prior treatment that is relevant to my current care and treatment. If I am the patient or the patient's legal guardian, I also consent to release of billing and medical records to my primary care physician and his/her medical group. I authorize the Hospital to release my home address, telephone number and social security number to the manufacturers of the medical devices I receive, in accordance with the medical device tracking provisions of the federal Safe Medical Device Act.

This release shall remain valid until I notify the Hospital, in writing, of my desire to revoke it. I understand there are times when the law allows the Hospital to release information regardless of whether or not I give my consent. For example, the Hospital may release information to doctors, nurses and others who provide me with health care or are prospective health care providers; to government agencies as authorized by law; to insurance companies or others who are responsible for paying my medical bills; or to a court of law that issues a subpoena or court order. I understand this information may be released either orally or in document form whether or not I withdraw my consent.

**ADVANCE DIRECTIVES:**

**a.** To be completed for Hospital outpatients and emergency room patients only:

| | | | |
|---|---|---|---|
| Are you (the patient) presenting an Out-of-Hospital DNR order or bracelet? | ☐ Yes ☑ No | Copy provided? | ☐ Yes ☐ No |

**b.** To be completed for Hospital inpatients and outpatients undergoing invasive procedures only:

1. Who is answering the following questions?  Patient? ☑ Yes ☐ No    Person with Patient? ☐ Yes ☐ No
2. Was printed information about Advance Directives offered to you? ☑ Yes ☐ No    Information received? ☐ Yes ☐ No
3. Do you (the patient) have a Directive to Physicians (Living Will)? ☐ Yes ☑ No    Copy provided? ☐ Yes ☐ No
4. Do you (the patient) have a Medical Power of Attorney? ☐ Yes ☑ No    Copy provided? ☐ Yes ☐ No
5. Do you (the patient) have a Mental Health Directive? ☐ Yes ☑ No    Copy provided? ☐ Yes ☐ No
6. Are you (the patient) presenting an Out-of-Hospital DNR order or bracelet? ☐ Yes ☑ No    Copy provided? ☐ Yes ☐ No
7. Would you like to discuss Advance Directives with a Hospital staff member? ☑ Yes ☐ No    Referral to Social Services made?

I understand it is my responsibility to provide a copy of my Advance Directives to the Hospital.
(*Hospital Staff Note: Shaded area indicates that Advance Directive follow-up documentation is required.)

**PATIENT RIGHTS AND RESPONSIBILITIES:** I have received written information regarding my rights and responsibilities as a patient. This information tells me how to register a complaint I might have.

**MY VALUABLES:** I understand that the Hospital does not assume responsibility for personal property I may keep with me during my treatment/hospitalization. I understand that unnecessary items should be sent home, and that a safe is available for my valuables.

**FINANCIAL AGREEMENT/ASSIGNMENT OF BENEFITS:** I hereby assign to the Hospital, and any practitioner providing care and treatment to me, any and all benefits and all interest and rights (including causes of action and the right to enforce payment) for services rendered under any insurance policies or any reimbursement or prepaid health care plan. If my treatment was caused by events which result in legal action, I assign to the Hospital an interest in any claims I may have. I hereby promise to pay for all services rendered to me to the extent I am legally responsible for such payment; I understand I am responsible for all health insurance copayments and deductibles. Charity care may be available if Hospital eligibility criteria are met.

If I am a MEDICAID PATIENT, I understand that the services or items that I request to be provided to me may not be covered under the Texas Medical Assistance Program as being reasonable and medically necessary for my care. I understand that the Texas Department of Human Services or its health insuring agent determines the medical necessity of the services or items that I request and receive. I also understand that I am responsible for payment of the services or items I request and receive if these services or items are determined not to be reasonable and medically necessary for my care. If I am a Medicaid Star patient, these provisions may not apply.

**FOR MEDICARE/TRICARE PATIENTS ONLY:** I acknowledge receipt of the written material entitled, "Important Message from Medicare/Tricare."

If the person signing this form is not the patient, please give full name, phone number and address:

I HAVE READ AND UNDERSTAND THE INFORMATION ABOVE **AND ON THE BACK OF THIS FORM.**

| | | |
|---|---|---|
| _signature_ | _signature_ | 7-1-07M |
| Signature of Patient or Legally Authorized Representative | Relationship to Patient | Reason Patient Unable to Sign |
| _signature_ | Admit RN | |
| Witness | Title | Date of Signature |



**HOSPITAL BOX MUST BE CHECKED**

## Texas Health Resources
### ADMISSION ACKNOWLEDGMENTS
FORM NO. HM-998540682 (Rev. 8/99) PAGE 1 OF 2

☐ AMH   ☐ HMHEB   ☐ MRMC   ☐ PHW
☐ HCCH   ☐ HMNW   ☐ PHD   ☐ SPMC
☐ HMEC   ☐ HNSPG   ☐ PHK   ☐ WRH
☐ HMSW   ☐ HNSW   ☐ PHP   ☐ Other

9051

THR 61 (Rev. 8/99)

PATIENT IDENTIFICATION

MURPHY , JEDIDIAH
03/01/1975   24 / M
07/07/00   OSUR
93902   VANDIVER , WILLIAM

00884

# PRESBYTERIAN HOSPITAL OF KAUFMAN

| SIGNATURES | INT |
|---|---|
| | |
| | |
| | |
| | |

1200157557    402372
MURPHY, JEDIDIAH
09/01/1975    24 / M    OT
07/07/00    DR UR    INT
63902 LVANSIVEW  WILLIAM

Teaching method code  A = audovisual       D = demonstration
                      B = role play        H = handout
                      C = explanation      G = group class

Barriers to Learning
Identified on
Admission Data Form

| DATE | TIME | INTERVENTION Include content taught and identity of learner if other than the patient. | TIME SPENT | TEACHING METHOD | EVALUATION | | | | | REVISION | | | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | VERBALIZES / DISPLAYS KNOWLEDGE | CAN RETURN DEMONSTRATE | ROUTINELY PERFORMS | NO EVIDENCE OF LEARNING | RE-TEACH | NEEDS PRACTICE | ONGOING REINFORCEMENT | |
| 7/6/00 | | PRE-ADMISSION : | | C/H | | | | | | | | |
| | | Instructed Patient | | | | | | | | | | |
| | | & Significant Other | | | | | | | | | | |
| | | Importance of NPO, | | | | | | | ✓ | | | |
| | | Enemas, Showers,Pre- | | | | | | | | | | |
| | | Operative Medications | | | | | | | | | | |
| | | Blood draws,EKG,Chest | | | | | | | | | | |
| | | Xray, Time to arrive | | | | | | | | | | |
| | | Orientation to Room | | | ✓ | | | | | | | Danforth RN |
| 7-7-00 | | POST-OPERATIVE : | 5 | C | ✓ | | | | | | | 90 |
| | | Instructed Patient | | | | | | | | | | |
| | | & Significant Other | | | | | | | | | | |
| | | Medication Actions | | | ✓ | | | | | | | |
| | | and Side Effects, | | | | | | | | | | |
| | | Wound and Dressing | | | | | | | | | | |
| | | Care, Icepacks,Diet, | | | | | | | | | | |
| | | Activity. | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | Discharge Instruction | H | ✓ | | | | | | | | |
| | | Sheet and Prescriptions | | | | | | | | | | |
| | | Provided | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

Form # 17568 New 11/94                    TEACHING-LEARNING RECORD

00885

**PHYSICIAN'S ORDERS**

PRESBYTERIAN HOSPITAL
Of Kaufman

INSTRUCTIONS:
PHYSICIAN — (1) USE BALL POINT PEN    NURSE — (1) USE BALL POINT PEN    (3) DETACH LAST 2 COPIES IMMEDIATELY AFTER CHARTING IS
(2) PRESS FIRMLY    (2) PRESS FIRMLY    COMPLETED BY NURSES AND FORWARD TO PHARMACY

| DATE | TIME | DESCRIPTION |
|---|---|---|
| 7-7-00 | 7:30 | Allergies: Iodine |
| | | 1. Admit Day Surgery Dr Van Liner |
| | | 2. Diet: NPO p Midnight 7-6-00 |
| | | 3. Labs: CBC    done |
| | | 4. pt to sign permit |
| | | 5. Dx: Knee Collateral ligament |

DOCTOR'S SIGNATURE

| 7/7/00 | 0900 | 1. Discharge pt home today |
|---|---|---|
| | | 2. Morphine 4 mg IV q2h prn severe pain |
| | | 3. Toradol 30 mg IV Now — done PACU. |
| | | 4. Vicodin ii PO q4h prn mild-moderate pain |
| | | 5. Act Regular |

DOCTOR'S SIGNATURE

DOCTOR'S SIGNATURE

**Presbyterian Hospital of Kaufman**
A Member of Presbyterian Healthcare System



1200157567   402372
MURPHY, JEDIDIAH
08/01/1975
07/07/00

### DISCLOSURE AND CONSENT
### MEDICAL AND SURGICAL PROCEDURES

*TO THE PATIENT: You have the right, as a patient, to be informed about your condition and the recommended surgical, medical, or diagnostic procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved. This disclosure is not meant to scare or alarm you; it is simply an effort to make you better informed so you may give or withhold your consent to the procedure.*

I (we) voluntarily request Dr. _William R. Vandiver MD_ as my physician, and such associates, technical assistants and other health care providers as they may deem necessary, to treat my condition which has been explained to me by my physician as: _Ruptured ulnar Collateral Ligament Left thumb/hand_

I (we) understand that the following surgical, medical, and/or diagnostic procedures are planned for me and I (we) voluntarily consent and authorize these procedures: _Ulnar Collateral Ligament Repair Left thumb/hand_

I (we) understand that my physician may discover other or different conditions which require additional or different procedures than those planned. I (we) authorize my physician, and such associates, technical assistants and other health care providers to perform such other procedures which are advisable in their professional judgment.

I (we) **(do)** (do not) consent to the use of blood and blood products as deemed necessary. I (we) also realize that the following risks and hazards may occur in connection with this particular procedure: **fever, transfusion reactions which may include kidney failure or anemia, heart failure, hepatitis, AIDS (Acquired immune deficiency syndrome) and other infections.**

I (we) understand that no warranty or guarantee has been made to me as to result or cure.

Just as there may be risks and hazards in continuing my present condition without treatment, there are also risks and hazards related to the performance of the surgical, medical, and/or diagnostic procedures planned for me. I (we) realize that common to surgical, medical, and/or diagnostic procedures is the potential for infection, blood clots in veins and lungs, hemorrhage, allergic reactions, and even death. I (we) also realize that the following risks and hazards may occur in connection with this particular procedure: _Infections, possible need for further surgery._

I (we) understand that anesthesia involves additional risks and hazards but I (we) request the use of anesthetics for the relief and protection from pain during the planned and additional procedures. I (we) realize the anesthesia may have to be changed possibly without explanation to me (us).

I (we) understand that certain complications may result from the use of any anesthetic including respiratory problems, drug reaction, paralysis, brain damage or even death. Other risks and hazards which may result from the use of general anesthetics range from minor discomfort to injury to vocal cords, teeth or eyes. I (we) understand that other risks and hazards resulting from spinal or epidural anesthetics include headache and chronic pain.

I (we) have been given an opportunity to ask questions about my condition, alternative forms of anesthesia and treatment, risks of nontreatment, the procedures to be used, and the risks and hazards involved, and I (we) believe that I (we) certify this form has been fully explained to me, that I (we) have read it or have had it read to me, that the blank spaces have been filled in, and that I (we) understand its contents.

DATE: _7-6-00_  TIME: _1040_ am/pm
I (we) have sufficient information to give this informed consent.

_____
PATIENT/Other legally responsible person sign

DATE: _7-7-00_  TIME: _730_ am/pm
I (We) have sufficient information to give this informed consent.

_Jedidiah R Murphy_
PATIENT/Other legally responsible person sign

I have explained the risk, benefits, and alternatives and the patient/family understands and agrees to the procedure.

_____
Surgeon Sign        Date        Time

I have explained the risk, benefits, and alternatives and the patient/family understands and agrees to the anesthesia.

_____
Anesthesiologist / CRNA Sign   Date   Time

WITNESS:
Name: _____
Address: _____
City, State, Zip: _____

WITNESS:
Name: _____
Address: _____
City, State, Zip: _____

Item 4339

00887



PRESBYTERIAN HOSPITAL OF KAUFMAN

ANESTHESIA RECORD

# PREANESTHESIA EVALUATION

| Age | Sex M F | Height 5'10" | Weight 142 |

**Proposed Procedure** Hand Reconstruction

**Pre-Procedure Vital Signs:** B/P    P    R    T

**Previous Anesthesia / Operations**
- Blunt chest/abd injuries (ex lap) GA
- Appendix (ex lap) GA — No anesthesia problem
- thigh GSW bleed GA
- knee

Current Medications: ∅

**Family History of Anesthesia Complications** — None

**Allergies** Iodine, fluids — NKDA

**AIRWAY / TEETH / HEAD & NECK**

History From: ☐ Patient ☐ Significant Other ☐ Parent/Guardian ☐ Chart ☐ Communication/Language Problems ☐ Poor Historian

| SYSTEM | WNL | COMMENTS | DIAGNOSTIC STUDIES |
|---|---|---|---|
| RESPIRATORY | ☐ | Tobacco Use: (Yes) No   Packs/Day for   Years | EKG |
| Asthma, Bronchitis, COPD, Dyspnea, Orthopnea, Pneumonia, Productive Cough, Recent URI, SOB, Tuberculosis | | hx of chest trauma. | Chest X-ray |
| CARDIOVASCULAR | ☐ | | |
| Abnormal EKG, Angina, ASHD, CHF, Dysrhythmia, Exercise Tolerance, Hypertension, MI, Murmur, Pacemaker, Rheumatic Fever, Valvular Disease | | | Pulmonary Studies |
| HEPATO / GASTROINTESTINAL | ☐ | Ethanol Use: ☐ Yes ☐ No   Frequency | |
| Bowel Obstruction, Cirrhosis, Hepatitis/Jaundice, Hiatal Hernia/Reflux, Nausea & Vomiting, Ulcers | | "Street Drug" Use: ☐ Yes ☐ No   Frequency | Other |
| NEURO / MUSCULOSKELETAL | ☐ | | LABORATORY STUDIES |
| Arthritis, Back Problems, CVA/Stroke/TIAs, DJD, Headaches/↑ICP, Loss of Consciousness, Muscle Weakness, Neuromuscular Dis., Paralysis, Paresthesia, Syncope, Seizures | | Confined to ® hand. | High/Hct/Hgb 15.5/45.9  256000  Electrolytes |
| RENAL / ENDOCRINE | ☐ | | |
| Diabetes, Renal Failure/Dialysis, Thyroid Disease, Urinary Retention, Urinary Tract Infection, Weight Loss/Gain | | | Urinalysis |
| OTHER | | | |
| Anemia, Bleeding tendencies, Cancer, Chemotherapy, Dehydration, Hemophilia, Immunosuppressed, Pregnancy, Sickle Cell Dis./Trait, Recent Steroids, Transfusion History | | | Blood Usage ☐ Discussed – Risks, Benefits, Alternatives ☐ Planned ☐ Blood Available ___ Units ☐ Not Planned |

**Problem List / Diagnoses** Hx chest trauma, (injuries)

**PHYSICAL STATUS** 1 2 3 4 5 E

**Planned Anesthesia / Special Monitors:** (General) Regional MAC TIVA
**Risks / Benefits / Alternatives Discussed**

**POSTANESTHESIA NOTE** No apparent anesthesia ...
Signed ___ Date 7/21/00 Time ___

**Pre-Anesthesia Medications Ordered**

**PATIENT IDENTIFICATION**

**Post-op Recovery Plan:** PACU I   PACU II   SCU   MED/Surg.
**Evaluator Signature** ___ Date 7/7/00 Time 7:24

MURPHY, JEDIDIAH  09/01/1975  24/M  OT  02/22/00  DSUR  ORT  93932  VANCIVER WILLIAM

00889

**Presbyterian Hospital of Kaufman**
A Member of Presbyterian Healthcare System

## OPERATING ROOM RECORD

DATE: 7-7-00

PATIENT IDENTIFICATION
```
1200157667  402333
MURPHY,JEDIDIAH
09/01/1975   24 / M
07/07/00    OSUR
93902  VANDIVER  WILLI
```

WOUND CLASSIFICATION: (I) II  III  IV

ANESTHETIST: ORT

ANESTHESIOLOGIST: B.Johnston

TIMES:
ANES. START TIME: 0745 am/pm
PT. IN O.R.: 0745 am/pm
SURGERY START: 0805 am/pm
SURGERY END: 0835 am/pm
PT. OUT 0845 am/pm

TYPE OF ANESTHESIA: ☑GENERAL ☐SPINAL ☐EPIDURAL ☐IV SED ☐LOCAL ☐LOCAL WITH M.A.C. ☐TIVA
☐BLOCK: _____ ☐OTHER: _____

O.R. # II

TYPE OF PROCEDURE: ☑SCHEDULED ☐UNSCHEDULED ☐EMERGENCY
PT IDENTIFICATION: ☑VERBAL ☑CHART ☑ARM BAND ☐STAMP PLATE
VERIFICATION OF PROCEDURE/LOCATION: ☑VERBAL ☑CONSENT FORM
PREVIOUS SURGERY: ☑NO ☐YES ☐IMPLANTS/PROSTHESIS OR METAL HARDWARE:
  LIST: _____
SURGEON NOTIFIED PT TO OR: 0745
PERSONAL ITEMS: ☑NO ☐YES LIST: _____

SURGEON: W.Vandiver
SURGEON ASSISTANTS: _____
CIRCULATING NURSES: T.ReffethRahwor
CIRCULATOR RELIEF: _____ IN: _____ OUT: _____
SCRUB NURSES: N.Ulurost
SCRUB NURSE RELIEF: _____ IN: _____ OUT: _____
PRE-OP DIAGNOSIS: Ruptured Ulnar Collateral Ligament Left Thumb

POST-OP DIAGNOSIS: Same

OPERATION: Repair Left thumb Collateral Ulnar Ligament

CONSENTS: ☑IN CHART  HX & PHYSICAL: ☑IN CHART
ALLERGIES: ☐NONE LIST: Iodine
NPO AFTER MN: ☑YES ☐NO SINCE: _____ am/pm
BLOOD ORDERED: ☐NO ☐YES ☐PERMIT
☐ID BAND #: _____
KNOWN INFECTIOUS DISEASE: ☑NONE ☐LIST: _____

SPECIMENS TO PATHOLOGY: ☑NONE ☐YES
_____

CULTURES TO LAB: ☑NONE ☐YES
_____

X-RAYS/FLURO: ☑NONE ☐PORTABLE ☐C-ARM
OPERATOR: _____

DRESSINGS: ☐NONE ☐MASTISOL ☐BETADINE GAUZE
☑ADAPTIC ☐CAST/SPLINT ☐XEROFORM ☐TELFA
☐TAPE ☐STERISTRIP ☑4X4 ☐KLING ☐ABD ☐ACE
☐OTHER: _____
LOCATION: (L)hand

DRAINS: ☑NONE ☐YES TYPE/LOCATION: _____

PACKS: ☑NONE ☐YES TYPE/LOCATION: _____

| PROSTHESIS /IMPLANTS ☐NONE | | | | MEDICATIONS /IRRIGATION ☐NONE | | | |
|---|---|---|---|---|---|---|---|
| TYPE/LOCATION | MANUFACTURER | SIZE | MODEL # / LOT # | TYPE/STRENGTH | DOSAGE | ROUTE/SITE | BY |
| | | | | Ancef/NS Irrig | | | WV |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

E. BLOOD GIVEN: ☑NO ☐YES (SEE ANESTHESIA RECORD)   ESTIMATED BLOOD LOSS: _____   URINE OUTPUT: _____

CONDITION ON DISCHARGE: ☑SATISFACTORY ☐OTHER: _____   DISCHARGE PER: ☑STRETCHER ☐BED ☐OTHER _____   RM J0890

DISCHARGE TO: ☑PACU ☐FLOOR ☐ICU ☐OTHER: _____

NURSES COMMENTS: To Holding 10x3 permits # Allergies Verified. To OR. Prep & Position. Induction. Postop to PACU. Recording from CETA.

R.N. SIGNATURE X Tamen ReffethRahwor

INSTRUCTIONS: CHECK BOXES FOR ASSESSMENT/INTERVENTIONS WHEN IMPLEMENTED. ALL NURSING DIAGNOSES ARE LISTED BY LETTER; EACH LETTER CORRESPONDS TO THE ASSESSMENTS/INTERVENTIONS LISTED BELOW.

| NURSING DIAGNOSIS | GOAL | GOAL ACHIEVED YES | NO |
|---|---|---|---|
| A. POTENTIAL FOR KNOWLEDGE DEFICIT/ANXIETY RELATED TO SURGICAL INTERVENTION. | A. DEMONSTRATES KNOWLEDGE/COPING STRATEGIES. | ✓ | |
| B. POTENTIAL FOR INFECTION. | B. NO KNOWN INFECTION RELATED TO INTRAOPERATIVE CARE. | ✓ | |
| C. POTENTIAL FOR UNANTICIPATED ALTERATION TO SKIN INTEGRITY. | C. SKIN INTEGRITY MAINTAINED. | ✓ | |
| D. POTENTIAL FOR INJURY RELATED TO INTRAOPERATIVE HAZARDS. | D. NO INTRAOPERATIVE INJURY OCCURS. | ✓ | |
| E. POTENTIAL FOR ALTERATION OF FLUID AND ELECTROLYTE BALANCE. | E. SURGEON NOTIFIED OF ALL FACTORS RELATING TO FLUID AND ELECTROLYTE BALANCE. | ✓ | |

**A. LEVEL OF RESPONSIVENESS: PRE-OP**
- ☒ ALERT
- ☐ AGITATED
- ☐ DISORIENTED
- ☐ SEDATED
- ☐ UNRESPONSIVE
- ☐ RESPONDS TO VERBAL/TACTILE STIMULATION

**A. EMOTIONAL STATUS:**
- ☒ CALM, RELAXED
- ☐ APPREHENSIVE, BUT PARTICIPATED IN CARE
- ☐ FRIGHTENED, UNABLE TO PARTICIPATE
- ☐ STATED FEARS

**A. SENSORY LIMITATIONS/COMMUNICATION:**
- ☒ NO SENSORY LIMITATIONS NOTED
- ☐ SIGHT   ☐ GLASSES/CONTACTS REMOVED
- ☐ HEARING   ☐ HEARING AIDS REMOVED
- ☐ SPEECH   ☐ LANGUAGE BARRIER
- ☐ OTHER: _____

**A. FAMILY:** ☐ NO ☒ YES   REPORT TO FAMILY
WHERE: OR Lobby

**A. COMFORT MEASURES IMPLEMENTED:**
- ☒ WARM BLANKET   ☒ PILLOW
- ☐ OTHER: _____

**B. SKIN PREP:** ☒ N/A  ☐ SHAVE  ☐ CLIP
- ☐ PRE-OP  ☐ IN O.R.

**B. SKIN PREP SOLUTION:**
- ☐ BETADINE SCRUB
- ☐ BETADINE SOLUTION
- ☐ HIBICLENS  ☐ PREVAIL
- ☐ PHISOHEX
- ☐ OTHER: _____

**B. INTRAOPERATIVE CATHETER:**
- ☐ FOLEY _____ fr. _____ cc
- ☐ STRAIGHT CATH _____ fr.
- ☒ N/A
- ☐ CLEAR ☐ CLOUDY ☐ BLOODY

**C/D. INTRAOPERATIVE POSITIONING:**
TRANSFER TO O.R. TABLE PRIOR TO SURGERY:
- ☒ SELF  ☐ ASSISTED  ☐ N/A
- ☐ ROLLER DEVICE

**TRANSFER AFTER SURGERY PER:**
- ☒ ROLLER DEVICE  ☐ ASSISTED  ☐ SELF

**PT. POSITIONED ON:**
- ☒ O.R. TABLE  ☐ FX. TABLE  ☐ STRETCHER
- ☐ OTHER: _____

**C/D. SURGICAL POSITIONS USED:**
- ☒ SUPINE  ☐ LITHOTOMY
- ☐ PRONE  ☐ FOWLERS/SEMI FOWLERS
- ☐ J. KNIFE  ☐ LATERAL ☐ RT. ☐ LT.
- ☐ OTHER: _____

**C/D. SAFETY BELT/RESTRAINTS USED:**
- ☒ ACROSS THIGHS ☒ B/L ☐ RT. ☐ LT.
- ☐ ACROSS CALVES  ☐ ACROSS HIPS
- ☐ ACROSS FEET  ☐ ACROSS ABDOMEN
- ☐ B/L WRISTS ☐ RT. ☐ LT.
- ☐ ARMS TUCKED ☐ RT. ☐ LT.
- ☒ BELT DURING INDUCTION/EMERGENCE
- ☐ OTHER: _____

**C/D. PADDING/EQUIPMENT USED AND LOCATION:**
- ☐ N/A
- ☒ PILLOWS ✓ Knees ✓ Head
- ☐ ROLLS/SANDBAGS
- ☐ PADS _____
- ☒ EGGCRATE Wheels
- ☐ STIRRUPS
- ☐ LEG HOLDER _____
- ☐ KIDNEY REST _____
- ☐ ARM SLED _____
- ☐ TAPE _____
- ☐ OTHER: _____

**C/E. SKIN INTEGRITY: PRE-OP**
- ☒ SKIN INTACT, ADEQUATE HYDRATION
- ☐ TRAUMATIC WOUNDS
- ☐ SKIN LESIONS/ULCERS
- ☐ PRESENCE OF DRAINS:
  (CHECK TYPES) ☐ FOLEY ☐ NG
  ☐ WOUND ☐ OSTOMIES
- POST-OP: ☒ SAME ☐ OTHER: _____

**D. RANGE OF MOTION: PRE-OP**
- ☒ WITHIN NORMAL LIMITS
- ☐ CONTRACTURES
- ☐ FRACTURES ☐ CASTS ☐ TRACTION
- ☐ MISSING LIMBS
- ☐ PARALYSIS
- ☐ OTHER: _____
- POST-OP: ☒ SAME ☐ OTHER: _____

**D. RESPIRATIONS:**
- ☒ WITH EASE ☐ LABORED
- ☐ VENTILATORY ASSISTANCE/PT. INTUBATED
- ☐ TRACHEOSTOMY ☐ OXYGEN IN USE
- POST-OP: ☒ SAME ☐ OTHER: _____

**D. ELECTROCAUTERY:**
- ☐ MONOPOLAR: ☒ N/A
- UNIT: _____ PAD SITE: _____
- SETTING:CUT: _____
  COAG: _____
- APPLIED BY: _____
- SKIN AT REMOVAL: ☐ INTACT ☐ OTHER: _____
- ☐ BIPOLAR: ☒ N/A
- UNIT: _____ SETTING: _____

**D. THERMAL UNITS:**
- ☐ N/A
- TYPE: ☒ BAIR ☐ BLANKETROL II TEMP: H
- ☐ BAIR HUGGER: _____

**D. TOURNIQUET:**
- ☐ N/A
- UNIT: Zimmer ATS  APPLIED BY: TPC
- LOCATION: (L) Arm

| TIME UP | TIME DOWN | PRESSURE SETTING | TOTAL TIME |
|---|---|---|---|
| 0804 | 0837 | 250 | 33 |

**D. COUNTS**

| | PRE-OP | #1 | #2 | #3 | CHANGE OF SHIFT CT. |
|---|---|---|---|---|---|
| SPONGE: CORRECT | | | | | |
| *INCORRECT | | | | | |
| NOT TAKEN | / | | | | |
| SHARP: CORRECT | | | | | |
| *INCORRECT | | | | | |
| NOT TAKEN | / | | | | |
| INSTRUMENT: CORRECT | | | | | |
| *INCORRECT | | | | | |
| NOT TAKEN | / | | | | |

COUNT BY:
(1) _____ CIRCULATOR NURSE
(1) _____ SCRUB NURSE
(2) _____ CIRCULATOR NURSE
(2) _____ SCRUB NURSE
(3) _____ CIRCULATOR NURSE
(3) _____ SCRUB NURSE

* ACTION TAKEN: ☐ SURGEON NOTIFIED
☐ X-RAY TAKEN

**E. CELL SAVER:**
- ☒ N/A
- OPERATOR: _____
- TYPE OF USE: _____

00891

PRESBYTERIAN HOSPITAL OF KAUFMAN

```
1200157667   402372   KO
MURPHY ,JEDIDIAH
09/01/1975   24 / M   OT
07/07/00   DSUR   ORT
53902  VANDIVER  WILLIAM
```

Teaching method code   A = audiovisual      D = demonstration
                       B = role play        H = handout
                       C = explanation      G = group class

Barriers to Learning
Identified on
Admission Data Form

| DATE | TIME | INTERVENTION — Include content taught and identify of learner if other than the patient. | TIME SPENT | TEACHING METHOD | EVALUATION | | | | | REVISION | | | COMMENTS |
|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 7/7/00 | 0745 | PRE-OPERATIVE : Instructed Patient on Peri-Operative Process, Moniters, Positioning, Skin Prep, Electrocautery. | | C | | | | | | | | | *signature* |
| 7/7/00 | 0850 | PACU : Instructed Patient to Deep Breath and Cough, Orientation to place and situation, Incisional splinting, Pain control, Medication Action & Side Effects Dressings, Drains, Limb elevation,and Effects of Anesthesia | | C | | | | | | | | | M Crouch Rn |

Form # 17568 New 11/94                TEACHING-LEARNING RECORD

00892

**Presbyterian**
**Hospital of Kaufman**
A Member of the Presbyterian Healthcare System

DATE 1/1/00   ARRIVAL IN RR 0850   FROM II

OPERATION/PROCEDURE Repair O Thumb
Ligament

SURGEON/OTHER Vandiver   ANES B Solomon 07/07/00

KO
1200157667   402372
MURPHY , JEDIDIAH
09/01/1975   24 / M   OT
07/07/00   DSUR   ORT
93502   VANDIVER   WILLIAM

ANESTHESIA: ☐ GEN ☐ SPINAL ☐ LOCAL ☐ OTHER ___

| AIRWAY ADJUNCT: | | | | O₂: | | | |
|---|---|---|---|---|---|---|---|
| | ON ARRIVAL | TIME | | VIA ___ | | ON | DC'd |
| NONE | ☒ | IN | DC'd | TBAR ___ % ___ | | | |
| ORAL | ☐ | ___ | ___ | MASK 40 % w/c 0900 | | | |
| NASAL | ☐ | ___ | ___ | N.C. ___ L/min | | | |
| ETT | ☐ | ___ | ___ | ROOM AIR ___ | | | |

| CHIN/JAW SUPPORT | ☐ | | |
|---|---|---|---|
| EKG RHYTHM NSR | | | |
| ALLERGIES iodine | | | |
| SPECIAL INFO ___ | | | |
| MEDICAL HISTORY ___ | | | |

VENT. SETTINGS

| TIME | RATE | TV | FIO₂ |
|---|---|---|---|
| | | | |
| | | | |

| MEDICATION RECORD | | |
|---|---|---|
| TIME | MEDICATION ROUTE AND SITE | NURSE |
| 0850 | Demerol 25mg SWP | MC |
| 0855 | Toradol 30mg SWP | MC |
| 0900 | Demerol 25mg SWP | MC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

PREOP BP 137/68   **VITAL SIGN RECORD / FREQUENT OBSERVATIONS**

| TIME | NIBP | ART.BP | PULSE | RESP | TEMP | O₂SAT | REGIONAL | | | | | LAB | XRAY | INITIALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0850 | 149/89 | — | 77 | 18 | 96° | 99 | | | | | | | | MC |
| 0855 | 137/89 | — | 76 | 18 | — | 99 | | | | | | | | |
| 0900 | 136/81 | — | 71 | 18 | — | 99 | | | | | | | | |
| 0905 | 126/86 | — | 70 | 18 | — | 99 | | | | | | | | |
| 0910 | 130/79 | — | 76 | 18 | — | 96 | | | | | | | | |
| 0915 | 124/82 | — | 74 | 18 | — | 96 | | | | | | | | |
| 0920 | 124/80 | — | 66 | 18 | 96° | 98 | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

| INTAKE | | | | | | OUTPUT | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TIME | NO. | SOLUTION AND AMOUNT | AMT INFUSED | SITE | CONDITION ADM / DISCH | TIME | VOID | CATH | NG | EMESIS | HEMOVAC | DAVOL | J.P. | OTHER |
| ON ARR | | LR 600 LTC | 200 | R Hand | WL/WL | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | TOTAL | | | | | | | |

| SIGNATURES | INITIALS |
|---|---|
| PRIMARY NURSE: M Crouch RN | MC |

00893

| TOTAL | | | .WNL OR SEE NN | |

DATE 7/7/00

| TIME | NURSES PROGRESS NOTES |
|------|------------------------|
| 0850 | From OR via stretcher c rails ↑. Lungs clear to auscultation O₂ 40% FT. pt awake + talking. Shaking. Applied bair hugger warmer. (L) hand cast on. Able to move digits on request. Brisk CRT. pt c/o severe pain in (L) hand. Administered Demerol 25mg SIVP. |
| 0855 | pt still has c/o pain Administered Toradol 3mg SIVP. Elevated (L) arm ———— MRindle |
| 0900 | pt states pain is a little better. Administered Demerol 25mg SIVP for c/o moderate pain of 6 on 1-10 scale MRindle |
| 0905 | Pt resting c eyes closed. Resp even + unlabored O₂ sats satisfactory on room air ———— MRindle |
| 0910 | Encouraged to deep breath & cough. Pt. states pain is better, but still hurts some MRindle |
| 0920 | Meets discharge criteria for Med. Called report to E. Daugherty RN MRindle |

12001576 67    402372
MURPHY , JEDIDIAH       XO
09/01/1975    24 / M    OT
07/07/00        DSUR
S3902

| TIME | NURSES PROGRESS NOTES |
|------|------------------------|
|  |  |

**DISCHARGE SUMMARY**

DISCHARGE TIME 0920  VIA ☐ BED ☑ STRETCHER
OTHER _____
ACCOMPANIED BY MRindle
TRANSPORTED WITH ☐ O₂ ☐ EKG MONITOR ☐ AMBU
RESTRAINTS: ☐ VEST ☐ WRISTS ☐ ANKLES
TRANSPORTED TO Med
REPORT TAKEN BY E. Daugherty, RN AT 09
☐ SIDE RAILS UP ☑ CALL BELL WITHIN REACH
FAMILY IN ROOM ☑ YES ☐ NO

| PAR SCORE/TIME | APR | 1355 |  |  |  |  |  |  |  |  |  |
|----------------|-----|-----|--|--|--|--|--|--|--|--|--|
| ACTIVITY | 2 | 2 | 2 |  |  |  |  |  |  |  |  |
| RESPIRATION | 2 | 2 | 2 |  |  |  |  |  |  |  |  |
| CIRCULATION | 2 | 2 | 2 |  |  |  |  |  |  |  |  |
| CONSCIOUSNESS | 2 | 2 | 2 |  |  |  |  |  |  |  |  |
| COLOR | 2 | 2 | 2 |  |  |  |  |  |  |  |  |
| TOTAL | 10 | 10 | 10 |  |  |  |  |  |  |  |  |

00894

**Presbyterian Hospital of Kaufman**
P.O. Box 310
Kaufman, Texas 75142
Phone (972) 932-7200

```
1200157557   402372    K2
MURPHY ,JEDIDIAH
09/01/1975  24 / M   DT
07/07/00   PLUS   OP
93002  VANDIVER  WILLIAM
```

Reason for admission: (L) thumb surgery since 6/22/00

| Language Spoken: English | Height: 5' 10 | Weight: 145 |
|---|---|---|
| Religion: N/A | Highest Level Education: grad H.S. | |
| Allergies (Medicine, Foods, Other): (Iodine -topical ) | | |

| Latex Allergies: Yes | | No | | |
|---|---|---|---|---|
| | NO | YES | AMOUNT DAILY | |
| Tobacco Use | | ✓ | 3/4 pack | |
| Alcohol Use | ✓ | | | |
| Recreational Drug Use | ✓ | | | |

| Last Menstrual Period: | N/A | | | |
|---|---|---|---|---|
| Do you feel safe at home? | | Yes: ✓ | No: | |
| Have you ever been physically or sexually abused? | | Yes: | No: ✓ | |
| Do you have a living will / advance directive? | | Yes: | No: ✓ | |
| Would you like more information? | | Yes: | No: ✓ | |

| Do you have? | Dentures | Hearing Aid ✓ | Glasses/Contacts | Cane |
|---|---|---|---|---|
| (circle all that apply) | Walker | Braces | Wheelchair | Other: |

| Health Problems? | Asthma | Angina | Hiatal Hernia | Arthritis |
|---|---|---|---|---|
| (circle all that apply) | Bronchitis | CHF | Hepatitis | Back problems |
| | COPD | High Blood Pressur | Ulcers | Stroke |
| | Pneumonia | Heart Attack | Cancer | Fainting |
| | T.B. | Rheumatic Fever | | Seizures |
| | Diabetes | Anemia | | Paralysis |
| | Weight Gain/Loss | Bleeding Tendency | | Other: |

| PAIN: | | | | | |
|---|---|---|---|---|---|
| | None | | Intermittent | (Continuous) | Date of onset: 6/22/00 |
| Does pain interfere with functional abilities? | | If yes, describe: | | | |
| Can't work — (Welder) | | | | | |

| PREVIOUS SURGERIES | DATE |
|---|---|
| (L) hand — neuro surgery . GSW | |
| (R) lung — MVA punctured | |
| nipple. | |
| | |
| | |

**Admission Data   ACU**

## CURRENT MEDICATIONS

| Presciption Drugs | Dose | Frequency | Last Dose |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Over-the-Counter Drugs/Herbal | Dose | Frequency | Last Dose |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Do you use complimentary or alternative treatments?

## NUTRITIONAL SCREENING

Check below all that apply:
- Obesity
- Unintentional weight loss >10 lbs in past 6 months
- Decreased appetite / food intake
- GI Symptoms: Nausea / Vomiting, Diarrhea > 2 days
- Problems: Diabetes, Decubitus ulcer (stage III or IV), Cancer (not resconstructive) HIV/AIDS
- NPO or CLQ for > 3 days
- TPN / Tube feeding
- Pregnant / Lactating women
- Nutrition Assessment: If any box above is checked (pt at nutrition risk) place order in SMS

- None apply

| Barriers to learning: (circle all that apply) | Sight Hearing Age | Mental Language | Emotional Other |
|---|---|---|---|

| Are you: | 1) motivated to learn? | Yes: | No: | |
|---|---|---|---|---|
| | 2) able to understand new information? | | Yes: | No: |

| Best approach to learning: (check all that apply) | Visual Auditory | Reading Demonstration |
|---|---|---|

Signature:
Date:
Nurse:

00896

## Presbyterian Hospital of Kaufman
A Member of Presbyterian Healthcare System

```
1200157647      402372
MURPHY ,JEDIDIAH
09/01/1975   24 / M   OT
07/07/00       DSUP       OST
53902 VANDIVER  WILLIAM
```

SURGICAL PROCEDURE (L) Thumb

Date: 7-7-00   Time: 7ᵃ   If Day Surgery - Designated Driver:

Allergies: Topical Iodine   wife

IV Time: 7ᵃ   IV fluid/amt RL   Site L Hand   Gauge 20   Rate 20

Vital Signs:   Temp 95.7   Pulse 72   Resp 20   B/P 133/68

### PRE - OP CHECKLIST

| | YES | NO | N/A | COMMENTS | RN Int. |
|---|---|---|---|---|---|
| CONSENT(S) SIGNED | / | * | | * Required | |
| TRANSFUSION CONSENT NOTED | / | * | | * Required | |
| HISTORY AND PHYSICAL ON CHART | / | * | | * Required | |
| N.P.O. at   7ᵖ | / | | | | |
| OPERATIVE SITE VERIFIED & LABELED | / | | | | |
| ALLERGIES NOTED ON FRONT OF CHART | / | | | | |
| ALLERGY BRACELET ON | / | | | | |
| ID BRACELET ON | / | | | | |
| BLOOD BRACELET ON | | | / | | |
| JEWELRY REMOVED | / | | | | |
| GLASSES / CONTACTS REMOVED. | / | | | | |
| DENTURES REMOVED | | | / | | |
| NAIL POLISH REMOVED | | | / | | |
| MAKE UP REMOVED | | | / | | |
| UNDERWEAR REMOVED | / | | | | |
| DR NOTIFIED OF ANY ABNORMAL REPORTS | | | / | | |
| BY: | | | | | |
| LAB REPORTS | / | | | | |
| X-RAY REPORTS | | | / | | |
| EKG REPORTS | | | / | | |
| OLD CHART | | | / | | |
| CONSULTATION | | | / | | |
| VOIDED PRIOR TO LEAVING UNIT | / | | | | |
| SIDE RAILS UP | / | | | | |
| MAR on Chart | / | | | | |

NURSES NOTES (PRE-OP) _____

_____

_____

_____

_____

_____

TIME TO O.R. _____   NURSE SIGNATURE: _____

**Surgical Pre-Op Checklist**   #4372   00897

Presbyterian Hospital of Kaufman

```
JP00157667    402372    K2
MURPHY ,JEDIDIAH
09/01/1975    24 / M    6"
07/07/00    DSUR    OBT
93902  VANDIVER  WILLIAM
```

DATE OF SURGERY   7-7-00    TIME TO ARRIVE    6:5AM

LOCATION:   **2nd Floor - Day Surgery**

FAMILY M.D. _____

### SPECIFIC INSTRUCTIONS / PREPS:

ENEMA _____

SHOWER _____

MEDS TO TAKE A.M. OF SURGERY _____

OTHER: _____     Pediatric Assessment (If applicable) _____

### PRE ADMISSION INSTRUCTIONS FOR PATIENT

1. Nothing to eat or drink after midnight the night before surgery, no gum, no tobacco.
2. You must have someone drive you home.
3. Wear comfortable, loose fitting clothes.
4. Do not wear makeup (no mascara, no nail polish.)
5. No contact lenses. You will be asked to remove dentures.
6. You will be required to remove all your clothing and wear a hospital gown prior to your procedure.
7. There is a waiting room on ground floor where your visitors may wait while you are in surgery.
8. After surgery you will return to your room until you meet discharge criteria.
9. Bring all your medications with you.
10. Leave your valuables at home.

WE LOOK FORWARD TO YOUR VISIT AND HOPE YOUR STAY WILL BE A PLEASANT ONE.

### I UNDERSTAND THE ABOVE INSTRUCTIONS

PATIENT'S SIGNATURE: _Jedidiah_ _____

ADMISSION NURSE: _____     DATE: 7/6/00

### Ambulatory Care Unit Pre-Admission Assessment

White Copy - Patient          Yellow Copy - Medical Records

00898

**AMBULATORY SURGERY**
**DISCHARGE INSTRUCTIONS**

*In order to continue your care at home, please follow the instructions checked below.*

1200157557   402372
MURPHY,JEDIDIAH
09/01/1975   34 / M   OT
07/07/00   0508   OT

**1.   GENERAL ANESTHESIA OR SEDATION**
  ✓  Do not drive or operate machinery for 24 hours.
      Do not consume alcohol, tranquilizers, sleeping medications, or any non-prescribed medication for 24 hours.
      Do not make important decisions or sign any important papers in the next 24 hours.
      You should have someone with you tonight at home.
      Children may appear flushed for several hours after surgery.

**2.   ACTIVITY**
  ✓  You are advised to go directly home from the hospital.  Restrict your activities and rest for a day.  Resume light to normal activity tomorrow.
      You may resume normal activity today.  Do not engage in strenuous activity that may place stress on your incision.
      Specific activity instructions: _____

**3.   FLUIDS AND DIET**
  ✓  Begin with clear liquids, bouillon, dry toast, soda crackers.
      If not nauseated, you may go to a regular diet when you desire.  Greasy and spicy foods are not advised.
      Special diet instructions: _____

**4.   MEDICATIONS**
  ✓  Prescription sent with you.  Use as directed.  When taking pain medications, you may experience dizziness or drowsiness.  Do not drink alcohol or drive when you are taking these medications.
      You may take a non-prescription "headache remedy" type medication that you normally use, if your surgeon permits, preferably one that does not contain aspirin.
      You may resume your daily prescription medication schedule.

**5.   OPERATIVE SITE**
  ✓  Keep dressing clean and dry.
      Do not change dressing.
      Change dressing when soiled or wet.
      May remove dressing _____
      May wash over incision in shower.
      Special instructions: _____

**6.   EXTREMITIES: ARMS, HANDS, LEGS, FEET**
  ✓  Keep operative extremity elevated as much as possible to lessen swelling and discomfort.

**7.   GYNECOLOGICAL PROCEDURES**
      No tampons, douching, or intercourse until _____
      D&C and laparoscopic patients may have varying amounts of vaginal drainage for a few days.
      Laparoscopic patients may develop shoulder pain in first 24 hours from residual gas.

**8.   EAR SURGERY**
      No water or foreign objects in ears.

**9.   FOLLOW-UP CARE**
  ✓  Call my office to make an appointment for your post-op check up.  I want to see you: *Call 972-932-2122*

**10.  OTHER**

Call your surgeon if you have any problem that concerns you.  After hours, you can reach your physician through his answering service.  IF YOU NEED IMMEDIATE ATTENTION, COME TO PHK EMERGENCY CENTER OR TO ANOTHER HOSPITAL NEAR YOUR HOME.
          Emergency Center Phone Number is: 972-932-7245

**SPECIFIC COMPLICATIONS TO WATCH FOR:**
-Fever over 101 F by mouth.                          -Numb, tingling, or cold fingers or toes.
-Pain not relieved by medication ordered (severe).   -Blood-soaked dressing. *(Small amounts of oozing may be normal.)*
-Swelling around operative site.                     -Increasing and progressive drainage from surgical area or exam site.
-Increased redness, warmth, hardness, around operative area.   -Inability to urinate.

A follow-up call will be attempted by a recovery room nurse in 24-28 hours to check on your progress.  If you have any questions, call your doctor.

Physician signature _____   Date 7/7/00

I have read and understand the above discharge instructions.  I have no further questions regarding these instructions.

Patient signature X_____   Date _____

00899

**MAR VERIFIED**
BY: _____

**PRESBYTERIAN HOSPITAL KAUFMAN**

Name:
Room:
Sex:
Diagnosis:
Physician:
Comments:

**PRN MEDS**
Allergies:

```
1200157647        402372
MURPHY ,JEDIDIAH
09/01/1975      24 / M    OT
07/07/09        0500      OT
93502  VANTIVER  WILLIAM
```

| Administration Period Medication | Start | Stop | Nights - 1 0001 thru 0700 | Days 0701 thru 1900 | Nights - 2 1901 thru 0000 |
|---|---|---|---|---|---|
| Vicodin ½ tabs PO q4° PRN | 7/7 @ | | | 0915 Rap | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| MEDS NOT GIVEN | INJECTION SITES | SIGNATURE /INT | SIGNATURE/INT | SIGNATURE/INT |
|---|---|---|---|---|
| A NPO Diag | E. Held Dose | J. Right Upper Arm | O. Left Abdomen | | | |
| B NPO Surg | F. Absent from Dept | K. Left Upper Arm | P. Right Thigh | | / | |
| C Pt Refused | G. Drug not Avail | L. Right Gluteal | Q. Left Thigh | | / | |
| D Nausea | H. See Nursing Notes | M. Left Gluteal | R. Right ventrogluteal | | / | |

00900

CLINICAL LABORATORY

FINAL CHART  - DO NOT DISCARD

PRESBYTERIAN HOSPITAL OF KAUFMAN
850 West Highway 243
Kaufman, TX 75142
(972) 932-7287
CLIA NUMBER:45D0478494  JCAHO NUMBER: 9116

Patient:  MURPHY, JEDIDIAH
Hosp #: 120-0157667   Med Rec #: (00002)0000-40-23-72
Location:        Room: 0202-01
Physician:  VANDIVER, WILLIAM R

_____ HEMATOLOGY _____

COLLECT DATE:    06JUL00
COLLECT TIME:    1046

| TEST | UNITS | | RANGE |
|------|-------|---|-------|
| _____ Complete Blood Count _____ | | | |
| WBC | x10^3/uL | 6.3 | 3.6 - 11.1 |
| RBC | x10^6/uL | 5.06 | 4.27 - 5.61 |
| HGB | g/dL | 15.5 | 12.9 - 17.3 |
| HCT | % | 45.9 | 37.6 - 50.5 |
| MCV | fl | 90.7 | 79.3 - 97.3 |
| MCH | pg | 30.5 | 26.8 - 33.4 |
| MCHC | g/dL | 33.7 | 32.9 - 35.5 |
| RDW | % | 12.3 | 11.5 - 15.0 |
| PLT | x10^3/uL | 256 | 130 - 400 |
| MPV | fl | 8.3 | 7.5 - 10.7 |
| NEUT | % | 46.4 | 43.2 - 71.5 |
| LYMPH | % | 38.8 | 16.8 - 43.4 |
| MONO | % | 9.9 | 0.0 - 12.4 |
| EOS | % | 4.2 | 0.0 - 7.8 |
| NE# | x10^3/uL | 3.0 | 1.9 - 7.2 |
| LYMPH# | x10^3/uL | 2.4 | 1.1 - 2.7 |
| MONO# | x10^3/uL | 0.6 | 0.0 - 0.8 |
| EOS# | x10^3/uL | 0.3 | 0.0 - 0.5 |
| BASO# | x10^3/uL | 0.0 | 0.0 - 0.1 |

00901

```
********** LAB EXPEDITE RESULT REPORT ****************
NAME:MURPHY, JEDIDIAH          ACCT #:120-0157667
ROOM: DSUR BED:                MED #:(00002)0000-40-23-72
DOCTOR: VANDIVER, WILLIAM R        ACCESSION: 00-188-00697


_____ HEMATOLOGY _____
```

|  |  | COLLECT DATE: | 06JUL00 |  |
|---|---|---|---|---|
|  |  | COLLECT TIME: | 1046 |  |
| PROCEDURE |  | UNITS |  | REFERENCE RANGE |
| Complete Blood Count |  |  |  |  |
| WBC | x10^3/uL |  | 6.3 | 3.6 - 11.1 |
| RBC | x10^6/uL |  | 5.06 | 4.27 - 5.61 |
| HGB | g/dL |  | 15.5 | 12.9 - 17.3 |
| HCT | % |  | 45.9 | 37.6 - 50.5 |
| MCV | fl |  | 90.7 | 79.3 - 97.3 |
| MCH | pg |  | 30.5 | 26.8 - 33.4 |
| MCHC | g/dL |  | 33.7 | 32.9 - 35.5 |
| RDW | % |  | 12.3 | 11.5 - 15.0 |
| PLT | x10^3/uL |  | 256 | 130 - 400 |
| MPV | fl |  | 8.3 | 7.5 - 10.7 |
| NEUT | % |  | 46.4 | 43.2 - 71.5 |
| LYMPH | % |  | 38.8 | 16.8 - 43.4 |
| MONO | % |  | 9.9 | 0.0 - 12.4 |
| EOS | % |  | 4.2 | 0.0 - 7.8 |
| N## | x10^3/uL |  | 3.0 | 1.9 - 7.2 |
| LYMPH# | x10^3/uL |  | 2.4 | 1.1 - 2.7 |
| MONO# | x10^3/uL |  | 0.6 | 0.0 - 0.8 |
| EOS# | x10^3/uL |  | 0.3 | 0.0 - 0.5 |
| BASO# | x10^3/uL |  | 0.0 | 0.0 - 0.1 |

```
MURPHY, JEDIDIAH          (00002)0000-40-23-72   00-188-00697
        ********END OF CHART ********       PRINTED: 06JUL00  1050
```

00902

*WRV - Presbyterian* or *Kaufman*

**PRE-OP VERIFICATION FORM**

09/01/1975
07/07/00

SURGERY DATE *7-7-00*   MJC   TGS   JAB   SRRS   VANCI   PHD   PHT   PRSC

PRE-OP DATE_____   PRE OP LOCATION:   **DALLAS   PLANO   WYLIE**

PT NAME *Jedidiah Murphy*_____ DOB:_____

INSURANCE CO: *Unitrin*_____ PPO  HMO  MC  (WC)  INDEMNITY

PRIMARY_____ SECONDARY_____ SUPPLEMENT_____

**VERIFY**

ADDRESS_____

CITY/STATE/ZIP:_____

INSURED:_____ DOB:_____

SS#: *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*_____ GROUP_____ PLAN_____

WORK COMP CLAIM #:_____ D.O.I_____

EMPLOYER *Griffin Products* W/C CARRIER *Unitrin*

ADJ *Chuck Donley*_____ PHONE NO._____

REVIEW CO *SW Medical*_____ PHONE NO. *(214) 888-336-8159*

**PRECERT**  fx *800 877-768-5439*

PHONE #: *214 368-4963*_____ SPOKE TO: *Kim*_____

CPT CODE_____ DIAGNOSIS CODE_____

DAY SURGERY *✓* DAY SURGERY 23 HR_____ SAME DAY ADMIT_____ IH_____

AUTH# *full 00 50A*_____ # OF DAYS_____ GLOBAL_____

VALID REFERRAL FROM PCP IN EFFECT   YES_____ NO_____

NUMBER OF VISITS LEFT_____ GOOD TILL_____ ASST SURGEON  YES___  NO___

SECOND SURGICAL OPINION:  NO  YES  DATE_____ /BY_____

**BENEFITS**

PHONE #:_____ SPOKE TO:_____

COPAY:$_____ DEDUCTIBLE:$_____ MET:$_____ YEAR_____

EFFECTIVE DATE:_____ PAYS_____% OF NEG FEE  R/C TO OOP OF $_____

(DOES  DOES NOT  INCLUDE DEDUCTIBLE), THEN PAYS_____%. OOP MET $_____

L.T. MAX $_____ BENEFITS AVAILABLE FOR ASST SURGEON  YES  NO

IN NET WORK_____ OUT NETWORK_____ PRE-EXISTING CONDITION  YES_____ NO_____

COMMENTS_____

_____ DATE_____ BY_____

**SURGERY CHECK LIST**

1. Surgery Scheduled *7-7-00*

2. Insurance Verified: *✓*

**DEPOSIT**

REFER TO LEDGER/ADD NOTE  Yes  No  DISCUSSED WITH PATIENT:_____

DATE:_____ /BY_____

*See attached*

00903

**Presbyterian Hospital of Kaufman**

```
1200157667    403932
MURPHY ,JEDIDIAH
09/01/1975   34 / M
07/02/00
                VANGUARD WILLIAM
```

TIME FROM PACU _0925_        O.R. _____        G.I. LAB _____

| IV: YES ___ NO | LOC | Dressing: Yes ___ No ___ | NAUSEA: YES ___ NO ___ |
|---|---|---|---|
| Fluids/Amount/Rate: RL | Awake ✓ / Alert ✓ / Oriented ✓ / Other • | Site: Cast (1) hand | Pain: None ___ Mild ✓ / Moderate ___ Severe ___ |
| Site: (R) hand | RESP: WNL ✓ Abnormal ___ | Drainage: Yes ___ No ___ / Scant ___ Med ___ Large ___ / Color: Serous ___ Sanguinous ___ | Siderails Up: Yes ___ No ___ |
| Edema: Yes ___ No ✓ | SKIN: | | Call light within reach: Yes ✓ No ___ |
| Next IV Time: ___ | Warm ✓ Cool ___ | Drains: Yes ___ No ___ | Family / S.O. Present: Yes ✓ No ___ |
| Fluids/Amount/Rate: ___ | Other • | Type: ___ / Amount ___ | |
| D/C Time: 0940 | CIRCULATION STATUS: | Foley: Yes ___ No ___ | |
| Amt. Inf. ___ | Site ___ Warm ✓ Cool ___ | Voided Time: 0955 | RX - Given ✓ received |
| ___ R.N. | Prompt Cap. Refill <3 sec ✓ / N/A | Amount: ___ | prior to Hosp. |

| TIME | B/P | PULSE | RESP. | TEMP. | TIME | B/P | PULSE | RESP. | TEMP. |
|---|---|---|---|---|---|---|---|---|---|
| 0930 | 110/65 | 98 | 18 | 96° | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| Discharge Goals Met | Yes | No | Discharge Goals Met | Yes | No |
|---|---|---|---|---|---|
| VS WNL | ✓ | | Discharge Instruction Sheet Signed | ✓ | |
| Circ. Status WNL | ✓ | | Food Drug Guide Given | ✓ | |
| Neuro Status Unchanged | ✓ | | RX Given | not to Hosp. | |
| Resp. Status WNL | ✓ | | Discharge Criteria Met | ✓ | |
| Pain Controlled with Oral Analgesic | ✓ | | Accompanied by Responsible Adult | ✓ | |
| Tolerating Diet | ✓ | | Phsyician Notified if disharge criteria no met • - yes [  ] | | |
| Voided Prior to Discharge | ✓ | | • Orders received | | |

NURSES NOTES  Arrived via stretcher from RR A&Ox3 L WNL (R)
arm c cast from elbow to knuckles fingers free thumb stabilized
cap refill brisk c/o mild pain. 0940 Pt power tol well Jello
had cath intact she WNL. Pt refused turd which crackers & jello
Chorea c/o nsd. Pain Jiquin® Pt tol'd given po
0955 Pt anx'ed & ready for DC spa has abt arrived d/c'd pt to
resth'l room until ride arrived. Pt upset & left on elevator to
waiting area. Pt dw'l c/o. against medical advise. Pt gait steady
0&C c/o dizziness or unsteadiness. instructed Pt to keep arm ↑ ...

Time Discharged _1000_        Discharge Destination: Home ✓   Observation Room ___   • Other _____

RN Signature: _____ RN

Ambulatory Care Unit
Post OP Nurses Notes/Discharge Summary

PRESBYTERIAN HOSPITAL OF KAUFMAN
P.O. BOX 310, HWY. 243
KAUFMAN, TX   75142

OPERATIVE REPORT

| | |
|---|---|
| PATIENT NAME: | MURPHY, JEDIDIAH |
| MR#: | 402372 |
| PHYSICIAN: | William R. Vandiver, M.D./ID: 93902 |
| ADMISSION DATE: | 7-7-00 |
| OPERATION DATE: | 7-7-00 |

ATTENDING ORTHOPEDIC SURGEON:  WILLIAM RICHARD VANDIVER, M.D.

PREOPERATIVE DIAGNOSES:  Rupture of the ulnar collateral ligament
of the left thumb, metacarpal phalangeal joint.

POSTOPERATIVE DIAGNOSES:  Same.

NAME OF OPERATION:  Open end-to-end repair of the above ligament.

SURGEON:  William R. Vandiver, M.D./ID: 93902

ANESTHESIA:  LMA administers by Robert V. Johnston, M.D.
CC:  ANESTHESIA SERVICE/ID: 93114

PROCEDURE NOTE:  The patient was brought into the Operating Room
and placed in a comfortable supine position on the operating table.
Once LMA anesthesia had been successfully induced, a tourniquet was
placed high in the patient's left arm and the patient's left upper
extremity from the bottom end of the tourniquet out to the
fingertips was prepped and draped in a routine sterile fashion.
The extremity was exsanguinated using a 4 inch Esmarch bandage and
the tourniquet was inflated to 220 mm/Hg.  A bayonet type incision
was made on the dorsal ulnar aspect of the base of the thumb
centered over the metacarpal phalangeal joint.  Dissection was
carefully carried through the subcutaneous fat until the abductor
aponeurosis could be seen.  The piece of ligament could be seen at
the superior end of the piece of aponeurosis.  The aponeurosis was
split with a pair of scissors.  The tendon ends were fairly well
approximated once the aponeurosis was split.  The repair was
carried out using #2-0 Vicryl until a solid repair was achieved.
The aponeurosis was repaired back over the ulnar collateral
ligament using #4-0 Vicryl and the subcutaneous was also
approximated using #4-0 Vicryl.  The skin was closed using #4-0
nylon vertical mattress sutures.

A sterile dressing consisting of bacitracin ointment, Adaptic, 4 x
4s and Webril was placed.  The tourniquet was taken down.
Tourniquet time was 33 minutes.  After this, a short arm thumb
spica cast was applied using 2 inch fiberglass rolls.

00905

```
PATIENT NAME:        MURPHY, JEDIDIAH
MR#:                 402372
PHYSICIAN:           William R. Vandiver, M.D./ID: 93902
```

ESTIMATED BLOOD LOSS:  Minimal.

There were no specimens and no complications.

Before placing the cast, the patient's joint was stressed and it was seen to be stable now as it was, as the right side was during the preoperative examination.

The patient was taken to the Post Anesthesia Care Unit in stable condition.

William R. Vandiver, M.D./ID: 93902

```
TM
DD:  07-07-00
DT:  07-07-00
```

(END OF REPORT)

**WEDNESDAY 10-4-00**

**2:30PM**

THE VICTIM LEAVES HER RESIDENCE TO GO TO COLIN CREEK
MALL

**2:55PM**

VICTIM USES FRANCES CREDIT CARD AT JC PENNEY IN COLIN
CREEK MALL.  PURCHAES A ROBE.  AMOUNT OF SALE IS $32.73

**4:03PM**
**4:04PM**
**4:16PM**
**4:17PM**

DEFENDANT MAKES FOUR ATTEMPTS TO USE THE VICTIM'S
MASTER CARD.  ALL TRANSACTIONS OCCUR AT ATM MACHINE
LOCATED AT 1225 E BELT LINE IN RICHARDSON.  THE NAME OF
THIS BUSINESS IS SAVING'S OF AMERICA

**5:00PM to**
**6:00PM**

VICTIM'S SISTER, EVELYN, BECOMES CONCERNED BECAUSE
VICTIM DID NOT RETURN HOME

**5:30PM**

THE DEFENDANT PICKS UP HIS NEICE, AHSLEIGH JOHNSON, AT
HER RESIDENCE 1718 BARCLAY IN RICHARDSON. HE IS DRIVING
THE VICTIM'S CAR A SHORT TIME LATER THEY PICK UP
ZACHRY MAMOT AND RYAN HAMMONDS.

**6:05PM**

MURPHY DROPS OFF HIS NEICE AT 1718 BARCLAY.  MURPHY
AND ZACHRY MAMOT AND RYAN HAMMONDS DRIVE OFF IN
THE CAR

**6:20PM**

RICHARDSON MOTORSPORT SALESPERSON, BOBBY HARP,
ESTIMATES THE DEFENDANT AND TWO BOYS ARRIVE AT
RICHARDSON MOTORSPORT.

**6:49PM**

TIME RECORDED ON THE CASH REGISTER RECEITP AT
RICHARDSON MOTORSPROT

**7:00PM to
7:30PM**

MURHY AND ZACHRY MAMOT ARE SEEN RIDING THE GO-PEDS
AT HUFFINES PARK IN RICHARSON.  CAUGHT ON VIDEO TAPE

**8:00PM**

THE VICTIM'S SISTER EVELYN, CALLS GARLAND POLICE AND
MAKES A MISSING PERSON REPORT.

**9:00PM**

WITNESS, PHILLIP SHAUN CRUZ, ESTIMATES TIME DEFENDANT
ARRIVES AT HIS HOUSE LOCATED AT 1922 MATTERHORN IN
GARLAND

**11:15PM**

LT THOMPSON NOTIFIED AND RESPONDS TO GPD

**11:30PM**

DEFENDANT ATTEMPTS TO USE VICTIMS MASTER CARD TO
OBTAIN CASH..TRANACTION OCCURRS AT 9620 HARRY HINES
BLVD IN DALLAS

**12:00 MIDNIGHT**

DETECTIVE MYERS NOTIFIED AND RESPONDS TO GPD

**THURSDAY 10-5-00**

**2:00AM**

DETECTIVE MYERS AND LT THOMPSON CHECK AREA OF COLIN
CREEK MALL AND RICHARDSON MOTORSPORT

**4:00AM**

DETECTIVE MYERS AND LT THOMPSON CONTACT EVELYN
SHELTON AT THE VICTIM'S RESIDENCE

**4:34AM**

DEFENDANT ATTEMPTS TO USE VICTIMS'S MASTER CARD TO
OBTAIN CASH.  TRANSACTION OCCURS AT 9620 HARRY HINES
BLVD.

**8:00AM**

DETECTIVE MYERS AND DETECTIVE BROWN  ALONG WITH
FORENSIC INVESTIGATORS ROGERS AND MOWERY ARRIVE AT
RICHARDSON MOTORSPORT TO INTERVIEW MARK CANNON
AND OBTAIN EVIDENCE.  ASSERTAIN THE NAME J ISAAC
MURHPEY FROM WARRANTY PAPERS.

**11:00AM**

LT THOMPSON CONTACTS TERRELL  PD AND LEARNES THEY
HAVE HANDLED A SUBJECT NAMED JEDIDIAH ISAAC MURPHY.
INVESTIGATORS FIND TX ID CARD FOR MURPHY WITH 1718
BARCLAY ADDRESS.

**8:00AM**
**12:00 NOON**

TONYA THORP ADISED SHE LEFT HER RESIDENCE AT 1718
BARCLAY IN RICHARDSON AT APPROXIMATELY 8:00AM TO GO

TO WORK.  WHEN SHE RETURNED TO THE RESIDENCE AT APPROXIMATELY 12:00 NOON SHE FOUND THE SUICIDE NOTE.

**12:20PM**

DETECTIVE MYERS RESPONDS TO 1718 BARCLAY TO CHECK THE AREA.

**12:30PM**

DETECTIVE MYERS IS ADVISED BY DISPATCH THERE ARE SUBJECTS AT APOLLO JR HIGH IN RICHARDSON THAT HAVE INFORMATION.  DETECTIVE MYERS RESPONDS.
**12:35PM**

DETEDCTIVE BROWN RESPONDS TO APOLLO JR HIGH SCHOOL.

**3:00PM**

**4:00PM**

TRESHOD TARRANT ESTIMATES TIME DEFENDANT ARRIVES AT HIS RESIDENCE IN EDGEWOOD.

**5:00PM**

ERIKA IRWIN ESTIMATES TIME SHE SAW DEFENDANT IN THE VICTIMS CAR AT EDGEWOOD HIGH SCHOOL

**5:27PM**

VICTIM'S CREDIT CARD IS USED AT CHACHO'S IN TERRELL TX IN AMOUNT OF $33.64

**5:36PM**

VICTIM'S CREDIT CARD IS USED AT CHACHO'S IN TERRELL TX IN AMOUNT OF $70.44

00911

**6:35PM**

DEFENDANT USES VICTIM'S CREDIT CARD AT CHACHO'S IN
TERRELL

**6:43PM**

DEFENDANT AGAIN USES VICTIM'S CREDIT CARD AT CHACHO'S
IN TERRELL

**7:00PM**

DETECTIVE MYERS AND LT THOMPSON RELEIVED BY
COMMANDER LAY

**9:09PM**

DEFENDANT USES VICTIM'S CREDIT CARD AT COLE MOUNTAIN
RESTURANT IN TERRELL TO BUY DINNER FOR HIMSELF AND
TRESHOD TARRANT.

**9:24PM**

DEFENDANT USES VICTIM'S CREDIT CARD AT COWBOY QUICK
STOP IN TERRELL TO PURCHASE GAS.  TRESHOD TARRANT IS
PRESENT

**FRIDAY 10-6-00**

**2:00AM**

VAN ZANDT COUNTY CALLS TO ADVISE THEY HAVE LOCATED
THE VEHICLE IN EDGEWOOD

**2:10AM**

DETECTIVES MYERS, TOOKE, VANEK AND MENDOZA ALONG
WITH LT THOMPSON AND COMMANDER LAY LEAVE GPD
ENROUTE TO EDGEWOOD

MURPHY IS ARRESTED BY VAN ZANDT SHERIFF DEPUTY GARY
ROSE

MURPHY TELLS WILLS POINT POLICE OFFICER, JASON BOHAM,
WHERE TO FIND THE VICTIM'S BODY

VICTIMS BODY IS LOCATED AND PRONOUNCED DEAD VAN
ZANDT COUNTY JUSTICE OF THE PEACE

**COUNTY OF DALLAS**
**SHERIFF'S DEPARTMENT**
**DALLAS, TEXAS**

CRIME SCENE SEARCH REPORT                    01-040745

DATE  5/06/01   TIME RECEIVED 10:30pm  TIME ARRIVED 10:49pm  TIME CLEARED 12:31am

OFFENSE                         ATTEMPTED  SUICIDE

COMPLAINANT OR VICTIM   Murphy, Jedidiah  Isaac  w/m  dob: 9/1/75 / BNO#00089253

                        1718 Barclay / Richardson, Texas

LOCATION OF INVESTIGATION(S)   Lew Sterrett Jail  (West Tower / 3P1 (cell G)

GRID:  45-N               111 W. Commerce St. / Dallas, Texas

REQUESTING AGENCY  Dallas Sheriffs Dept.   LATENTS (YES/NO)  NO   PHOTOS (YES/NO)  YES

I was dispatched to the Lew  Sterrett Jail (West Tower 3P1 (cell G) at 111 W. Commerce St. in Dallas, Texas on report of an Attempted Suicide of an inmate. On arrival on scene I was advised of the situation by DSS Lachman  (DSO/Detentions).

I was advised by DSO Olugbode #5859 that he found MURPHY lying on his bunk at approx. 10:30 pm this date. Prior to my arrival at the scene MURPHY had been taken to the nurses station, then by Dallas FD ambulance to Parkland Hospital for treatment . On examination of the scene it was noted that the mattress was sitting outside the cell door.  The mattress had blood on it and there was a large amount of blood inside cell (G).

The razor blade reportedly used by MURPHY to injure himself had been located and was turned over to me by DSS Gentry.

Numerous  photographs were taken of the cell area.  Measurements were taken of the cell and a sketch was made of the cell.

Along with Deputy Rainey #724 the cell was searched for a possible suicide note.  A number of items were collected  from the cell that were felt may be related to the suicide attempt.

R. Allwardt #133

R. Allwardt #133
Detective
Physical Evidence Section

A:\Word\01040745\CS01\RMA

00914

# COUNTY OF DALLAS
## SHERIFF'S DEPARTMENT
### SUPPLEMENTARY INVESTIGATION REPORT

| NAME OF COMPLAINANT | | SERVICE NO. |
| --- | --- | --- |
| Murphy, Jedidiah  w/m  dob: 9/1/75)   **ATTEMPTED SUICIDE** | | 01-040745 |

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.
(Investigating Officer must sign)

Date   5/07/01

At 2:01am I returned to the west tower of the Lew Sterrett Jail to pick up digital photographs of the self inflicted injuries to MURPHY.  While talking with DSS Lachman I was advised that MURPHY had been treated and returned from Parkland Hospital. MURPHY was being interviewed by Detective Cook (DSO/CIS) regarding this case.  I cleared from the location at 2:40 am this date.

*R. Allwardt* #133

R. Allwardt #133
Detective
Physical Evidence Section

*a:\word\01040745\su01\rma*

00915

Certification

The State of Texas

County of Dallas

I, Jim Hamlin, Clerk of the ___194TH JUDICIAL DISTRICT COURT___ of Dallas County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5 (b).

GIVEN UNDER MY HAND AND SEAL at my office in Dallas County, Texas this __25TH__ day of ____OCTOBER____, 20_01_.

Signature of clerk _Jane Miller_

Name of clerk _JANE MILLER_

Title ___DEPUTY CLERK___

00916